1  EMIL W. HERICH (CA Bar No. 116783)
   Kilpatrick Townsend & Stockton LLP
2  9720 Wilshire Boulevard, PH
   Beverly Hills, CA 90212
3  Telephone: (310) 777-3730
   Fax: (310) 860-0363
4
5  KEITH M. HARPER (D.C. Bar No. 451956) (*pro hac vice* application to be filed)
   CATHERINE F. MUNSON (D.C. Bar No. 985717) (*pro hac vice* application to be
6  filed)
   ROBERT HARMALA (CA Bar No. 176256)
7  Kilpatrick Townsend & Stockton LLP
   607 14th Street, N.W.
8  Washington, D.C. 20005
   Telephone: (202) 508-5800
9  Fax: (202) 505-5858
10
11 STEVEN C. MOORE (CO Bar No. 9863) (*pro hac vice* application to be filed)
   HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671) (*pro hac vice* application
12 to be filed)
   Native American Rights Fund
13 1506 Broadway
   Boulder, CO 80302
14 Telephone: (303) 447-8760
   Fax: (303) 443-7776
15
16 Attorneys for Plaintiff
17
18              UNITED STATES DISTRICT COURT
19      CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION
20 AGUA CALIENTE BAND OF              CASE NO.
   CAHUILLA INDIANS,
21                    ED  CV   13 — 00883 JGB SPx
                Plaintiff,          COMPLAINT FOR
22                                  DECLARATORY AND
                                    INJUNCTIVE RELIEF
23      v.
24 COACHELLA VALLEY WATER
   DISTRICT, FRANZ DE KLOTZ, ED
25 PACK, JOHN POWELL, JR., PETER
   NELSON, and DEBI LIVESAY, in their
26 Official Capacities as Members of the
   Board of Directors of the COACHELLA
27
28 ─────────────────────────────────────────────
                    COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
   US2008 4583469 1

VALLEY WATER DISTRICT; DESERT
WATER AGENCY; PATRICIA G.
OYGAR, THOMAS KIELEY, III,
JAMES CIOFFI, CRAIG A. EWING, and
JOSEPH K STUART, in their Official
Capacities as Members of the Board of
Directors of the DESERT WATER
AGENCY,

        Defendants.

Comes now the Agua Caliente Band of Cahuilla Indians ("Tribe") and shows as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362 because the Tribe is a federally recognized Indian tribe and its claims arise under the Constitution, laws, and treaties of the United States.

2.    Venue in this Court is appropriate under 28 U.S.C. § 1391(b) because the land and underlying water at issue, as well as the Defendants, are located within the Central District of California.

## NATURE OF THE ACTION

3.    This is an action to have this Court judicially recognize, declare, quantify and decree to the Tribe its prior and paramount reserved right to sufficient water underlying the Coachella Valley as is necessary to fulfill the aboriginal rights of the Tribe and its members, as well as the present and future homeland purposes of the Tribe's Reservation and to enjoin Defendants from injuring the Tribe and its members by overdrafting the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin aquifer and degrading the groundwater quality or otherwise infringing upon the Tribe's paramount reserved water rights.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

US2008 4583469 1

**DESCRIPTION OF THE ISSUE**

4.    The Cahuilla Indians, ancestors of the present day Tribe and its members, have lived in the Coachella Valley since time immemorial, and have aboriginal rights to the surface water and groundwater resources of the Valley, which they have developed and relied on for millennia for traditional cultural, domestic and agricultural subsistence purposes.

5.    The Tribe's Reservation ("Reservation" or "Agua Caliente Reservation") was established on May 15, 1876 by the Executive Order of President Ulysses S. Grant from lands in the Coachella Valley which the Cahuilla Indians used and occupied since time immemorial. The Reservation was subsequently expanded through the Executive Order of President Rutherford B. Hayes of September 29, 1877 and other administrative acts.    In 1896, the Secretary of the Interior started issuing patents to the Tribe declaring that the United States would hold the lands of the Reservation in trust for the Tribe as authorized by the Mission Indian Relief Act of January 12, 1891 (26 Stat. 712).  Today, the Reservation exceeds 31,396 acres of land, all located within the aboriginal territory of the Tribe.

6.    The establishment of the Reservation pursuant to federal law impliedly reserved to the Tribe and its members the right to surface water and groundwater sufficient to accomplish the purposes of the Reservation, including establishing a homeland for the Tribe and its members.  These orders and acts acknowledged and confirmed the Tribe's preexisting rights to surface water and groundwater.

7.    Under established principles of federal law, the surface and groundwater rights of the Tribe are the most senior in the Coachella Valley, predating all water rights decreed, or otherwise claimed under state law.

