THIERRY R. MONTOYA (CA Bar No. 158400)
DAVID J. MASUTANI (CA Bar No. 172305)
ALVARADOSMITH, APC
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel:  (213) 229-2400
Fax:  (213) 229-2499

KEITH M. HARPER (D.C. Bar No. 451956, admitted *pro hac vice*)
CATHERINE F. MUNSON (D.C. Bar No. 985717, admitted *pro hac vice*)
MARK REEVES (GA Bar No. 141847, admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 508-5800
Fax:  (202) 508-5858

STEVEN C. MOORE (CO Bar No. 9863, admitted *pro hac vice*)
HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671, admitted *pro hac vice*)
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Tel:  (303) 447-8760
Fax:  (303) 443-7776

Attorneys for Plaintiff
Agua Caliente Band of Cahuilla Indians

# UNITED STATES DISTRICT COURT

## CENTRAL  DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>         Plaintiffs,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>         Defendants. | **CASE NO.:** ED CV 13-00883-JGB-SPX<br><br>**JUDGE:**    Jesus G. Bernal<br><br>**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**<br><br>**DEPT:**    Courtroom 1<br>**DATE:**    December 16, 2013<br>**TIME:**    11:00 a.m.<br><br>**Disc. Cut-off:**    TBD<br>**Motion Cut-off:**    TBD<br>**Trial Date**:    TBD<br><br>**Action Filed:**    May 14, 2013 |

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1   Pursuant to Federal Rule of Civil Procedure 26(f), counsel for the plaintiff and
2   all defendants in the above-styled action participated in an early meeting of counsel on
3   August 8, 2013. Counsel hereby jointly report on their conference and submit the
4   following Joint Rule 26(f) Conference Report and Case Management Proposal for the
5   Court's consideration.

6   **I.   Statement of the Case**

7   Plaintiff's Position:  The Agua Caliente Band of Cahuilla Indians (Plaintiff or
8   Tribe) seeks a declaration and quantification of its aboriginal water rights and its
9   senior, federally reserved rights to groundwater underlying specific portions of the
10  Coachella Valley based on the implied reservation doctrine established in the seminal
11  decision *Winters v. United States*, 207 U.S. 564 (1908). In *Winters*, the United States
12  Supreme Court held that treaties and federal executive orders establishing Indian
13  reservations impliedly reserve for tribes an amount of water necessary to fulfill the
14  purpose for which the reservation was made. Such federally reserved water rights, also
15  called "*Winters* rights," have a priority date of at least the date of the reservation's
16  creation and are superior to water rights perfected later under state law. *Id.* at 577.
17  The Supreme Court reaffirmed the doctrine of federally reserved tribal water rights
18  and described the logic behind it in *Arizona v. California*, 373 U.S. 546 (1963),
19  explaining that "the Government, when it created that Indian Reservation, intended to
20  deal fairly with the Indians by reserving for them the waters without which their lands
21  would have been useless." *Id.* at 600. The Court later applied the doctrine of federally
22  reserved rights to groundwater, holding that "since the implied-reservation-of-water-
23  rights doctrine is based on the necessity of water for the purpose of the federal
24  reservation, … the United States can protect its water from subsequent diversion,
25  whether the diversion is of surface or groundwater." *Cappaert v. United States*, 426
26  U.S. 128, 143 (1976).

27  Only a handful of courts have addressed the particular issue of tribal reserved
28  rights to groundwater. All of those courts, however, apart from one, have recognized

A L V A R A D O S M I T H
A PROFESSIONAL CORPORATION
LOS ANGELES

1  that such rights include groundwater. *See, e.g., In re General Adjudication of the Gila*

2  *River System*, 989 P.2d 739, 745 (Ariz. 1999) (*Gila River III*) (holding that reserved

3  right extends to "whatever particular sources each reservation had at hand" including

4  groundwater); *Confederated Salish and Kootenai Tribes v. Stultz*, 59 P.3d 1093, 1099

5  (Mont. 2002); *United States ex rel. Lummi Indian Nation v. Washington*, 2007 WL

6  4190400 at *1, *aff'd, United States ex rel. Lummi Nation v. Dawson*, 328 F. App'x 462

7  (9th Cir. 2009); FELIX COHEN'S HANDBOOK OF FEDERAL INDIAN LAW

8  (Cohen)§ 19.03[2][b] (2012 ed.); *but see In re Gen. Adjudication of All Rights to Use*

