SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

F. PATRICK BARRY, Senior Trial Attorney
patrick.barry@usdoj.gov
DARON T. CARREIRO, Trial Attorney
daron.carreiro@usdoj.gov
YOSEF M. NEGOSE, Trial Attorney
yosef.negose@usdoj.gov
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
Phone:      (202) 305-0269
Facsimile:   (202) 305-0725
Attorneys for Plaintiff-Intervenor
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS, | CASE NO. 5:13-cv-00883-JGB-SP |
| Plaintiff, | |
| and | **UNITED STATES' NOTICE OF MOTION AND PHASE I MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT** |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |

1
2      v.

3   COACHELLA VALLEY WATER
   DISTRICT, et al.,
4
5           Defendants.

BEFORE:   Judge Jesus G. Bernal
DATE:      February 9, 2014
DEPT:     Courtroom 1
TIME:     9:00 a.m.

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 9, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jesus G. Bernal, at the United States District Court for the Central District of California, located at 3470 Twelfth Street, Riverside, California 92501, the United States of America ("United States") intends to move, and hereby moves, for summary judgment on Phase I issues pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Order for Revised Case Management and Scheduling Orders, ECF No. 69.

This motion is based on the attached Memorandum of Points and Authorities in support of the motion, the Statement of Undisputed Facts being filed today by the Agua Caliente Band of Cahuilla Indians ("Tribe"), the attached Proposed Order, all other pleadings and papers on file in this case, and upon such other and further arguments, documents, and grounds as may be advanced in the future.

1    The United States also joins the motion for summary judgment being filed

2

3    today by the Tribe.

4    This motion is made following the conference of counsel pursuant to L.R. 7-

5    3, which took place on October 14, 2014.

6

7

8    Dated: October 21, 2014          Respectfully submitted,

9

10                                     SAM HIRSCH
                                       Acting Assistant Attorney General
11                                     Environment & Natural Resources Division
                                       United States Department of Justice
12

13                                     ____/s/  F. Patrick Barry_____

14                                     F. PATRICK BARRY, Senior Trial Attorney
                                       DARON T. CARREIRO, Trial Attorney
15                                     YOSEF M. NEGOSE, Trial Attorney
16                                     Indian Resources Section
                                       Environment and Natural Resources Division
17                                     United States Department of Justice
18                                     P.O. Box 7611
                                       Ben Franklin Station
19                                     Washington, DC 20044
20                                     Phone:      (202) 305-0269
21                                     Facsimile:   (202) 305-0725
                                       patrick.barry@usdoj.gov
22                                     daron.carreiro@usdoj.gov
23                                     yosef.negose@usdoj.gov

24
                                       Attorneys for Plaintiff-Intervenor
25                                     UNITED STATES OF AMERICA

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................ii

INTRODUCTION ...........................................................................................1

SUMMARY OF FACTS RELEVANT TO SUMMARY JUDGMENT ..................2

STANDARD OF REVIEW ...............................................................................3

ARGUMENT ..................................................................................................4

    I.  RESERVED WATER RIGHTS ATTACH AS A MATTER OF LAW
    UPON THE ESTABLISHMENT OF AN INDIAN RESERVATION .........4

    II.  INDIAN RESERVED WATER RIGHTS ARE NOT LIMITED TO
    SURFACE WATER ...................................................................................7

        A. Ninth Circuit and Other Federal Case Law Confirms that the
        Reserved Rights Doctrine Extends to Groundwater ...........................7

        B.  State Case Law Holds that the Reserved Rights Doctrine Extends
        to Groundwater...................................................................................11

        C.  California State Law Expressly States that the Reserved Rights
        Doctrine Extends to Groundwater......................................................14

        D.  CVWD Already Litigated and Lost this Issue .............................15

    III.  WINTERS RIGHTS ARE FEDERAL RIGHTS AND CANNOT BE
    LIMITED, DENIED, OR LOST THROUGH APPLICATION OF STATE
    LAW ....................................................................................................16

        A. *Winters* Rights Prevail Over State Law ......................................17

        B.  *Winters* Rights Arise Without Regard to Equities That May Favor
        Competing Water Users .....................................................................20

        C.  State Law Does Not Obviate the Tribe's Federally Reserved Water
        Rights ................................................................................................22

CONCLUSION...............................................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**

*Arizona v. California*, 373 U.S. 546 (1966) ......................................................*passim*

*Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545 (1983) .................17

*Cappaert v. United States*, 426 U.S. 128 (1976) ..............................................*passim*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................3

*Colorado River Water Conservation District. v. United States*,
   424 U.S. 800 (1976) .......................................................................................17

*Colville Confederated Tribes v. Walton*, 460 F. Supp. 1320 (E.D. Wash. 1978) .....7

*Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9th Cir. 1981) ............*passim*

*Colville Confederated Tribes v. Walton*, 752 F.2d 397 (9th Cir. 1985)............16, 20

*Gila River Pima-Maricopa Indian Community v. United States*,
   9 Ct. Cl. 660 (1986) .........................................................................................7

*Gobin v. Snohomish County.*, 304 F.3d 909 (9th Cir. 2002) ...................................18

