RODERICK E. WALSTON (Bar No. 32675)
roderick.walston@bbklaw.com
STEVEN G. MARTIN (Bar No. 263394)
steven.martin@bbklaw.com
BEST BEST & KRIEGER LLP
2001 N. Main Street, Suite 390
Walnut Creek, California 94596
Telephone: (925) 977-3300
Facsimile: (925) 977-1870

ARTHUR L. LITTLEWORTH (Bar No. 22041)
arthur.littleworth@bbklaw.com
PIERO C. DALLARDA (Bar No. 181497)
piero.dallarda@bbklaw.com
BEST BEST & KRIEGER LLP
3390 University Avenue, Fifth Floor
P.O. Box 1028
Riverside, California 92502
Telephone:  (951) 686-1450
Facsimile:  (951) 686-3083

Attorneys for Defendant
DESERT WATER AGENCY

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>                 Plaintiff,<br><br>          v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>                 Defendants. | Case No. 5:13-cv-00883-JGB (SPx)<br>Judge:    Hon. Jesus G. Bernal<br><br>DEFENDANT DESERT WATER AGENCY'S REQUEST FOR JUDICIAL NOTICE<br><br>[Filed with:<br>1.    Notice of Motion and Motion for Summary Judgment;<br>2.    Memo. of Ps & As;<br>3.    Sep. Statement of Undisputed Facts<br>4.    Declaration of Steven G. Martin;<br>5.    Declaration of David K. Luker; and<br>6.    [Proposed] Order.]<br><br>Date:        February 9, 2015<br>Time:        9:00 a.m.<br>Dept.:       Courtroom 1<br><br>Action Filed:    May 14, 2014<br>Trial Date:      Feb. 3, 2015 |

01358.00008\9175085.1

1

# REQUEST FOR JUDICIAL NOTICE

2

3      Pursuant to Federal Rules of Evidence 201(b) and 201(c), defendant Desert

4   Water Agency ("DWA") requests that the court take judicial notice of the following

5   statutes, executive orders, judicial decrees, historical documents and congressional

6   reports (collectively "documents"), which are submitted in support of DWA's

7   motion for summary judgment.  The number of each document below correlates to

8   the exhibit number of the document as it appears in DWA's memorandum of points

9   and authorities in support of motion for summary judgment.

10      1.      Decree, In the Matter of the Determination of the Relative Rights,

11   Based Upon Prior Appropriation, of the Various Claimants to the Waters of

12   Whitewater River and Its Tributaries, in San Bernardino and Riverside Counties,

13   California, No. 18035, Superior Court for Riverside County (Dec. 9, 1938)

14      2.      "Executive Orders Relating to Indian Reservations: From May 14,

15   1855 to July 1, 1912 (Gov't Printing Office, Washington, D.C.: 1912), including

16   Executive Order of May 15, 1876 (President Ulysses S. Grant) and Executive Order

17   of September 29, 1877 (President Rutherford B. Hayes)

18      3.      Report of Mission Indians Commission ("Smiley Commission") (Dec.

19   7, 1891)

20      4.      Executive Order of President Benjamin Harrison (Dec. 29, 1891)

21      5.      Report of Joseph W. Preston (Feb. 7, 1888)

22      6.      Report of George Butler (Aug. 22, 1903)

23      7.      Report of C. E. Kelsey (Oct. 17, 1907)

24      8.      "Suggestion of the United States," Before the Division of Water

25   Rights, Department of Public Works, State of California, in In the Matter of the

26   Determination of the Relative Rights, Based Upon Prior Appropriation, of the

27   Various Claimants to the Waters of Whitewater River and Its Tributaries, in San

28   Bernardino and Riverside Counties, California (June 26, 1924)

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2OO I N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

9.      Four Reservations Act of 1864, 13 Stat. 90 (April 8, 1864)

10.     Indian Claims Commission Act, 60 Stat. 1049 (Aug. 13, 1946)

11.     Land Claims Act of 1851, 9 Stat. 631 (March 3, 1851)

12.     Mission Indians Relief Act of 1891, 26 Stat. 712 (Jan. 12, 1891)

13.     House Rep. No. 96, 52nd Cong., 1st Sess. (Jan. 26, 1892)

14.     United States Census Bureau document reporting total population from the 2000 census for the Agua Caliente Reservation, CA (2000)

15.     United States Census Bureau document reporting total population from the 2010 census for the Agua Caliente Indian Reservation and Off-Reservation Trust Land, CA (2010)

All of the foregoing documents, except for documents nos. 14 and 15, were produced during the parties' initial disclosures.  The parties have stipulated and the court has ordered that documents produced during the parties' initial disclosures are deemed to be authentic for purposes of the parties' motions for summary judgment. Doc. Nos. 77, 78.  The Declaration of Steven G. Martin, in paragraph __, provides authentication of documents no. 14 and 15.

Federal Rule of Evidence 201(b) authorizes this Court to take judicial notice of statues, cases, pleadings and legislative history because they are matters that are "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Civ. P. 201(b).

Specifically, courts may take judicial notice of statutes and cases.  *Lamar v. Micou,* 114 U.S. 218, 223 (1885) ("the law of any State of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice"); *Schultz v Tecumseh Products*, 310 F.2d 426, 433 (6th Cir. 1962) ("courts are required to take judicial notice of the statute and case law of each of the states"); *Continental Technical Services, Inc. v.*

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   *Rockwell Int'l Corp.,* 927 F.2d 1198, 1199 (11th Cir. 1991) ("federal courts take

2   judicial notice of the laws of every state in the Union").

3        Courts may also take judicial notice of pleadings.  *Fru-Con Const. Corp. v.*

4   *Controlled Air, Inc.,* 574 F.3d 527 (8th Cir. 2009) (court may judicially notice

5   proceedings in other courts relating to matters at issue); *Enterprise Bank v. Manga*

6   *Bank of Missouri*, 92 F.3d 743, 746 fn 3 (8th Cir. 1996) (the district court did not

7   err "when it took judicial notice of pleadings in earlier related proceedings in this

8   litigation."); *Asdar Group v. Pillsbury, Madison & Sutro,* 99 F.3d 289, 290 fn 1.

9   (9th Cir. 1996) (the district court took judicial notice of the complaint and certain

10  prior court orders and judgments.).

11

12  Dated: October 21, 2014        BEST BEST & KRIEGER LLP

13

14

15             By: * /s/ Roderick E. Walston*
                 RODERICK E. WALSTON

16               ARTHUR L. LITTLEWORTH
                 GENE TANAKA

17               PIERO C. DALLARDA
                 STEVEN G. MARTIN

18               Attorneys for Defendant

19               DESERT WATER AGENCY

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

01358.00008\9175085.1      - 3 -      DWA REQUEST FOR JUDICIAL NOTICE
CV 13-00883-JGB (SPX)

Exhibit 1



IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF RIVERSIDE

--oOo--

Recorded in Book 46 of
Judgments at Page 246
9th day of December
1938

IN THE MATTER OF THE DETERMINATION
OF THE RELATIVE RIGHTS, BASED UPON
PRIOR APPROPRIATION, OF THE VARIOUS
CLAIMANTS TO THE WATERS OF WHITEWATER
RIVER AND ITS TRIBUTARIES, IN SAN
BERNARDINO AND RIVERSIDE COUNTIES,
CALIFORNIA.

)
)
)
)
)
)
)
)

No. 18035

--oOo--

WILLIAM D. DEHY, JUDGE PRESIDING

--oOo--

DECEMBER 9, 1938

EXHIBIT 1

- 4 -

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF RIVERSIDE

--oOo--

IN THE MATTER OF THE DETERMINATION )
OF THE RELATIVE RIGHTS, BASED UPON )
PRIOR APPROPRIATION, OF THE VARIOUS )
CLAIMANTS TO THE WATERS OF WHITEWATER )      No. 18035
RIVER AND ITS TRIBUTARIES, IN SAN )
BERNARDINO AND RIVERSIDE COUNTIES, )
CALIFORNIA. )

--oOo--

The above entitled proceeding came on regularly for hearing,

trial and determination before the court sitting without jury, a trial

by jury having been duly waived, on the 27th day of November, 1928, and

was duly and regularly continued for further hearing, trial and deter-

mination to April 5, 1938;

Howard Surr, Surr & Hellyer, and Frank L. Miller appearing as

counsel for Banning Water Company, a corporation, the San Gorgonia Power

Company, a corporation, Banning Heights Mutual Water Company, a corpor-

ation, and Cabazon Water Company, a corporation; Frank L. Miller appearing

as counsel for Morongo Valley Mutual Water Company, a corporation; C.L. Mc-

Farland appearing as counsel for George R. Hicks, Palm Valley Water Company,

a corporation, Palm Springs Water Company, a corporation, and W. V. Coving-

ton; Arvin B. Shaw, Jr., and Stewart, Shaw & Murphey appearing as counsel

for the Coachella Valley County Water District, having been duly and reg-

ularly substituted as such counsel for and in stead of H.L. Carnahan and

Thos.C. Yager; A. Heber Winder appearing as counsel for Pearl McCallum Mc-

Manus and J.A. Gray; W. G. Irving appearing as counsel for the Whitewater

Mutual Water Company, a corporation, successor in interest to Prescott T.

Stevens; W.G.Irving and H.L.Thompson and Sarau&Thompson appearing as coun-

sel for Nellie N.Coffman,Cornelia B.White,Florilla M.White,Lavina F.Crocker,

Helen Coffman, Pearl McCallum McManus,Isabel White Chase, George Wellwood

-1-

EXHIBIT 1

- 5 -

1   Murray, Ruth J. Orr, T. L. Douglas, C. A. Abbott, Charles Powers, Zaddie
2   R. Bunker, J. A. Gray, Owen Earl Coffman, George B. Roberson , and Trus-
3   tees for Palm Springs Presbyterian Church, said H. L. Thompson and Sarau &
4   Thompson having been duly and regularly associated as such counsel with
5   said W. G. Irving; H. L. Thompson and Sarau & Thompson appearing as counsel
6   for Walter O. Edwards, successor in interest to H. C. Ratcliff; Ralph E.
7   Swing and Swing & Wilson, and Swing & Swing appearing as counsel for
8   Frank L. Talmadge, John W. Talmadge and William S. Talmadge; Paul V.
9   DeFord appearing as counsel for Southern Pacific Land Company, a corpor-
10   ation, Southern Pacific Railroad Company, a corporation, and Southern
11   Pacific Company, a corporation, having been duly and regularly substi-
12   tuted as such counsel for and instead of Frank Thunen; Robert F. Shippee
13   appearing as counsel for Gertrude G. Hittson as successor in interest to
14   George D. Richey; Carl W. Minton, and Minton & Minton appearing as counsel
15   for Andrew J. Warner and Clara J. Warner; William O. Mackey appearing as
16   counsel for R. E. Bailiff; Wing & Wing appearing as counsel for Stuart L.
17   Allen and Stuart D. Allen as successor in interest to Julia B. Berry;
18   Robert W. Daniels appearing specially as counsel for the United States of America;
19   and Spencer Burroughs appearing as counsel for the Division of Water Re-
20   sources, Department of Public Works, State of California; evidence both
21   oral and documentary having been introduced, the evidence having been
22   closed, the matter having been fully argued and submitted to the court for
23   consideration and decision, the court having fully considered the facts
24   and the law and being fully advised, and findings of fact and conclusions
25   of law being duly waived, the court makes this its judgment and decree and
26   it is therefore
27        ORDERED, ADJUDGED AND DECREED as follows:
28                        I.
29        The Whitewater River rises on the south and east slopes of
30   San Gorgonio Mountain, in the southwestern part of San Bernardino County
31   at an altitude of about 11,000 feet, flows in a general southeasterly

-2-

EXHIBIT 1
- 6 -

1  direction for a distance of about sixty-five miles, traversing the central
2  part of Riverside County, and empties into Salton Sea, the elevation of
3  which is about 250 feet below sea level.  Except in times of extreme
4  flood, the entire flow of said river sinks into the desert between White-
5  water Station and Palm Springs Station, on the Southern Pacific Railroad.

6                                    II

7        The principal tributaries rising in the San Bernardino Mountains
8  are San Gorgonio River, Hathaway Creek, Potrero Creek, Millard Creek,
9  Stubby Creek, Cottonwood Creek, Mission Creek, Dry Morongo Creek, Big
10  Morongo Creek and Little Morongo Creek.  Of these tributaries, the San
11  Gorgonio River is by far the most important and drains San Gorgonio
12  Canyon, situated north of Banning, and also San Gorgonio Pass from Banning
13  east to Whitewater Station.  Mission Creek and the Morongo Creeks, al-
14  though having large watersheds, drain areas of comparatively low precipi-
15  tation and consequently contribute but little water except in times of
16  flood.

17                                   III

18        The principal tributaries rising in the San Jacinto Mountains
19  are Cabazon Creek, Snow Creek, Falls Creek, Chino Creek, Tahquitz Creek,
20  Andreas Creek, Murray Creek, and Palm Canyon Creek.  Of these, Snow Creek,
21  which drains the north slope of San Jacinto Peak, is the most important,
22  and Tahquitz Creek, which drains the east slope of San Jacinto Peak, is
23  next in importance.  Both Snow Creek and Tahquitz Creek are extremely
24  precipitous, falling from near the summit of San Jacinto Peak to the
25  floor of the desert at rates in excess of 1,000 feet per mile.  Palm
26  Canyon Creek is about twenty miles long and drains the largest area, but
27  its watershed is relatively low and consequently produces less water than
28  the streams to the north.

29                                    IV

30        The only important tributaries entering from the Santa Rosa
31  Mountains are Deep Canyon Creek and Martinez Canyon Creek.  The Cottonwood

-5-

EXHIBIT 1
- 7 -

1    Mountains, forming the eastern boundary of Coachella Valley, produce no
2    living streams with the exception of that in Thousand Palms Canyon, oppo-
3    site Edom.

                                    V

5         The various tributaries of the Whitewater River have built up
6    debris cones where they debouch from their respective canyons, and, except
7    in times of flood, their entire flows sink in these cones, travelling
8    through underground channels to the lower part of Coachella Valley.  The
9    total area drained by the Whitewater River stream  system is about 1200
10   square miles.

                                   VI

12        On account of the extremes in altitude, there is a wide variation
13   in climate in the different parts of the watershed.  The climate of the
14   high mountain region is characterized by a wet season extending from the
15   first part of November to the latter part of April, followed by a long
16   period during which there is practically no precipitation.  In this region,
17   the winters are severe and the summers are mild.  Above the 7,000 foot
18   level, a considerable portion of the precipitation falls as snow, which
19   remains on the ground until early summer.

                                  VII

21        The climate also varies widely over the valley floor.  In the
22   vicinity of Banning, the winters are mild, and while the summer days are
23   often hot the nights are usually cool.  The rainfall in this region is
24   ample to permit the growing of grain crops without irrigation.  Proceeding
25   from Banning eastward through San Gorgonio Pass, the transition in climate
26   is very rapid until, at Whitewater Station, a distinctly desert climate is
27   reached.  The climate of Coachella Desert and Coachella Valley is character-
28   ized by short mild winters followed by long hot seasons during which the
29   heat is extreme.  Temperatures of 125 degrees Fahrenheit are not uncommon
30   in July and August.  The precipitation in this region is low and erratic.
31   During the late winter and early spring, very high winds are frequent,

                                  -4-

EXHIBIT 1
- 8 -

1    originating in San Gorgonio Pass and sweeping southeastward across the

2    desert.

3                                    VIII

4          In the San Gorgonio Pass area, deciduous fruits are the princi-

5    pal crop, although in the vicinity of Whitewater Station some alfalfa is

6    grown.  There is a small cultivated area in the vicinity of Palm Springs,

7    in which the principal crops raised are alfalfa and citrus fruits.  In the

8    Coachella Valley a variety of crops are raised, the principal ones being

9    cotton, grapes, dates, onions, alfalfa and citrus fruits.  There are com-

10   paratively small areas in corn, vegetables and grain.

11                                    IX

12         The successful production of crops on all cultivated lands in

13   the Whitewater River watershed is dependent upon irrigation and since

14   the water supply of the stream system is inadequate for all agricultural

15   needs throughout each irrigation season, it is essential that the rights

16   in and to said water supply be determined in order that there may be an

17   orderly distribution of the same to the rightful owners.

18                                    X

19         The term "act" when used herein means the "water commission act",

20   being Chapter 586, Statutes of 1913 of the State of California, as amended;

21   the term "stream system" when used herein means the Whitewater River and

22   its various tributaries; the term "commission" when used herein means

23   the commission created by said act, and its successors in power and

24   jurisdiction under the laws of the State of California; the term "claimant"

25   when used herein means parties claiming rights based on prior appropriation

26   in and to the Whitewater River or any of its tributaries; and the term

27   "order of determination" when used herein means the order duly given and

28   made by said commission on April 23, 1928, and filed in this Court under

29   and pursuant to sections 25 to 36g, inclusive, of said act.

30                                    XI

31         The above entitled proceeding was initiated by Coachella Valley

                                    -5-

EXHIBIT 1
- 9 -

1  County Water District, a public district organized and existing under and by
2  virtue of the County Water District Act, being an act approved June 10, 1913,
3  Stats. 1913, P. 1049, as amended, and the Coachella District Merger Act,
4  being an act approved June 21, 1937, Stats. 1937, P. 1410, which said district
5  on June 29, 1922, duly filed a petition with the Division of Water Rights of
6  the Department of Public Works, successor to the said commission, and prede-
7  cessor of the Division of Water Resources of the Department of Public Works
8  of the State of California, herein referred to as "commission", for determin-
9  ation in accordance with the provisions of said water commission act, of the
10  relative rights by prior appropriation of the various claimants in and to the
11  waters of the Whitewater River Stream system.

12                                    XII

13      On December 9, 1922, by order duly given and made, said commission
14  granted said petition, and thereafter duly gave notice by publication as pro-
15  vided by law, setting forth the entry of the aforesaid order and of the pen-
16  dency of said proceedings;the date upon which said commission would begin its
17  examination of said stream system, to-wit, March 1, 1923; and prescribing and
18  requiring all claimants to rights by appropriation of the waters of said stream
19  system to make proof of their claims in the manner provided by law.

