Exhibit 3

Smiley Commission Report
and
Executive Order of December 29, 1891.

Box 42

# I N D E X

--0--

| Reservation | Page |
|---|---|
| San Manuel | 3 |
| Ramona | 4 |
| Pala | 5 |
| Rincon | 6 |
| Cahuilla | 7 |
| Potrero | 8 |
| Inaja | 10 |
| Cosmit | 10 |
| Mesa Grande | 10 |
| La Posta | 12 |
| Manzanita | 13 |
| La Cuna | 13 |
| Campo | 14 |
| Temecula | 15 |
| Cuyapipe | 16 |
| Sycuan | 18 |
| Capitan Grande | 18 |
| San Felipe | 21 |

| Reservation | Page |
|---|---|
| Tule River | 23 |
| San Pasqual | 24 |
| Santa Ynez | 26 |
| San Jacinto | 28 |
| Agua Caliente | 30 |
| Los Coyotes | 36 |
| Torros | 40 |
| Pauma | 44 |
| Augustine | 43 |
| Santa Rosa | 48 |
| Morongo | 51 |
| Santa Ysabel | 64 |
| Mission Creek | 66 |
| Cabazon | 67 |
| San Louis Rey | 70 |
| Private Grants | 71 |

HERITAGE ROOM ARCHIVES
IN SMILEY LIBRARY
125 W. VINE
REDLANDS, CA 92373

EXHIBIT 3
- 70 -

UNITED STATES INDIAN SERVICE,

San Carlos

May 21 _____, 1903

Commissioner Indian Affairs
Washington D.C.

Sir,
I have the honor to return
the report of Mission Indian Commission
for re filing in Office
Very Respectfully
_____
Spl Agt

EXHIBIT 3

- 71 -

# REPORT OF MISSION INDIAN COMMISSIONERS.

To the Honorable,

The Secretary of the Interior,

34993

Through the Commissioner of Indian Affairs:--

The undersigned Mission Indian Commissioners most respectfully report as follows:

As soon after their appointment as possible, all the members of the Commission went to California and proceeded to make themselves as familiar with the condition of the Indians and their reservations as possible. To do this they were compelled to travel over many miles of mountain roads and to have many surveys made. We have found a good many difficulties in the way of a satisfactory solution of the questions submitted to us: white men, in many instances, had encroached upon the Indian lands-- especially upon those within the lines of Spanish grants, the Southern Pacific Railroad Company claimed to own the odd sections of land within the reservations near the line of its railroad, settlers had moved on to be truce railroad lands and made improvements and developed water rights.           of them had been ejected by the military and had                       suits against the government or against the officials

EXHIBIT 3

- 72 -

differences, and in some cases have succeeded, as will appear more in detail in our recommendations in regard to individual reservations.

It is our judgment that if our recommendations are adopted it will result in a reasonably comfortable and adequate home for every Mission Indian who cares to avail himself of the provisions made for him on these reservations.

At those reservations where we think it wise to allot the lands at an early date in severalty, we have so recommended. As to the reservations where we do not so recommend, we did not think it best as yet to allot the lands to individuals.

In Southern California the water supply is an important matter. Its use can be greatly economized by the adoption of method and system in the laying out and the construction of the reservoirs and irrigating ditches.

The Indians are good ditchers and have great skill in the building of irrigating ditches, but they do not possess the technical knowledge that will enable them to plan a system of irrigation that shall provide for an economical use of water by so many families as will need it on some of the reservations proposed by us, and so we recommend that there be employed a competent water engineer to plan systems of irrigation for them in such localities as will mention more in detail hereafter.

EXHIBIT 3

- 73 -

After pursuing the work of the Commission for about eight weeks, Messrs. Smiley and Moore were compelled to go East and were granted leave of absence for that purpose.   Mr. Painter has remained in California continuously causing surveys to be made and getting such information in detail as he could get.   Mr. Moore returned in October and Mr. Smiley early in November, and all the members of the Commission since their return have spent all their time in the work of the Commission.   We recommend that there be set apart for the Mission Indians of California, the following reservations:

## SAN MANUEL.

We recommend that there be set aside for the Indians living on the land March 12th, 1891, the following lands for a reservation to be called San Manuel, viz:

Section twenty (20); also that part of Section thirty (30) bounded on the North and on the East by the section line and on the South-west by the flume; it being a triangular shaped piece of land containing about fifteen acres: All in Township one (1) North, Range three (3) West, S. B. M.

(For a more detailed statement of this proposed reservation, see our report of March 12th, 1891).

EXHIBIT 3
- 74 -

## TWENTY-NINE PALMS.

This Commission recommends that there be established a reservation known as the Twenty-nine Palms, to consist of the following lands, viz:

The South-west quarter of Section thirty-three (33) in Township one (1) North, Range Nine (9) East, S. B. M.; and also the North-west quarter of Section four (4) in Township one (1) South, Range nine (9) East, S. B. M.

There are three families here having three houses and some cultivated fields: the head man is Chimehueva Mike. They have plenty of water and can be very comfortable here. There is sufficient tillable land for their needs; the balance of the land in the proposed reservation is valuable grazing land.

The Indians were in possession of these lands as shown by the field notes as long ago as in 1852.

## RAMONA.

We recommend that the following lands be set aside as a reservation to be called Ramona, viz: The South-west quarter of the South-east quarter (1/4) and the South-east quarter (1/4) of the South-west quarter (1/4) of Section thirty (30); the West one-half (1/2) of the North-east quarter (1/4) and the South-east quarter (1/4) of the North-east quarter (1/4), and the North-east quarter

EXHIBIT 3
- 75 -

(1/4) of the South-east quarter (1/4) of Section Thirty-one (31);
the North half (1/2) of South-west quarter (1/4) and the South-east quarter (1/4) of the South-west quarter (1/4) and the South half (1/2) of South-east quarter (1/4), Section thirty-two (32 );
and the South-west quarter (1/4) of the South-west quarter (1/4),
Section thirty-three (33); all in Township six (6) South Range
Three (3) East, S. B. M.; also the North-west quarter (1/4) of the
North-west quarter (1/4) of Section four (4), and the North-east
quarter (1/4) of the North-east quarter (1/4) of Section five (5);
all in Township seven (7) South, Range three (3) East, S. B. M.

There are three families comfortably situated on these lands
which are valuable as grazing lands; they have a good water supply.

### PALA.

This Commission recommends that the following lands be set
aside as a reservation to be known as Pala, viz: The South half
(1/2) of the North-east quarter (1/4) of Section thrity-three (33);
the North-west quarter (1/4) of the North-west quarter (1/4) of
Section thirty-four (34); and the North-east quarter (1/4) of the
North-east quarter (1/4) of Section thirty-four (34); all in Township nine (9) South, Range two (2) West, S. B. M.

This land is nearly all arable land and has been occupied  by
the Indians for a long time.   They have on these lands quite com-

5.

EXHIBIT 3
- 76 -

fortable houses.    The Indians are not willing to leave and there are no other government lands in this vicinity that we can recommend to be set apart for their use or we should be glad to have the reservation larger.

We think the lands at Pala ought to be alloted, and the surplus Indians for whom there is not land, induced to go to some of the other reservations.

There are about sixty Indians here.

## RINCON.

The village of Rincon comprises about one hundred and fifty Indians.    There is a very good school here and the children are making commendable progress.

We recommend that there be set aside the following lands as a reservation to be called Rincon, viz: Fractional Section twenty-six (26) and Section thirty-five (35) in Township ten (10) South, Range one (1) West, S. B. M., and Sections two (2) and three (3) in Township eleven (11) South, Range one (1) West, S. B. M.

Nearly all these lands are arable and well watered.   Some of the Indians are farming successfully and we think it would be wise to allot to inidviduals the lands on this reservation.    In our judgment the lands allotted should not be in regular shapes but should be allotted with reference to getting a supply of water,

6.

EXHIBIT 3
- 77 -

and with reference to the buildings and improvements already made.

## CAHUILLA.

We recommend that the Cahuilla Indian Reservation remain as it is with the addition of the South half (1/2) of Section fourteen (14) in Township seven (7) South, Range two (2) East, S. B. M. We suggest this addition because an Indian has a house and cultivated field upon this land and needs it for a home.

The lands we recommend for this reservation are as follows: The South half (1/2) of Section fourteen (14), Sections twenty-three (23), twenty-five (25), twenty-six (26), twenty-seven (27), twenty-eight (28), thirty-three (33), thirty-four (34), thirty-five (35), and thirty-six (36) in Township seven (7) South, Range two (2) East, S. B. M.; Sections twenty-six (26), twenty-seven (27), twenty-eight (28), twenty-nine (29), thirty (30), thirty-one (31), thirty-two (32), thirty-three (33), thirty-four (34) and thirty-five (35) in Township seven (7) South, Range three (3) East, S. B. M.; Sections one (1), two (2), three (3) and four (4) in Township eight (8) South, Range two (2) East, S. B. M.; Sections two (2), three (3), four (4), five (5) and six (6) in Township eight (8) South, Range three (3) East, S. B. M.

This band of Indians have quite comfortable houses and are largely engaged in stock raising.   There is a school on this

7.

EXHIBIT 3
- 78 -

reservation which is quite well attended.  Many of the men are independent and ambitious and we think would manage their lands in a capable way, if they were individual owners.  On account of the fact that so large a part of their industry is stock raising, it would not be practicable to allot their grazing lands, but we believe it would be good policy to allot some of the agricultural lands, of which there is a sufficiency for that purpose, to the more intelligent and industrious heads of families.  When not needed in the work upon the reservation, the men are in the habit of going outside to work.  Their services are in demand and they earn considerable sums of money.  When the Indians are all at home, there are about two hundred and fifty people on this reservation.

## POTRERO.

This Commission suggests that in their judgment it is not advisable to create separate reservations for La Jolla and La Piche villages, though there have been some indications of a desire, on the part of the Indian Department, to have it done. There are about forty Indians in the village of La Piche; there are about one hundred and forty in the village of La Jolla. It is difficult to tell where one village ends and the other begins The children from both villages attend the same school.  It is not desirable or practical to maintain more than one school.

8.

EXHIBIT 3

- 79 -

There is already jealousy between the people of the two villages. Room should be made on this reservation for Mission Indians who are inadequately provided for at other places.   Many of the Indians are now ready for individual allotment.   To attempt to establish two reservations will increase the jealousy of these Indians and greatly complicate the allotment of lands and the providing for worthy Mission Indians who need homes here.   We therefore recommend that there be set aside, for the use of the Mission Indians in the villages of La Piche and La Jolla, and for such other Mission Indinas as it may be expedient to place upon said reservation, the following described land to be called the Potrero: viz., fractional Sections seventeen (17), nineteen (19), twenty (20), twenty-one (21), twenty-two (22), twenty-seven (27), twenty-eight (28) and twenty-nine (29), and Sections twenty-three (23), twenty-five (25), twenty-six (26), thirty (30), thirty-one (31), thirty-two (32), thirty-three (33), thirty-four (34) and thirty-five (35), in Township ten (10) South, Range one (1) East, S. B. M.

There are many evidences of prosperity and thrift upon the part of these people, and they have an opportunity here to make for themselves most excellent homes.   They have an abundance of water, and also of arable land, for their reasonable needs, and also for a considerable addition to their numbers.   There is also much good grazing land.   The reservation, upon nearly all sides,

9.

EXHIBIT 3

- 80 -

runs back to and takes in considerable mountain land worthless for any purpose except to prevent encroachments by others upon it.

## MESA GRANDE.

We recommend that the following lands be set apart as a reservation to be called Mesa Grande, viz: The East half (1/2) of the South-east quarter (1/4) of Section eight (8), and the South-west quarter (1/4) of the South-west quarter (1/4) of Section nine (9) in Township twelve (12) South, Range two (2) East, S. B. M.

There are three families of Indians on these lands who do not wish to move to a larger reservation.

## INAJA.

Two reservations contiguously situated in Township thirteen (13) South, Range three (3), S. B. M., to-wit, the North-east quarter (1/4) of Section thirty-five (35), and the North one-half (1/2) of the North-east quarter (1/4) of Section twenty-five (25), known respectively as Inaja and Cosmit, were set apart by executive order dated December 27th, 1875. The Indians for whom the latter was intended had their Rancheria on the South one-half (1/2) of the North-east quarter (1/4), and had fine water and excellent land. Through what the Commission believes to be a cruel fruad, the

10.

EXHIBIT 3
- 81 -

Reservation was located North of their Rancheria on utterly worthless land, and the land they had been cultivating, and their homes, were taken by a white man.

There have been no Indians on the reservation of Cosmit since it was set apart, because no one could live upon it.   At Inaja, under Captain Jose Dolores, there are thirty Indians who have some seventy acres of arable land, with water for about one-half of that amount.   About forty acres of the remainder is good grazing land, and the rest, fifty acres, is high pine land.

