1  STEVEN B. ABBOTT (SBN 125270)
2  sabbott@redwineandsherrill.com
   GERALD D. SHOAF (SBN 41084)
3  gshoaf@redwineandhserrill.com
4  JULIANNA K. TILLQUIST (SBN 180552)
   jtillquist@redwineandsherrill.com
5  REDWINE AND SHERRILL
   ATTORNEYS AT LAW
6  1950 MARKET STREET
7  RIVERSIDE, CA 92501
   PHONE (951) 684-2520
8  FACSIMILE (951) 684-9583
9
   Attorneys for Defendants,
10 COACHELLA VALLEY WATER
   DISTRICT, FRANZ DE KLOTZ, ED PACK,
11 JOHN POWELL, JR., PETER NELSON,
12 and DEBI LIVESAY, in their official
   capacities as members of the Board of
13 Directors of the COACHELLA VALLEY
14 WATER DISTRICT
15
                   UNITED STATES DISTRICT COURT
16
17       CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
18

| | |
|---|---|
| 19 AGUA CALIENTE BAND OF CAHUILLA INDIANS, | ) ) ) ED CV 13-00883 JGB-(SPx) Action Filed May 14, 2013 |
| 21              Plaintiff, | ) **OPPOSITION OF CVWD** |
| 22      vs. | ) **DEFENDANTS TO PHASE 1** |
| | ) **SUMMARY JUDGMENT** |
| 23 COACHELLA VALLEY WATER | ) **MOTIONS  BY THE AGUA** |
| 24 DISTRICT, et al. | ) **CALIENTE BAND OF CAHUILLA** |
| | ) **INDIANS  AND  THE  UNITED** |
| 25              Defendants. | ) **STATES** |
| 26 _____ | ) |
| 27 UNITED STATES OF AMERICA | ) Hearing:  February 9, 2015 |
| | ) Time:       9:00 a.m. |
| 28              Plaintiff-in-Intervention | )              Courtroom 1 |

CVWD OPPOSITION TO PHASE 1
SUMMARY JUDGMENT MOTIONS

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . 1

II.     THE AGUA CALIENTE RESERVATION DOES NOT ENJOY
        RESERVED RIGHTS TO GROUNDWATER . . . . . . . . . . . . . . . . . . . . 2

        A.    Reserved Rights Do Not Automatically Arise As a Matter of Law –
              Necessity Must Be Shown. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.    The Reserved Rights Doctrine Does Not Extend
              To Groundwater. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.    Plaintiffs Fail To Show That Groundwater Is Necessary For The
              Reservation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.    PLAINTIFF HAS NO ABORIGINAL RIGHTS TO
        GROUNDWATER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

IV.     PLAINTIFF'S FACTS ARE UNSUPPORTED BY EVIDENCE . . . . . . 23

V.      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

# TABLE OF AUTHORITIES

Federal Cases

*Arizona v. California*, 373 U.S. 546, 595-596, 83 S. Ct. 1468, 10 L. Ed. 2d 542 (1963) ....................................................................................................... 3, 4

*Barker v. Harvey*, 181 U.S. 481, 491, 21 S. Ct. 690, 45 L. Ed. 963 (1901) ............. 21

*Broder v. Natoma Water and Mining Co.,* 101 U.S. 274, 276, 25 L. Ed. 790 (1879) ................................................................................................................... 22

*Cappaert v. United States,* 426 U.S. 128, 96 S. Ct. 2548, 91 L. Ed. 2d 265 (1976) ............................................................................................................. passim

*Colville Confederated Tribes v. Walton,* 647 Fed. 2d 42 (9th Cir. 1981) .............. 5, 7

*Cramer v. United States,* 261 U.S. 219, 43 S. Ct. 342, 67 L. Ed. 2d 622 (1923) 21, 22

*New Mexico v. Aamodt,* 618 F. Supp. 993, 1010 (D. N.M. 1985) ........................... 10

*Orr v. Bank of America, NT & SA,* 285 F. 3d 764, 773 (9th Cir. 2002) ................... 23

*Preckwinkle v. Coachella Valley Water District,* Case No. EDCV05-626 VAP (C.D. Cal. 2011) ..................................................................................... 12, 13

*Soboba Band of Mission Indians v. United States*, 37 Ind. Cl. Comm. 326 (Mar. 1976) .................................................................................................................. 9

*Tweedy v. Texas Company*, 286 F. Supp. 383 (D. Mont. 1968) ................................. 9

*United States v. Dibble,* 429 F. 2d 598, 601 (9th Cir. 1970) ................................... 20

*United States v. Fallbrook Pub. Util. Dist,.* Case No. 1247-SD-C (S.D. Cal. 1962) 10

*United States v. New Mexico*, 438 U.S. 696, 98 S. Ct. 3012, 57 L. Ed. 2d. 1052 (1978) ............................................................................................................ passim

*United States v. Orr Water Ditch Co.,* 600 F. 3d 1152 (9th Cir. 2010) ................... 11

*United States v. Title Insurance Trust Co.*, 265 U.S. 472, 44 S. Ct. 621, 68 L. Ed. 110 (1924) ........................................................................................................ 21

*United States v. Washington*, 2005 WL 1244797 (W.D. Wash., May 20, 2005) ..... 10

*United States v. Washington,* 2007WL 4190400 (W.D. Wash.)...........................10

*United States v. Washington,* 375 F. Supp 2d 1050, 1065 (W.D. Wash.2005).........10

