1  RODERICK E. WALSTON (Bar No. 32675)
   roderick.walston@bbklaw.com
2  STEVEN G. MARTIN (Bar No. 263394)
   steven.martin@bbklaw.com
3  BEST BEST & KRIEGER LLP
   2001 N. Main Street, Suite 390
4  Walnut Creek, California 94596
   Telephone: (925) 977-3300
5  Facsimile: (925) 977-1870

6  ARTHUR L. LITTLEWORTH (Bar No. 22041)
   arthur.littleworth@bbklaw.com
7  PIERO C. DALLARDA (Bar No. 181497)
   piero.dallarda@bbklaw.com
8  BEST BEST & KRIEGER LLP
   3390 University Avenue, Fifth Floor
9  P.O. Box 1028
   Riverside, California 92502
10 Telephone:  (951) 686-1450
   Facsimile:  (951) 686-3083
11
   Attorneys for Defendant
12 DESERT WATER AGENCY

13             UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15                  EASTERN DIVISION

16 AGUA CALIENTE BAND OF              Case No. 5:13-cv-00883-JGB (SPx)
   CAHUILLA INDIANS,                  Judge:    Hon. Jesus G. Bernal
17
                 Plaintiff,           **DESERT WATER AGENCY'S**
18                                     **OPPOSITION TO MOTION FOR**
        v.                             **SUMMARY JUDGMENT OF AGUA**
19                                     **CALIENTE BAND OF MISSION**
   COACHELLA VALLEY WATER             **INDIANS**
20 DISTRICT, et al.,
                                      [Filed with:
21               Defendants.          1.  Defendant Desert Water Agency's
                                      Request for Judicial Notice
22                                    2.  Declaration of Steven G. Martin
                                      3  Desert Water Agency's Appendix of Cited
23                                    Documents in Support of Opp. to MSJ of
                                      Agua Caliente Band of Mission Indians
24
                                      Date:   February 9, 2015
25                                    Time:  9:00 a.m.
                                      Dept.: Courtroom 1
26                                    Action Filed:  May 14, 2014
                                      Trial Date:   Feb. 3, 2015
27

28
   01358.00008\9428817.2                        DWA OPP. TO MSJ – AGUA CALIENTE BAND
                                                 5:13-CV-00883-JGB (SPX)

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

**TABLE OF CONTENTS**

**Page**

I.   THE TRIBE'S CLAIMED RESERVED RIGHT IN GROUNDWATER IS NOT NECESSARY TO ACCOMPLISH THE PRIMARY PURPOSE OF THE TRIBE'S RESERVATION, AND THEREFORE THE TRIBE'S CLAIMED RIGHT DOES NOT IMPLIEDLY EXIST. .................................................................. 1

    A.   Under New Mexico, a Federal Water Right Is Reserved Only If "Necessary" to Accomplish the "Primary" Reservation Purpose and Prevent This Purpose From Being "Entirely Defeated." .............. 1

    B.   The Tribe's Claimed Reserved Right in Groundwater Is Not Necessary to Accomplish the Primary Purpose of the Tribe's Reservation, and Therefore There Is No Basis for the Tribe's Claimed Reserved Right. .................................................. 4

        1.   The Tribe Has a Correlative Right to Use Groundwater Under California Law, and Therefore the Tribe's Claimed Reserved Right Is Not Necessary to Accomplish the Primary Reservation Purpose. ....................................... 5

        2.   Other Circumstances of This Case Support the Conclusion That the Tribe Does Not Have a Reserved Right in Groundwater. ................................................... 8

    C.   Summary .................................................................................... 12

II.  THE TRIBE'S "HOMELAND" ARGUMENT IS NOT RELEVANT IN DETERMINING WHETHER THE TRIBE HAS A RESERVED RIGHT IN GROUNDWATER. ........................................................... 13

III. THE TRIBE DOES NOT HAVE AN ABORIGINAL RIGHT IN GROUNDWATER. ................................................................... 14

    A.   The Tribe's Aboriginal Right Claim Conflicts With the Reserved Rights Doctrine. ........................................................... 15

    B.   The Tribe's Aboriginal Right Claim Was Extinguished by the Land Claims Act of 1850. ....................................................... 16

    C.   Barker Applies to the Tribe's Aboriginal Right Claim Irrespective of Whether Its Claim is Based on a Spanish or Mexican Land Grant. ................................................................... 19

CONCLUSION ..................................................................................... 21

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

- i -

1
2
3
4
5
6
7
8
9
10

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2OO I N. MAIN STREET, SUITE 39O
WALNUT CREEK, CA 9459G

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agua Caliente Band of Mission Indians v. Riverside County*,
    442 F.2d 1184 (9th Cir. 1971) ...................................................10, 17

*Arizona v. California*,
    373 U.S. 546 (1963) ...................................................................2, 11, 14

*Barker v. Harvey*,
    181 U.S. 481 (1901) ............................................................................*passim*

*California Water Service Co. v. Edward Sidebotham & Son*,
    224 Cal.App.2d 715 (1964) ...........................................................6

*Cappaert v. United States*,
    426 U.S. 128 (1976)....................................................................2, 15, 16

*City of Barstow v. Mojave Wat. Agency*,
    23 Cal.4th 1224 (2000) ...............................................................6, 7

*Colville Confederated Tribes v. Walton*,
    647 F.2d 42 (9th Cir. 1981) ..........................................................*passim*

*Donnelly v. United States*,
    228 U.S. 243 (1913)........................................................................19

*In re Water of Hallett Creek Stream System*,
    44 Cal.3d 448 (1988) ....................................................................3

*Katie John v. United States*,
    720 F.3d 1214 (9th Cir. 2013) ...............................................3, 12, 13

*Katz v. Walkinshaw*,
    141 Cal. 116 (1903) ......................................................................7

*Lux v. Haggin*,
    69 Cal. 255 (1886) ........................................................................6, 7

*Mattz v. Arnett,*
   412 U.S. 481 (1973)...................................................................................19

*Pasadena v. Alhambra,*
   33 Cal.2d 908 (1949) ...................................................................................6

*People v. Shirokow,*
   26 Cal.3d 301 (1980) ....................................................................................5

*United States v. Adair,*
   723 F.2d 1394 (9th Cir. 1983) .................................................3, 4, 12, 16

