RODERICK E. WALSTON (Bar No. 32675)
roderick.walston@bbklaw.com
STEVEN G. MARTIN (Bar No. 263394)
steven.martin@bbklaw.com
BEST BEST & KRIEGER LLP
2001 N. Main Street, Suite 390
Walnut Creek, California 94596
Telephone: (925) 977-3300
Facsimile: (925) 977-1870

ARTHUR L. LITTLEWORTH (Bar No. 22041)
arthur.littleworth@bbklaw.com
PIERO C. DALLARDA (Bar No. 181497)
piero.dallarda@bbklaw.com
BEST BEST & KRIEGER LLP
3390 University Avenue, Fifth Floor
P.O. Box 1028
Riverside, California 92502
Telephone: (951) 686-1450
Facsimile: (951) 686-3083

Attorneys for Defendant
DESERT WATER AGENCY

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>Defendants. | Case No. 5:13-cv-00883-JGB (SPx)<br>Judge:    Hon. Jesus G. Bernal<br><br>**DESERT WATER AGENCY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF UNITED STATES**<br><br>[Filed with:<br>1.    Appendix of Cited Documents in Support of Opposition to MSJ of the United States.<br><br>2.    Statement of Genuine Disputes of Materials Facts in Opposition to MSJ of the United States ]<br><br>**Date:        February 9, 2015**<br>**Time:        9:00 a.m.**<br>**Dept.:       Courtroom 1**<br><br>Action Filed:    May 14, 2014<br>Trial Date:      Feb. 3, 2015 |

**TABLE OF CONTENTS**

Page

DESERT WATER AGENCY'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF UNITED STATES .........................................1

I.    THE UNITED STATES' AND THE TRIBE'S CLAIMED
      RESERVED RIGHT IN GROUNDWATER IS NOT NECESSARY
      TO ACCOMPLISH THE PRIMARY PURPOSE OF THE TRIBE'S
      RESERVATION, AND THEREFORE THE CLAIMED RIGHT
      DOES NOT IMPLIEDLY EXIST.................................................................1

II.   THE UNITED STATES' AND THE TRIBE'S ADDITIONAL
      ARGUMENTS IN SUPPORT OF THE THEIR RESERVED RIGHT
      CLAIM ARE UNMERITORIOUS.  .............................................................2

      A.    The Fact That a Federal Reserved Right Prevails Over State
            Law—and Thus That the Tribe's Claimed Reserved Right
            Would Not Be Subject to California Laws Relating to
            "Correlative Rights" and "Reasonable and Beneficial Use"—
            Weighs Against Any Implication That the Tribe Has a Reserved
            Right. ............................................................................................2

      B.    The Fact That the Characteristics of a Federal Reserved Water
            Right May Be Different From Those of State-Based Water
            Rights is Irrelevant in Determining Whether a Federal Water
            Right Impliedly Exists.  ...............................................................3

      C.    The Fact That California Law Provides That the Right to Use
            Groundwater Cannot Be Lost by Nonuse Further Demonstrates
            That the Tribe Does Not Have a Reserved Right in
            Groundwater. .................................................................................4

      D.    Regardless of Whether Interests and Equities of Competing
            Water Users Are Balanced, Congress' Policy of Deference to
            State Water Law Must Be Considered in Determining Whether a
            Federal Reserved Water Right Exists, And This Congressional
            Policy Weighs Against the Tribe's Reserved Right Claim.  .............6

      E.    Recently-Enacted State Legislation Does Not Support the
            United States' and the Tribe's Reserved Right Claim.  ...................7

      F.    The California Supreme Court's Decision in Hallett Creek Does
            Not Support the Reserved Right Claim. ........................................8

III.  THE CASE AUTHORITY CITED BY THE UNITED STATES AND
      THE TRIBE DOES NOT SUPPORT THE UNITED STATES' AND
      THE TRIBE'S RESERVED RIGHT CLAIM.  ..........................................10

      A.    The Supreme Court's Decisions in Winters and Arizona Do Not
            Support the Reserved Right Claim. ..............................................10

      B.    The Ninth Circuit's Decisions in Walton and Cappaert Do Not
            Support the Reserved Right Claim.  .............................................12

            1.    Colville Confederated Tribe v. Walton..............................12

            2.    United States v. Cappaert........................................................13

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

- i -

**TABLE OF CONTENTS**
(continued)

Page

C.   The State Supreme Court Decisions Cited by the United States and the Tribe Do Not Support the Reserved Right Claim.  ..............15

D.   The Lower Court Decisions Cited by the United States and Tribe Do Not Support the Tribe's Reserved Right Claim.  ..............19

CONCLUSION ...............................................................................................25

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adjudication of All Rights to Use Water in the Big Horn System,*
   753 P.2d 76 (Wyo. 1988).............................................................................18, 20

*Arizona v. California,*
   373 U.S. 546 (1963)....................................................................................10, 11

*California Water Service Co. v. Edward Sidebotham & Son,*
   224 Cal.App.2d 715 (1964) ...............................................................................5

*Cappaert v. United States,*
   426 U.S. 128 (1976)...............................................................................*passim*

*City of Barstow v. Mojave Water Agency,*
   23 Cal.4th 1224 (2000)....................................................................................5, 9

*Colville Confederated Tribe v. Walton,*
   647 F.2d 42 (9th Cir. 1981) ...........................................................................12, 22

*Colville Confederated Tribes v. Walton,*
   460 F.Supp. 1320 (E.D. Wash. 1978)............................................................19, 20

*Confederated Colville Tribes v. Walton,*
   490 F.2d 42 (9th Cir. 1981) .........................................................................*passim*

*Confederated Salish and Kootenai Tribes of the Flathead Reservation
   v. Stults,*
   59 P.3d 1093 (Mont. 2002)......................................................................16, 17, 23

*Crosby v. National Foreign Trade Council,*
   530 U.S. 363 (2000).............................................................................................2

*In re General Adjudication of All Rights to Use Water in the Gila
   River System and Source,*
   989 P.2d 739 (Ariz. 1999) .........................................................................*passim*

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

*In re General Adjudication of All Rights to Use Water in Gila River*
  *System and Source,*
  989 P.2d 76 (Ariz. 1999) ................................................................22

*In re Water of Hallett Creek Stream System,*
  44 Cal.3d 448 (1988) ..............................................................*passim*

*Gila River Pima-Maricopa Indian Community v. United States,*
  9 Ct. Cl. 660 (1986) ...........................................................19, 20

*Joslin v. Marin Mun. Wat. Dist.,*
  67 Cal.2d 132 (1967) .................................................................3

*Katie John v. United States,*
  720 F.3d 1214 ...................................................................10, 24

*Lux v. Haggin,*
  69 Cal. 255 (1886) ...................................................................6

*Peabody v. City of Vallejo,*
  2 Cal.2d 351 (1935) .................................................................3

*Preckwinkle v. Coachella Valley Water Dist.,*
  Case No. 5:05-cv-626, ECF No. 210, Slip Op. 28 (C.D. Cal. Aug.
  30, 2011) .......................................................................19, 20

*State of New Mexico ex rel. Reynolds v. Aamodt,*
  618 F.Supp. 993 (D.N.M. 1985) .................................................19, 20

