CATHERINE F. MUNSON (D.C. Bar No. 985717, admitted *pro hac vice*)
CMunson@kilpatricktownsend.com
MARK REEVES (GA Bar No. 141847, admitted *pro hac vice*)
MReeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 508-5800; Fax:  (202) 508-5858

STEVEN C. MOORE (CO Bar No. 9863, admitted *pro hac vice*)
Smoore@narf.org
HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671, admitted *pro hac vice*)
HeatherW@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Tel:  (303) 447-8760; Fax:  (303) 443-7776

DAVID J. MASUTANI (CA Bar No. 172305)
DMasutani@alvaradosmith.com
ALVARADOSMITH, APC
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel:  (213) 229-2400; Fax:  (213) 229-2499

Attorneys for Plaintiff
Agua Caliente Band of Cahuilla Indians

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS, <br><br> Plaintiffs, <br><br> v. <br><br> COACHELLA VALLEY WATER DISTRICT, et al. <br><br> Defendants. | Case No.:  ED CV 13-00883-JGB-SPX <br> Judge:  Jesus G. Bernal <br><br> **AGUA CALIENTE BAND OF CAHUILLA INDIANS' BRIEF IN OPPOSITION TO COACHELLA VALLEY WATER DISTRICT'S MOTION FOR SUMMARY JUDGMENT ON PHASE I ISSUES** <br><br> Trial Date:  February 3, 2015 <br> Action Filed:  May 14, 2013 |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

US2008 6155193 1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................ii

FACTUAL BACKGROUND ...................................................................... 2

SUMMARY OF ARGUMENT ................................................................... 6

ARGUMENT & ANALYSIS ..................................................................... 7

I.    Agua Caliente has a federally reserved right to groundwater. ....................... 7

    A.    State law does not limit, obviate, or replace Agua Caliente's federally reserved rights. ......................................................... 8

        1.    The Winters doctrine constitutes a well settled exception to any general federal policy of deference to state water law. ....... 9

        2.    State law water rights are no substitute for federally reserved Winters rights........................................................ 11

    B.    The *Winters* doctrine does apply to groundwater. ............................... 14

    C.    Groundwater is necessary to fulfill the purposes of the Agua Caliente Reservation. .................................................. 16

        1.    CVWD mischaracterizes U.S. v. New Mexico. ..................... 16

        2.    Water is unquestionably necessary to accomplish the primary purposes of the Agua Caliente Reservation. ............... 18

II.   Agua Caliente has an aboriginal right to groundwater................................ 21

    A.    Agua Caliente's aboriginal claim to groundwater is legally sound....22

    B.    The relevant facts and case law establish the Tribe's aboriginal right to groundwater........................................................ 24

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET , STE 900
WASHINGTON, DC 20005-2018

**AGUA CALIENTE'S BRIEF IN OPP. TO CVWD'S MSJ ON PHASE I ISSUES**

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Arizona v. California,*
373 U.S. 546 (1963)....................................................................12, 13, 19, 20

*Barker v. Harvey,*
181 U.S. 481 (1901)...................................................................................23

*Cal. Water Serv. Co. v. Edward Sidebotham & Son,*
224 Cal. App. 2d 715 (1964).....................................................................12

*California v. United States,*
438 U.S. 645 (1978)....................................................................................9

*Cappaert v. United States,*
426 U.S. 128 (1976)..........................................................................passim

*City of Barstow v. Mohave Water Agency,*
5 P.3d 853 (Cal. 2000) ..........................................................................12, 13

*Cnty. of Oneida v. Oneida Indian Nation,*
470 U.S. 226 (1985)...................................................................................22

*Colville Confederated Tribes v. Walton,*
647 F.2d 42 (9th Cir. 1981)....................................................17, 18, 20, 21

*Colville Confederated Tribes v. Walton,*
752 F.2d 397 (9th Cir. 1985)................................................................11, 12

*Confederated Salish & Kootenai Tribes of the Flathead Reservation v. Stults,*
59 P.3d 1093 (Mont. 2002) ...........................................................14, 16, 20

*Cramer v. United States,*
261 U.S. 219 (1923)...................................................................................22

*In re Water in the Gila River Sys.,*
989 P.2d 739 (Ariz. 1999)..................................................................passim

*In re Water of Hallett Creek Stream Sys.,*
44 Cal. 3d 448 (1988)..........................................................................10, 13

*Katz v. Walkinshaw,*
141 Cal. 116 (1903)...................................................................................12

*Montana v. Confederated Salish & Kootenai Tribes,*
712 P.2d 754 (Mont. 1985) .......................................................................12

*Preckwinkle v. CVWD,*
No. 05-cv-626 (C.D. Cal. Aug. 30, 2011)................................................14

*Soboba Band of Mission Indians v. United States,*
37 Ind. Cl. Comm. 326 (1976)..................................................................14

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

*Summa Corp. v. California ex rel. State Lands Comm'n*,
466 U.S. 198 (1984) ............................................................................... 23

*Tee-Hit-Ton Indians v. United States*,
348 U.S. 272 (1955) ........................................................................... 21, 22

*Tweedy v. Tex. Co.*,
286 F. Supp. 383 (D. Mont. 1968) ........................................................ 16

*United States v. Adair*,
723 F.2d 1394 (9th Cir. 1984) .................................................. 11, 17, 18

*United States v. Cappaert*,
508 F.2d 313 (9th Cir. 1974) ......................................................... 14, 15

*United States v. New Mexico*,
438 U.S. 696 (1978) ........................................................ 10, 16, 17, 18

*United States v. Powers*,
305 U.S. 527 (1939) ............................................................................... 19

*United States v. Shoshone Tribe of Indians of Wind River Reservation*,
304 US 111 (1938) ................................................................................. 24

*United States v. Title Insurance & Trust Co.*,
265 U.S. 472 (1924) ............................................................................... 23

*United States v. Washington*,
384 F. Supp. 312 (W.D. Wash. 1974) .................................................. 20

*United States v. Washington*,
No. 01-cv-47, 2005 WL 1244797 (W.D. Wash. May 20, 2005) ........... 12, 16, 17, 18

*United States v. Washington*,
No. 2:01-cv-00047 (W.D. Wash. Feb. 24, 2003) ................................... 21

*Winters v. United States*,
207 U.S. 564 (1908) .......................................................................... passim

**Statutes**

9 Stat. 631 (1851) .................................................................................... 23

Cal. Water Code § 10720.3(d) ......................................................... 10, 14

**Other Authorities**

2014 Cal. Legis. Serv. Ch. 346 (S.B. 1168) (West) ......................... 10, 14

Cohen's Handbook of Federal Indian Law, § 15.09[1][d] (Nell Jessup Newton, et al., eds., 2012 ed.) ............................................................................. 22

David P. Barrows, *The Ethno-Botany of the Coahuilla Indians of Southern California*, vol. 1 (University of Chicago Press 1900) ................................................. 4

Flushman and Barbieri, *Aboriginal Title:  The Special Case of California*, 7 Pac. L.J.

