CATHERINE F. MUNSON (D.C. Bar No. 985717, admitted pro hac vice)
CMunson@kilpatricktownsend.com
MARK REEVES (GA Bar No. 141847, admitted pro hac vice)
MReeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 508-5800; Fax:  (202) 508-5858

STEVEN C. MOORE (CO Bar No. 9863, admitted pro hac vice)
Smoore@narf.org
HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671, admitted pro hac vice)
HeatherW@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Tel:  (303) 447-8760; Fax:  (303) 443-7776

DAVID J. MASUTANI (CA Bar No. 172305)
DMasutani@alvaradosmith.com
ALVARADOSMITH, APC
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel:  (213) 229-2400; Fax:  (213) 229-2499

Attorneys for Plaintiff
Agua Caliente Band of Cahuilla Indians

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>Plaintiffs,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.<br><br>Defendants. | Case No.:   ED CV 13-00883-JGB-SPX<br>Judge:   Jesus G. Bernal<br><br>**AGUA CALIENTE BAND OF CAHUILLA INDIANS' RESPONSE TO DWA'S STATEMENT OF UNDISPUTED FACTS**<br><br>Trial Date:   February 3, 2015<br>Action Filed:   May 14, 2013 |

US2008 6188081 1

1   Pursuant to the Court's Standing Order and L.R. 56-1, the Agua Caliente Band
2   of Cahuilla Indians (Agua Caliente) files the following Response to Defendant
3   DWA's Statement of Undisputed Facts filed in support of DWA's motion for
4   summary judgment. All documents cited below have been either (1) relied upon by the
5   Defendant; (2) previously filed with the Court by Agua Caliente in its Plaintiff's
6   Evidentiary Notebook Submitted in Support of Agua Caliente's Motion for Summary
7   Judgment (cited herein as "Tab __"; or (3) contemporaneously filed with the Court by
8   Agua Caliente in its Plaintiff's Evidentiary Notebook Submitted in Support of Agua
9   Caliente's Opposition to Defendants' Motions for Summary Judgment on Phase I
10  Issues (cited herein as "Tab II.___"). References to the Evidentiary Objection Table
11  refer to Agua Caliente's separate statement of evidentiary objections to DWA's
12  Statement of Undisputed Facts, which is being filed contemporaneously herewith.

| | Agua Caliente Statement of Genuine Disputes of Material Fact ||||
|---|---|---|---|---|
| | DWA's SUF No. | Undisputed Facts | Supporting Evidence | Pl.'s Response |
| | | **Tribes Production of Groundwater** ||||
| | 1. | The Tribe does not produce groundwater from its reservation. | Declaration of Steven G. Martin ("Martin Dec.") (Exh. 1) 4 (Tribe's Resp. to DWA Interrog. No. 10); Declaration of David K. Luker ("Luker Dec.") ¶ 9. | Undisputed.  See Evidentiary Objection Table. |
| | 2. | The Tribe purchases its water supplies from the defendant water agencies, which the agencies obtain by producing it from their own wells. | Martin Dec. (Exh. 2) 9 (Tribe's Resp. to DWA Interrog. No. 15); Luker Dec. ¶ 9. | Undisputed.  See Evidentiary Objection Table. |
| | 3. | DWA has never taken any action to prevent the Tribe from producing groundwater. | Luker Dec. ¶ 9. | Disputed, in part.  CVWD and DWA are impeding the Tribe's ability to access groundwater from lands within the Reservation by extracting groundwater in amounts in excess of the aquifer's safe yield, thereby contributing to the overdraft of the aquifer and reducing the amount of groundwater that is available for the Tribe or any other entity to access and use. See Doc. 85-4 at ¶¶ 69-72; Doc. 85-1 at 4-5. |

