CATHERINE F. MUNSON (D.C. Bar No. 985717, admitted *pro hac vice*)
CMunson@kilpatricktownsend.com
MARK REEVES (GA Bar No. 141847, admitted *pro hac vice*)
MReeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800; Fax: (202) 508-5858

STEVEN C. MOORE (CO Bar No. 9863, admitted *pro hac vice*)
Smoore@narf.org
HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671, admitted *pro hac vice*)
HeatherW@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Tel: (303) 447-8760; Fax: (303) 443-7776

DAVID J. MASUTANI (CA Bar No. 172305)
DMasutani@alvaradosmith.com
ALVARADOSMITH, APC
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel: (213) 229-2400; Fax: (213) 229-2499

Attorneys for Plaintiff
Agua Caliente Band of Cahuilla Indians

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>Plaintiffs,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.<br><br>Defendants. | Case No.: ED CV 13-00883-JGB-SPX<br>Judge: Jesus G. Bernal<br><br>**AGUA CALIENTE BAND OF CAHUILLA INDIANS' EVIDENTIARY OBJECTIONS TO DWA'S UNCONTROVERTED FACTS**<br><br>Trial Date: February 3, 2015<br>Action Filed: May 14, 2013 |

US2008 6185801 1

Pursuant to the Court's Standing Order and L.R. 56-1, the Agua Caliente Band of Cahuilla Indians (Agua Caliente) files the following Evidentiary Objections to Defendant DWA's Statement of Undisputed Facts filed in support of DWA's motion for summary judgment. All documents cited below have been either (1) relied upon by the Defendant; (2) previously filed with the Court by Agua Caliente in its Plaintiff's Evidentiary Notebook Submitted in Support of Agua Caliente's Motion for Summary Judgment (cited herein as "Tab __"; or (3) contemporaneously filed with the Court by Agua Caliente in its Plaintiff's Evidentiary Notebook Submitted in Support of Agua Caliente's Opposition to Defendants' Motions for Summary Judgment on Phase I Issues (cited herein as "Tab II.___").

## AGUA CALIENTE EVIDENTIARY OBJECTIONS TO DWA'S STATEMENT OF UNDISPUTED FACTS

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| **Tribe's Production of Groundwater** | | |
| 1. | The Tribe does not produce groundwater from its reservation. | Irrelevant. F.R.E. 401, 402. It is not disputed that Agua Caliente uses a substantial quantity of groundwater and *Winters* rights are not lost by non-use. *See, e.g.*, *Arizona v. California*, 373 U.S. 546, 600 (1963); *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 404 (9th Cir. 1985) (*Walton II*); *Montana v. Confederated Salish & Kootenai Tribes*, 712 P.2d 754, 762, 765 (Mont. 1985). |

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| 2. | The Tribe purchases its water supplies from the defendant water agencies, which the agencies obtain by producing it from their own wells. | Irrelevant. F.R.E. 401, 402.<br><br>It is not disputed that Agua Caliente uses groundwater and *Winters* rights are not governed by state law doctrines. *See, e.g.*, *Cappaert*, 426 U.S. 128, 145 (1976); *Walton II*, 752 F.2d at 400; *United States v. Adair*, 723 F.2d at 1411 n.19 (9th Cir. 1984). |
| 3. | DWA has never taken any action to prevent the Tribe from producing groundwater. | Irrelevant. F.R.E. 401, 402.<br><br>Agua Caliente is not required to show that the defendants are preventing it from producing groundwater in order to establish a *Winters* claim. In any event, the defendants' overdraft and mismanagement of the aquifer is impeding Agua Caliente's ability to access its groundwater. |
| **Historical Documents and Circumstances** | | |
| 4. | The historical documents surrounding creation of the Tribe's reservation describe the Tribe's diversion of water from Whitewater River tributaries for irrigation of tribal lands, but make no mention of any tribal extraction and use of groundwater. | Irrelevant. F.R.E. 401, 402.<br><br>This statement is irrelevant because a tribe's *Winters* rights are not limited to water used at the time of the establishment of the Reservation. *See, e.g.*, *Cappaert*, 426 U.S. at 138; *Arizona*, 373 U.S. at 600; *Winters v. United States*, 207 U.S. 564, 569-570 (1908). |