8.    Defendants' development of the groundwater resources of the Coachella Valley has adversely affected the quantity and quality of the groundwater underlying the Coachella Valley and in particular the Agua Caliente Reservation, and thus has

-3-

US2008 4583469 1

1   injured and infringes upon the senior reserved rights of the Tribe, and the use and
2   enjoyment of said rights by the Tribe and its members.  This suit seeks to declare the
3   existence of the Tribe's rights as the senior reserved rights in the Valley under federal
4   law, to quantify said rights and to enjoin Defendants from injuring the Tribe and its
5   members, or otherwise infringing upon their senior water rights.  The suit also seeks a
6   declaration of the Tribe's right to use pore space in the aquifer underlying the
7   Coachella Valley to store the Tribe's federally reserved water in an amount sufficient
8   to meet all of the Tribe's present and future reasonable needs.

9                                                   **PARTIES**

10          9.     Plaintiff Agua Caliente Band of Cahuilla Indians is a federally
11   recognized Indian Tribe, which presently operates under a Constitution and by-laws
12   approved by the Commissioner of Indian Affairs on April 18, 1957, as amended.

13          10.    Defendant, the Coachella Valley Water District ("CVWD"), is a county
14   water district formed in 1918 and organized pursuant to the California Water Code.
15   CVWD's purported service area covers approximately 1,000 square miles from the
16   San Gorgonio Pass to the Salton Sea, mostly within the Coachella Valley in Riverside
17   County, California.  CVWD has developed more than 100 groundwater wells in its
18   service area, and extracts in excess of 100,000 acre feet of groundwater annually, a
19   substantial part of which is pumped from the Upper Whitewater sub-basin of the
20   Coachella Valley Groundwater Basin.  CVWD utilizes pore space under the Agua
21   Caliente Reservation to store imported Colorado River water, without any
22   compensation to the Tribe.  CVWD is not an arm of the State of California.

23          11.    Defendants Franz De Klotz, Ed Pack, John Powell, Jr., Peter Nelson and
24   Debi Livesay are members of the Board of Directors of Defendant CVWD and, as
25   such, are charged with establishing CVWD policy and directing CVWD activities,
26   including the pumping and extraction of groundwater underlying the Coachella Valley
27   and the use of pore storage space in the aquifer underlying the Coachella Valley in a

28                                                   -4-
                                   **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1   manner that interferes with the Tribe's federally reserved rights.  They are sued solely
2   in their official capacities as directors of CVWD.

3       12.   Defendant, the Desert Water Agency ("DWA") is an independent special
4   district created by a special act of the California State Legislature in 1961.   DWA
5   provides water services to Palm Springs, outlying county areas, Desert Hot Springs
6   and part of Cathedral City.  DWA has developed approximately 29 wells and extracts
7   approximately 43,000 acre feet of water annually from the Upper Whitewater and
8   Garnet Hill sub-basins of the Coachella Valley.  DWA utilizes pore space under the
9   Agua Caliente Reservation to store imported Colorado River water, without any
10  compensation to the Tribe.  DWA is not an arm of the State of California.

11      13.   Defendants Patricia G. Oygar, Thomas Kieley, III, James Cioffi, Craig A.
12  Ewing, and Joseph K. Stuart are members of the Board of Directors of Defendant
13  DWA and, as such, are charged with establishing DWA policy and directing DWA
14  activities, including the pumping and extraction of groundwater underlying the
15  Coachella Valley and the use of pore storage space in the aquifer underlying the
16  Coachella Valley in a manner that interferes with the Tribe's federally reserved rights.
17  They are sued solely in their official capacities as directors of DWA.

18                              **FACTS**

19  **A.    The History of the Cahuilla People and the Agua Caliente Band in the**
20  **Coachella Valley, and the Legacy of Incoming Settlers Squandering the**
21  **Land and Water Resources of the Valley**

22      14.   The Cahuilla people, from whom the Agua Caliente Band members are
23  descendant, have resided in the Coachella Valley for millennia.  Prior to the arrival of
24  non-Indians to the region and up until the Tribe's settlement on the Agua Caliente
25  Reservation, the Tribe had an established civilization that had sustainably depended
26  on water from the Valley's canyons, springs and aquifer for, among other things,
27  domestic, stock watering and agricultural irrigation purposes.

28
**COMPLAINT FOR  DECLARATORY AND INJUNCTIVE RELIEF**
US2008 4583469 1

15.   The Cahuilla had good success with producing a range of grain, vegetable and fruit crops, irrigating with water drawn from the Whitewater River and its tributaries. Pacific Railroad employees investigating possible railroad routes in the early 1850s described the Cahuilla Indians in the northwestern part of the Valley raising abundant crops of corn, barley and vegetables in the vicinity of their villages.

16.   Later reports by federal Indian agents in the Valley in the mid-1890s confirmed these substantial agricultural activities, as well as the presence of an elaborate system of irrigation ditches and dams developing the water from the Chino, Tahquitz and Andreas Canyons, three streams having their source on the eastern slope of the San Jacinto Mountains.  According to a number of accounts, this included a more than one mile long irrigation conveyance ditch from Tahquitz Canyon constructed around 1830.  There are undated, preserved rock-lined ditches, reservoirs, and dams in Andreas Canyon north of Andreas Creek.  Hand-dug walk-in wells as deep as thirty feet were features of Cahuilla settlements in the northern half of the Valley.