9  *Water in the Big Horn River Sys.*, 753 P.2d 76, 99-100 (Wyo. 1988). This is not

10  surprising. The reserved rights doctrine is based on the necessity of water. Thus, the

11  pertinent question is whether water is necessary to fulfill the present and future

12  purposes of a reservation, not whether the water flows above or below ground. Here,

13  in the desert climate of the Coachella Valley, groundwater is necessary to fulfill the

14  purpose of the Tribe's reservation. Therefore, the Tribe is entitled to a declaration of

15  its *Winters* right with a priority date of 1876, the date of the establishment of the

16  Tribe's reservation.

17      The Tribe also has aboriginal rights to the water resources that ancestors of the

18  Tribe and its members have relied on for millennia for traditional cultural, domestic

19  and agricultural subsistence purposes. Such aboriginal water rights necessarily have a

20  priority date of time immemorial. *United States v. Adair*, 723 F.2d 1394, 1414 (9th

21  Cir. 1983).

22      In addition to a declaration of its senior groundwater rights, the Tribe also seeks

23  to enjoin Defendants from injuring the Tribe and its members by overdrafting the

24  Upper Whitewater and Garnet Hill sub-basins of the Coachella Valley groundwater

25  basin aquifer, degrading the groundwater quality, or otherwise infringing upon the

26  Tribe's rights. It goes without saying that where Congress intended to reserve water

27  necessary to fulfill the purposes of a federal reservation, it intended to reserve both an

28  adequate quantity *and* quality of water. *See, e.g., United States v. Gila River Irrigation*

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

*Dist.*, 920 F. Supp. 1444, 1454-56 (D. Ariz. 1996) (enjoining upstream users from degrading the quality of water to the extent that it was unfit for use in fulfillment of downstream Tribe's reserved right to water); Cohen § 19.03[9] ("[I]t is difficult to draw a meaningful distinction between quantity *and* quality of water for purposes of the *Winters* doctrine."). The Tribe seeks a declaration that its federally reserved groundwater rights include a water quality component, a quantification of that component, and an injunction against activities by the Defendants that impermissibly degrade the quality of the groundwater available to fulfill the Tribe's *Winters* and aboriginal rights.

Lastly, the Tribe seeks a declaration that it beneficially owns the pore space underlying its Reservation. It is settled federal law that tribes are beneficial owners of all "constituent elements of the land itself." *United States v. Shoshone Tribe of Indians of Wind River Reservation in Wyo.*, 304 U.S. 111, 115 (1938). This necessarily includes subterranean storage space such as the pore space at issue here.

This action is limited to the determination and quantification of the Tribe's federal rights to and in groundwater and subterranean pore space; it does not present any questions pertaining to surface water rights, and it specifically does not seek to reopen the Whitewater River adjudication or to adjust or amend any rights decreed or recognized in that adjudication. Nor, in the Tribe's view, does this case involve any state law water rights. The law is clear on this. It is well settled that federal law governs reserved tribal water rights. *See, e.g.*, *Arizona*, 373 U.S. at 597 ("[T]he Indian claims here are governed by the statutes and Executive Orders creating the reservations" and not by state law.) The Tribe reserves the right to bring a future action to address any residual or other rights that it may have in surface waters within the Coachella Valley, including the Whitewater River and its tributaries.

Because this action is limited to the declaration and quantification of senior federal rights that are distinct from, independent of, and superior to any alleged state law rights held by the Defendants or other entities, the Tribe does not believe that any

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**
3738057.3 -- N1431.1

additional parties are or will become necessary to this litigation. The existing
Defendants' interests are identical to those of all claimants of state law rights and will
remain so, and the Defendants are well positioned to represent those interests
throughout this litigation. While the Tribe and the Defendants disagree as to the
necessity of other parties to the eventual quantification of the Tribe's federal rights, all
parties agree that no additional parties are necessary for the litigation of threshold
legal questions pertaining to the declaration of the Tribe's rights.