*John v. United States*, 720 F.3d 1214 (9th Cir. 2013) .....................................*passim*

*Preckwinkle v. Coachella Valley Water District*, Case No. 05-cv-626,
   ECF No. 210 (C.D. Cal. Aug. 30, 2011) ...................................................8, 15, 16

*Soboba Band of Mission Indians v. Unites States*, 37 Ind. Cl. Comm.
   326 (1976) .......................................................................................................7

*State of New Mexico ex rel. Reynolds v. Aamodt*,
   618 F. Supp. 993 (D.N.M. 1985) .......................................................................7

*Tweedy v. Texas Co.*, 286 F. Supp. 383 (D. Mont. 1968) .................................7, 10

*United States v. New Mexico*, 438 U.S. 696 (1978) ...............................................17

*United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983)......................................17, 18

*United States v. Ahtanum Irr. Dist.*, 236 F.2d 321 (9th Cir. 1956) ........................17

*United States v. Anderson*, 736 F.2d 1358 (9th Cir. 1984) .......................................5

*United States v. Cappaert*, 508 F.2d 313 (9th Cir. 1974)...............................7, 9, 21

*United States v. City of Tacoma*, 332 F.3d 574 (9th Cir. 2003) ...........................20

*United States v. Fallbrook Public Utility Dist.*, Case No. 1247-SD-C
(S.D. Cal. 1962) ...............................................................................................8

*United States v. Walker River Irrigation District*,
104 F.2d 334 (9th Cir. 1939)...................................................................19, 21

*United States v. Washington*, No. 2:01-cv-47-TSZ, ECF No. 304
(W.D. Wash. Feb. 24, 2003) ...........................................................................8

*United States v. Washington*, 375 F. Supp. 2d 1050
(W.D. Wash. 2005) ..........................................................................................8

*Winters v. United States*, 207 U.S. 564 (1908)...................................................*passim*

**State Cases**

*Confederated Salish & Kootenai Tribes of the Flathead Reservation v. Stults*,
59 P.3d 1093 (Mont. 2002) ...........................................................................12

*In re General Adjudication of All Rights to Use Water in the Gila River Sys. &
Source*, 989 P.2d 739 (1999)...............................................................11, 12, 14

*In re Gen. Adjudication of All Rights to Use Water in the Big Horn River Sys.*,
753 P.2d 76 (Wyo. 1988) ...............................................................................13

*In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 749 P.2d 324 (1988)....23

*Katz v. Walkinshaw*, 141 Cal. 116, 74 P. 766 (1903) ............................................23

**Federal Statutes**

25 U.S.C. § 1322(b) ...................................................................................19

28 U.S.C. § 1360(b) ...................................................................................19

*Western Water Policy Review Act of 1992*, Pub. L. 102-575, title XXX,
   § 3002(8), 106 Stat. 4600 ....................................................................18

**Federal Rules**

Fed. R. Civ. P. 56(a) ...................................................................................3

**State Codes**

2014 Cal. Legis. Serv. 346 (S.B. 1168 (West), *to be codified at*
   Cal. Water Code § 10720.3(d) ................................................14, 15, 19

**Other Authorities**

A. Dan Tarlock, *Law of Water Rights and Resources*, § 9:42 (West 2014) ...........14

Executive Order, May 15, 1876 ...................................................3, 6, 23

Executive Order, September 29, 1877 ........................................3, 6, 23

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Pursuant to Rule 56, Fed. R. Civ. P., the United States respectfully moves this Court for summary judgment regarding the following issues: (a) whether the establishment of the Agua Caliente Reservation in 1876 and 1877 reserved for the Tribe the water necessary to make the Reservation livable; and (b) whether the reserved water right of the Tribe includes groundwater resources underlying the Reservation.

Defendants, Coachella Valley Water District ("CVWD") and Desert Water Agency ("DWA") (collectively referred to as "Defendants"), deny that the Tribe has a reserved water right to either surface water or groundwater resources.  DWA Answer (ECF No. 72) at 5; CVWD Answer (ECF No. 73) at 6-7, 9-13. As explained below, controlling Supreme Court case law and analogous federal and state case law hold – as a matter of law – that an Indian reservation implicitly has reserved rights to the use of water sufficient to accomplish the purposes of the reservation.  Thus, the Agua Caliente Band's historical use of lands and water in the Coachella Valley – as well as the formal establishment of a reservation for the Tribe's "permanent use and occupancy" in 1876, and additional "reservation for Indian purposes" in 1877 – reserved sufficient water to "satisfy the future as well as the present needs of the Indian Reservations." *Arizona v. California*, 373 U.S.

546, 600 (1963), *judgment entered sub nom.*, 376 U.S. 340 (1964), *amended sub nom.*, 383 U.S. 268 (1966), and *amended sub nom.*, 466 U.S. 144 (1984). This water was not then and is not now limited to surface water.

This memorandum first addresses the well-established rule that when land is set aside for the benefit of an Indian tribe, a reserved right to the use of water sufficient to accomplish the purposes of the reservation is also set aside. Part II of the memorandum demonstrates that the reserved water rights doctrine logically extends to groundwater, as well as surface water, as confirmed by federal and state court case law and recent California state legislation. Part III of the memorandum addresses the attributes of a reserved water right establishing that Defendants' affirmative defenses fail as a matter of law.