20                                    XIII

21      At the time set in said notice said commission began its inves-
22  tigation of the flow of the stream system and of the conduits diverting
23  water, and of the lands irrigated or irrigable therefrom, and proceeded
24  to gather all other data and information essential to the proper deter-
25  mination of the water rights by appropriation from said stream system;
26  and thereafter said commission reduced its observations, data, information
27  and measurements to writing and executed surveys and prepared maps from
28  the observations of such surveys in accordance with uniform rules and
29  regulations duly and regularly adopted by said commission, and upon said
30  maps and surveys showed with substantial accuracy the course of the streams
31  in said stream system; the location of each conduit diverting water there-

                                    -6-

EXHIBIT 1
- 10 -

1    from; land irrigated and capable of being irrigated by each conduit; and

2    the kind of culture upon said irrigated lands.  Said maps and surveys

3    were prepared by said commission as the surveys and observations progressed,

4    and when completed were duly and regularly filed and made of record in

5    the office of said commission.

6                          XIV

7        Upon the completion of the aforesaid measurements and maps and

8    after the filing of said observations, data, information and measurements,

9    as aforesaid, said commission, by order duly given and made, gave notice

10    by publication thereof as provided by law, setting forth the date prior

11    to which proofs to be furnished by claimants in and to the waters of said

12    stream system were required to be filed with said commission, and said

13    commission gave like notice and enclosed therewith forms of proofs as

14    required by said act, by registered mail, with postage fully prepaid

15    thereon, to each claimant to rights by appropriation of the waters of said

16    stream system, insofar as such claimant could be reasonably ascertained,

17    at his last known place of address.  Thereafter the time allowed within

18    which proofs of appropriation might be filed was extended by orders duly

19    given and made by said commission, to and including October 31, 1924, and

20    within said period claimants herein duly filed with said commission proofs

21    of appropriation of their respective rights to the waters of said stream

22    system.

23                         XV

24        After the filing of proofs of appropriation by claimants as

25    aforesaid, and after the expiration of the time fixed by said commission

26    for the filing of said proofs, said commission duly assembled all proofs,

27    which had been filed and prepared, and duly certified an abstract of all

28    said proofs, and duly caused the same to be printed in accordance with

29    the provisions of said act, and thereafter by order duly given and made,

30    prepared a notice fixing and setting a time and place convenient to the

31    claimants when and where evidence taken by or filed with the commission

-7-

EXHIBIT 1

- 11 -

1 would be open to inspection for a period of not less than ten days; and

2 a copy of said notice together with a printed copy of said abstract of

3 proofs, was thereafter, and more than fifteen days prior to the first day

4 prescribed in said order as the commencement of the period of such in-

5 spection, duly mailed by registered mail, with the postage fully prepaid

6 thereon, to each claimant who had appeared and filed proofs of appropri-

7 ation as required by said act; and thereafter and in accordance with said

8 notice and with said act, all of the evidence taken by or filed with said

9 commission was open for inspection at the times and in the places and for

10 the period designated in said notice, and any and all persons during said

11 period were permitted to inspect such evidence and proofs in conformity

12 with the provisions of said act, and during all of said period of inspec-

13 tion, a representative of said commission was present.

14         XVI

15    In conformity with the provisions of section 34 of said act,

16 contests were filed by certain of said claimants, with said commission,

17 and thereafter by orders duly given and made, and within ten days after

18 receipt by said commission of each contest of claimants, said commission

19 duly notified by registered mail, with postage prepaid thereon, such

20 contestant and claimant, respectively, whose rights were contested, to

21 appear before said commission at the time and place specified in said

22 notice, which said time in each instance was not less than fifteen days

23 nor more than sixty days from the date of mailing of said notice by said

24 commission; and thereafter and in conformity therewith, said commission

25 held hearings on all contests filed by claimants, and upon the conclusion

26 of said hearings closed the same and ordered the proceedings submitted

27 for decision by said commission.

28         XVII

29    Thereafter and on April 23, 1928, said commission duly made and

30 entered its order, finding, determining and establishing the several rights

31 by appropriation to the use of the waters of said Whitewater River and its

-8-

EXHIBIT 1
- 12 -

1    tributaries which said order was entered of record in the office of said

2    commission in Book No. 1, Orders of Determination, at page 426, which said

3    order was duly certified by said commission.  Thereafter said commission

4    caused said order of determination so certified to be printed in the State

5    Printing Office and a copy thereof to be sent by registered mail, with the

6    postage fully prepaid, to each person who had filed proof of claim, and

7    to each person who had become interested through intervention in said

8    proceeding under the provisions of said act, in all respects as provided

9    by said act and in conformity therewith.

10                                    XVIII

11        At the time of submission of said proofs of appropriation said

12    commission collected the fees due thereon, as prescribed in section 32 of

13    said act, and at the time of mailing its order of determination, as afore-

14    said, computed the entire cost incurred in performing the duties prescribed

15    in sections 26 to 36 of said act, and duly apportioned the amount by which

16    said entire cost exceeded the total amount received on account of fees

17    paid at the time of filing said proofs of appropriation among all claimants

18    according to the method of apportionment provided in section 32 of said

19    act, and in all respects in conformity therewith, and duly mailed notice

20    of the assessment of said additional charges by registered mail to each

21    claimant, said notice including a statement of the total sum assessed

22    and of the sum assessed to each claimant addressed, all of which said

23    additional charges have been paid.

24                                     XIX

25        After the entry of said order of determination as aforesaid,

26    and on April 30, 1928, a certified copy thereof, together with the original

27    evidence and transcript of testimony filed with or taken before said

28    commission, all duly certified by said commission, was filed with the clerk

29    of the Superior Court of the State of California, in and for the County of

30    Riverside.  Upon the filing of said certified copy of said order, evidence

31    and transcript with the clerk of said Court, and on April 30, 1928, said

-9-

EXHIBIT 1
- 13 -

1   commission procured an order from said Court setting November 27, 1928,

2   at 2:00 o'clock in the afternoon of said day, in the courtroom of said

3   Court in the City of Riverside, County of Riverside, State of California,

4   as the time and place for hearing on said order of determination, and

5   requiring and prescribing that on or before ten days prior thereto all

6   parties in interest aggrieved or dissatisfied with said order of determin-

7   ation, should file with the clerk of said court notice of exceptions to

8   said order of determination.  Said commission thereupon procured from the

9   clerk of said court a certified copy of said order of said court setting

10  said time and place for hearing as aforesaid, and forthwith said commission

11  mailed a copy of such certified copy of said order of said Court by regis-

12  tered mail, with postage fully prepaid thereon, addressed to each known

13  party in interest at his last known place of residence, in all respects

14  as required by said act, and duly caused said certified copy of said order

15  to be published as required by said act, and duly filed with the clerk of

16  said Court proof of such service by registered mail and publication.

17                                   XX

18          Prior to the effective date of said water commission act, certain

19  of said claimants had made and maintained according to law certain appro-

20  priations from said stream system which, at and upon said effective date

21  of said act were incomplete in that at said date said claimants or their

22  predecessors or successors in interest, had not applied the full amount

23  of water so appropriated to a useful or beneficial purpose; that upon the

24  initiation of this proceeding before said commission, pursuant to sections

25  12 and 36f of said act then in effect, jurisdiction over said incomplete

26  rights was vested in said commission as provided by said sections of said

27  act; that said commission duly included in said order of determination

28  said rights by appropriation which were incomplete as aforesaid, and duly

29  fixed and prescribed therein for each of such rights the time within which

30  said full amount of water so appropriated should be applied to such useful

31  or beneficial purpose; and with respect to certain thereof, for good cause

                                   -10-

                              EXHIBIT 1
                               - 14 -

1   shown, from time to time, upon due application therefor, duly extended

2   said time, and duly made and entered supplemental findings in accordance

3   with proof offered and presented to said commission, of completion of

4   certain of said incomplete rights, and duly made other findings and orders

5   with respect thereto, and filed with this court certified copies thereof.

6                                    XXI

7        On the 14th day of August, 1931, jurisdiction of said commission

8   as aforesaid over said incomplete rights ceased and terminated, except as

9   provided by said section 12 of said act, and in and by Chapter 1136 of

10  the Statutes of 1931, amending said section 36f of said act, and upon

11  said 14th day of August, 1931, jurisdiction over said incomplete rights

12  vested in this Court as provided in and by said section 36f of said act

13  as amended by said Chapter 1136 of the Statutes of 1931; that thereafter

14  this court, for good cause shown, and upon motion therefor by certain of

15  said claimants, from time to time, duly extended said time for completion

16  of said incomplete rights as aforesaid, and, upon notice thereof and

17  motion therefor, with respect to certain of said incomplete rights, re-

18  ceived proof of completion thereof and duly entered findings (designated

19  "Supplemental Decree") establishing said rights to appropriate the waters

20  of said stream system.

21                                   XXII

22       This court hereby ratifies, approves and confirms each, every

23  and all of said acts, orders and findings of said commission and of this

24  Court with respect to said incompleted rights and herein enters judgment

25  pursuant thereto, and in accordance therewith; said rights, incomplete

26  as aforesaid, as contained in said order of determination filed as afore-

27  said with this court on said 30th day of April, 1928, together with each

28  and every of said acts, orders and findings of said commission and of this

29  Court appertaining thereto are as follows:

30       1.   In and by paragraph 7 of said order of determination, said com-

31  mission found that Stuart D. Allen would be entitled to divert, as therein

                                  -11-

EXHIBIT 1
- 15 -

1   provided, the waters of Whitewater River, provided said appropriation

2   thereof should be completed and said water applied to beneficial use prior

3   to December 1, 1929, in accordance with the terms of Division of Water

4   Rights Permit 1723 (Application 2888); on January 9, 1930, said commission

5   entered an order extending said time for completion and application to

6   beneficial use to December 1, 1931; on May 10, 1932, at the request of

7   said claimant, said commission entered an order revoking said Permit 1723,

8   and prepared and duly certified a copy of said order, and on June 2, 1932,

9   duly forwarded the same by mail to the clerk of this court, which said

10  certified copy was duly received by said clerk and filed in the above

11  entitled proceeding; and pursuant to said last mentioned order of said

12  commission, said incomplete right so found as aforesaid in paragraph 7 of

13  said order of determination is hereby ordered, adjudged and decreed to

14  have been abandoned and revoked, and is cancelled and held for naught.

15      2.   In and by paragraph 8 of said order of determination, said com-

16  mission found that R. E. Bailiff would be entitled to divert, as therein

17  provided, certain of the waters of Water Canyon, provided that said ap-

18  propriation should be completed and said water applied to beneficial use

19  prior to December 1, 1929 in accordance with the terms of the Division of

20  Water Rights Permit 1855 (Application 3902); on December 2, 1929, said

21  commission entered an order extending said time for completion and appli-

22  cation to beneficial use to December 1, 1930; on November 28, 1930, said

23  commission entered an order further extending said time for completion

24  and application to beneficial use to December 1, 1933; and on November 20,

25  1933, this court duly entered its findings (designated "Supplemental De-

26  cree") establishing said right of said claimant to appropriate the waters

27  of said Water Canyon, and judgment and decree is entered herein pursuant

28  thereto and in accordance therewith.

29      3.   In and by paragraph 9 of said order of determination said commis-

30  sion found that R. E. Bailiff would be entitled to divert, as therein pro-

31  vided, certain of the waters of two unnamed springs, provided that said

-12-

EXHIBIT 1

- 16 -

1    appropriation should be completed and said water applied to beneficial

2    use prior to December 1, 1929 in accordance with the terms of Division of

3    Water Rights Permit 1856 (Application 3904); on May 11, 1931, said com-

4    mission duly entered and made supplemental findings in accordance with

5    proof of completion of said incomplete right by appropriation as presented

6    to and found by it, a certified copy of which findings was on May 11, 1931,

7    forwarded by mail to the clerk of this court and was received by said clerk

8    and duly filed in this proceeding, and judgment and decree is entered here-

9    in pursuant thereto and in accordance therewith.

10    4.    In and by paragraph 14 of said order of determination said com-

11    mission found that Donald M. Bedwell would be entitled to a right to divert,

12    as therein provided, certain of the waters of Thousand Palms Canyon Creek,

13    provided the said appropriation should be completed and said water applied

14    to beneficial use prior to December 1, 1929; on February 26, 1930, said

15    commission entered an order extending said time for completion and appli-

16    cation to beneficial use to December 1, 1930; and on May 11, 1931, said

17    commission entered and made supplemental findings in accordance with proof

18    of completion of said incomplete right as presented to and found by it,

19    a certified copy of which findings was on May 11, 1931, forwarded by mail

20    to the clerk of this court, and was received by said clerk and duly filed

21    in the above entitled proceeding, and judgment and decree is entered herein

22    pursuant thereto and in accordance therewith.

23    5.    In and by paragraph 16 of said order of determination said com-

24    mission found that the Coachella Valley County Water District would be

25    entitled, as therein provided, to spread and store underground certain of

26    the waters of the Whitewater River, provided that said appropriation

27    should be completed and said water applied to beneficial use prior to

28    July 1, 1932, in accordance with the terms of Division of Water Rights

29    Permit 536 (Application 1122); on June 28, 1932, this court duly entered

30    an order extending said time for completion and application to beneficial

31    use to June 30, 1935; on July 18, 1935 this court duly entered an order

-13-

EXHIBIT 1

1    further extending said time for completion and application to beneficial

2    use to June 30, 1938; and on April 28, 1938 this court duly entered an or-

3    der further extending said time for completion and application to benefi-

4    cial use to July 1, 1943.

5        6.    In and by paragraph 17 of said order of determination said

6    commission found that Coachella Valley County Water District would be

7    entitled, as therein provided, to spread and store underground certain

8    of the waters of Whitewater River, Snow Creek, Falls Creek, Tahquitz

9    Creek, Andreas Creek, Murray Creek and Palm Canyon Creek, provided that

10   said appropriation should be completed and said water applied to benefi-

11   cial use prior to July 1, 1932 in accordance with the terms of Division

12   of Water Rights Permit 3011 (Application 2922); on June 28, 1932 this

13   court duly entered an order extending said time for completion and appli-

14   cation to beneficial use to June 30, 1935; and on July 18, 1935 this court

15   duly entered an order further extending said time for completion and ap-

16   plication to beneficial use to June 30, 1938; and on April 28, 1938 this

17   court duly entered an order further extending said time for completion

18   and application to beneficial use to July 1, 1943.

19       7.    In and by paragraph 28 of said order of determination said com-

20   mission found that George R. Hicks would be entitled to divert as therein

21   provided the waters of Upper Little Morongo Creek, provided said appro-

22   priation should be completed and said water applied to beneficial use

23   prior to December 1, 1929 in accordance with the terms of Division of

24   Water Rights Permit 768 (Application 650); on December 20, 1929, said

25   commission entered an order extending said time for completion and appli-

26   cation to beneficial use to December 1, 1931; on December 9, 1931 this

27   court duly entered an order further extending said time for completion

28   and application to beneficial use to December 1, 1932; and on December

29   21, 1932 this court duly entered an order further extending said time for

30   completion and application to beneficial use to December 1, 1933; on

31   December 1, 1933 this court duly entered an order further extending said

-14-

EXHIBIT 1
- 18 -

1    time for completion and application to beneficial use to December 1, 1934;

2    on May 17, 1935 this court duly entered an order further extending said

3    time for completion and application to beneficial use to December 1, 1935;

4    on November 27, 1935 this court duly entered an order further extending

5    said time for completion and application to beneficial use to December 1,

6    1936; on January 18, 1937 this court duly entered an order further ex-

7    tending said time for completion and application to beneficial use to

8    June 1, 1937; and on July 12, 1937 this court entered its findings (de-

9    signated "Supplemental Decree") establishing the right of said claimant

10    to appropriate said waters; and judgment and decree is entered herein

11    pursuant thereto and in accordance therewith.

12    8.    In and by paragraph 34 of said order of determination said com-

13    mission found that Mayme V. Matthey would be entitled to divert certain

14    of the waters of Cottonwood Creek, provided that said appropriation should

15    be completed and said water applied to beneficial use prior to December 1,
                 the Division of Water Rights

16    1928 in accordance with the terms of/Permit 1858 (Application 3253); on

17    November 30, 1928 said commission entered an order extending said time

18    for completion and application to beneficial use to December 1, 1930; on

19    November 12, 1930 at the request of said claimant, said commission entered

20    an order revoking said Permit 1858, and prepared and duly certified a

21    copy of said order, and on May 11, 1931, duly forwarded the same by mail

22    to the clerk of this court, which said certified copy was received by said

23    clerk and duly filed in the above entitled proceeding; and pursuant to said

24    last mentioned order of said commission said incomplete right so found as

25    aforesaid in said paragraph 34 of said order of determination is hereby

26    ordered, adjudged and decreed to have been abandoned and revoked, and is

27    cancelled and held for naught.