These Indians were greatly disappointed that we could not restore to them their old fields and water at Cosmit, but will be satisfied with such additions as we are able to make, to-wit, the South one-half (1/2) of the South-east quarter (1/4) and the North-east quarter (1/4) of the South-east quarter (1/4) of Section twenty-six (26), Township thriteen (13) South, Range three (3), East, S. B. M.   The Commission recommends, therefore, that the Reservation of Inaja embrace the North-east quarter (/4) of Section thirty five (35); and the South one-half (1/2) of the South-east quarter (1/4), and the North-east quarter (1/4) of the South-east quarter (1/4), of Section twenty-six (26), Township thirteen (13) South, Range three (3) East, S. B. M.; and that the reservation of Cosmit, i. e., the North one-half (1/2) of the North-east quarter (1/4) of Section twenty-five (25), be restore to the public domain.

11.

EXHIBIT 3
- 82 -

## LA POSTA.

The La Posta Rancheria is on the South-east one-fourth (1/4) of the South-west one-fourth (1/4), and the South one-half (1/2) of the South-east one-fourth (1/4), of Section thirty-one (31), Township sixteen (16) South, Range six (6) East, S. B. M.   There are thirty-five Indians here, who have not more than thirty or forty acres of second rate land, with sufficient water.   They are poor, and there is little hope for them where they now live. The Commission recommends that, in addition to the land above described, the following be added: The North one-half (1/2) of the North-east one-fourth (1/4), and the North-east one-fourth (1/4) of the North-west one-fourth (1/4) of Section six (6), Township seventeen (17) South, Range six (6) East, S. B. M., so that the la Posta Reservation will embrace the following descriptions of land: The South-east quarter (1/4) of the South-west quarter (1/4), and the South half (1/2) of the South-east quarter (1/4) of Section thirty-one (31), Township sixteen (16) South, Range six (6) East, S. B. M.; and the North half (1/2) of the North-east quarter (1/4), and the north-east quarter (1/4) of the North-west quarter (1/4) of Section six (6), Township seventeen (17) South, Range six (6) East, S. B. M.

12.

EXHIBIT 3
- 83 -

## MANZANITA.

In Township sixteen (16) South, Range six (6) East, S. B. M., on the North half (1/2) of the North-west quarter (1/4) of Section twenty-six (26), is the Rancheria called Manzanita, where there are some forty Indians.   There is very little land, and this of a very poor quality, and there is none that can be added to that now occupied by them.

These are the very poorest Indians of all visited, or for whom the Commission have attempted to provide.

It is recommended that this Section be patented to them for security, but it is in part of these that a larger amount of land has been reserved at Capitan Grande than would other have been reserved, to which they, it is hoped, may be induced to remove when convinced that they can secure homes there.

## LAGUNA.

On Section thirty-three (33) of Township fourteen (14) South, Range five (5) East, is an old Rancheria called Laguna, consisting of four houses and as many families, under Captain Valentine. There is a sufficiency of arable land, a considerable portion of

12.

EXHIBIT 3

- 84 -

which is under cultivation.   There are also two large springs from which most of the land under cultivation can be irrigated.

The Commission recommends that the North-west quarter (1/4) of this Section be patented to this village, as a permanent reservation.

## CAMPO.

In Township eighteen (18) South, Range five (5) East, S. B. M., is a Rancheria comprising eight houses and forty-seven Indians. They have water and some good land and there is demand for work in the neighborhood.   They were located on the South-east one quarter (1/4) of the North-west one quarter (1/4) and on the South-west one quarter (1/4) of the North-east one quarter (1/4) of Section three (3).

The Commission has made some additions such as they were able to make and recommend that the reservation of Campo be created and comprise the following described land:

The East half (1/2) of the North-east one quarter (1/4) of Section four (4); the West half (1/2) of the North-west quarter (1/4); the South-east quarter (1/4) of the North-west quarter (1/4); the South-west quarter (1/4) of the North-east quarter (1/4); and the North-west quarter (1/4) of the South-west quarter (1/4) of

14.

EXHIBIT 3
- 85 -

Section three (3), Township eighteen (18) South, Range five (5)
East, S. B. M.

## TEMECULA.

This reservation, as created by executive order, comprised
Sections twenty-six (26), twenty-seven (27), twenty-eight (28),
thirty-four (34) and thirty-five (35), in Township eight (8) South,
Range two (2) West, S. B. M. Owing to an almost entire lack of
water, the land is suitable only for dry farming, and can be util-
ized alone for such grains as barley and wheat, which are made by
the winter rains.

The Indians, being unwilling to remove, the Commission recom-
mends the setting apart of these Sections as a permanent Reserva-
tion for them, believing that, with such crops as they will be
able to raise, and the wages they can earn as laborers on the ad-
joining ranches, they can make a comfortable living.  The little
water they have has its rise on Section thirty-six, one hundred
and sixty acres of which ought to be added to the selections the
Commission has made.   The former Agency Clerk and Physician, Dr.
Ferrebee, purchased this land from the State, that it might be
held for this purpose, and is willing to sell it to the government

15.

EXHIBIT 3
- 86 -

*including trees and interests*

for what it cost him, and the Commission recommends that it be purchased and added to the Reservation.

This land is described as follows:

The north half (1/2) of the North-west quarter (1/4); the South-east quarter (1/4) of the North-west quarter (1/4); and the South-west quarter (1/4) of the North-east quarter (1/4) of Section thirty-six (36), Township eight (8) South, Range two (2) West, S. B. M. This purchase can be made, we believe, for a sum not exceeding ~~Four~~ *Five* Hundred Dollars.

There are, at this place, about one hundred and sixty Indians, being a remnant of those who were ejected from the Temecula Valley some years ago.

The Commission recommends that the government pipe the water from the above mentioned quarter sections to the school-house, and to a central point of the village, under the supervision of the Indian Agent, at an estimated cost of Two Thousand Dollars.

## CUYAPIPE, or LONG CAÑON.

The Cuyapipe Indian Village, consisting of some twenty houses, and a small church, and about seventy-four Indians, fifty men and women and twenty-four children, stands on the North-east quarter (1/4) of the North-east quarter (1/4) of Section nineteen (19),

16.

EXHIBIT 3
- 87 -

Township fifteen (15) South, Range six (6) East, S. B. M. There is quite a stream of water, being the North fork of the Tia Juana flowing through the narrow cañon on the sides of which the village is located, which is constantly cutting away the small amount of land that can be cultivated.   They are very poor, and cannot be otherwise so long as they remain here, and it is hoped that they may be induced, when convinced that they can secure better land, with an assured title, to remove to Capitan Grande.

For the present we recommend that the following described land may be given them for a Reservation: The East half (1/2) of the North-east quarter (1/4) and the East one-half (1/2) of the South-east quarter (1/4) of Section nineteen (19); the West half (1/2) of Section twenty (20), the West half (1/2) of the South-east quarter (1/4) of Section twenty (20); the North-west quarter (1/4) of Section twenty-nine (29); the West half (1/2) and the North-east quarter (1/4) of the North-east quarter (1/4) of Section twenty-nine (29); and the North-west quarter (1/4) of the South-east quarter (1/4) of Section twenty-nine (29).

There is no available land contained in this description, except along the creek, but, in the absence of a survey, which would cost many times more than the land is worth, it is necessary to give a margin along the mountains sides to make certain that

17.

EXHIBIT 3
- 88 -

this land is included.

## SYCUAN.

We recommend that the following lands be set aside as a reservation, to be called Sycuan.

Section thirteen (13) in Township sixteen (16) South, Range one (1) East, S. B. M.

This land is well watered, and nearly all arable.  It is surrounded by a settled country, and the Indians who care to work can get constant employment at remunerative prices.  There are on the Reservation about fifty Indians.

## CAPITAN GRANDE.

We recommend that there be set aside the following lands as a Reservation, to be called the Capitan Grande, viz: Sections ten (10), eleven (11), fourteen (14), fifteen (15), twenty-two (22), the West half (1/2) of Section twenty-seven (27), twenty-eight (28), thirty-three (33); South half (1/2) Section thirty-four (34), and Section thirty-five (35); all in Township fourteen (14) South, Range two (2) East, S. B. M.  Also, Section three (3) and four (4), and the North half (1/2) of Sections one (1) and two (2),

18.

EXHIBIT 3

in Township Fifteen (15) South, Range Two (2) East, S.P.M.   Also, Sections thirty-one (31) and thirty-two (32) in Township fourteen (14) South, Range three (3) East, S. B. M.   Also, Sections five (5) and six (6) in Township fifteen (15) South, Range three (3) East, S. B. M.

In our judgment, about one-sixth of these lands are cultivatable lands, and under an arrangements we have made with the San Diego Flume Company, which we shall mention later, will be well supplied with water, except the East four Sections.   The rest of the lands are chiefly grazing lands, though there are some worthless mountain lands.   There is not only sufficient land for the Indians now on the Reservation, but also for fully one hundred others who will need to find homes here.

We recommend that the reservation be set apart, not to those now on the land simply, but also to those who shall hereafter find homes there.   This Reservation will make ideal homes for Indians. It is one of the localities where individuals are intelligent and good workers, and some individual allotments ought to be made soon.

The San Diego Flume Company has its diverting dam on this Reservation.   Its flume also goes nearly the whole length of it, as will be seen by a tracing transmitted herewith and marked Exhibit A.

12.

EXHIBIT 3

- 90 -

The San Diego River runs through the Reservation, but for a good part of the year is dry, so that it would not furnish a permanent supply of water for irrigating purposes.   At the dry season of the year the irrigating Company turns water into the stream from their Reservoir, and then by means of the diverting dam, turns the water into the flume from the river, assuring a permanent supply.   They have also constructed a good road through the Reservation, and for the right of way for the flume, diverting dam and road, propose to furnish the Indians now on and that may be put on, the Reservation hereafter who are under their flume what water they may need for domestic and irrigating purposes, under reasonable regulations, as will be seen by their proposition transmitted herewith and marked Exhibit B.   We think the construction of this flume is of benefit to this Reservation.   At one time the Flume Company attempted to make, with Indian Agent Preston, an agreement, by which they were to pay $1300 in money, as well as to furnish the water.   That occurred in boom times, and under great stress.   We do not think the money consideration ought to be asked of them.   We do not find any claims upon the lands we have herein selected as a reservation, for improvements, that we think it necessary to extinguish.   Charles Hensley, A. R. Knowles and perhaps others, have claims against the government for eviction

20.

EXHIBIT 3
- 91 -

from the Reservation.    If these claims have merit, some other department of the government should pass upon them.

We recommend that Sections twenty-three (23), twenty-five (25), twenty-six (26), and the East half (1/2) of Section twenty-seven (27), and the North half (1/2) of Section thirty-four (34), in Township fourteen (14) South, Range two (2) East, S. B. M., be restored to the public domain.   About one-half of the lands we so recommend to be restored are worthless mountain lands; the others have some value as grazing and agricultural lands but we have retained sufficient lands for the reasonable needs, not only of the Indians now there, numbering about one hundred and fifty, but also of fully one hundred more.

The lands we recommend to be thrown out include the lands upon which are the claims of Captain Arthur F. Head, Jacob P. Keener and Robert Alford.

## SAN FELIPE RANCH.

This lies to the East of Warner's Ranch, near the desert, in Township twelve (12) and thirteen (13) South, Ranges four (4) and five (5) East, S. B. M.   Formally, there were two quite large Rancherias within the grant, and it has been claimed by the owners

21.

EXHIBIT 3
- 94 -

and tacitly admitted by the friends of the Indians, and various officials in charge of them, that they came on to the grant subsequent to the time it was made.   Acting on this assumption, the owners ejected the Indians from one of these Rancherias some years since, and demolished their houses.

Those in the other Rancheria have held on to their homes, and in part to the lands they have been using, and there are now on the Grant about one dozen houses and seventy Indians.   They are attached to their homes, and for the present utterly refuse to consider the question of removal to some other place.

The Commission had testimony which led it to believe, that these Indians were on the land long before the grant was made, and that, had the owners of the grant resorted to the courts for a writ of ejectment, the Indians would not have been removed.

We therefore can only report the situation, and ask that if an attempt is made to eject them, Mr. Lewis, United States Counsel for the Mission Indians, be instructed to protect their rights; and, in case of failure, to maintain their rights in the courts, they be given a home at Capitan Grande, Agua Caliente, or Morongo, where, in view of such contingencies, we have set apart a surplus of lands above the needs of those now living on these proposed Reservations.

EXHIBIT 3

- 95 -

The lands now occupied by these Indians are insufficient for their use, but serve to furnish them gardens and orchards, while the men earn the chief support for their families elsewhere.