*University of Pittsburgh v. Varian Medical Systems, Inc.*, 569 F. 3d 1328, 1332 (Fed. Cir. 2009) ............................................................................................... 13

*Winters v. United States*, 207 U.S. 564, 28 S. Ct. 207, 52 L. Ed. 340 (1908).....passim

<u>State Cases</u>

*City of Barstow v. Mojave Water Agency,* 23 Cal. 4th 1224, 1243, 99 Cal. Rptr. 2d 294, 5 P. 3d 853 (2000) ....................................................................... 9

*City of Pasadena v. City of Alhambra,* 33 Cal. 2d 908, 924, 207 P. 2d 17 (1949) ..... 9

*Confederated Salish and Kootenai Tribes, etc. v. Stultz,* 59 P. 3d 1093 (Mont. 2002) ................................................................................................................ 13

*In re Rights to Use Water in Big Horn*, 753 P. 2d 76 (1978) ................................... 13

*In re Gila River System,* 989 P. 2d 739 (Ariz. 1999) ........................................... 7, 8

*Tehachapi-Cumming County Water Dist. v. Armstrong,* 49 Cal. App. 3d 992, 1001, 122 Cal. Rptr. 918 (1975) .............................................................................. 8

*Wright v. Goleta Water Dist.,* 174 Cal. App. 3d 74, 87, 219 Cal. Rptr. 740 (1985) ... 8


<u>Federal Statutes</u>

California Land Claims Act of 1851 .............................................. 20, 21, 22, 23, 25

Treaty of Guadalupe Hidalgo ...................................................................... 21


State Statutes

Water Code Section 10720 ......................................................................... 15


Other

1876 Executive Order ............................................................................ 17, 18

1877 Executive Order ............................................................................ 17, 18

Fed. R. Civ. P. Rule 19 ............................................................................. 13

Fed. R. Civ. P. Rule 41(b) .......................................................................... 13

Fed. R. Civ. P. Rule 56(c) ........................................................................... 19

Legislative Counsel's Digest to SB1168 (Stats. 2014, ch. 346) ............................... 15

Richard B. Collins, *Indian Reservation Water Rights,* JOURNAL AWWA (American Water Works Association), Oct. 1986 ....................................... 15

iii

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants COACHELLA VALLEY WATER DISTRICT and its defendant directors ("CVWD") respectfully submit this opposition to the Phase 1 summary judgment motions filed by Plaintiff AGUA CALIENTE BAND OF CAHUILLA INDIANS ("Tribe") and Plaintiff in Intervention the UNITED STATES OF AMERICA.[1]  (Docs. 83 and 85.)  The motions should be denied because they are not supported by either law or fact.

The Tribe and the United States assert that reserved rights were automatically established as a matter of law upon creation of the Agua Caliente Reservation.  The Tribe and the United States further assert that reserved rights apply to groundwater

---

[1] At issue in Phase I is "the threshold issue of whether the Tribe has rights to groundwater pursuant to the federal *Winters* doctrine and/or aboriginal rights to groundwater.  . . . Phase I will necessarily address (a) the Defendants' 'Affirmative Defense Two,' which challenges the legal grounds for the Tribe's reserved rights to groundwater; and (b) whether the Tribe has aboriginal rights to groundwater (Affirmative Defense Three)." (Doc. 49, p.2.)  Those are the only affirmative defenses at issue in Phase I.  Equitable affirmative defenses will be addressed in Phase II; the remaining affirmative defenses will be addressed in Phase III as part of the quantification of any rights determined in Phase I, and will include "the determination of and prioritization of any additional water rights claimed by other producers and claimants in the groundwater basin, including any rights of the Desert Water Agency and Coachella Valley Water District."  (Doc. 49, p. 3.)
CVWD's 7th Affirmative Defense (Doc. 30, pp. 15-16; Doc. 73, pp. 9-11), which claims a paramount right to recapture water recharged into the basin, and the equitable defenses are not at issue in Phase I.  Also not at issue in Phase I is the standard for quantification of any reserved rights.  CVWD therefore does not respond to such extraneous arguments, e.g. Doc. 83, p. 19, in this Opposition and does not waive any of its affirmative defenses.

---

under the reservation. Neither assertion is supported by United States Supreme

Court decisions.  The Tribe and the United States have failed to make a factual

showing that recognition of an implied reserved right to groundwater is necessary to

carry out the purpose of the reservation.

The Tribe's claim of aboriginal rights to groundwater was extinguished by an

Act of Congress and is also unsupported by evidence.

## II.  THE AGUA CALIENTE RESERVATION DOES NOT ENJOY RESERVED RIGHTS TO GROUNDWATER

**A.**      **Reserved Rights Do Not Automatically Arise As a Matter of Law – Necessity Must Be Shown**.

The Tribe argues that "a federal reservation of land includes an implied

reservation of water rights" and that "The *Winters* Doctrine…provides that Agua

Caliente has a federal, reserved right to groundwater as a matter of law." (Doc. 85-1,

p. 5, l. 15, p. 6., ll. 7-9.) The United States likewise asserts that "…controlling

Supreme Court case law and analogous federal and state case law hold--as a matter

of law--that an Indian reservation implicitly has reserved rights to the use of water

sufficient to accomplish the purposes of the reservation." (Doc. 83, p.1, ll. 17-21.)