*United States v. Gerlach Live Stock Co.,*
   339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950).....................................5

*United States v. New Mexico,*
   438 U.S. 696 (1978).................................................................2, 4, 12, 13

*United States v. State Water Res. Cont. Bd.,*
   182 Cal.App.3d 82 (1986) ...........................................................................5

*United States v. Title Ins. & Trust Co.,*
   265 U.S. 472 (1924).....................................................................................20

*Winters v. United States,*
   207 U.S. 564 (1908).............................................................................2, 5, 11

**Statutes**

Four Reservations Act, 13 Stat. 90 ................................................................18

Land Claims Act of 1851, 9 Stat. 631................................................................16

**Other Authorities**

Clark, *Groundwater Legislation in Light of the Experience in the*
   *Western States,* 22 Mont. L. Rev. 42, 50 (1960) ........................................7

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

## DESERT WATER AGENCY'S OPPOSITION TO TRIBE'S MOTION FOR SUMMARY JUDGMENT

Desert Water Agency ("DWA") submits this opposition to the motion for summary judgment of the Agua Caliente Band of Mission Indians ("Tribe"). The Tribe and the United States make several similar arguments in their motions for summary judgment, and this memorandum responds to arguments primarily made by the Tribe, although the memorandum will make reference to the United States' arguments where appropriate. DWA will file a separate memorandum responding to arguments primarily made by the United States.[1]

## I. THE TRIBE'S CLAIMED RESERVED RIGHT IN GROUNDWATER IS NOT NECESSARY TO ACCOMPLISH THE PRIMARY PURPOSE OF THE TRIBE'S RESERVATION, AND THEREFORE THE TRIBE'S CLAIMED RIGHT DOES NOT IMPLIEDLY EXIST.

### A. Under *New Mexico*, a Federal Water Right Is Reserved Only If "Necessary" to Accomplish the "Primary" Reservation Purpose and Prevent This Purpose From Being "Entirely Defeated."

The Tribe and the United States argue that a federal reservation of land automatically includes the reservation of a water right, and therefore that the presidential executive orders of 1876 and 1877 that created the Tribe's reservation necessarily reserved a right in groundwater. Tribe Mem. 5, 6; U.S. Mem. 4-5. The Tribe asserts, for example, that a "[r]eservation of lands for Indians . . . necessarily includes reservation of water rights," Tribe Mem. 17, and "[t]he only material facts

---

[1] As used in this memorandum, "Tribe Mem." refers to the Tribe's memorandum of points and authorities in support of its motion for summary judgment (Doc. 85-1); "U.S. Mem." refers to the United States' memorandum of points and authorities in support of its motion for summary judgment (Doc. 83); "DWA Mem." refers to DWA's memorandum of points and authorities in support of its motion for summary judgment (Doc. 84-1); "DWA SUF" refers to DWA's Statement of Undisputed Facts in support of its Motion for Summary Judgment (Doc. 84-2); and "RJN" refers to DWA's Request for Judicial Notice in support of its Motion for Summary Judgment (Doc. 84-5).

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1    necessary to establish this right are set forth in the orders establishing the

2    reservation," *id.* at 6.

4        Contrary to the Tribe's and the United States' argument, a federal reservation

5    of land does not automatically include the reservation of a water right.  Rather,

6    whether the water right is reserved depends on whether the right is *necessary* to

7    accomplish the *primary* purpose of the particular reservation, taking into account

8    Congress' policy of deference to state water law.

9        Although the Supreme Court expansively interpreted the reserved rights

10   doctrine in *Winters v. United States*, 207 U.S. 564 (1908), and *Arizona v.*

11   *California*, 373 U.S. 546 (1963), the Supreme Court adopted a more narrow

12   interpretation in *Cappaert v. United States*, 426 U.S. 128 (1976), holding that a

13   federal reserved right is impliedly reserved only if "necessary" to accomplish the

14   reservation purpose.  *Cappaert*, 426 U.S. at 138.  Two years later, in *United States*

15   *v. New Mexico*, 438 U.S. 696 (1978), the Supreme Court substantially narrowed the

16   reserved rights doctrine even further.  There, the Supreme Court held that

17   Congress' policy of deference must be taken into account in determining whether a

18   federal water right is impliedly reserved, and that a federal water right is impliedly

19   reserved only if "necessary" to accomplish the "primary" reservation purpose and

20   prevent this purpose from being "entirely defeated." *New Mexico*, 438 U.S. at 702,

21   citing *California v. United States*, 438 U.S. 645, 653-670, 678-679 (1978); DWA

22   Mem. 11-13.  The Court held that the United States must acquire water for

23   "secondary" reservation purposes under state law, in the same manner as public and

24   private appropriators. *New Mexico*, 438 U.S. at 702. Applying its narrow

25   interpretation of federal reserved water rights, and taking into account Congress'

26   deference to state water law, the *New Mexico* Court held that the federal

27   government did not impliedly reserve water for instream uses in the Gila National

28   Forest in New Mexico. *New Mexico,* 438 U.S. at 707-717.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

The Ninth Circuit recently reaffirmed that *New Mexico* adopted a narrow interpretation of federal reserved water rights. *Katie John v. United States*, 720 F.3d 1214 (9th Cir. 2013). In *Katie John*, the Ninth Circuit stated that *New Mexico* adopted a "narrow rule" concerning federal reserved rights, and that *New Mexico* "held that federally reserved waters are limited to the *primary* purposes for which the land was reserved, without which the 'purposes of the reservation would be entirely defeated.'" *Id.* at 1226 (original emphasis). Similarly, the California Supreme Court has stated that *New Mexico* adopted a "narrow construction" of the reserved rights doctrine because of the congressional policy "of deferring to state water law." *In re Water of Hallett Creek Stream System*, 44 Cal.3d 448, 461 (1988).

The Ninth Circuit has held that the limitations of the reserved rights doctrine expressed in *New Mexico* apply to Indian reserved rights, particularly the limitation that a federal water right is reserved only if "necessary" to accomplish the "primary" purpose of the reservation rather than "secondary" purposes. *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1981); *United States v. Adair*, 723 F.2d 1394, 1408-1409 (9th Cir. 1983). Thus, whether a federal water right is reserved for an Indian reservation must be determined on a reservation-by-reservation basis, taking into account whether the claimed right is necessary to serve the "primary" reservation purpose as opposed to "secondary" purposes, and also taking into account Congress' policy of deference to state water law.