*Soboba Band of Mission Indians v. United States,*
  37 Ind. Cl. Comm. 326, 341 (1976) ...............................................19

*Tweedy v. Texas Co.,*
  286 F.Supp. 383 (D. Mont. 1968) ..........................................19, 23, 24

*United States v. Anderson,*
  736 F.2d 1358 (9th Cir. 1984) ....................................................22

*United States v. Appalachian Elec. Power Co.,*
  311 U.S. 377 (1940) ...............................................................15

*United States v. Cappaert,*
  508 F.2d 313 (9th Cir. 1974) .................................................12, 13

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

*United States v. Fallbrook Pub. Util. Dist.,*
    Case No. 1247-SD-C (S.D. Cal. 1962), aff'd 347 F.2d 48 (9th Cir.
    1965) ..................................................................................................19, 21, 22

*United States v. New Mexico,*
    438 U.S. 696 (1978)................................................................................*passim*

*United States v. Oregon,*
    44 F.3d 758 (9th Cir. 1994) .................................................................15

*United States v. Washington,*
    2007 U.S. Dist. Lexis 86162 (W.D. Wash., Nov. 20, 2007) ..............23

*United States v. Washington,*
    Case No. 2:01-cv-47-TSZ, ECF No. 304, Slip Op. 8 (W.D. Wash.
    Feb. 24, 2003) ...............................................................................19, 22, 23

*Winters v. United States,*
    207 U.S. 564 (1908)................................................................................*passim*

*Wood v. Etiwanda Water Co.,*
    147 Cal. 228, 233-234 .............................................................................5

**Statutes**

43 U.S.C. § 666...............................................................................................15

Cal. Water Code § 1240..................................................................................5

Cal. Water Code § 1241.5...............................................................................5

Cal. Water Code § 10720.3(d) .......................................................................8

Sustainable Groundwater Management Act, Cal. Water Code § 10720
    *et seq.* ...................................................................................................8

**Other Authorities**

33 C.F.R. § 328.3(a)(3), -(a)(5) ......................................................................15

Clark, *Groundwater Legislation in Light of the Experience in the
    Western States,* 22 Mont. L. Rev. 42, 50 (1960) ...........................18, 24

W. Hutchins, *The California Law of Water Rights 40* (1956)....................5

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

**DESERT WATER AGENCY'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF UNITED STATES**

Desert Water Agency ("DWA") submits this opposition to the motion for summary judgment of the United States.  The United States and the Agua Caliente Band of Mission Indians ("Tribe") make several similar arguments in their motions for summary judgment, and this memorandum responds to arguments primarily made by the United States, although the memorandum will make reference to the Tribe's arguments where appropriate.  DWA will file a separate memorandum responding to arguments primarily made by the Tribe.[1]

I. **THE UNITED STATES' AND THE TRIBE'S CLAIMED RESERVED RIGHT IN GROUNDWATER IS NOT NECESSARY TO ACCOMPLISH THE PRIMARY PURPOSE OF THE TRIBE'S RESERVATION, AND THEREFORE THE CLAIMED RIGHT DOES NOT IMPLIEDLY EXIST.**

Both the United States and the Tribe argue that the presidential executive orders of 1876 and 1877, in creating the Tribe's reservation, impliedly included the reservation of a right in groundwater.  U.S. Mem. 4-5; Tribe Mem. 5, 6.  DWA responded to this argument in its opposition to the Tribe's motion for summary judgment, at pages 1-12, and DWA's response is incorporated by reference herein.

---

[1] As used in this memorandum, "U.S. Mem." refers to the United States' memorandum of points and authorities in support of its motion for summary judgment (Doc. 83), "Tribe Mem." refers to the Tribe's memorandum of points and authorities in support of its motion for summary judgment (Doc. 85-1), "DWA Mem." refers to DWA's memorandum of points and authorities in support of its motion for summary judgment (Doc. 84-1), and "DWA Opp. to Tribe MSJ" refers to DWA's memorandum in opposition to the Tribe's motion for summary judgment.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

## II.   THE UNITED STATES' AND THE TRIBE'S ADDITIONAL ARGUMENTS IN SUPPORT OF THE THEIR RESERVED RIGHT CLAIM ARE UNMERITORIOUS.

The United States and the Tribe make various additional arguments in support of their claim that the Tribe has a reserved right in groundwater.  As we explain, these additional arguments are without merit.

### A.   The Fact That a Federal Reserved Right Prevails Over State Law—and Thus That the Tribe's Claimed Reserved Right Would Not Be Subject to California Laws Relating to "Correlative Rights" and "Reasonable and Beneficial Use"—Weighs Against Any Implication That the Tribe Has a Reserved Right.

The United States and the Tribe argue that a federal reserved water right prevails over state law, and therefore that the Tribe's claimed reserved right in groundwater prevails over California law.  U.S. Mem. 16-19; Tribe Mem. 9-12. DWA agrees that—since a reserved right is based on federal law—such a right would prevail over state law under the Supremacy Clause of the Constitution. *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000) (holding that federal law prevails over state law under Supremacy Clause).  As the Supreme Court stated in *Cappaert*, "[f]ederal water rights are not dependent upon state law or state procedures."  *Cappaert v. United States*, 426 U.S. 128, 145 (1976).

However, the fact that a federal reserved right prevails over state law weighs against any "implication" that the Tribe has a reserved right in groundwater.  If the Tribe has a reserved right in groundwater, the right would not be subject to the requirements of California law that apply to all other users of groundwater, specifically (1) the requirement that all overlying landowners have "correlative rights" and thus all share equally in times of shortage, and (2) the requirement that the right to use groundwater law is subject to California's constitutional standard of "reasonable and beneficial use."  DWA Mem. 19-21.  Under its reserved right claim, the Tribe would have a paramount right to use groundwater for all

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   reservation purposes—even undefined "future" purposes according to the Tribe's

2   argument, Tribe Compl. ¶ 62—before anyone else could use a single drop of

3   groundwater.  Thus, the Tribe's right would not be correlative with the rights of

4   other overlying landowners, and would not be subject to California's constitutional

5   standard of "reasonable and beneficial use."  Such a result would impair

6   California's system of groundwater administration by exempting the Tribe from

7   California laws that apply to all other users of groundwater in California.

8   California's "reasonable and beneficial use" standard, in particular, ensures that

9   California's limited water resources are put to maximum beneficial use

10  commensurate with the need to conserve such water resources.  *Joslin v. Marin*

11  *Mun. Wat. Dist.*, 67 Cal.2d 132, 140 (1967) (describing constitutional standard);

12  *Peabody v. City of Vallejo*, 2 Cal.2d 351, 368 (1935) (same); DWA Mem. 19-21.  If

13  the Tribe were exempt from this constitutional standard, the Tribe would have no

14  obligation to participate with other groundwater users in achieving maximum

15  beneficial use of California's limited water supply.  It is highly unlikely that

16  Presidents Grant and Hayes, in issuing the 1876 and 1877 executive orders that

17  created and expanded the Tribe's reservation, "impliedly" intended to exempt the

18  Tribe from the requirements of California law that apply to all other users of

19  groundwater and are necessary to ensure the efficient administration of California

20  water laws, particularly because the Tribe has the same right to use groundwater as

21  others under California law.