iii

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

391 (1986) ....................................................................................................22

J.G. Stanley, "Report on the Conditions and Needs of the Mission Indians of Southern California" (July 13, 1883) ........................................................................................4

William Wood, *The Trajectory of Indian Country in California:  Rancherias, Villages, Pueblos, Missions, Ranchos, Reservations, Colonies, and Rancherias*, 44 Tulsa L. Rev. 317 (2008). ..........................................................................22

**AGUA CALIENTE'S BRIEF IN OPP. TO CVWD'S MSJ ON PHASE I ISSUES**

Before the Court are the parties' cross-motions for summary judgment in Phase 1 of this case, which, by court-approved stipulation, "address[es] the threshold issues of whether the [Agua Caliente Band of Cahuilla Indians] has rights to groundwater pursuant to the federal *Winters* doctrine and/or aboriginal rights to groundwater." Doc. 49, ¶ 4. As set forth in Agua Caliente's principal brief in support of its motion for summary judgment, Doc. 85-1, and below, settled federal legal doctrines and precedents establish that Agua Caliente has a federally reserved right to sufficient groundwater to accomplish the primary purposes of the Agua Caliente Reservation, which include the creation of a permanent homeland and agricultural base for Agua Caliente. Agua Caliente also has an aboriginal right to groundwater in the area of its Reservation based on the Agua Caliente people's use and occupation of that area since time immemorial.

In addition to opposing Agua Caliente's motion for summary judgment, Defendant Coachella Valley Water District (CVWD) has filed its own motion for summary judgment on the Phase 1 issues. CVWD relies heavily on deference to state water law, contending that Agua Caliente has rights to use groundwater under state law and that those rights obviate or replace any federally reserved right. As even CVWD acknowledges, however, the doctrine of federally reserved water rights is a widely recognized exception to federal deference to state water law.[1] Federally reserved water rights, like most federal rights, preempt their state counterparts. CVWD also incorrectly argues that the doctrine of federally reserved water rights does not extend to groundwater, a position that is inconsistent with both a sizeable body of case law and the rationale underlying the reserved rights doctrine. Finally, CVWD erroneously contends that Agua Caliente's aboriginal rights were extinguished by a nineteenth century statute that did not apply to the Tribe's rights as a matter of law and could not have applied to Agua Caliente as a matter of equity. All of its arguments

---

[1] *See* Doc. 82-1 at 17.

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

1   lacking merit, CVWD's motion for summary judgment fails as a matter of law and
2   should be denied.

3                            **FACTUAL BACKGROUND**[2]

4          The material facts for Phase 1 are largely undisputed. The Agua Caliente people
5   have resided in the present-day Coachella Valley since time immemorial. *See, e.g.*,
6   Doc. 85-4 at ¶¶ 24 & 27; Doc. 82-2 at ¶ 1. Throughout their history, they have relied
7   upon and made use of the Valley's water resources for various purposes to ensure
8   their survival in an arid, desert climate. Doc. 85-4 at ¶¶ 15-26.

9          In 1876 and 1877, Presidents Grant and Hayes issued executive orders setting
10  aside the bulk of the lands constituting the present-day Agua Caliente Reservation.
11  *See* Executive Order of May 15, 1876 (1876 Order) (Doc. 85-4, Tab 1); Executive
12  Order of Sept. 29, 1877 (1877 Order) (Doc. 85-4, Tab 1); Doc. 82-2 at ¶¶ 9-10.
13  President Grant's 1876 order reserved land "for permanent use and occupancy" by
14  Agua Caliente, and President Hayes' 1877 order expressly provided that the land was
15  reserved "for Indian purposes." *See id.* The Agua Caliente Reservation was created, in
16  CVWD's words, "to provide a permanent, secure … homeland" to Agua Caliente.
17  Doc. 82-1 at 5.

18         The lands set aside as the Agua Caliente Reservation in 1876-1877 have served
19  continuously as the Tribe's Reservation since those dates, with additional parcels
20  being added from time to time. *See* Doc. 85-4 at ¶¶ 30-36. The United States has
21  issued trust patents to Agua Caliente and its members for the lands reserved by
22  Presidents Grant and Hayes and for other, later additions to the Reservation. *Id.* at ¶¶
23  67-68.

24

25  _____

26  [2] Agua Caliente adopts and incorporates by reference the factual background section
    of its brief in support of its motion for summary judgment. To avoid unnecessary
27  duplication of that material, Agua Caliente here highlights only important areas of
    agreement or disagreement with the alleged facts set forth in CVWD's brief in support
28  of its motion for summary judgment.

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

Agua Caliente and CVWD appear to be in agreement on this broad overview of the relevant history of the Agua Caliente people and the establishment of the Agua Caliente Reservation. These agreed-upon facts, standing alone, suffice to establish Agua Caliente's federally reserved rights to groundwater as a matter of law. There are, however, a handful of factual allegations and inferences in CVWD's brief that Agua Caliente vehemently disputes, both as to their accuracy and their relevance.

The Agua Caliente have relied for millennia on groundwater sources in the Coachella Valley, and groundwater currently accounts for the overwhelming majority of water consumed on the Reservation. *See* Doc. 85-4 at ¶¶ 15-27.[3] CVWD contorts the historical record to contend that the United States "focused on developing surface [water] supplies for the [Agua Caliente] Reservation" and then uses that distortion to bolster its equally contorted legal argument that the Reservation will not "entirely fail" without a reserved right to groundwater. CVWD Br. at 5-7, 24-25. This argument (1) is irrelevant and immaterial to the stipulated Phase I issues; (2) ignores Supreme Court precedent recognizing that water is reserved for present <u>and</u> <u>future</u> purposes; and (3) improperly attempts to limit Indian tribes to the particular water source that they relied upon at the time of their reservations' establishment. The argument section of the brief addresses these legal flaws in more detail.

There are also a number of factual problems with CVWD's contortion of the historic record. While these factual errors are not material to the outcome of Phase 1,

---

[3] In response to interrogatories propounded by Agua Caliente, CVWD indicated that "[a]ll (100%) water delivered by CVWD to domestic water service customers on the Reservation is groundwater" and Defendant Desert Water Agency (DWA) indicated that groundwater made up 75%-85% of the water that it provided to customers within the Agua Caliente Reservation for the years 2011-2013. *See* CVWD Resp. to Agua Caliente Interrogatory (CVWD Int. Resp.) No. 13; DWA Resp. to Agua Caliente Interrogatory (DWA Int. Resp.) No. 13. All discovery responses cited herein are included in Plaintiff's Evidentiary Notebook Submitted in Support of Agua Caliente's Opposition to Defendants' Motions for Summary Judgment on Phase I Issues at Tabs II-18 & II-19.