| | | | |
|---|---|---|---|
| | | | See Evidentiary Objection Table. |
| **Historical Documents and Circumstances** | | | |
| 4. | The historical documents surrounding creation of the Tribe's reservation describe the Tribe's diversions of water from Whitewater River tributaries for irrigation of tribal lands, but make no mention of any tribal extraction and use of groundwater. | Request for Judicial Notice ("RJN") (Exhs. 12, 3, 6, 7) 231, 70, 179, 188. | Disputed.<br><br>The historical documents dating from the time of the creation of the Reservation by executive order in 1876 and 1877 contain several references to the Tribe's use and a need for sufficient water resources generally, including subsurface springs, and do not contain any limitation as to the sources through which such needs would be met.<br>Ames Report, Oct. 28, 1873 at 15.  [Tab 17]<br>Dryden Report of June 30, 1875 at 223-224. [Tab 18]<br>Colburn Report of August 15, 187 at 37.  [Tab 23]<br>Colburn Report of August 24, 1877 at ACC0010138-40.  [Tab 24].<br><br>In addition, the 1883 Report on the Condition and Needs of the Mission Indians in California, by Abbot Kinney, reported regarding  Agua Caliente: "There is very little running water, but water is so near the surface that it can be easily developed." Tab II-1 at 32.  The documents cited by DWA as evidence of the period "surrounding [the] creation of the Tribe's reservation" all |

| | | | | |
|---|---|---|---|---|
| | | | | postdate the actual creation of the Agua Caliente Reservation in 1876-1877. In fact, the four documents cited by DWA in support of paragraph 4 (Exhibits 3, 6, 7, and 12) are dated between 1891 and 1907, between 15 and 30 years after the Reservation's establishment. Therefore, these four documents cannot fairly or accurately be described as a broad category such as "[t]he historical documents surrounding the creation of the Tribe's reservation" but would more accurately be described as a very few documents from a period well after the creation of the Reservation.<br><br>See Evidentiary Objection Table. |
| | 5. | The Mission Indian Relief Act of 1891, 26 Stat. 712, made no mention of any tribal use of groundwater. | RJN (Exh. 12) 231. | Undisputed.<br><br>See Evidentiary Objection Table. |
| | 6. | The Smiley Commission Report mentioned the need for federal assistance to provide for "construction of the reservoirs and irrigation ditches" for the | RJN (Exh. 3) 73, 104-109. | Disputed.<br><br>The Smiley Commission report discussed Agua Caliente's use of water from "[t]he hot spring" for both "bathing purposes and "irrigation." DWA Exhibit 3, p. 105.<br><br>See also Evidentiary Objection Table. |

4

|   |    |                                                                                                                                                                                                                                                                                                |                  |                                                         |
|---|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------------|---------------------------------------------------------|
|   |    | Mission Indians, but made no mention of any tribal use of groundwater by the Agua Caliente Band of Mission Indians.                                                                                                                                                                           |                  |                                                         |
|   | 7. | The Smiley Commission Report stated that the Agua Caliente Indians "have depended largely upon water coming from Toquitch Canyon," and had "built a ditch to bring water from the source for their lands," and also "had a supply of water coming from Andreas Canyon . . ." | RJN (Exh. 3) 105. | Undisputed.  See Evidentiary Objection Table. |
|   | 8. | The Superintendent of Irrigation of the Department of the Interior, George Butler, issued a report in 1903 stating that "[t]here is evidence today that in times past the Indians have built | RJN (Exh. 6) 180. | Undisputed.  See Evidentiary Objection Table. |