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| 5. | The Mission Indian Relief Act of 1891, 26 Stat. 712, made no mention of any tribal use of groundwater. | Irrelevant.  F.R.E. 401, 402.<br><br>The fact that the Mission Indian Relief Act of 1891 makes no mention of groundwater has no bearing on the issue of whether the United States impliedly reserved groundwater for Agua Caliente in 1876 and 1877. *Winters* rights are by definition implied rather than express, and they are intended to accommodate the present and future needs of the federal reservation. *See, e.g.*, *Cappaert*, 426 U.S. at 138; *Arizona*, 373 U.S. at 600; *Winters*, 207 U.S. at 569-570; *In re Water in the Gila River Sys.*, 989 P.2d 739, 748 (Ariz. 1999) (*en banc*); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1984) (*Walton I*); *Confederated Salish*, 712 P.2d at 762. |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

3

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| 6. | The Smiley Commission Report mentioned the need for federal assistance to provide for "construction of the reservoirs and irrigation ditches" for Mission Indians, but made no mention of any tribal use of groundwater by the Agua Caliente Band of Mission Indians. | Irrelevant.  F.R.E. 401, 402; Incomplete .F.R.E. 106.<br><br>The Smiley Commission discussed Agua Caliente's use of groundwater for bathing and irrigation. *Winters* rights are intended to accommodate the present <u>and</u> future needs of the federal reservation and are not dependent upon the tribe's use of water at any given time. *See, e.g.*, *Arizona*, 373 U.S. at 600; *Gila River*, 989 P.2d at 748; *Walton I*, 647 F.2d at, 47 (9th Cir. 1984); *Confederated Salish*, 712 P.2d at 762, 765. |
| 7. | The Smiley Commission Report stated that the Agua Caliente Indians "have depended largely upon water coming from Toquitch Canyon," and had "built a ditch to bring water from the source for their lands," and also "had a supply of water coming from Andreas Canyon…" | Irrelevant.  F.R.E. 401, 402; Incomplete. F.R.E. 106.<br><br>*See* Evidentiary Objection 6, *supra*. |

4

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| 8. | The Superintendent of Irrigation of the Department of the Interior, George Butler, issued a report in 1902 stating that "[t]here is evidence today that in times past the Indians have built ditches for the conduct and distribution of the water of the canons of Chino, Tahquitz, and Andreas; and have irrigate lands therefrom…." | Irrelevant. F.R.E. 401, 402; Incomplete. F.R.E. 106.<br><br>The Tribe's use of water is irrelevant because the water is reserved as of the establishment of the Reservation and is not lost by non-use. *See*, *e.g.*, *Arizona*, 373 U.S. at 600; *Walton II*, 752 F.2d at 404; *Confederated Salish*, 712 P.2d at 762, 765. The statement is also incomplete because George Butler's 1903 report discusses the existence of what he called "quite a cienega" in the NE/4 of Section 7, T4S, R4E, near the location where Chino Creek "sank in the loose sand and gravel" in Section 7 (which was railroad land). DWA Exhibit 6, p. 180. Discussing this cienega, Butler claimed that it "used to be owned and cultivated by Indians" and that "considerable water, that seems independent of the stream above, could be developed." |

5

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| | | *Id.* Continuing, Butler wrote, "A good flow is discovered in the creek north of this marsh land, which runs for about half a mile and then disappears, as does the stream above." Butler then discussed the possibility of piping the "perennial" water supply (apparently from the "marsh land" created by this cienega) "about four miles to the N.W. corner of Sec. 14." *Id.* It is also of note that, in assessing the various proposals for irrigating lands within the Agua Caliente Reservation, Butler also indicated that the Indian Office "is not disposed to expend any considerable sum for this purpose . . ." *Id.* at 186. |