17.   In 1876, by Executive Order of President Grant, the Agua Caliente Band of Cahuilla Indians Reservation was established in the Valley on lands aboriginally occupied by the Tribe and its members. In 1877, President Hayes issued another Executive Order reserving significant additional lands for the Tribe.  In 1896, the Secretary of the Interior started issuing patents to the Tribe declaring that the United States would hold the lands of the Reservation in trust for the Tribe as authorized by the Mission Indian Relief Act of January 12, 1891 (26 Stat. 712).  Then in February 1907, Departmental Orders added additional lands.  As of today, the Reservation totals more than 31,396 acres of land.

18.   The Reservation was established to, among other things, enable the Tribe and its members to continue to prosper and maintain a homeland.  Agriculture was one of the primary purposes for which the Reservation was established.  Because the

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

US2008 4583469 1

Valley is situated in the southern California desert, sufficient water is essential to the life and prosperity of the Tribe and its members.

19.    Non-Indian settlers moved into the Coachella Valley and began developing the water resources of the Valley.   There is a history of settlers squandering land and water to the detriment of the Cahuilla people.   The increase in non-Indian settlement of the region in the 1870s saw a correspondent problem with trespass and mis-appropriation of land and water from the Tribe and its members.   By the 1870s, non-Indian settlers in the northern Coachella Valley, in particular, were claiming any plot of land that had a supply of water—the very lands that had been settled and occupied by Cahuilla people for centuries.   Indian Special Agents at the time complained of the injustice, but little if anything was done to protect the Cahuilla people and their lands and resources.

20.    As a result, the Tribe was impoverished, its numbers declined, and its agricultural way of life was severely compromised.   An Indian Agent in the Coachella Valley wrote in 1894 that most of the Cahuilla land and water had been confiscated by non-Indian "land grabbers," forcing many of the Indian men of working age to move away to labor for ranchers 50 to 60 miles distant.   The old men and women were described by the agent as remaining home "in a condition of wretchedness, by reason of destitution, as I had never seen….I found them lying on the ground in their huts, their shoulders and sides being callous from constant contact with the hard earth. They had nothing to eat but a sort of bean, which grows in the desert, and which is pulverized by a mortar and moisturized with water….The site was pitiful in the extreme."

21.    Circa 1910, the United States Indian Irrigation Service ("IIS") initiated the semblance of a systematic effort to provide the Tribe with water resource development and management assistance in support of the Tribe's irrigation as well as household and other water needs.   The IIS did ultimately construct some very limited

-7-

US2008 4583469 1

1   new delivery facilities and rehabilitate existing facilities on behalf of the Tribe. The
2   Tribe's allocated share of water was inadequate, however, and, even then, the Tribe
3   frequently received less water than promised or the water it did receive was of
4   extremely poor quality.  In the end, what IIS-driven successes there were proved too
5   little, too late.

6       22.    By this time, over 40 years after the Reservation's establishment, the
7   Tribe was so far forcibly and effectively displaced from engaging in its own irrigation
8   activities, and non-Indian settlement and uses of water in the area were so significant,
9   the IIS's efforts largely failed and were ultimately abandoned.

10      23.    Non-Indian settlers dominated the agricultural economy of the Valley in
11  the first decades of the 20th Century.  This domination became even more pronounced
12  in the mid-1930s with the additional development of the region's groundwater
13  resources through the advent of efficient electric pumps.   Significant levels of
14  groundwater pumping in the Coachella Valley began in earnest during the 1940s just
15  after World War II, concurrent with rapid regional population growth.  Between 1940
16  and 1950 the population of Riverside County grew by over 60 percent.

17      24.    Once under irrigation, the Coachella Valley became far more productive.
18  The advent of improved water resource impoundment and irrigation system
19  technologies led to rapid increase in regional irrigation development.  Irrigation of the
20  region's desert soils allowed for increased grain yields and, most importantly, the
21  production of superior quality feed crops such as alfalfa hay and higher valued
22  permanent crops, particularly citrus that benefit greatly from irrigation in terms of
23  yield and quality.

24  **B.**    **The California State Court Adjudication of Surface Water Rights in the**
25       **Whitewater River**

26      25.    The Whitewater River and its tributaries rise on the south and east slopes
27  of the San Gorgonio Mountains, in the southwestern part of San Bernardino County,

28

-8-
**COMPLAINT FOR  DECLARATORY AND INJUNCTIVE RELIEF**

US2008 4583469 1

1   at an altitude of about 11,000 feet, and in times of extreme flood flows in a general

2   southeasterly direction for a distance of about sixty-five miles, traversing the central

3   part of Riverside County, and emptying into the Salton Sea.