   Defendants' Position:      The defendant water agencies, Coachella Valley
Water District (CVWD) and Desert Water Agency (DWA) assert that the Tribe has a
right to the use of groundwater under *California* law—and thus has the right to use the
groundwater underlying its reservation in common with other groundwater users—but
that the Tribe does not have a reserved water right to the use of groundwater under
*federal* law, and thus does not have a prior right to use the groundwater as against
other users.  The Supreme Court and the Ninth Circuit have held in limited cases that
Indian tribes have reserved rights under federal law in surface waters appurtenant to
their reservation, but neither the Supreme Court nor any federal appellate court has
ever held that the Indian tribes' reserved rights extend to groundwater.  As the
Supreme Court has stated, "[n]o cases of this Court have applied the doctrine of
implied reservation of water rights to groundwater." *Cappaert v. United States*, 426
U.S. 128, 142 (1976).  The Tribe is attempting to extend the reserved rights doctrine
beyond limits ever recognized by the Supreme Court or any federal appellate court.
Further, the purpose and logic of the reserved rights doctrine does not supports its
extension to groundwater, and thus the Tribe does not have a reserved right in
groundwater under federal law.  The Supreme Court has held that the reserved rights
doctrine applies only to the "very purpose"—and not "secondary" purposes—for
which the federal reservation was created, and only to the extent necessary to prevent
this reservation purpose from being "entirely defeated." *United States v. New Mexico*,
438 U.S. 696, 700, 702 (1978).  Since the Tribe has a right to the use of groundwater

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**
3738057.3 -- N1431.1

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1 under California law, the recognition of a reserved right in groundwater under federal

2 law is not necessary to satisfy the "very purpose" for which the Tribe's reservation

3 was created, or to prevent this reservation purpose from being "entirely defeated."  In

4 determining whether a federal reserved right exists, the Supreme Court weighs and

5 balances (1) Congress' traditional policy of deference to state water law and (2)

6 Congress' policy of ensuring adequate water supplies for federal reservations. *New*

7 *Mexico*, 438 U.S. at 705.  Since the Tribe has a water right in groundwater under

8 California law, the balance of these competing interests weighs heavily in favor of

9 Congress' policy of deference to state law and against the Tribe's reserved right claim

10 to groundwater under federal law.

11     Second, even assuming *arguendo* that the Tribe has a reserved right in the

12 groundwater under federal law, the Tribe's reserved right does not extend to water of

13 a certain *quality*.  The Supreme Court has held that a federal reserved water right is

14 measured in terms of water *quantity*—usually expressed in terms of the amount of

15 water necessary to satisfy the "practically irrigable acreage" of the reservation,

16 *Arizona v. California*, 373 U.S. 546, 600 (1963)—and has never held or suggested

17 that the reserved right is measured in terms of water *quality*.  Since the Tribe has a

18 water right in groundwater under California law, the Tribe has the same rights and

19 remedies as any other groundwater user in California to protect its rights and interests

20 in groundwater quality, and to prevent an alleged "degradation" of groundwater

21 quality.  The balance between Congress' policy of deference to state water law and

22 Congress' policy of ensuring adequate water supplies for federal reservations, weighs

23 heavily against the Tribe's claim that it has a federal reserved right to groundwater of

24 a certain quality.

25     Third, again assuming *arguendo* that the Tribe has a reserved right in

26 groundwater under federal law, the Tribe's reserved right does not include

27 "ownership" of the pore space in the groundwater basin.  Since the Tribe has water

28 rights in groundwater under California law, the Tribe's claimed "ownership" of the

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1  pore space is not necessary to satisfy the "very purpose" for which the Tribe's

2  reservation was created, or to prevent this purpose from being "entirely defeated."

3  *New Mexico*, 438 U.S. at 700, 702.  Water rights are usufructuary and not a right to

4  ownership of the corpus of water itself.  "The one dominant concept which emerged

5  from the development of the water law in the West was that all rights are in the use of

6  the water rather than in the ownership of the corpus."  *Tweedy v. Texaco*, 286 F.Supp.

7  383, 385 (D. Mont. 1968).  Thus, "what is reserved to the Indians is not the corpus of

8  the water but the right to the use of it for the purpose of satisfying a need."  *Id*. at 386.

9  When water is not needed for use, it may be used by others.  *Id*.  As a reserved right is

10 limited only to need, a right to store water not needed cannot be recognized.  Under

11 California law, the storage space in an underground aquifer is a "public resource" that

12 is available to all who use the groundwater, and no single user of groundwater has

13 "ownership" of this public resource.  *Central & West Basin Water Replenishment*

14 *Dist. v. Southern California Water Co.,* 109 Cal.App.4th 891, 904-913 (2003).  Again,

15 Congress' policy of deference to state water law supports the conclusion that

16 California law—which provides that the pore space is a "public resource" available to

17 all who use the resource—applies here, and that the Tribe does not "own" the pore

18 space under federal law.