## SUMMARY OF FACTS RELEVANT TO SUMMARY JUDGMENT

The Agua Caliente Band and its ancestors have occupied and used their lands in the Coachella Valley since time immemorial.[1] On May 15, 1876, President Grant issued an executive order specifically identifying lands for the "Agua Caliente," among other Mission Indian lands, to "be, and the same hereby

---

[1] The United States includes this summary facts for background purposes for Phase I of this litigation, and relies on and refers the Court to the Statement of Undisputed Facts being filed today by the Tribe. Phase III of this litigation will specifically address quantification of the reserved water right, including a determination of the priority date for the reserved water right.

are, withdrawn from sale and set apart *as reservations for the permanent use and occupancy* of the Mission Indians in Southern California."  Executive Order, May 15, 1876 (Tab 1 in the Tribe's Evidentiary Notebook submitted to the Court) (emphasis added).  On September 29, 1877, President Hayes issued a second executive order identifying specific additional sections of land adjacent to the 1876 withdrawal to be "withdrawn from sale and settlement, and set apart as a *reservation for Indian purposes* for certain of the Mission Indians."  Executive Order, September 29, 1877 (Tab 1 in the Tribe's Evidentiary Notebook submitted to the Court) (emphasis added).

## **STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

# ARGUMENT

## I.   RESERVED WATER RIGHTS ATTACH AS A MATTER OF LAW UPON THE ESTABLISHMENT OF AN INDIAN RESERVATION.

The law is well-established that the creation of an Indian reservation implicitly reserves a right to the use of water sufficient to accomplish the purposes of the reservation.  *Winters v. United States*, 207 U.S. 564 (1908). [2]

Accordingly, at least by the time that the United States established the Agua Caliente Reservation in 1876 and expanded the reservation in 1877, if not before, there was a concomitant implied intent to reserve water necessary to make the reservation livable.

> This Court has long held that when the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation.

*Cappaert v. United States*, 426 U.S. 128, 138 (1976); s*ee also John v. United States*, 720 F.3d 1214, 1225 (9th Cir. 2013) ("Since 1908, the courts have also

---

[2] "The Court in Winters concluded that the Government, when it created that Indian Reservation, intended to deal fairly with the Indians by reserving for them the waters without which their lands would have been useless. Winters has been followed by this Court as recently as 1939. . . . We follow it now and agree that the United States did reserve the water rights for the Indians effective as of the time the Indian Reservations were created."  *Arizona v. California*, 373 U.S. at 600.

United States' Phase I Mot. for Summ. J.        -4-
Case No. 5:13-cv-0883-JGB-SP

recognized that a federal reservation of land carries with it the right to use water necessary to serve the purposes of federal reservations."), *cert. denied*, 134 S. Ct. 1759 (2014); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 46 (9th Cir. 1981) ("*Walton I*") (where lands are withdrawn for specific federal purposes, and "water is needed to accomplish those purposes, a reservation of appurtenant water is implied"); *United States v. Anderson*, 736 F.2d 1358, 1362, 1363 (9th Cir. 1984) ("When the United States establishes a federal reservation, it reserves the land and impliedly reserves the right to sufficient unappropriated water to fulfill the purposes of the reservation."); [3] *Arizona v. California*, 373 U.S. at 596 ("The Master found both as a matter of fact and law that when the United States created these reservations or added to them, it reserved not only land but also the use of enough water from the Colorado to irrigate the irrigable portions of the reserved lands.").

The *Winters* doctrine applies, and an adequate supply of water to accomplish the purpose of the reservation is reserved, regardless of whether the Indian reservation is established by treaty, Congressional Act, or Executive Order. *Arizona v. California,* 373 U.S. at 598.

---

[3] The quantification of the reserved water right – the quantity of water reserved to meet the purposes of the reservation – is scheduled to be addressed in Phase III of this litigation.

Here, there is no dispute that in 1876, and again in 1877, the United States set aside lands to provide the Tribe with a reservation for its "permanent use and occupancy" (1876 Executive Order) and to provide land "set apart as a reservation for Indian purposes" (1877 Executive Order).  The specific purpose in setting aside this land to provide a homeland for the Agua Caliente Band within its aboriginal territory simultaneously demonstrates that the reservation included land as well as water.  *See Walton I*, 647 F.2d at 47 ("The specific purposes of an Indian reservation, however, were often unarticulated.  The general purpose, to provide a home for the Indians, is a broad one and must be liberally construed.") (footnotes omitted).[4]

---

[4] In *Winters,* the reservation of water turned upon the finding that the "lands were arid, and, without irrigation, were practically valueless."  *Winters*, 207 U.S. at 576.  In *Arizona v. California,* the Supreme Court rejected Arizona's argument that there was a "lack of evidence showing that the United States in establishing the reservations intended to reserve water for them," stating that because the lands were arid, water was needed to "sustain life."  *Arizona v. California*, 373 U.S. at 598.  The Court also stated that "[i]t is impossible to believe that when [the United States created these] reservations [the United States was] unaware that most of the lands were of the desert kind—hot, scorching sands—and that water . . . would be essential to the life of the Indian people."  *Id. at* 598-99.