28    9.    In and by paragraph 43 of said order of determination said com-

29    mission found that H. C. Ratcliff would be entitled to divert certain of

30    the waters of Jensen's Creek provided said appropriation was completed and

31    said water applied to beneficial use prior to December 1, 1929; on December

-15-

EXHIBIT 1
- 19 -

1   herein in lieu, place and stead of the said Ruth J. Orr, it was so ordered
2   by the court; and
3       5.      It appearing to the court that Walter O. Edwards has succeeded
4   to all right, title and interest of H. C. Ratcliff as found in paragraphs 42
5   and 43 of said order of determination, and that said Walter O. Edwards should
6   be substituted herein in lieu, place and stead of the said H. C. Ratcliff,
7   it was so ordered by the court; and
8       6.      It appearing to the court that there was doubt concerning the
9   accuracy of description of certain properties found as in the ownership
10  of Pearl McCallum McManus in and by paragraph 18 of said order of deter-
11  mination, and particularly with respect to the description of said proper-
12  ties contained in the first items thereof whether such description should
13  refer to lots 1, 2, 3 and 4, as stated in said paragraph of said order of
14  determination, or whether such description, in lieu thereof, should refer
15  to lots 5, 6, 7 and 8, it was duly and regularly stipulated and agreed
16  orally in open court at the hearing herein held on April 5, 1938, by and
17  among all parties in interest appearing at said hearing, including said
18  Pearl McCallum McManus, which said stipulation was duly entered in the
19  minutes of the court, that the said commission should make due examin-
20  ation with respect to such description, and if it found said description
21  to be inaccurate, it should report the matter to this court and said
22  paragraph 18 should be reformed accordingly, and it was so ordered by the
23  court, and said commission having made such examination, and having found
24  that said description as stated in said order of determination is accur-
25  ately set forth therein, said finding is approved by the court and ordered
26  in effect.
27                              XXV
28      Subject to the hereinafter mentioned definitions, limitations
29  and provisions the relative rights based upon prior appropriation of the
30  various claimants to the waters of the Whitewater River and its tribu-
31  taries in San Bernardino and Riverside counties, California, are

-23-

EXHIBIT 1

- 20 -

1   established, determined, adjudged and decreed as hereinafter in this

2   judgment and decree set forth, said definitions, limitations and pro-

3   visions being as follows, to-wit:

4   1.   Although all quantities of water hereinafter adjudged and decreed

5   to the several claimants for direct application to beneficial use are

6   severally expressed in terms of continuous flow, nevertheless, nothing

7   herein contained shall be construed as limiting or restricting the rights

8   of any such claimants to rotate in the use of water, or the right of any

9   such claimant to divert for limited periods of time convenient irrigation

10  heads, and thereby apply water to his lands at a greater rate than indi-

11  cated by the quantity of continuous flow so adjudged and decreed; provided,

12  however, that such practice of rotation or use of irrigation heads shall

13  not result in the use by any such claimant of a total quantity of water

14  during any thirty-day period in excess of the equivalent of such claimant's

15  continuous flow allowance for thirty days; and provided, further, that

16  such practice of rotation or such use of irrigation heads shall not impair

17  or infringe the right of any other such claimant.

18  2.   The respective points of measurement of the quantities of water

19  established, determined, adjudged and decreed to the several claimants

20  hereinafter mentioned, are at the respective points of diversion from

21  said stream system, as hereinafter set forth.

22  3.   The term "directly apply to beneficial use" means the direct

23  conveyance and application of water diverted to beneficial use without

24  intermediate storage, except such regulatory storage as may be practiced

25  for the purpose of equalizing the flow of water diverted to a convenient

26  irrigation head.

27  4.   The term "natural flow" means such flow as will naturally occur

28  at any given point in a stream from the run-off of the watershed which it

29  drains, from springs which naturally contribute to the stream, from

30  seepage, and from waste and return flow from dams, conduits, and irrigated

31  lands; as distinguished from released stored water, and from foreign water

-24-

EXHIBIT 1
- 21 -

1    directly conveyed to the stream from another watershed.

2         5.   The "Division of Water Rights Map" hereinafter referred to is

3    the map prepared by the Division of Water Rights of the Department of

4    Public Works of the State of California, from its surveys made in 1922

5    and 1923, which map is entitled "Map of Whitewater River Watershed showing

6    Diversion Systems and Irrigated Areas, San Bernardino and Riverside Coun-

7    ties, California", is dated 1923, and is on file in this proceeding.

8                                    XXVI

9         Said relative rights based upon prior appropriation of the

10   various claimants to the waters of the Whitewater River and its Tribu-

11   taries, in San Bernardino and Riverside Counties, California, are, subject

12   to the aforesaid definitions, limitations and provisions, hereby estab-

13   lished, determined, adjudged and decreed as follows, to-wit:

14   1.   STUART D. ALLEN       *transferred to James J. and Vonch F. Roberts*

15        is entitled to divert from the natural flow of Blaisdell Creek.

16   through the Allen Blaisdell Pipe Line,

17        0.025 cubic foot per second--priority July 2, 1924,

18   or as much thereof as he directly applies to beneficial use for the purpose

19   hereinafter set forth, throughout the entire year; said water to be di-

20   verted from said Blaisdell Creek at a point situated approximately 2000

21   feet south  from the northwest corner of Sec. 36, T. 3 S., R. 3 E.,

22   S.B.B. and M., being within the SW$\frac{1}{4}$ NW$\frac{1}{4}$ of said Sec. 36, and said water

23   to be used for domestic purposes within the

24        SW$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 30, T. 3 S., R. 4 E., S.B.B. and M.

25   2.   R. E. BAILIFF

26        is entitled to divert from the natural flow of the stream flow-

27   ing in Water Canyon, through the Bailiff Water Canyon Pipe Line,

28        (a) during the period between March first and November first

29   of each year,

30        0.37 cubic foot per second--priority March 12, 1924,

31   or as much thereof as he directly applies to beneficial use for

-25-

EXHIBIT 1
- 22 -

1   domestic and stock watering purposes and for the irrigation of his

2   lands hereinafter described;

3          (b) during the period between November first of each year

4   and March first of the succeeding year,

5          45 acre-feet per season--priority March 12, 1924,

6   or as much thereof as he impounds in the Bailiff Storage Reservoir

7   constructed in the SW$\frac{1}{4}$ SW$\frac{1}{4}$ of Section 18, T. 3 S., R. 2 E., S.B.B.

8   and M., and   thereafter withdrawsfrom said reservoir and supplies to

9   beneficial use for domestic and stock watering purposes and for the

10  irrigation of his lands hereinafter described;

11  all of said water to be diverted from said stream at a point which bears

12  approximately N. 77° 00' W., approximately 310 feet distant from the

13  southwest corner of Section 18, T. 3 S., R. 2 E., S.B.B. and M., being

14  within the SE$\frac{1}{4}$ SE$\frac{1}{4}$ of Section 13, T. 3 S., R. 1 E., S.B.B. and M., and

15  all of said water to be used upon the following described lands:

16          25.0 acres in NW$\frac{1}{4}$ SE$\frac{1}{4}$, Sec. 18, T. 3 S., R. 2 E., S.B.B. and M.
            5.0 acres in NE$\frac{1}{4}$ SW$\frac{1}{4}$, Sec. 18, T. 3 S., R. 2 E., S.B.B. and M.

17

18  3.  R. E. BAILIFF

19          is entitled to divert from the natural or developed flow of two

20  unnamed springs; the upper (Spring No. 1) being situated South 3805 feet

21  and West 935 feet from the northeast corner of Section 23, T. 3 S., R. 1 E.,

22  S.B.B. and M., being within the NE$\frac{1}{4}$ SE$\frac{1}{4}$ of said Section 23, and the lower

23  (Spring No. 2) being situated South 70 feet and West 300 feet from the

24  southwest corner of Section 18, T. 3 S., R. 2 E., S.B.B. and M., being

25  within the SE$\frac{1}{4}$ SE$\frac{1}{4}$ of Section 13, T. 3 S., R. 1 E., S.B.B. and M.;

26  through the Bailiff West Spring Pipe Line,

27          (a) during the period between March first and November first

28  of each year,

29          0.11 cubic foot per second--priority March 14, 1924,

30  from Spring No. 1, and

31          0.02 cubic foot per second--priority March 14, 1924,

-26-

EXHIBIT 1
- 23 -

1   from Spring No. 2,

2   or as much of said amounts as he directly applies to beneficial

3   use for domestic and stock watering purposes and for the irrigation

4   of his lands hereinafter described;

5       (b) during the period between November first of each year and

6   March first of the succeeding year, a total of

7       0.025 cubic foot per second--priority March 14, 1924,

8   from either, or in part from each of said springs, or as much thereof

9   as he directly applies to beneficial use for domestic and stock

10  watering purposes;

11      (c) during the period between November first of each year and

12  March first of the succeeding year, a total of

13      1.5 acre-feet per season--priority March 14, 1924,

14  from either, or in part from each of said springs, or as much thereof

15  as he impounds in the Bailiff Reservoir located in the NE$\frac{1}{4}$ SW$\frac{1}{4}$ of

16  Section 18, T. 3 S., R. 2 E., S.B.B. and M., and thereafter withdraws

17  from said reservoir and applies to beneficial use for domestic and

18  stock watering purposes and for the irrigation of his lands herein-

19  after described;

20  all of said water to be diverted at the above described springs, and used

21  for domestic and stock watering purposes and for the irrigation of

22      10.0 acres of land in the NE$\frac{1}{4}$ SW$\frac{1}{4}$, Section 18, T. 3 S.,
            R. 2 E., S.B.B. and M.

23

24  4.  R. E. BAILIFF

25      is entitled to divert from the natural or developed flow of an

26  unnamed spring situated approximately N. 70$^{\circ}$ 00' W., approximately 2330

27  feet distant from the southeast corner of Sec. 19, T. 3 S., R. 2 E.,

28  S.B.B. and M., being within the NE$\frac{1}{4}$ SE$\frac{1}{4}$ of said Sec. 19, through the Bai-

29  liff East Spring Pipe Line,

30      (a) during the period between March first and November first

31  of each year,

-27-

EXHIBIT 1
- 24 -

1    0.05 cubic foot per second--priority April 24, 1924,

2    or as much thereof as he directly applies to beneficial use for

3    domestic and stock watering purposes and for the irrigation of his

4    lands hereinafter described;

5    (b) during the period between November first of each year and

6    March first of the succeeding year,

7    0.025 cubic foot per second--priority April 24, 1924,

8    or as much thereof as he directly applies to beneficial use for

9    domestic and stock watering purposes;

10   all of said water to be diverted at said spring and to be used upon the

11   following described land:

12   7.0 acres in NE¼ NE¼, Sec. 19, T. 3 S., R. 2 E., S.B.B. and M.

13   5.    THE BANNING HEIGHTS MUTUAL WATER COMPANY, THE BANNING WATER COMPANY

14   AND THE SAN GORGONIO POWER COMPANY,                        *Calif. Electric Power,*
                                                                 *Company,*

15   jointly, are entitled to divert from the natural flow of the

16   South Fork of Whitewater River, through the Consolidated Reservoir and

17   Power Company Canal, a total of

18   13.25 cubic feet per second--priority October 31, 1906,

19   or as much thereof as they apply to beneficial use for the purposes

20   hereinafter set forth, throughout the entire year; said total quantity of

21   water to be diverted from said South Fork of Whitewater River, all or in

22   part, at any of the following described points.

23   (1) At a point on the East Branch of said South Fork of

24   Whitewater River (designated on Division of Water Rights Map as

25   Diversion 1) which bears approximately N. 26° 45' E., approxi-

26   mately 11,709 feet distant from the northeast corner of Sec. 1,

27   T. 2 S., R. 1 E., S.B.B. and M., being within the SE¼ SE¼ of

28   Sec. 19, T. 1 S., R. 2 E., S.B.B. and M.

29   (2) At a point on the West Branch of said South Fork of

30   Whitewater River (designated on Division of Water Rights Map as

31   Diversion 2) which bears approximately N. 11° 48' E., approximately

-28-

EXHIBIT 1
- 25 -

1    10,351 feet distant from the northeast corner of Sec. 1,

2    T. 2 S., R. 1 E., S.B.B. and M., being within the NE¼ NW¼

3    of Sec. 30, T. 1 S., R. 2 E., S.B.B. and M.

4         (3)  At a point on the Blackwheel Canyon Branch of the

5    West Branch of said South Fork of Whitewater River (designated

6    on Division of Water Rights Map as Diversion 3) which bears

7    N. 12° 19½' E., approximately 9882 feet distant from the north-

8    east corner of Sec. 1, T. 2 S., R. 1 E., S.B.B. and M., being

9    within the NE¼ NW¼ of Sec. 30, T. 1 S., R. 2 E., S.B.B. and M.;

10   and said water to be used first by said San Gorgonio Power Company for the

11   purpose of generating electric energy at two power plants, the upper of

12   said plants being situated in the SW¼ NW¼ of Sec. 2, T. 2 S., R. 1 E.,

13   S.B.B. and M., and the lower of said plants being situated in the NE¼

14   NE¼ of Sec. 8, T. 2 S., R. 1 E., S.B.B. and M.; and said water to be

15   used thereafter by said Banning Heights Mutual Water Company and by said

16   Banning Water Company for the purpose of supplying water for domestic,

17   stock watering and irrigation uses within the respective territories

18   served by said companies as hereinafter described.  During the winter

19   months, at times when the entire quantity of water available under this

20   right may not be required for direct application to use for domestic,

21   stock watering and irrigation purposes as hereinabove provided for, the

22   Banning Water Company is entitled to spread and store underground in San

23   Gorgonio Canyon, above the mouth of said canyon in the SE¼ SE¼ of Sec.

24   33, T. 2 S., R. 1 E., S.B.B. and M., all surplus water available over

25   and above the quantity required for direct application to use for domes-

26   tic, stock watering and irrigation purposes;

27   provided, that all water so spread and stored is subsequently withdrawn

28   from said underground storage and applied to beneficial use by said

29   Banning Water Company as hereinafter provided in paragraph 7.  The joint

30   diversion and use of water under this right by said Banning Heights

31   Mutual Water Company, said Banning Water Company, and said San Gorgonio

-29-

EXHIBIT 1
- 26 -

1    Power Company, is subject to the provisions of the following agreements

2    and deeds:

3          (a)  Agreement dated January 10, 1913, between the Consolidated

4    Reservoir and Power Company and the Banning Water Company, recorded

5    October 14, 1913, in Book No. 380 of Deeds, page 337 et seq., records

6    of Riverside County, California.

7          (b)  Instrument dated December 30, 1913, between the Consoli-

8    dated Reservoir and Power Company and the Banning Heights Mutual

9    Water Company, recorded December 14, 1922, in Book No. 561 of Deeds,

10   page 543 et seq., records of Riverside County, California.

11         (c)  Deed dated August 7, 1922, between the Consolidated

12   Reservoir and Power Company and the San Gorgonio Power Company,

13   recorded February 1, 1923, in Book No. 564 of Deeds, page 383

14   et seq., records of Riverside County, California.

15   The territory served by said Banning Heights Mutual Water Company includes

16   approximately 1500 acres of land, situated within the following described

17   parcels:

18         All of lots 1, 2, 3, 4, 5, 6, 7, 7A, 8, 9, 10, 11, 12, 13, 14,

19   15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32,

20   33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49,

21   50, 51, 52, 53, 54, 55, 55A, 55B, 56, 57, 57A, 58, 58A, 59, 60, 61,

22   62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78,

23   79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89 and 90 of the Banning

24   Heights Subdivision, situate in Riverside County, California, as

25   said lots are delineated on the "Map of Banning Heights" recorded

26   in the office of the county recorder of Riverside County, California,

27   in Book 9 of Maps, at pages 37 to 51 thereof.

28         60.0 acres in block 1 of the Ginzell-Montgomery Tract, situate

29   in Riverside County, California, as said block is delineated on the

30   map of said Ginzell-Montgomery Tract recorded in the office of the

31   county recorder of Riverside County, California, in Book 8 of Maps,

-30-

EXHIBIT 1
- 27 -

1    at page 64 thereof.

2    48.0 acres in S½ S½, Sec. 5, T. 3 S., R. 1 E., S.B.B. and M.
     10.0 acres in S½ NW¼, Sec. 5, T. 3 S., R. 1 E., S.B.B. and M.
3    65.0 acres in S½ S½, Sec. 6, T. 3 S., R. 1 E., S.B.B. and M.

4    The territory served by said Banning Water Company includes approximately

5    3745 acres of land, situated within the following described parcels:

6          All of blocks 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14,

7    15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 25½, 27, 35, 36, 37, 38,

8    39, 40, 41, 42, 43, 44, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66,

9    67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82,

10   83, 84, 85, 86, 87, 88, 125, 129, 130, 131, 132, 133, 134, 135,

11   136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148,

12   149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161,

13   162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174,

14   175, 176, 177, 178, 179, 180, 181, 182, 183, 184; 2.1 acres in

15   block 2; 0.7 acre in block 26½; 0.8 acre in block 28½; 0.7 acre

16   in block 31½; 2.0 acres in block 32; 1.0 acre in block 32½; 3.3

17   acres in block 90; 8.0 acres in block 91; 6.5 acres in block 92;

18   7.1 acres in block 93; 8.7 acres in block 94; 8.5 acres in block

19   95; 8.4 acres in block 96; 4.8 acres in block 101; 4.3 acres in

20   block 102; 3.0 acres in block 103; 2.9 acres in block 104; E½ of

21   block 124; and W½ of block 126; all within the Banning Colony

22   Subdivision, situate in Riverside County, California, as said

23   blocks are delineated on the map entitled "Map of Part of Banning

24   Colony Lands" recorded in the office of the county recorder of

25   Riverside County, California, in Book 5 of Maps, at page 186

26   thereof.