## TULE RIVER.

The Tule River Reservation, as the Commission found it, embraces about forty-three thousand acres, of which not more than two hundred are tillable.    There are on it nearly two hundred Indians, who have some three hundred head of cattle, one hundred and fifty head of horses and mules, and a few sheep and hogs. The range for stock would support from four thousand to five thousand head.

The government farmer in charge of these Indians, an intelligent and capable man, says he can take care of some sixty or seventy more Indians.    There are on the ranch of General Beale in Kern County, about sixty miles from this Reservation, some eighty Indians living in a Canon containing four hundred acres of land.    These Indians paid General Beale a nominal rent for this land, and are needed as laborers on the ranch.    They have lived here since 1876, and have been paying a rent since 1880.

General Beale says that, so long as he or his son, Truxton Beale, has this property, the Indians shall never be disturbed.

EXHIBIT 3
- 96 -

He makes provision for the old and infirm.    These Indians are anxious for homes,- for land of their own, but as we could find none in this vicinity, we only recommend that the Tule River Reservation as it stands, shall be patented to the Indians now on it, and such others, now on Beale's Ranch, as may choose to remove to it.

As you already have a description of this Reservation, we deem it unnecessary to burden our report with a repetition of it.

## SAN PASQUAL.

On the San Pasqual Mountains, in Township eleven (11) South, Range one (1) West, S. B. M., are some nine or ten families of Indians, living on public land.    These were cruelly and wrongfully driven from the San Pasqual Valley a few years since; their land there, though granted to them by the Mexican Government, having been patented by the United States, to white men.

The difficulties attending an attempt to unsettle the lands thus held, are so great the Commission hesitates to recommend an effort to restore these people to their rights; a surveyor was therefore instructed to find on what descriptions of land they are living, and it accords both with the views of the Commissioners and the wishes of the Indians, that these should be entered as

24.

EXHIBIT 3
- 97 -

Homesteads, under the special provisions of the Homestead Law for Indians.   The Township has not been officially surveyed, but the survey made for the Commission by E. L. Dorn, a careful and competent surveyor, locates them on the East half (1/2) of Section twenty-one (21), the South half (1/2) of Section fifteen (15), Section twenty-two (22), the West half (1/2) and the West half (1/2) of the east half (1/2) of Section twenty-seven (27), the East half (1/2) of the South-east quarter (1/4) annexing of Section twenty-eight (28), and the North-west quarter (1/4) of Section twenty-three (23); all in Township eleven (11) South, Range one (1) West, S. B. M.

The Commission recommends that until such time as these lands have been officially surveyed, they be held in reserve for these Indians, and then the opportunity be given for them to enter homesteads.

There is a sufficiency of arable land for their support, with very little water, but the character of the soil is such that fairly good crops of corn and other grains are made without irrigation.   These Indians seem to be fairly industrious, and, under the circumstances, hopefully progressive.

25.

EXHIBIT 3
- 98 -

## THE SANTA YNEZ INDIANS.

Within the limits of the College Grant, in Santa Barbara
County, in the Canada de la Cota, is an Indian village composed of
some fifteen familes.   These date their possession of the lands
they occupy from about 1835, they removing to this place immediate-
ly after the Secularization Act, which emancipated them from the
control of the Padres.

Grants of land were made to several Neophytes by Governor
Michel Toreno, all within the College Grant, previous to its
execution, which were excepted by its provisions.   Two of these
were within the bounds of the present village.   These grants
were duly executed, and should have been noted in the Mexican
record, but are not to be found so recorded.

There are abundant evidences of a long occupancy of this
canon, by a much larger number of Indians, and their title to
their land by adverse possession might easily be maintained, were
it not that the owners of the College Grant present a duly execu-
ted written acknowledgement on the part of the Indians that their
occupancy was not adverse.

As against this instrument, the declaration of the Indians,
that they never paid a cent, nor did they know that they had signed
such an acknowledgement of their position as tenants, there would

23.

EXHIBIT 3
- 99 -

be difficulty in maintaining their otherwise unquestionable title by adverse occupancy, whatever opinion we might have as to the worldly wisdom of the Bishop who procured this acknowledgment.

The present owners of the grant, while maintaining that the Indians had no legal rights which they will recognize, emphatically declare that they will protect and maintain, to the fullest extent their equitable rights. They declare these Indians shall never be disturbed in their occupancy and use of the lands on which they now live, if they persist in their wish to stay where they are; or they will, preferably, deed to the Secretary of the Interior, in trust for them, five acres of good land, to each family; pipe to it a sufficiency of water for agricultural and domestic purposes, and build for each family a comfortable two-room frame house.

This, in the estimation of the Commission, would be better for the Indians than the possessions they now hold, even if made secure to them by a perfect title.

The unwillingness of the Indians to leave their present homes embarrasses this proposition at present.

The Commission, having no power either to set apart the lands now occupied or to compel the Indians to accept the offer made by the Company, feel that they have discharged their duty in the prem-

27.

HERITAGE ROOM ARCHIVES
A K SMILEY LIBRARY
125 W. VINE
REDLANDS, CA 92373

EXHIBIT 3
- 100 -

ises when they recommend, as they do, that the special attorney for the Mission Indians be instructed to take immediate steps to perfect the arrangement proposed by the Company, fearing a change in its control might jeopardize the liberal offer now made.

## SAN JACINTO RESERVATION

Near to and adjoining the Town of San Jacinto, is a tract of land containing seven hundred and forty-five (745) acres within the boundaries of a confirmed grant on which is the Indian village of Saboba.   A suit was brought against these Indians a few years since, for the purpose of ejecting them from this grant. The case of the Indians was ably represented by Shirley C. Ward, at that time United States special counsel for the Mission Indians, and on an appeal from the Superior Court of the County, the Supreme Court of California, reversed the decision and affirmed the possessory right of these Indians to this land.

Immediately adjoining this tract lies the San Jacinto Reservation, as set apart by an executive order, dated June 19th, 1883. A portion of this was, by executive order, restored to the public domain, for the purpose of allowing certain Indians to homestead it, which has been done.

23.

EXHIBIT 3
- 101 -

After a careful survey of the land for the purpose of locating the holdings of the Indians living on the Reservation, and a like careful consideration of the facts, real and probable, the Commission has decided to recommend that the following described lands be set apart as a permanent reservation for these Indians:

The North-west quarter (1/4); the West half (1/2) of the South-west quarter (1/4), and the South half (1/2) of the South-east quarter (1/4) of Section twenty-eight (28); Section twenty-nine (29); the South half (1/2) of the South-east quarter (1/4) of Section twenty (20); the North half (1/2) of Section thirty-three (33); and all of Section thirty-two (32), except such lots in the South-west quarter (1/4) as belong to that portion of the grant now in possession of the Indians; all in Township four (4) South, Range one (1) East. Also Section two (2); the South half (1/2) of Section three (3); also, fractional part of the North-east quarter (1/4) of Section five (5); all in Township five (5) South, Range one (1) East, S. B. M.

It will be observed that the proposed Reservation contains Sections already granted to the Southern Pacific Railroad Company.

In accord with the provisions of the act creating this Commission, and in harmony with an agreement made with the Directors

EXHIBIT 3
- 102 -

of that Company, we recommend that the Company be allowed, subject to the approval of the Honorble Secretary of the Interior, to select an equal amount of land elsewhere in lieu of this.

We have retained Section twenty-nine (29), Township four (4) South, Range one (1) East, because some Indians have settled in a Canon, where there is a spring, on the western part of it. We include the South-east quarter of Section twenty (20) in the same Township, for the same reason, the Indians there having water and an old vineyard and orchard.

The chief settlement on this Reservation is on Section two (2), and the part of Section three (3), in Township five (5) South, Range one (1) East, S. B. M., along Indian Creek.

The water of this Creek has been partly filed upon, but the Indians have a prescriptive right to a part of it.   The surplus above the amount thus appropriated could be conducted on to Section thirty-two (32), Township four (4), Range one (1), which, with water, could be made most valuable.

There is also a stream flowing down across the western part of Section twenty-eight (28), and the western part of Section thirty-three (33), and the southern border of thirty-two (32),

30.

EXHIBIT 3
- 103 -

in township four (4) South, Range one (1) East, S. B. M. This water fails during the latter part of the summer, but it is believed that a permanent flow could be secured by development, and easily conducted into Section thirty-two (32), on which, chiefly, in the future, these Indians must depend.

The San Jacinto River, during the past spring, washed away some fifty to seventy-five acres of the land on the grant, and the prospect is that a very large share of the seven hundred and forty-five (745) acres on this grant will disappear.

These Indians, of whom there are nearly two hundred, are quite advanced, and if the government will aid them in the development of their water, as this Commission respectfully recommends it shall due, it is believed that will utilise for pasturage and cultivation the valuable part of their Reservation.

## AGUA CALIENTE.

As now established, this Reservation embraces nearly sixty-one thousand (61,000) acres of land, upon which are settled about seventy Indians.    It is such disproportions between Indians and acres that has given rise to much of the adverse criticism of California newspapers against the Reservation system.

31.

EXHIBIT 3
- 104 -

The odd sections are claimed by the railroad company, many of the even sections are dreary wastes of Colorado Desert Lands, and many others are rocky, pathless mountain lands. Nearly all of the Indians are settled on Section fourteen (14) in Township four (4) South, Range four (4) East, S. B. M. This is excellent land, and if it had an abundant permanent water supply, no better land could be found in Southern California, for a home. The hot spring is near the west line of this Section, and is used not only for bathing purposes, but the overflow is used for irrigation. The quantity of water, however, is small, and the Indians have depended largely upon water coming from Toquitch Canyon. Fifty years ago, they built a ditch to bring water from the source for their lands. This supply fails for two or three months, nearly every year, and cannot be depended upon. The Indians, too, have had much trouble with white men, who have a settlement on Section fifteen (15).

There are some Indians on Section thirty-four (34), who are on good land. They had a supply of water, coming from Andreas Cañon, but some of it has been diverted by white men, of whom the Indians bitterly complain. We have recently made an arrangement, subject to the approval of the Secretary of the Interior,

EXHIBIT 3
- 105 -

with the Bear Valley Irrigation Company, a very responsible company by which, for the right of way over the Reservation, and for the rights of these Indians to water in Andreas Cañon, they agree to provide for the Indians on Section two (2), Township five (5) South, Range four (4) East, and on Section thirty-four (34), Township four (4) South, Range four (4) East, S. B. M., sufficient water to irrigate one hundred acres upon the basis of one inch to six acres, and water for domestic use.   They also agree, for the right of way across the Reservation, and for the surplus waters in Toquitch Canyon, to furnish, on the North line of Section fourteen (14), Township four (4) South, Range four (4) east, S. B. M., sufficient water for the domestic use of all the Indians now, or that may hereafter be, upon the Reservation.   They also agree to furnish sufficient water to irrigate one hundred and sixty acres of land, upon the basis of one inch to six acres, and that when one hundred and sixty acres is under irrigation by the Indians, to furnish them sufficient water for another one hundred and sixty acres, upon the basis of one inch to six acres. This will be a permanent supply and a better supply than the Indians have ever had or could have if left to themselves. The proposition of this Company is transmitted herewith and marked Exhibit C; and we recommend its approval.

33.

EXHIBIT 3

- 106 -

There is much more arable land in this Reservation than the Indians need,, and more than they can supply with water, without which it has little value.   Dr. W. Murray and wife have a piece of land,-- nearly all the North half (1/2) of Section one (1), Township three (3) South, Range one (1) East, S. B. M.-- that we want to make part of the Morongo Reservation;   They are willing to exchange it for the East half (1/2) of Section ten (10), Township four (4) South, Range four (4) East, S. B. M., in this Reservation, and we recommend this exchange.   His proposition will be found accompanying this report and marked Exhibit D.   We most earnestly recommend this exchange, but would have the right of way across section ten (10), now in use by the water company, reserved or secured.

We recommend that the following lands be set aside as a Reservation, to be called Agua Caliente, viz: Section twelve (12), fourteen (14), twenty-two (22), twenty-four (24), twenty-six (26) and thirty-four (34), all in Township four (4) South, Range four (4) East, S. B. M.   Also, Section two (2), in Township five (5) South, Range four (4) East, S. B. M.

We also recommend that all the other lands now in this Reservation as formerly set apart by executive order (except the East half (1/2) of ten (10) which recommend be exchanged with Dr. Murra

34.

EXHIBIT 3
- 107 -

and wife) be restored to the public domain.