The key Supreme Court cases that established and refined the Reserved

Rights Doctrine do not support the assertions that reserved rights are automatically

included in the creation of a reservation as a matter of law.  Instead, a factual

1   analysis is required that the water right claimed is necessary to carry out the

2   purposes of the reservation.  Without such a showing, the court cannot imply an

3   intent to reserve rights to that water, and the water remains subject to disposition

4   under state law.

5      *Winters v. United States*, 207 U.S. 564, 28 S. Ct. 207, 52 L. Ed. 340 (1908)

6   was a treaty case in which the Court found that the waters of the Milk River were

7   essential to the purpose of the reservation, the development of agriculture, to the

8   point that the reservation would be valueless without water for irrigation.  *Id*. at 576-

9   77. The *Winters* court's ruling was based on a factual determination that the river's

10   waters were necessary to carry out the purpose of the reservation.

11      The Tribe cites *Arizona v. California*, 373 U.S. 546, 595-596, 83 S. Ct. 1468,

12   10 L. Ed. 2d 542 (1963) for the proposition that when the United States creates a

13   new reservation, it reserves the use of enough water to carry out the purpose of the

14   reservation "as a matter of fact and law."  However, a close reading of *Arizona v.*

15   *California* reveals that the Court reaffirmed that portion of the *Winters* Doctrine

16   which required a factual determination that the waters that are the subject of the

17   request for a reserved right must be found to be "necessary" to carry out the

18   purposes of the reservation.  In *Arizona*, the State of Arizona took exceptions to the

19   Special Master's recommendation that the mainstream Indian reservations were

20   entitled to reserved rights on the ground that there was a lack of evidence [*i.e.*,

factual] showing that the United States in establishing the reservation intended to reserve water for the Indians.  The Court's response was to describe the *facts* supporting the Master's conclusion, *i.e.*,

> Most of the land in these reservations is and always has been arid.  If the water necessary to sustain life is to be had, it must come from the Colorado River or its tributaries.

*Id.* at 598. The Court thus founded its judgment on a factual analysis that the water was necessary for the reservation.

In *Cappaert v. United States,* 426 U.S. 128, 96 S. Ct. 2548, 91 L. Ed. 2d 265 (1976), the Court made express what had been the basis of its conclusion in its earlier cases--the requirement that an implied reservation occurs only if the water is necessary to accomplish the purpose of the reservation:

> In determining whether there is a federally reserved right implicit in a federal reservation of public land, the issue is whether the Government intended to reserve unappropriated and thus available water.  Intent is inferred if the previously unappropriated waters *are necessary* to accomplish the purposes for which the reservation was created.

*Id.* at 140 (emphasis added).

The Court reaffirmed this requirement in *United States v. New Mexico*, 438 U.S. 696, 98 S. Ct. 3012, 57 L. Ed. 2d. 1052 (1978):

> The court has previously concluded that Congress, in giving the President the power to reserve portions of the federal domain for specific federal purposes, *impliedly* authorized him to reserve "appurtenant water then unappropriated *to the extent needed to accomplish the purposes of the reservation.* [Citing *Cappaert* and other cases; emphasis added]. . . ."  Each time this Court has applied the

"implied-reservation-of-water-doctrine," it has carefully examined both the asserted water right and the specific purposes for which the land was reserved, and it concluded that without the water the purposes of the reservation would be entirely defeated.

*Id.* at 699-700.

The Ninth Circuit follows this rule. In *Colville Confederated Tribes v. Walton,* 647 Fed. 2d 42 (9th Cir. 1981), the court held that "[an] implied reservation of water for an Indian reservation will be found where it is necessary to fulfill the purposes of the reservation." *Id.* at 46.  Noting that "[w]e apply the *New Mexico* test here," the court held that  "[t]o identify the purposes for which the Colville Reservation was created, we consider the documents and circumstances surrounding its creation, and the history of the Indians for whom it was created." *Id.* at 47. *Walton* describes a factual inquiry, not a ruling as a matter of law, to determine whether there is an implied intent to reserve water rights when a reservation is created.

Thus, an implied reservation of water rights does not automatically occur upon creation of a federal reservation; a factual determination must first be made that the water right is necessary to carry out the reservation's purpose.

**B.     The Reserved Rights Doctrine Does Not Extend to Groundwater.**

The Tribe asserts: "the *Winters* Doctrine is equally applicable to surface water and groundwater.  Nearly every court to consider the issue has so held… " (Doc. 85-1, p. 14, ll. 8-9); "…that the courts addressing the issue have almost unanimously

held that *Winters* rights encompass groundwater as well as surface water. The Ninth Circuit addressed the applicability of *Winters* rights to groundwater in its *Cappaert* decision, which was subsequently affirmed by the Supreme Court." (Doc. 85-1, p.14, ll. 23-27); and, "*Cappaert* was one of the first decisions recognizing that *Winters* rights apply equally to both groundwater and surface water… ." (Doc. 85-1, p. 15, ll. 11-12.)

Similarly, the United States asserts that "Ninth Circuit and other Federal Case Law Confirm that the Reserved Rights Doctrine Extends to Groundwater." (Doc. 83, p. 7, ll. 3-4.)