Neither the Tribe nor the United States mention the Supreme Court's decision in *New Mexico*—even though *New Mexico* is the leading decision that defines a federal reserved right—other than citing *New Mexico* in a single sentence for the assertion that a federal reserved right is an "exception" to Congress' policy

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   of deference to state water law.  Tribe Mem. 9; U.S. Mem 17.[2]  Although *New*

2   *Mexico* significantly limited the circumstances under which a federal water right

3   can be impliedly reserved—including the limitation that a federal reserved right

4   applies only to the "primary" reservation purpose and not "secondary" reservation

5   purposes—neither the Tribe nor the United States acknowledge that these

6   limitations apply to the Tribe's claimed reserved right.  Although the Ninth Circuit

7   in *Walton* and *Adair* held that *New Mexico*'s limitations on reserved rights apply to

8   Indian reserved rights claims, *Walton,* 647 F.2d at 47; *Adair,* 723 F.2d at 1408-

9   1409, neither the Tribe nor the United States acknowledge that the Ninth Circuit

10   adopted these limitations or that they apply to the Tribe's claim.  Indeed, neither the

11   Tribe nor the United States define the "primary" purpose of the Tribe's reservation

12   as distinguished from the "secondary" purposes, or how the Tribe's claimed

13   reserved right is necessary to serve the "primary" reservation purpose.  The Tribe's

14   and the United States' failure to discuss or even mention *New Mexico*—the leading

15   decision that defines a federal reserved right, and that substantially limited the

16   reserved rights doctrine—amply demonstrates the fallacy of their argument that the

17   Tribe has a reserved right in groundwater here.

18   **B.    The Tribe's Claimed Reserved Right in Groundwater Is Not**

19   **Necessary to Accomplish the Primary Purpose of the Tribe's**
     **Reservation, and Therefore There Is No Basis for the Tribe's**

20   **Claimed Reserved Right.**

21

22   As we now explain, the Tribe's claimed reserved right in groundwater is not

23   necessary to accomplish the primary purpose of the Tribe's reservation, and

24   therefore there is no basis for the Tribe's claimed reserved right in groundwater.

25   _____

26   [2] As DWA has explained, although *New Mexico* held that a federal reserved right—
     once created—is an "exception" to Congress' policy of deference to state law, 438

27   U.S. at 715, *New Mexico* also held that Congress' policy of deference must be taken
     into account in determining whether a federal reserved right was created in the first

28   instance, *id.* at 700-702.  DWA Mem. 14 n. 8.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1   Indeed, the Tribe and the United States do not argue anywhere in their memoranda

2   that the Tribe's claimed reserved right is in groundwater is *necessary* to accomplish

3   the *primary* purpose of the Tribe's reservation, and neither makes any reference to

4   Congress' policy of deference to state water law.

5   **1.    The Tribe Has a Correlative Right to Use Groundwater**

6   **Under California Law, and Therefore the Tribe's Claimed**

7   **Reserved Right Is Not Necessary to Accomplish the Primary**

8   **Reservation Purpose.**

9   First, the rationale of the reserved rights doctrine does not support its

10   application to the groundwater in this case, because the Tribe has a correlative right

11   to use groundwater under California law necessary to satisfy its reservation needs.

12   Under the doctrine of prior appropriation that applies to surface waters in

13   California and other western states, the first appropriator of surface water has

14   priority over subsequent appropriators; to be "first in time" is to be "first in right."

15   *United States v. Gerlach Live Stock Co.*, 339 U.S. 725, 746, 70 S.Ct. 955, 94 L.Ed.

16   1231 (1950); *People v. Shirokow*, 26 Cal.3d 301, 308 (1980); *United States v. State*

17   *Water Res. Cont. Bd.*, 182 Cal.App.3d 82, 102 (1986).  Under the "first in time, first

18   in right" rule of priority, non-Indian appropriators generally acquired prior rights as

19   against Indian tribes in surface waters appurtenant to the tribes' reservations,

20   because the non-Indian appropriators generally began using the water before the

21   tribes began using it.  *Walton*, 647 F.2d at 46.  The reserved rights doctrine was

22   developed, as in *Winters* and *Arizona*, in order that Indian tribes would have prior

23   rights in appurtenant surface waters under federal law even though non-Indian

24   appropriators had acquired prior rights under state appropriation laws.  DWA Mem.

25   15-17.

26

27   The doctrine of correlative rights that applies to groundwater in California is

28   fundamentally different from the prior appropriation doctrine that applies to surface

LAW OFFICES OF
BEST BEST & KRIEGER LLP
200 I N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1    waters, because the correlative rights doctrine is not based on the "first in time, first

2    in right" rule of priority that applies to the surface waters.  Under the correlative

3    rights doctrine, overlying landowners have equal and correlative rights in

4    groundwater underlying their lands, and the correlative rights attach directly to the

5    lands, in the same sense that riparian rights in surface waters attach to the lands;

6    therefore, the "first in time, first in right" rule of priority that applies to

7    appropriation of surface waters does not apply to the correlative rights of overlying

8    landowners in groundwater.  *See, e.g., City of Barstow v. Mojave Wat. Agency,* 23

9    Cal.4th 1224, 1240-1241 (2000); *Pasadena v. Alhambra*, 33 Cal.2d 908, 924

10   (1949); DWA Mem. 15-19.[3]  Therefore, the  Tribe, as an overlying landowner of its

11   reservation, has an equal and correlative right to use groundwater underlying its

12   reservation, and—since the right attaches directly to the land—the right remains

13   intact even though the Tribe does not use or attempt to use groundwater.  There is

14   no conflict between Congress' policy of deference to state law and the Tribe's

15   reservation needs as applied to the use of groundwater, because both goals can be

16   achieved by application of California law.  Since the Tribe has a correlative right to

17   use groundwater under California law, the Tribe's claimed reserved right is not

18   necessary to accomplish the primary purpose of the Tribe's reservation, and thus

19   does not impliedly exist.