## B.    The Fact That the Characteristics of a Federal Reserved Water Right May Be Different From Those of State-Based Water Rights is Irrelevant in Determining Whether a Federal Water Right Impliedly Exists.

25  The United States argues that the Tribe's claimed reserved right "differ[s]

26  significantly" from its right to use groundwater under California law, because a

27  federal reserved right (1) is measured differently from a state-based right, (2) vests

1   on a different date than a state-based right, and (3) is not lost by nonuse of water.

2   U.S. Mem. 22.[2]  The United States' argument is irrelevant concerning the issue

3   here, which is whether the Tribe has a reserved right in groundwater.  The fact that

4   the characteristics of a federal reserved water right may differ from those of a state-

5   based right—in terms of whether the federal right is measured differently from and

6   vests on a different date than a state-based right, and is not lost by nonuse of

7   water—is irrelevant in determining whether the federal water right was impliedly

8   reserved in the first instance.  Whether a federal water right was impliedly reserved

9   depends on whether it is necessary to accomplish the primary reservation purpose

10  and prevent this purpose from being "entirely defeated."  *United States v. New*

11  *Mexico,* 438 U.S. 696, 700, 702 (1978).  This inquiry—whether the federal reserved

12  water right impliedly exists—is wholly unrelated to the characteristics of federal

13  reserved right, once deemed to exist.

14      The characteristics of the Tribe's claimed reserved right, assuming *arguendo*

15  it exists, are not raised in this Phase 1 proceeding, which addresses only whether

16  the Tribe has a reserved right, and will be addressed in subsequent phases of this

17  case, assuming that the case reaches these phases.

18  **C.    The Fact That California Law Provides That the Right to Use**
19  **      Groundwater Cannot Be Lost by Nonuse Further Demonstrates**
20  **      That the Tribe Does Not Have a Reserved Right in Groundwater.**

21      Although the United States' and the Tribe's argument that a federal reserved

22  right is not lost by nonuse of water is not relevant in the Phase 1 proceeding, as

23  explained above, the argument nonetheless necessitates two responses on the

---

24

25  [2] The Ninth Circuit has held that a federal reserved right cannot be lost by nonuse of
26  water.  *Confederated Colville Tribes v. Walton*, 490 F.2d 42, 51 (9th Cir. 1981).
    The Supreme Court, however, has never addressed whether a federal reserved right
27  is subject to abandonment, relinquishment or forfeiture if not exercised within a
28  reasonable period of time.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
200 I. N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

merits. First, regardless of whether a federal reserved right, once deemed to exist, can or cannot be lost by nonuse of water, the Tribe's failure to produce or attempt to produce groundwater from its reservation demonstrates, in addition to other factors, that the Tribe's claimed reserved right in groundwater is not "necessary" to accomplish the primary reservation purpose, and thus that the Tribe's claimed right does not impliedly exist in the first place. DWA Mem. 21-22. If the Tribe's claimed reserved right were necessary to accomplish the primary reservation purpose, presumably the Tribe would exercise or at least attempt to exercise the right, which the Tribe does not do. The Tribe's failure to produce or attempt to produce groundwater undermines its reserved right claim, irrespective of whether a reserved right can or cannot be lost by nonuse.

Second, the United States is plainly wrong in stating that, in the context of this case, a federal reserved right is different from a state-based water right because a reserved right cannot be lost by nonuse of water. U.S. Mem. 22. Although the right of an appropriator to use *surface* water under California law can be lost by nonuse, Cal. Water Code § 1240; *Wood v. Etiwanda Water Co.*, 147 Cal. 228, 233-234 (1905); W. Hutchins, *The California Law of Water Rights 40* (1956),[3] the correlative right of an overlying landowner to use *groundwater* under California law cannot be lost by nonuse, because the right attaches to the land.[4] Thus, the

_____

[3] Under California law, however, the right of an Indian tribe to appropriate surface water cannot be lost for nonuse for a period of five years following conveyance of the right by the United States to the tribe. Cal. Water Code § 1241.5.

[4] As DWA stated in its memorandum in opposition to the Tribe's motion for summary judgment, DWA Opp. to Tribe MSJ, at 6 n. 3, a landowner's right to use groundwater underlying his land under California law is analogous to the landowner's riparian right to use surface waters appurtenant to his land, and—since the rights in both instances are based on the landowner's "ownership" of the land and attach directly to the land—the rights in neither instance can be lost by nonuse of water. *Barstow*, 23 Cal.4th at 1240-1241; *California Water Service Co. v.*

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   Tribe's correlative right to use groundwater under California law cannot be lost by

2   its failure to exercise the right, which further demonstrates that the Tribe's claimed

3   reserved right in groundwater is not necessary to accomplish the primary

4   reservation purpose.  The difference between the right to use groundwater and the

5   right to use surface water under California law—in that the latter can be lost by

6   nonuse and the former cannot be lost by nonuse—further explains why the reserved

7   rights doctrine, which applies to surface water, does not apply to groundwater in

8   this case.  Since the Tribe's right to use groundwater under California law cannot be

9   lost by nonuse, the Tribe's claimed federal reserved right to use groundwater does

10   not afford greater protection for its reservation needs in this respect than its right to

11   use groundwater under California law.

### D. Regardless of Whether Interests and Equities of Competing Water Users Are Balanced, Congress' Policy of Deference to State Water Law Must Be Considered in Determining Whether a Federal Reserved Water Right Exists, And This Congressional Policy Weighs Against the Tribe's Reserved Right Claim.

16   The United States argues that *Winters* doctrine Indian rights arise "without

17   regard to equities that may favor competing water users."  U.S. Mem. 20-21.  To be

18   sure, the Supreme Court in *Cappaert* stated that a federal reserved right is not

19   subject to a "balancing of interests" between the reserved right holder and the

20   holders of state-based rights.  *Cappaert*, 426 U.S. at 138.  On the other hand, the

21   dissenting opinion in *New Mexico* stated, in apparent agreement with the majority

22   opinion, that "the implied-reservation doctrine should be applied with sensitivity to

23   its impact upon those who have obtained water rights under state law and to

25   *Edward Sidebotham & Son*, 224 Cal.App.2d 715, 725 (1964).  As the California
Supreme Court stated in its landmark decision in *Lux v. Haggin*, 69 Cal. 255, 391

26   (1886), in describing riparian rights:  "The right to the flow of the water *is*

27   *inseparably annexed to the soil*, and passes with it, not as an easement or
appurtenant, *but as a parcel.  Use* does not create it, and *disuse* cannot destroy or

28   suspend it."  (Original emphasis.)

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

Congress' general policy of deferring to state water law." *New Mexico*, 438 U.S. at 718 (Powell, J., dissenting). If the reserved rights doctrine is applied with "sensitivity" to its impact on holders of state-based water rights, then presumably there must be some "balancing" of the interests and equities of reserved rights holders and holders of state-based rights. Thus, *New Mexico* suggests that the rights and interests of the competing users must be considered and balanced in determining the nature and scope of a federal reserved right. This Court need not resolve this issue in this Phase 1 proceeding, however, because any competition between the Tribe's claimed rights and the rights of non-Indian users in groundwater will be resolved in the Phase 3 proceeding, assuming that the case reaches that phase.