they undermine the credibility of CVWD's historical narrative. First, contrary to CVWD's claims, groundwater has long been tremendously important for Agua Caliente and other Cahuilla people living in the Coachella Valley. *See* Doc. 85-1 at 2; Doc. 85-4 at ¶¶ 15-26. Ethnologist David Prescott Barrows noted in 1900 that "[f]or generations they have been well-diggers. Their very occupation of this desert was dependent on their discovery of this art. The whole valley of the Cabeson [Coachella] is dotted with wells, … many dug in the old way still remain, … miles and miles away from the rocky walls where the streams of the mountains disappear in the sands." David P. Barrows, *The Ethno-Botany of the Coahuilla Indians of Southern California*, vol. 1, p. IV-10 (University of Chicago Press 1900) (Doc. 85-4, Tab 7).[4]

Second, CVWD ignores the historical record evidence concerning the importance of groundwater to the Cahuilla people, including Agua Caliente, and the limitations of the surface water supply in the Coachella Valley prior to and at the time of the creation of the Agua Caliente Reservation. In the latter part of the 19th and early 20th centuries, for instance, the United States was aware of the "seasonal" nature of the surface water that flowed out of the San Jacinto Mountains near Agua Caliente villages and knew that surface water often quickly disappeared into the ground shortly after reaching the Valley floor. *See, e.g.*, 1907 Kelsey Report, Doc. 84-7 at 23-24; Doc. 82-1 at 6 (quoting the 1891 Smiley Commission Report for the proposition that the water coming from "Toquitz [sp] Canyon … fails for two or three months, nearly every year, and cannot be depended upon"). Federal Indian agents knew not only that there was "very little running water" on the surface, but also that there was "water …so near the surface that it can be easily developed." *See* J.G. Stanley, "Report on the Conditions and Needs of the Mission Indians of Southern California" (July 13, 1883)

---

[4] One need look no further than the names of towns and cities such as Palm Springs, Indian Wells, and Desert Hot Springs to appreciate the longstanding importance and significance of groundwater, whether from naturally occurring springs or man-made wells, in the Coachella Valley.

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

at p. 32, Plaintiff's Evidentiary Notebook Submitted in Support of Agua Caliente's Opposition to Defendants' Motions for Summary Judgment on Phase I Issues (AC Opp. Notebook), Tab II-1.

Third, CVWD points to non-Indian developments cropping up in the vicinity of the Agua Caliente Reservation and the efforts by Indian agents to accommodate those developments as evidence that there was an adequate surface water supply to meet the needs of both Agua Caliente and the settlers. Doc. 82-1 at 6; Doc. 82-2 at ¶¶ 17 & 28. In fact, non-Indian settlement of the upper Coachella Valley around the Agua Caliente Reservation made a naturally precarious water situation worse, especially in times of drought. For example, the former federal Indian agent John McCallum's effort to found the town of Palmdale near present day Palm Springs failed in the late 1890s due to the inadequate surface water supply and prolonged drought. *See* M.T. Holland Ltr. to Commissioner of Indian Affairs, August 23, 1900, at p. 2 (Holland Letter), AC Opp. Notebook, Tab II-10. B.B. Barney, whose Garden of Eden project near Andreas Canyon was initiated in 1893 but entirely abandoned by 1900, in significant part due to the drought, provides another example. *See* Francisco Estudillo Ltr. to Commissioner of Indian Affairs, October 31, 1893, at pp. 2-3, AC Opp. Notebook, Tab II-5; Holland Letter at pp. 4–6, AC Opp. Notebook, Tab II-10. Indian agent reports in 1900, 1902, and 1904 continued to document the region suffering through "the driest of all dry years" and noted an "utter lack of water" on several Indian reservations, including Agua Caliente. *See* Holland Letter at p. 2, Tab II-10; L.A. Wright Ltr. to Commissioner of Indian Affairs, Sept. 20, 1902, at pp. 175-176, AC Opp. Notebook, Tab II-11; L.A. Wright Ltr. to Commissioner of Indian Affairs, Sept. 1, 1904, at p. 170, AC Opp. Notebook, Tab II-12.

Finally, contemporary use of water in the Upper Coachella Valley belies CVWD's assertions regarding the viability of the surface water supply. "All (100%) water delivered by CVWD to domestic water service customers on the Reservation is groundwater…." CVWD Int. Resp. No. 13, at pp. 3-4, AC Opp. Notebook, Tab II-18.

The Defendants' current records demonstrate that they deliver well in excess of 10,000 acre feet of groundwater to the Agua Caliente Reservation on an annual basis, and these figures do not account for the thousands of acre-feet of additional groundwater produced and used by on-Reservation pumpers. *See* CVWD Int. Resp. 12, at p. 3, & DWA Int. Resp. 12, at p. 2, AC Opp. Notebook, Tabs II-18 & II-19; CVWD water consumption and production documentation, AC Opp. Notebook, Tabs II-16 & II-17. This consumption rate far outstrips the surface water available to the Reservation, demonstrating the absolute necessity of groundwater to Agua Caliente. As set forth herein, surface water supplies to the Agua Caliente Reservation are intermittent and unreliable as a practical matter. And even if such supplies were reliable, the Reservation's current water needs and use exceed any alleged surface water rights that Agua Caliente might have under state law, and this does not take into account likely future needs.[5]

It belies historical and hydrologic fact for CVWD to assert that the limited surface water supply in the Upper Valley met the needs of Agua Caliente in the late 19th or early 20th centuries, meets the Agua Caliente need today, or will meet it in the future. While these factual issues are material, if at all, only to quantification of Agua Caliente's federally reserved right to groundwater – *i.e.*, they do not need to be resolved merely to declare that right's existence, as the Court is asked to do in Phase 1 – it is important for the Court to have an accurate understanding of the case.

## SUMMARY OF ARGUMENT

CVWD argues that, as a matter of law, Agua Caliente has neither a federally reserved right to groundwater nor an aboriginal right to groundwater. CVWD is

---

[5] While CVWD does not speak directly to this issue, DWA wrongly contends that Agua Caliente's full, federally reserved water rights are or can be satisfied by the state law paper right to approximately 8,000 acre-feet of surface water awarded to Agua Caliente in the 1938 California state court adjudication of surface water rights in the Whitewater River and its tributaries. *See* Doc. 84-1 at 5-6 & 24-25; Doc. 84-2 at ¶¶ 10-14.

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

incorrect on both counts. As a matter of law, when the United States established the Agua Caliente Reservation, it impliedly reserved enough water to satisfy the Reservation's primary purposes, including providing a permanent homeland and agricultural base for Agua Caliente. As many courts have held, that reservation of water created a vested federal right that is not subject to state law or limited to any particular source or type of water. Certainly, this right cannot be displaced by state law, as CVWD contends.

The only limitation on Agua Caliente's right to groundwater is the amount of the federally reserved right. But this goes to the quantification of Agua Caliente's federally reserved right to groundwater, not to its existence. There can be no doubt that some amount of groundwater is necessary to achieve the federal purposes of creating a permanent homeland and agricultural base for Agua Caliente in the arid, desert lands of the Coachella Valley. Accordingly, the existence of Agua Caliente's federally reserved groundwater right is indisputable, and CVWD's motion for summary judgment on that issue should be denied out of hand.