5

| | | | | |
|---|---|---|---|---|
| 1-7 | | ditches for the conduct and distribution of the waters of the canons of Chino, Tahquitz, and Andreas; and have irrigate lands therefrom . . . ." | | |
| 8-28 | 9. | The Special Agent for the California Indians, C. E. Kelsey, issued a report in 1907 stating that the Agua Caliente Indians—as a result of "the cementing of the Tauquitz ditch" and purchase of water supplies— "have all the water they can use for some time." | RJN (Exh. 7) 189. | Disputed.<br><br>C. E. Kelsey made the statement suggesting the Agua Caliente Band had "all the water they can use for some time" after discussing a "proposition" for the U.S. government to purchase a washed-out ditch built by the "boom company" whose "scheme" to create a settlement at Palmdale had "failed." According to Kelsey, the proposal for the government to purchase this company's stock and to rebuild the ditch "looked to me like an attempt to unload a bad bargain upon the government." It was within this context that Kelsey claimed that the Agua Caliente Band had "all the water they can use for some time," suggesting that purchasing the failed "boom" company's assets would not necessarily benefit the Tribe. RJN (Ex. 7), Doc. 84-7, at 2. See Evidentiary Objection Table, specifying this statement as irrelevant and incomplete. |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

| **Whitewater River Decree** | | | |
|---|---|---|---|
| 10. | In 1938, the Riverside County Superior Court issued the Whitewater River Decree, which adjudicated all water rights in the Whitewater River and its tributaries, including the United States' rights on behalf of the Agua Caliente Indian Tribe. | RJN (Exh. 1) 4. | Disputed.<br><br>The Whitewater River Decree did not adjudicate the "United States' rights on behalf of the Agua Caliente Tribe." The United States expressly stated that the court lacked "jurisdiction of the water rights of the United States" and that the court was "without jurisdiction to enter any order or make any determination affecting . . . the said rights of the United States." Suggestion of the United States at 18 (Dkt. 84-7 at ECF page 46 of 86). The United States also expressly stated that it was "not submitting the rights or claims of the United States." Id. at 1 (Dkt. 84-7 at ECF page 29 of 86). Moreover, the judgment cited by DWA states that it is for "quantities of water . . . for direct application to beneficial use" and "diverted to beneficial use" (Dkt. 84-5 at ECF page 23 of 72, ¶¶ 1, 3). The case caption, too, states that the matter was for "the Determination of Rights Based Upon Prior Appropriation." Dkt. 84-5 at ECF page 6 of 72. This is not the measure of the Tribe's federally reserved water right, which instead (1) is measured by the amount of water necessary to meet current and future needs of the reservation; (2) does not require actual diversion and beneficial use; and (3) cannot be lost through non-use. Finally, pages 64-66 of the judgment (ECF pages 60-62), which purport to include the |

7

| | | | | |
|---|---|---|---|---|
| | | | | United States, appear to be from a source or document different than the rest of the judgment. |
| | 11. | During the litigation, the United States submitted a "Suggestion" claiming a reserved right to divert specific quantities of water from two Whitewater River tributaries, the Andreas and Tahquitz Creeks, for use on the Tribe's reservation. | RJN (Exh. 8) 199-200 ("Suggestion" ¶¶ 4, 5). | Disputed.

The United States expressly stated in the Suggestion that it was "not submitting the rights or claims of the United States." Suggestion of the United States at 1 (Dkt. 84-7 at ECF page 29 of 86). It also expressly stated that the court lacked "jurisdiction of the water rights of the United States" and that the court was "without jurisdiction to enter any order or make any determination affecting . . . the said rights of the United States." Id. at 18 (Dkt. 84-7 at ECF page 46 of 86). |
| | 12. | The Whitewater River Decree awarded the United States the right to divert the specific quantities of water requested by the United States for the Tribe's use. | RJN (Exh. 1) 59-60 (Decree ¶¶ 45, 46). | Disputed.

That court was "without jurisdiction to enter any order or make any determination affecting . . . the said rights of the United States," Suggestion of the United States at 18 (Dkt. 84-7 at ECF page 46 of 86), and the United States expressly stated that it was "not submitting the rights or claims of the United States." Suggestion of the United States at 1 (Dkt. 84-7 at ECF page 29 of 86). Also disputed for the reasons described in Response to DWA SUF No. 10. |
| | 13. | The Decree made no | RJN (Exh. 1) 20, 22 | Disputed, in part. |