6

| DWA Def.'s SUF No. | Fact | Evidentiary Objection |
|---|---|---|
| 9. | The Special Agent for the California Indians, C.E. Kelsey, issued a report in 1907 stating the Agua Caliente Indians—as a result of "the cementing of the Tauquitz ditch" and purchase of water supplies—"have all the water they can use for some times." | Irrelevant. F.R.E. 401, 402; Incomplete. F.R.E. 106.<br><br>The Tribe's use of water is irrelevant because the water is reserved as of the establishment of the Reservation and is not loss by non-use *See, e.g., Cappaert*, 426 U.S. at 138; *Arizona*, 373 U.S. at 600; *Winters*, 207 U.S. at 569-570 (1908); *Walton I*, 647 F.2d at, 47 (9th Cir. 1984); *Gila River*, 989 P.2d at 748; *Confederated Salish*, 712 P.2d at 762, 765. The statement is incomplete because it fails to include parts of the report stating that Kelsey recommended that the U.S. not purchase a washed-out ditch because it was a "bad bargain." |

7

| | **Whitewater River Decree** | |
|---|---|---|
| 10. | In 1938, the Riverside County Superior Court issued the Whitewater River Decree, which adjudicated all water rights in the Whitewater River and its tributaries, including the United States' rights on behalf of the Agua Caliente Indian Tribe. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>To the extent that DWA claims that the Whitewater River Decree constituted a valid adjudication of either (1) any groundwater rights within the Whitewater River Basin whatsoever or (2) any of the United States' federally reserved/*Winters* rights on behalf of Indian tribes, it is an inaccurate statement for the reasons set forth in Agua Caliente's Brief in Opposition to DWA's Motion for Summary Judgment, pp. 26-27. To the extent that DWA claims only that the Decree adjudicated state law rights to surface water in the Whitewater River and its tributaries, it is irrelevant because state law rights cannot replace, preempt, or obviate Agua Caliente's federally reserved water rights. *See, e.g., Cappaert,* 426 U.S. at 145*; Walton II,* 752 F.2d at 400; *Adair,* 723 F.2d at 1411 n.19; *Gila River*, 989 P.2d at 747-748. |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

8

| | | |
|---|---|---|
| 11. | During the litigation, the United States submitted a "Suggestion" claiming a reserved right to divert specific quantities of water from two Whitewater River tributaries, the Andreas and Tahquitz Creeks, for use on the Tribe's reservation. | Irrelevant. F.R.E. 401.<br><br>The United States expressly noted that the California Department of Public Works and state courts lacked jurisdiction over federal water rights, and the state court expressly acknowledged that it lacked the authority to adjudicate groundwater rights. *See Suggestion*, Doc. 84-7 at 29, 40-44; DPW Engineer's Report at pp. 3-4 (Nov. 15, 1925), AC Opp. Notebook, ACC-HRA001048-1049 at Tab II-14 |
| 12. | The Whitewater River Decree awarded the United States the right to divert the specific quantities of water requested by the United States for the Tribe's use. | Irrelevant. F.R.E. 401.<br><br>While the Whitewater River Decree awarded certain state law, surface water rights to the United States, it did not involve federally reserved rights or groundwater rights, which are the issues in this case. *See id.* |

9

| 13. | The Decree made no mention of any water right "reserved" from appropriation, and instead established "the relative rights based upon prior appropriation of the various claimants to the water of the Whitewater River and its tributaries…." | Irrelevant. F.R.E. 401. Compound Statement.<br><br>The fact that the Whitewater River Decree made no reference to reserved rights is itself an acknowledgement that federally reserved rights were not at issue in that adjudication and that the decree did not address such rights. As stated above, the Whitewater River Decree addressed only state law rights to surface water, and such rights are not at issue in or relevant to this litigation. *See id.* |
|---|---|---|

| | | | |
|---|---|---|---|
| | 14. | The United States' "Suggestion" claimed that certain Mission Indians—the Cabazon, Augustine and Torros tribes – have reserved rights in the "percolating" groundwater of the Whitewater River, but made no similar claim on behalf of the Agua Caliente Tribe. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>Given that the Whitewater River Adjudication involved only state law rights and did not involve federally reserved rights, and that the state court lacked authority to adjudicate any groundwater rights, the sources of water that the United States identified in its Suggestion are irrelevant to this litigation. Furthermore, the United States' Suggestion only addressed the amount of water required to irrigate two small tracts of land within the Agua Caliente Reservation; given its position that the state court lacked any jurisdiction over its rights, the United States was not required to and plainly did not identify the full extent of its reserved rights to water on behalf of Agua Caliente. *See id.* |