4       26.    In 1922, the Division of Water of the California Department of Public

5   Works commenced a general stream adjudication of surface flow the Whitewater

6   River System to determine the quantity of water that appropriators would be allowed

7   to use. The adjudication began by collecting hydrological data on the Whitewater

8   River system including water usage data. Engineers from the Division of Water

9   examined water flow levels, irrigable acres, appropriation amounts, and myriad other

10   factors in the watershed. *Report on Water Supply and Use of Water from Whitewater*

11   *River Stream System* (November 1923)("Whitewater Report").

12       27.    The Whitewater Report listed the United States as an appropriator for the

13   Agua Caliente Reservation from two Whitewater River tributaries—Andreas Creek

14   and Tahquitz Creek.

15       28.    In response to the Adjudication's commencement on June 26, 1924, the

16   United States filed a "Suggestion" on behalf of the Tribe contesting the state court's

17   jurisdiction to determine the reserved water rights of the Tribe under federal law.

18   Notwithstanding the lack of jurisdiction, the United States in the Suggestion asserted

19   the Tribe's interests in the water resources of the Whitewater River System, in

20   particular Andreas and Tahquitz Creeks. *Suggestion of the United States, In The*

21   *Matter of the Determination of the Relative Rights, Based Upon Prior Appropriation,*

22   *of the Various Claimants to the Water of White Water River and its Tributaries, in San*

23   *Bernardino and Riverside Counties, California,* (June 26, 1924)("Suggestion").

24       29.    A brief "Historical Uses" section was also included in the Suggestion.

25   Therein, the United States noted that while no records were kept of very early use of

26   the water from Tahquitz Creek by Indians, "it is known that these lands were irrigated

27   by them as early as 1835 and practically continuously since that time to the year

28

-9-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1   1914." *Id.* at 16.   Regarding Andreas Creek, the United States in the Suggestion

2   stated that while records of early use were not available, the "water of Andreas Creek

3   was used upon these lands by the Indians in a very early day." *Id.* at 14.

4       30.   In 1938, the Superior Court of the State of California, Riverside County,

5   entered a Judgment in the Whitewater Adjudication.   The 1938 Judgment listed the

6   United States of America as the appropriator, on behalf of the Agua Caliente Indian

7   Reservation, of surface water from both Andreas and Tahquitz Creeks. With respect to

8   Andreas Creek, the U.S. was given a priority date for the appropriation of January 1,

9   1893, and securing the use of 6.0 cfs of water throughout the entire year, as requested

10  in the Suggestion.   Regarding Tahquitz Creek, the U.S. was entitled to 4.8 cfs of water

11  also available throughout the entire year, with a priority date of April 26, 1884.   *In the*

12  *Matter of The Determination of the Relative Rights, Based Upon Prior Appropriation,*

13  *if the Various Claimants to the Waters of Whitewater River, its Tributaries, in San*

14  *Bernardino & Riverside Counties, CA*, Civ. No. 18035 at 2-3 (California Superior

15  Court, September 9, 1938) ("1938 Judgment") at 65-66.

16      31.   The United States' Suggestion also made reference to the Tribe's

17  entitlement under federal law to a large additional quantity of groundwater for

18  irrigation, domestic, and stock-watering purposes, also referencing that the United

19  States had developed wells, pumps, canals and conduits for the purpose of delivering

20  groundwater for those purposes. Suggestion at pp. 17-18, Paragraph X. The court did

21  not act on these large groundwater claims, due to the Division of Water of the

22  California Department of Public Works' opinion that it lacked jurisdiction under the

23  terms of applicable state law.   Whitewater Report, at 3-4.

24      32.   The surface rights decreed in the name of the United States in trust for

25  the Tribe, from Andreas and Tahquitz Creeks amount to approximately 8,000 acre feet

26  per year.   The Tribe actively uses these surface water rights to replenish the

27  groundwater underlying its Reservation lands. Defendants use this water and other

28

-10-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1   water in the aquifer owned by the Tribe under federal law without compensation to the
2   Tribe.

3   **C.   <u>The Recent History and Present State of Groundwater Usage and Supply</u>**

4       33.   Outflows from the Coachella Valley Groundwater Basin aquifer have
5   generally exceeded inflows for decades, a condition known as "overdraft."  As
6   admitted by CVWD, the continued overdraft of the aquifer by Defendants has resulted
7   in a substantial cumulative net loss the amount of groundwater stored in the aquifer,
8   including the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley
9   Groundwater Basin.  *See, e.g.*, Coachella Valley Water Management Plan Update
10   Draft Report (December 2010) ("2010 Draft Report") at 4-7 – 4-8.

11       34.   As admitted by CVWD, between the years of 2000 and 2009, natural
12   recharge of the Coachella Valley Groundwater Basin aquifer by Defendants, including
13   both natural inflows and returns from use, averaged approximately 280,000 acre feet
14   per year according to estimates published by CVWD. *See* 2010 Draft Report at 4-11.