19      Fourth, the Tribe does not have an "aboriginal" water right with a "time

20 immemorial" priority date.  First, the Tribe's claimed "aboriginal" right is inconsistent

21 with the reserved rights doctrine itself, because the doctrine provides that the holder of

22 a reserved water right has priority based on the date that the reservation was created,

23 *Cappaert v. United States*, 426 U.S. 128, 138 (1976), and not based on "time

24 immemorial."  Second, Congress established a claims procedure in 1851, shortly after

25 California's admission to statehood, for the purpose of resolving disputes concerning

26 land claims in California.  9 Stat. 632 (1851).  The Supreme Court has held that any

27 claims by California Indian tribes to permanent occupancy of their lands were

28 extinguished by the 1851 claims procedure, and that all such lands were part of the

public domain and subject to disposition by the federal government under the federal land laws. *Barker v. Harvey*, 181 U.S. 481 (1901); *Thompson, et al. v. United States*, 13 Ind. Cl. Comm. 369 (1964). In *Barker*, the Supreme Court specifically rejected the claim by the Mission Indians, which include the Tribe, to permanent occupancy of their lands. The Supreme Court's decision in *Barker* was reaffirmed by the Supreme Court in *United States v. Title Ins. & Trust Co.*, 265 U.S. 478 (1923). Therefore, the rights and interests of California's Indian tribes in their reservation lands, whatever they are, are based on the federal government's reservations of the lands and not on theories of "aboriginal" rights.

Fifth, in addition to the above issues, which are raised by the Tribe in its complaint, the defendant water agencies have raised several additional issues in their affirmative defenses. For example, the defendant agencies allege in their affirmative defenses, *inter alia*, that the Tribe's action is barred by the doctrine of laches (because the Tribe has not asserted its claims until this late date, more than a century after the Tribe's reservation was initially created), that the Tribe has unclean hands in asserting its claims (because the Tribe acquires its water supplies by purchasing them from the defendant agencies, which have imported water into the groundwater basin in order to meet the needs of their customers, which include the Tribe), and that the balance of equities weighs in favor of the defendant agencies rather than the Tribe or the Tribe. Sixth, the quantification of the Tribe's alleged water rights would require, at a minimum, that all other groundwater producers from the basin be brought into the action as indispensable parties, because the quantification would affect the rights of all other existing groundwater producers. It may also be necessary to join other overlying landowners who have claims to produce groundwater but are not currently producing it. CVWD's Ninth Affirmative Defense raises the issue of whether the Tribe may represent the interests of allottees of allotted reservation lands in such a quantification, as each allottee's claim would be in conflict with each other's claim and the Tribe's claim of water for tribally owned lands.

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**
3738057.3 -- N1431.1

## II.   The Parties' Proposal for Division of the Case

As discussed in more detail below, the parties agree that there are certain questions of law that are central to the resolution of this case and that are appropriate for summary adjudication. Because the Court's ruling on those questions will significantly affect the scope of and perhaps even the need for certain discovery and additional proceedings, the parties agree, after discussing the matter extensively during and since the Rule 26(f) conference, that considerations of convenience, economy, judicial efficiency, and the interests of justice militate in favor of trifurcating the case so that these legal questions can be resolved early in the case. *See* F. Rule Civ. P. 42(b); *see also, e.g., Arredondo v. Delano Farms Co.*, 2012 WL 2358594. *1 at *11 (E.D. Cal. June 20, 2012) (recognizing the propriety of bifurcating trial of a threshold issue in order to promote judicial economy and clarify the necessary scope of potentially expansive discovery); *Gable v. Land Rover N. Am., Inc.*, 2011 WL 3563097, *1 at **6-7 (C.D. Cal. July 25, 2011) (ordering bifurcation to "serve the interest of judicial economy by allowing the parties to separately and efficiently focus on these distinct issues"); *PLANS, Inc. v. Sacramento City Unified School Dist.*, 752 F. Supp. 2d 1136, 1137 n.4 (E.D. Cal. 2010) (recognizing the appropriateness of bifurcation when there is "a threshold issue upon which the relevance of all other issues in the case depends"). This will have the positive effects of streamlining the litigation, avoiding unnecessary discovery and motion practice, and facilitating early settlement discussions. The Tribe's Complaint asserts four principal claims. The Tribe seeks (1) a declaration and quantification of its federally reserved groundwater rights; (2) a declaration and quantification of its aboriginal groundwater rights; (3) an injunction enjoining the Defendants from infringing upon the Tribe's federally reserved groundwater rights by overdrafting and degrading the quality of groundwater in the Upper Whitewater and Garnet Hill Sub-basins; and (4) a declaration of its rights to pore space and the nature and scope of its ownership interest therein.