United States' Phase I Mot. for Summ. J.       -6-
Case No. 5:13-cv-0883-JGB-SP

## II. INDIAN RESERVED WATER RIGHTS ARE NOT LIMITED TO SURFACE WATER

### A. Ninth Circuit and Other Federal Case Law Confirm that the Reserved Rights Doctrine Extends to Groundwater.

Federal courts have overwhelmingly interpreted the *Winters* doctrine ("*Winters* rights") as applicable not only to surface water, but also to groundwater. *See United States v. Cappaert*, 508 F.2d 313, 317 (9th Cir. 1974) ("the United States may reserve not only surface water, but also underground water"), *aff'd on other grounds*, 426 U.S. 128; *Tweedy v. Texas Co.*, 286 F. Supp. 383, 385 (D. Mont. 1968) ("The *Winters* case dealt only with the surface water, but the same implications which led the Supreme Court to hold that surface waters had been reserved would apply to underground waters as well."); *Colville Confederated Tribes v. Walton*, 460 F. Supp. 1320, 1326 (E.D. Wash. 1978) ("[*Winters* rights] extend to groundwater as well as surface water"), *aff'd in part on other grounds, and rev'd in part on other grounds*, 647 F.2d 42 (9th Cir. 1981); *State of New Mexico ex. rel. Reynolds v. Aamodt*, 618 F. Supp. 993, 1010 (D.N.M. 1985) (Pueblo water rights extend to groundwater as an integral part of the hydrologic cycle); *Gila River Pima-Maricopa Indian Community v. United States*, 9 Ct. Cl. 660, 699 (1986) ("[t]he *Winters* doctrine . . . includes an obligation to preserve all water sources within the reservation, including groundwater"); *Soboba Band of Mission Indians v. United States*, 37 Ind. Cl. Comm. 326, 341 (1976) ("the Winters

Doctrine applies to all waters appurtenant to the reservations, including wells, springs, streams, and percolating and channelized ground waters"); Interlocutory Judgment No. 41, *United States v. Fallbrook Pub. Util. Dist.*, Case No. 1247-SD-C (S.D. Cal. 1962) (reserved groundwater rights held in trust by the United States for the Ramona, Cahuilla and Pechanga Indian Reservations), *aff'd*, 347 F.2d 48, 61 (9th Cir. 1965); Order, *United States v. Washington*, Case No. 2:01-cv-47-TSZ, ECF No. 304, slip op. at *8 (W.D. Wash. Feb. 24, 2003) ("as a matter of law the Court concludes that the reserved water rights doctrine extends to groundwater")[5]; Order, *Preckwinkle v. Coachella Valley Water Dist.*, Case No. 5:05-cv- 626, ECF No. 210, slip op. at *28 (C.D. Cal. Aug. 30, 2011) ("Plaintiffs' reserved water rights give them a federally recognized right to use a certain amount of groundwater in the [Coachella Valley] Water District's Area of Benefit.").[6]

In *Cappaert*, the federal reservation of Death Valley National Monument included Devil's Hole, a deep limestone cavern containing a pool of water that the

---

[5] This 2003 unpublished Order was referred to in a 2005 published opinion, *United States v. Washington*, 375 F. Supp. 2d 1050, 1058 (W.D. Wash. 2005) ("reserved *Winters* rights on the Lummi Reservation extend to groundwater"). While the district court later vacated specific orders pursuant to settlement, including the 2005 Order, it did not vacate its 2003 groundwater ruling. *See U.S. ex rel Lummi Indian Nation v. Washington*, C01-0047Z, 2007 WL 4190400 (W.D. Wash. Nov. 20, 2007), *aff'd sub nom.*, 328 F. App'x 462 (9th Cir. 2009).

[6] Although *Preckwinkle* was an unpublished opinion, CVWD was a party and had a full and fair opportunity to litigate some of the very issues before this Court.

United States' Phase I Mot. for Summ. J.       -8-
Case No. 5:13-cv-0883-JGB-SP

Ninth Circuit characterized as part of the underlying groundwater basin.  Cappaert, the owner of a ranch located two and one-half miles away, pumped groundwater from the same aquifer, significantly decreasing the water level in Devil's Hole, altering its ecology.  The United States sought to enjoin groundwater pumping by the rancher.  Cappaert admitted pumping from the same underlying aquifer, but denied that the United States had a claim to groundwater, arguing that the government's reserved water right was limited to surface water.  The Ninth Circuit rejected this argument.  It held that the *Winters* doctrine extended to groundwater and enjoined the ranch from groundwater pumping that interfered with the United States' reserved water right.  508 F.2d at 317.