27         All of blocks 1 to 20, both inclusive, of the San Jose

28   Tract, situate in Riverside County, California, as said blocks

29   are delineated on the map of said San Jose Tract recorded in the

30   office of the county recorder of San Diego County, California, in

31   Book 1 of Maps, at page 55 thereof.

-31-

31         recorder of San Diego County, California, in Book 14 of Maps, at

EXHIBIT I

```
 1      60.0 acres in Sec. 33, T. 2 S., R. 1 E., S.B.B. and M.
        18.5 acres in E½ NE¼, Sec. 4, T. 3 S., R. 1 E., S.B.B. and M.
 2      72.6 acres in S½ SW¼, Sec. 4, T. 3 S., R. 1 E., S.B.B. and M.
       233.3 acres in N½    , Sec. 8, T. 3 S., R. 1 E., S.B.B. and M.
 3       3.8 acres in NE¼ SW¼, Sec. 9, T. 3 S., R. 1 E., S.B.B. and M.
        40.0 acres in S½ SW¼, Sec.11, T. 3 S., R. 1 E., S.B.B. and M.
 4     258.0 acres in W½    , Sec.16, T. 3 S., R. 1 E., S.B.B. and M.
        89.4 acres in NE¼   , Sec.16, T. 3 S., R. 1 E., S.B.B. and M.
 5      25.5 acres in NE¼ SE¼, Sec.16, T. 3 S., R. 1 E., S.B.B. and M.
        10.5 acres in NE¼ NE¼, Sec.18, T. 3 S., R. 1 E., S.B.B. and M.
 6
 7     5.   THE BANNING WATER COMPANY
 8          is entitled to divert from the natural flow of San Gorgonio
 9     River and its tributaries, through its system of spreading ditches shown
10     as diversion ditches numbered 1 to 7, both inclusive, on the "Map Showing
11     System of the Banning Water Company in San Gorgonio Canyon," prepared by
12     J. F. Davidson, Civil Engineer, and dated January, 1923.
13          20,000 acre-feet per annum--priority January 1, 1887,
14     or as much thereof as it spreads and stores underground in San Gorgonio
15     Canyon; said quantity of water to be so diverted, spread and stored dur-
16     ing the period from January first to December thirty-first of each year,
17     both dates inclusive; provided, that said water is subsequently with-
18     drawn from said underground storage and applied to beneficial use by
19     said Banning Water Company as hereinafter provided in paragraph 7.
20     7.   THE BANNING WATER COMPANY
21          is entitled to divert from the natural flow of San Gorgonio
22     River, or from its underground storage in San Gorgonio Canyon as here-
23     inabove provided for in paragraphs 5 and 6, or in part from both of said
24     sources, through the Main Stone Lined Conduit of said Banning Water
25     Company's System, and through the various ditches and pipe lines leading
26     thereto hereinafter mentioned, a total of
27          14,000 acre-feet per annum--priority March 17, 1875,
28     or as much thereof as it directly applies to beneficial use for the
29     purpose of supplying water for domestic, stock watering and irrigation
30     uses within the territory served by said company as hereinabove described
31     in paragraph 5, for the purpose of supplying water for domestic and
```

-34-

EXHIBIT 1
- 29 -

1   municipal uses within the city of Banning, Riverside County, California,
2   and for the purpose of driving water wheels connected with pumps at
3   pumping plants of said company located in said San Gorgonio Canyon be-
4   tween the west line of Section 3, T. 2 S., R. 1 E., S.B.B. and M. and
5   the east line of Section 33, T. 2 S., R. 1 E., S.B.B. and M.; said total
6   quantity of water to be diverted from said sources, all or in part, at
7   any of the following described points:

8       (a)  At the upper intake of said Stone Lined Conduit situated
9   at a point which bears approximately N. 35° 10' E., approximately
10   720 feet distant from the southwest corner of Sec. 4, T. 2 S.,
11   R. 1 E., S.B.B. and M., being within the SW¼ SW¼ of said Sec. 4,

12       (b)  At the intake of a ditch leading to said Stone Lined
13   Conduit and known as Diversion Ditch No. 11, situated at a point
14   which bears approximately N. 51° 24' E., approximately 1424 feet
15   distant from the southwest corner of Sec. 17, T. 2 S., R. 1 E.,
16   S.B.B. and M., being within the SW¼ SW¼ of said Sec. 17,

17       (c)  At the lower intake of said Stone Lined Conduit situated
18   at a point which bears approximately S. 86° 03' E., approximately
19   1832 feet distant from the northwest corner of Sec. 20, T. 2 S.,
20   R. 1 E., S.B.B. and M., being within the NW¼ NW¼ of said Sec. 20,

21       (d)  At the intake of a twenty-inch pipe line leading to said
22   Stone Lined Conduit, situated at a point which bears approximately
23   N. 15° 34' W., approximately 3200 feet distant from the southeast
24   corner of Sec. 29, T. 2 S., R. 1 E., S.B.B. and M., being within
25   the SE¼ NE¼ of said Sec. 29,

26       (e)  At the intake of a twelve-inch pipe line leading to said
27   twenty-inch pipe line, situated at a point which bears approximately
28   N. 11° 30' W., approximately 3188 feet distant from the southeast
29   corner of Sec. 29, T. 2 S., R. 1 E., S.B.B. and M., being within
30   the SE¼ NE¼ of said Sec. 29,

31       (f)  At the intake of a ten-inch pipe line leading to said

-35-

EXHIBIT 1
- 30 -

1    Stone Lined Conduit, situated at a point which bears approxi-

2    mately N. 45° 45' W., approximately 2538 feet distant from the

3    southeast corner of Sec. 33, T. 2 S., R. 1 E., S.B.B. and M.,

4    being within the NW¼ SE¼ of said Sec. 33,

5        (g)  At the intake of an iron flume leading to said Stone

6    Lined Conduit, situated at a point which bears approximately

7    N. 8° 05' W., approximately 1165 feet distant from the southeast

8    corner of Sec. 33, T. 2 S., R. 1 E., S.B.B. and M., being within

9    the SE¼ SE¼ of said Sec. 33,

10       (h)  At the intake of a short stone lined ditch leading to

11   said iron flume, situated at a point which bears approximately

12   N. 15° 49' W., approximately 1659 feet distant from the southeast

13   corner of Sec. 33, T. 2 S., R. 1 E., S.B.B. and M., being within

14   the NE¼ SE¼ of said Sec. 33;

15   and said total quantity of water to be diverted at such times and at such

16   rates throughout the year as may be necessary in order that said Banning

17   Water Company may adequately supply the requirements of water for domestic,

18   stock watering and irrigation purposes within the territory which it

19   serves as hereinabove described in paragraph 5, and the requirements of

20   water for domestic and municipal purposes within the city of Banning.

21   8.  DONALD M. BEDWELL

22       is entitled to divert from the natural or developed flow of

23   Thousand Palms Canyon Creek through the Bedwell and Richey Ditch and pipe

24   line,

25       0.35 cubic foot per second--priority January 31, 1913,

26   or as much thereof as he directly applies to beneficial use for the pur-

27   poses hereinafter set forth, throughout the entire year; said water to

28   be diverted from said Thousand Palms Canyon Creek at a point (designated

29   on Division of Water Rights Map as Diversion 63) which bears approxi-

30   mately S. 77° 11' E., approximately 2345 feet distant from the west

31   quarter corner of Sec. 12, T. 4 S., R. 6 E., S.B.B. and M., being within

-36-

EXHIBIT 1
- 31 -

1  the NE¼ SW¼ of said Sec. 12, and said water to be used for domestic and

2  stock watering purposes and for the irrigation of

3      40.0 acres of land in the N½ Sec. 22, T. 4 S., R. 6 E.,
        S.B.B. and M.

4

5     9.   THE CABAZON WATER COMPANY

6      is entitled to divert from the natural flow of Millard Creek,

7  through the Cabazon Water Company Conduit,

8      4.67 cubic feet per second--priority January 1, 1835,
    2.50 cubic feet per second--priority July 22, 1916,

9      7.17 cubic feet per second--Total,

10  or as much thereof as said company directly applies to beneficial use for

11  the purposes hereinafter set forth, throughout the entire year; said water

12  to be diverted from said Millard Creek at a point (designated on Division

13  of Water Rights Map as Diversion 27) situated approximately 272 feet

14  southwesterly from a point which bears approximately S. 0° 13' W., ap-

15  proximately 510.5 feet distant from the east quarter corner of Sec. 20,

16  T. 2 S., R. 2 E., S.B.B. and M., being within the NE¼ SE¼ of said Sec.

17  20; and said water to be used by said Cabazon Water Company for the pur-

18  pose of supplying water for domestic, stock watering and irrigation

19  purposes within the territory served by said company, which territory

20  includes approximately 2560 acres of land, situated within the following

21  described parcels:

22     NW¼ of Sec. 5, T. 3 S., R. 2 E., S.B.B. and M.
   S½ of Sec. 5, T. 3 S., R. 2 E., S.B.B. and M.

23  W½ NE¼ of Sec. 5, T. 3 S., R. 2 E., S.B.B. and M.
   All of Sec.15, T. 3 S., R. 2 E., S.B.B. and M.

24     All of Sec.16, T. 3 S., R. 2 E., S.B.B. and M., except that portion
     of said section occupied by the right of way of the Southern

25       Pacific Railroad Company.
   All of Sec.17, T. 3 S., R. 2 E., S.B.B. and M., except that portion

26       of said section occupied by the right of way of theSouthern
     Pacific Railroad Company.

27     N½ NW¼ of Sec. 21, T. 3 S., R. 2 E., S.B.B. and M.

28     10.   THE COACHELLA VALLEY COUNTY WATER DISTRICT

29      will be entitled to divert from the natural flow of Whitewater

30  River by means of its spreading dams, ditches and other spreading works,

31  all situated along the channel of said Whitewater River east of the west

-37-

EXHIBIT 1
- 32 -

1    line  of Secs. 20 and 29, T. 3 S., R. 4 E., S.B.B. and M., and west of

2    the west line of Secs. 30 and 31, T. 3 S., R. 5 E.,

3             80,000 acre-feet per annum--priority October 25, 1918,

4    or as much thereof as it spreads and stores underground in the basin under-

5    lying Coachella Valley, situate in Riverside County, California; said

6    quantity of water to be so diverted, spread and stored during the period

7    between January first and December thirty-first of each year, both dates

8    inclusive; provided, that said water is subsequently withdrawn from said

9    underground storage by the inhabitants of said Coachella Valley and ap-

10   plied by said inhabitants to beneficial use for domestic, stock watering,

11   municipal and industrial purposes and for the irrigation of 25,000 acres

12   of land lying within the 195,000-acre area included within the confines

13   of the yellow border line on Coachella Valley County Water District Map

14   No. 2 dated September, 1918, and filed by said Coachella Valley County

15   Water District with the state water commission with its Application 1122,

16   and which map is now on file and of record in the office of the Division

17   of Water Resources of the Department of Public Works of the State of

18   California; and provided, further, that prior to July 1, 1943, said

19   Coachella Valley County Water District shall have completed the above

20   appropriation and applied said water to beneficial use in accordance

21   with the terms of the Division of Water Rights Permit 536, and shall

22   have submitted evidence of such completed appropriation and use to this

23   court.  Upon receipt of such evidence of such completed appropriation

24   and use, this court will act thereupon as provided in section 36f of the

25   Water Commission Act, and in accordance with said evidence will enter a

26   supplemental decree determining and establishing the right by appropriation

27   specified in this paragraph, insofar as the same shall have been completed.

28   11.   THE COACHELLA VALLEY COUNTY WATER DISTRICT

29             will be entitled to divert from the natural flows of White-

30   water River, Snow Creek, Falls Creek, Tahquitz Creek, Andreas Creek,

31   Murray Creek, and Palm Canyon Creek, by means of spreading dams, ditches

-38-

EXHIBIT 1
- 33 -

1   and other spreading works,

2       20,000 acre-feet per annum from Whitewater River,
        8,000 acre-feet per annum from Snow Creek,
3       2,000 acre-feet per annum from Falls Creek,
        5,000 acre-feet per annum from Tahquitz Creek,
4       1,000 acre-feet per annum from Andreas Creek,
        1,000 acre-feet per annum from Murray Creek,
5       2,000 acre-feet per annum from Palm Canyon Creek,

6       39,000 acre-feet per annum--Total--priority July 8, 1922,

7   or as much of said quantities of water as it spreads and stores underground

8   in the basin underlying Coachella Valley, situate in Riverside County,

9   California; said quantities of water to be diverted from said streams at

10  the respective points described as follows:

11      (1)  From Whitewater River at a point situated approximately

12  3450 feet south and approximately 1750 feet east from the south

13  quarter corner of Sec. 2, T. 3 S., R. 3 E., S.B.B. and M.; being

14  within the NE¼ SE¼ of Sec. 11, T. 3 S., R. 3 E., S.B.B. and M.;

15      (2)  From Snow Creek at a point situated approximately 3645

16  feet north and approximately 2115 feet east from the section corner

17  common to Secs. 20, 21, 28 and 29, T. 3 S., R. 3 E., S.B.B. and M.,

18  being within the SE¼ NW¼ of Sec. 21, T. 3 S., R. 3 E., S.B.B. and M.;

19      (3)  From Falls Creek at a point situated approximately 1280

20  feet south and approximately 1110 feet east from the south quarter

21  corner of Sec. 28, T. 3 S., R. 3 E., S.B.B. and M., being within the

22  NW¼ NE¼ of Sec. 33, T. 3 S., R. 3 E., S.B.B. and M.;

23      (4)  From Tahquitz Creek at a point situated approximately

24  2130 feet south and approximately 2950 feet west from the section

25  corner common to Secs. 14, 15, 22 and 23, T. 4 S., R. 4 E., S.B.B.

26  and M., being within the SE¼ NW¼ of Sec. 22, T. 4 S., R. 4 E.,

27  S.B.B. and M.;

28      (5)  From Andreas Creek at a point situated approximately

29  3440 feet north and approximately 255 feet east from the west quarter

30  corner of Sec. 11, T. 5 S., R. 4 E., S.B.B. and M., being within the

31  SW¼ SW¼ of Sec. 2, T. 5 S., R. 4 E., S.B.B. and M.;

-39-

EXHIBIT 1
- 34 -

1    (6)  From Murray Creek at a point situated approximately 690

2    feet north and approximately 75 feet east from the west quarter

3    corner of Sec. 11, T. 5 S., R. 4 E., S.B.B. and M., being within the

4    SW¼ NW¼ of said Sec. 11;

5    (7)  From Palm Canyon Creek at a point situated approximately

6    1330 feet south and approximately 3400 feet east from the west

7    quarter corner of Sec. 11, T. 5 S., R. 4 E., S.B.B. and M., being

8    within the SW¼ SE¼ of said Sec. 11;

9    said quantities of water to be so diverted, spread and stored during the

10    period between January first and December thirty-first of each year, both

11    dates inclusive; provided, that said water is subsequently withdrawn from

12    said underground storage by the inhabitants of said Coachella Valley and

13    applied by said inhabitants to beneficial use for domestic, stockwatering,

14    municipal and industrial purposes and for the irrigation of 25,000 acres

15    of land lying within the 195,000-acre area included within the confines

16    of the yellow border line on Coachella Valley County Water District Map

17    No. 2, dated September, 1918, and filed by said Coachella Valley County

18    Water District with the State Water Commission with its Application 1122,

19    and which map is now on file and of record in the office of the Division

20    of Water Resources of the Department of Public Works of the State of

21    California; and provided, further, that prior to July 1, 1943, said Coa-

22    chella Valley County Water District shall have completed the above appro-

23    priation and applied said water to beneficial use in accordance with the

24    terms of Division of Water Rights Permit 3011, and shall have submitted

25    evidence of such completed appropriation and use to this court.  Upon

26    receipt of such evidence of such completed appropriation and use, this

27    court will act thereupon as provided in section 36f of the Water Commission

28    Act, and in accordance with said evidence will enter a supplemental decree

29    determining and establishing the right by appropriation specified in this

30    paragraph, insofar as the same shall have been completed; and

31    provided, finally, that the rights of the Coachella Valley County Water

-40-

EXHIBIT 1
- 35 -

1    District as set forth in this paragraph are subsequent in right to the

2    water rights of the Palm Valley Water Company under Division of Water

3    Resources Permit 3503 issued on Application 4752, to the extent of one

4    and one-half (1.50) cubic feet per second, all as stipulated and agreed

5    to in that certain stipulation and agreement between the Coachella Valley

6    County Water District and Palm Valley Water Company dated February 21,

7    1929, and on file and of record in these proceedings.

8    12.   NELLIE N. COFFMAN, CORNELIA B. WHITE, FLORILLA M. WHITE, LAVINA F.
         CROCKER, HELEN COFFMAN, PEARL McCALLUM McMANUS, ISABEL WHITE CHASE,
9        GEORGE PELLWOOD MURRAY, T. L. DOUGLAS, C. A. ABBOTT, AND CHARLES

10       POWERS,

11            jointly, are entitled to divert from the natural flow of Tah-

12   quitz Creek, through the Agua Caliente Ditch,

13            1.36 cubic feet per second--priority April 26, 1884,

14   or as much thereof as they directly apply to beneficial use for the purpose

15   hereinafter set forth, throughout the entire year; said water to be divert-

16   ed from said Tehquitz Creek at a point (designated on Division of Water

17   Rights Map as Diversion 61) which bears approximately S. 49° 30' W.,

18   approximately 5400 feet distant from the northeast corner of Sec. 22,

19   T. 4 S., R. 4 E., S.B.B. and M., being within the NW¼ SW¼ of said Sec. 22,

20   and said water to be used for the irrigation of the respective lands of

21   said parties as follows:

22   Nellie N. Coffman:

23        2.6 acres in a parcel bounded as follows:  Beginning at the
             northwesterly corner of Spring Street and Main Avenue
24           in the town of Palm Springs, Riverside County, California;
             thence west along the northerly line of Spring Street
25           290.4 feet; thence at right angles northerly 355.0 feet;
             thence at right angles easterly 290.4 feet to westerly
26           boundary line of Main Avenue; thence southerly along said
             westerly boundary of Main Avenue 355.0 feet to point of
27           beginning.
          0.6 acre in lots 22, 23 and 24 of block 8 of said town of Palm
28           Springs.
          6.9 acres in blocks 1, 6 and 8 of said town of Palm Springs
29           bounded as follows:  Beginning at a point in block 8
             where the westerly side of the Whitewater or Palm Valley
30           Water Company's Ditch intersects a line 150.0 feet north
             of and parallel with the north line of Park Street; thence
31           N. 30° 58' W., 327.0 feet; thence N. 0° 23' W., 174.0 feet;

-41-

EXHIBIT 1
- 36 -

1  thence west 40.0 feet; thence N. 0° 08' W., 103.0 feet;
   thence S. 79° 10' W., 335.7 feet; thence S. 84° 08' W.,
2  217.0 feet; thence S. 3° 40' E., 264.25 feet; thence N.
   89° 50' E., 60.0 feet; thence S. 0° 08' E., 210.0 feet;
3  thence N. 85° 50' E., 678.3 feet to point of beginning.
      1.7  acres in lots 13, 14, 15, 16, 17, 18, 19, 20, 21, 22,
4          32, 33, 34, 35 and 36, all in Block 20 of said town of
           Palm Springs.
5     0.4  acre in block 27 of said town of Palm Springs bounded as
           follows:  Beginning at the southwest corner of said block;
6          thence northerly on the easterly line of Main Avenue
           100.0 feet; thence at right angles easterly and parallel
7          with Park Street 145.0 feet; thence at right angles south-
           erly 100.0 feet to northerly line of Park Street; thence
8          westerly 145.0 feet to point of beginning.