As we have before suggested, there is a valuable hot spring on Section fourteen (14), in Township four (4) South, Range four (4) East.   Just across the street, Dr. Murray and wife have a small hotel that is used as a health resort.   This is seven miles across the dreary desert from a small station on the Southern Pacific Railroad, called Seven Palms.   There are no people living there but the station employees; it is about twenty or twenty-five miles to Banning, the first village of any importance.   Dr. Murray and wife have had a three years lease of this spring, for which they have paid $500.   The Indians are allowed to bathe at reasonable hours.   We do not believe the Murrays have realized one-half the rent they have paid from the baths.   They desire to renew their lease at one hundred dollars a year, when it expires. Their proposition is transmitted herewith and marked Exhibit E. The whites, as well as the Indians, ought to have such benefit as may come to them from the use of these waters.   We recommend that the proposition of the Murrays be accepted, under suitable rules and regulations, that will secure to the Indians, as well as the whites, bathing facilities.

The reservation, as recommended by us, will accomodate at least one hundred Indians more than are now there.   Some of the

35.

EXHIBIT 3
- 108 -

desert Indians must, and all may be compelled to move, if the Salto Sea should rise.   In this contingency, this is the place for them and we recommend that it be set apart, not only for those on the Reservation, but for those hereafter to come.   Many of the Indian on the Reservation are ready for allot ment.   We are inclined to think, however, that the allotment ought to be delayed until the question of possible removal may have been determined.   As we have before suggested the allotments ought to respect the improve-ments and the occupancy of Indians, as now made, as far as possi-ble.

The water plan as we have arranged it, is simple; but some plan ought to be adopted at once, as it will make the future work much easier.

## LOS COYOTES.

The Reservation of Los Coyotes was set apart by Executive Order.

It consists of Section three (3) and fractional Section four (4), in Township eleven (11) South, Range four (4) East, S. B. M.; and all of township ten (10) South, Range four (4) East, S. B. M.,

36

EXHIBIT 3
- 109 -

except the following described lands: the South half (1/2) of the north-west quarter (1/4) and the South-west quarter (1/4) and the North-east quarter (1/4) and the North-east quarter (1/4) of the South-west quarter (1/4) of Section tenty (20); which has been patented to Hiram Keyes.   Also, the West half (1/2) of the South-west quarter (1/4) of Section twenty (20), and the South-east quarter (1/4) of the South-east quarter (1/4) of Section nineteen (19), and the North-east quarter (1/4) of the North-east quarter (1/4) Section thirty (30), patented to Eugene Paumenberg. Also, the North-west quarter (1/4) of South-east quarter (1/4), and the fractional South-west quarter (1/4) Section thirty (30), which is patented to one Helm.   Also, the North half (1/2) of North-east quarter (1/4), Section thirty-one (31), and the North half (1/2) of North-west quarter (1/4) Section thirty-two (32), to Jacob Jora.   Also, the East half (1/2) of the North-east quarter (1/4), and the South-west quarter (1/4) of the North-east quarter (1/4), and the North-west quarter (1/4) of the South-east quarter (1/4), Section twenty-six (26), patented to Robert Fain. Also, the East half (1/2) of South-west quarter (1/4), and the South-west quarter (1/4) of South-west quarter (1/4), and the East Section twenty -six (26), and the North-west quarter (1/4) of

37.

EXHIBIT 3
- 110 -

North-west quarter (1/4), Section thirty-five (35), patented to James Tally.    Also, the South-west quarter (1/4) of the North-west quarter (1/4) Section thirty-five (35), and the South-east quarter (1/4) of North-east quarter (1/4), and the North half (1/2) of South-east quarter (/4), Section thirty-four (34), patented to Chat Helm.   Also, parts of Sections thirty-one (31) thirty-two (32), thirty-three (33), South of the Boundaryline of the Rancho San Jose del Valle.

These entries were made before the Reservation was set apart, but long subsequent to the time when the lands were in possession of the Indians, and the injustice and cruel wrongs inflicted upon them, and the annoyances to which they are still subjected by one especially of the settlers, give good cause to the Indians for bitter complaint.   Chatham Helm was the first white settler in this Canon, and unfortunately his filings were allowed, and his claim perfected.

His house stands in the narrowest part of the Canon, and his claim separates the Indians below him at San Ysidro from their pasturage lands above, as also from the Indian village of San Ignatio, on the eastern boundary of the township.   It is impossible for the Indians of San Ysidro to get their stock on to their

3S.

EXHIBIT 3

- 111 -

pastures without passing through a gate placed within a few feet of Helm's house, and kept closed.    This he will not suffer them to do.    He has been a great annoyance to the Indians, also, in regard to their use of water.    The survey the Commission caused to be made discovered the fact that he was claiming a forty acre piece belonging to the Indians, recovering which they are enabled to put the entrance to their ditch some distance further up, giving them some relief in the matter of irrigation.

The Commission believes that if the claims of Helm and Tally could be extinguished by purchase or otherwise, it would be a great advantage to these Indians, removing an obstacle to the best use of their land, and a serious obstacle in the way of their progress. To do this would require about ~~four~~ two thousand ~~five hundred dollars~~, five hundred for Helm's place, and two thousand for Tally's.

There are in all about one hundred and fifty Indians in the two villages, which are five or six miles apart.    They have sufficient good arable land for their agricultural needs which, with their grazing lands, if made accessible, would give them ample support.

There is no school at either village, and few of the children go from home to school.

39.

EXHIBIT 3
- 112 -

The Commission recommends the setting apart, permanently, for them the above described lands, and deems the extinguishment of Helm's and Tally's claim as of great importance to the Indians. The holdings of the other settlers do not block up the canon as do those of these two men, more especially that of Helm.

If, for any reason, it is not deemed advisable to buy out these men, the Commissioners ask that Mr. Lewis be instructed to abate the nuisance Helm maintains by keeping his bees as a guard against free passage along the road, and as an obstacle to the free use, by the Indians, of their land.

## TORROS.

On Section two (2), Township seven (7) South, Range seven (7) East, S. B. M. is the Torros Reservation, containing one section of very good land, with water to irrigate during most of the year thirty or forty acres, and which it is believed could be so far developed as to suffice for a much larger acreage.   There is here a thrifty Indian village of seventy persons.   They have fifty head of stock.

From this point to Section eight (8), in Township nine (9) South, Range nine (9) East, specifically on Sections nine (9),

40.

EXHIBIT 3
- 113 -

fifteen (15) and thirty-five (35) in Township seven (7) South, Range eight (8), and on Sections nineteen (19) and thirty-two (32) in Township eight (8) South, Range nine (9) East, there are in all including those at Torros, two hundred and seventy-nine Indians. On Sections nine (9) and fifteen (15), Township seven (7) South, Range eight (8) East, are the two villages of Matinas, containing one hundred and twenty-five Indians. They have some water, plenty of mesquite which furnishes food and fuel, and grazing for some stock. On Section thirty-five (35), in the same Township, is Captain Bill's camp of fifty-three Indians; the camp is called Alamo Bonita. There is some good land, but the water is little is quantity and of a very poor quality. On Section twelve (12), Township eight (8) South, Range eight (8) East, is fine salt grass and good pasturage; on Sections eighteen (18), nineteen (19) and thirty-two (32), Township eight (8) South, Range nine (9) East, are very fine springs of good water, and on the last named section a fine old fig orchard of seventy-five trees. Here are raised fine melons, squash, corn, etc., etc., and the Indians belong here, numbering thirty-one, have stock, and opportunity to raise large herds. On Section eight (8), Township nine (9) South, Range Nine (9) East, S. B. M., are springs and good grazing.

41.

HERITAGE ROOM ARCHIVES
K SMILEY LIBRARY
125 W. VINE
REDLANDS, CA 92373

EXHIBIT 3
- 114 -

If the Salton Lake does not resume its old bed in this desert, these Indians can have, if the recommendations of the Commission be approved, a home which few white men will covet, but which the Indians claim and desire, and on which they can maintain themselves in comfort.   There are, in these various desert villages, about seventy children of school age, who are receiving no attention from the government,   these Indians never, in fact, having been visited by any official of the Indian Bureau, prior to our visit, as it is claimed by them.

The Commission recommends that the Reservation of Torros be as follows:

Sections two (2) and twelve (12) in Township seven (7) South, Range seven (7) East, S. B. M.; Sections seven (7), eight (8), nine (9), ten (10), fourteen (14), fifteen (15), twenty-two (22), twenty-three (23), twenty-four (24), twenty-five (25), twenty-six (26), thirty-five (35) and thirty-six (36), in Township seven (7) South, Range eight (8) East, S. B. M.; Sections one (1), two (2), and twelve (12), in Township eight (8) South, Range eight (8) East, S. B. M.; Sections six (6), seven (7), eight (8), eighteen (18), nineteen (19), twenty (20), West half (1/2) of twenty-eight (28), twenty-nine (29), thirty (30), East half (1/2) of thirty-one (31),

42.

EXHIBIT 3
- 115 -

and Section thirty-two (32), Township eight (8) South, Range nine
(9), East, S. B. M.; also, the West half (1/2) of Section four (4)
Section five (5), East half (1/2) of Section six (6), and Sections
seven (7) and eight (8), West half (1/2) of Section nine (9),
Township nine (9) South, Range nine (9) East, S. B. M.

The land embraced in this description extents along the frin-
ges of the desert and the foot hills which border it on the South-
west.    It is desert land, with Mesquite, and more or less of
salt grass, and at the points indicated good springs, and it would
be protected by mountains on one side and desert on the other,
from the instrusion of whites.

The odd Sections belong to the Southern Pacific Railroad
Company, which has expressed its willingness to choose, subject to
the approval of the Honorable Secretary of the Interior, other
sections South of Banning in lieu of these.

Section thirty-six (36) Township seven (7) South, Range eight
(8), East, belongs to the State.    It has little value, but is
necessary to the Reservation.    The State should be allowed to
select lieu land therefor.

The Commission has bourne in mind the fact that if the Salton
Lake does rise over this desert, much of this land will be two

43.

EXHIBIT 3
- 116 -

hundred feet under water, and so have made provision at Morongo
and Agua Caliente, for this contingency.

## PAUMA.

On what is now called the Pauma Ranch there is one rancheria
occupied by one Indian family, one occupied by two Indian families
and one occupied by about twelve Indian families, numbering in all,
about eighty Indians.   These Rancherias have been occupied by
Indians since before the treaty Guadalupe Hidalgo.   The extent of
the occupancy is disputed.   The original grant excepted these
holdings, according to the translation found in the records and
accepted by the present owner, Bishop Francis Mora of Los Angeles.
The excepted lands were those occupied by Indians when the grant
was made.   To determine his legal rights, and to get the Indians
off lands occupied by them, Bishop Mora had commenced suits
against them, in which suits Mr. Lewis, as Special Assistant
United States Attorney for Mission Indians, appeared as their
attorney.   While we think the suits must fail in part, it is prob-
able the Indians are now occupying more lands than can be shown
to have been in the possession of Mission Indians at the time of
the making of the Grant.

9

44.

EXHIBIT 3
- 117 -

Acting under the act creating this Commission, requiring us to define the boundaries of lands held by the Indians within a confirmed private grant, we have caused these holdings to be surveyed.   We also entered into negotiations with Bishop Mora, and it is agreed between us, that the occupancy of the lands within said grant, by the Indians, is of two hundred and fifty (250) acres, a detailed description of which is contained in a contract which is also a quit-claim deed made between the said Bishop Mora and your Commissioners, herewith transmitted and marked Exhibit F.

Bishop Mora by this instrument grants to the United States an interest in certain lands during the life of Francisco Maja and his wife, also water rights for all of said Indians.

For the details of the agreement see contract made between the Bishop and your Commissioners transmitted herewith.   As it seems to be agreed, that while the possessory rights to these excepted lands are in the Indians, the fee is in the United States.

We recommend that the lands described in said contract, be set aside as a reservation to be called Pauma; and it is particularly described as follows, to-wit:-

Beginning at a point from which corner number two of the official survey of the Pauma Rancho bears North sixty-three degrees and thirty minutes East (63o 30'), and one hundred eighty-three

45.

EXHIBIT 3
- 118 -

and fifty-nine one-hundredths (189-59/100) chains distant; thence South one degree (1°) East, thirty-one and forty-two one-hundredths (31-42/100) chains to Station two (2); thence North seventy degrees (70°) East, twenty-nine and thirty-five one-hundredths (29-35/100) chains to Station three (3); thence North eighty-six degrees and thirty minutes (86° 30') East, twenty-seven and forty-two one-hundredths (27-42/100) chains to Station four (4); thence North forty-eight and one-half degrees (48-1/2°) East, seven and fifty-six one-hundredths (7-56/100) chains to Station five (5); thence North sixty-nine degrees (69°) East, fifteen and twenty-three one-hundredths (15-23/100) chains to Station six (6); thence North forty-five and one-half degrees (45-1/2°) West, fifty-three and twenty-eight one-hundredths (53-28/100) chains to Station seven (7); thence South forty degrees (40°) West, thirty-four and eighty-five one-hundredths (34-85/100) chains to Station eight (8); thence South eighty-five degrees (85°) West, fifteen and ninety-seven hundredths (15-97/100) chains to the point of beginning; containing two hundred and twenty-five (225) acres.