The case law does not support those statements.  The Supreme Court has been very cautious in expanding or extending the application of the reserved rights doctrine in general (see *New Mexico*, 438 U.S. at 700-02).  In *Cappaert,* the Court was very careful not to endorse the Ninth Circuit's holding that the doctrine applies to groundwater.  The Court noted that the Ninth Circuit below had held that the doctrine applies to groundwater. 426 U.S. at 137. However, after granting certiorari "to consider the scope of the implied-reservation-of-water-rights-doctrine" (*Id*. at 138), the Court went on to hold that "[n]o cases of this court have applied the doctrine … to groundwater.  Here, however, the water in the pool is surface water." *Id*. at 142. The Court thus refused to adopt the Ninth Circuit's legal reasoning.  It is the Supreme Court that created and has defined and limited the Reserved Rights

Doctrine and it is the Supreme Court that will have the final word regarding its application to groundwater. *Cappaert's* statement that the Court has not applied the doctrine to groundwater remains true today.

Other cases cited by the Tribe and the United States do not support extending the doctrine to groundwater here. *Winters,* 207 U.S. 564*, Arizona,* 373 U.S. 546, and *Colville Confederated Tribes,* 647 F. 2d 42, are all surface water cases, and also are all cases in which the courts found surface water was necessary for the purpose of the reservations and therefore justified an implied reservation of rights to surface water. None address whether reserved rights can attach to purely groundwater not needed to support a surface supply.

*In re Gila River System,* 989 P. 2d 739 (Ariz. 1999) does not support plaintiff's claims, for two fundamental reasons. First, the Gila River court expressly limited the scope of its holding: "A reserved right to groundwater may only be found where other waters are inadequate to accomplish the purpose of the reservation." <u>Id.</u> at 748. Plaintiffs make no such showing here, and the historical documents show the United States' intent at the time of the reservation was focused on developing surface supplies for the reservation. (CVWD List of Undisputed Facts, SUF 7-29; CVWD SUF 7-29 [Doc. 82-2, pp. 7-13][2].)

---

[2] To avoid confusion, facts in CVWD's List of Undisputed Facts in Opposition is
(footnote continued)

Second, the *Gila River* court found that extension of the reserved rights doctrine to groundwater was necessary because of the inadequacy of state law water rights to protect groundwater supplies for the reservation:

> A theoretically equal right to pump groundwater, in contrast to a *reserved* right, would not protect a federal reservation from a total future depletion of its underlying aquifer by off-reservation pumpers. . .[¶] We therefore cannot conclude that deference to Arizona's law – and the opportunity it extends all landholders to pump as much groundwater as they can reasonably use – would adequately serve to protect federal rights.

*Id.* at 748 (italics in original).  The situation is much different in California.

California law recognizes that the reservation lands enjoy an overlying right to groundwater.  (See CVWD Memo., Doc. 82-1, pp. 16-17, which is incorporated herein by reference.)  "The proportionate share of each owner is predicated not on his past use over a specified period of time, nor on the time he commenced pumping, but solely on his current reasonable and beneficial need for water." *Tehachapi-Cumming County Water Dist. v. Armstrong,* 49 Cal. App. 3d 992, 1001, 122 Cal. Rptr. 918 (1975).  The courts have no authority to extinguish or subordinate unexercised overlying rights. *Wright v. Goleta Water Dist.,* 174 Cal. App. 3d 74, 87, 219 Cal. Rptr. 740 (1985).  Most significantly, California law provides a judicial remedy to ground water rights holders to prevent depletion of the

repeated from CVWD's moving SUF's, retaining the same SUF numbers. CVWD SUF nos. 30-32 are the only new facts.

groundwater basin. *City of Pasadena v. City of Alhambra,* 33 Cal. 2d 908, 924, 207 P. 2d 17 (1949) – "There can be no question that the trial court had authority to limit the taking of ground water for the purpose of protecting the supply and preventing a permanent undue lowering of the water table. [Citations omitted]." That judicial remedy must preserve the rights of overlying users; the junior appropriators must yield to the rights of overlying owners. *City of Barstow v. Mojave Water Agency,* 23 Cal. 4th 1224, 1243, 99 Cal. Rptr. 2d 294, 5 P. 3d 853 (2000). Thus, under California law, the overlying lands of the reservation would be protected in their reasonable share of the native waters of the groundwater basin. It is not necessary to recognize a reserved right to groundwater, and therefore no implied intent to do so can arise here.

Some cases--*Tweedy v. Texas Company*, 286 F. Supp. 383 (D. Mont. 1968) and *Soboba Band of Mission Indians v. United States*, 37 Ind. Cl. Comm. 326 (Mar. 1976)--predate *Cappaert,* 426 U.S. 128 (Jun. 1976) and *New Mexico,* 438 U.S. 696 (1978), and therefore did not analyze the issue in light of the most current decisions of the Supreme Court on the subject of reserved rights.[3]

_____

[3] The *Tweedy* court did note that a reserved right to water does not bestow "ownership" of the water so as to prevent others from using water not used; instead, like all water rights in Western water law, the right is only a right to make use of water actually needed. The court denied relief because it found the claimant in that case did not have a need for the water. *Tweedy,* 286 F. Supp. at 385. Under that
(footnote continued)

The cited holding in *New Mexico v. Aamodt,* 618 F. Supp. 993, 1010 (D.

N.M. 1985), that "[t]he Pueblo water rights appurtenant to their lands are the surface

waters of the stream systems and the groundwater physically interrelated to the

surface water as an integral part of the hydrologic cycle," addressed Pueblo rights

arising under Spanish and Mexican law, and not *Winters* reserved rights, which the

court found were inapplicable to Pueblo rights.  *Id.* at 996. It did not recognize any

rights in an unconnected groundwater basin.