20   _____

21   [3] Under California law, a landowner's right to use groundwater underlying his land
     is analogous to the landowner's riparian right to use surface waters appurtenant to

22   his land; the rights in both instances are based on the landowner's "ownership" of
     the land and attach directly to the land, and therefore such rights cannot be lost by

23   nonuse of water.  *Barstow*, 23 Cal.4th at 1240-1241; *California Water Service Co.*

24   *v. Edward Sidebotham & Son*, 224 Cal.App.2d 715, 725 (1964).  As the California
     Supreme Court stated in its landmark decision in *Lux v. Haggin*, 69 Cal. 255, 391

25   (1886), in describing riparian rights:  "The right to the flow of the water *is*

26   *inseparably annexed to the soil*, and passes with it, not as an easement or

27   appurtenant, *but as a parcel.  Use* does not create it, and *disuse* cannot destroy or
     suspend it."  (Original emphasis.)

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1    California is the only western state that recognizes the doctrine of correlative

2    rights as applied to groundwater. *See* Clark, *Groundwater Legislation in Light of*

3    *the Experience in the Western States,* 22 Mont. L. Rev. 42, 50 (1960) (hereinafter

4    "Clark, *Groundwater Legislation*").[4]   California adopted the correlative rights

5    doctrine in 1903, in the California Supreme Court's landmark decision in *Katz v.*

6    *Walkinshaw*, 141 Cal. 116, 134-136 (1903). *Barstow*, 23 Cal.4th at 1240-1241.

7    Other western states recognize other doctrines as applied to groundwater; most

8    states recognize the doctrine of appropriation,[5] some recognize the doctrine of

9    "reasonable use," and some recognize the English common law, which is based on

10   absolute ownership of overlying landowners to the use of groundwater.   Clark,

11   *Groundwater Legislation*, at 50; D. Tarlock, LAW OF WATER RIGHTS AND

12   RESOURCES 409 (J. Damico *et al.* eds. 2014) (stating that Idaho, Kansas, Montana,

13   Nevada, New Mexico, North Dakota, Oregon, South Dakota, Utah, Washington,

14   and Wyoming apply the doctrine of prior appropriation to groundwater).   For

15   example, the State of Washington adopted a statutory appropriative system for

16   groundwater in 1945, which requires an appropriator to acquire a permit to use

17   groundwater; under the 1945 legislation, "the [Washington] Legislature rejected

18   both the correlative rights and the reasonable use doctrines and extended the prior

19   appropriation principles of the surface water code to ground waters."   Office of

---

20
21   [4] Professor Clark's article contains a chart, Chart B, on page 50, which describes
22   the doctrines followed by the western states as of 1959 regarding rights in
     percolating groundwater.   Although other western states are listed as following the
23   English common law, the reasonable use doctrine and the appropriation doctrine as
     applied to groundwater, California is the only western state listed as following the
24   correlative rights doctrine. *Id.*   For the Court's convenience, a copy of Professor
25   Clark's article is attached hereto as Appendix 1.

26   [5] California also recognizes appropriative rights as applied to groundwater, but the
27   rights of appropriators to use groundwater are junior, *i.e.*, subordinate, to the
     correlative rights of overlying landowners to use groundwater. *Barstow*, 23 Cal.4th
28   at 1241.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1    Attorney General, "An Introduction to Washington Water Law" V:9 (Jan. 2000),

2    attached to DWA Request for Judicial Notice, as Exhibit 1.  Since California,

3    unlike other western states, has adopted the correlative rights doctrine as applied to

4    groundwater, the Tribe has a correlative right to use groundwater under California

5    law to satisfy its reservation purpose, and thus its claimed reserved right is not

6    necessary to satisfy the primary reservation purpose.

7              **2.      Other Circumstances of This Case Support the Conclusion
8                         That the Tribe Does Not Have a Reserved Right in
9                         Groundwater.**

10            Apart from the fact that the Tribe has a correlative right to use groundwater

11   under California law, other circumstances of this case also support the conclusion

12   that the Tribe does not have an implied reserved right in groundwater.

13            First, the Tribe does not produce or attempt to produce groundwater from its

14   reservation.  DWA SUF No. 1.  Instead, the Tribe purchases its water supplies from

15   the defendant water agencies, who produce the water from their own wells.  DWA

16   SUF No. 2.  Obviously if the Tribe's claimed reserved right in groundwater were

17   necessary to satisfy the primary purpose of its reservation, the Tribe would produce,

18   or at least attempt to produce, the groundwater.  The Tribe's failure to produce or

19   attempt to produce groundwater demonstrates that the Tribe's claimed reserved

20   right is not necessary to accomplish the primary reservation purpose.  DWA Mem.

21   21-22.  Although the Tribe's complaint alleges that the Tribe and its members "rely

22   on the groundwater resource to satisfy domestic, cultural, commercial, and other

23   homeland purposes," Tribe Compl. ¶ 51, p. 14, the Tribe's complaint fails to

24   mention that the "groundwater" on which it relies is provided by the defendant

25   water agencies, DWA and CVWD.  DWA SUF No. 2.

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1    In addition, the 1938 Whitewater River Decree that adjudicated water rights

2    in the Whitewater River and its tributaries awarded the United States all of the

3    Whitewater River surface water that the United States represented was necessary to

4    satisfy the Tribe's reservation needs, and thus the Decree provided the Tribe with

5    sufficient surface water to meet the reservation needs.  DWA SUF No. 12.  Again,

6    this demonstrates that the Tribe's claimed reserved right in groundwater is not

7    necessary to accomplish the reservation purpose, much less the primary purpose.