Regardless of whether the interests of competing users must be balanced, the Supreme Court in *New Mexico* held that Congress' policy of deference to state water law must be taken into account in determining whether a federal reserved water right exists in the first instance. *New Mexico*, 438 U.S. at 700-702; *In re Water of Hallett Creek Stream System*, 44 Cal.3d 448, 461 (1988) (*New Mexico* adopted a "narrow construction" of the reserved rights doctrine because of the congressional policy "of deferring to state water law."); DWA Mem. 11-13. As DWA has argued, there is no conflict between Congress' policy of deference to state law and the Tribe's reservation needs, because the Tribe has a correlative right to use groundwater under California law, and thus Congress' deference to state water law is fully compatible with the Tribe's reservation needs. DWA Mem. 18.

### E.   Recently-Enacted State Legislation Does Not Support the United States' and the Tribe's Reserved Right Claim.

The United States and the Tribe argue that recent California legislation "confirms" that the Tribe has a reserved right in groundwater. U.S. Mem. 14; Tribe Mem. 11. The United States and the Tribe have overstated the effect of the

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1   legislation.  The legislation, entitled the Sustainable Groundwater Management Act,

2   Cal. Water Code § 10720 *et seq.*, includes a provision stating that in an

3   "adjudication" and "management" of a groundwater basin, "federal reserved water

4   rights to groundwater shall be respected in full," "federal law shall prevail" in cases

5   of "conflict" between federal and state law, and that "[t]his subdivision is

6   declaratory of existing law."  Cal. Water Code § 10720.3(d).  Since the provision is

7   "declaratory of existing law," the provision does not change the law regarding

8   whether federal reserved rights exist; that is, the provision does not affect any

9   reserved rights that do exist, or create reserved rights that do not exist.  Thus, if the

10  United States possesses any reserved rights in groundwater in California—which

11  conceivably might occur, for example, if Congress expressly authorized a federal

12  reserved right in groundwater for a specific reservation of land in California, which

13  Congress has the power to do (and might do by approving a settlement agreement

14  for a specific reservation of land)—the statutory provision does not affect any such

15  right.  On the other hand, if the United States does *not* have a reserved right in

16  groundwater for a specific reservation of land, as DWA argues the Tribe does not

17  have in this case, the Act does not create or "confirm" any such right, because the

18  Act is expressly "declaratory of existing law."  The question whether the Tribe has

19  a reserved right in groundwater will be adjudicated by this Court.  Therefore, the

20  Act does not support the United States' and the Tribe's contention that the statute

21  "confirms" the Tribe's reserved right claim in groundwater.[5]

22  **F.    The California Supreme Court's Decision in *Hallett Creek* Does
23        Not Support the Reserved Right Claim.**

24  The United States argues that DWA's argument—that the Tribe does not

25  have a reserved right in groundwater because it has the right to use groundwater

26  _____

27  [5] The provision's statement that "federal shall prevail" in the event of a "conflict"
    between federal law and state law is also "declaratory of existing law," because, as
28  stated earlier, a federal reserved right, where it exists, prevails over state law.

under California law—is inconsistent with the California Supreme Court's decision in *In re Water of Hallett Creek Stream System*, 44 Cal.3d 448 (1988), which, the United States asserts, recognized "availability of federal reserved rights for primary purposes of reservations, and use of state based riparian rights for secondary purposes." U.S. Mem. 23.

First, the United States mischaracterizes the *Hallett Creek* decision. Contrary to the United States' argument, *Hallett Creek* did not distinguish between primary and secondary reservation purposes, and hold that federal reserved rights apply to primary purposes and state-based riparian rights apply to secondary purposes. Instead, *Hallett Creek* held that—even though the United States may have reserved rights in waters appurtenant to reserved lands under federal law—the United States nonetheless possesses the same riparian rights in such waters under California law that other landowners in California possess in waters appurtenant to their own lands. *Hallett Creek*, 44 Cal.3d at 459-467. In short, *Hallett Creek* held that the United States has the same riparian rights in reserved federal lands under California law that other landowners have in their own lands. *Id.* at 467 ("[W]e conclude that under California law riparian water rights exist on federal lands located within the State of California.").

Second, *Hallett Creek*, rather than supporting the United States' argument that the Tribe has a reserved right in groundwater, instead contradicts the argument. Since *Hallett Creek* held that the United States has the same riparian rights as other landowners under California law, and since the rights of overlying landowners to use groundwater are "analogous" to the riparian rights of the landowners, *City of Barstow v. Mojave Water Agency*, 23 Cal.4th 1224, 1240 (2000), *Hallett Creek* indicates that the United States has the same correlative right under California law to use groundwater on reserved federal lands as other overlying landowners have to use groundwater underlying their own lands. Simply put, since the United States

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

has the same riparian rights as other landowners under California law, the United States also has the same correlative rights to use groundwater as other landowners under California law. This further demonstrates that the Tribe's claimed reserved right in groundwater is not necessary to accomplish the primary purpose of the Tribe's reservation, and thus does not impliedly exist.

## III.   THE CASE AUTHORITY CITED BY THE UNITED STATES AND THE TRIBE DOES NOT SUPPORT THE UNITED STATES' AND THE TRIBE'S RESERVED RIGHT CLAIM.

The United States and the Tribe argue that the Tribe's reserved right claim is supported by various decisions of the Supreme Court, the Ninth Circuit, state supreme courts, and lower courts. U.S. Mem. 4-7, 8-9; Tribe Mem. 6-10. Notably, the United States and the Tribe make virtually no mention of the Supreme Court's decision in *New Mexico*, the leading decision that defines a federal reserved water right and that narrowly construed the right. Apart from the United States' and the Tribe's failure to discuss or mention *New Mexico*, the cases they cite do not support the United States' and the Tribe's reserved right claim.

### A.   The Supreme Court's Decisions in *Winters* and *Arizona* Do Not Support the Reserved Right Claim.

The United States and the Tribe argue that the Tribe's reserved right claim in groundwater is supported by the Supreme Court's decisions in *Winters v. United States*, 207 U.S. 564 (1908), and *Arizona v. California*, 373 U.S. 546 (1963). U.S. Mem. 5, 8-9; Tribe Mem. 6-10. In fact, the decisions do not support the claim.

*Winters* and *Arizona* were decided before the Supreme Court's decision in *New Mexico*, which adopted a "narrow construction" of the reserved rights doctrine because of the congressional policy of "deferring to state water law." *In re Water of Hallett Creek Stream System*, 44 Cal.3d 448, 461 (1988). *See Katie John v. United States,* 720 F.3d 1214, 1226 (*New Mexico* adopted a "narrow rule" concerning the reserved rights doctrine). Thus, *Winters* and *Arizona* do not

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

represent the Supreme Court's modern jurisprudence concerning interpretation of the reserved rights doctrine.