Additionally, Agua Caliente's occupation and use of the lands constituting and surrounding its present day Reservation – as well as the water available on and under those lands – since time immemorial gives Agua Caliente a federal common law aboriginal right to groundwater. This record is replete with factual information supporting this right, and the right has never been legitimately extinguished, notwithstanding CVWD's arguments to the contrary. CVWD's motion for summary judgment on this issue should be denied as well.

## ARGUMENT & ANALYSIS

### I.    Agua Caliente has a federally reserved right to groundwater.

Agua Caliente has a federally reserved right to groundwater pursuant to the doctrine set forth by the United States Supreme Court in *Winters v. United States*, 207 U.S. 564 (1908). *See* Doc. 85-1, at 5-18. The *Winters* doctrine provides that when the United States established the Agua Caliente Reservation, it impliedly reserved the

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

right to sufficient water to satisfy the Reservation's primary purposes. *Id.* at 6-9. This reserved right is a fully vested, federal right that is not subject to limitation or replacement by state law or any state law rights, and it was and is intended to provide for Agua Caliente's contemporaneous and future needs. *Id.* at 9-12. Furthermore, this federally reserved right attaches to any source of water available to the Reservation, regardless of whether that source of water was in use at the time of the Reservation's establishment. *Id.* at 13-16. For all of these reasons, Agua Caliente is entitled as a matter of law to summary judgment declaring the existence of a federally reserved right to groundwater sufficient to satisfy the primary homeland and agricultural purposes of the Agua Caliente Reservation. *Id.* at 16-18.

In addition to opposing summary judgment in favor of Agua Caliente, CVWD has moved for summary judgment seeking a declaration that Agua Caliente does <u>not</u> have a federally reserved right to groundwater. *See* Doc. 82-1. CVWD's argument has at least three major flaws, however. First, it erroneously invokes state law doctrines and rights in an effort to limit or replace Agua Caliente's superior, federal right. Second, it incorrectly asserts that the *Winters* doctrine applies only to surface water. Third, while it correctly concedes that the Agua Caliente Reservation was intended to serve as a homeland and agricultural base for Agua Caliente, it counterfactually contends that a reserved water right is not necessary to accomplish these purposes. These flaws fatally undermine CVWD's argument and establish that CVWD is not entitled to summary judgment on the Phase 1 issue of whether Agua Caliente has a federally reserved right to groundwater.

## A.    State law does not limit, obviate, or replace Agua Caliente's federally reserved rights.

CVWD contends that it is entitled to summary judgment declaring that Agua Caliente has no reserved right to groundwater because (1) federal law defers to state law in the area of water rights and (2) California law grants Agua Caliente a correlative, overlying right to use groundwater that renders any federally reserved

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

right unnecessary and superfluous. These arguments are meritless. The *Winters* doctrine is universally recognized as an exception to any general federal policy of deference to state water law. Agua Caliente's federally reserved right to groundwater is legally different from and superior to any rights recognized under state law, and the water subject to Agua Caliente's federally reserved right is unquestionably necessary to accomplish the purposes of the Reservation.

1.   *The Winters doctrine constitutes a well settled exception to any general federal policy of deference to state water law.*

CVWD opens its attack on Agua Caliente's federally reserved right to groundwater with a discussion of what it characterizes as a "general rule" of federal deference to state water law. Doc. 82-1 at 14. Whatever the merits of this proposition in the abstract, it is of no relevance here, as CVWD necessarily concedes that the *Winters* doctrine of federally reserved rights constitutes an exception to this "general rule." *Id.* at 17-18. Case law cited by CVWD, such as *California v. United States*, 438 U.S. 645 (1978), discussing federal deference to state water law either as a matter of general policy or in particular contexts as required by specific legislative enactments, has no bearing on Agua Caliente's reserved right to groundwater. It is noteworthy that none of the cases extending the reserved rights doctrine to groundwater for an Indian reservation even cites, much less relies on, *California*. CVWD's attempted use of that decision to thwart Agua Caliente's claim to a *Winters* right to groundwater is novel indeed, and this Court should not be the first to adopt its flawed logic.

Federal and state courts have consistently recognized that the *Winters* doctrine is an exception to any general policy of deference to state water law and that state law cannot limit or restrict federally reserved water rights. The Supreme Court has flatly held that "determination of reserved water rights is not governed by state law but derives from the federal purpose of the reservation" and that "[f]ederal water rights are not dependent upon state law or state procedures …." *Cappaert v. United States*, 426 U.S. 128, 145 (1976); *see also United States v. New Mexico*, 438 U.S. 696, 715

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

9

(1978) (affirming that the *Winters* doctrine "is an exception to Congress' explicit deference to state water law in other areas"). The Supreme Court of California likewise has affirmed that the *Winters* doctrine "constitutes an exception to the plenary authority which the states otherwise enjoy over the nonnavigable waters within their borders." *In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 457 (1988); *see also id.* at 455 n.3 ("Since the federal government's reserved right is based on the property and supremacy clauses of the United States Constitution, the states may not deprive the federal government of the use of such water."). Other state supreme courts have echoed *Hallett Creek*'s concession. *See, e.g.*, *In re Water in the Gila River Sys.*, 989 P.2d 739, 747 (Ariz. 1999) (*en banc*) ("[T]he Supreme Court has defined the reserved rights doctrine as an exception to Congress's deference to state water law." (citing *New Mexico*, 438 U.S. at 714)).

Indeed, the fact that federally reserved groundwater rights preempt state law rather than deferring to it is so well settled that it has been codified in California. A recently enacted state statute provides that "federally reserved water rights to groundwater shall be respected in full. In case of conflict between federal and state law … federal law shall prevail." *See* 2014 Cal. Legis. Serv. Ch. 346 (S.B. 1168) (West), *to be codified at* Cal. Water Code § 10720.3(d). The provision goes on to recognize that its acknowledgement of state law deference to federally reserved groundwater rights "is declaratory of existing law." *Id.*

Because Agua Caliente's federally reserved right to groundwater is based on a universally recognized exception to any federal policy of deference to state water law, CVWD's discussion of the "general rule" is nothing more than a red herring. Indeed, CVWD's emphasis on the general policy of deference to state law is telling, as it reveals CVWD's awareness of the weakness of its position under the applicable *Winters* exception to that policy.

10

2.     *State law water rights are no substitute for federally reserved Winters rights.*

Building on its erroneous contention that state law is relevant to the determination of Agua Caliente's federally reserved right to groundwater, CVWD proceeds to argue that Agua Caliente does not need – or possess – a federally reserved right because state law grants it a correlative right to use groundwater as an overlying landowner. *See* Doc. 82-1 at 16-17 & 24-25. Whether Agua Caliente is entitled to correlative overlying rights to groundwater under California law is irrelevant to the question before the Court, however. Any state law rights to groundwater would not be a valid substitute or replacement for Agua Caliente's federally reserved *Winters* right. This is so for a number of reasons.