| | | | |
|---|---|---|---|
| | mention of any water right "reserved" from appropriation, and instead established "the relative rights based upon prior appropriation of the various claimants to the waters of the Whitewater River and its tributaries… ." | (Decree ¶¶ XXV, XXVI). | Although the Decree does not mention "reserved" rights, the Decree recognized surface water rights in the amounts indicated in the Suggestion filed by the United States. The Suggestion stated that these water rights were "reserved from appropriation by others and set aside with said reservations, and the United States, for and on behalf of the Indians living thereon and other Indians, and those succeeding them…" Suggestion of United States, Def. DWA RJN, Exh. 8 at 201.<br><br>See Evidentiary Objection Table. |
| 14. | The United States' "Suggestion" claimed that certain Mission Indians—the Cabazon, Augustine and Torros tribes—have reserved rights in the "percolating" groundwater of the Whitewater River, but made no similar claim on behalf of the Agua Caliente Tribe. | RJN (Exh. 8) 213 ("Suggestion" ¶ X). | Disputed, in part.<br><br>The United States expressly stated in the Suggestion that it was "not submitting the rights or claims of the United States." Suggestion of the United States at 1 (Dkt. 84-7 at ECF page 29 of 86). Also disputed for the reasons described in Response to DWA SUF No. 10. |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

| | | **Groundwater "Located Within" Reservation** | | |
|---|---|---|---|---|
| | 15. | The Coachella Valley Groundwater Basin underlying the Tribe's reservation is located throughout the entire Coachella Valley. | Luker Dec. ¶ 5. | Undisputed.<br><br>See Evidentiary Objection Table. |
| | 16. | The Coachella Valley Groundwater Basin underlies numerous public and private lands in the valley, including lands that the defendant agencies use to produce groundwater for their customers. | Luker Dec. ¶ 5. | Undisputed.<br><br>See Evidentiary Objection Table. |
| | 17. | Any production of groundwater by the Tribe on its reservation lands will potentially affect availability of groundwater | Luker Dec. ¶ 5. | Disputed, in part.<br><br>Agua Caliente disputes this statement insofar as it implies that only groundwater production by Agua Caliente will potentially impact the availability of groundwater supplies on off-reservation lands. Rather, groundwater production by any producer on public or private lands in the Coachella Valley may have this |

10

| | | | |
|---|---|---|---|
| | supplies on off-reservation lands. | | impact. Similarly, groundwater production by any other party on public or private lands in the Coachella Valley may impact the availability of groundwater supplies for use on the Reservation.<br><br>See Evidentiary Objection Table, specifying this statement as irrelevant. |
| **California's Ability to Fashion Water Rights Regime "Responsive to Local Conditions"** | | | |
| 18. | Pursuant to the Urban Water Management Act, DWA and CVWD have adopted Urban Water Management Plans that describe their strategies for managing, regulating and conserving the groundwater in the Coachella Valley. | Luker Dec. ¶ 7. | Undisputed.<br><br>See Evidentiary Objection Table, specifying this statement as irrelevant. |
| **Allottees' Rights** | | | |
| 19. | The allottees on the Tribe's reservation do not produce groundwater from wells located on the reservation, but instead purchase their water supplies from DWA | Luker Dec. ¶ 14. | Disputed, in part.<br><br>Allottees purchase water supplies from DWA and CVWD and also produce water on allotted land. See Luker Declaration.<br><br>See Evidentiary Objection Table, specifying this statement as irrelevant. |