11

| | **Groundwater "Located Within" Reservation** | | |
|---|---|---|---|
| | 15. | The Coachella Valley Groundwater Basin underlying the Tribe's reservation is located throughout the entire Coachella Valley. | Irrelevant. F.R.E. 401.<br><br>The fact that a body of water subject to a federally reserved right lies partially outside of a reservation's boundaries has no relevance to the Phase 1 question of whether the federally reserved right exists. *See, e.g.*, *Arizona*, 373 U.S. at 598-599; *Cappaert*, 426 U.S. at 138, 141-143; *Winters*, 207 U.S. at 569-570. |
| | 16. | The Coachella Valley Groundwater Basin underlies numerous public and private lands in the valley, including lands that the defendant agencies use to produce groundwater for their customers. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>The fact that a body of water subject to a federally reserved right lies partially outside of a reservation's boundaries or is used for water by others with inferior rights has no relevance to the Phase 1 question of whether the federally reserved right exists. *See, e.g.*, *Arizona*, 373 U.S. at 598-599; *Cappaert*, 426 U.S. at 138, 141-143; *Winters*, 207 U.S. at 569-570. |

| 17. | Any production of groundwater by the Tribe on its reservation lands will potentially affect availability of groundwater supplies on off-reservation lands. | Irrelevant. F.R.E. 401.<br><br>It is settled law that water use by inferior rights holders may be limited to the extent necessary to protect or accommodate a federally reserved rights. *See, e.g.*, *Cappaert*, 426 U.S. at 138, 141-143; *Winters*, 207 U.S. at 569-570. |
|---|---|---|

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

13

Case 5:13-cv-00883-JGB-SP   Document 98-10   Filed 12/05/14   Page 15 of 20   Page ID
#:6259

| **California's Ability to Fashion Water Rights Regime "Responsive to Local Conditions"** | | |
|---|---|---|
| 18. | Pursuant to the Urban Water Management Act, DWA and CVWD have adopted Urban Water Management Plans that describe their strategies for managing, regulating and conserving the groundwater in the Coachella Valley. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>State laws regarding groundwater use and management neither preempt nor trump Agua Caliente's federally reserved rights. *See, e.g.*, *Cappaert*, 426 U.S. at 145; *Walton I*, 647 F.2d at 48; *In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 455 n.3, 457 (1988); 2014 Cal. Legis. Serv. Ch. 346 (S.B. 1168) (West), *to be codified at* Cal. Water Code § 10720.3(d). |
| **Allottees' Rights** | | |
| 19. | The allottees on the Tribe's reservation do not produce groundwater from wells located on the reservation, but instead purchase their water supplies from DWA and CVWD. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>The fact that DWA and CVWD sell groundwater to Agua Caliente allottees to satisfy the latter's need for water does not obviate federally reserved water rights and is irrelevant to this litigation. |

14

| | **Leased Lands' Rights** | | |
|---|---|---|---|
| 20. | | Various non-Indian lessees who operate commercial resort facilities on the allotted lands of the Tribe's reservation produce groundwater for golf courses that are part of the resort facilities. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>The fact that lessees of tribal and allotted lands within the Agua Caliente Reservation may produce groundwater for golf course irrigation has absolutely no bearing on the Phase 1 issue of whether the United States reserved groundwater for Agua Caliente when it established the Agua Caliente Reservation in the 1870's. |
| 21. | | The Whitewater River Decree authorized the United States to divert water for "beneficial use" on the Tribe's reservation, which was defined as "domestic, stock watering, power development and irrigation purposes." | Irrelevant. F.R.E. 401. Compound Statement.<br><br>The Whitewater River Decree is irrelevant to Phase 1 of this litigation for the reasons stated in Evidentiary Objections 10-14, *supra*. Surface water rights decreed therein are not at issue in this case. |