15       35.   In addition to this natural recharge, imported water from the Colorado
16   River has been used to artificially recharge the Coachella Valley Groundwater Basin
17   aquifer.  CVWD has indicated that during the years 2000-2009, artificial recharge via
18   imported Colorado River water averaged an additional 51,000 acre feet per year. *See*
19   *id.*

20       36.   CVWD has stated that from 2000-2009, the average total inflows to the
21   Coachella Valley Groundwater Basin aquifer were approximately 331,000 acre feet
22   per year. *See id.*

23       37.   Published CVWD figures indicate that groundwater pumping from the
24   Coachella Valley Groundwater Basin aquifer averaged approximately 398,000 acre
25   feet per year from 2000-2009. *See id.*  An additional total of approximately 52,000
26   acre feet per year were lost to evapotranspiration and subsurface outflow to the Salton
27   Sea. *See id.*

28

-11-

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

38.   CVWD statistics indicate that the total average annual outflows from the Coachella Valley Groundwater Basin aquifer from 2000-2009 were approximately 441,000 acre feet per year. *Id.*

39.   CVWD's published figures indicate that the average annual net loss of stored water, or overdraft, of the Coachella Valley Groundwater Basin aquifer from 2000-2009 was approximately 110,000 acre feet per year. *See id.; id.* at 7-20.

40.   Continued overdraft of the Coachella Valley Groundwater Basin aquifer, including the Upper Whitewater and Garnet Hill sub-basins, has led to and is likely to lead to a further decline in groundwater levels in parts of the Coachella Valley Groundwater Basin, subsidence, and adverse effects on groundwater quality and storage volume within the Coachella Groundwater Basin.

41.   CVWD admits that it pumps in excess of 100,000 acre feet of water from the Coachella Valley Groundwater Basin each year, and it projects that its groundwater pumping will increase substantially in future years. *See, e.g., id.* at 4-8; Coachella Valley Water District 2009-10 Annual Review ("2010 Review") at 17; Coachella Valley Water District Urban Water Management Plan Final Report (December 2005) ("2005 Report") at 3-11.

42.   CVWD's historical and ongoing extraction of groundwater from the Coachella Valley Groundwater Basin, including the Upper Whitewater and Garnet Hill sub-basins, has contributed to the Basin's overdraft condition.

43.   DWA pumps approximately 43,000 acre feet of water from the Coachella Valley Groundwater Basin each year. *See* DWA Website, available at http://www.dwa.org/index.php?option=com_content&view=article&id+49Itemid=37, last accessed on May 7, 2013.

44.   DWA's historical and ongoing extraction of groundwater from the Coachella Valley Groundwater Basin has contributed to the Basin's overdraft condition.

**COMPLAINT FOR  DECLARATORY AND INJUNCTIVE RELIEF**

US2008 4583469 1

45. Since 1973, CVWD and DWA have been using imported water from the Colorado River to "recharge" the Coachella Valley Groundwater Basin aquifer in an attempt to partially offset the damaging effects of the aquifer's overdraft condition. *See, e.g.*, 2005 Report at 1-8.

46. Despite these efforts, the net amount of water stored in the Coachella Valley Groundwater Basin aquifer, including the Upper Whitewater and Garnet Hill sub-basins, continues to decline, resulting in the continuation and worsening of the overdraft condition and associated ill effects, including irreversible subsidence, decreases in groundwater quality, declining groundwater levels and increased water extraction costs.

47. Furthermore, the quality of the imported Colorado River water used for groundwater recharge is inferior to that of the local groundwater. In particular, the Colorado River water has a higher level of total dissolved solids (TDS) than the local groundwater. This has resulted in further degradation of groundwater quality and increasing salinity levels within the Coachella Valley Groundwater Basin aquifer, including the Upper Whitewater and Garnet Hill sub-basins, particularly in the vicinity of the recharge facilities in the northern portion of the Coachella Valley which are in close proximity to land owned by the Tribe and its members.

48. Population and development in the Coachella Valley have increased in recent decades and are projected to continue increasing well into the future, resulting in a projected increase in water usage and demand.

49. Additionally, the potential effects of climate change are predicted to decrease naturally occurring inflows into the Coachella Valley Groundwater Basin, including the Upper White water and Garnet Hill sub-basins, aquifer and threaten the availability of imported water, resulting in increased extraction of groundwater within the Basin and a corresponding exacerbation of the existing overdraft condition.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

50.   Neither CVWD nor DWA have succeeded in devising a plan to reverse the aquifer's cumulative overdraft condition while meeting current or anticipated future demands for groundwater within the Coachella Valley.  Known comprehensive water planning efforts, and proposed ranges of alternatives, do not adequately address the current and future groundwater quantity and quality problems besetting the Coachella Valley.

51.   The Tribe and its members have established a homeland in the Coachella Valley, including housing, schools, government offices, and cultural and commercial enterprises. The Tribe and its members rely on the groundwater resource to satisfy domestic, cultural, commercial, and other homeland purposes.

52.   The increasing groundwater TDS and salinity levels, subsidence, and decreasing groundwater storage capacity present an immediate and ongoing threat of serious and irreversible injuries to the Tribe and its members.