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

In light of the complicated factual issues involved in shaping the relief the Tribe seeks through quantification, injunctive relief, and the scope of its rights in the pore space underlying its Reservation, the parties propose a trifurcation of this case. Phase I would consist of a brief discovery period followed by cross-motions for partial summary judgment addressing the core legal issues of whether the Tribe has rights to groundwater, both in the form of aboriginal rights and pursuant to the federal *Winters* doctrine. Phase II would entail more detailed discovery and the litigation of secondary or intermediate questions of law including (1) whether the Tribe beneficially owns pore space underlying its Reservation;  and (2) whether the Tribe's groundwater rights include a water quality component. Phase II also will address certain defenses raised in the Defendants' answers, namely: (a) whether the Tribe's reserved right has a water quality component (Affirmative Defense Five); (b) whether the Tribe owns the pore space in the groundwater basin (Affirmative Defense Six); and (c) the applicability of certain equitable defenses raised by the Defendants – namely, laches, balance of the equities, and unclean hands (Affirmative Defenses Twelve, Thirteen and Fourteen). Phases I and II would not address any other affirmative defenses or issues pertaining to quantification of any of the Tribe's groundwater rights. They would not include quantification of the Tribe's groundwater rights, nor would they include the determination of a quantification standard for the water quality component of the Tribe's groundwater rights, if any, or a declaration of the specific amount of pore space to which the Tribe is entitled. They would be limited to the Court's declaration that these rights exist and are not precluded by the equitable defenses identified above. Quantifying each of those rights will be a fact-intensive undertaking that will be reserved for Phase III of the litigation.

Phase III of the case will involve quantification of the Tribe's rights to groundwater, including the determination of the appropriate level of water quality if the Tribe's rights are found to include a quality component, quantifying any tribal rights to pore space that the Court has declared, assessing the validity of any of the

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendants' remaining defenses, and the shaping of appropriate injunctive relief. Resolution of these issues will require substantial factual discovery and extensive expert opinion testimony that will be extraordinarily costly and time consuming.

Additionally, the Defendants contend that quantification of the Tribe's rights will require the significant expansion of the litigation via the joinder of many additional parties. While the Tribe disagrees with that position, all parties agree that any such joinder is unnecessary for the litigation of the Phase I and Phase II issues and could be rendered moot depending on how the Court rules on those issues or by an intervening settlement. By addressing the underlying legal issues in Phases I and II, the Court will allow the parties to focus Phase III discovery and could obviate the need for further development of certain issues, claims, and defenses. Avoiding unnecessary factual development of claims and defenses that the Court rules untenable as a matter of law will serve the interests of judicial economy and efficiency, reduce the litigation burdens on all parties, and likely will speed the ultimate resolution of this litigation.

The Defendants and the Tribe agree that separating the litigation of the core legal issues from the fact-intensive, contingent quantification inquiries will benefit the Court and the parties and is appropriate under Rule 42(b).

## III.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362 because the Tribe is a federally recognized Indian tribe and its claims arise under the Constitution, laws, and treaties of the United States.

## IV.  Legal Issues

The key legal issues in this case are as follows:

1. Does the Tribe have an implied reservation of water rights under the *Winters* doctrine?

2. Does the Tribe have a valid claim to aboriginal groundwater rights?

///

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**
3738057.3 -- N1431.1

3.  Do the Tribe's groundwater rights, if any, include an element of water quality as well as quantity?

4.  Does the Tribe beneficially own pore space underlying its Reservation?

5.  Do the doctrines of laches, balance of the equities, or unclean hands prevent the Tribe from asserting any of its claimed rights in this litigation?