The Supreme Court, in affirming the judgment of the Ninth Circuit, found that the groundwater and surface water at issue were interrelated, concluding that water in Devil's Hole was surface water.  The Court, therefore, did not need to apply the *Winters* doctrine to groundwater.  *Cappaert*, 426 U.S. at 142.  Regardless, the Court confirmed that the United States could enjoin groundwater pumping that interfered with its reserved water rights:

> [S]ince the implied-reservation-of-water-rights doctrine is based on the necessity of water for the purpose of the federal reservation, we hold that the United States can protect its water from subsequent diversion, whether the diversion is of surface or groundwater.

*Id.* at 143 (footnote omitted).

1     Support for reserved rights extending to groundwater also finds support in

2  the other federal courts.  In *Tweedy*, 286 F. Supp. 383 (D. Mont. 1968), a surface

3  lessee of land on the Blackfeet Indian Reservation sued a mineral lessee, alleging

4  that the mineral lessee was infringing upon the surface lessee's water rights.  The

5  federal District Court for Montana held that the establishment of the reservation

6  reserved underground waters to the same extent, and with the same limitations, as

7  surface waters:

8

9        The *Winters* case dealt only with the surface water, but the same

10        implications which led the Supreme Court to hold that surface waters had

11        been reserved would apply to underground waters as well. The land was

12        arid— water would make it more useful, and whether the waters were found

13        on the surface of the land or under it should make no difference.

14  286 F. Supp. at 385.[7]

15     The Ninth Circuit most recently addressed the geographic scope of the

16  *Winters* doctrine in *John v. United States*, 720 F.3d 1214 (9th Cir. 2013), *cert.*

17  *denied*, 134 S. Ct. 1759 (2014).  *John* provided a detailed analysis of the water

18  sources that the United States may include as part of water rights for a federal

19  reservation – an analysis sufficient to include groundwater, although it did not deal

20  specifically with groundwater.

---

[7] The court in *Tweedy* ultimately found no actual infringement, because the surface lessee "cannot establish any title in the water" and because "there is no evidence and no claim that defendant has interfered with the plaintiffs' right to use water in satisfaction of any need for it."  *Id.*

United States' Phase I Mot. for Summ. J.     -10-
Case No. 5:13-cv-0883-JGB-SP

1     The Ninth Circuit held that "the federal reserved water rights doctrine allows

2     the United States to exert rights over water that is 'physically interrelated' with the

3     reserved land." *Id.* at 1231.  The relevant question before this Court, in other

4     words, is whether the water is necessary to fulfill the purposes of the reservation,

5

6     *not* the hydrological location of the water source.  The Ninth Circuit held that even

7     though implied water rights arise upon the creation of a reservation, a geographic

8     location for those water rights is not assigned until the United States seeks to

9     enforce its implied right.  *Id.*  For that reason, the Ninth Circuit held, "we must

10    include within its potential scope all the bodies of water on which the United

11    States' reserved rights could at some point be enforced—*i.e.,* those waters that are

12

13    or may become necessary to fulfill the primary purposes of the federal reservation

14    at issue." *Id.*  Here, that would include necessary groundwater sources.

15

16    ### B.    State Case Law Holds that the Reserved Rights Doctrine Extends to Groundwater.

17

18    State courts, with one exception, have concluded that the *Winters* Doctrine

19    applies to groundwater.  For example, in *In re General Adjudication of All Rights*

20    *to Use Water in the Gila River System and Source*, the Arizona Supreme Court

21    concluded that groundwater may be reserved for the benefit of Indian reservations

22    under the *Winters* Doctrine.  989 P.2d 739 (Ariz. 1999).  The court, relying on the

23    logic of *Winters*, held that when the United States establishes Indian reservations

24

25

26

27

28

United States' Phase I Mot. for Summ. J.     -11-
Case No. 5:13-cv-0883-JGB-SP

on arid land, it likewise intends a "reservation of water to come from whatever particular sources each reservation had at hand." *Id.* at 746-47.  The court also found instructive that the U.S. Supreme Court declined in *Cappaert* to differentiate one means of diversion from another:

> That federal reserved rights law declines to differentiate surface and groundwater . . . when addressing the diversion of protected waters suggests that federal reserved rights law would similarly decline to differentiate surface and groundwater when identifying the water to be protected.

*Id.* at 747 (citing *Cappaert*, 426 U.S. at 142-43).  Using *Winters* and *Cappaert* as "guideposts," the Arizona Supreme Court concluded that "[t]he significant question for the purpose of the reserved rights doctrine is not whether the water runs above or below the ground but whether it is necessary to accomplish the purpose of the reservation." *Id.* at 747.

Similarly, in *Confederated Salish and Kootenai Tribes of the Flathead Reservation v. Stults*, the Montana Supreme Court held that the treaty establishing the Flathead Indian Reservation implicitly reserved groundwater underlying the reservation.  59 P.3d 1093, 1098-99 (Mont. 2002).  Relying on authorities noted above, including *Cappaert,* the court found "no distinction between surface water and groundwater for purposes of determining what water rights are reserved because those rights are necessary to the purpose of an Indian reservation."  *Id.* at

1098.