9     12.2 acres--Total.

10  Cornelia B. White:

11    4.0  acres constituting all of block 27 of said town of Palm
           Springs, except the parcel last above described under
12         Nellie N. Coffman, and except a parcel 80.0 feet square
           situate in the northwest corner of said block.
13    4.0  acres--Total.

14  Cornelia B. White and Florilla M. White:

15    4.1  acres constituting all of block 26 of said town of Palm
           Springs, except lots 1, 2, 3 and 4 thereof, and except
16         a rectangular parcel having a frontage of 50.0 feet on
           Main Avenue, a depth of 100.0 feet, and situate south
17         and contiguous to lot 4 of said block.

18    4.1  acres--Total.

19  Levina F. Crocker:

20    1.6  acres in a parcel bounded as follows:  Beginning at a
           point on the northerly line of Spring Street in said
21         town of Palm Springs, 290.4 feet westerly from the
           northwest corner of Spring Street and Main Avenue; thence
22         westerly along the said line of Spring Street 323.5
           feet; thence N. 0° 08' W., 204.0 feet; thence N. 89°
23         50' E., 323.5 feet; thence S. 0° 08' E., 204.0 feet to
           point of beginning; said description containing within
24         its boundaries lots 9 to 20, both inclusive, of block
           14 of said town of Palm Springs.
25
26    1.6  acres--Total.

27  Helen Coffman:

28    0.3  acre in lots 1, 2 and 3 of block 8 of said town of Palm
           Springs.
29
      0.3  acre--Total.
30

31  Pearl McCallum McManus:

-42-

EXHIBIT 1

3.7 acres in lots 1, 2, 3 and 4 of block 1,
10.4 acres in lots 1, 2, 3 and 4 of block 2,
0.6 acre  in lots 22, 23 and 24 of block 7,
2.2 acres in lots 4 to 9, both inclusive, and lots 14 to 21,
both inclusive, of block 8,
2.6 acres in lots 1 to 16, both inclusive and lots 26 to 28,
both inclusive, of block 15,
0.3 acre in lots 11 and 12 of block 16,
0.6 acre in lots 9 to 12, both inclusive, of block 19,
1.5 acres in lots 1 to 12, both inclusive, of block 20,
all in said town of Palm Springs.

21.9 acres--Total.

Isabel White Chase:

1.1 acres constituting the west 250 feet of lot 4 of block 1 of
said town of Palm Springs.
1.1 acres--Total.

George Wellwood Murray:

0.2 acre constituting a parcel of land 80.0 feet square situate
in the northwest corner of block 27 of said town of Palm
Springs.

0.2 acre--Total.

T. L. Douglas:

0.6 acre constituting the east 150 feet of lot 1 of block 2
of said town of Palm Springs.
0.6 acre--Total.

C. A. Abbott:

1.9 acres constituting the east 250 feet of lots 3 and 4 of
block 2 of said town of Palm Springs.
1.9 acres--Total.

Charles Powers:

1.0 acre in lots 1, 2, 3, 4 and 5 of block 5 of said town of
Palm Springs.
1.0 acre--Total.

The joint diversion and use of water under this right by the parties

hereinabove enumerated is subject to the provisions of that certain agree-

ment dated February 10, 1911, between the United States of America (Indian

Service) and George Wellwood Murray, et al., recorded March 11, 1911, in

Book No. 325 of Deeds, page 260 et seq., records of Riverside County,

California.

13.  NELLIE N. COFFMAN, PRESCOTT T. STEVENS, ZADDIE R. BUNKER, J. A. GRAY,
PEARL McCALLUM McMANUS, LAVINA F. CROCKER, HELEN COFFMAN, GEORGE
WELLWOOD MURRAY, TRUSTEES OF PALM SPRINGS PRESBYTERIAN CHURCH.

-43-

EXHIBIT 1
- 38 -

1  CORNELIA B. WHITE, FLORILLA M. WHITE, OWEN EARL COFFMAN AND
   GEORGE B. ROBERSON:
2

3       jointly, are entitled to divert from the natural flow of White-

4  water River, through the Palm Valley Water Company System (later known

5  as the "Stevens Pipe Line"),

6       1.60 cubic feet per second--priority November 11, 1884,

7  or as much thereof as they directly apply to beneficial use for the pur-

8  pose hereinafter set forth, throughout the entire year; said water to be

9  diverted from said Whitewater River, all or in part, through any of the

10 following described works:

11      (1)   Through the main intake ditch leading to the "Stevens

12 Pipe Line," the head of which ditch is situated at a point which

13 bears approximately S. 84° 30' E., approximately 440 feet distant

14 from the northwest corner of lot 2 of Sec. 2, T. 3 S., R. 3 E.,

15 S.B.B. and M., being within said lot 2,

16      (2)   Through Infiltration Pipe Line "A" as shown on the map

17 prepared by Davidson and Fulmer, Engineers, dated April, 1927,

18 and entitled "Map Showing the Prescott T. Stevens Intake and In-

19 filtration Pipe Lines from Whitewater River, Riverside County,

20 Cal.," the head of which pipe line is situated approximately

21 727 feet due east of the northwest corner of lot 2 of Sec. 2,

22 T. 3 S., R. 3 E., S.B.B. and M., and approximately on the north

23 line of said Sec. 2,

24      (3)   Through Infiltration Pipe Line "B" as shown on said map

25 prepared by Davidson and Fulmer, the head of which pipe line is

26 situated approximately 122 feet due east of the northwest corner

27 of lot 2 of Sec. 2, T. 3 S., R. 3 E., S.B.B. and M., and approxi-

28 mately on the north line of said Sec, 2,

29      (4)   Through Infiltration Pipe Line "C" as shown on said map

30 prepared by Davidson and Fulmer, the head of which pipe line is

31 situated at a point which bears approximately S. 62° 15' W.,

-44-

EXHIBIT 1
- 39 -

approximately 278 feet distant from the northeast corner of lot 3

of Sec. 2, T. 3 S., R. 3 E., S.B.B. and M., being within said lot 3;

and said water to be used for the irrigation of the respective lands of

said parties as follows:

Nellie N. Coffman

13.2 acres in a parcel bounded as follows:  Beginning at the intersection of the center line of Main Avenue and Spring Street in the town of Palm Springs, Riverside County, California; thence northerly along the center line of Main Avenue 453.0 feet; thence westerly at right angles to said center line 330.4 feet; thence at right angles northerly 145.0 feet; thence easterly at right angles 330.4 feet to center line of said Main Avenue; thence northerly along said center line 38.0 feet; thence at right angles westerly 618.88 feet; thence at right angles northerly 200.0 feet; thence at right angles westerly 491.12 feet to Palm Valley Water Company Ditch; thence southerly along line of said ditch 600 feet more or less to a point on said ditch 237.0 feet northerly of the center line of said Spring Street; thence easterly and parallel with the center line of Spring Street 669.6 feet, more or less, to a point 330.4 feet westerly from the center line of Main Avenue; thence at right angles southerly 237.0 feet to center line of said Spring Street; thence easterly along said center line of Spring Street 330.4 feet to point of beginning.

0.4 acre in block 27 of said town of Palm Springs bounded as follows:  Beginning at the southwest corner of said block; thence northerly on the easterly line of Main Avenue 100.0 feet; thence at right angles easterly and parallel with Park Street 145.0 feet; thence at right angles southerly 100.0 feet to northerly line of Park Street; thence westerly 145.0 feet to point of beginning.

1.7 acres in lots 13, 14, 15, 16, 17, 18, 19, 20, 21, 32, 32, 33, 34, 35 and 36, all in block 20 of said town of Palm Springs.

0.6 acre in lots 22, 23 and 24 of block 8 of said town of Palm Springs.

6.9 acres in blocks 1, 6 and 8 of said town of Palm Springs bounded as follows:  Beginning at a point in block 8 where the westerly side of the Whitewater or Palm Valley Water Company's Ditch intersects a line 150.0 feet north of and parallel with the north line of Park Street; thence N. 30° 58' W., 327.0 feet; thence N. 0° 23' W., 174.0 feet; thence west 40.0 feet; thence N. 0° 08' W., 103.0 feet; thence S. 79° 10' W., 335.7 feet; thence S. 84° 08' W., 217.0 feet; thence S. 3° 40' E., 264.25 feet; thence N. 89° 50' E., 60.0 feet; thence S. 0° 08' E., 210.0 feet; thence N. 89° 50' E., 678.3 feet, to point of beginning.

22.8--Total.

Prescott T. Stevens:

7.0 acres in SW$\frac{1}{4}$ NE$\frac{1}{4}$ NE$\frac{1}{4}$ of Sec. 15, T. 4 S., R. 4 E., S.B.B. and M.

7.0 acres--Total.

-45-

EXHIBIT 1
- 40 -

1    Zeddie R. Bunker:

2        1.0 acre in SE¼ NE¼ of Sec. 15, T. 4 S., R. 4 E., S.B.B. and M.

3        $\overline{1.0}$ acre--Total.

4    J. A. Gray:

5        1.3 acres in SE¼ NE¼ of Sec. 15, T. 4 S., R. 4 E., S.B.B. and M.

6        $\overline{1.3}$ acres--Total.

7    Pearl McCallum McManus:

8        16.2 acres in E½ SE¼ of Sec. 15, T. 4 S., R. 4 E., S.B.B. and M.

9        $\overline{16.2}$ acres--Total.

10   Lavina F. Crocker

11       1.6 acres in a parcel bounded as follows:  Beginning at a point
         on the northerly line of Spring Street in said town of Palm
12       Springs, 290.4 feet westerly from the northwest corner of
         Spring Street and Main Avenue; thence westerly along the
13       said line of Spring Street 323.5 feet; thence N. 0° 08' W.,
         204.0 feet; thence N. 89° 50' E., 323.5 feet; thence S.
14       0° 08' E., 204.0 feet to point of beginning; said description
         containing within its boundaries lots 9 to 20, both inclu-
15       sive, of block 14 of said town of Palm Springs.

16       $\overline{1.6}$ acres--Total.

17   Helen Coffman:

18       0.3 acre in lots 1, 2 and 3 of block 8 of said town of Palm Springs.

19       $\overline{0.3}$ acre--Total.

20   George Wollwood Murray:

21       0.2 acre constituting a parcel of land 80.0 feet square situate in
         the northwest corner of block 27 of said town of Palm Springs.
22
         $\overline{0.2}$ acre--Total.
23

24   Trustees of Palm Springs Presbyterian Church:

25       0.4 acre constituting a rectangular parcel of land in the north-
         west corner of block 26 of said town of Palm Springs.
26
         $\overline{0.4}$ acre--Total.
27

28   Cornelia B. White:

29       4.0 acres in block 27 of said town of Palm Springs.

30       $\overline{4.0}$ acres--Total.

31   Cornelia B. White and Florilla M. White:

-46-

EXHIBIT 1
- 41 -

1       4.1 acres in block 26 of said town of Palm Springs.

2       <u>4.1</u> acres--Total.

3   Owen Earl Coffman:

4       0.5 acre in a parcel bounded as follows:  Beginning at a point
    470.0 feet westerly from the westerly line of Main Avenue
5       in said town of Palm Springs and 604.0 feet northerly from
    the northerly property line of Spring Street; thence N.
6       0° 08' W., 200.0 feet; thence westerly at right angles
    108.88 feet; thence at right angles southerly 200.0 feet;
7       thence easterly at right angles 108.88 feet to point of
    beginning.

8       <u>0.5</u> acre--Total.

9

10  George B. Roberson:

11      0.4 acre in a parcel bounded as follows:  Beginning at a point
    on the westerly property line of Main Avenue 566.0 feet
12      northerly of the northerly property line of Spring Street
    in said town of Palm Springs; thence at right angles
13      westerly to said line of Main Avenue 290.4 feet; thence
    at right angles southerly 61.0 feet; thence at right angles
14      easterly 290.4 feet to the westerly property line of Main
    Avenue; thence northerly 61.0 feet to point of beginning.

15      <u>0.4</u> acre--Total

16

17  provided, however, that the lands described in this paragraph to which

18  the water right hereinabove provided from Tahquitz Creek, by paragraph

19  12, is also appurtenant, shall only be entitled to water from Whitewater

20  River under this right at such times and to such extent as the water

21  supply available from Tahquitz Creek under the right provided in para-

22  graph 12 may be inadequate for the irrigation of said lands.  The joint

23  diversion and use of water under this right by the parties hereinabove

24  enumerated is subject to the provisions of that certain stipulation dated

25  March 17, 1926, between said parties in this paragraph hereinabove

26  enumerated, on the one part, and the Banning Water Company, Banning Heights

27  Mutual Water Company and San Gorgonio Power Company on the other part,

28  which stipulation is on file and of record in these proceedings, and by

29  the terms of which stipulation said parties in this paragraph hereinabove

30  enumerated recognize that said Banning Water Company, Banning Heights

31  Mutual Water Company and San Gorgonio Power Company are the owners of the

-47-

EXHIBIT 1
- 42 -

1  paramount right to divert water from the South Fork of Whitewater River

2  through the Consolidated Reservoir and Power Company Canal as herein-

3  before set forth in paragraph 5, regardless of the fact that the priority

4  of said right set forth in said paragraph 5 is subsequent to the priority

5  of the right of said parties in this paragraph hereinabove enumerated, as

6  set forth in this paragraph.

7  14.  W. V. COVINGTON

8       is entitled to divert from the natural flow of Lower Big Morongo

9  Creek, through the Covington West Ditch,

10      0.14 cubic foot per second--priority January 1, 1873,

11  or as much thereof as he directly applies to beneficial use for the purposes

12  hereinafter set forth, throughout the entire year; said water to be di-

13  verted from said Lower Big Morongo Creek at a point (designated on Division

14  of Water Rights Map as Diversion 55) which bears approximately N. 56° 30'

15  W., approximately 2410 feet distant from the southeast corner of Sec. 28,

16  T. 1 S., R. 4 E., S.B.B. and M., being within the NW¼ SE¼ of said Sec. 28,

17  and said water to be used for domestic and stock watering purposes and

18  for the irrigation of the  following described land:

19      3.5 acres in SW¼ SE¼, Sec. 28, T. 1 S., R. 4 E., S.B.B. and M.

20  15.  W. V. COVINGTON

21       is entitled to divert from the natural flow of an unnamed

22  stream rising in a meadow in Lower Big Morongo Wash, through the Covington

23  East Ditch,

24      0.50 cubic foot per second--priority January 1, 1873,

25  or as much thereof as he directly applies to beneficial use for the pur-

26  poses hereinafter set forth, throughout the entire year; said water to

27  be diverted from said unnamed stream at a point (designated on Division

28  of Water Rights Map as Diversion 56) which bears approximately N. 38° 00'

29  W., approximately 2030 feet distant from the southeast corner of Sec. 28,

30  T. 1 S., R. 4 E., S.B.B. and M., being within the NE¼ SE¼ of said Sec. 28,

31  and said water to be used for domestic and stock watering purposes and

-48-

EXHIBIT 1

- 43 -

1    for the irrigation of the following described land:

2        13.7 acres in SW¼ SE¼, Sec. 28, T. 1 S., R. 4 E., S.B.B. and M.

3    16.  W. V. COVINGTON

4            is entitled to divert from the natural flow of an unnamed

5    stream rising in a meadow in Lower Big Morongo Wash, by means of a series

6    of dykes and short spreading ditches,

7            0.74 cubic foot per second--priority January 1, 1873,

8    or as much thereof as he directly applies to beneficial use for the pur-

9    poses hereinafter set forth, throughout the entire year; said water to be

10   diverted from said unnamed stream between the head of the Covington East

11   Ditch, as hereinabove described in the preceding paragraph, and the point

12   where said unnamed stream crosses the south boundary line of the NE¼ of

13   Sec. 33, T. 1 S., R. 4 E., S.B.B. and M., and said water to be used for

14   stock watering purposes and for the irrigation of the following described

15   lands:

16       35.0 acres in SE¼, Sec. 28, T. 1 S., R. 4 E., S.B.B. and M.
         30.0 acres in E½ NE¼, Sec. 33, T. 1 S., R. 4 E., S.B.B. and M.
17       ─────
         65.0 acres--Total.
18

19   17.  WALTER O. EDWARDS

20           is entitled to divert from the natural or developed flow of

21   Jensen's Spring, through the Jensen West Pipe Line,

22           0.06 cubic foot per second--priority June 17, 1911,

23   or as much thereof as he directly applies to beneficial use for the pur-

24   poses hereinafter set forth, throughout the entire year; said water to be

25   diverted from said spring at a point (designated on Division of Water

26   Rights Map as Diversion 34) which bears approximately S. 29° 30' W.,

27   approximately 2930 feet distant from the southeast corner of the NE¼ of

28   Sec. 22, T. 3 S., R. 2 E., S.B.B. and M., being within Lot 11 of said

29   Sec. 22, and said water to be used for domestic and stock watering pur-

30   poses and for the irrigation of the following described land:

31       5.0 acres in SW¼ NE¼, Sec. 22, T. 3 S., R. 2 E., S.B.B. and M.