Beginning at a point from which the corner to Section twenty-two (22), twenty-three (23), twenty-six (26) and twenty-seven (27), of Township ten (10) South, Range No. one (1) West, of the San

46.

EXHIBIT 3
- 119 -

Bernardino Meridian, bears South fifty-one degrees (51°) West, and one hundred and seventy-two (172) chains distant from station No. one (1); thence South forty-five degrees (45°) West, twelve and one-half (12-1/2) chains to Station two (2); thence South forty-five degrees (45°) East, ten (10) chains to Station three (3); thence North forty-five degrees (45°) East, twelve and one-half (12-1/2) chains to Station four (4); thence North forty-five degrees (45°) West, ten (10) chains to the place of beginning; containing twelve and one-half (12-1/2) acres.

Beginning at a point from which Station No. one (1) of the survey last above mentioned bears North eleven degrees and thirty minutes (11° 30') West, thirty-one and forty-one one-hundredths (31-41/100) chains distant; thence West ten (10) chains to Station two (2); thence South forty-five degrees (45°) West, seventeen and fifty-six one-hundredths (17-56/100) chains to Station three (3); thence East ten (10) chains to Station four (4); thence North forty-five degrees (45°) East, seventeen and fifty-six one-hundredths (17-56/100) chains to the point of beginning; containing twelve and one-half (12-1/2) acres of land.

All in the County of San Diego.

The Indians on these lands are bright, capable men, ready for individual allotment, which we recommend be made at once.

47.

EXHIBIT 3
- 120 -

The land is all arable, and either has been or can be, put under water.

## AUGUSTINE.

On Section nineteen (19), of Township six (6) South, Range eight (8) East, S. B. M., is the camp of Augustine, where live in bush and tule houses thirty-eight Indians.   The Rancheria is on the East half (1/2) of the Section.   The land is worthless, with no timber, and very poor water, obtained by digging a well some ten feet deep.

The Indians are unwilling to remove, as they have some work at the railroad Station.   This is a Railroad Section.   The Commission have decided to recommend that the adjoining section eighteen (18), be set apart for this camp to which they can go if they are ever called upon to vacate the one they are on, it being much better land.

## SANTA ROSA.

There are fifty-nine Indians living in a Rancheria of about twelve houses, on unsurveyed, and practically unsurveyable land,

48.

EXHIBIT 3
- 121 -

in San Diego County, under Santa Rosa Mountain.   They have water with but little land to irrigate; there is some pine timber, but no way of getting it to market.   They have grazing for a few cattle, and are able to raise some corn and potatoes.   The member of the Commission who visited them had a ride over a hard trail o. some thirty miles in from, and back into, the Hemet Valley. He had occasion to know that they live fairly well, and seemed to be satisfied with themselves and their location and are at presen unwilling to leave this isolated and almost barren Canon for anoth er place.   About three to four miles in an easterly direction, near the desert, there are two other families living about a mile apart; at the most westerly of these places lives Manuel Tonte, who has a small spring, and a reservoir, from which he irrigates a little land on which he has a vineyard and some grain.   Easterly from here, distant nearly one mile, Nicholas Winche, who has eight children, two of them grown, lives.   He has a little water, and a few acres of arable land.   Both of these wish to have these lands set apart to them, as do also the Indians at the principal Rancheria, under Captain Ponce Leon.

As a health resort, provided no food was required, this would seem to be an ideal place; and devoted lovers of magnificent scene-

49.

EXHIBIT 3
- 122 -

ry could here gratify their tastes, but for those who seek oppor-
tunities to build homes the prospect will not be encouraging.
There were gathered here at the time of the Commissioner's visit,
a large number of Indians who sought a safe retreat from the
waters rising on the desert below and as refuge from such dangers
the place has much to commend it.

It is the opinion of the Commissioners that these Indians
should be induced to remove to some one of the reservations on
which they recommend that a surplus of land be retained for those
who, like these, can never make a support where they are; and it
is the opinion of the "Father" who ministers to them spiritually,
that he can persuade them to remove to Capitan Grande, when as-
sured that they can have a home there, and access to school for
their twenty to twenty-five children.

As this land has never been surveyed, this location can not
be described with absolute certainty, and as it would cost many
times what the country is worth to survey it, it will probably not
be done, and since the pine of these unsurveyed mountains will
always be worth more in their relation to climate than as lumber,
it is respectfully suggested that the unsurveyed townships lying
between the Coahuilla Valley and the Colorado desert remain as they
are for the protection of the pine, and that a reservation for

50.

EXHIBIT 3
- 123 -

these Indians be set apart according to a description which will be added as supplementary to this report, which has not as yet been received from the surveyor send to mark it out by metes and bounds, according to instructions given him by the Commission."

## MORONGO.

The Reservation near Banning, called Morongo, has given this Commission much trouble.

The Reservation, as now constituted, embraces considerable worthless mountain land, and also much worthless wash and desert land.    It also has in its borders now, more agricultural land suitable for dry farming, such as growing barley, than is needed by the Indians.    Indeed, because the Indians neither occupied nor worked some of these agricultural lands, the Indian Agent has thought it wise to lease a portion thereof, the proceeds have been devoted by him, as we understand it, for the benefit of the Indians.

The Southern Pacific Railroad runs through this Reservation. Its officers claim that by virtue of law it is entitled to the odd sections of land within this Reservation.        There are about one hundred Indians on the Reservation.    Nearly all at their

51.

EXHIBIT 3
-124-

village called Potrero.  This is at the mouth of a canon about five miles long and of considerable breadth.  There is a nice stream of water flowing from two cienegas, one of which is a little ways up the canon, and the other at nearly its head. If all the land of and near this canon, and the small one adjacent called Hatheway's canon, could be secured to the Indians, it would make as desirable location for them as their most earnest friend could wish.

Unfortunately for the Indians, white have seen how valuable the land, with the water, is, and have settled upon some of the railroad lands in the canon, and have filed on the water,. W. S. Hatheway settled on what, by private survey, is determined to be Section twenty-seven (27) in Township two (2) South, Range one (1) East, S. B. M., and developed considerable water on that section and in the canon farther up.  He was ejected from these lands after he had spent about, as he claims, fifteen hundred dollars.  He also insists that his ejectment was unlawful, as he was on railroad lands, and that he has a claim against the government.  C. F. Jost, and Margaret Jost, his wife, settled on Sectio twenty-five (25) some years ago, and made very valuable improvements, having good buildings, a good orchard, and having developed

52.

EXHIBIT 3
- 125 -

by means of ditches, a large supply of water.    They were also ejected, they claim, unlawfully, and bring a larger claim against the government for damages.    The land occupied by them is right in the heart of what we think ought to be Indian reservation, and is especially valuable because of the water that can be developed upon it.    Richard Gird and John G. North, appreciating the great value of the water in Hatheway's canon and the canon above the Potrero, procured an interest some years ago on Sections fifteen (15) and twenty-three (23), which are toward the upper end of the canon, upon which there are valuable cienegas and which were railroad lands.    They also obtained rights to surplus water from Hatheway and from the Josts.    They also took steps which resulted in their getting title to East half (1/2) Section thirty-six,  (36), they claiming it was a school section to which they could get title. Nearly all of the houses, irrigating ditches and very considerable vineyards and orchards of the Indians are on this section. To lose Section thirty-six (36) would be an irreparable loss to this village.    Gird and North also built irrigating ditches in the upper end of the canon, established a field of alfalfa, and put out an orchard, and spent considerable sums of money. They, too, were evicted; claiming their eviction was unlawfully, and their losses great, they have commenced suit to recover damages

53.

EXHIBIT 3
- 126 -

and also to determine their right to the water and the lands.

We fear, if the claims of these various parties are pressed to a

hearing in the various courts, the result will be very _disastrous_

to the Indians as affecting their rights to both water and land.

We, then, were confronted by all these conflicting interests which

left the Indians and the whites in that neighborhood all in a

state of great uncertainty.    To state the situation briefly, we

found the Indians the acknowledged holders of lands they did not

want or work, and the whites insisted upon rights to lands that are

absolutely essential to the Indians, if a reservation is to be

established there.    The problem was, how, by means of the lands

not wanted to obtain the title to lands that were wanted, freed

from all claims, and at the same time relieve the government of

threatened and actual litigation by the evicted parties.  ..

Believing that we could make such an arrangement, but having some

doubt of our authority, we, on the 16th of March, asked for instruc-

tions.    Upon the receipt of your telegram and letter of instruc-

tions of April 1, 1891, "to go ahead" we have spent much time and

anxiety to bring about a settlement of all these conflicting

interests.    The result is, that we have a written offer from C.

O. Barker who holds a power of attorney from W. S. Hatheway, C.

54.

EXHIBIT 3
- 127 -

F. Jost and Margaret Jost, Richard Gird and John G. North, authorizing him so to do, of a release of their several interests, and an exchange of their lands on the following basis:

The said Hathoway to relinquish all his claim to lands in Township two (2) South, Range one (1) East, and in Township two (2) South, Range two (2) East, S. B. M., and all water rights of every kind, and all claims for damages by reason of eviction or otherwise; said Hathoway to receive a patent therefor to the North half (1/2) of Section fourteen (14) in Township three (3) South, Range one (1) East, S. B. M.

Said C. F. Jost and Margaret Jost offer to exchange all their interest in and to lands and water rights of every sort and nature in Townships two (2) South, Range one (1) and two (2) East, S. B. M., and all claims for damages, because of eviction or otherwise, the said Jost and Jost to receive in exchange therefor a patent to the West half (1/2) Section six (6), Township three (3) South, Range one (1) East, S. B. M.

Said Richard Gird and John G. North offer to relinquish all their right in and to Sections one (1), two (2), three (3), ten (10), eleven (11), twelve (12), thirteen (13), fourteen (14), fifteen (15), twenty-two (22), twenty-three (23), twenty-four (24), twenty-five (25), twenty-six (26), twenty-seven (27), thirty-four

55.

EXHIBIT 3
- 128 -

(34), thirty-five (35), and thirty-six (36), in Township two (2) South, Range one (1) East, S. B. M.; and Sections six (6), seven (7), eighteen (18), nineteen (19), thirty (30) and thirty-one (31) in Township two (2) South, Range two (2) East, S. B. M.; and to any and all damages growing out of eviction or otherwise.   Said Gird and North to receive in exchange  therefor patents to and for the South half (1/2) Section eight (8), Northwest quarter (1/4) Section eight (8), East half (1/2) of Northeast quarter (1/4) of Section eight (8), the Northeast quarter (1/4) Section ten (10), the South-east quarter (1/4) of the Northwest quarter (1/4) Section ten (10), East half (1/2) of the Southeast quarter (1/4) Section ten (10), the Northwest quarter (1/4) of the Southeast quarter (1/4) Section ten (10), Section eighteen (18), and the North half (1/2) Section twenty (20); all in Township three (3) South, Range one (1) East, S. B. M.;  as will appear more in detail in a written proposition signed the said Barker, and acknowledged November 11, 1891, trans-mitted herewith and marked Exhibit L.   Said proposition will hold good only until the first day of January, 1892.

 We also, at an early date, opened negotiations with the of-ficers of the Southern Pacific Railway Company, with a view of af-fecting an exchange with them.   The outlook at first was very for-

56.

EXHIBIT 3
- 129 -

bidding, and legal difficulties presented themselves to the offi-
cers of the Railroad Company.   We were obliged to make several
visits to San Francisco in the course of the negotiations.
We finally have a proposition from them to release their right
in and to the following lands, viz:

Section thirteen (13), East half (1/2) of Section fifteen
(15), Sections twenty-three (23) and twenty-five (25), East half
(1/2) of Section twenty-seven (27), and Section thirty-five (35);
all in Township two (2) South, Range one (1) East, S. B. M.
Also, all of Section thirty-one (31) in Township two (2) South,
Range two (2) East, S. B. M.; they to receive in exchange therefor
patents to the following lands:

All of Section eighteen (18) except North-west quarter (1/4)
of North-west quarter (1/4); Sections twenty (20) and thirty-two
(32) in Township two (2) South, Range one (1) East, S. B. M.;
South-east quarter (1/4) Section twenty (20), Section thirty-two
(32) in township two (2) South, Range two (2) East, S. B. M.
Also, North-east quarter (1/4) and South-half (1/2) of South-west
quarter (1/4) of Section four (4); the North-west quarter (1/4)
of South-east quarter (1/4) nfxResktnn and South half (1/2) of
South-east quarter (1/4) of Section six (6); in Township three (3)
South, Range one (1) East, S. B. M.   South-west quarter (1/4)

57.