The Tribe also cites *United States v. Washington*, 2005 WL 1244797 (W.D. Wash.,

May 20, 2005), a federal trial court case. (Doc. 85-1, p. 15.)  Upon reconsideration, the

court found that reserved rights applied to groundwater, but "only where [the] water is

necessary to fulfill the very purposes for which the reservation was created," following

*New Mexico*. *U.S. v. Washington*, 375 F. Supp. 2d 1050, 1065 (W.D. Wash. 2005). Both

rulings were later vacated pursuant to settlement.  2007 WL 4190400 (W.D. Wash.)

The district court in *United States v. Fallbrook Pub. Util. Dist.,* Case No.

1247-SD-C (S.D. Cal. 1962) did not extend the doctrine as far as the United States

claims; it instead limited its holding to groundwaters which "add to, contribute to

and support the Santa Margarita River." Interlocutory Judgment Number 41 in

*Fallbrook Pub. Util. Dist*. (Declaration of Gerald D. Shoaf in Support of CVWD

---

rationale, others in the Coachella Valley are free to use groundwater not being used
by the Tribe.

Opposition, Ex. 53, at p. 53-33, ll. 17-19.) Findings of Fact, ¶¶ 12-26, and ¶ 40, (Shoaf Opp. Decl., Ex. 53, pp. 53-21 to 53-26, 53-30 to 53-31), recite that the United States, in creating a particular reservation described, "intended to reserve rights to the use of the waters of the Santa Margarita River stream system … including rights to the use of ground waters sufficient for the present or future needs of the Indians residing thereon." *See also,* ¶ 3, Shoaf Opp. Decl., Ex. 53, p. 53-37. However, Judge Carter clearly and carefully distinguished between groundwaters which "add to, contribute to and support" the Santa Margarita River or any tributary thereof (Finding of Fact ¶ 7; Conclusions of Law ¶¶ 2, 5, 7 and 9, Shoaf Opp. Decl., Ex. 53, p. 53-20 and 53-33 to 53-35) and those that do not (Finding of Fact, ¶ 8; Conclusions of  Law, ¶ 3 and 6, Shoaf Opp. Decl., Ex. 53, pp. 53-20, 53-33 to 53-34).

Those groundwater basins which "add to, contribute to or support the Santa Margarita River System" were declared to be the subject of reserved rights while the latter were not.  Conclusions of Law, ¶ 4 , and Judgment, ¶¶ 2, 3, 5 and 6, Shoaf Opp. Decl., Ex. 53, pp. 53-33 to 53-34 and 53-36 to 53-37.

*United States v. Orr Water Ditch Co.,* 600 F. 3d 1152 (9th Cir. 2010) held that the doctrine extends to groundwater only where it adds to, contributes to or supports surface waters on a federal reservation.

Here, the Tribe has admitted that the groundwaters underlying the Reservation do not "add to, contribute to or support" the surface streams on the reservation. (CVWD List of Undisputed Facts, SUFs 30-32)

Both the Tribe and the United States cite *Preckwinkle v. Coachella Valley Water District* as an example of a trial court ruling that the reserved rights doctrine applies to groundwater. (Doc. 85-1, p. 15, pp. 18-20; Doc. 83, p. 8, pp. 12-16.) However, that case was dismissed without a merits determination on the water rights issues because the court found that the United States was a necessary and indispensable party who could not be joined.

In *Preckwinkle*, Indian owners of allotted lands that were leased to Mission Hills Country Club challenged CVWD's levy of a replenishment assessment on the lessee based on the amount of groundwater pumped by the lessee. Plaintiffs contended that the assessments infringed on asserted reserved rights to groundwater. In defense, CVWD asserted that the character of water rights was irrelevant to the validity of its replenishment assessments because the assessments did not place any limits on pumping by the lessee and therefore did not interfere with any water rights. Shoaf Opp. Decl., Ex. 54, p. 54-58, ll.15-22; pp. 55-78, ll. 19 to 55-79, l. 3; p. 56-104, ll. 5-10.

CVWD also asserted that the action was premature because no reserved rights to groundwater had been adjudicated to the plaintiffs, and they could not be

adjudicated in that action.  Shoaf Opp. Decl., Ex. 54, p. 55-89, ll. 21-26, and p. 55-91, ll. 3-5; p. 56-104, ll. 12-13.

The district court granted summary judgment for CVWD that certain claims failed as a matter of law.  (See *Preckwinkle* ECF, Doc. 120, pp. 49, 51, attached to Plaintiff's Memo, Doc. 85-1.) As to the other claims, the district court agreed with CVWD that the United States was a necessary party who could not be joined, and after applying the standards of Fed. R. Civ. P. Rule 19, concluded "the action should not proceed" and accordingly dismissed the remaining claims for non-joinder. (*Preckwinkle* ECF Doc. 120, pp. 40-46, 47, 48 and 52.)

It is settled that such a dismissal does not operate as an adjudication on the merits.  (F. R. Civ. P. Rule 41(b) – "[A]ny dismissal not under this rule – *except one for* lack of jurisdiction, improper venue, or *failure to join a party under Rule 19 –* operates as an adjudication on the merits." (Emphasis added.) *See, University of Pittsburgh v. Varian Medical Systems, Inc.*, 569 F. 3d 1328, 1332 (Fed. Cir. 2009).

In the *Big Horn* case, 753 P. 2d 76 (1978), the Wyoming Supreme Court held that reserved rights do not apply to groundwater.