8    DWA Mem. 24-25.

9

10        The historical government documents and reports relating to creation of the

11    Tribe's reservation also indicate that the Tribe does not have a reserved right in

12    groundwater.  These historical documents and reports made no mention of the

13    Tribe's use of or dependency on groundwater, DWA SUF No. 4, which indicates

14    that Presidents Grant and Hayes, in issuing the executive orders creating the

15    reservation, did not "impliedly" intend to reserve a right in groundwater.  DWA

16    Mem. 22-24.  The Mission Indians Relief Act, which authorized creation of the

17    Tribe's reservation, provided that the Tribe would be supplied with "sufficient

18    quantity of water for irrigating and domestic purposes," RJN 233, and—since the

19    government documents and reports indicated that the Tribe relied on the surface

20    waters of the Tahquitz and Andreas Creeks for water for irrigation and domestic

21    purposes, CVWD SUF No. 27—the 1891 Act intended that the Tribe would have

22    surface water supplies rather than groundwater supplies for this purpose.  The

23    Smiley Commission report of 1891 stated that the Tribe's members "have depended

24    largely upon water coming from Toquitch Canyon" and had "built a ditch to bring

25    water from the source for their lands" and also "had a supply of water coming from

26    Andreas Canyon," RJN 105, which further indicates that the Tribe relied on surface

27    water supplies but not groundwater.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1    Additionally, public policy considerations—which are relevant in

2    determining whether Presidents Grant and Hayes "impliedly" intended to reserve a

3    right in groundwater in issuing their executive orders—weigh heavily against any

4    "implication" that the Tribe has a reserved right in groundwater.  If the Tribe has a

5    paramount reserved right in groundwater, as the Tribe claims, such a right would

6    impair California's system of groundwater regulation by exempting the Tribe from

7    the principles and requirements of California law that apply to other users of

8    groundwater, particularly the "reasonable use" requirement and the "correlative

9    rights" principle, DWA Mem. 19-21; would have an impact on groundwater uses

10   outside the boundaries of the reservation, *id.* at 25-26; and would impair the

11   defendant water agencies' ability to effectively manage the groundwater resource in

12   the Coachella Valley, by limiting their ability to ensure that the resource is

13   available to all, *id.* at 26-27.

14

15       Moreover, the Tribe's reservation is unique, and the uniqueness of the

16   reservation also weighs against the Tribe's reserved right claim.  The Tribe's

17   reservation forms a checkerboard pattern of lands in and near the City of Palm

18   Springs, in which tribal lands, which are located on even-numbered sections, are

19   interspersed with non-tribal lands, which are located on odd-numbered sections.

20   *Agua Caliente Band of Mission Indians v. Riverside County*, 442 F.2d 1184, 1185

21   (9th Cir. 1971); DWA Mem. 2, 26.  Most of the Tribe's reservation lands have been

22   allotted to the Tribe's members rather than retained for the Tribe's own use, DWA

23   Mem. 2, and many of the allotted lands are owned by or leased to non-Indians.  *Id.*;

24   DWA SUF No. 20.  Because of these unusual circumstances, more than 20,000

25   people reside on the Tribe's reservation, RJN 244-245, even though the Tribe had

26   only about 70 members at the time of the Smiley Commission report in 1891, RJN

27   104, and has only about 440 members today.  Martin Dec., Exh. 3, at 13.  In short,

28   the Tribe's reservation is unique because the tribal lands are interspersed with non-

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   tribal lands in a checkerboard pattern, many tribal lands are owned or leased by
2   non-Indians engaged in business and other activities unrelated to tribal purposes,
3   and most people who reside on the tribal lands are non-Indians rather than Indians.
4   Because of these unique circumstances, the Tribe's reservation is unlike other
5   Indian reservations where Indian reserved water rights have been upheld, such as
6   *Winters*, *Arizona* and *Walton*, which involved very large, wholly intact Indian
7   reservations that had been set aside exclusively for tribal purposes, such as
8   agriculture, hunting and fishing. *Winters*, 207 U.S. 564 (Fort Belknap Indian
9   reservation in Montana); *Arizona*, 373 U.S. at 599-601 (Indian reservations along
10  the Colorado River); *Walton*, 647 F.2d at 46-47 (Colville Indian Reservation in
11  Washington). It is highly unlikely that Presidents Grant and Hayes, in issuing the
12  executive orders creating and expanding the Tribe's checkerboard reservation,
13  impliedly intended that the Tribe would be exempt from California laws that apply
14  to neighboring groundwater users, because the Tribe's use of groundwater would
15  necessarily have significant impacts on the rights and interests of the neighboring
16  users.

17      In *Walton*, for example, the Ninth Circuit, in holding that the Colville Indian
18  Tribe had a reserved right in a creek flowing across the Tribe's reservation, stated
19  that the creek was "located entirely with the reservation" and thus the Tribe's use
20  of the waters would have "no impact off the reservation." *Walton*, 647 F.2d at 53.
21  Conversely, the Tribe's production of groundwater here, were it to occur, would
22  affect the availability of groundwater supplies on neighboring groundwater users,
23  simply because of the checkerboard pattern of the lands. DWA SUF No. 17. The
24  unique circumstances of the Tribe's reservation, and particularly the interspersion
25  of tribal and non-tribal lands, weigh heavily against the conclusion that the Tribe
26  has an implied reserved right in groundwater. DWA Mem. 25-26.

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

## C.    Summary

In sum, the Tribe and the United States fail to demonstrate—or even argue—that the Tribe's claimed reserved right in groundwater meets the *New Mexico* standard, which provides that a reserved right exists only if "necessary" to accomplish the "primary" reservation purpose and prevent it from being "entirely defeated." *New Mexico*, 438 U.S. at 700, 702; *Katie John*, 720 F.3d at 1226.  The Tribe and the United States do not even mention the *New Mexico* standard, much less acknowledge that it applies to the Tribe's reserved right claim.  The Tribe and the United States do not identify the "primary" purpose of the Tribe's reservation as distinguished from "secondary" purposes, or explain why the Tribe's claimed reserved right is necessary to accomplish the primary purpose.  Most significantly, the Tribe and the United States do not argue that the Tribe's correlative right to use groundwater under California law is inadequate to accomplish the primary reservation purpose, and that a federal reserved right is necessary for this purpose.

Thus, the Tribe and the United States have failed to establish that the Tribe's claimed reserved right in groundwater meets the necessary elements of a federal reserved right, as these elements were defined in *New Mexico* and reaffirmed in *Katie John*.  The Tribe's claimed right in groundwater is, at most, a "secondary" reservation purpose, and the Tribe must acquire its right to use water for "secondary" reservation purposes under state law.  *New Mexico*, 438 U.S. at 700, 702; *Walton,* 647 F.2d at 47; *Adair*, 723 F.2d at 1408-1409.  Accordingly, the Tribe's and the United States' motions for summary judgment should be denied, and their complaints should be dismissed.

Indeed, the Court might properly deny the Tribe's and the United States' motions and dismiss their complaints without even reaching the question whether the reserved rights doctrine applies to groundwater.  Since the Tribe and the United

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

States have failed to demonstrate that the Tribe's claimed right meets the necessary elements of a reserved right, irrespective of whether the right is in surface water or groundwater, it may be immaterial whether the reserved rights doctrine even applies to groundwater.