Even so, *Winters* and *Arizona* do not support the Tribe's reserved right claim. The decisions held that the Indian tribes in those cases had reserved rights in surface waters because the waters were necessary for the tribes to sustain themselves on their reservations, and that—absent a reserved right—the tribes would have no access to or rights in waters necessary to support the reservations. In *Winters*, the Supreme Court held that the Fort Belknap Indian tribe had a reserved right in the surface waters of the Milk River in Montana because non-Indian appropriators claimed prior rights under the state appropriation rule of "first in time, first in right," and that the reserved right was necessary because "[t]he [reservation] lands were arid and, without irrigation, were practically valueless." *Winters*, U.S. at 576.  In *Arizona*, the Supreme Court held that since the Indian tribes' reservations were located in the arid deserts of the Colorado River basin, the tribes had reserved rights in the waters because the waters were "essential to the life of the Indian people . . . ." *Arizona*, 373 U.S. at 599.

Here, the Tribe's claimed reserved right in groundwater is not "essential to the life of the Indian people" or necessary to prevent the reservation lands from being "practically valueless," because the Tribe has a correlative right to use groundwater under California law in order to meet its reservation needs.  DWA Mem. 15-19.  Thus, the necessity of the reserved right in *Winters* and *Arizona* to meet the reservation needs does not exist in this case.  In addition, the Tribe does not produce or attempt to produce groundwater from its reservation and instead purchases its water supplies from the defendant water agencies, further demonstrating that the Tribe's claimed reserved right is not necessary to meet its reservation needs.  DWA Mem. 21-22.  Also, the 1938 Whitewater River Decree provided the Tribe will sufficient Whitewater River surface water to meet its

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

reservation needs, again demonstrating that a federal reserved right is not necessary for this purpose.  DWA Mem. 24-25.  These circumstances, among others, distinguish this case from *Winters* and *Arizona*, where the federal reserved rights were necessary to ensure that the reservation lands were not valueless and were essential to the life of the Indians.  Thus, *Winters* and *Arizona* do not support the Tribe's reserved right claim.

### B.   The Ninth Circuit's Decisions in *Walton* and *Cappaert* Do Not Support the Reserved Right Claim.

The United States and the Tribe argue that the Tribe's reserved right claim is supported by the Ninth Circuit's decisions in *Colville Confederated Tribe v. Walton*, 647 F.2d 42 (9th Cir. 1981), and *United States v. Cappaert*, 508 F.2d 313, 317 (9th Cir. 1974), which the Supreme Court affirmed on other grounds in *Cappaert v. United States*, 426 U.S. 128 (1976).  U.S. Mem. 4-7, 8-9; Tribe Mem. 6-10.  Again, the decisions do not support the claim.

#### 1.   *Colville Confederated Tribe v. Walton*

In *Walton*, the Ninth Circuit held that the Colville Indian tribe in Washington had a reserved right in the surface waters of the No Name Creek, and thus that a non-Indian owner of allotted lands had a derivative reserved right in the waters.  In upholding the reserved right claim, the Ninth Circuit stated that the Colville Indians traditionally depended on the No Name Creek to supply salmon and trout—which were "traditional foods for the Colville Indians"—and that the Indians "cultivated No Name Creek's lower reach to establish spawning grounds," but that "irrigation use depleted the water flow during the spawning season."  *Walton*, 647 U.S. at 45.  Since non-Indian irrigation uses were depleting the water resource upon which the Colville Indians depended for their sustenance, the Ninth Circuit, citing the Supreme Court's decisions in *Winters* and *Arizona*, concluded that the Colville Indian's reservation would be "useless" in the absence of a federal reserved right in the creek, and thus that the Indians had an "implied" reserved right.  *Id.* at 47.  The

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

Ninth Circuit also stated that the No Name Creek "is located entirely within the reservation," and thus the tribe's use of the water would have "no impact off the reservation." *Id.* at 53.

The circumstances of the instant case are entirely different from those of *Walton*, apart from the fact that *Walton* involved a reserved right claim in surface waters rather than groundwater. First, the Tribe's reserved right claim here is not necessary to prevent its reservation from being "useless," because, as described above, (1) the Tribe has a correlative right to produce groundwater under California law, (2) the Tribe does not produce or attempt to produce groundwater, and (3) the 1938 Whitewater River Decree provided the Tribe with sufficient Whitewater River surface waters to meet its reservation needs. DWA Mem. 15-19, 21-22, 24-25. Second, since the groundwater in which the Tribe claims a reserved right is not "located entirely within the reservation"—but instead underlies the entire Coachella Valley, and underlies numerous public and private lands in the valley—the Tribe's potential use of the groundwater would have an "impact off the reservation," unlike the tribal reserved right in *Walton*. DWA Mem. 25-26. Thus, *Walton* does not support the Tribe's reserved right claim.

### 2. United States v. Cappaert

In *Cappaert*, the United States sought to enjoin a landowner's pumping of groundwater that reduced the level of a pool of water in an underground cavern in Devil's Hole, a national monument located in Nevada. The Ninth Circuit concluded that the pool of water was groundwater in which the United States had a reserved right, and therefore the landowner's pumping should be enjoined because it interfered with the United States' reserved right in the groundwater. The Supreme Court affirmed the Ninth Circuit decision but on a much narrower ground. The Supreme Court stated that the pool of water was actually surface water rather than groundwater, but that the landowner's pumping of the groundwater should be

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2OO1 N. MAIN STREET, SUITE 39O
WALNUT CREEK, CA  94596

1   enjoined because it interfered with the United States' reserved right in the surface

2   water. *Cappaert*, 426 U.S. at 143. The Supreme Court specifically declined to

3   consider whether the United States had a reserved right in groundwater, stating that

4   "[n]o cases of this Court have applied the doctrine of implied reservation of water

5   rights to groundwater." *Id.* at 142.

6
7       Thus, the Supreme Court in *Cappaert* did not hold that the United States had

8   a reserved right in *groundwater*. Instead, the Court held that the United States had

9   a reserved right in *surface* water, and that the United States had the right to enjoin

10  the groundwater pumping because it was interfering with the United States'

11  reserved right in *surface* water.

12      Although the Ninth Circuit in *Cappaert* held that the United States had a

13  reserved right in the groundwater, the Ninth Circuit's decision is undermined by the

14  Supreme Court's subsequent characterization of the pool of water in the

15  underground cavern as surface water rather than groundwater, contrary to the Ninth

16  Circuit's characterization. *Cappaert,* 426 U.S. at 142-143. The Supreme Court's

17  obvious reluctance to extend the reserved rights doctrine to groundwater—even to

18  the point of characterizing an underground body of water as surface water rather

19  than groundwater, and rejecting the Ninth Circuit's characterization otherwise—

20  demonstrates that the characterization of water as either surface water or

21  groundwater may be highly relevant if not determinative concerning whether a

22  federal reserved right applies to the water. The Supreme Court's obvious

23  reluctance to extend the reserved rights doctrine to groundwater casts doubt on the

24  Ninth Circuit's conclusion that the doctrine applies to groundwater.

25
26      Indeed, the federal courts have often distinguished between surface waters

27  and groundwater in the context of water regulation, which further demonstrates,

28  contrary to the Ninth Circuit's conclusion in *Cappaert,* that the reserved rights

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

doctrine does not apply to groundwater simply because it applies to surface water. For example, although the federal government has the power to regulate navigable surface waters under the Commerce Clause of the Constitution, *e.g., United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 406 (1940), no court has ever held or suggested that the federal government's power to regulate surface waters under the Commerce Clause includes the power to regulate groundwater.  Federal regulations adopted pursuant to the Clean Water Act provide for regulation of quality of surface waters, including tributaries and wetlands, but not groundwater. 33 C.F.R. § 328.3(a)(3), -(a)(5).  As the Ninth Circuit has stated, "[o]ne of the ways in which the law has traditionally ignored the exhortation of scientists is by treating ground and surface water as distinct subjects, often applying separate laws to each." *United States v. Oregon*, 44 F.3d 758, 769 (9th Cir. 1994).[6]  Since the federal courts have often distinguished between surface water and groundwater in various contexts, the fact that the reserved rights doctrine applies to surface water does not support the conclusion that it applies to groundwater.