*Winters* rights are federal rights. *See, e.g.*, *Cappaert*, 426 U.S. at 145; *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 400 (9th Cir. 1985) (*Walton II*); *United States v. Adair*, 723 F.2d 1394, 1411 n.19 (9th Cir. 1984). It is a fundamental premise of American law that federal law and rights preempt and take precedence over their state counterparts. *See* U.S. Const. art. VI, cl. 2. It naturally follows that federally reserved water rights are superior to state water rights, and an inferior state right cannot displace or substitute for the stronger federal right.

The superiority of Agua Caliente's federally reserved water right over any correlative right that it might have as an overlying landowner under state law has significant practical implications. *Winters* rights, unlike state law water rights, "arise without regard to equities that may favor competing water users" – *i.e.*, they are not subject to equitable reduction or limitation to support inferior, state law rights. *Walton II*, 752 F.2d at 405. *See also Cappaert*, 426 U.S. at 138-139; *Winters*, 207 U.S. at 569-570. Reserved rights also are not measured or limited by the amount of water used by the right holder at any particular point in time; rather, the right to all water necessary to support the present and future needs of a federal reservation is fully reserved and vested at the time of a reservation's establishment. *See Cappaert v. United States*, 426

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

U.S. 128, 138 (1976); *Arizona v. California*, 373 U.S. 546, 600 (1963); *United States v. Washington*, No. 01-cv-47, 2005 WL 1244797, at *3 (W.D. Wash. May 20, 2005) ("The water right vests on the date that the reservation is created, not when the water is put to use or at some later time." (citing *Arizona*, 373 U.S. at 600). Finally, reserved rights cannot be lost, reduced, or otherwise limited as a result of nonuse. *See, e.g.*, *Walton II*, 752 F.2d at 404 (rejecting the contention that *Winters* rights could be lost through nonuse); *Montana v. Confederated Salish & Kootenai Tribes*, 712 P.2d 754, 762, 765 (Mont. 1985) ("Reserved water rights are established by references to the purpose of the reservation rather than to actual, present use of water. … Most reservations have used only a fraction of their reserved water.").

Correlative, overlying rights under California law provide none of these protections. By definition, they lack any priority date and are subject to equitable reduction or limitation to accommodate water use by other overlying landowners. *See City of Barstow v. Mohave Water Agency*, 5 P.3d 853, 863 (Cal. 2000) (citing *Cal. Water Serv. Co. v. Edward Sidebotham & Son*, 224 Cal. App. 2d 715, 725-726 (1964)); *Katz v. Walkinshaw*, 141 Cal. 116, 146 (1903) ("Disputes between overlying landowners, concerning water for use on the land, to which they have an equal right … are to be settled by giving to each a fair and just proportion."). They also may be lost if unused. *See City of Barstow*, 5 P.3d at 863, 868 (citing various cases addressing loss of overlying rights due to adverse possession under California law). And as one court has sagely recognized, a "theoretically equal right to pump groundwater, in contrast to a *reserved* right, would not protect a federal reservation from a total future depletion of its underlying aquifer by off-reservation pumpers." *Gila River,* 989 P.2d at 748 (rejecting the argument that state law groundwater rights are an adequate substitute for federally reserved rights).

This last concern is particularly relevant here, where it is undisputed the aquifer underlying the Agua Caliente Reservation has suffered from prolonged overdraft and a significant cumulative reduction in stored water. *See* Doc. 85-4 at ¶¶ 69-72; Doc. 85-

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

1 at 4-5. *Gila River* presented the same factual scenario, as "Arizona ha[d] consumed far more groundwater than nature [could] replenish." *Gila River*, 989 P.2d at 748. In such a case, state law that "provides all overlying landowners an equal right to pump as much groundwater as they can put to reasonable use upon their land" does not "adequately serve to protect federal rights." *Id.* at 747-748. Citing the Supreme Court precedent of *Winters* and *Arizona*, the Arizona Supreme Court explained that this state law-based argument "overlooks that federal reserved water rights are by nature a preserve intended to 'continue through the years'" and "'to satisfy the future as well as the present needs of the Indian Reservations.'" *Id.* at 748 (quoting *Arizona*, 373 U.S. at 600). Here, as in *Gila River*, overdraft of the aquifer threatens Agua Caliente's federal right. Clearly then, correlative overlying rights under California law are not an adequate substitute for Agua Caliente's superior, federally reserved *Winters* right.[6]

CVWD's argument would, in effect, replace federally reserved water rights with inferior state law rights in all cases where a federal reservation has access to water pursuant state law riparian or overlying rights.[7] There is absolutely no precedent or justification for such an outcome. Federal reservations in California may enjoy overlying rights, but any such rights are in addition to, rather than in lieu of, the federally reserved *Winters* right. *See Hallett Creek*, 44 Cal. 3d at 455-458 (affirming that the United States held a federally reserved right to water necessary to satisfy the principle purposes of a federal reservation and could also claim a state law riparian right to use water for the reservation's secondary purposes). CVWD's contention to the contrary is unfounded.

---

[6] Of course, Agua Caliente is not required to establish that its federal right is threatened in order to establish that right's existence. The threat posed by overdraft merely underscores the exigency of Agua Caliente's effort to have its federally reserved right declared and quantified.

[7] As recognized in CVWD's brief, the overlying right recognized under California law is analogous to a riparian right. *See* Doc. 82-1 at 16 (quoting *City of Barstow*, 5 P.3d at 863).

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

**B.    The *Winters* doctrine does apply to groundwater.**

CVWD next argues that it is entitled to summary judgment because the *Winters* doctrine "has not been extended to reserved rights to groundwater." *Id.* at 19 (capitalization changed). This argument is both incorrect and inconsequential. It is incorrect because courts have overwhelmingly applied the *Winters* doctrine to groundwater. It is inconsequential because the logic and rationale underlying the recognition of federally reserved water rights apply with equal force to groundwater and surface water and would support the doctrine's application to groundwater even if such an extension were novel.

As explained in Agua Caliente's brief in support of its motion for summary judgment, Doc. 85-1 at 14-16, there is ample precedent for applying the *Winters* doctrine to groundwater. The Ninth Circuit has done so explicitly, as have numerous lower federal courts. *See, e.g.*, *United States v. Cappaert*, 508 F.2d 313, 315-318 (9th Cir. 1974), *aff'd by Cappaert*, 426 U.S. 128; *Washington*, 2005 WL 1244797, at *3 (holding that "reserved *Winters* rights … extend to groundwater"); *Soboba Band of Mission Indians v. United States*, 37 Ind. Cl. Comm. 326, 487 (1976) ("[T]he *Winters* Doctrine applies to all unappropriated waters … including … percolating and channelized ground water."). This very court did so just three years ago in a case involving CVWD and the Agua Caliente Reservation. *See* Order, *Preckwinkle v. CVWD*, No. 05-cv-626, slip op. at 27-28 (C.D. Cal. Aug. 30, 2011), Doc. 85-1, Ex. A. At least two state supreme courts have done so as well. *See Gila River*, 989 P.2d at 743-747; *Confederated Salish & Kootenai Tribes of the Flathead Reservation v. Stults*, 59 P.3d 1093, 1098 (Mont. 2002) ("[T]here is no distinction between surface water and groundwater for purposes of determining what water rights are reserved …."). California statutory law also recognizes that federally reserved rights may attach to groundwater. *See* 2014 Cal. Legis. Serv. Ch. 346 (S.B. 1168) (West), *to be codified at* Cal. Water Code § 10720.3(d).