11

| | | | | |
|---|---|---|---|---|
| | | and CVWD. | | |
| | **Leased Lands' Rights** | | | |
| | 20. | Various non-Indian lessees who operate commercial resort facilities on the allotted lands of the Tribe's reservation produce groundwater for golf courses that are part of the resort facilities. | Luker Dec. ¶¶ 10, 11, 12. | Undisputed.<br><br>But see Evidentiary Objection Table, specifying this statement as irrelevant. |
| | 21. | The Whitewater River Decree authorized the United States to divert water for "beneficial use" on the Tribe's reservation, which was defined as "domestic, stock watering, power development and irrigation purposes." | RJN (Exh. 1) 59-60 (Decree ¶¶ 45, 46). | Disputed.<br><br>The State of California did not possess the requisite power to adjudicate the United States' or Tribe's water rights, and the United States expressly stated that it was "not submitting the rights or claims of the United States."  Suggestion of the United States at 1 (Dkt. 84-7 at ECF page 29 of 86).  Also disputed for the reasons described in Response to DWA SUF No. 10. |
| | 22. | The United States' "Suggestion" submitted during the | RJN (Exh. 8) 200, 201, 202, 209, 211-212, | Disputed.<br><br>The United States expressly stated in the Suggestion that it was "not submitting the rights or claims of the |

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

12

| | | | |
|---|---|---|---|
| | | litigation claimed the right to divert water for "irrigation" and for "power, domestic and stock water uses." | 214 ("Suggestion" pp. 4, 5, 6, 13, 15-16, 18). | United States." Suggestion of the United States at 1 (Dkt. 84-7 at ECF page 29 of 86). It also expressly stated that the court lacked "jurisdiction of the water rights of the United States" and that the court was "without jurisdiction to enter any order or make any determination affecting … the said rights of the United States." Id. at 18 (Dkt. 84-7 at ECF page 46 of 86). |
| 23. | The Smiley Commission Report stated that the United States had authorized an irrigation company to obtain an easement across the Tribe's lands on condition that it supply sufficient water to "irrigate" the Tribe's lands and provide water for the Tribe's "domestic use." | RJN (Exh. 3) 106 (Smiley Rep. 33). | Disputed, in part.<br><br>The Smiley Commission states this, however, the Department of Interior never approved easement.<br><br>See D. M. Browning, Commissioner of Indian Affairs, Letter to Secretary of the Interior, July 3, 1895, ACC-HRA000733 at TAB II-7, p. 5; Frank D. Lewis, Special U.S. Attorney for Mission Indians, Letter to Commissioner of Indian Affairs, June 18, 1895, ACC-HRA000717 at Tab II-6, p.2.<br><br>See Evidentiary Objection Table, specifying this statement as irrelevant and incomplete. |
| 24. | In 1888, a federal Indian agent, Joseph W. Preston, issued a report recommending that a land company be | RJN (Exh. 5) 176-177 (Preston Rep. 1-2). | Undisputed.<br><br>But see Evidentiary Objection Table. |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

| | | | | |
|---|---|---|---|---|
| | | allowed to obtain an easement across the Tribe's reservation, in return for the company's promise to grant the Tribe "a permanent water right" for "irrigation" of tribal lands. | | |
| | 25. | In 1903, George Butler, the Superintendent of Irrigation of the Department of the Interior, issued a report describing the Tribe's water usage practices, stating that the Tribe's members have built "ditches" that conveyed water from creeks to other areas where the water was used to "irrigate" the lands. | RJN (Exh. 6) 180 (Butler Rep. 2). | Disputed, in part.<br><br>Butler's description of the Tribe's water usage practices included the development of groundwater. See Evidentiary Objection Table, specifying this statement as irrelevant and incomplete. |

14

| | | |
|---|---|---|
| 1 | DATED: December 5, 2014. | KILPATRICK TOWNSEND & STOCKTON LLP |

By: /s/ Catherine Munson
    CATHERINE MUNSON
    (D.C. Bar No. 985717, admitted pro hac vice)
    MARK H. REEVES
    (GA Bar No. 141847, admitted pro hac vice)
    Attorneys for Plaintiff
    Agua Caliente Band of Cahuilla Indians

NATIVE AMERICAN RIGHTS FUND
    STEVEN C. MOORE
    (CO Bar No. 9863, admitted pro hac vice)
    HEATHER WHITEMAN RUNS HIM
    (NM Bar No. 15671, admitted pro hac vice)
    Attorneys for Plaintiff
    Agua Caliente Band of Cahuilla Indians

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018