15

| 22. | The United States' "Suggestion" submitted during the litigation claimed the right to divert water for "irrigation" and for "power, domestic and stock water uses." | Irrelevant. F.R.E. 401. Compound Statement.  The Whitewater River Decree is irrelevant to Phase 1 of this litigation for the reasons stated in Evidentiary Objections 10-14, *supra*. Surface water rights decreed therein are not at issue in this case. To the extent that DWA intends this statement to support an inference that Agua Caliente's present-day usage of its federally reserved groundwater right is limited to the specific purposes delineated in the United States' Suggestion, DWA's argument (1) is relevant only to the Phase 3 issue of quantification and (2) conflicts with settled law indicating that federally reserved water rights are intended to provide for tribal needs under changing circumstances and that usage of federally reserved rights can change over time. *See, e.g.*, *Walton I*, 647 F.2d at 47-49. |
|---|---|---|

16

| | | | |
|---|---|---|---|
| | 23. | The Smiley Commission Report stated that the United States had authorized an irrigation company to obtain an easement across the Tribe's lands on condition that it supply sufficient water to "irrigate" the Tribe's lands and provide water for the Tribe's "domestic use." | Irrelevant. F.R.E. 401. Compound Statement.<br><br>The Smiley Commission Report's post-establishment reference to an easement that was never approved by the Department of the Interior has no conceivable bearing on the Phase 1 question of whether Agua Caliente has a reserved right to groundwater. To the extent that DWA intends this statement to support an inference that Agua Caliente's present-day usage of its federally reserved groundwater right is limited to the specific purposes delineated in Smiley Commission Report, DWA's argument (1) is relevant only to the Phase 3 issue of quantification and (2) conflicts with settled law indicating that federally reserved water rights are intended to provide for tribal needs under changing circumstances and that usage of federally reserved rights can change over time. *See, e.g., Walton I*, 647 F.2d at 47-49. |

17

| | | | |
|---|---|---|---|
| | 24. | In 1888, a federal Indian agent, Joseph W. Preston, issued a report recommending that a land company be allowed to obtain an easement across the Tribe's reservation, in return for the company's promise to grant the Tribe "a permanent water right" for "irrigation" of tribal lands. | Irrelevant. F.R.E. 401.<br><br>Agent Preston's report is irrelevant to Phase 1 of this case for the same reasons that the Smiley Commission Report is irrelevant. *See* Evidentiary Objection 23, *supra*. |
| | 25. | In 1903, George Butler, the Superintendent of Irrigation of the Department of the Interior, issued a report describing the Tribe's water usage practices, stating that the Tribe's members have built "ditches" that conveyed water from creeks to other areas where the water was used to "irrigate" the lands. | Irrelevant. F.R.E. 401. Compound Statement.<br><br>Agua Caliente's water usage in 1903 has no bearing whatsoever on the Phase 1 issue of whether Agua Caliente has a federally reserved right to groundwater. Agua Caliente's right to groundwater was created and fully vested upon the establishment of the Agua Caliente Reservation will prior to 1903. *See, e.g.*, *Cappaert*, 426 U.S. at 138; *Arizona*, 373 U.S. at 600. If this fact were relevant to this case at all, which it is not, it would be relevant only to the Phase 3 issue of quantification. |

18

| | | |
|---|---|---|
| 1 | DATED: December 5, 2014. | KILPATRICK TOWNSEND & STOCKTON LLP |
| 2 | | |
| 3 | | By:       /s/ Catherine Munson |
| | | CATHERINE MUNSON |
| 4 | | (D.C. Bar No. 985717, admitted *pro hac vice*) |
| 5 | | MARK H. REEVES |
| 6 | | (GA Bar No. 141847, admitted *pro hac vice*) |
| 7 | | *Attorneys for Plaintiff* |
| 8 | | *Agua Caliente Band of Cahuilla Indians* |
| | | NATIVE AMERICAN RIGHTS FUND |
| 9 | | STEVEN C. MOORE |
| 10 | | (CO Bar No. 9863, admitted *pro hac vice*) |
| | | HEATHER WHITEMAN RUNS HIM |
| 11 | | (NM Bar No. 15671, admitted *pro hac vice*) |
| 12 | | *Attorneys for Plaintiff* |
| 13 | | *Agua Caliente Band of Cahuilla Indians* |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018