53.   Groundwater underlying the Reservation is in limited supply and is needed to satisfy the present and future needs of the Tribe and its members. The Defendants' withdrawal and use of the groundwater in the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basins adversely injures and affects the ability of the Tribe and its members to exercise its federal reserved right to the withdrawal, use and enjoyment of that groundwater.

54.   The groundwater underlying the Valley in the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin is the primary source of fresh water within the Reservation, and it has experienced intrusion of salt and other pollutants as a direct result of excessive pumping and reinjection without sufficient treatment activities of the Defendants.   Degradation of the Valley's groundwater quality adversely injures and affects the ability of the Tribe and its members to exercise its federal reserved right to the withdrawal, use and enjoyment of that groundwater.

-14-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

US2008 4583469 1

55.   The Tribe has a prior and paramount ownership interest in sufficient pore space in the aquifer underlying the Coachella Valley and the Tribe's Reservation to store its federally reserved right to groundwater for all present and future purposes.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

56.   The Tribe repeats, realleges and incorporates by reference herein the allegations in paragraphs 1 through 55.

57.   The Tribe and its members have used the land and the natural resources of the Coachella Valley, including its surface water and groundwater resources, since time immemorial and possess aboriginal title to said land and resources that predates the formation of the United States.

58.   By virtue of its aboriginal title to the lands and resources of the Coachella Valley, the Tribe is entitled to a declaration that its aboriginal rights to groundwater from the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin exist in an amount sufficient to meet the aboriginal uses of the Tribe and its members.

59.   The Tribe is entitled to a declaration that its rights to groundwater have a priority date of time immemorial, and that its rights are the senior, prior and paramount water right to Defendants' state law based water rights.

60.   The Tribe is entitled to a declaration that Defendants' past and continued overdraft of the Upper Whitewater and Garnet Hill Sub-basins of the Coachella Valley Groundwater Basin aquifer necessarily and impermissibly interferes with the Tribe's aboriginal groundwater rights and its ability to use and enjoy those rights.

61.   The Tribe and its members have used the land and the natural resources of the Coachella Valley, including its surface water and groundwater resources, since time immemorial. The Executive Orders of 1876 and 1877, as well as other administrative actions, reserved for the Tribe the land comprising the current Agua

-15-

COMPLAINT FOR  DECLARATORY AND INJUNCTIVE RELIEF

1  Caliente Reservation and its resources and impliedly reserved to the Tribe and its

2  members the right to water sufficient to accomplish the homeland purposes of the

3  Reservation.  The implied reservation of the right to water applies to groundwater as

4  well as surface water.

5      62.    The Tribe is entitled to a declaration that it possesses groundwater rights

6  from the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley

7  Groundwater Basin aquifer in sufficient quantities to foster, promote, and fulfill the

8  homeland purposes for which the lands of the Tribe's Reservation were set aside for

9  the Tribe and its members, both for all present and future purposes.

10     63.    The Tribe is entitled to a declaration that its rights to groundwater from

11  the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley

12  Groundwater Basin have a priority date of time immemorial and no later than the

13  Executive Orders of 1876-1877, and that its rights are the senior, prior and paramount

14  water right in the Coachella Valley to Defendants' state law based water rights.

15     64.    The Tribe is entitled to a declaration that Defendants' continued overdraft

16  of the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley

17  Groundwater Basin aquifer necessarily and impermissibly interferes with the Tribe's

18  reserved federal groundwater rights and its ability to use and enjoy those rights.

19     65.    The Tribe is entitled to a declaration that recharge of the Upper

20  Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin

21  aquifer with imported water of a quality that is inferior to the pre-existing

22  groundwater in the aquifer degrades groundwater quality within the Coachella Valley

23  and that such degradation of groundwater quality necessarily and impermissibly

24  interferes with the Tribe's federal reserved groundwater rights and its ability to use

25  and enjoy those rights.

26     66.    The Tribe is entitled to a declaration that it has a prior and paramount

27  ownership interest in sufficient pore space in the Groundwater Basin aquifer

28

-16-

**COMPLAINT FOR  DECLARATORY AND INJUNCTIVE RELIEF**

US2008 4583469 1

1  underlying the Coachella Valley and the Tribe's Reservation to store its Federally

2  reserved right to groundwater for all present and future purposes.

3  **SECOND CLAIM FOR RELIEF**

4  **(Injunctive Relief)**

5      67.    The Tribe repeats and realleges and incorporates by reference herein the

6  allegations in paragraphs 1 through 66.

7      68.    In furtherance of the Tribe's request for Declaratory Relief, the Tribe also

8  seeks permanent injunctive relief to protect its federal reserved groundwater rights.

9      69.    CVWD and DWA pump water unrestrained from the groundwater Upper

10  Whitewater and Garnet Hill sub-basins underlying the Coachella Valley and the

11  Tribe's Reservation.  Withdrawal of groundwater by the Defendants from the aquifer

12  underlying the Coachella Valley, and the Tribe's Reservation, has harmed and

13  continues to cause irreparable harm to the Tribe and its members, by infringing upon

14  the ability of the Tribe and its members to effectively utilize their federally reserved

15  and protected right to that groundwater.