6.  If the Tribe does possess the groundwater rights that it claims in this litigation, how should those rights be quantified?

7.  Can the Defendants be enjoined from conduct that allegedly violates the Tribe's groundwater rights, including conduct that contributes to overdraft of the aquifer and artificial recharge of the aquifer with untreated Colorado River water?

8.  Can the Tribe represent the interests of the allottees of allotted reservation lands regarding the quantification of any groundwater rights of the allotted lands?

9.  Are other groundwater producers and overlying landowners in the basin necessary and indispensable parties to the quantification and prioritization of groundwater rights in the basin?

## V.   Parties, Evidence, Etc.

### A.   Parties

The parties are limited to those set forth in the case caption. The parties do not believe that the participation of any additional parties is mandatory for the resolution of the Phase I and II issues and are presently unaware of any entities that have expressed intent to intervene.  It is possible that the United States may seek to intervene to assert the Tribe's federally reserved rights, title to which is held in trust by the United States for the benefit of the Tribe.

As set forth in more detail below, the parties disagree as to whether the participation of additional parties will be necessary in Phase III. This will be one of

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1   the issues addressed at a conference of counsel following the Court's resolution of the

2   Phase I and II issues.

3        B.    Evidence

4        The parties have yet to identify any witnesses or documentary evidence

5   pertinent to the key issues in the case, although they have engaged in substantial

6   preliminary document exchanges in accordance with the initial disclosure

7   requirements of the Federal Rules of Civil Procedure. As set forth above, the parties

8   believe that the proposed Phase I issues are appropriate for summary adjudication with

9   minimal witness testimony or documentary evidence.

10  **VI.   Damages & Insurance**

11       The Tribe seeks only declaratory and injunctive relief, so damages and

12  insurance are not at issue in this case.

13  **VII.  Motions**

14       For Phase I, the parties anticipate cross-motions for summary judgment/partial

15  summary judgment, as set forth in the statements of the case.  The parties do not

16  anticipate in Phase I any motions to amend pleadings or to transfer venue.  Phase II,

17  with the Court's approval, would entail a second round of cross-motions for summary

18  judgment/partial summary judgment.

19       If the Phase I and II motions do not dispose of the case by dismissal or lead to a

20  settlement, the defendants assert that the quantification and prioritization of water

21  rights will require joinder of additional parties by appropriate motion under Rule 19 or

22  the dismissal of the case or appropriate limitation on relief if the parties cannot be

23  joined. Additional motions for partial summary judgment may be appropriate for

24  some issues in Phase III.

25  **VIII. Manual for Complex Litigation**

26       The procedures from the Manual for Complex Litigation (MCL) certainly will

27  not be necessary during Phase I or II of this litigation. It is unclear whether use of the

28  MCL procedures would be necessary or helpful in Phase III. This will depend in large

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**
3738057.3 -- N1431.1

part on the Court's resolution of the Phase I and II issues and the possible intervention or joinder of additional parties in Phase III. The Tribe believes that all of the issues in this case can be resolved completely without the participation of additional groundwater users or overlying landowners who have or claim rights to groundwater under state law. Accordingly, the Tribe does not believe that this case will ever call for use of the MCL procedures. The Defendants believe that the participation of additional parties may be required for Phase III, depending on the resolution of Phase I and II issues. Should the Court agree with the Defendants' position, it may be helpful to consider the use of MCL procedures in Phase III. The parties will discuss this issue further during a conference of counsel after the Court's ruling on the Phase I and II issues and submit a recommendation to the Court at that time.

## IX.   **Status of Discovery**

The parties have yet to engage in any discovery beyond their initial disclosures. As described in their proposed discovery plan, the parties made their initial disclosures on September 20, 2013 and are in the process of reviewing and identifying additional potentially relevant materials to disclose. The parties anticipate that the Phase I issues will require very limited additional discovery.

## X.   **Proposed Discovery Plan**

Counsel have conferred and agree regarding the following discovery-related issues set forth in Federal and Local Rules 26:

A.   Discovery Plan & Cut-Off

1.   The parties made initial disclosures pertaining to all Phase I issues on September 20, 2013.  The parties agree that is appropriate to defer initial disclosures on Phase II and III issues until the conclusion of Phase I.

2.   The parties agree that with respect to Phase I and Phase II, experts should be disclosed at least 90 days prior to the filing of cross motions for summary judgment and for Phase III, 90 days prior to any trial date.