The only outlier is an earlier Wyoming Supreme Court decision, which chose not to recognize claims of reserved rights to groundwater. *In re All Rights to Use Water in the Big Horn River System*, 753 P.2d 76, 100 (Wyo. 1988) ("*Big Horn*").[8]  The court acknowledged that "[t]he logic which supports a reservation of surface water to fulfill the purpose of the reservation also supports reservation of groundwater," but because no prior court had expressly extended *Winters* to groundwater, the court declined to follow logic when it would be the first court to confirm such rights. *Id.* at 99-100.  The Arizona Supreme Court later declined to follow the flawed *Big Horn* approach:

> We can appreciate the hesitation of the *Big Horn* court to break new ground, but we do not find its reasoning persuasive.  That no previous court has come to grips with an issue does not relieve a present court, fairly confronted with the issue, of the obligation to do so.  Moreover, as the *Big Horn* court acknowledged, we do not write on a blank slate.

---

[8] The Supreme Court granted certiorari on the following question: "In the absence of any demonstrated necessity for additional water to fulfill reservation purposes and in the presence of substantial state water rights long in use on the Reservation, may a reserved water right be implied for all practicably irrigable lands within a Reservation set aside for a specific tribe?"  Petition for Writ of Certiorari, *Wyoming v. United States*, No. 88-309, 1988 WL 1094117 (U.S. Aug. 18, 1988); *Wyoming v. United States*, 488 U.S. 1040 (1989) (granting petition for writ of certiorari limited to one question).  Thus, the one sentence affirmance by an equally divided U.S. Supreme Court, 492 U.S. 406 (1989), cannot be deemed an endorsement of the Wyoming Supreme Court's groundwater ruling.

*In re Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source,* 989 P.2d at 745.

In any event, a number of subsequent federal and state courts, set forth above, have been guided by logic, holding that reserved water rights do attach to groundwater, where reservation of groundwater is necessary to effectuate a given reservation's purposes.[9]

**C.**   **California State Law Expressly States that the Reserved Rights Doctrine Extends to Groundwater.**

The California State Legislature recently confirmed that the reserved rights doctrine extends to groundwater:

> In an adjudication of rights to the use of groundwater, and in the management of a groundwater basin or subbasin by a groundwater sustainability agency or by the board, **federally reserved water rights to groundwater shall be respected in full**. **In case of conflict between federal and state law in that adjudication or management, federal law shall prevail**. The voluntary or involuntary participation of a holder of rights in that adjudication or management shall not subject that holder to state law regarding other proceedings or matters not authorized by federal law. This subdivision is declaratory of existing law.

---

[9] *See also* A. Dan Tarlock, *Law of Water Rights and Resources*, § 9:42 at 602 (West 2014) ("little, if any, doubt remains that Indian tribes have groundwater as well as surface water rights").

2014 Cal. Legis. Serv. Ch. 346 (S.B. 1168) (West), *to be codified at* Cal. Water Code § 10720.3(d) (emphasis added).

**D.    CVWD Already Litigated and Lost this Issue.**

This is not CVWD's first attempt at litigating federally reserved groundwater rights on the Agua Caliente Reservation.  In a recent lawsuit, individual tribal member allottees on the Reservation sued CVWD seeking a declaration and quantification of their federally reserved groundwater rights.  After briefing and argument, this Court decided the case and issued a 71-page written opinion.  *See* Order, *Preckwinkle v. Coachella Valley Water Dist.*, Case No. 5:05-cv- 626, ECF No. 210 (C.D. Cal. Aug. 30, 2011).  Addressing the allottees' claim to a federally reserved right to groundwater, the Court recited the *Winters* doctrine, *id.* at 25, as well as additional authorities establishing "that reserved water rights include rights to both surface and groundwater."  *Id.* at 26.  As a result, the Court held:

- "Plaintiffs' parcels of land were reserved by executive order in 1877, at which time the water rights necessary to fulfill the purposes of the reservation were also set aside."  *Id.* at 27 (citing *Winters*, 207 U.S. at 577) (internal parenthetical omitted).

- "Such water rights were implied in the reservation of land . . . as it is a dry region where water would be necessary to use the land productively."  *Id.* (citing *Walton I*, 647 F.2d at 46).

United States' Phase I Mot. for Summ. J.       -15-
Case No. 5:13-cv-0883-JGB-SP

- "Plaintiffs' allotted land thus included the reserved water rights necessary to cultivate their particular parcels." *Id.* (footnote and citation omitted).

- "Plaintiffs' reserved water rights give them a federally recognized right to use a certain amount of groundwater in the [Coachella Valley] Water District's Area of Benefit." *Id.* at 28.

*Preckwinkle* was ultimately dismissed because indispensable parties (the Tribe and the United States) could not be joined, but were necessary to quantify the Tribe's right. Still, to arrive at its conclusion, the Court necessarily decided that a federally reserved right to groundwater exists, after the parties in that case – which included CVWD – had a full and fair opportunity to litigate the issue. Even if *Preckwinkle* is not binding on this Court, its reasoning and logic should be persuasive on the question of whether *Winters* applies to all water sources appurtenant to the land, including groundwater.