-49-

EXHIBIT 1

- 44 -

1    18.   WALTER O. EDWARDS

2            is entitled to divert from the natural or developed flow of

3    Jensen's Creek, through the Jensen East Pipe Line,

4            0.60 cubic foot per second--priority October 23, 1913,

5    or as much thereof as he directly applies to beneficial use for the pur-

6    poses hereinafter set forth throughout the entire year; said water to be

7    diverted from said Jensen's Creek at a point (designated on Division of

8    Water Rights Map as Diversion 35) which bears approximately S. 28° 30'

9    E., approximately 3100 feet distant from the southwest corner of the

10   NW$\frac{1}{4}$ of Sec. 23, T. 3 S., R. 2 E., S.B.B. and M., being within Lot 11 of

11   said Sec. 23, and said water to be used for domestic and stock watering

12   purposes and for the irrigation of approximately 50 acres of land within

13   the following described tracts:

14        S$\frac{1}{2}$ NE$\frac{1}{4}$, Sec. 22, T. 3 S., R. 2 E., S.B.B. and M.
          Lot 8 of Sec. 22, T. 3 S., R. 2 E., S.B.B. and M.
15        Lot 8 of Sec. 23, T. 3 S., R. 2 E., S.B.B. and M.

16   19.   ANNIE B. FICK

17            is entitled to divert from the natural or developed flow of an

18   unnamed spring (designated on Division of Water Rights Map as Diversion

19   5) situated approximately N. 35° 00' W., approximately 1000 feet distant

20   from the east quarter corner of Sec. 5, T. 2 S., R. 1 E., S.B.B. and M.,

21   being within the SE$\frac{1}{4}$ NE$\frac{1}{4}$ of said Sec. 5, through the Fick East Pipe Line,

22            (a) during the period between March first and November first

23   of each year,

24            0.07 cubic foot per second--priority July 31, 1913,

25   or as much thereof as she directly applies to beneficial use for

26   domestic and stock watering purposes and for the irrigation of her

27   lands hereinafter described;

28            (b) during the period between November first of each year and

29   March first of the succeeding year,

30            0.025 cubic foot per second--priority July 31, 1913,

31   or as much thereof as she directly applies to beneficial use for

-50-

EXHIBIT 1

- 45 -

1         0.10 cubic foot per second--priority March 1, 1869,
        0.09 cubic foot per second--priority March 1, 1882,
2         0.06 cubic foot per second--priority March 1, 1892,

3         0.25 cubic foot per second--Total,

4 or as much thereof as said company directly applies to beneficial

5 use for domestic and stock watering purposes and for the irrigation

6 of its lands hereinafter described,

7     (b) during the period between November first of each year and

8 March first of the succeeding year,

9     0.025 cubic foot per second--priority March 1, 1869,

10 or as much thereof as said company directly applies to beneficial

11 use for domestic and stock watering purposes;

12 all of said water to be diverted at a point (designated on Division of

13 Water Rights Map as Diversion 11) which bears approximately S. 76° 30'

14 W., approximately 1860 feet distant from the east quarter corner of

15 Sec. 5, T. 3 S., R. 1 E., S.B.B. and M., being within the NW¼ SE¼ of said

16 Sec. 5, and all of said water to be used upon the following described

17 land :

18     24.0 acres in SE¼ SE¼, Sec. 5, T. 3 S., R. 1 E., S.B.B. and M.

19   22.  THE GILMAN HOME COMPANY

21       is entitled to divert from the natural flow of the stream

22 flowing in Gilman Canyon No. 2, through an unnamed pipe line,

23     0.125 cubic foot per second--priority March 1, 1892,

24 or as much thereof as said company directly applies to beneficial use

25 for the purpose hereinafter set forth during the period between March

26 first and November first of each year; said water to be diverted at a

27 point (designated on Division of Water Rights Map as Diversion 12) which

28 bears approximately N. 85° 00' W., approximately 1420 feet distant from

29 the east quarter corner of Sec. 5, T. 3 S., R. 1 E., S.B.B. and M., being

30 within the SW¼ NE¼ of said Sec. 5 and said water to be used for the irri-

31 gation of the following described lands:

-52-

EXHIBIT 1
- 46 -

1          2.0 acres in NE¼ SE¼, Sec. 5, T. 3 S., R. 1 E., S.B.B. and M.
           10.0 acres in SW¼ SE¼, Sec. 5, T. 3 S., R. 1 E., S.B.B. and M.
2          ───────────
           12.0 acres--Total.

3

4    23.   THE GILMAN HOME COMPANY

5             is entitled to divert from the natural flow of the stream

6    flowing in Gilman Canyon No. 3, through an unnamed pipe line,

7             0.25 cubic foot per second--priority March 1, 1891,

8    or as much thereof as said company directly applies to beneficial use for

9    the purpose hereinafter set forth, during the period between March first

10   and November first of each year; said water to be diverted to a point

11   (designated  on Division of Water Rights Map as Diversion 13) which bears

12   approximately N. 52° 30' W., approximately 970 feet distant from the east

13   quarter corner of Sec. 5, T. 3 S., R. 1 E., S.B.B. and M., being within

14   the SE¼ NE¼ of said Sec. 5, and said water to be used for the irrigation

15   of the following described land:

16           24.0 acres in NW¼ NE¼, Sec. 8, T. 3 S., R. 1 E., S.B.B. and M.

17   24.   GEORGE R. HICKS

18             is entitled to divert from the natural flow of Upper Little

19   Morongo Creek, through the Hicks Pipe Line Ditch,

20             (a) during the period between March first and November first

21   of each year,

22             2.50 cubic feet per second--priority April 24, 1917,

23   or as much thereof as he directly applies to beneficial use for

24   domestic and stock watering purposes and for the irrigation of

25   the lands hereinafter described in this paragraph;

26             (b) during the period between November first of each year

27   and March first of the succeeding year,

28             0.50 cubic foot per second--priority April 24, 1917,

29   or as much thereof as he directly applies to beneficial use for

30   domestic and stock watering purposes;

31   all of said water to be diverted at a point (designated on Division of

-53-

EXHIBIT 1
- 47 -

1     Water Rights Map as Diversion 57) which bears approximately N. 30° 00'

2     E., approximately 3600 feet distant from the southwest corner of Sec.

3     2, T. 1 S., R. 4 E., S.B.B. and M., being within the SE¼ NW¼ of said

4     Sec. 2, and all of said water to be used upon the following described

5     lands:

6         160.0 acres in SE¼ Sec. 12, T. 1 S., R. 4 E., S.B.B. and M.
          80.0 acres in N½ SE¼, Sec. 14, T. 1 S., R. 4 E., S.B.B. and M.

7         240.0 acres--Total.

8     25.  GERTRUDE C. HITTSON

9         is entitled to divert from the natural or developed flow of

10     Thousand Palms Canyon Creek through the Bedwell and Richey Ditch and Pipe

11     Line,

12         0.35 cubic foot per second priority January 31, 1913,

13     or as much thereof as she directly applies to beneficial use for the

14     purposes hereinafter set forth, throughout the entire year; said water to

15     be diverted from said Thousand Palms Canyon Creek at a point (designated

16     on Division of Water Rights Map as Diversion 63) which bears approximately

17     S. 77° 11' E., approximately 2345 feet distant from the west quarter cor-

18     ner of Sec. 12, T. 4 S., R. 6 E., S.B.B. and M., being within the NE¼

19     SW¼ of said Sec. 12, and said water to be used for domestic and stock

20     watering purposes and for the irrigation of

21         40.0 acres of land in the S½ Sec. 22, T. 4 S., R. 6 E., S.B.B. and M.

22     26.  MARSHALL G. JOST

23         is entitled to divert from the natural or developed flow of

24     an unnamed spring situated in Dunlap Canyon at a point which bears ap-

25     proximately N. 14° 30' E., approximately 125 feet distant from the west

26     quarter corner of Sec. 32, T. 2 S., R. 1 E., S.B.B. and M., being within

27     the SW¼ NW¼ of said Sec. 32, through the Marshall Jost Pipe Line,

28         0.04 cubic foot per second--priority July 31, 1900,

29     or as much thereof as he directly applies to beneficial use for the pur-

30     pose hereinafter set forth, throughout the entire year; said water to be

31     diverted at said spring and to be used for stock watering purposes in the

-54-

EXHIBIT 1
- 48 -

1      NE$\frac{1}{4}$ SE$\frac{1}{4}$, Sec. 31, T. 2 S., R. 1 E., S.B.B. and M.

2      27.   CHARLES C. LEARY

3          is entitled to divert from the natural or developed flow of

4  an unnamed spring situated at a point (designated on Division of Water

5  Rights Map as Diversion 33) which bears approximately S. 7° 30' E.,

6  approximately 1780 feet distant from the west quarter corner of Sec. 20,

7  T. 3 S., R. 2 E., S.B.B. and M., being within the SW$\frac{1}{4}$ SW$\frac{1}{4}$ of said Sec.

8  20, through the Leary Pipe Line,

9          0.025 cubic foot per second--priority October 18, 1913,

10  or as much thereof as he directly applies to beneficial use for the pur-

11  pose hereinafter set forth, during the period between March first and

12  November first of each year; said water to be diverted at said spring,

13  and to be used for the irrigation of the following described land:

14      7.0 acres in Lot 4 of NW$\frac{1}{4}$ of Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.

15      28.   CHARLES C. LEARY

16          is entitled to divert from the natural or developed flow of

17  an unnamed spring situated at a point (designated on Division of Water

18  Rights Map as Diversion 32) which bears approximately S. 14° 00' E.,

19  approximately 1420 feet distant from the west quarter corner of Sec. 20,

20  T. 3 S., R. 2 E., S.B.B. and M., being within the SW$\frac{1}{4}$ SW$\frac{1}{4}$ of said Sec. 20,

21  through the Leary Pipe Line,

22      (a) during the period between March first and November first

23  of each year,

24      0.05 cubic foot per second--priority October 18, 1913,

25  or as much thereof as he directly applies to beneficial use for

26  domestic and stock watering purposes and for the irrigation of

27  his lands hereinafter described;

28      (b) during the period between November first of each year

29  and March first of the succeeding year,

30      0.025 cubic foot per second--priority October 18, 1913,

31  or as much thereof as he directly applies to beneficial use for

EXHIBIT 1
- 49 -

1  domestic and stock watering purposes;

2  all of said water to be diverted at said spring, and to be used upon the

3  following described land:

4  14.0 acres in Lot 4 of NW¼ of Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.

5  29.  HERMAN LUHRMAN

5  is entitled to divert from the natural flow of the West Fork

6  of Stubb Creek, through the Jost West Ditch and Pipe Line,

7  0.10 cubic foot per second--priority April 23, 1886,

8  or as much thereof as he directly applies to beneficial use for the pur-

9  poses hereinafter set forth, throughout the entire year; said water to

10  be diverted from said West Fork of Stubby Creek at a point (designated

11  on Division of Water Rights Map as Diversion 36) which bears approximately

12  S. 69° 00' W., approximately 1950 feet distant from the northeast corner

13  of Sec. 36, T. 2 S., R. 2 E., S.B.B. and M., being within the NW¼ NE¼

14  of said Sec. 36, and said water to be used for domestic, stock watering,

15  irrigation and bee culture purposes within the

16  S½ NE¼, Sec. 36, T. 2 S., R. 2 E., S.B.B. and M.

17  30.  HERMAN LUHRMAN

18  is entitled to divert from the natural flow of the East Fork

19  of Stubby Creek, through the Jost East Ditch,

20  0.10 cubic foot per second--priority April 23, 1886,

21  or as much thereof as he directly applies to beneficial use for the pur-

22  poses hereinafter set forth, throughout the entire year; said water to

23  be diverted from said East Fork of Stubby Creek at a point (designated

24  on Division of Water Rights Map as Diversion 37) which bears approximately

25  S. 82° 30' W., approximately 1050 feet distant from the northeast corner

26  of Sec. 36, T. 2 S., R. 2 E., S.B.B. and M., being within the NE¼ NE¼ of

27  said Sec. 36, and said water to be used for domestic, stock watering,

28  irrigation and bee culture purposes within the

29  NE¼ NE¼, Sec. 36, T. 2 S., R. 2 E., S.B.B. and M.

30  31.  THE MORONGO VALLEY MUTUAL WATER COMPANY

31  is entitled to divert from the natural flow of Big Morongo

-56-

EXHIBIT 1

- 50 -

1    Creek, through the Morongo Valley Mutual Water Company Pipe Line,

2              0.14 cubic foot per second--priority June 14, 1915,

3    or as much thereof as said company directly applies to beneficial use for

4    the purposes hereinafter set forth, throughout the entire year; said

5    water to be diverted from said Big Morongo Creek at a point (designated

6    on Division of Water Rights Map as Diversion 54) which bears approxi-

7    mately N. 30° 20' W., approximately 1575 feet distant from the southeast

8    corner of Sec. 18, T. 1 S., R. 4 E., S.B.B. and M., being within the

9    NE¼ SE¼ of said Sec. 18, and said water to be used for domestic and stock

10   watering purposes and for the irrigation of the following described lands:

11       160.0 acres in NW¼     Sec. 28, T. 1 S.,R. 4 E., S.B.B. and M.
          80.0 acres in W½  SW¼,Sec. 28, T. 1 S.,R. 4 E., S.B.B. and M.
12        40.0 acres in NE¼ SW¼,Sec. 28, T. 1 S.,R. 4 E., S.B.B. and M.
          80.0 acres in E½  SE¼,Sec. 29, T. 1 S.,R. 4 E., S.B.B. and M.
13        40.0 acres in SW¼ SE¼,Sec. 29, T. 1 S.,R. 4 E., S.B.B. and M.
          80.0 acres in N½  NE¼,Sec. 32, T. 1 S.,R. 4 E., S.B.B. and M.
14        40.0 acres in NW¼ NW¼,Sec. 33, T. 1 S.,R. 4 E., S.B.B. and M.

15       520.0 acres--Total.

16   32.   THE PALM VALLEY WATER COMPANY

17              is entitled to divert from the natural flow of Chino Creek,

18   through the Chino Creek Pipe Line,

19              2.00 cubic feet per second--priority October 2, 1897,

20   or as much thereof as said company applies to beneficial use for the pur-

21   pose hereinafter set forth, throughout the entire year; said water to be

22   diverted from said Chino Creek at a point (designated on Division of

23   Water Rights Map as Diversion 59) which bears approximately S. 60° 30'

24   W., approximately 725 feet distant from the northeast corner of Sec. 7,

25   T. 4 S., R. 4 E., S.B.B. and M., being within the NE¼ NE¼ of said Sec. 7,

26   and said water to be used by said company for the purpose of supplying

27   water for domestic and municipal uses in the territory within and adjacent

28   to the town of Palm Springs, Riverside County, California.

29   33.   GEORGE W. PARKER AND F. E. MATTHEWS

30              jointly, are entitled to divert from the natural flow of the

31   stream flowing in Water Canyon, through the Parker and Matthews Water

-57-

EXHIBIT 1
- 51 -

1    Canyon Pipe Line,

2        0.04 cubic foot per second--priority January 1, 1909,

3    or as much thereof as they directly apply to beneficial use for the pur-

4    pose hereinafter set forth, throughout the entire year; said water to be

5    diverted from said stream at a point which bears approximately S. 78° 30'

6    W., approximately 2080 feet distant from the northeast corner of Sec. 24,

7    T. 3 S., R. 1 E., S.B.B. and M., being within the NW$\frac{1}{4}$ NE$\frac{1}{4}$ of said Sec.

8    24, and said water to be used for the irrigation of the following des-

9    cribed land:

10       8.2 acres in NW$\frac{1}{4}$ NE$\frac{1}{4}$, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

11    34.   GEORGE W. PARKER AND F. E. MATTHEWS

12        jointly, are entitled to divert from the natural or developed

13    flow of Tunnel No. 1 Spring, through the Tunnel No. 1 Pipe Line,

14        0.04 cubic foot per second--priority October 20, 1894,

15    or as much thereof as they directly apply to beneficial use for the pur-

16    pose hereinafter set forth, throughout the entire year; said water to be

17    diverted from said spring at a point (designated on Division of Water

18    Rights Map as Diversion 24) which bears approximately N. 87° 00' W.,

19    approximately 1280 feet distant from the southeast corner of Sec. 13,

20    T. 3 S., R. 1 E., S.B.B. and M., being within the SE$\frac{1}{4}$ SE$\frac{1}{4}$ of said Sec. 13,

21    and said water to be used for the irrigation of the following described

22    lands:

23       2.2 acres in SE$\frac{1}{4}$ NE$\frac{1}{4}$, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

24       4.3 acres in NE$\frac{1}{4}$ SE$\frac{1}{4}$, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

          6.5 acres--Total

25

26    35.   GEORGE W. PARKER AND F. E. MATTHEWS

27        jointly, are entitled to divert from the natural or developed

28    flow of Newland Spring, through the Newland Spring Pipe Line,

29        0.08 cubic foot per second--priority January 3, 1898,

30    or as much thereof as they directly apply to beneficial use for the pur-

31    poses hereinafter set forth, throughout the entire year; said water to be

-58-

EXHIBIT 1
- 52 -

1    diverted from said spring at a point (designated on Division of Water

2    Rights Map as Diversion 23) which bears approximately N. 71° 00' W.,

3    approximately 2450 feet distant from the southeast corner of Sec. 13,

4    T. 3 S., R. 1 E., S.B.B. and M., being within the SW¼ SE¼ of said Sec.

5    13, and said water to be used for domestic and stock watering purposes

6    and for the irrigation of the following described lands:

7        2.6 acres in SW¼ NE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

          1.0 acre  in SE¼ NE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

8        7.0 acres in NE¼ SE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

9       10.6 acres--Total.

10    36.   GEORGE W. PARKER AND F. E. MATTHEWS

11          jointly, are entitled to divert from the natural or developed

12    flow of South Spring, through the South Spring Pipe Line,

13          0.06 cubic foot per second--priority January 3, 1898,

14    or as much thereof as they directly apply to beneficial use for the pur-

15    pose hereinafter set forth, throughout the entire year; said water to be

16    diverted from said spring at a point (designated on Division of Water

17    Rights Map as Diversion 26) which bears approximately S. 2° 30' W.,

18    approximately 1340 feet distant from the northeast corner of Sec. 24,

19    T. 3 S., R. 1 E., S.B.B. and M., being within the SE¼ NE¼ of said Sec.

20    24, and said water to be used for the irrigation of the following des-

21    cribed lands:

22        1.2 acres in NW¼ NE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

          9.4 acres in SE¼ NE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.