EXHIBIT 3
- 130 -

Section eighteen (18), Northwest quarter (1/4) Section twenty (20) Northwest quarter (1/4) Section twenty-two (22), South half (1/2) Section twenty-eight (28),; in Township three (3) South, Range two (2), East, S. B. M.   A copy of the said agreement is transmitted herewith, marked Exhibit G.

Wellwood Murray and Eliza E. Murray are the owners of the North half (1/2) of Section one (1/2), Township three (3) South, Range one (1) East, S. B. M. (less ten acres near the North-west corner thereof, which is owned by Mrs. Toutain.)   This land is needed in the proposed reservation; it is near the present Indian village, and could readily be placed under water.   The Murrays are willing to exchange it for the East half (1/2) of Section ten (10) in Township four (4) South, Range four (4) East, S. B. M. (Agua Caliente), as will be seen by their proposition transmitted herewith marked Exhibit H.   The land on Section ten (10) is not needed.   The Murrays supposed they had made an arrangement with Mrs. Toutain, by which she would deed to them her ten acres, so that they could offer to exchange half Section for half Section; but as she,  though consenting orally, has declined to sign any papers, they propose to pay over one hundred dollars to the Indian Department, to enable it to obtain Mrs. Toutain's

58.

EXHIBIT 3
- 131 -

claim to the ten acres, which she will probably be glad to sell, when she finds that the reservation will be established any way. She will have no water, and no way of getting any, on her ten acres.   She is a woman who has given the Indians and the Indian Agent much trouble; but we think it exceedingly desirable that the exchange be made with the Murrays.

The right of way for the irrigating ditch on Section ten (10) Township four (4) South, Range four (4) East, S. B. M., should be reserved in the patent.

As will be observed, to bring about these various exchanges requires a larger area of land surrendered than we get for the Indians in return; but, in making the exchange, we avoid the delays and hazards of litigation.   We secure the release of large claims for damages growing out of unlawful evictions, and secure to the reservation exceedingly valuable water rights.   This Commission, if it was dealing with reference to property owned by its members as individuals, would not hesitate for a moment in making these exchanges, and we urge that the exchanges be made as herein in-dicated, and that they be made at once; for it will be observed that Mr. Barker's proposition holds good only until January 1st, 1892, and we have reason to think that some of the parties who have given him a power of attorney would not be sorry if the settlement,

59.

EXHIBIT 3
- 132 -

on the basis herein named, was not affected.

6² The Bear Valley Irrigation Company is constructing a pipe line
to carry water across the Reservation.

They do not obtain any water upon the Reservation, or effect
its sources of supply.   To look after this line, it will be neces-
sary for them to construct a wagon road the whole length of the
Canon.   This will be an advantage to the Indians, as they can
use it as a wood road, and to get to their lands in the upper part
of the Canon.   Their proposition, embracing both this and the
Agua Caliente Reservation, is sent herewith.

We recommend its acceptance, except as to their proposition
for power stations, and if those are granted, it should be but for
two, one on the East line and one near the west line of the Reser-
vation, on worthless lands, and with rigid restrictions as to who
should be permitted to stay at those stations.

This is the place of all others where an intelligent system
of irrigation ought to be planed and adopted.   If rightly managed,
an abundant supply of the best of water can be had the year round.
We understand from Agent Rust, that he has to the credit of these
Indians upwards of three thousand dollars, the proceeds of the use
of land not needed by the Indians that might be made available
for this purpose.   We urge that a plan be proposed early; it will

60.

EXHIBIT 3
- 133 -

help in the matter of allotments, which ought to be made soon.

We most earnestly urge upon the Department that a competent water engineer familiar with the methods of irrigation in California, be employed at an early date to plan a system of irrigation for this Reservation.   This Reservation is destined to be the best in California.   The land lies well for irrigation.   Take the Reservation as a whole, and there is equal difference in the altitude of the arable and irrigable land.   The upper Cienegas can be used for the higher lands, while the lower lands can be placed under water from the lower souce of supply.   The cost of making a plan would not be large and the work can be done by the Indians.

As will be observed by a communication transmitted herewith and marked Exhibit K, from the Board of Church Extention of the American Moravian Church, that society has erected on five acres of land on the Reservation, a church building and parsonage, and the pastor of the church has put out a considerable orchard and vineyard; the improvements made have cost about thirteen hundred dollars.   So far as we can observe, the work of the church, the missionary and his family among the Indians is educational and wholesome, and we recommend that the request made by the society,

61.

EXHIBIT 3
- 134 -

through Bishop Bochman, be granted and they be given the use, for the purposes mentioned, of the following lands, viz:

Beginning at the South-west corner of the North-east quarter (1/4) of Section thirty-six (36); thence North forty (40) rods; thence East twenty (20) rods; thence South forty (40);rods; thence West twenty (20) rods to the place of beginning; all in Township two (2) South, Range one (1) East, S. B. M., with the necessary supply of water for domestic and irrigation purposes.

We therefore recommend that the following described lands be set aside for the use of the Mission Indians now on the lands and for those to be hereafter placed thereon, which we estimate at about two hundred altogether.   Said Reservation should be called Morongo, viz:

Sections ten (10), twelve (12), thirteen (13), fourteen (14), East half (1/2) of Sections fifteen (15), twenty-two (22), Sections Twenty-three (23), twenty-four (24), twenty-five (25), twenty-six (26), East half (1/2) Section twenty-seven (27), North-west quarter (1/4) and East half (1/2) Section thirty-four (34), Sections thirty-five (35) and thirty-six (36), all in Township two (2) South, Range one (1) East, S. B. M.; also, the north half (1/2) of Section one (1) except ten (10) acres in the North-west corner thereof, and the North half (1/2) of Section two (2), all in Township three

2

62.

EXHIBIT 3
- 135 -

(3) South, Range one (1) East, S. B. M.; also, Sections eighteen (18), Thirty (30) and thirty-one (31) in Township two (2) South, Range two (2) East, S. B. M.; also, Section six (6) in Township three (3) South, Range two (2) East, S. B. M.

We also recommend that all the lands not herein mentioned as retained for a reservation or for the purposes of making the exchanges herein indicated, which are in the reservation as now established called Morongo, be restored to the public domain.

63.

EXHIBIT 3
- 136 -

This is an exceedingly valuable property.   There is a good school here,-- a church also is supported,   The Indians have good houses and many improvements.   They are ready in many cases for individuals allotments.   The longer the allotment is delayed the more complicated the situation will become on account of the improvements that will be made by progressive Indians who will not want to surrender any of their holdings.

## SANTA YSABEL.

We recommend that a reservation be established called Santa Ysabel embracing the following lands, viz:

The South half (1/2) of Section twenty-one (21), Sections twenty-five (25), twenty-six (26) and twenty-seven (27), and the East half (1/2) and the North-west quarter (1/4), of Section twenty-eight (28), all in Township eleven (11) South, Range two (2) East, S. B. M.; also Sections twenty-seven (27), twenty-eight (28), thirty-four (34), and thirty-five (35), and fractional Sections twenty-five (25), twenty-six (26), twenty-nine (29), thirty (30), thirty-two (32) and thirty-three (33) in Township eleven (11) South, Range three (3) East, S. B. M.; also Sections one (1), two (2) and twelve (12) and fractional Sections three (3), four (4),

84.

EXHIBIT 3
- 137 -

ten (10), eleven (11), thirteen (13) and fourteen (14), all in Township twelve (12) South, Range three (3) East, S. B. M.; also Sections ten (10), fourteen (14) and fifteen (15), fractional Section thirteen (13), and the West half, the West half (1/2) of the North-east quarter (1/4), the South-west quarter (1/4) of the North-east quarter (1/4), and the South-west quarter (1/4) of the South-east quarter (1/4) of Section three (3), all in Township twelve (12) South, Range two (2) East, S. B. M.

There is much worthless mountain land on this Reservation, but the line can not be run over these mountains without great expense.   These Indians have some cattle, and a considerable part of thier industry is grazing.   They have an abundant supply of water and of arable land, not only for their own needs, but also for perhaps fifty Indians more, if it shall be necessary to put them there.   We believe it will become necessary to make homes for Indians who are now scattered about in the mountains and valley without homes and also for Indians who may be dispossessed by litigation, pending or threatened, and for these reasons we recommend that this reservation be set apart not only for the Indians now on it, but also for such Mission Indians as it may be advisable to put there hereafter.

65,

EXHIBIT 3
- 138 -

We think it would be wise to have a water engineer plan a system of ditches for irrigation purposes.    The Indians could do the work.    Some of the Indians on the Santa Ysabel Ranch have already been driven off, others are threatened with litigation. This would natually be the place for them to go if they are required to get new homes.

A settler by the name of C. Paine has settled on this Reservation.  We recommend that the Agent be instructed to get him off.    *lu 3.8L 2/o~*

## MISSION.

As to the reservation now existing called Mission, we have to report that there are no Indians living on these lands, and none have lived there for some years.   We have tried to find Indians to go on there and have failed .

We, therefore, recommend that the following lands comprising this reservation be restored to the public domain, viz:

Sections twelve (12), thirteen (13) and fourteen (14) in Township two (2) South, Range three (3) East, S. B. M.

66.

EXHIBIT 3
- 139 -

## CABEZON.

Your Commissioners have to state as to the present Reservation on the desert near Indio called Village, that there are no Indians on the Reservation as now established as is shown by a careful survey, to-wit:-

On Sections nineteen (19) in Township five (5) South, Range eight (8) East, and Section twenty-four (24) in Township five (5) South, Range seven East, S. B. M.  The Indians are all on Section Thirty-two (32) in Township five (5) SOuth, Range eight (8) East, S. B. M.

The Station of the Southern Pacific Railroad Company is on Section twenty-four (24) in Township five (5) South, Range seven (7) East, S. B. M.

There are about sixty Indians on Section thrity-two (32) in Township five (5) South, Range eight (8) East and they have a number of houses; there is a good deal of mesquite on Section thirty-two (32) and also on Section thirty (30) in Township five (5) South, Range eight (8) East, S. B. M., and we recommend that a reservation be established containing the following lands:

67.

EXHIBIT 3

- 140 -

Sections thirty (30) and thirty-two (32) in Township five (5 South, Range eight (8) East, S. B. M.; and that the same be ca'le Cabezon.

There are no Indians whatever at Section six (6) in Township seven (7) South, Range nine (9) East, S. B. M., known as Cabezon, and the land is not available for any settlement by them.

The station of the Southern Pacific Railroad Company, known as Walters, is on this section. The land is of no use except fo the purpose for which it is now used. We therefore recommend that Section twenty-four (24) in Township five (5) South, Range seven (7) East, and Section nineteen (19) in Township five (5) South, Range eight (8) East, and Section six (6) in Township seven (7) South, Range nine (9) East, S. B..M., be restored to the publi domain.

In addition to the reservations which have been set apart for these Indians, and the parcels of land within the boundaries of confirmed grants, the Indians' right to which the Commissioners have asserted, and attempted to locate and defind; quite a number of Indians have been advised to take homesteads under the provisions of the Fourth Section of the Allotment Act.

68.

EXHIBIT 3
- 141 -

In a number of cases in order to locate them we caused surveys to be made and Mr. Lewis, Special Counsel for the Indians has promised to take the proper steps to secure the lands they desire in this manner.   We deemed this much better than to multiply the number of reservations.

The lands selected by this Commission will not exceed in area the amount prescribed by the Act of Congress creating this Commission.   The aggregate of the lands retained is much smaller than in the reservations as now established.   We have proceeded on the theory that the Southern Pacific Company would soon be, if not already, entitled to the odd sections within the railroad limit.   This would reduce the acreage very largely.   We also have thrown out worthless desert and mountain lands thinking it unwise to give the Indians the appearance of holding a disproportionate quantity of lands.   We have, however, retained, sufficient lands for their reasonable needs.   With their rights permanently settled we hope the condition of the Mission Indians will materially improve.

*Rec page 73*

12

69.

HERITAGE ROOM ARCHIVES
K SMILEY LIBRARY
125 W. VINE
REDLANDS, CA 92373

EXHIBIT 3
- 142 -

## SAN LUIS REY.

Near the old San Luis Rey Mission are some forty Indians, the only ones left in the immediate vicinity of this once most flourishing mission.

They are one private land which has been patented, though there was testimony that the Indains were on it long before it was entered by the white man to whom it was patented. These Indians are needed as laborers in the immediate neighborhood. They have, during all the years this has been held by this white man, cultivated their fields, and are in comfortable homes. They utterly refuse to consider the question of removing to some other place, and, unless ejected by the Sheriff, will remain where they are, and if thus ejected they can find homes on one of the reservations set apart for those who may be evicted from their present homes.