In *Confederated Salish and Kootenai Tribes, etc. v. Stultz*, 59 P. 3d 1093 (Mont. 2002), the court held the state could not issue permits until the reserved rights of the reservation had been quantified in future proceedings in another forum that had not been commenced. *Id.* at 1099-1100.

The cases cited by the Tribe and by the United States do not support their claims that reserved rights are established automatically upon the creation of the reservation, as a matter of law.  Nor do the cases provide an excuse for the failure by the Tribe and the United States to produce facts meeting the "necessity" requirements as set forth in *New Mexico*.  Lastly, and most importantly, neither the Tribe nor the United States has produced a Supreme Court decision indicating that its reserved rights doctrine extends to groundwater.

California statutory law does not assist plaintiffs either.  The Tribe (Doc. 85-1, p.11, ll. 12-18) and the United States (Doc. 83, p. 14, ll. 9-22, p. 15, ll. 1-2, and p.19, ll. 1-9) assert that the California Legislature has very recently (September 16, 2014) "codified the superiority of federal law over state law in the context of reserved water rights."

However, the provision cited does not provide that reserved rights to groundwater automatically are included as part of any Indian reservation's creation in California.  Rather, the provision states, in effect, that *if* such rights are determined to exist, *then* they shall be respected.  Thus, the provision does not

benefit Plaintiff's or the United States' claims because they have yet to establish the

Agua Caliente reservation has reserved rights to groundwater.[4]

---

[4] Interestingly, the Legislative Counsel's Digest to SB1168 (Stats. 2014, ch. 346), which enacted Water Code Section 10720, effective January 1, 2015, states:

> This bill would state the policy of the state that groundwater resources be managed sustainably for long-term reliability and multiple economic, social and environmental benefits for current and future users.  This bill would state that sustainable groundwater management is best achieved locally through the development, implementation, and updating of plans and programs based on the best available science."

Legislative Counsel's Digest to Senate Bill 1168 (www.leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=20132104 SB1168. )

Nothing could be more inconsistent with these goals than allowing one user (*i.e.*, the Tribe) to have seniority to use of the groundwater without responsibility for its affect on the economic, social and environmental impacts of its use on the basin and other users.     A knowledgeable former Indian water rights lawyer, in addressing reserved rights to groundwater issues, noted that

> When a groundwater source is located only under Indian land, the Indians will have all rights to the resource.  When the source is shared among surface owners, a more flexible accommodation of rights than the absolute priority of surface water rights is necessary.  If a senior owner had an absolute right to the virgin water table and pump pressure of an aquifer, no one else could use the source.  State law systems have come up with several practical answers to this dilemma, and it is probable that one of them will applied to Indian groundwater rights.

Richard B. Collins, *Indian Reservation Water Rights*, JOURNAL AWWA (American Water Works Association), Oct. 1986, at 48, 52. Shoaf Opp. Decl., Ex. 52, pp. 52-10, 52-14.

**C. Plaintiffs Fail To Show That Groundwater Is Necessary For The Reservation.**

Assuming arguendo that the doctrine of reserved rights can extend to groundwater that does not support a surface stream or pool, the basic principle remains that state law controls the use of water and that reservation of rights will not be implied unless, after examination of the asserted right and the specific purpose for which the land is reserved, the court concludes "that without the water the purposes of the reservation would be entirely defeated" and that the "water is necessary to fulfill the very purposes for which the federal reservation is created." *New Mexico,* 438 U.S. at 700-702.  Neither plaintiff nor the United States have made such a showing here.

This Defendant, the Tribe and the United States agree that the basic purpose of the Reservation was to provide a secure "homeland" for the Tribe in the form of reservation with well defined boundaries to prevent further incursions by non-Indians into areas historically occupied and used by the Tribe.

What is lacking is factual evidence that groundwater was and is essential to the successful implementation of that purpose and that without a reserved right to groundwater, at this point (138 years after the first of the lands were reserved), that purpose is doomed to failure.

The Tribe has admitted that it is unable to document the existence of any historic groundwater wells that were located on the current Reservation. (CVWD List of Undisputed Facts SUF 5.) The Tribe has not produced any facts which establish groundwater use by the Tribe before or since the Reservation was created.

The Tribe attempts to overcome the lack of factual support for its claim that it used groundwater on the Reservation by alleging that the Tribe's "ancestors" used "water" for various activities (Tribe SUFs 16-23) and that "water was critical to meet a number of 'Ancestral Cahuilla' needs" (Tribe SUF 15), but nowhere does the tribe prove that the "water" needed for those described uses was groundwater.

The Tribe claims that the "ancient Cahuilla" used groundwater sources such as springs and hand dug wells, but has not documented actual groundwater use by the Tribe itself in the lands that are currently within the Reservation.

And it makes no showing that without a reserved right to groundwater the purpose of the reservation will fail.

The Tribe asserts that "[t]he only material facts necessary to establish this [reserved right to groundwater as a matter of law] are set forth in the orders establishing the Reservation, and those are undisputed." (Doc. 85-1, p. 6, ll. 9-10.) However, neither the 1876 nor the 1877 Executive Order which the Tribe claims established and expanded the Reservation (Tribe SUF 30-36) contains any factual statement other than the legal description of the lands being reserved "for the

permanent use and occupancy of the … Indians" (1876 Executive Order) and "…

set apart as a reservation for Indian purposes" (1877 Executive Order).  Neither

describes a purpose that, without more explanation, would require the use of

groundwater.