## II.   THE TRIBE'S "HOMELAND" ARGUMENT IS NOT RELEVANT IN DETERMINING WHETHER THE TRIBE HAS A RESERVED RIGHT IN GROUNDWATER.

The Tribe argues that its reservation was created as a "permanent homeland" for the Tribe, with the right of "permanent use and occupancy." Tribe Mem. 2-3, 16-18. Regardless of whether the Tribe's reservation was created as a "homeland," this does not answer the question whether the Tribe has a reserved right in groundwater. The question whether the Tribe has a reserved right in groundwater depends on whether the claimed right is "necessary" to accomplish the "primary" purpose of the Tribe's reservation and prevent it from being "entirely defeated." *New Mexico*, 438 U.S. at 700, 702; *Katie John*, 720 F.3d at 1226. The Tribe's "homeland" argument, first, does not define the "primary" reservation purpose as distinguished from the "secondary" purposes, and second, does not address whether the Tribe's claimed reserved right in groundwater is "necessary" to accomplish the "primary" reservation purpose and prevent it from being "entirely defeated." On the contrary, the Tribe's claimed reserved right in groundwater does not meet the *New Mexico* standard, as explained above and in DWA's earlier memorandum, DWA Mem. 15-22, and neither the Tribe nor the United States argue otherwise. Therefore, the Tribe's "homeland" argument does not support the Tribe's reserved right claim.

The Tribe also argues that its claimed reserved right was "fully vested" on the date that its reservation was created, Tribe Mem. 12, and also that the Tribe may "expand" its use of water and that its right may "grow . . . over time" as necessary

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

to meet the Tribe's "present and future needs." Tribe Mem. 13. Although the Tribe's argument is both internally inconsistent and wrong on the merits,[6] the question of whether the Tribe's claimed reserved right may "expand" and "grow" relates to the quantification of the Tribe's claimed right, which will be addressed in the Phase 3 proceeding, assuming that this case reaches that phase, and is not addressed in this Phase 1 proceeding, which addresses only the question whether the Tribe has a reserved right.

## III. THE TRIBE DOES NOT HAVE AN ABORIGINAL RIGHT IN GROUNDWATER.

The Tribe argues that it has an aboriginal right in groundwater based on its longstanding "use and occupancy" of the reservation lands. Tribe Mem. 18-23. Regardless of whether Indian tribes have aboriginal rights in other contexts, such as fishing and hunting, the Tribe does not have an aboriginal right to divert and use surface water or groundwater, for several reasons.

---

[6] First, the Tribe's argument that its right may "expand" and "grow" to meet "future needs" is inconsistent with its argument that its right was "fully vested" on the date that the reservation was created. A right that is "fully vested" on one one date cannot continue to "expand" and grow" thereafter. Otherwise, the Tribe would have a limitless and open-ended reserved right that could never be fully quantified at any particular point in time. Neither the Supreme Court nor the Ninth Circuit have ever upheld such a limitless and open-ended reserved right as that claimed by the Tribe here. Second, although the Ninth Circuit has held that an Indian reserved right may take into account the Indians' "need to maintain themselves under changed circumstances," *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1981), the Ninth Circuit in that case held that the Indian reserved right was measured by the "practically irrigable acreage" standard that the Supreme Court adopted in *Arizona v. California*, 373 U.S. 546, 599-600 (1963), and thus the Indians' need to "maintain themselves under changed circumstances" related to how much acreage on the reservation is "practically irrigable" rather than how much was actually being irrigated when the reservation was created. *Walton*, 647 F.2d at 47. Thus, to the extent that the Tribe's right, assuming it exists, may "expand and grow," this means only that the Tribe's right is not limited to the acreage actually being irrigated when the reservation was created, but rather that the Tribe's right may encompass "practically irrigable acreage" as well.

## A.   The Tribe's Aboriginal Right Claim Conflicts With the Reserved Rights Doctrine.

First, the Tribe's claimed aboriginal right conflicts with the reserved rights doctrine.  The Supreme Court developed the reserved rights doctrine as applied to Indian rights in order that Indians would have prior rights in appurtenant waters under federal law even though non-Indian appropriators had acquired prior rights under state appropriation laws. *Walton*, 647 F.2d at 46.  The Supreme Court also imposed limitations on the reserved rights, however, in order to minimize the impacts on state water laws and on holders of state-based water rights.  Under these limitations, a federal reserved right applies only to "unappropriated" waters, "vests on the date of the reservation," and is "superior to the right of future appropriators." *Cappaert v. United States*, 426 U.S. 128, 138 (1976).  The Tribe's claimed aboriginal right would not be subject to these limitations; the aboriginal right would have a "time immemorial" priority date, would apply to both appropriated and unappropriated waters, and would be superior to the right of *all* appropriators and not just *future* appropriators.  Thus, the Tribe's aboriginal right claim conflicts with the reserved rights doctrine as applied to Indian water rights, because the aboriginal right would not be subject to limitations that apply to reserved rights and that were developed to limit the impacts on state water laws and state-based water rights.  The Tribe's aboriginal right theory would cause disruption of California's water rights laws and dislocation of state-based water rights, because the Tribe's aboriginal right would prevail over water rights that were acquired under California law even before the Tribe's reservation was created.

If the Tribe has an aboriginal water right based on its longstanding occupancy of its reservation lands, as the Tribe argues, presumably most Indian tribes in America would also have aboriginal water rights based on their longstanding occupancy of their reservation lands.  Thus, the Tribe's aboriginal

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

rights theory would cause disruption of state water laws and dislocation of state-based rights not only in California, but also throughout the nation. Indeed, if Indian tribes have aboriginal rights based on their longstanding occupancy of their reservation lands, there would be no basis for the reserved rights doctrine as applied to Indians to even exist, because the Indians' aboriginal rights would always give them more than their reserved rights. Not surprisingly, no court has ever held that an Indian tribe has an aboriginal right to divert and use water.[7] Notably, the United States in its memorandum does not argue that the Tribe has an aboriginal water right.