### C.  The State Supreme Court Decisions Cited by the United States and the Tribe Do Not Support the Reserved Right Claim.

The United States and the Tribe argue that the Tribe's reserved right claim in groundwater is supported by the decisions of the Arizona Supreme Court in *In re General Adjudication of All Rights to Use Water in the Gila River System and*

---

[6] In *Oregon*, the United States argued that the McCarran Amendment, 43 U.S.C. § 666, which waives the federal government's sovereign immunity as applied to state water rights adjudications of a "river system or other source," did not apply to Oregon's adjudication of water rights in the Klamath River, because the adjudication applied only to surface waters and not groundwater and therefore did not apply to the entire "river system or other source."  Rejecting the United States' argument, the Ninth Circuit held that the McCarran Amendment applied to the Oregon adjudication because an adjudication of a "river system or other source" may be complete even though the adjudication does not include groundwater. *Oregon*, 44 F.3d at 768-770.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1  *Source*, 989 P.2d 739 (Ariz. 1999), and the Montana Supreme Court in

2  *Confederated Salish and Kootenai Tribes of the Flathead Reservation v. Stults*, 59

3  P.3d 1093 (Mont. 2002).  U.S. Mem. 11-14; Tribe Mem. 6, 10-11.

4

5       In *Gila River*, the Arizona Supreme Court held that the reserved rights

6  doctrine applies to groundwater.  *Gila River*, 989 P.2d at 745-748.  In DWA's view,

7  the Arizona Supreme Court's decision was misplaced, because the Court failed to

8  consider Congress' policy of deference to state water law, as required by *New*

9  *Mexico*, in determining whether federal reserved rights apply to groundwater.  The

10  Arizona Court stated that Congress' deference to state law is irrelevant because

11  *New Mexico* stated that "the reserved rights doctrine is an exception to Congress'

12  deference to state water law."  *Id.* at 747.  On the contrary, although *New Mexico*

13  stated that the reserved rights doctrine is an "exception" to Congress' deference to

14  state water law, 438 U.S. at 715, *New Mexico* also held that Congress' policy of

15  deference must be considered in determining whether a federal reserved water right

16  exists in the first instance.  *Id.* at 700-702.  In short, Congress' deference to state

17  water law must be taken into account in determining whether a federal reserved

18  right exists, but—once a federal reserved right is deemed to exist—it is then an

19  "exception" to Congress' deference to state water law.  DWA Mem. 14 n. 8.  By

20  failing to appreciate the difference, the Arizona Court misconstrued the reserved

21  rights doctrine as defined and applied in *New Mexico*.

22       Even so, the Arizona Supreme Court's decision in *Gila River* does not

23  support the Tribe's reserved right claim.  First, the Arizona Court stated that

24  whether a reserved right exists must be determined on a "reservation-by-reservation

25  basis," *Gila River*, 989 P.2d at 748, which contradicts the Tribe's and the United

26  States' argument that a federal reservation of land automatically includes the

27  reservation of a water right.  Tribe Mem. 5, 6; U.S. Mem. 4-5.  Second, the Arizona

28  Court stated that "[a] reserved right to groundwater can only be found where other

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

waters are inadequate to accomplish the purpose of the reservation." *Gila River*, 989 P.2d at 748.  Since "other waters" are available to accomplish the purpose of the Tribe's reservation—in that the 1938 Whitewater River Decree provided the Tribe with sufficient Whitewater River surface water to satisfy the reservation purpose, DWA Mem. 24-25, and since the Tribe has the right to use groundwater for reservation purposes under California law, *id.* at 17-18—the Tribe does not have a reserved right in groundwater under the Arizona Court's decision in *Gila River*.

In *Stults,* the Montana Supreme Court held that "there is no distinction between surface water and groundwater for purposes of determining what water rights are reserved because those rights are necessary to the purpose of the reservation," and that "whether the waters were found on the surface of the land or under it should make no difference." *Stults*, 59 P.3d at 1098.  Contrary to *Stults,* there is a significant difference between surface water and groundwater in terms of whether reserved rights apply to such water, at least under the circumstances of this case, because under California law the right to surface water is subject to the state priority rule of "first in time, first in right" and, conversely, the right to groundwater is based on the correlative rights of overlying landowners. DWA Mem. 15-18.  The *Winters* doctrine itself was developed because non-Indian appropriators in Montana had acquired prior rights to surface waters appurtenant to an Indian tribe's reservation under the state priority rule of "first in time, first in right," as a result of which the reservation lands were "practically valueless." *Winters v. United States*, 207 U.S. 564, 576 (1908); DWA Mem. 15-16.  Since the "first in time, first in right" priority rule does not apply to groundwater, and since overlying landowners have correlative rights to use groundwater, the rationale of the *Winters* doctrine does not support its extension to groundwater here. DWA Mem. 18.  *Stults'* conclusion that it "should make no difference" whether the waters are surface

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

waters or groundwater is simplistic and misplaced, and ignores the rationale of the reserved rights doctrine.

On the other hand, the Wyoming Supreme Court, citing Supreme Court precedent, has held that "the reserved rights doctrine does not extend to groundwater." *In re Adjudication of All Rights to Use Water in the Big Horn System*, 753 P.2d 76, 99-100 (Wyo. 1988). Although the Wyoming Court also stated that the "logic" of the reserved rights doctrine supports its extension to groundwater, *id.*, the logic of the doctrine does not support its extension to groundwater at least in this case, because California recognizes correlative rights in groundwater, unlike Wyoming, which recognizes only appropriative rights in groundwater. *See* Clark, *Groundwater Legislation in Light of the Experience in the Western States,* 22 Mont. L. Rev. 42, 50 (1960).[7]  Since the Tribe has a correlative right to use groundwater under California law, the Tribe's claimed reserved right in groundwater is not necessary to accomplish the primary reservation purpose and thus does not impliedly exist.  DWA Opp. to Tribe MSJ, at 4-12; DWA Mem. 15-19.  In any event, the Wyoming Supreme Court, perhaps appreciating the U.S. Supreme Court's obvious reluctance to extend the reserved rights doctrine to groundwater in *Cappaert*, properly concluded that the doctrine does not apply to groundwater.  Although the United States points out that the Arizona Supreme Court in *Gila River* subsequently disagreed with the Wyoming Supreme Court's analysis in *Big Horn*, U.S. Mem. 13, DWA believes that the Wyoming Supreme Court's decision correctly interprets the reserved rights doctrine and the Arizona Supreme Court's decision, which is discussed above, does not.