14

*Cappaert*, in particular, is a leading case. There, the Ninth Circuit explicitly held that the United States "reserved enough groundwater" to accomplish the purpose of the federal reservation of the Devil's Hole pool. *Cappaert*, 508 F.2d at 318. While the Supreme Court, in affirming *Cappaert*, subsequently determined that the subterranean pool in question was properly characterized as surface water rather than groundwater, it ultimately did not find the distinction legally significant. As the Court explained, "since the implied-reservation-of-water-rights doctrine is based on the necessity of water for the purpose of the federal reservation, … the United States can protect its water from subsequent diversion, whether the diversion is of surface water or groundwater." *Cappaert*, 426 U.S. at 143. Despite CVWD's suggestion to the contrary, the Supreme Court's *Cappaert* decision in no way disavows the Ninth Circuit's express holding, echoed by numerous other courts, that the *Winters* doctrine applies to groundwater.

Indeed, the Supreme Court's holding in *Cappaert* reinforces that the logic underlying the *Winters* doctrine is equally applicable to surface and groundwater. It would make no sense to hold that the United States reserves necessary surface water and can restrict other, overlying landowners from using groundwater in order to protect its reserved rights, but it cannot reserve rights to groundwater itself. The Supreme Court of Arizona reached this same conclusion, relying on *Cappaert* and explaining its application of the *Winters* doctrine to groundwater in part as follows:

> That federal reserved rights law declines to differentiate surface and groundwater – that it recognizes them as integral parts of a hydrologic cycle – when addressing the diversion of protected waters suggests that federal reserved rights law would similarly decline to differentiate surface and groundwater when identifying the water to be protected.

*Gila River*, 989 P.2d at 747. Stated differently, and as several courts have recognized, the "significant question for the purpose of the reserved rights doctrine is not whether the water runs above or below the ground but whether it is necessary to accomplish

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

15

the purpose of the reservation." *Id. See also Washington*, 2005 WL 1244797, at *3; *Tweedy v. Tex. Co.*, 286 F. Supp. 383, 385 (D. Mont. 1968) ("[T]he same implications which led the Supreme Court to hold that surface waters had been reserved would apply to underground waters as well."); *Soboba Band*, 37 Ind. Cl. Comm. at 487; *Stults*, 59 P.3d at 1098 ("[T]here is no distinction between surface and groundwater for purposes of determining what rights are reserved because those rights are necessary to the purpose of an Indian reservation (citing *Tweedy*)).

Even if there were not ample precedent for applying the *Winters* doctrine to groundwater, the considerations that gave rise to the doctrine in the first instance would militate strongly in favor of this Court's doing so. CVWD's contention that the *Winters* doctrine does not and should not apply to groundwater is meritless and lends no support to CVWD's motion for summary judgment.

## C. Groundwater is necessary to fulfill the purposes of the Agua Caliente Reservation.

Finally, CVWD argues that even if the *Winters* doctrine applies to groundwater – which it does – Agua Caliente does not have a federally reserved groundwater right. According to CVWD, a reserved right exists only where "'without the water the very purpose of the reservation would be entirely defeated.'" Doc. 82-1 at 21 (quoting *New Mexico*, 438 U.S. at 700). This is not such a case, CVWD contends, because (1) groundwater is not necessary to carry out the homeland and agricultural purposes of the Agua Caliente Reservation and (2) "the Reservation will not entirely fail without a reserved right to groundwater." Doc. 82-1 at 23-25 (capitalization changed). CVWD's argument, which relies on a strained reading of the Supreme Court's decision in *New Mexico* and a fundamental misunderstanding of the *Winters* doctrine, is incorrect.

### 1. CVWD mischaracterizes *U.S. v. New Mexico*.

As an initial matter, CVWD's reading of the Supreme Court's opinion in *New Mexico* is strained in the abstract and particularly so when grafted into the context of an Indian reservation. *New Mexico* did hold that federally reserved rights are limited

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

to the amount of water necessary to accomplish the primary purposes of a federal reservation and that water is not reserved to satisfy a reservation's secondary purposes. *See New Mexico*, 438 U.S. at 702. It did not, however, further restrict its holding by requiring a finding that the primary purpose of the federal reservation would be "entirely defeated" in the absence of a federally reserved right. That phrase was pulled from the Court's description of other *Winters* cases; it was not a part of the *New Mexico* Court's holding. *See New Mexico*, 438 U.S. at 700. Tellingly, case law applying *New Mexico* does not refer to "entirely defeated" phrase, instead citing the Supreme Court's decision only for the distinction that it draws between primary and secondary reservation purposes. *See, e.g.*, *Adair*, 723 F.2d at 1408-09; *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1981) (*Walton I*); *Washington*, 2005 WL 1244797, at *3.

CVWD's misreading of *New Mexico* is inappropriate in any context, but it is particularly improper where the federal reservation in question is an Indian reservation. *New Mexico* involved the assessment of a reserved water right for a national forest, and it interpreted a statute that expressly identified and limited the purpose of such reservations. *See New Mexico*, 438 U.S. at 706-707, 709. In that particular context, a strict reading of the purposes of a federal reservation might be appropriate. It is well settled, however, that the purposes of an Indian reservation are not to be strictly construed, but instead must be broadly construed in favor of Indian interests. *See Adair*, 723 F.2d at 1408 n.13 ("While the purpose for which the federal government reserves other lands may be strictly construed … the purposes of Indian reservations are necessarily entitled to broader interpretation …." (internal quotation & citation omitted)); *Walton I*, 647 F.2d at 47 ("The general purpose [of Indian reservations], to provide a home for the Indians, is a broad one and must be liberally construed.") Of course, as discussed below, this is largely an academic discussion at this stage of the litigation, as a detailed analysis of the Agua Caliente Reservation's

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

17

principal purposes goes to quantification of Agua Caliente's *Winters* right rather than its existence.

*New Mexico*'s distinction between primary and secondary reservation purposes is certainly relevant and applicable to this case, particularly the quantification phase. CVWD's attempt to arbitrarily graft language from other parts of the opinion to make the *New Mexico* analysis more onerous for Agua Caliente, however, is improper and should be rejected by the Court.