16      70.    The pollution of the groundwater in the aquifer due to the reinjection of

17  low quality Colorado River water has infringed and continues to infringe upon the

18  ability of Tribe and its members to exercise effectively their federally reserved and

19  protected right to that groundwater thereby causing and continuing to cause

20  irreparable harm to the Tribe and its members.

21      71.    The increasing groundwater TDS and salinity levels, subsidence and

22  decreasing groundwater storage capacity associated with the continuing overdraft of

23  the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley

24  Groundwater Basin aquifer and the injection of inferior quality imported water into

25  the aquifer present an immediate and ongoing irreparable harm to the Tribe, its

26  members and the public.

27

28

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

US2008 4583469 1

72.     The Tribe seeks a permanent injunction enjoining the Defendants from withdrawing groundwater from the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin underlying the Coachella Valley and the Tribe's Reservation in conflict with the rights of the Tribe and its members as declared and decreed by this Court.

73.     The Tribe seeks a permanent injunction enjoining the continuing overdraft of the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin aquifer by Defendants.

74.     The Tribe seeks a permanent injunction enjoining the recharge of the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin aquifer with imported water of a quality that is inferior to the pre-existing groundwater in the aquifer without first treating the water.

75.     The Tribe seeks a permanent injunction enjoining Defendants from infringing upon the Tribe's superior, prior and paramount ownership interest in sufficient pore space in the Groundwater Basin aquifer underlying the Coachella Valley and the Tribe's Reservation to store its Federally reserved right to groundwater for all present and future purposes.

76.     The equities and public interest weigh in favor of the Tribe's requests for injunctive relief.

**WHEREFORE**, the Tribe prays and demands an order from this Court that:

1.     Declares that the Executive Orders of 1876 and 1877 and other federal actions impliedly reserved the right to the groundwater underlying the Reservation in an amount sufficient to foster, promote, and fulfill the purposes for which the lands of the Reservation are set aside for the Tribe and its members;

2.     Further declares that the Tribe has aboriginal rights to groundwater from the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley

-18-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

US2008 4583469 1

Groundwater Basin in the Coachella Valley in an amount sufficient to meet and provide for the aboriginal uses of the Tribe and its members;

3.     Further declares that the priority date of the Tribe's groundwater rights from Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin is time immemorial, or at the very latest that the priority date of the Tribe's rights is no later than the Executive Orders of 1876, and 1877;

4.     Further declares that Defendants' overdraft of the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin aquifer necessarily and impermissibly interferes with the Tribe's groundwater rights and its ability to use and enjoy those rights;

5.     Further declares that the intentional introduction into the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin aquifer of imported water that is untreated and of lower quality than the pre-existing groundwater, and the resultant degradation of groundwater quality in and underneath the Coachella Valley, constitutes an impermissible interference with the Tribe's groundwater rights and its ability to use and enjoy those rights;

6.     Quantifies the Tribe's rights to groundwater from the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin underlying the Coachella Valley in an amount necessary and sufficient to satisfy, foster, and promote the homeland purposes of the Tribe's Reservation;

7.     Enjoins Defendants from withdrawing groundwater from the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin underlying the Coachella Valley and the Tribe's Reservation in conflict with the rights of the Tribe and its members as declared and decreed by this Court;

8.     Enjoins the Defendants from overdrafting the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin aquifer;

-19-

US2008 4583469 1

9.   Enjoins the Defendants from injecting into the Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley Groundwater Basin water of a quality that is inferior to the pre-existing groundwater in the aquifer without first treating the water;

10.   Enjoins the Defendants from using pore space underlying the Coachella Valley and the Tribe's Reservation in conflict with the rights of the Tribe and its members as declared and decreed by this Court;

11.   Awards such other and further relief as may be deemed just and proper;

12.   Awards attorney's fees and costs; and

13.   Retains this Court's jurisdiction for purposes of enforcement of its decree.

Dated: May 14, 2013         By _____

Emil W. Herich
Keith M. Harper
Catherine F. Munson
Robert Harmala
KILPATRICK TOWNSEND & STOCKTON LLP
Steven C. Moore
Heather Whiteman Runs Him
NATIVE AMERICAN RIGHTS FUND
Attorneys for *Plaintiff*
Agua Caliente Band Of Cahuilla Indians

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

US2008 4583469 1

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

|  |  |
|---|---|
| Agua Caliente Band of Cahuilla Ind~~~~ *Plaintiff(s)* <br> v. <br><br> Coachella Valley Water District, *Defendant(s)* (*See attached*) | ) ) ) ) ) ) ) ) ) ) ) |

**FILED**  CV  13 - 00883  JGB  SPx

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   F. Thomas Kieley III
1200 Gene Autry Trail South
Palm Springs, CA 92264

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Emil Herich
> Kilpatrick Townsend & Stockton, LLP
> 9720 Wilshire Blvd PH
> Beverly Hills, CA 90212