///

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

Rebuttal experts should be disclosed no more than 30 days after the disclosure of the expert whose testimony is to be rebutted.

3.  Pretrial disclosures for Phase III should occur at least 30 days prior to any trial date.

4.  For Phase I of the case, necessary discovery will be limited to the issues of (1) the Tribe's historic and possibly current use of groundwater; and (2) the purposes for which the Reservation was established. The parties currently do not envision a need for any additional discovery in Phase I. Phases II and III of the litigation will require extensive discovery. Depending on how the Court rules on the issues raised in Phase I, subjects may include: (1) information about groundwater use in the relevant sub-basins, including data pertaining to groundwater pumping and natural and artificial groundwater recharge; (2) information pertaining to the effects of overdraft on the aquifer; (3) current and historical water quality information regarding the aquifer and imported Colorado River water, and any correlation between declining water quality in the aquifer and use of Colorado River water for artificial recharge; (4) alternative methods of groundwater recharge, including use of higher quality water and pretreatment of Colorado River water; (5) data necessary to quantify the Tribe's water rights, including additional information regarding the purposes of the Reservation's creation, historical water usage by the Tribe and its members, and reasonable future water usage; (6) data regarding pore space usage and groundwater banking beneath the Tribe's Reservation lands; and (7) information regarding priority dates of other groundwater rights claimants.

5.  The parties agree to open discovery for Phase I on January 3, 2014 and to disclose Phase I experts and their reports on or before Monday, April 7, 2014. Assuming that the Court approves the parties' trifurcation

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

proposal, the parties agree that Phase I discovery should be completed by Monday, June 2, 2014 and that cross-motions for partial summary judgment on Phase I issues could be filed by Thursday, July 3, 2014.

6. Discovery, like the case itself, should be trifurcated, with the vast majority of factual discovery delayed until Phases II and III of the litigation. Counsel suggest that the parties meet within three weeks of the Court's decision addressing the Phase I legal issues to discuss the subjects on which discovery will be necessary for Phase II in light of the Court's initial rulings and that the parties submit an updated report to the Court within 14 days of that meeting. Counsel suggest that the same process be repeated following the Court's decision addressing Phase II issues.

B. Electronically Stored Information (ESI)

The parties do not foresee a need for extensive electronic discovery in this case, particularly for Phase I. To the extent that the production of ESI is necessary, ESI production to Plaintiff should include: (1) single page tiffs/jpgs; (2) native files; (3) an opt or LFP load file; (4) a Concordance DAT file; and (5) document level text files. This is the standard delivery form for use in Concordance, Summation, or Relativity document management databases.

C. Privilege Issues

1. The parties do not presently foresee any atypical or unusual privilege issues in this litigation. Should any issues concerning privilege arise, the parties will engage in good faith efforts to resolve them informally without the involvement of the Magistrate Judge.

2. The parties do not foresee any difficulty in agreeing to a claw back agreement. Tribal counsel will prepare a proposed agreement for defense counsel's review and comment. Upon reaching agreement on the terms of

///

JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL

3738057.3 -- N1431.1

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

a mutually acceptable agreement, the parties will submit the agreement to the Court for inclusion in an order as the Court deems appropriate.

### D.    Discovery Limitations

Any discovery beyond the Phase I initial disclosures and discovery necessary to facilitate Phase I motions should be stayed until the Court has ruled on the legal issues presented in Phase I and the parties have had an opportunity to further confer regarding the effect of the Court's Phase I rulings on the scope of necessary discovery.

## XI.    **Expert Discovery**

The parties have yet to identify any testifying experts, but expert testimony undoubtedly will be required. When the parties identify testifying experts, they will disclose those experts in accordance with the deadlines imposed by the Federal Rules of Civil Procedure and any applicable local rules or orders of the Court.

## XII.    **Dispositive Motions**

As set forth above, the parties believe that the core legal issues in this case – the Phase I and II issues – can be addressed through cross-motions for partial summary judgment. Depending on the outcome of those motions, additional issues may be appropriate for summary adjudication in Phase III.

## XII.    **Alternative Dispute Resolution (ADR)**

The parties believe that the third ADR option set forth in Local Rule 16-15.4 – appearance before a private neutral of the parties' choosing – is best suited for this case. The parties further believe that any ADR should be postponed, at a minimum, until the Court rules on the Phase I legal issues. The parties engaged in informal discussions and efforts to resolve their dispute prior to the Tribe's initiation of litigation, and those discussions quickly reached an impasse because the parties disagree on fundamental legal issues regarding the existence and nature of the Tribe's water rights. Future ADR efforts would benefit greatly from the Court's guidance on these fundamental legal questions, and the parties agree that a negotiated resolution of this dispute is extremely unlikely in the absence of such guidance from the Court.

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

3738057.3 -- N1431.1

The parties are filing an ADR request form contemporaneously with this report in accordance with Local Rule 16-15.

## XIII.  **Trial Estimate**

The legal issues presented in Phase I likely will be appropriate for summary adjudication without trial. Should the case proceed to Phase II, trial time will depend on the outcome of Phase I and the number of claims that remain to be adjudicated on the merits. The same is true for Phase III. The parties will include a realistic, good-faith estimate of the time required for any Phase II trial in their proposed report to the Court following its adjudication of the Phase I legal issues.

## XIV.  **Trial Counsel**

The Tribe's trial counsel will be Keith Harper, Catherine Munson, and Steven Moore.

The Coachella Valley Water District defendants' trial counsel will be Steven B. Abbott and Gerald D. Shoaf.

The Desert Water Agency defendants' trial counsel will be Roderick E. Walston, Arthur L. Littleworth, Michael T. Riddell, Piero C. Dallarda, and Steven G. Martin.

## XV.  **Independent Expert or Master**

The parties do not believe that the appointment of an independent expert or special master is necessary in this case.

## XVI.  **Motion Schedule**

The parties anticipate filing cross-motions for partial summary judgment on all Phase I issues. In the event that the case proceeds to Phase II, the parties will propose motions schedule after the Court's ruling on Phase I issues. Phase I dispositive motions should be filed 30 days after the close of Phase I discovery.

///

///

///

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**
3738057.3 -- N1431.1

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

1   DATED:  December 2, 2013                    ALVARADOSMITH, APC

2                                               KILPATRICK TOWNSEND & STOCKTON, LLP

3                                               NATIVE AMERICAN RIGHTS FUND

4

5                                               By:  /s/ David J. Masutani

6                                                    THIERRY R. MONTOYA
                                                     DAVID J. MASUTANI

7                                                    Attorneys for  Plaintiff
8                                                    Agua Caliente Band of Cahuilla Indians

9

10  DATED:  December 2, 2013                    REDWINE AND SHERRILL

11

12                                              By:   /s/Gerald D. Shoaf

13                                                   STEVEN B. ABBOTT
                                                     GERALD D. SHOAF
                                                     Attorneys for  Defendants
14                                                   Coachella Valley Water District, Franz De
                                                     Klotz, Ed Pack, John Powell, Jr., Peter
15                                                   Nelson, and Debi Livesay, in their official
                                                     capacities as members of the Board of
16                                                   Directors of the Coachella Valley Water
                                                     District

17

18  DATED:  December 2, 2013                    BEST BEST & KRIEGER LLP

19

20                                              By: /s/Roderick E. Walston

21                                                   RODERICK E. WALSTON
                                                     ARTHUR L. LITTLEWORTH
22                                                   PIERO C. DALLARDA
                                                     STEVEN G. MARTIN
23                                                   Attorneys for  Defendant
                                                     Desert Water Agency

24

25

26

27

28

ALVARADOSMITH
A PROFESSIONAL CORPORATION
LOS ANGELES

JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL
3738057.3 -- N1431.1

## Certification in Compliance with Local Rule 5-4.3.4

I hereby certify that, pursuant to Local Rule 5-4.3.4, I have obtained the authorization from the above signatories representing defendants to file the above-referenced document, and that the above signatories concur in the filing's content.

DATED:  December 2, 2013          ALVARADOSMITH, APC

KILPATRICK TOWNSEND & STOCKTON, LLP

NATIVE AMERICAN RIGHTS FUND


By: /s/ David J. Masutani
    THIERRY R. MONTOYA
    DAVID J. MASUTANI

    Attorneys for Plaintiff
    Agua Caliente Band of Cahuilla Indians

**JOINT RULE 26(f) CONFERENCE REPORT AND CASE MANAGEMENT PROPOSAL**

3738057.3 -- N1431.1