## III.   WINTERS RIGHTS ARE FEDERAL RIGHTS AND CANNOT BE LIMITED, DENIED, OR LOST THROUGH APPLICATION OF STATE LAW.

*Winters* rights are "federal water rights," "governed by federal law," and "are not dependent upon state law or state procedures." *Cappaert*, 426 U.S. at 145; *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 400 (9th Cir. 1985) ("*Walton II*"). They are "protected by federal law[,]" and secured by the "the powerful federal interest in safeguarding [them] from state encroachment."

*Arizona v. San Carlos Apache Tribe*, 463 US. 545, 571 (1983).  Moreover, as described below, *Winters* rights prevail over state law, and arise without regard to any alleged equities that may favor competing water users.

### A.    *Winters* **Rights Prevail Over State Law.**

*Winters* itself acknowledged the preemptive force of federal reserved water rights: "The power of the government to reserve the waters and exempt them from appropriation under the state laws is not denied, and could not be."  207 U.S. at 577.  Subsequent Supreme Court and Ninth Circuit case law also confirms that reserved rights are federal in nature and prevail over state law.  *See Cappaert*, 426 U.S. at 138 ("Reservation of water rights is empowered by the Commerce Clause, Art. I, § 8, which permits federal regulation of navigable streams, and the Property Clause, Art. IV, § 3, which permits federal regulation of federal lands."); *United States v. New Mexico*, 438 U.S. 696, 715 (1978) ("the 'reserved rights doctrine' . . . is an exception to Congress' explicit deference to state water law in other areas"); *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976) ("the volume and scope of particular reserved rights . . . are federal questions") (citation and quotation marks omitted); *United States v. Ahtanum Irr. Dist.*, 236 F.2d 321, 328 (9th Cir. 1956) (state water rights decree had no effect on a federal reserved water right); *United States v. Adair*, 723 F.2d 1394, 1411 n.19 (9th Cir.

1983) (reserved water rights are "defined by federal, not state, law" and there is "no need to look for a state law basis for the rights").[10]

The above authorities—*Winters* and its progeny—comport with our nation's longstanding policy of leaving Indians free from state jurisdiction "except where Congress has expressly intended that State laws shall apply." *Gobin v. Snohomish Cnty.*, 304 F.3d 909, 914 (9th Cir. 2002). "If faced with two reasonable constructions of Congress's intent, this Court resolves the matter in favor of the Indians." *Id.*

Congress also has recognized that tribal water rights preempt state law. *See* Western Water Policy Review Act of 1992, Pub. L. 102-575, title XXX, § 3002(8), 106 Stat. 4600, (states have primary jurisdiction over the allocation, priority, and use of water resources, *except where preempted by the federal government*, including "express or implied Federal reserved water rights either for itself or for the benefit of Indian Tribes").[11]

---

[10] *Adair* is particularly applicable here because the Court found that the *Winters* rights reserved for the Klamath Tribes included uses not recognized by Oregon's prior appropriation doctrine. The Court held that the "fact that water rights of the type reserved for the Klamath Tribes are not generally recognized under state prior appropriations law is not controlling as federal law provides an unequivocal source of such rights." *Adair*, 723 F.2d at 1411 n.19.

[11] Accordingly, even when Congress has authorized states to exercise limited civil jurisdiction over Indians in Indian country, it has often expressly withheld

Finally, as noted above, the California State Legislature has recognized the preemptive force of federal reserved water rights specifically with respect to groundwater: "federally reserved water rights to groundwater shall be respected in full" and "[i]n case of conflict between federal and state law in [groundwater] adjudication or management, federal law shall prevail."  2014 Cal. Legis. Serv. Ch. 346 (S.B. 1168) (West), *to be codified at* Cal. Water Code § 10720.3(d).

Accordingly, DWA's Sixth and CVWD's Seventh Affirmative Defenses are without merit because they are premised on "paramount" rights to water under state law.  ECF No. 72 at 7 and ECF No. 73 at 9-10.  DWA's Fourth Affirmative Defense is also baseless because it suggests that the purported "conflict" between the United States' reserved right and California law should be resolved against the United States.  ECF No. 72 at 6.  As described above, *Winters* rights preempt state law, and the Defendants "are in no position to claim paramount rights." *United States v. Walker River Irr. Dist.*, 104 F.2d 334, 336 (9th Cir. 1939).

---

jurisdiction over Indian water rights. *See* 25 U.S.C. § 1322(b); 28 U.S.C. § 1360(b).

United States' Phase I Mot. for Summ. J.        -19-
Case No. 5:13-cv-0883-JGB-SP

**B.      *Winters* Rights Arise Without Regard to Equities That May Favor Competing Water Users.**

Federal reserved rights arise "without regard to equities that may favor competing water users." *Walton II*, 752 F.2d at 405.  For that reason, the Supreme Court has rejected the argument that a *Winters* analysis should incorporate a balancing of the equities, or consideration of competing interests.  In *Winters*, the Supreme Court recognized the seniority and superiority of Indian reserved water rights, despite the adverse economic effects on non-Indians upstream, who had argued that they would be deprived of water and could no longer successfully cultivate their lands.  *Winters*, 207 U.S. at 569-70.  Similarly, in *Cappaert*, the Supreme Court affirmed the federal reserved rights doctrine and rejected the State of Nevada's argument for an equitable balancing of competing interests.  426 U.S. at 138-39.  And in *Arizona v. California*, the Supreme Court held that the doctrine of equitable apportionment does not apply to federally reserved Indian water rights.  373 U.S. at 597.

Defendants' "balance of the equities" defenses, therefore, lack merit, as do the related equitable defenses of laches and unclean hands.  ECF No. 72 at 8-9 and ECF No. 73 at 14-17.  Defendants cannot maintain such defenses against the federal government in cases involving Indian reservations and public lands.  *See, e.g.*, *United States v. City of Tacoma*, 332 F.3d 574, 581 (9th Cir. 2003) ("there can

be no argument that equitable estoppel bars the United States' action because, when the government acts as trustee for an Indian tribe, it is not at all subject to that defense"); *United States v. Walker River Irr. Dist.*, 104 F.2d 334, 339 (9th Cir. 1939) (rejecting estoppel argument and holding that settlers were "not justified in closing their eyes to the obvious necessities of the Indians already occupying the reservation below.").

The Ninth Circuit rejected a nearly identical argument in *Cappaert*. There, the defendants argued that they could not be enjoined by the federal government from drilling wells or pumping groundwater because the government entered into a land exchange with the defendants, granted the defendants their patent, and knew where the defendants planned to drill wells. *Cappaert*, 508 F.2d at 319. Moreover, the defendants spent large sums of money drilling the wells and changing their farming operations based upon their belief that they could drill wells and pump groundwater without limitation. *Id.* Yet the Ninth Circuit held, as the Court should here, that the government was not estopped from defending its federally reserved water right, and could still permanently enjoin the defendants from pumping groundwater to the extent it interfered with the right. *Id.* at 319-20.

**C.     State Law Does Not Obviate the Tribe's Federally Reserved Water Rights.**

DWA's Fourth Affirmative Defense is that a federally reserved right is not necessary because "the United States and the Tribe, as overlying landowners of the Tribe's reservation, have the right to use groundwater under California law."  ECF No. 72 at 6.  This argument ignores the purposes and protections of the reserved water rights doctrine that distinguish reserved rights from rights created under state law.

The chief characteristics of implicitly reserved water rights differ significantly from those of state-based water rights.  First, reserved rights are not measured by the quantity of water used at the time of reservation; rather, they are measured by the amount of water necessary to meet current and future needs of the reservation.  *Winters*, 207 U.S. at 576; *Arizona v. California*, 373 U.S. at 600; *Cappaert*, 426 U.S. at 141.  Second, rather than vesting upon diversion and beneficial use, reserved rights vest on the date a reservation is created. *Arizona v. California,* 373 U.S. at 600.  Third, unlike state-based rights, *Winters* rights cannot be lost through nonuse.  *Walton I*, 647 F.2d at 51.  Overlyer rights under California law do not provide such protections; they lack a priority date, and have been limited by California common law since 1903 – well after the Agua Caliente Reservation was established and its water was reserved.  *Compare* 1876 Executive

Order and 1877 Executive Order *with Katz v. Walkinshaw*, 141 Cal. 116, 122, 74 P. 766, 767 (1903).

Defendants' argument, if adopted, would effectively eliminate federally reserved Indian water rights doctrine by forcing tribes to rely instead solely on appropriative, beneficial use rights under state law in a manner identical to non-Indian water uses.  A similar argument – that a tribe does not need a reserved right because it could instead assert a state law right – could be made in any water adjudication.  But that is not the law, not even in California.  *See In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 461, 749 P.2d 324, 320-330 (1988) (recognizing availability of federal reserved rights for primary purposes of reservations, and use of state based riparian rights for secondary purposes).

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that this Court grant its Phase I Motion for Summary Judgment and order that (1) the establishment of the Agua Caliente Reservation reserved for the Tribe the water necessary to make the Reservation livable for current and future uses; and (2) Indian reserved water rights, including those of the Agua Caliente Band of Cahuilla Indians, are not limited to surface water and may, as a matter of law, include necessary groundwater resources.

1    Dated: October 21, 2014          Respectfully submitted,

2
                                      SAM HIRSCH
3                                     Acting Assistant Attorney General
                                      Environment & Natural Resources Division
4                                     United States Department of Justice

5
                                         /s/  F. Patrick Barry
6                                     F. PATRICK BARRY, Senior Trial Attorney
7                                     DARON T. CARREIRO, Trial Attorney
                                      YOSEF M. NEGOSE, Trial Attorney
8
                                      Indian Resources Section
9                                     Environment and Natural Resources Division
10                                    United States Department of Justice
                                      P.O. Box 7611
11                                    Ben Franklin Station
12                                    Washington, DC 20044
                                      Phone:        (202) 305-0269
13                                    Facsimile:    (202) 305-0725
14                                    patrick.barry@usdoj.gov
15                                    daron.carreiro@usdoj.gov
                                      yosef.negose@usdoj.gov
16
17                                    Attorneys for Plaintiff-Intervenor
18                                    UNITED STATES OF AMERICA

19

20

21

22

23

24

25

26

27

28