23

      10.6 acres--Total.

24

25    37.   GEORGE W. PARKER AND F. E. MATTHEWS

26          jointly, are entitled to divert from the natural or developed

27    flow of Head Spring, through the Head Spring Pipe Line,

28          0.02 cubic foot per second--priority June 20, 1894,

29    or as much thereof as they directly apply to beneficial use for the purpose

30    hereinafter set forth, throughout the entire year; said water to be diverted

31    from said spring at a point (designated on Division of Water Rights Map as

-59-

EXHIBIT 1

- 53 -

1    Diversion 25) which bears approximately S. 67° 00' W., approximately
2    3050 feet distant from the northeast corner of Sec. 24, T. 3 S., R. 1 E.,
3    S.B.B. and M., being within the NE¼ NW¼ of said Sec. 24, and said water
4    to be used for the irrigation of the following described lands:

5        1.2 acres in SE¼ NE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.
         2.2 acres in NE¼ SE¼, Sec. 13, T. 3 S., R. 1 E., S.B.B. and M.
6        ─────────
         3.4 acres--Total.
7

8    38.   THE SOUTHERN PACIFIC COMPANY AND THE SOUTHERN PACIFIC RAILROAD
            COMPANY
9

10           jointly, are entitled to divert from the natural flow of Snow
11   Creek, through the Southern Pacific Snow Creek Ditch and Pipe Line,
12           2.00 cubic feet per second--priority October 24, 1899,
13   or as much thereof as they apply to beneficial use for the purposes here-
14   inafter set forth, throughout the entire year; said water to be diverted
15   from said Snow Creek at a point (designated on Division of Water Rights
16   Map as Diversion 39) which bears approximately S. 54° 52' E., approxi-
17   mately 1300 feet distant from the northwest corner of Sec. 33, T. 3 S.,
18   R. 3 E., S.B.B. and M., being within the NW¼ NW¼ of said Sec. 33, and
19   said water to be used for railroad and domestic purposes at and adjacent
20   to Whitewater and Garnet stations on the Southern Pacific Railroad, in
21   Riverside County, California and for domestic, stock watering and irriga-
22   tion purposes upon the following described lands:

23       7.8 acres in SE¼ SE¼, Sec. 20, T. 3 S., R. 3 E., S.B.B. and M.
         7.0 acres in NE¼ SE¼, Sec. 20, T. 3 S., R. 3 E., S.B.B. and M.
24       4.3 acres in SW¼ SW¼, Sec. 21, T. 3 S., R. 3 E., S.B.B. and M.
         20.9 acres in NW¼ SW¼, Sec. 21, T. 3 S., R. 3 E., S.B.B. and M.
25       ─────────
         40.0 acres--Total.
26

27   39.   THE SOUTHERN PACIFIC COMPANY AND THE SOUTHERN PACIFIC RAILROAD
            COMPANY
28

29           jointly, are entitled to divert from the natural or developed
30   flow of springs rising in Millard Canyon near the center of Sec. 32, T.
31   2 S., R. 2 E., S.B.B. and M., through the Southern Pacific Millard

-60-

EXHIBIT 1
- 54 -

1    Canyon Conduit,

2              0.23 cubic foot per second--priority January 1, 1877,
             0.27 cubic foot per second--priority January 3, 1917
3              ─────
             0.50 cubic foot per second--Total

4

5    or as much thereof as they apply to beneficial use for the purpose here-

6    inafter set forth, throughout the entire year; said water to be diverted

7    from said springs at a point (designated on Division of Water Rights Map

8    as Diversion 28) which bears approximately N. 39° 53' E., approximately

9    3350 feet distant from the southwest corner of Sec. 32, T. 2 S., R. 2 E.,

10   S.B.B. and M., being within the NE¼ SW¼ of said Sec. 32, and said water

11   to be used for railroad and domestic purposes at and adjacent to Cabazon

12   Station on the Southern Pacific Railroad in Riverside County, California.

13   40.   THE SOUTHERN PACIFIC LAND COMPANY

14             is entitled to divert from the natural or developed flow of

15   springs rising in Millard Canyon near the center of Sec. 32, T. 2 S., R.

16   2 E., S.B.B. and M., through the Southern Pacific Millard Canyon Conduit,

17             0.12 cubic foot per second--priority January 1, 1877,
             0.16 cubic foot per second--priority January 3, 1917,
18             ─────
             0.28 cubic foot per second--Total.

19

20   or as much thereof as said company applies to beneficial use for the

21   purposes  hereinafter set forth, throughout the entire year; said water

22   to be diverted from said springs at a point (designated on Division of

23   Water Rights Map as Diversion 28) which bears approximately N. 39° 53' E.,

24   approximately 3350 feet distant from the southwest corner of Sec. 32,

25   T. 2 S., R. 2 E., S.B.B. and M., being within the NE¼ SW¼ of said Sec. 32,

26   and said water to be used for domestic, stock watering and irrigation

27   purposes upon the following described lands:

28         18.7 acres in NE¼ SW¼, Sec. 32, T. 2 S., R. 2 E., S.B.B. and M.
          13.0 acres in SE¼ SW¼, Sec. 32, T. 2 S., R. 2 E., S.B.B. and M.
29          0.8 acre  in SW¼ SW¼, Sec. 32, T. 2 S., R. 2 E., S.B.B. and M.
            ────
30         32.5 acres--Total.

31

-61-

EXHIBIT 1
- 55 -

41.   <u>FRANK L. TALMADGE, JOHN W. TALMADGE, AND WILLIAM S. TALMADGE,</u>
      (hereinafter referred to as Talmadge Brothers),

jointly, are entitled to divert from the natural flow of White-water River, through the Whitewater Ranch Ditch,

3.75 cubic feet per second--priority January 1, 1850, or as much thereof as they directly apply to beneficial use for the purpose hereinafter set forth, throughout the entire year; said water to be diverted from said Whitewater River at or near a point (designated on Division of Water Rights Map as Diversion 44) which bears approximately S. 87° 30' W., approximately 1950 feet distant from the northeast corner of Sec. 11, T. 3 S., R. 3 E., S.B.B. and M., being within the NW¼ NE¼ of said Sec. 11, and said water to be used for domestic and stock watering purposes and for the irrigation of 100 acres of land within and upon the following described tracts:

SW¼, Sec. 10, T. 3 S., R. 3 E., S.B.B. and M.
NW¼ NW¼, Sec. 15, T. 3 S., R. 3 E., S.B.B. and M.

<u>provided, however,</u> that nothing herein contained shall be deemed to or shall in any manner limit or restrict the right of said Talmadge Brothers, or their successors in interest, from transferring the use of said water from said lands to the community known as Palm Springs for domestic use within such community, and it is expressly provided that such water may be diverted and transported to said Palm Springs district for domestic use only within such district whenever said Talmadge Brothers, or their successors in interest, deem such transfer and use desirable. The diversion and use of water under this right is subject to the provisions of that certain stipulation dated March 17, 1926, between the Banning Water Company, the Banning Heights Mutual Water Company and the San Gorgonio Power Company on the one part, and Julia B. Berry, Talmadge Brothers, and Andrew J. Warner and Clara J. Warner on the other part, which stipulation is on file and of record in these proceedings, and by the terms of which stipulation said Julia B. Berry, Talmadge Brothers, and Andrew J.

-62-

EXHIBIT 1
- 56 -

1    Warner and Clara J. Warner recognize that said Banning Water Company,

2    Banning Heights Mutual Water Company and San Gorgonio Power Company are

3    the owners of the paramount right to divert water from the South Fork

4    of Whitewater River through the consolidated Reservoir and Power Company

5    Canal as hereinbefore set forth in paragraph 5, regardless of the fact

6    that the priority of the right set forth in said paragraph 5 is subse-

7    quent to the priority of the right of said Talmadge Brothers as set forth

8    in this paragraph.

9    42.   THE UNITED STATES OF AMERICA

10    is entitled to divert from the natural flow of Hathaway Creek,

11    through the Hathaway Canyon Pipe Line,

12    2.00 cubic feet per second--priority January 1, 1890,

13    or as much thereof as it applies to beneficial use for the purposes here-

14    inafter set forth, throughout the entire year; said water to be diverted

15    from said Hathaway Creek at a point within the NW$\frac{1}{4}$ NE$\frac{1}{4}$ of Sec. 34, T. 2

16    S., R. 1 E., S.B.B. and M., and said water to be used for domestic, stock

17    watering, power development and irrigation purposes within the Morongo

18    Indian Reservation, comprising some 30,600 acres of land described as

19    follows:

20    All of Secs. 10, 12, 13, 14, 15, 22, 23, 25, 26, 27, 34, 35 and 36,
           T. 2 S., R. 1 E., S.B.B. and M.

21    All of Secs. 8, 9, 17, 18, 25, 26, 27, 28, 30, 31, 33, 34 and 35,
           T. 2 S., R. 2 E., S.B.B. and M.

22    E$\frac{1}{2}$, Sec. 16, T. 2 S., R. 2 E., S.B.B. and M.
    N$\frac{1}{2}$, Sec. 19, T. 2 S., R. 2 E., S.B.B. and M.

23    SW$\frac{1}{4}$, Sec. 19, T. 2 S., R. 2 E., S.B.B. and M.
    N$\frac{1}{2}$, Sec. 20, T. 2 S., R. 2 E., S.B.B. and M.

24    SW$\frac{1}{4}$, Sec. 20, T. 2 S., R. 2 E., S.B.B. and M.

25    N$\frac{1}{2}$ SE$\frac{1}{4}$, Sec. 20, T. 2 S., R. 2 E., S.B.B. and M.
    E$\frac{1}{2}$, Sec. 21, T. 2 S., R. 2 E., S.B.B. and M.

26    S$\frac{1}{2}$ SW$\frac{1}{4}$, Sec. 21, T. 2 S., R. 2 E., S.B.B. and M.
    E$\frac{1}{2}$, Sec. 29, T. 2 S., R. 2 E., S.B.B. and M.

27    W$\frac{1}{2}$, Sec. 36, T. 2 S., R. 2 E., S.B.B. and M.
    SE$\frac{1}{4}$, Sec. 36, T. 2 S., R. 2 E., S.B.B. and M.

28    All of Secs. 2, 12, 22, 24 and 26, T. 3 S., R. 1 E., S.B.B. and M.
    N$\frac{1}{2}$, Sec. 1, T. 3 S., R. 1 E., S.B.B. and M.

29    S$\frac{1}{2}$ S$\frac{1}{2}$, Sec. 6, T. 3 S., R. 1 E., S.B.B. and M.
    N$\frac{1}{2}$, Sec. 14, T. 3 S., R. 1 E., S.B.B. and M.

30    SW$\frac{1}{4}$, Sec. 34, T. 3 S., R. 1 E., S.B.B. and M.
    NE$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 34, T. 3 S., R. 1 E., S.B.B. and M.

31    N$\frac{1}{2}$ NW$\frac{1}{4}$ NW$\frac{1}{4}$, Sec. 34, T. 3 S., R. 1 E., S.B.B. and M.

-63-

EXHIBIT 1

1    All of Secs. 2, 4, 6, 8, 10, 12, 14 and 24, T. 3 S.,R. 2 E., S.B.B. and M.

2    S½ SW¼ NE¼, Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.
    S½ NW¼, Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.

3    SW¼, Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.
    SW¼ SE¼, Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.

4    E½ SE¼, Sec. 20, T. 3 S., R. 2 E., S.B.B. and M.
    S½, Sec. 22, T. 3 S., R. 2 E., S.B.B. and M.

5    N½, Sec. 28, T. 3 S., R. 2 E., S.B.B. and M.
    N½ NW¼, Sec. 32, T. 3 S., R. 2 E., S.B.B. and M.

6    SW¼ NW¼ SW¼, Sec. 32, T. 3 S., R. 2 E., S.B.B. and M.
    S½ NW¼ SE¼, Sec. 32, T. 3 S., R. 2 E., S.B.B. and M.

7    NE¼ NW¼ SE¼, Sec. 32, T. 3 S., R. 2 E., S.B.B. and M.
    NE¼ SE¼, Sec. 32, T. 3 S., R. 2 E., S.B.B. and M.

8    S½ SE¼, Sec. 32, T. 3 S., R. 2 E., S.B.B. and M.

9    43.   THE UNITED STATES OF AMERICA

10    is entitled to divert from the natural flow of Potrero Creek,

11    through the Potrero Creek Ditch,

12    7.00 cubic feet per second--priority January 1, 1894,

13    or as much thereof as it applies to beneficial use for the purposes here-

14    inafter set forth, throughout the entire year; said water to be diverted

15    from said Potrero Creek, all or in part, at any of the following described

16    points:

17    (1)  At the rock dam across Woods Canyon (Potrero Creek head-waters) in the SW¼, Sec. 7, T. 2 S., R. 2 E., S.B.B. and M.

18    (2)  At the intake from Potrero Creek in the SE¼ SE¼, Sec. 14, T. 2 S., R. 1 E., S.B.B. and M. (below Cienega).

19    (3)  At the intake from Potrero Creek in the NW¼ NW¼, Sec. 25, T. 2 S., R. 1 E., S.B.B.and M. (below spring).

20    (4)  At the Infiltration Gallery from Potrero Creek in the NE¼ NW¼, Sec. 25, T. 2 S., R. 1 E., S.B.B. and M.

21    (5)  At the earth dam across Potrero Creek in the SE¼ SE¼, Sec. 25, T. 2 S., R. 1 E., S.B.B. and M.

22

23    and said water to be used for domestic, stock watering, power development

24    and irrigation purposes within the Morongo Indian Reservation, comprising

25    some 30,600 acres of land as hereinabove described in the preceding para-

26    graph. During the winter months, at times when the entire quantity of

27    water available under this right may not be required for direct applica-

28    tion to the uses hereinabove specified, the said United States of America

29    is entitled to spread and store underground in Potrero Canyon, above the

30    lowest point of diversion hereinabove described, all surplus water over and

31    above the quantity required for direct application to use;

EXHIBIT 1

1  provided, that all water so spread and stored is subsequently withdrawn
2  from said underground storage and applied to beneficial use for the pur-
3  poses hereinabove specified.

4  <u>44.</u>  <u>THE UNITED STATES OF AMERICA</u>

5  is entitled to divert from the natural flow of Mission Creek,
6  through the Mission Creek Pipe Line,

7  3.00 cubic feet per second--priority January 1, 1902,
8  or as much thereof as it applies to beneficial use for the purposes here-
9  inafter set forth, throughout the entire year; said water to be diverted
10  from said Mission Creek at a point (designated on Division of Water Rights
11  Map as Diversion 49) which bears approximately S. 56° 30' W., approxi-
12  mately 2200 feet distant from the northeast corner of Sec. 2, T. 2 S.,
13  R. 3 E., S.B.B. and M., being within the NW¼ NE¼ of said Sec. 2, and said
14  water to be used for domestic, stock watering, power development and
15  irrigation purposes within the Mission Creek Indian Reservation, com-
16  prising some 2560 acres of land described as follows:

17  All of Secs. 12, 13 and 14, T. 2 S., R. 3 E., S.B.B. and M.
    S½ Sec. 1, T. 2 S., R. 3 E., S.B.B. and M.
18  W½ Sec. 2, T. 2 S., R. 3 E., S.B.B. and M.

19  <u>45.</u>  <u>THE UNITED STATES OF AMERICA</u>

20  is entitled to divert from the natural flow of Andreas Creek,
21  through the Andreas Creek Pipe Line,

22  5.00 cubic feet per second--priority January 1, 1895,
23  or as much thereof as it applies to beneficial use for the purposes here-
24  inafter set forth, throughout the entire year; said water to be diverted
25  from said Andreas Creek at a point (designated on Division of Water Rights
26  Map as Diversion 62) which bears approximately S. 31° 00' W., approxima-
27  tely 1900 feet distant from the east quarter corner of Sec. 3, T. 5 S.,
28  R. 4 E., S.B.B. and M., being within the SE¼ SE¼ of said Sec. 3, and
29  said water to be used for domestic, stock watering, power development and
30  irrigation purposes within the Agua Caliente Indian Reservation, compris-
31  ing some 30,240 acres of land described as follows:

EXHIBIT 1
- 59 -

1       All of Secs. 2, 4, 6, 8, 12, 14, 18, 20, 22, 24, 26, 28, 30, 32,
34 and 35, T. 4 S., R. 4 E., S.B.B. and M.

2       W½ Sec. 10, T. 4 S., R. 4 E., S.B.B. and M.
All of Secs. 2, 4, 6, 8, 10, 12, 14, 18, 20, 22, 24, 28, 30, 32,

3       and 34, T. 4 S., R. 5 E., S.B.B. and M.
All of Secs. 2, 4, 6, 8, 10, 12, 14, 18, 20, 22, 24, 26, 28, 30,

4       32 and 34, T. 5 S., R. 4 E., S.B.B. and M.
SE¼ Sec. 3, T. 5 S., R. 4 E., S.B.B. and M.

5       N½ Sec.11, T. 5 S., R. 4 E., S.B.B. and M.

5    **46.**   **THE UNITED STATES OF AMERICA**

7       is entitled to divert from the natural flow of Tahquitz Creek,

8    through the Agua Caliente Ditch,

9       4.80 cubic feet per second--priority April 25, 1884,

10   or as much thereof as it applies to beneficial use for the purposes here-

11   inafter set forth, throughout the entire year; said water to be diverted

12   from said Tahquitz Creek at a point (designated on Division of Water

13   Rights Map as Diversion 61) which bears approximately S. 49° 30' W.,

14   approximately 5400 feet distant from the northeast corner of Sec. 22,

15   T. 4 S., R. 4 E., S.B.B. and M., being within the NW¼ SW¼ of said Sec. 22,

16   and said water to be used for domestic, stock watering, power development

17   and irrigation purposes within the Agua Caliente Indian Reservation,

18   comprising some 30,240 acres of land as hereinabove described in the pre-

19   ceding paragraph.  The use of water under this right by said United States

20   of America is subject to the provisions of that certain agreement dated

21   February 10, 1911, between the United States of America (Indian Service)

22   and George Wellwood Murray, et al.--recorded March 11, 1911, in book

23   No. 325 of Deeds, page 260 et seq., records of Riverside County, Cali-

24   fornia.

25   **47.**   **ANDREW J. WARNER AND CLARA J. WARNER**

26       jointly, are entitled to divert from the natural flow of

27   Whitewater River, through the Warner Ranch Ditch,

28       1.62 cubic feet per second--priority September 18, 1907,

29   or as much thereof as they directly apply to beneficial use for the pur-

30   poses hereinafter set forth, throughout the entire year; said water to be

31   diverted from said Whitewater River at a point (designated on Division of

1    Water Rights Map as Diversion 45) which bears approximately S. 45° 00'

2    W., approximately 1580 feet distant from the northeast corner of Sec. 11,

3    T. 3 S., R. 3 E., S.B.B. and M., being within the NE¼ NE¼ of said Sec. 11,

4    and said water to be used for domestic and stock watering purposes upon

5    the following described land and for the irrigation of said land:

6        50.0 acres in S½ SE¼, Sec. 10, T. 3 S., R. 3 E., S.B.B. and M.

7    48.   WHITEWATER MUTUAL WATER COMPANY

8        is entitled to divert from the natural or developed flow of

9    Whitewater River, through the Palm Valley Water Company System (later

10    known as the "Stevens Pipe Line"),

11        10.00 cubic feet per second--priority September 19, 1913,

12    or as much thereof as said company applies to beneficial use for the

13    purpose hereinafter set forth, throughout the entire year; said water to

14    be diverted from said Whitewater River, all or in part, through any of the

15    following described works:

16        (1)  Through the main intake ditch leading to the "Stevens

17    Pipe Line", the head of which ditch is situated at a point which

18    bears approximately S. 84° 30' E., approximately 440 feet distant

19    from the northwest corner of Lot 2 of Sec. 2, T. 3 S., R. 3 E.,

20    S.B.B. and M., being within said Lot 2,

21        (2)  Through Infiltration Pipe Line "A" as shown on the map

22    prepared by Davidson & Fulmor, Engineers, dated April, 1927, and

23    entitled "Map Showing the Prescott T. Stevens Intake and Infiltra-

24    tion Pipe Lines from Whitewater River, Riverside County, Cal.,"

25    the head of which pipe line is situated approximately 727 feet

26    due east of the northwest corner of Lot 2 of Sec. 2, T. 3 S., R.

27    3 E., S.B.B. and M., and approximately on the north line of said

28    Sec. 2,

29        (3)  Through Infiltration Pipe Line "B" as shown on said

30    map prepared by Davidson and Fulmor, the head of which pipe line is

31    situated approximately 122 feet due east of the northwest corner of

-67-

EXHIBIT 1

- 61 -

1    Lot 2 of Sec. 2, T. 3 S., R. 3 E., S.B.B. and M., and approximately

2    on the north line of said Sec. 2,

3       (4)  Through Infiltration Pipe Line "C" as shown on said map

4    prepared by Davidson and Fulmor, the head of which pipe line is

5    situated at a point which bears approximately S. 62° 15' W., approxi-

6    mately 278 feet distant from the northeast corner of Lot 3 of Sec. 2,

7    T. 3 S., R. 3 E., S.B.B. and M., being within said Lot 3;

8    and said water to be used for domestic purposes on the following described

9    tracts and for the irrigation of approximately 725 acres of land within

10    the following described tracts:

11    SE¼ NE¼, Sec. 3, T. 4 S., R. 4 E., S.B.B. and M.
           E½, Sec.10, T. 4 S., R. 4 E., S.B.B. and M.

12         N½, Sec.11, T. 4 S., R. 4 E., S.B.B. and M.
          SW¼, Sec.11, T. 4 S., R. 4 E., S.B.B. and M.

13       NE¼, Sec.15, T. 4 S., R. 4 E., S.B.B. and M.

14                   XXVII

15       No costs or disbursements are allowed herein to any of the

16    parties to this proceeding and each of said parties shall respectively

17    bear their own costs.

18                  XXVIII

19       If at any time the natural flow of said Whitewater River and

20    its tributaries, or any thereof, is insufficient to furnish all parties

21    entitled thereto with the full amount of water awarded herein, then and in

22    said event the said natural flow shall be distributed in accordance with

23    the priorities as herein decreed.

24                  XXIX

25       Each and every of the parties hereto, their servants, agents,

26    attorneys, employees, successors in interest and all persons acting under

27    their authority and on their behalf are enjoined and restrained from any

28    and all interference with, or diversion or use of, the waters herein

29    decreed, except in the manner, and to the extent, and for the purposes

30    provided herein, whenever such interference, diversion or use in any manner

31    interferes with the diversion or use of the said waters as decreed herein.

-68-

EXHIBIT 1

- 62 -

9th day of December, 1938.

3

4

5                                      Wm. D. DEHY   (signed)

6                              Judge of the Superior Court, presiding.

7

8

9         ENDORSED                     Recorded in Book ____46____ of

10          F I L E D                  _____ Judgments

11        December 9, 1938             at Page _246_  the ____9th____

12        D. G. Clayton, Clerk         day of ____December____, 1938

13        By Jack A. Bergin,              D. G. CLAYTON, Clerk
              Deputy
14                                     By: Erma E. Dewey, Deputy

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

-69-

EXHIBIT 1
- 63 -

Exhibit 2

# Executive Orders

### Relating to

# Indian Reservations

## From May 14, 1855
## to July 1, 1912

*U.S. Office of Indian affairs*



WASHINGTON
GOVERNMENT PRINTING OFFICE
1912

EXHIBIT 2
- 64 -

Case 5:13-cv-00883-JGB-SP   Document 84-5   Filed 10/21/14   Page 68 of 72   Page ID #:1262

EXECUTIVE MANSION, *May 15, 1876.*

It is hereby ordered that the following-described lands in San Bernardino County, Cal., viz:

*Portrero.*—Township 2 south, range 1 east, section 36;

*Mission.*—Township 2 south, range 3 east, sections 12, 13, and 14;

*Aqua Calienta.*—Township 4 south, range 4 east, section 14, and east half of southeast quarter and northeast quarter of section 22;

*Torros.*—Township 7 south, range 7 east, section 2;

*Village.*—Township 7 south, range 8 east, section 16;

*Cabezons.*—Township 7 south, range 9 east, section 6;

*Village.*—Township 5 south, range 8 east, section 19;

*Village.*—Township 5 south, range 7 east, section 24,

be, and the same hereby are, withdrawn from sale and set apart as reservations for the permanent use and occupancy of the Mission Indians in southern California, in addition to the selections noted and reserved under Executive order dated 27th December last.

U. S. GRANT.

———

EXECUTIVE MANSION, *May 3, 1877.*

It is hereby ordered that the following lands, situate in California, viz, township 10 south, range 1 east, sections 16 and 36, San Bernardino; township 7 south, range 2 east, section 36; township 14 south, range 2 east, section 36; township 11 south, range 3 east, section 36; township 9 south, range 2 west, north half of northeast quarter section 33, being lands withdrawn from the public domain for the Mission Indians by President's order of December 27, 1875; also the following: Township 2 south, range 1 east, section 36; township 7 south, range 8 east, section 16, being lands withdrawn by President's order of May 15, 1876, for the same purpose, be, and the same are hereby, restored to the public domain.

R. B. HAYES.

———

EXECUTIVE MANSION, *August 25, 1877.*

It is hereby ordered that the following lands in California, to wit, all the even-numbered sections and all the unsurveyed portions of township 2 south, range 1 east; township 2 south, range 2 east; township 3 south, range 1 east; and township 3 south, range 2 east, San Bernardino meridian, excepting sections 16 and 36, and excepting also all tract or tracts the title to which has passed out of the United States Government, be, and the same hereby are, withdrawn from sale and settlement, and set apart as a reservation for Indian purposes.

R. B. HAYES.

———

EXECUTIVE MANSION, *September 29, 1877.*

It is hereby ordered that the following-described lands in California, to wit, all the even-numbered sections, and all the unsurveyed portions of township 4 south, range 4 east; township 4 south, range 5 east; and township 5 south, range 4 east, San Bernardino meridian,

EXHIBIT 2
- 65 -

excepting sections 16 and 36, and excepting also any tract or tracts the title to which has passed out of the United States Government, be, and the same hereby are, withdrawn from sale and settlement, and set apart as a reservation for Indian purposes for certain of the Mission Indians.

R. B. HAYES.

———

EXECUTIVE MANSION, <i>January 17, 1880.</i>

It is hereby ordered that so much of the order of December 27, 1875, as relates to the Aqua Calienta Indian Reservation in California, be, and the same is hereby, canceled.

It is also hereby ordered that said order of December 27, 1875, so far as the same relates to the Santa Ysabel Indian Reservation, be, and the same is hereby, canceled to the following extent, viz:

All that portion of sections numbered 25, 26, and 27, township 11 south, range 3 east, lying north of the following line, viz: Beginning on the north boundary line of section 25, township 11 south, range 3 east, of San Bernardino meridian, at a point 51.59 chains west of the northeast corner of said section 25; thence according to the true meridian south 25½° west, 56.50 chains, to a granite stone marked "P," at the north side of a granite bowlder 8 feet high; thence south 74° west, 34.60 chains, to a black oak marked "P XXI"; thence north 56° west, 52 chains, to a granite stone marked "P" in stone mound; thence north 39° west, 40.46 chains, to a point on the north boundary of section 27; thence east along the north boundaries of sections 27, 26, and 25, of township 11 south, range 3 east, to the place of beginning.

R. B. HAYES.

———

EXECUTIVE MANSION, <i>March 2, 1881.</i>

It is hereby ordered that the following-described lands in California, viz, sections 26 and 35 in township 10 south, of range 1 west, and sections 2 and 3, in township 11 south, of range 1 west, of the San Bernardino meridian, be, and the same are hereby, withdrawn from sale and set apart as a reservation for the permanent use and occupancy of the Mission Indians in California, provided that this withdrawal shall not affect any existing valid adverse rights of any party.

R. B. HAYES.

———

EXECUTIVE MANSION, <i>March 9, 1881.</i>

It is hereby ordered that all the unsurveyed portions of township 2 south, range 1 east, San Bernardino meridian, California, excepting any tract or tracts the title to which has passed out of the United States Government, be, and the same are hereby, withdrawn from sale and settlement and set apart as a reservation for Indian purposes.

JAMES A. GARFIELD.

EXHIBIT 2
- 66 -

EXECUTIVE MANSION, *June 27, 1882.*

It is hereby ordered that the following-described lands, situated and lying in the State of California, viz, sections numbered 26, 27, 28, 34, and 35, in township numbered 8 south, of range numbered 2 west, of the San Bernardino meridian, be, and the same hereby are, withdrawn from sale and settlement and set apart for Indian purposes; provided, however, that any tract or tracts the title to which has passed out of the United States, or to which valid, legal rights have attached under existing laws of the United States providing for the disposition of the public domain, are hereby excluded from the reservation hereby created.

CHESTER A. ARTHUR.

————

EXECUTIVE MANSION, *July 24, 1882.*

It is hereby ordered that the Executive order dated December 27, 1875, setting aside certain described lands in the State of California for the use and occupancy of the Mission Indians, be, and the same hereby is, canceled so far as relates to the northwest quarter of the northeast quarter and the northeast quarter of the northwest quarter of section 34, township 9 south, range 2 west of the San Bernardino meridian.

CHESTER A. ARTHUR.

————

EXECUTIVE MANSION, *February 5, 1883.*

It is hereby ordered that the following lands, situate in California, viz, the southeast quarter of the northeast quarter, the north half of the southeast quarter, and the southeast quarter of the southeast quarter of section 3, township 12 south, range 2 east of San Bernardino meridian, being lands withdrawn from the public domain for the Mission Indians by Executive order of December 27, 1875, be, and the same are hereby, restored to the public domain.

CHESTER A. ARTHUR.

————

EXECUTIVE MANSION, *June 19, 1883.*

It is hereby ordered that the following-described land, situate in the State of California, San Bernardino base and meridian, viz, section 28, the northeast quarter of the northeast quarter, and lots 1, 2, 3, 4, and 5 of section 31; the north half, the southeast quarter, the northeast quarter of the southwest quarter, and lots 1 and 2 of section 32, and the north half of section 33, township 4 south, range 1 east; section 2; the south half of section 3, the fractional south half of section 4, the fractional north half of section 10, and the fractional northeast quarter of section 9, township 5 south, range 1 east; the east half of the southeast quarter of section 8, and the southwest quarter of the southwest quarter of section 9, township 12 south, range 2 east, and sections 10, 11, 14, 15, 22, 23, 28, and 33, township 14 south, range 2 east, be, and the same are hereby, withdrawn from sale and set apart for the permanent use and occupation of the Mission Indians in the State of California: *Provided,* That this withdrawal shall not affect any existing valid rights of any party.

CHESTER A. ARTHUR.

EXHIBIT 2
- 67 -

EXECUTIVE MANSION, *January 25, 1886.*

It is hereby ordered that the Executive order dated June 27, 1882, setting aside certain described lands in the State of California for Indian purposes, be, and the same is hereby, canceled so far as relates to lot 2 in section 28, township 8 south, range 2 west of the San Bernardino meridian.

GROVER CLEVELAND.

———

EXECUTIVE MANSION, *March 22, 1886.*

It is hereby ordered that the Executive order dated June 19, 1883, setting apart certain described lands in the State of California for Indian purposes, be, and the same is hereby, canceled so far as relates to east half southeast quarter, northwest quarter southeast quarter. and southwest quarter northeast quarter, and southwest quarter southeast quarter, southeast quarter southwest quarter, northeast quarter southwest quarter, and southeast quarter northwest quarter, section 28, township 4 south, range 1 east, San Bernardino meridian.

GROVER CLEVELAND.

———

EXECUTIVE MANSION, *January 29, 1887.*

It is hereby ordered that the following-described lands in the State of California, being part of the lands restored to the public domain by Executive order dated March 22, 1886, be, and the same are hereby, withdrawn from sale and set apart for the permanent use and occupation of the Mission Indians, viz: South half of southeast quarter, and southeast quarter of northwest quarter, section 28, township 4 south, range 1 east, San Bernardino meridian.

It is hereby further ordered that the following-described lands, viz, north half and southeast quarter of northeast quarter, section 28. township 4 south, range 1 east, San Bernardino meridian, Califronia, be, and the same are hereby, restored to the public domain.

GROVER CLEVELAND.

———

EXECUTIVE MANSION,
*Washington, March 14, 1887.*

It is hereby ordered that the lands embraced in section 23, township 7 south, range 2 east, San Bernardino meridian, California, be, and the same hereby are, withdrawn from sale and settlement and set apart for the use and occupation of the Mission Indians as an addition to the Coahuila Reservation.

GROVER CLEVELAND.

———

EXECUTIVE MANSION, *May 6, 1889.*

It is hereby ordered that the following-described lands, situated and lying in the State of California, viz, township 10 south, range 4 east, and sections 3 and 4, township 11 south, range 4 east of the San Bernardino meridian, except so much of the same as is covered by the patents issued to J. J. Warner, January 16, 1880, and to Harmon T. Helm, January 16, 1886, be, and the same are hereby, withdrawn from sale and settlement and set apart as a reservation for the Mis-

EXHIBIT 2
- 68 -

sion Indians: *Provided, however,* That any other tract or tracts the title to which has passed out of the United States, or to which valid legal rights have attached under existing laws of the United States providing for the disposition of the public domain, are also hereby excepted and excluded from the reservation hereby created.

BENJ. HARRISON.

———

Whereas by Executive order dated December 27, 1875, sections 8 and 9, township 15 south, range 2 east, San Bernardino meridian, California, were with certain other tracts of land withdrawn from the public domain and reserved for the use of the Capitan Grande Band or village of Mission Indians; and

Whereas the commission appointed under the provisions of the act of Congress approved January 12, 1891, entitled "An act for the relief of the Mission Indians in the State of California" (U. S. Stat. L., vol. 26, p. 712), selected for the said Capitan Grande Band or village of Indians certain tracts of land and intentionally omitted and excluded from said selection the said sections 8 and 9, township 15 south, range 2 east, and reported that the tracts thus omitted included the lands upon which were found the claims of Arthur F. Head and others; and

Whereas the report and recommendations of the said commission were approved by Executive order dated December 29, 1891, which order also directed that " all of the lands mentioned in said report are hereby withdrawn from settlement and entry until patents shall have issued for said selected reservations, and until the recommendations of said commission shall be fully executed, and, by the proclamation of the President of the United States, the lands or any part thereof shall be restored to the public domain; " and

Whereas a patent was issued March 10, 1894, to the said Indians for the lands selected by the commission as aforesaid, and which patent also excluded the said sections 8 and 9, township 15 south, range 2 east; and

Whereas it appears that the said Arthur F. Head can not make the requisite filings on the land occupied by him until it shall have been formally restored to the public domain, and that no good reason appears to exist for the further reservation of the said sections for the said band of Indians:

Now, therefore, I, William McKinley, President of the United States, by virtue of the power in me vested, do hereby declare and make known that the Executive orders dated December 27, 1875, and December 29, 1891, are so far modified as to except from their provisions sections 8 and 9 of township 15 south, range 2 east, San Bernardino meridian, and the said sections are hereby restored to the public domain.

In witness whereof I have hereunto set my hand and caused the seal of the United States to be affixed.

Done at the city of Washington this 16th day of April, in the year of our Lord one thousand nine hundred and one, and of the independence of the United States the one hundred and twenty-fifth.

WILLIAM MCKINLEY.

By the President:
    JOHN HAY, *Secretary of State.*

EXHIBIT 2
- 69 -