The Commissioners find themselves unable to do more than make this provision and ask that Mr. Lewis, special attorney for the Indians be instructed to protect them in what are, at least, their equitable rights.

70.

EXHIBIT 3

- 143 -

## IANDIANS ON PRIVATE GRANTS.

Your Commissioners have caused the holdings on Warner's Ranc
at Santa Ysabel Ranch and also at Santa Felipe to be surveyed.

The Indians desire to remain where they are;  we have been
unable to arrange a settlement with the  ranch owners.

We recommend that Mr. F. D. Lewis, Special Counsel of the
Indians, be instructed to defend the rights of the Indians in
case legal steps are taken to remove them, and also to recover
the rights of those wrongfully removed from the Santa Ysabel Ranc

As to the Indians named on a list furnished us by the the
Indian Department as being near Pomona, Riverside, San Diego and
San Bernardino; we have to say that they must have been at these
villages temporarily engaged in digging ditches for the purposes
of irrigation, employed by improvement companies..

There are but few of them at these place now and we have mad
provision for the Indians mentioned in said list, on the reserva-
tion herein recommended by us, to which reservations they belong.

71.

EXHIBIT 3

- 144 -

The Commissioners desire to gratefully acknowledge the uniform courtesy shown, the facilities offered, and the services rendered them in the prosecution of their work, by the Register of the United States Land Land Office, Col. Seamans, and his subordinates at Los Angeles; and to bear testimony to the faithfulne with which E. L. Dorn, the surveyor, who has down most of the work required, has discharged his duties.   He has been a safe repository of such knowledge as he has gained, and a confidential and wise adviser in the prosecution of our work.   The same may b said of R. N. Vail, who surveyed the San Jacinto and Coohuilla Reservations.

We desire also to speak of the courtesy of Indian Agent Rust and the late physician Dr. Ferreber in giving us such information as they could; also of the efficient service rendered to us by the Special Counsel of the Mission Indians, Mr. Frank D. Lewis. He has rendered us very substantial aid.   He is a friend of the Indians and has their confidence.   We have seen much of him and regard the legal interests of the Indians safe in his hands as he possesses integrity as well as ability.

An appropriation from Congress should be obtained to remunerate him after the present appropriation has expired or before exhausted.

13                                              72

EXHIBIT 3
- 145 -

We may be pardoned in suggesting that, by reason of an industry and frugality we have done the work assigned us, and have kept within the very moderate appropriation made by Congress to do this work.

Some details are yet undone, and for that reason we do not now ask to be discharged, but the great bulk of our work is done, and as soon as the details have been worked out, we shall ask to be permanently discharged.

All of which is respectfully submitted.

*Albert K. Smiley.*

*Joseph B. Moore.*

*Charles C. Painter.*

*This report transmitted under date of DEC 7 - 1891 - Sur #24477-1891 - For exp. to Secy sec WB-287-369.*

EXHIBIT 3

- 146 -

Exhibit A.

Map of San Diego Flume Company's Flume Line through Capitan Grande

Reservation.

7 4

EXHIBIT 3
- 147 -

Copy

Exhibit B.

San Diego, Cal., November 21st, 1891

Prof. C. C. Painter,

Secretary Mission Indian Commissioners.

Dear Sir:-

In accordance with the request of your commissioners, as well as that the Secretary of the Interior may be fully advised in the matter, we have had prepared, and herewith transmit to you, a plat and tracing of the flume extending through the "El Capitan" Indian Reservation, of San Diego County, California, which said map also shows the location of the principal reservoir of this Company, the point of diversion of water on the San Diego River, as well as other important data.

We also herewith transmit a copy of an agreement executed on the 16th day of January, 1888, by and between Joseph W. Preston, United States Indian Agent, and the San Diego Flume Company, by the terms of which an attempt was made, on the part of Mr. Preston, to convey to the Flume Company a right of way over, through and upon this reservation, for the consideration named in said agreement.

This agreement, as the present officials understand, was made with a view of obtaining a ratification of the same by the Secretary of the Interior, assuming that he had such power,

1.

EXHIBIT 3
- 148 -

otherwise a ratification by Act of Congress.

The officials of the Company then in charge of the matter, in

form us that the exactions made By Mr. Preston were considered

heavy and burdensome, but the necessities of this city and the

surrounding country were such that they felt justified in con-

ceding the point in order to hasten the construction of the plant.

The City's supply of water is obtained from this Company, and

during the summer months the water is conducted from the Cuyamaca

Reservoir, distant some sixty miles.   The great distance from

which it is necessary to convey this water, and during the summer

months the supply being obtained from an artificial reservoir of

limited capacity, makes it necessary to supply water to consumers

under rules and regulations with reference to taking and using the

same, and rigid with reference to wastage.

We make the foregoing observations in order that your Commis-

ion and the Secretary of the Interior may be fully advised of the

necessity to us of terms and provisions which will protect this

Company from wastage of water, as well as the necessity of having c

it taken under and in accordance with rules and regulations gov-

erning their consumers,   And in order to better acquaint you with

what we exact from others to whom we sell water, we enclose here-

EXHIBIT 3
- 149 -

with a form of contract adopted by this Company.

Section 3 of the law under which your commission was appointed provides for the granting of rights of way to corporations for the construction of flumes, ditches, etc., for the conveyance of water, over, across or through Indian Reservations "Upon condition that the Indians owning or occupying such reservation . . . shall at all times, during such ownership or occupation, be supplied with sufficient quantity of water for irrigating purposes and domestic purposes, upon such terms as such shall be prescribed in writing by the Secretary of the Interior, and upon such other terms as he may prescribe."

The Board of Directors of this Company, at a meeting just held, authorize the undersigned, as President, to express to you the willingness of this Company to comply with said provision.

We do not, however, feel that any money consideration should be exacted from the Company, and in furnishing water as required by said section, we are anxious that the contract which the Secretary may have prepared, should take into consideration our position and incorporate therein such provisions as will protect our interest as well as the wards of the nation.

We assume that this matter will be arranged by correspondence instituted between this Company, and the Interior Department, and

3.

77

HERITAGE ROOM ARCHIVES
K SMILEY LIBRARY
125 W. VINE
REDLANDS CA 92373

EXHIBIT 3
- 150 -

trust that your Hon. Commission, having discussed this matter with the Officials of this Company, and traversed the country covered by our flume property, and viewed the same, will further advise the said department in the premises.

We remain,

Very respectfully yours,

The San Diego Flume Company,

By J. W. Sefton

President.

(SEAL)

Attest:

L. F. Doolittle

Secretary.

4.

78

EXHIBIT 3
- 151 -

Exhibit C.

Redlands, Cal. Dec. 1, 1891.

Albert K. Smiley,

J. B. More, and

C. C. Painter, Esqs.;

Board of Commissioners to locate reservation for Mission
Indians of California.

Gentlemen:--   The Bear Valley Irrigation Company has made water
filings upon the Whitewater River, Mission Creek and other streams
located in Townships 1 North and 1 and 2 South, in Ranges 1, 2 and
3 East, S. B. B. & M., for the purpose of utilizing the water of
said streams, which have heretofore run to waste, on lands in
Townships 2, 3 and 4 South, Ranges 2, 3 and 4 West, S. B. M.
The waters of these streams are to be utilized by means of tunnels,
canals, ditches and reservoirs, and in taking the same to the
place of intended use it will be necessary to pass through a
portion of the Reservation set apart to the Mission Indians near
Banning, California.  Our Company desires a right of way for its
pipe lines, ditches and canals through said Indian Reservation,

1.

EXHIBIT 3
- 152 -

of a width, say from 50 to 100 feet with stations in the more
mountainous part of say 300 feet wide by 1000 feet long to erect
buildings and machinery upon, to utilize the water power of said
pipe lines, ditches and canals, and transmit the same by electric-
al wires for manufacturing and other uses at Banning, Redlands ,
Alessandro and elsewhere, as the development of the country may re
quire, with the right of way for ingress and egress thereto.

Our Company also desires to utilize the water rising ain and
flowing out of the San Jacinto Mountains to the Eastward in the
vicinity of the Aqua Caliente Indian Reservation for irrigating
lands in that vicinity and elsewhere.   We have made water filings
upon all the streams and canons in the vicinity of Aqua Caliente
subject to the vested rights of the Indians and others, and proceed
ing to develope all of the afroe mentioned water filings.

It is also probable that we shall desire to erect a telephone
line along our canal andpipe line which runs through the Indian
Reservation near Banning.   To the end that our developments of
the country may not be retarded and may not conflict with the
rights of the Indians, we make you the following proposition:

In consideration of the right of way through the Reservation
near Banning for pipe lines, ditches and canals, and right of way
for ingress and egress thereto, as hereinbefore set forth, and on

2.

EXHIBIT 3
- 153 -

or about the line delineated upon a map which we will send to you in a few days, and the right to our Company, so far as the rights of the Indians are concerned, to use the waters of the streams and canons herein before mentioned, we will construct or cause to be constructed a wagon road up the Protrero Canon for the joint use of the Company and its employees, and such of the Indians as desire to travel the same. // We will furnish or cause to be furnished to the Indians at or near the North-west corner of Section 14, in Township 4, South, Range 5 East, S. B. M. on or before February 1st, 1892, from time to time as may be required by the Indians, sufficient water irrigate one hundred and sixty acres of land in said Section 14, on a basis of one inch to six acres of land, measured at the point delivered under a 4 inch pressure, providing the same is desired by the Indians at said point to irrigate said land or a portion thereof; and whenever said Indians have under cultivation and requiring irrigation one hundred sixty acres of land, this Company will furnish from time to time as they may need the same, enough water to irrigate an additional 160 acres of land in said Section on the same basis. Said water supply to be continuous aslong as the said Indians need the same for irrigation purposes.   This Company will also furnish from that

3.

EXHIBIT 3
- 154 -

certain creek known as the Andreas Creek, at the banks thereof,
so far as the supply of water in said creek will permit, sufficie
water to irrigate 100 acres of land on a basis one inch to six
acres, to such Indians as may dsire to and actually use the same
on any portion of Section 34, S. W. 1/4 of S W 1/4 of Section 35,
Township 4 South, Range 4 East, or the N W 1/4 of the N W 1/4 of
Section 2, or the N E 1/4 of the N E 1/4 Section 3, Township 5
South, Range 5 East, S. B. M., it being understood that the water
above mentioned is not to be furnished unless the Indians settled
on said Reservation shall require the same for irrigating their

lands, and that such Indians as may be settled down said Reser-
vation shall at all times have such water as may be necessary for
domestic purposes, the same to be taken by them at their own
expense from the canals and ditches owned by this Company or by the
Palm Valley Water Company.   It being understood that the Indians
shall have a first lien upon all the sources of water supply to
which they now have any rights, for the supply of water hereby
agreed to be furnished to them.

It is also understood that our Compay and the Palm Valley
Water Company shall have a right of way across such parts and
portions of the Indian Reservation at Aqua Caliente as may be neces-

4.   8

EXHIBIT 3
- 155 -

sary to irrigate any of the lands cultivated in that vicinity by white residents who may be settled there now or may hereafter settle there.

Very respectfully yours,

BEAR VALLEY IRRIGATION COMPANY,

By Henry L. Williams,
Vice-president,

(CORPORATE SEAL)

And Fred. E. Hotchkiss,
Secretary.

EXHIBIT 3
- 156 -

(copy)

Exhibit D.

Redlands, California, Nov. 30th, 1891.

The Hon. U. S. Indian Commissioners,

Dr. Sirs:

Understanding that it is desired by you that in the forma
tion of the Reservation about to be made at Banning the north half
of section one in township three south and range one east in S. B.
meridian is required- We offer to exchange this parcel of land
(less ten acres already deed near the north-west corner) being
three hundred and ten acres- for the east half of section ten
in township four south and four east in San Bernardino meridain-
and situate near Aqua Caliente No. 2 Reservation in San Diego
County California-- and to enable the Commissioners to make this
                                                        we agree
exchange and to possibly secure the remaining ten acres to pay
the sum of one hundred dollars to the Commissioners on demand
or to the Secretary of the Interior-- for T. M. Parsons
being duly authorized--

                                Welwood Murray,

                                Eliz E. Murray.

84

EXHIBIT 3
- 157 -

*Copy*

## Exhibit E.

Commissioners Smiley, Moore and Painter.

To the Commissioners of Indians U. S. Mission Indians

Dr Sirs:

We are desirous of a renewal of the existing lease of the Agua Caliente Hot Springs – situate at Palm Springs, California on the same terms as now, excepting that the rental be one hundred dollars yearly, and that the grounds or enclosure be one acre, to be entirely for ornamental and useful purposes relating to the springs and its environments and that the lease be extended to ten years – this being essential to make the necessary improvements and to an adequate advertising of the place. The present lease expires June 5th, 1892.–

Welwood Murray

Eliza E. Murray.

85

EXHIBIT 3
- 158 -

Exhibit F.

Contract with owner of Pauma Ranch. relative to the claims of the Indians.

86

EXHIBIT 3
- 159 -

## EXHIBIT G.

COPY OF RESOLUTION adopted by the Board of Directors of the SOUTHERN PACIFIC RAILROAD COMPANY (of California), on the 17th day of November, A. D. 1891.

WHEREAS, by an Act of Congress of the United States of America, approved January 12th, 1891, entitled "An Act for the relief of the Mission Indians in the State of California," it was enacted that it should be the duty of the Commissioners appointed under the provisions of said Act, to select a reservation for each band or village of the Mission Indians residing within said State, sufficient in extent to meet their just requirements, which selections should be valid when approved by the President and Secretary of the Interior.

AND WHEREAS, in and by said Act it was further enacted that, in case any land should be selected under said Act, to which any railroad company was or should thereafter be entitled to receive a patent, such railroad company should, upon releasing all claim and title thereto, and on the approval of the President and Secretary of the Interior, be allowed to select an equal quantity

EXHIBIT 3

- 160 -

of other land of like value in lieu thereof, at such place as the
Secretary of the Interior should determine.

AND WHEREAS, the Commissioners appointed under the
provisions of said Act have, by virtue of the power and authority
thereby vested in them, selected the following described lands, to
which this Company is or will hereafter be entitled to receive a
patent, to-wit:-

All of Section Thirteen (13), the East One-half (1/2)
of Section Fifteen (15), all of Sections Twenty-three (23) and
Twenty-five (25), the East One-half (1/2) of Section Twenty-seven
(27), and all of Section Thirty-five (35) in Township Two (2) South
Range One (1) East, San Bernardino Meridian; also, all of Section
thirty-one (31) in Township Two (2) South, Range Two (2) East, San
Bernardino Meridian; said lands containing an area of three thou-
sand eight hundred and forty (3840) acres.

AND WHEREAS, this Company is willing to release all
claim and title to the said lands upon being allowed to select an
equal quantity of other land of like value in lieu of the lands
selected by the said Commissioners as aforesaid, to-wit, upon be-
ing allowed to select the following described lands, to-wit:-

All of Section Eighteen (18) (except the Northwest
One-quarter (1/4) of the North west one-quarter (1/4), and all of

2

EXHIBIT 3
- 161 -

Section Twenty- (20) and Thirty-two (32) in Township Two, (2- South, Range One (1) East, San Bernardino Meridian; also, the Southeast One-quarter (1/4) of Section Twenty (20), and all of Section Thirty two (32) in Township Two (2) South, Range Two (2) East, San Bernardino Meridian; also, the Northeast One-quarter (1/4) and the South One-half (1/2) of the Southwest One-quarter (1/4) of Section Four (4), the Northwest One-quarter (1/4) of the Southeast One-quarter (1/4), and the South One-half (1/2) of the Southeast One-quarter (1/4) of Section Six (6), in Township Three (3) South, Range One (1) East, San Bernardino Meridian; also, the Southwest One-quarter (1/4) of Section Eighteen (18), the Northwest One-quarter (1/4) of Section Twenty (20), the Northwest One-quarter (1/4) of Section Twenty-two (22), and the South One-half (1/2) of Section Twenty-eight (28), in Township Three (3) South, Range Two (2) East, San Bernardino Meridian; said lands containing an area of Three Thousand eight hundred and forty (3840) acres.

NOW, BE IT RESOLVED: That, on the approval of the President and Secretary of the Interior of such lieu selection by this Company, the President and Secretary of this Company be, and they are hereby authorized and empowered to release, on behalf of this Company, all claim, right, title and interest in and to the lands selected by the said Commissioners as aforesaid, and to make

3
89

EXHIBIT 3

- 162 -

and execute in the name and on behalf of this Company and as its act and deed, and under its corporate seal such release of said lands selected by the said Commissioners as aforesaid, in such form as may be required by the said Commissioners and by the President and Secretary of the Interior.

I, J. L. Willcutt, Secretary of the Southern Pacif Railroad Company (of California) do hereby certify that the foregoing is a full, true and correct copy of a Res olution adopted at a regular meeting of the Board of Directors of said Company held at the office of the sai Company, in the City and County of San Francisco, State of California, on Tuesday, the 17th day of November, A. D., 1891.

IN WITNESS WHEREOF, I have hereunto affixed my nam and the corporate seal of said Company, the 21st day of November, A. D. 1891.

(S E A L).          (Signed) J. L. Willcutt,

Secretary Southern Pacific

Railroad Company.

4.

EXHIBIT 3

- 163 -

*copy*

Exhibit H.

Palm Springs, San Diego Co., Cal.

Prof Chas. C. Painter

Secy U.S. Ind. Commissioners

Dear Sir:    In the matter of the projected exchange of land, and your desire that the land be clear of the ten acre incumbrance, we have to report that Mrs. M. succeeded in securing the promise of Mrs. Tutain- on our paying her $100.00, to remove from the premises, until the deed is signed, however, we can not place much credence on the promise.    To effect this (as Mrs. T. stated she would be in San B. to-morrow to see you ) we have written to Mr. Parsons to get her acknowledgment and pay her- but to make sure that she has given no mortgage on the land.    He is directed to report progress to you.

Very Respectfully Yours

Welwood Murray.

EXHIBIT 3
- 164 -



Exhibit 1.

Map showing proposed reservations for Mission Indians.

92

EXHIBIT 3
- 165 -

Exhibit K.

Bethlehem, Pa. Febr. 12, 1891.

To the Board of Commissioners on apportionment

of Indian Lands;

Dear Sirs:--

In behalf of the Society for Propagating the Gospel among the Heathen," I beg leave herwith to represent to you that said Society is carrying on school and mission work at Potraro, San Bernardino Co. Calif., on five (5) acres of land, assigned to the Society for this purpose, through the National Women's Indian Association;- that we have just completed the improvements require & that our missionary, Rev. W. H. Weinland, is now in a position to carry on the work among the Indians advantageously.   Hence we respectfully petition your body to make the grant of said five acres of land a permanent thing, by giving to our Society a deed for the same, gratuitously, if possible, or for such a reasonable price as you may deem just and fair.

Respectfully yours

H. T. Bachman Epis. Fr.
President of the S. P. G.

EXHIBIT 3
- 166 -

*Leafay*

## Exhibit L.

I, C. O. Barker, acting under and in persuance of a power of
attorney duly executed, by Walter S. Hatheway on the third day of
March 1891 do hereby agree to deliver to the United States or its
authorized representatives a full and complete relinquishment to
all the rights, title and interest of said W. S. Hatheway to any
and all land or lands lying within the townships known and des-
cribed as Townships 2 South, Ranges One and 2 East San Bernardino
Meridian and more especially to that portion locally known as the
Hatheway Canon, and I further agree to furnish to the United State
or its authorized representatives a full and complete relinquish-
ment of all the rights, title and interest in and to any and all
of the water in said Hatheway Canon and any and all water, either
from creek, stream, spring or cieniga rising upon or flowing throu
or over any of the above described land; and I further agree to
furnish a full and complete relinquishment of any and all claims
that the said W. S. Hatheway may have either in law or equity
against the United States, or any agent thereof for having been
evicted from certain unsurveyed lands to-wit the unsurveyed
portion of Twonship 2 South, Range one East, S. B. M. ascertained

1.

EXHIBIT 3
- 167 -

by private survey to be Section 27, or for any damage that the said Hatheway may have suffered by reason of the destruction of his improvements and the loss of the use of the land, for and in consideration of a good and sufficient patent, without cost to said Hatheway, for the land known and described as the North 1/2 of Section 14 Township 3 South, Range 1 East, S. B. M. and acting in persuance of an agreement entered into on the 5th day of Agust 1889 between C. F. Jost and Margaret Jost, his wife, parties of the first part, and C. O. Barker, party of the second part. I further agree to deliver to the United States a full and complete relinquishment of all right, title, interest or claim of the said C. F. Jost and Margaret Jost, his wife, to any and all lands lying within townships 2 South, Range 1 and 2 East, S. B. M. and to any right, title or interest to any and all of the water either from creek, stream, spring or othr water source, rising on or flowing through or over any of the land in the above described township-- and of any and all claims for damages that the said C. F. Jost and Margaret Jost may have either in law or equity against the United States or any of its Agents for eviction from any portion of the above described lands, or for any loss by reason of the destruction of their improvements or the loss of the

2.

EXHIBIT 3
- 168 -

use of any portion of the above described lands.    For and in Consideration of a patent for the West 1/2 of Section 6 Tp 3 South Range 1 East S. B. M. to be issued by the U. S. to said C. F. Jost and Margarett Jost.

And acting under and in persuance of a power of attorney executed on the 5th day of September 1889 by Richard Gird and John G. North I do hereby further agree to furnish a full and complete relinquishment to all the right, title and interest of the said Richard Gird and John G. North to any and all lands lying in what is locally known as the Hatheway Canon in Twonships 2 S one and 2 E, S. B. M. including sections 1, 2, 3, 10, 11, 12, 13, 14, 15, 22, 23, 24, 25, 26, 27, 34, 35 and 36 in Tp 2 S. R. one E. and Sections 6, 7, 18, 19, 30, and 31 in Tp. 2 S. R. two E, S. B. and to all the rifght, title and interest of said Richard Gird and John G. North to any andall water from any creek, stream, spring, cienega or other source whatsoever, rising on or flowing through or over any of the above mentioned lands and of any and all claims against the United States or any of its agents for damages for eviction from any portion of the hereinbefore described lands, or for the damage to or destruction of improvements and loss of use of land.

3.

76

EXHIBIT 3

- 169 -

For and in consideration of a patent or patents to be issued
to the said Richard Gird and John G. North for the South 1/2
of Section 8, N W 1/4 of Section 8, the E 1/2 of N E 1/4 of Section
8, the N E 1/4 of Section 10, the S E 1/4 of N W 1/4 of Section
10, the E 1/2 of S E 1/4 of Section 10, the N W 1/4 of the S E
1/4 of Section 10, all of Section 18, and the N 1/2 of Section 20,
all in Township 3 South, Range 1 East, S. B. M. And for the
further consideration that the Morongo Reservation shall be con-
fined to Sections 13, 14, 23, 24, 25, 26, 55 and 36 and the E 1/2
of Sections 15, 22, 27 and 34 in Tp 2 S R 1 E S. B. M. and section
31, in Tp 2 S. R. 2 E, Section 6, in Tp 3 South Range 2 East, and
the N 1/2 of Sections 1 and 2 in Tp 3 S R 1 E, S. B. M.

And I do further agree that the United States or its authorized
representatives shall have the option of accepting this offer at
any time prior to the 1st day of January 1892.

C. O. Barker.

For a valuable consideration I hereby consent that Secs. 10,
12, West 1,2,22, West 1/2 Sec 34, all in Town two (2) S,R one (1)
East, S. B. M. & Sections eighteen (18) & thrity (30) in Town two
(2) S R two (2) East S. B. M. may be included in the Morongo

4.
97

HERITAGE ROOM ARCHIVES
SMILEY LIBRARY
125 W. VINE
REDLANDS, CA 92373

EXHIBIT 3
- 170 -

State of California,    )
County of San Bernardino )

On this eleventh day of Nov. in the year one thousand eight hundred and ninety-one, before me, D. W. Herlihy a Notary Public in and for said County, residing therein duly commissioned and sworn, personally appeared C. O. Barker known to me to be the person described in, whose named is subscribed to and who executed the within instrument, and he acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the day any year in this Certificate first above written.

D. W. Herlihy,

(SEAL)                    Notary Public

This acknowledgment covers changes in contract in five different instances in regard to boundaries of said land.

5

EXHIBIT 3

- 171 -

34993-1788

E X E C U T I V E   M A N S I O N.

December 29th 1891

The report of the Mission Indian Commission, appoint-

ed under the act of January 12, 1891 (26 Stat. 712), is hereby

approved, except so much thereof as relates to the purchase of

lands from and exchange of lands with private individuals,

which is also approved subject to the condition that Congress

shall authorize the same.

All of the lands mentioned in said report,

are hereby withdrawn from settlement and entry until

patents shall have issued for said selected reservations, and

15

EXHIBIT 3
- 172 -

30                                    -2-

until the recommendations of said Commission shall be fully

executed,and,by the proclamation of the President of the

United States,the lands or any part thereof shall be restored

to the public domain.

*Benj Harrison*

*Department of the Interior*
*Washington. D.C.*
*December 29th 18*

*Under the act of Congress and as*
*Above provided; approved*

*John W. Noble*
*Secretary*

16

100

EXHIBIT 3
- 173 -