CVWD does not dispute that the Agua Caliente Reservation was created and

expanded to provide defined boundaries of the Reservation to protect the Tribe's

members from further incursions by non-Indians, *i.e.*, a secure "homeland."

Establishing the purposes of the Reservation, however, is only the first step in

meeting the Supreme Court's requirements; it is the second and third steps that the

Tribe's SUFs fail to address.

Use of water from undescribed sources (*i.e.*, surface water or ground water)

by Plaintiff's ancestors does not establish that (1) use of groundwater by Plaintiff is

necessary to carry out the purposes of Plaintiff's reservation, and (2) that the

original "homeland" purpose of Plaintiff's reservation continues to be a viable

purpose that will be "entirely defeated" if Plaintiff is not now awarded a reserved

right to groundwater, 138 years after creation of its Reservation.

Plaintiff's SUFs set forth <u>no</u> facts regarding specific essential uses of

groundwater in the past or specific uses of groundwater in the future that will assure

continued development and maintenance of its "homeland."

The Supreme Court held in *New Mexico* that it is only the government's intent regarding the purpose of the reservation that is relevant; here, the intent of the government was to provide a secure homeland for the Agua Caliente Tribe and the water supply described for that purpose in all government documents was always and only surface water (CVWD List of Disputed Facts SUF 7-29); water use by the ancients is not relevant.

The United States makes no attempt to argue factually that without a reserved right to groundwater the reservation would fail, instead arguing that the right exists as a matter of law.  (Doc. 83, p.4, ll. 2-3.)

The United States appears to assume, without factual demonstration, that some type of water is automatically necessary to serve the purposes of the reservation.  That assumption is not correct, according to the Supreme Court's opinion in the *New Mexico* case; not only must facts be produced to establish that the water that is the subject of the reserved rights request (groundwater, in this case) is necessary to carry out the purposes of the reservation, it must also be factually demonstrated that such purpose will fail in the absence of the reserved right.  The United States has made no so such showing here.

> To obtain a judgment in favor of a claimant pursuant to his complaint . . . the moving party must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary . . . . A plaintiff seeking summary judgment who has failed to produce such evidence on one or more essential elements of his cause of action is no more "entitled to a judgment" (Rule 56(c) Fed. R. Civ. Proc.)

than is a plaintiff who has fully tried his case and who has neglected to offer evidence sufficient to support a finding on a material issue upon which he bears the burden of proof.

*United States v. Dibble,* 429 F. 2d 598, 601 (9th Cir. 1970).

## III.  PLAINTIFF HAS NO ABORIGINAL RIGHTS TO GROUNDWATER

The Tribe asserts that it has aboriginal rights to groundwater "[b]ecause there is no genuine issue of material fact as to the existence of the Tribe's aboriginal use of and rights to groundwater underlying its Reservation." (Doc. 85-1, p. 18, ll. 16-18.)

Apart from the Tribe's failure to produce any factual basis for its claimed aboriginal use of groundwater, the Tribe ignores the legal consequence of its failure to file a claim to such rights with the Commission established by Congress for that purpose by the California Land Claims Act of March 3, 1851, as explained at length in CVWD Defendants' Memo (Doc. 82-1, pp. 9-14), which CVWD incorporates herein by reference and CVWD List of Undisputed Facts SUF 2-4 and 6.

The Tribe cites a number of cases in an attempt to avoid the reach of the 1851 Act but *all* are from jurisdictions other than California, were not subject to the California Land Claims Act of 1851, and therefore have no precedential value.

The Tribe argues that its aboriginal rights "fall outside the ambit of…the 1851 Act" because they "are not derived from the Spanish or Mexican government," but rather are based on "use and occupation since time immemorial."  (Doc. 85-1, p. 21,

ll. 1-3), though the Tribe acknowledges that "Lands within the Treaty of Guadalupe Hidalgo's Mexican Cession were encompassed within this policy" [that Indian rights of occupancy were to be honored].  (Doc. 85-1, pp. 19, ll. 2-4.)

The Supreme Court addressed and answered the specific question of whether aboriginal rights were subject to the Act  in *United States v. Title Insurance Trust Co.*, 265 U.S. 472, 44 S. Ct. 621, 68 L. Ed. 110 (1924):

> "If these Indians had any claims founded on the action of the Mexican government, they abandoned them by not presenting them to the commission for consideration, and they could not, therefore, in the language just quoted, 'resist successfully any action of the government in disposing of the property.'  If it be said that the Indians do not claim the fee, but only the right of occupation, and therefore they do not come within the provision of section 8 as persons 'claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government,' it may be replied that a claim of a right to permanent occupancy of land is one of far-reaching effect, and it could not well be said that lands which were burdened with a right of permanent occupancy were a part of the public domain and subject to the full disposal of the United States."

*Id*. at 284, quoting *Barker v. Harvey*, 181 U.S. 481, 491, 21 S. Ct. 690, 45 L. Ed. 963 (1901).  Thus, as a matter of policy, the Supreme Court said the 1851 Act applied to aboriginal rights in California, whether or not founded upon action of the Mexican or Spanish government.  The Tribe argues that *Cramer v. United States,* 261 U.S. 219, 43 S. Ct. 342, 67 L. Ed. 2d 622 (1923) acknowledged that there is a distinction between Indian claims recognized under Mexican law and those whose claims were independent of Mexican law. (Doc. 85-1, p.22, ll. 18-20, fn. 14.)

However, *Cramer* was not an aboriginal rights case.  There, the Indians were not claiming a right of occupancy from time immemorial; the Indians had first taken possession of the 175 acres involved in 1859, eight years *after* the 1851 Act.  They did not assert an aboriginal rights claim, but rather a claim based on actual occupancy.  The court said, at page 226, that the Indians' claim was not subject to the 1851 Act because they were not in possession in 1851.  The Court found that there was a strong United States wide policy to protect individual occupation (page 229) and based "on settled governmental policy," upheld the Indians' claim based on actual occupancy.  *Id.* at 229, citing *Broder v. Natoma Water and Mining Co.*, 101 U.S. 274, 276, 25 L. Ed. 790 (1879).

      *Cramer* does not support the Tribe's claim to aboriginal rights.

      The Tribe argues that even if its original aboriginal rights had been extinguished by the 1851 Act, they were "re-established" after 1853.  The Tribe cites *Cramer* as validating its aboriginal claims because such claims were not within the 1851 Act's terms.  As noted above, however, the court in *Cramer* said the Indians did not have aboriginal claims and based its ruling on actual occupancy, not on any "re-establishment" of an extinguished aboriginal claim.  Thus, *Cramer* does not support the proposition that aboriginal rights with a time immemorial claim can be re-established after extinguishment under the 1851 Act.

Even if such "re-establishment" were possible, the Tribe has failed to establish actual continual occupation and use of groundwater on the current reservation lands, which rules out contemporaneous claims to aboriginal rights to groundwater.  See CVWD Defendants' Memo (Doc. 82, pp. 13-14), which is incorporated herein by reference, and CVWD List of Undisputed Facts 5, 28.e.

Whatever aboriginal rights the Tribe may have had were extinguished by virtue of the Tribe's failure to file a claim to such rights as required by the 1851 Act, regardless of whether such claims were derived from a Mexican or Spanish government action or otherwise.  Once extinguished, there was and is no legal, factual or logical basis for "re-establishing" such rights. The Tribe's claim to aboriginal rights to groundwater with a time immemorial priority is barred by the extinguishment of the rights by operation of law.

## IV.    PLAINTIFF'S FACTS ARE UNSUPPORTED BY EVIDENCE.

Finally, the Tribe's evidence does not establish any of the "facts" it asserts support its claim of reserved and aboriginal rights, and this claim therefore also fails for want of proof by admissible evidence. Several references do not provide pin cites. Also, much of the evidence offered in support is inadmissible, as noted in CVWD's Evidentiary Objections, filed concurrently with this opposition.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of America, NT & SA,* 285 F. 3d 764, 773 (9th Cir. 2002).

Many "facts" in Plaintiff's SUFs are simply not relevant to the issues at hand. SUFs 3-9, 11-13, 14-23, are not related to groundwater.  SUFs 7-27 refer to "ancestral Cahuilla" or "ancient Cahuilla" but do not describe any groundwater use by the Tribe. SUF 25 cites Bean (Tab 4), but the pages cited reference surface springs and do not reference use of groundwater.                    .

The citations for some SUF's do not support the "facts" stated.  For example, SUF 23's citation to Bean (Tab 3, p. 2) does not mention water use for agriculture and SUF 29's reference to Patencio (Tab 5, p. 56) does not describe extensive Cahuilla use and control of the present day Coachella Valley, but rather refers to legends regarding Chino and Tahquitz Canyons. The description of the use of hand dug wells in the lower valley in the reference cited in SUF 26 does not refer to the current Agua Caliente Reservation and instead refers to the Torres and Cabazon areas. Indeed, the 1856 United States Government map referenced at Tab 14, p. 98 in SUF 26 shows the existence of <u>no</u> wells on Plaintiff's Reservation.

Other SUFs' citations cannot be found.  For example, SUF 26's citation to Kroeber, page 8, Tab 12, cannot be located.

## V.  CONCLUSION

Neither the Plaintiff nor the United States has provided legal precedent to support their assertions that reserved rights arise as a matter of law upon creation of

a federal reservation, and reserved rights apply to groundwater that does not add to, contribute or support the surface water systems on the Plaintiff's Reservation.

Neither the Plaintiff nor the United States has established facts sufficient to support a determination that groundwater ever was, or continues to be, necessary to the purpose of the Reservation to the point that said purpose will fail in the absence of a current award of a reserved right to that groundwater.

Plaintiff has failed to overcome the extinguishment of any claim to aboriginal rights by failure to file such claim pursuant to the Act of 1851.

Plaintiff and Plaintiff-in-Intervention have failed to meet their required burdens of proof and are not entitled to judgment as a matter of law.   Plaintiff and Plaintiff in Intervention's motions should be denied.

Dated:  December 5, 2014

Respectfully submitted,
REDWINE AND SHERRILL

By:__/s/Steven B. Abbott_____
STEVEN B. ABBOTT
sabbott@redwineandsherrill.com
Attorney for Defendants
COACHELLA VALLEY WATER DISTRICT,
FRANZ DE KLOTZ, ED PACK,
JOHN POWELL, JR., PETER NELSON,
and DEBI LIVESAY, in their official
capacities as members of the Board of
Directors of the COACHELLA VALLEY
WATER DISTRICT
1950 Market Street
Riverside, CA 92501-1720
(951) 684-2520 (phone)
(951) 684-9583 (fax)

CVWD OPPOSITION TO PHASE 1
SUMMARY JUDGMENT MOTIONS

25