**B.      The Tribe's Aboriginal Right Claim Was Extinguished by the Land Claims Act of 1850.**

Apart from the fact that the Tribe does not have an aboriginal water right, the Tribe's claim that it has such a right was extinguished under the Land Claims Act of 1851, 9 Stat. 631 (RJN 226). In *Barker v. Harvey*, 181 U.S. 481 (1901), the Supreme Court held the 1851 Act extinguished Indian aboriginal land claims in California based on pre-war Spanish and Mexican land grants, including the claims

---

[7] Although the Tribe states that the Ninth Circuit's decision in *United States v. Adair*, 723 F.2d 1394 (9th Cir. 1984), is the "leading case" that supports the Tribe's aboriginal right theory, Tribe Mem. 19, *Adair* held only that an 1864 treaty granted the Klamath Indian Tribe in Oregon an aboriginal water right to support its "fishing and hunting rights" with a "time immemorial" priority date. *Adair*, 723 F.2d at 1413-1415. *Adair* is distinguishable here not only because the Klamath Tribe's rights were based on an 1864 treaty not applicable here, but also because *Adair*—although holding that the Indian tribe had an aboriginal right to hunt and fish—did not hold that the tribe had an aboriginal right to divert and use water. DWA Mem. 33 n. 16. If *Adair* were somehow construed as establishing an aboriginal Indian right to divert and use water, *Adair* would conflict with Supreme Court decisions defining the scope of the reserved rights doctrine, particularly *New Mexico* and *Cappaert. Id.* Also, even if *arguendo* the Tribe has an aboriginal right to divert and use water, the Tribe's aboriginal right has been lost by its failure to exercise its right. Cf. *Adair*, 723 F.2d at 1414 (nothing that tribe's hunting and fishing rights were "currently exercised" to maintain a livelihood).

of the Mission Indians. DWA Mem. 34-35. Since the Tribe's aboriginal water right claim is based on its claim of permanent occupancy of its reservation lands, the Supreme Court's decision in *Barker* precludes the Tribe from asserting its aboriginal water right claim.

The Tribe argues that its aboriginal claims were not extinguished by the 1851 Act as interpreted in *Barker,* because the Tribe, although "often characterized" as part of the Mission Indians, is in fact not part of the Mission Indians because it was not "missionized," and therefore its rights were not affected by the 1851 Act or *Barker.* Tribe Mem. 21-22. Regardless of how the Tribe now characterizes itself,[8] the United States characterized the Tribe as part of the Mission Indians during all relevant periods pertaining to creation of the Tribe's reservation, and thus the Tribe's rights were affected by the 1851 Act as interpreted in *Barker*. President Grant, in issuing his 1876 executive order creating the Tribe's reservation, set aside lands for the "Agua Caliente," which lands were "reserved for the permanent use and occupancy of the Mission Indians in southern California." RJN 65. President Hayes, in issuing his 1877 executive order expanding the borders of the Tribe's reservation, set apart the lands "for certain of the Mission Indians." RJN 66. The Mission Indians Relief Act of 1891, 26 Stat. 712, which expressly applied to the "Mission Indians," authorized the Secretary of the Interior to investigate the conditions of the "Mission Indians" of California and "select a reservation of each band or village of the Mission Indians." RJN 231. The Secretary selected a commission, formally known the "Mission Indian Commission" and otherwise known as the Smiley Commission, to examine the conditions of the "Mission

---

[8] The Tribe characterized itself as a "Band of Mission Indians" in an action brought by the Tribe against Riverside County challenging the County's possessory interest tax, according to the title of the Tribe's action in the reported decision. *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir. 1971).

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   Indians." RJN 233. One of the bands of Mission Indians that the Smiley

2   Commission examined was the "Agua Caliente." RJN 104. The Smiley

3   Commission's report contained a lengthy analysis of the Agua Caliente's

4   reservation conditions and needs. RJN 104-109. The Smiley Commission

5   recommended that certain "lands be set aside as a Reservation, to be called Agua

6   Caliente." RJN 107. The Smiley Commission submitted its report to the Secretary

7   in 1891, RJN 72, which was approved by the President in 1891, RJN 172-173, and

8   by Congress in 1892. 27 Stat. 61 (1892); DWA Mem. 3-4.

10          Thus, all relevant historical documents—the presidential executive orders of

11  1876 and 1877 creating and expanding the Tribe's reservation, the Mission Indians

12  Relief Act authorizing creation of the Tribe's reservation, and the Smiley

13  Commission report that studied the Tribe's conditions and circumstances—clearly

14  regarded the Tribe as part of the "Mission Indians." The Tribe's belated attempt to

15  rewrite history by characterizing differently than in the past does not allow the

16  Tribe to avoid the consequences of the 1851 Act as interpreted in *Barker*.[9]

17          Indeed, if the Tribe were not part of the Mission Indians when the Tribe's

18  reservation was created, there would be no legal basis for the Tribe's reservation to

19  exist. In 1864, Congress enacted a statute, the Four Reservations Act, 13 Stat. 90,

20  which authorized the President to "set aside *not exceeding* four tracts of land,

21  ---

[9] The Tribe also argues that the 1851 Act does not apply to the Tribe because
22  section 16 provides that the Act applies only to Indians who "had come under the
23  influence and instruction of the Catholic Padres." Tribe Mem. 21. In fact section
     16 merely states that the Land Commission has a "duty" to ascertain "the tenure by
24  which the mission lands are held, and those held by civilized Indians, and those
     who are engaged in agriculture and labor of any kind, and also those which are
25  occupied and cultivated by Pueblos or Rancheros Indians." 9 Stat. 634 (1851)
26  (RJN 229). Although section 16 requires the Land Commission to investigate these
     circumstances, nothing in the provision suggests that the 1851 Act does not apply to
27  the Tribe.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

within the limits of said state [California], to be retained by the United States for the purposes of Indian reservations." RJN 216 (emphasis added).  Thus, the President was authorized to select four Indian reservations in California, no more. One of the reservations that the President selected was for the Mission Indians (although the President selected several reservations for different bands of the Mission Indians). *Mattz v. Arnett*, 412 U.S. 481, 493-494 (1973); *Donnelly v. United States*, 228 U.S. 243, 258 (1913).  Pursuant to their authority in the 1864 act, Presidents Grant and Hayes issued their executive orders establishing and expanding the Tribe's reservation.  RJN 65-66.  If the Tribe were not part of the Mission Indians when the executive orders were issued, Presidents Grant and Hayes would have lacked authority under the 1864 Act to issue the executive orders establishing and expanding the Tribe's reservation, and there would be no legal basis for the Tribe's reservation to exist.

## C.   *Barker* Applies to the Tribe's Aboriginal Right Claim Irrespective of Whether Its Claim is Based on a Spanish or Mexican Land Grant.

The Tribe argues that *Barker* does not apply to the Tribe's aboriginal right claim because its claim is not based on a Spanish or Mexican land grant.  Tribe Mem. 21.  On the contrary, *Barker* fully applies to the Tribe's claim irrespective of whether it is based on such a land grant.

In *Barker*, certain non-Indian plaintiffs claimed title to a parcel of land in San Diego County based on a Mexican land grant, and the defendants, who were members of the Mission Indians, claimed a superior right to the land, based on their occupancy of the land prior to the Mexican land grant.  *Barker* rejected the Indians' claim.  First, *Barker* held that—if the Indians' occupancy claims were based on a Spanish or Mexican land grant—the claims had been "abandoned," because they had not been presented to the Land Commission as required by the 1851 Act.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

*Barker,* 181 U.S. at 491. Second, *Barker* held that—if the Indians were instead claiming occupancy rights based on their occupation of the lands prior to the Mexican land grant—their claims must also fail, because the Indians' claims would mean that lands occupied by Indian tribes would not be "part of the public domain and subject to the full disposal of the United States," and thus anyone who acquired public domain lands from the United States would acquire nothing more than "a naked fee . . . burdened by an Indian right of permanent occupancy." *Id.* at 491-492.

*Barker* thus made clear that the lands of the Mission Indians in California are part of the public domain and thus subject to "full disposal" by the United States, which was the predicate for the 1876 and 1877 presidential executive orders that set aside a portion of the public domain lands for the Tribe's reservation. If the Tribe has an aboriginal right in its lands based on its longstanding occupancy of the lands, there would be no basis for the 1876 and 1877 executive orders creating and expanding the Tribe's reservation. Since the Tribe does not have aboriginal rights in the lands, it does not have aboriginal rights in waters appurtenant to the lands.

In *United States v. Title Ins. & Trust Co.,* 265 U.S. 472 (1924)—which the United States brought on behalf of a member of the Mission Indians—the Supreme Court reaffirmed its decision in *Barker.* The Court held that regardless of whether the Indians' claims are based on Spanish or Mexican land grants, the Indians do not have rights of permanent occupancy on the public domain lands based on their occupation of the lands, and thus that the rights on such lands are not burdened by a right of Indian permanent occupancy. *Title Ins.,* 265 U.S. at 482-486.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1

## CONCLUSION

2

3       The Tribe's and the United States' motions for summary judgment should be

4   denied.

    Dated: December 5, 2014                    BEST BEST & KRIEGER LLP
5

6

7                                              By: /S/ Roderick E. Walston
                                                   RODERICK E. WALSTON
8                                                  ARTHUR L. LITTLEWORTH
                                                   GENE TANAKA
9                                                  PIERO C. DALLARDA
                                                   STEVEN G. MARTIN
10

11                                                 Attorneys for Defendant
                                                   DESERT WATER AGENCY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1

2

## **PROOF OF SERVICE**

3

At the time of service I was over 18 years of age and not a party to this

4

action.  My business address is Best Best & Krieger LLP, 2001 N. Main Street,

5

Suite 390, Walnut Creek, California 94596.  On November 21, 2014, I served

6

the following document(s):

7

8     DESERT WATER AGENCY'S OPPOSITION TO MOTION FOR
      SUMMARY JUDGMENT OF AGUA CALIENTE BAND OF
9     MISSION INDIANS

10    by transmitting via electronic transmission to the person(s) at the e-mail address(es)

11    set forth below by way of filing the document(s) with the U.S. District Court,

12    Central District of California. Federal Rule of Civil Procedure § 5(b)(2)(E)

13

14    Catherine F. Munson, Esq.                    Pro Hac Vice Attorneys for Plaintiff
      Kilpatrick Townsend & Stockton LLP           Agua Caliente Band of Cahuilla
15    607 Fourteenth Street NW, Suite 900          Indians
      Washington, DC 20005
16

17    Tel:  (202)-508-5844
      Fax: (202) 585-0007
18    cmunson@kilpatricktownsend.com
19    kharper@kilpatricktownsend.com

20    Thierry R. Montoya                           Attorneys for Plaintiff Agua
21    David J. Masutani                            Caliente Band of Cahuilla Indians
      AlvaradoSmith, APC
22    633 W. Fifth Street
      Suite 1100
23    Los Angeles, CA 90071
24

25    Tel: (213) 229-2400
      Fax: (213) 229-2499
26    dmasutani@alvaradosmith.com

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

Heather Whiteman Runs Him, Esq.
Steven C. Moore, Esq.
Native American Rights Fund
1506 Broadway
Boulder, CO 80302

Tel:  (303) 447-8760
Fax: (303) 442-7776
heatherw@narf.org
smoore@narf.org

Pro Hac Vice Attorneys for Plaintiff
Agua Caliente Band of Cahuilla
Indians

Mark H. Reeves, Esq.
Kilpatrick Townsend & Stockton LLP
Enterprise Mill
1450 Greene St., Suite 230,
Augusta, GA  30901

Tel:  (706) 823-4206
Fax: (706) 828-4488
mreeves@kilpatricktownsend.com

Pro Hac Vice Attorneys for Plaintiff
Agua Caliente Band of Cahuilla
Indians

Gerald D. Shoaf, Esq.
Steven B Abbott, Esq.
Redwine & Sherrill
1950 Market Street
Riverside, CA 92501-1704

Tel:  951-684-2520
Fax: 951-684-9583
sabbott@redwineandsherrill.com
gshoaf@redwineandsherrill.com

Attorney for Defendants
Coachella Valley Water District,
Franz De Klotz, Ed Pack, John
Powell, Jr., Peter Nelson, Debi
Livesay

Executed on November 21, 2014, at Walnut Creek, California.

_/s/ Irene Islas_
Irene Islas

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2OO I  N. MAIN STREET, SUITE 39O
WALNUT CREEK, CA 94596

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

01358.00008\9428817.2

- i -