---

[7] In Professor Clark's article, which is discussed more fully in DWA's opposition to the Tribe's motion for summary judgment, at page 6 n. 4, Wyoming is listed in Chart B on page 50 as among the western states that recognize appropriative rights in groundwater but not correlative rights.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

**D.   The Lower Court Decisions Cited by the United States and Tribe Do Not Support the Tribe's Reserved Right Claim.**

The United States and the Tribe cite several lower court decisions for their argument that the Tribe has a reserved right in groundwater. U.S. Mem. 7-8; Tribe Mem. 9-10, 14-16.[8]  The decisions do not support the Tribe's reserved right claim.

Some of the decisions cited by the United States and the Tribe—*Tweedy*, *Soboba* and *Fallbrook*—predated the Supreme Court's decision in *New Mexico*, which adopted a "narrow construction" of the reserved rights doctrine because of the congressional policy "of deferring to state water law." *In re Water of Hallett Creek Stream System*, 44 Cal.3d 448, 461 (1988).  Thus, these decisions do not reflect *New Mexico*'s narrow construction of the reserved rights doctrine, particularly the distinction between "primary" and "secondary" reservation purposes.  Two other decisions, *Preckwinkle* and *Soboba*, contained simple conclusory statements that Indian reserved rights apply to groundwater, without any discussion or analysis that might support the conclusory statements.[9]  One decision,

---

[8] The decisions cited by the United States and the Tribe are *Tweedy v. Texas Co.*, 286 F.Supp. 383, 385 (D. Mont. 1968); *Colville Confederated Tribes v. Walton*, 460 F.Supp. 1320, 1326 (E.D. Wash. 1978); *State of New Mexico ex rel. Reynolds v. Aamodt*, 618 F.Supp. 993, 1010 (D.N.M. 1985); *Gila River Pima-Maricopa Indian Community v. United States*, 9 Ct. Cl. 660, 699 (1986); *Soboba Band of Mission Indians v. United States*, 37 Ind. Cl. Comm. 326, 341 (1976); *United States v. Fallbrook Pub. Util. Dist.*, Case No. 1247-SD-C (S.D. Cal. 1962), aff'd 347 F.2d 48, 61 (9th Cir. 1965); *United States v. Washington*, Case No. 2:01-cv-47-TSZ, ECF No. 304, Slip Op. 8 (W.D. Wash. Feb. 24, 2003); and *Preckwinkle v. Coachella Valley Water Dist.*, Case No. 5:05-cv-626, ECF No. 210, Slip Op. 28 (C.D. Cal. Aug. 30, 2011).

[9] In *Soboba*, the Indian Claims Commission cited no authority whatever in support of its conclusion that *Winters* doctrine rights apply to groundwater. *Soboba*, 37 Ind. Cl. Comm. at 341.

In *Preckwinkle*, the district court also cited no authority for its conclusion that "Plaintiffs' reserved water rights give them a federally recognized right to use a

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

1    *Aamondt,* involved pueblo rights and not reserved rights, and thus does not apply

2    here for this additional reason.

3          Two decisions cited by the United States, *Walton* and *Aamodt*, cited the

4    Supreme Court's decision in *Cappaert* for their conclusion that the reserved rights

5    doctrine applies to groundwater, *Walton,* 460 F.Supp. at 1325; *Aamodt*, 618 F.Supp.

6    at 1010, and another decision, *Gila River Pima-Maricopa Indian Community*, cited

7    *Cappaert* for its conclusion that groundwater resources must be preserved under the

8    reserved rights doctrine.  *Gila River Pima-Maricopa Indian Community,* 9 Ct. Cl. at

9    699.  These decisions misconstrued *Cappaert.*  As explained above, *Cappaert* did

10   not hold that the reserved rights doctrine applies to groundwater, or that

11   groundwater resources must be preserved under the reserved rights doctrine.

12   Instead, *Cappaert* held that the United States had reserved rights in *surface*

13   *waters*—and thus could enjoin groundwater pumping that impaired its reserved

14   rights in the surface waters—but did not hold or suggest that the United States has

15

16

17   certain amount of the groundwater in the Water District's Area of Benefit."
     *Preckwinkle,* Slip Op. 28.  Earlier, the district court cited *Cappaert* for its

18   conclusion that federal reserved rights apply to groundwater, and also stated that
     "[c]ommentators agree that reserved water rights include rights to both surface

19   water and groundwater," citing articles by two commentators. *Id.* at 26.  As noted

20   earlier, *Cappaert* did not hold that federal reserved rights apply to groundwater, *see*
     pages 13-14, *supra*, and thus the district court's reliance on *Cappaert* was

21   misplaced.  Further, since the Supreme Court stated in *Cappaert* that "[n]o cases of

22   this Court have applied the doctrine of implied reservation of water rights to
     groundwater," *Cappaert*, 426 U.S. at 142, and since the Wyoming Supreme Court

23   has held that federal reserved rights do not apply to groundwater, *see In re*

24   *Adjudication of All Rights to Use Water in the Big Horn System*, 753 P.2d 76, 99-
     100 (Wyo. 1988), the fact that the two commentators cited by the court "agree"

25   otherwise is entitled to no weight whatever.  Defendant Coachella Valley Water

26   District ("CVWD"), which was the defendant in *Preckwinkle*, will provide a more
     complete discussion of the district court's decision in *Preckwinkle*, and DWA joins

27   in CVWD's arguments regarding *Preckwinkle*.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1  reserved rights in *groundwater*. *See* pages 13-14, *supra*. Since these decisions

2  relied on an improper construction of *Cappaert*, they have no persuasive value.

3       The United States' reliance on the district court decision in *Fallbrook* is also

4  misplaced. *See* Interlocutory Judgment No. 41, *United States v. Fallbrook Pub.*

5  *Util. Dist.*, Case No. 1247-SD-C (S.D. Cal. 1962); U.S. Mem. 8. The *Fallbrook*

6  district court decision predated the Supreme Court's decision in *New Mexico*, and

7  thus the district court failed to apply the criteria established in *New Mexico* in

8  determining whether a reserved right impliedly exists, specifically that a reserved

9  right exists only if necessary to accomplish the "primary" reservation purpose and

10  prevent this purpose from being "entirely defeated." *New Mexico*, 438 U.S. at 700,

11  702. Also, the United States and the State of California in *Fallbrook* stipulated that

12  "the rights of the United States of America to the use of water herein are to be

13  measured in accordance with the laws of the State of California," and the district

14  court approved the stipulation, thus indicating that the United States' claimed rights

15  were to be measured under California law rather than federal law.[10] Finally, the

16  *Fallbrook* district court distinguished between groundwater that "contribute[s] to

17  and support[s]" the river system and groundwater that does not "contribute to and

18  support" the river system in terms of whether the Indian tribes had a reserved right

19  in groundwater; since the Tribe here admits that the groundwater in which the Tribe

20  claims a reserved right "does not contribute to" the river system including its

---

26  [10] For the court's convenience, the State of California's and the United States'

27  stipulation (Doc. 850) and the district court order approving the stipulation (Doc.
1517) in *Fallbrook* are attached hereto as Appendixes 1 and 2, respectively.

tributaries, the *Fallbrook* district court decision does not support the United States'
and the Tribe's reserved right claim here for this additional reason.[11]

In *United States v. Washington*, the district court concluded that the Lummi
Indian Tribe in Washington had a reserved right in groundwater based on the Ninth
Circuit's decisions in *United States v. Anderson*, 736 F.2d 1358, 1361 (9th Cir.
1984), and *Colville Confederated Tribes v. Walton,* 647 F.2d 42, 47 (9th Cir. 1981),
and the Arizona Supreme Court's decision in *In re General Adjudication of All
Rights to Use Water in Gila River System and Source,* 989 P.2d 76, 99-100 (Ariz.
1999). *United States v. Washington*, Case No. 2:01-cv-47-TSZ, ECF No. 304, Slip
Op. 8 (W.D. Wash. Feb. 24, 2003). In fact, the Ninth Circuit decisions in *Anderson*
and *Walton* did not address whether the Indian tribes had reserved rights in
groundwater, and the decisions contained no discussion of whether federal reserved
rights apply to groundwater. Also, as explained earlier, the Arizona Supreme
Court's decision in *Gila River*, in concluding that the Indian tribe had a reserved
right in groundwater, was misplaced and in any event does not support the Tribe's
reserved right claim here. *See* pages 16-17, *supra*. Moreover, the district court in
*Washington* subsequently vacated its order upholding the Indian tribe's reserved

---

[11] The *Fallbrook* district court decision stated that the Indian tribes in that case—
which did not include the Tribe here—have federal rights in the "shallow aquifer"
of the Santa Margarita River system, because this portion of the basin "contribute[s]
to and support[s]" the river system, *Fallbrook Judgment*, pp. 3, 6, 8, but that the
tribes did not have reserved rights in the "deep aquifer" of the groundwater basin,
because that portion of the basin is "vagrant, local and percolating" and does not
"contribute to nor support" the river system. *Id.* at 3, 6-7. Here, the Tribe has
admitted in its response to Coachella Valley Water District's request for admissions
that the groundwater in which the Tribe claims a reserved right "does not contribute
to the surface flows of" Andreas Creek, Tahquitz Creek or Chino Creek, which are
tributaries of the Whitewater River. DWA Statement of Genuine Disputes of
Material Facts No. 1. Thus, the district court decision contradicts the United States'
and the Tribe's reserved right argument, rather than supports it.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA  94596

right claim after the parties reached a settlement. *United States v. Washington*, 2007 U.S. Dist. Lexis 86162, at *9 (W.D. Wash., Nov. 20, 2007).[12] For all these reasons, the *Washington* district court decision has no persuasive value.

More broadly, the lower court decisions cited by the United States and the Tribe did not—as required by *New Mexico*—consider Congress' policy of deference to state water law in determining whether federal reserved rights apply to groundwater, and did not consider whether the claimed reserved rights in groundwater were "necessary" to accomplish the "primary" reservation purposes as distinguished from "secondary" purposes. *New Mexico*, 438 U.S. at 700, 702.[13] Rather, the decisions generally appeared to assume that the government, in reserving lands for an Indian reservation, necessarily reserved a right in groundwater. For example, the district court decision in *Tweedy*, which the Montana Supreme Court relied on in *Stults*, 59 P.3d at 1098, stated simply that "whether the waters were found on the surface of the land or under it should make no difference." *Tweedy*, 286 F.Supp. at 385.[14] On the contrary, *New Mexico* held

---

[12] The district court in *Washington* rejected many arguments asserted by the Tribe here, such as its "homeland" argument and its argument that the Tribe's claimed right applies to "all present and future [reservation] purposes." The court stated that "no federal court has ever found an impliedly reserved water right by first looking to the modern day activities of the Indian nation"; that "Plaintiffs' 'homeland' purpose theory conflicts with clear Ninth Circuit precedent" and "must fail as a matter of law"; and that "a primary purpose determination [must be] based on the intent of the federal government at the time the reservation was established." *Washington*, 375 F.Supp.2d at 1065.

[13] In *United States v. Washington*, the district court considered the "primary" reservation purpose in *quantifying* the Indian tribe's reserved right in groundwater, but not in determining whether the reserved right existed. *Washington*, 375 F.Supp.2d at 1063-1064.

[14] A closer examination of *Tweedy* indicates the flaw in the United States' and the Tribe's reserved right claim. First, *Tweedy*'s analysis was based on a perception

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1  that a federal reservation of land does not automatically include the reservation of a

2  water right, and that whether the water right is reserved instead depends on whether

3  it is "necessary" to accomplish the "primary" purpose of the particular reservation

4  and prevent this purpose from being "entirely defeated." *New Mexico*, 438 U.S. at

5  700, 702; *Katie John*, 720 F.3d at 1226; DWA Response to Tribe's Mot. for Sum.

6  Judg. 1-10.  Since the lower court decisions cited by the United States and the Tribe

7  did not consider or apply the significant limitations on federal reserved rights

8  established in *New Mexico*, the analyses of these lower court decisions are

9  inherently flawed and misguided.

10      Finally, none of the cited lower court decisions involved the particular

11  circumstances of this case, which, as DWA has argued, indicate that the Tribe's

12  claimed reserved right in groundwater is not necessary to accomplish the primary

13  purpose of the Tribe's reservation, and thus that the Tribe's right in groundwater is

14  a secondary reservation purpose governed by state law.  DWA Mem. 15-25.  Thus,

18  "that the doctrine of prior appropriation increasingly is being applied to
19  underground waters," *id.* at 386, and that there is no ownership of the "corpus" of a
groundwater right.  *Id.* at 385.  However, California provides for a correlative right
20  to groundwater based on overlying ownership of the land, as opposed to prior
appropriation that is applied to surface water rights, which is different than other
21  states.  *See* Clark, *Groundwater Legislation in Light of the Experience in the
22  Western States*, 22 Mont. L. Rev. 42, 50 (1960) (relied on by the *Tweedy* court, and
noting that California's correlative rights doctrine is different than other states).
23  Thus, contrary to the court's statements in *Tweedy*, there is a difference between
24  surface and subsurface water rights in California.  Second, the *Tweedy* court held
that "need and use are prerequisite to any water rights on Indian reservations . . .
25  [and] there are no rights apart from need and use."  *Id.* at 385-86.  Just as the
26  *Tweedy* court found "no right" reserved in the groundwater based on the plaintiffs
having "demonstrated no use of the water and no need for it[,]" *id.* at 386, the Court
27  here should find no reserved right in the groundwater because of the Tribe's
28  demonstrated lack of use and need for it.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
200 I N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

1   the lower court decisions do not support the Tribe's reserved right claim for this

2   additional reason.

3                              **CONCLUSION**

4

5       The United States' motion for summary judgment should be denied.

6   Dated: December 5, 2014                    BEST BEST & KRIEGER LLP

7

8                                    By: /S/ Roderick E. Walston

9                                        RODERICK E. WALSTON
                                         ARTHUR L. LITTLEWORTH
10                                       GENE TANAKA
                                         PIERO C. DALLARDA
11                                       STEVEN G. MARTIN

12                                       Attorneys for Defendant
                                         DESERT WATER AGENCY
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596