2. *Water is unquestionably necessary to accomplish the primary purposes of the Agua Caliente Reservation.*

There is little, if any, disagreement between CVWD and Agua Caliente as to the primary purposes of the Agua Caliente Reservation. The Reservation was and is intended to provide a permanent homeland for a self-sufficient Agua Caliente people, a purpose that includes but is not limited to supporting agriculture. *See* Doc. 82-1 at 23-24; Doc. 85-1 at 2-4; Doc. 85-4 at ¶¶ 37-66. This is entirely consistent with the language of the executive orders establishing the Agua Caliente Reservation "for permanent use and occupancy" by Agua Caliente and for "Indian purposes." *See* 1876 & 1877 Executive Orders (Doc. 85-4, Tabs 1-2). While acknowledging that the "specific purposes of an Indian reservation … were often unarticulated," courts have inferred homeland, agricultural, and similar purposes for Indian reservations based on similar evidence. *Walton I*, 647 F.2d at 47. *See also Adair*, 723 F.2d at 1410 (interpreting an even more general executive order as intending to reserve water "not only for the purpose of supporting Klamath agriculture, but also for the purpose of maintaining the Tribe's treaty right to hunt and fish on reservation lands"); *Washington*, 2005 WL 1244797 at *8 ("The purpose of the reservation may be discerned by reference to the relevant treaty, statute, or executive order."). For example, in *Walton I*, the Ninth Circuit looked to "the document and circumstances surrounding [the reservation's] creation, and the history of the Indians for whom it was created" to determine that the Colville Reservation's primary purposes included

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

18

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

"provid[ing] a homeland for the Indians to maintain their agrarian society" and "preservation of the tribe's access to fishing grounds." *Walton I*, 647 F.2d at 47-48.

CVWD essentially concedes Agua Caliente's characterization of the primary purposes of the Agua Caliente Reservation, but it fails to acknowledge the significance of its concession. The creation of a permanent homeland and facilitation of agriculture in an arid, desert environment necessarily require water. *United States v. Powers*, 305 U.S. 527, 533 (1939) ("Without water productive cultivation has always been impossible."). Stated differently, water is absolutely and indisputably necessary to accomplish the admitted primary purposes of the Agua Caliente Reservation. *See, e.g.*, *Arizona*, 373 U.S. at 599-601; *Winters*, 207 U.S. at 575-577. Where water is necessary to accomplish the primary purposes of a federal reservation, the federal reservation of that water is implied as a matter of law. *See, e.g.*, *Cappaert*, 426 U.S. at 138; *Winters I*, 647 F.2d at 46 ("An implied reservation of water for an Indian reservation will be found where it is necessary to fulfill the purposes of the reservation."). The existence of Agua Caliente's reserved right to groundwater is thus established as a matter of law; the only remaining task for the Court is to quantify that right in Phase 3 of this litigation.[8]

CVWD attempts to avoid the straightforward application of the *Winters* doctrine with two arguments that are equally unavailing. First, it contends that the United States did not reserve groundwater for Agua Caliente because "[d]uring the era the Reservation was created, the Tribe relied on surface water supplies … for irrigation and domestic purposes." Doc. 82-1 at 24. Accordingly, CVWD argues, groundwater plainly is not necessary to accomplish the purposes of the Agua Caliente Reservation. *Id.*

---

[8] Indeed, Agua Caliente is unaware of any case in which a court has held that water was <u>not</u> necessary to satisfy the purposes of an Indian reservation, and the Defendants have cited no such case law.

While Agua Caliente disputes the factual assertion that the Agua Caliente people made no use of groundwater, *see* Doc. 85-4 at ¶¶ 25-26 and Factual Background, *supra*, it is frankly irrelevant. The water rights created by the *Winters* doctrine are in no way limited to the quantity or source of water in use at the time of a reservation's establishment. This has been clear since the doctrine's inception, as *Winters* itself involved reserved rights in a water source that the Indians of the Fort Belknap Reservation did not begin using until years after their Reservation was established. *Winters*, 207 U.S. at 565-566.

Federally reserved water rights are not intended merely to allow tribes to maintain their lifestyle as of the date of their reservation's establishment, frozen in time with no regard to future changes in ways and standards of living, technology, or population. Rather, they are set aside in an amount necessary to satisfy a tribe's current and future needs, and they allow for changes and growth in tribal water use over time. *See Arizona*, 373 U.S. at 600; *Winters*, 207 U.S. at 565-566; *Walton I*, 647 F.2d at 47 ("[W]ater was reserved to meet future as well as present needs …."); *Confederated Salish*, 712 P.2d at 762 ("Reserved water rights are established by reference to the purposes of the reservation rather than to actual, present use of the water."); *see also, e.g.*, *United States v. Washington*, 384 F. Supp. 312, 402 & 407 (W.D. Wash. 1974) (holding that "tribes may utilize improvements in traditional fishing techniques, methods and gear" to exercise treaty fishing rights "[j]ust as non-Indians may continue to take advantage of improvements in fishing techniques").[9] The Ninth Circuit spoke directly to this point in *Walton I*, where it explained that the

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

---

[9] While the federal intent to reserve water for present as well as future tribal needs is settled as a matter of law, it is borne out by the facts in this case, as the historical record around the time of the establishment of the Agua Caliente Reservation is replete with instances of federal officials looking at how water use and agricultural production on the Reservation eventually might expand. *See* Doc. 85-1 at 2-4; Doc. 85-4 at ¶¶ 39-66.

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

federal government's vision in establishing Indian reservations "implies a flexibility of purpose" and that determining the purpose of an Indian reservation requires consideration of Indians' "need to maintain themselves under changed circumstances." *Walton I*, 647 F.2d at 47 & n.9; *see also United States v. Washington*, No. 2:01-cv-00047, slip op. at 10 (W.D. Wash. Feb. 24, 2003) (holding that "the Court is not bound by the historical use of groundwater by the Lummi at the time" of their reservation's establishment).

If the *Winters* doctrine only reserved rights to water that a tribe was already using prior to the establishment of its reservation, as CVWD speciously contends, then it would be largely pointless. Accordingly, any discussion of the source or amount of water in use at the time of the Agua Caliente Reservation's establishment is irrelevant to the question before the Court.

Second, CVWD alleges that a reserved right to groundwater cannot be necessary to fulfill the purposes of the Reservation because Agua Caliente has a correlative, overlying right to water under state law. Doc. 82-1 at 24-25. Because the Tribe has access to groundwater without a declared *Winters* right, CVWD contends, it has no need of such a right. This argument fails for the reasons discussed *supra*. Whatever rights Agua Caliente may have to use groundwater under California law, they are inferior to and cannot substitute for the federally reserved right at the heart of this litigation. CVWD's reliance on state law rights is misplaced.

For all of the foregoing reasons, CVWD is not entitled to summary judgment on the Phase 1 issue of whether Agua Caliente has a federally reserved right to groundwater. CVWD's motion should be denied, and Agua Caliente's motion should be granted.

## II.    Agua Caliente has an aboriginal right to groundwater.

CVWD relies heavily on *Tee-Hit-Ton Indians v. United States*, 348 U.S. 272 (1955) to argue that Agua Caliente does not have aboriginal rights to groundwater as a matter of law. *Tee-Hit-Ton*'s broad statements about the nature of aboriginal rights

have been narrowed by subsequent Supreme Court decisions, however, and its legal underpinnings widely questioned by prominent Indian legal scholars. *See*, *e.g.*, *Cnty. of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 235 (1985) (reaffirming that "the Indians' right of occupancy is as sacred as the fee simple of the whites") (internal quotation omitted); Cohen's Handbook of Federal Indian Law, § 15.09[1][d] (Nell Jessup Newton, et al., eds., 2012 ed.) ("The ruling in *Tee-Hit-Ton* has been criticized for misinterpreting precedent and violating fundamental human rights and constitutional norms of equality. Nevertheless, the *Tee-Hit-Ton* rule is only triggered in the event of an uncompensated taking and a concomitant claim for damages for just compensation under the fifth amendment."). *Tee-Hit-Ton* is far too slender a reed to bear the weight that CVWD places upon it.

### A.   Agua Caliente's aboriginal claim to groundwater is legally sound.

Contrary to CVWD's assertions, Agua Caliente's aboriginal claim is legally sound.[10] Agua Caliente has used and occupied the lands of the present-day Agua Caliente Reservation since time immemorial in a manner sufficient to establish aboriginal title. *See* Doc. 85-1 at 1-2. Agua Caliente's aboriginal title has never been ceded or extinguished; or, if it was extinguished, it was later reestablished because the Tribe has retained permanent and consistent occupancy and control of the Reservation lands. *See*, *e.g.*, *Cramer v. United States*, 261 U.S. 219, 230-231 (1923) (recognizing establishment of aboriginal title after the 1851 Act that CVWD contends extinguished Agua Caliente's aboriginal title).

---

[10] Defendants cite to a law review article written by two former California Deputy Attorney Generals for a general discussion of the "unique" treatment of aboriginal title in California.   Flushman and Barbieri, *Aboriginal Title:   The Special Case of California*, 7 Pac. L.J. 391, 399-400 (1986). This commentary is not controlling, of course; moreover, other legal scholars flatly disagree with the conclusions drawn by those authors. *See*, *e.g.*, William Wood, *The Trajectory of Indian Country in California:   Rancherias, Villages, Pueblos, Missions, Ranchos, Reservations, Colonies, and Rancherias*, 44 Tulsa L. Rev. 317 (2008).

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

CVWD also cites *Summa Corp. v. California ex rel. State Lands Comm'n*, 466 U.S. 198 (1984), to support its contention that an 1851 Act of Congress extinguished all aboriginal title in California.[11] As explained in detail in Agua Caliente's brief in support of its motion for summary judgment, CVWD incorrectly characterizes both the Act and the Supreme Court's decision in *Summa*. *See*, *e.g.*, Doc. 85-1 at p. 20-22. The central question in *Summa* was whether the State of California, which had urged the creation of the 1851 Act Land Commission and was fully aware of the proceedings that it conducted, was required to assert its interests before the Land Commission in order to preserve them. The *Summa* Court held that the State's failure to bring a claim during the period provided by the 1851 Act resulted in the claim's extinguishment.[12] *Summa*, 466 U.S. at 209.

*Summa* is unpersuasive here for several reasons. First, it involved lands to which title was issued pursuant to the 1851 Act. Unlike the lands at issue in *Summa*, no proceedings were held with regard to Reservation lands, and no title or patents were issued because the Commission never examined or determined any private rights within Reservation lands. Also, *Summa* involved lands for which the Land Commission had initially confirmed Mexican grants, whereas no rights pursuant to a Mexican grant are or ever were at issue within the Agua Caliente Reservation.

---

[11] CVWD incorrectly refers to this legislation as "An Act to Ascertain and Settle Land Claims in the State of California." Doc. 82-1 at 4. The correct title of the Act is "An Act to Ascertain and Settle *Private* Land Claims in the State of California." *See* 9 Stat. 631 (1851) (emphasis added).

[12] At issue in *Summa* was the existence of a state public trust easement where none was asserted before the 1851 Land Commission or in subsequent proceedings related to the issuance of a fee patent. *Summa* relied on the Court's previous decisions in *Barker v. Harvey*, 181 U.S. 481 (1901) and *United States v. Title Insurance & Trust Co.*, 265 U.S. 472 (1924), but it did not address aboriginal title or the interests of Indian tribes or individual Indians. Rather, *Summa* involved the rights of successors in interest to non-Indian Mexican grant holders.

1
2

**B.    The relevant facts and case law establish the Tribe's aboriginal right to groundwater.**

3
4
5
6
7
8
9
10
11
12

Agua Caliente and its members are descendants of the ancestral Cahuilla, who occupied the Coachella Valley, including Reservation lands, for millennia.  Doc. 85-4 at ¶¶ 4, 6, 7, 24, 27-29. Agua Caliente retains aboriginal title to the lands encompassed by its present-day Reservation. That title was not extinguished by the 1851 Act or by subsequent proceedings that provided compensation for some Indian claims in California. Because Agua Caliente retains aboriginal title to the land, it also retains aboriginal title to all constituent elements of the land, including minerals, timber, and other resources such as water. *See United States v. Shoshone Tribe of Indians of Wind River Reservation*, 304 US 111, 115-117 (1938) (holding that Indian tribes retain the rights to full use of their land, including surface and mineral estates).

### CONCLUSION

13
14
15
16
17
18
19
20
21

As set forth in Agua Caliente's and the United States' briefs in support of summary judgment, Agua Caliente has a federally reserved right to groundwater. Groundwater is necessary to fulfill the primary homeland and agricultural purposes of the Agua Caliente Reservation, and it cannot be limited or replaced by state law or any alleged state law water rights. CVWD's motion for summary judgment on the reserved rights claim, which relies on state law and erroneous legal contentions that the *Winters* doctrine does not apply to groundwater or that groundwater is not necessary to the purposes of the Agua Caliente Reservation, should be denied.

22
23
24
25
26

Agua Caliente also has an aboriginal right to groundwater based on its use and occupation of the current day Coachella Valley since time immemorial. That right has never been legitimately extinguished, contrary to CVWD's contention, and CVWD's motion for summary judgment on Agua Caliente's aboriginal rights claim should be denied as well.

27
28

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

1   DATED: December 5, 2014.          KILPATRICK TOWNSEND & STOCKTON LLP

2                                     By:_____/s/ Catherine Munson
3                                         CATHERINE MUNSON
                                          (D.C. Bar No. 985717, admitted *pro hac*
4                                         *vice*)
5                                         MARK H. REEVES
                                          (GA Bar No. 141847, admitted *pro hac*
6                                         *vice*)
7                                         *Attorneys for Plaintiff*
                                          *Agua Caliente Band of Cahuilla Indians*
8
9                                     NATIVE AMERICAN RIGHTS FUND
                                          STEVEN C. MOORE
10                                        (CO Bar No. 9863, admitted *pro hac vice*)
                                          HEATHER WHITEMAN RUNS HIM
11                                        (NM Bar No. 15671, admitted *pro hac*
12                                        *vice*)
13                                        *Attorneys for Plaintiff*
                                          *Agua Caliente Band of Cahuilla Indians*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28