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

TERRY NAFISI

*CLERK OF COURT*

Date:  **MAY 1 4 2013**

L. MURRA~~

*Signature of Clerk or Deputy Clerk*

(1134)

1  EMIL W. HERICH (CA Bar No. 116783)
   Kilpatrick Townsend & Stockton LLP
2  9720 Wilshire Boulevard, PH
   Beverly Hills, CA 90212
3  Telephone: (310) 777-3730
4  Fax: (310) 860-0363

5  KEITH M. HARPER (D.C. Bar No. 451956) (*pro hac vice* application to be filed)
6  CATHERINE F. MUNSON (D.C. Bar No. 985717) (*pro hac vice* application to be
   filed)
7  ROBERT HARMALA (CA Bar No. 176256)
   Kilpatrick Townsend & Stockton LLP
8  607 14th Street, N.W.
   Washington, D.C. 20005
9  Telephone: (202) 508-5800
10 Fax: (202) 505-5858

11 STEVEN C. MOORE (CO Bar No. 9863) (*pro hac vice* application to be filed)
12 HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671) (*pro hac vice* application
   to be filed)
13 Native American Rights Fund
   1506 Broadway
14 Boulder, CO 80302
   Telephone: (303) 447-8760
15 Fax: (303) 443-7776

16 Attorneys for Plaintiff

17

18                    UNITED STATES DISTRICT COURT   BY FAX

19         CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

20 AGUA CALIENTE BAND OF              CASE NO.
   CAHUILLA INDIANS,
21
                                      **COMPLAINT FOR
22         Plaintiff,                  DECLARATORY AND
                                      INJUNCTIVE RELIEF**
23         v.

24 COACHELLA VALLEY WATER
   DISTRICT, FRANZ DE KLOTZ, ED
25 PACK, JOHN POWELL, JR., PETER
   NELSON, and DEBI LIVESAY, in their
26 Official Capacities as Members of the
   Board of Directors of the COACHELLA
27

28
   _____
                                      COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
   US2008 4583469 1

1 | VALLEY WATER DISTRICT; DESERT
WATER AGENCY; PATRICIA G.
2 | OYGAR, THOMAS KIELEY, III,
JAMES CIOFFI, CRAIG A. EWING, and
3 | JOSEPH K STUART, in their Official
Capacities as Members of the Board of
4 | Directors of the DESERT WATER
AGENCY,
5

6 |        Defendants.

7

8        Comes now the Agua Caliente Band of Cahuilla Indians ("Tribe") and shows as

9  follows:

10                        **JURISDICTION AND VENUE**

11        1.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and

12  1362 because the Tribe is a federally recognized Indian tribe and its claims arise under

13  the Constitution, laws, and treaties of the United States.

14        2.    Venue in this Court is appropriate under 28 U.S.C. § 1391(b) because the

15  land and underlying water at issue, as well as the Defendants, are located within the

16  Central District of California.

17                         **NATURE OF THE ACTION**

18        3.    This is an action to have this Court judicially recognize, declare, quantify

19  and decree to the Tribe its prior and paramount reserved right to sufficient water

20  underlying the Coachella Valley as is necessary to fulfill the aboriginal rights of the

21  Tribe and its members, as well as the present and future homeland purposes of the

22  Tribe's Reservation and to enjoin Defendants from injuring the Tribe and its members

23  by overdrafting the Upper Whitewater and Garnet Hill sub-basins of the Coachella

24  Valley Groundwater Basin aquifer and degrading the groundwater quality or

25  otherwise infringing upon the Tribe's paramount reserved water rights.

26

27

28
                              -2-

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Agua Caliente Band of Cahuilla Indians

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Coachella Valley Water District (CVWD), Franz De Klotz, Ed Pack, John Powell, Jr., Peter Nelson, and Debi Livesay, in their official capacities as directors of CVWD, Desert Water Agency (DWA), Patricia G. Oygar, Thomas Kieley, III, James Cioffi, Craig A. Ewing, and Joseph K. Stuart, in their official capacities as directors of DWA.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Emil W. Herich, Kilpatrick Townsend & Stockton LLP, 9720 Wilshire Blvd., Penthouse Suite, Beverly Hills, CA 90212 (310) 777-3730 (CSB 116783)
Keith M. Harper & Catherine F. Munson, Kilpatrick Townsend & Stockton LLP, 607 14th St. NW, Washington, D.C. 20005, (202) 508-5800 (pending pro hac vice)

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Unknown.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) The Plaintiff seeks a declaration of its senior water rights and pore space storage rights, a declaration that the Defendants have unlawfully interfered with those rights, and a permanent injunction of Defendants' interference with Plaintiff's rights.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: ED CV 13 - 00883 JGB SPx

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

MAY 14 2013

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?    ☐ NO    ☒ YES

If yes, list case number(s):   EDCV05-626-VAP (SGLx)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note**: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Eric W. Kim_      DATE: _5/14/2013_

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |