1  STEVEN B. ABBOTT (SBN 125270)
   sabbott@redwineandsherrill.com
2  GERALD D. SHOAF (SBN 41084)
   gshoaf@redwineandhserrill.com
3
   JULIANNA K. TILLQUIST (SBN 180552)
4  jtillquist@redwineandsherrill.com
5  REDWINE AND SHERRILL
   ATTORNEYS AT LAW
6  1950 MARKET STREET
7  RIVERSIDE, CA 92501
   PHONE (951) 684-2520
8  FACSIMILE (951) 684-9583
9
   Attorneys for Defendants,
10 COACHELLA VALLEY WATER
11 DISTRICT, G. PATRICK O'DOWD, ED PACK,
   JOHN POWELL, JR., PETER NELSON,
12 and CASTULO R. ESTRADA, in their official
13 capacities as members of the Board of
   Directors of the COACHELLA VALLEY
14 WATER DISTRICT
15
                  UNITED STATES DISTRICT COURT
16
17       CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
18

| | |
|---|---|
| 19 AGUA CALIENTE BAND OF CAHUILLA INDIANS, | ) ) ) | ED CV 13-00883 JGB-(SPx) Action Filed May 14, 2013 |
| 21 Plaintiff, | ) | **CVWD DEFENDANTS' REPLY** |
| 22 vs. | ) ) | **TO OPPOSITION BY PLAINTIFF-IN-** |
| 23 COACHELLA VALLEY WATER | ) ) | **INTERVENTION UNITED** |
| 24 DISTRICT, et al. | ) ) | **STATES TO DEFENDANTS' PHASE I SUMMARY** |
| 25 Defendants. | ) ) | **JUDGMENT MOTION** |
| 26 _____ | ) | |
| 27 UNITED STATES OF AMERICA | ) | **Date:  February 9, 2015** |
| Plaintiff-in-Intervention | ) | **Time:  9:00 a.m.** |
| 28 _____ | ) | **Courtroom 1** |

REPLY BY CVWD TO OPP BY US

1

2

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . .1

II.  THE TRIBE DOES NOT HAVE ABORIGINAL

    RIGHTS TO GROUNDWATER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BY CVWD TO OPP BY US

1

**TABLE OF AUTHORITIES**

2

3

**FEDERAL CASES**

4
*Barker v. Harvey*, 181 U.S. 481, 21 S. Ct. 690, 45 L. Ed. 963 (1901) . . . . . . . 3, 5, 6

5
*Johnson v. M'Intosh*, 21 U.S. 543, 5 L. Ed. 681 (1823) . . . . . . . . . . . . . . . . . . . 4

6
*Jones v. Meehan*, 175 U.S. 1, 20 S. Ct. 1, 44 L. Ed. 49 (1899) . . . . . . . . . . . . . . 4

7

8
*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172,

9
    119 S. Ct. 1187, 143 L. Ed. 2d 270 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10
*Thompson v. United States*, 13 Indian Claims Commission at 385-86 . . . . . . . . . .  7

11
*United States v. New Mexico,* 438 U.S. 696, 98 S. Ct. 3012 . . . . . . . . . . . . . . . . . 1

12

13
*U.S. v. Title Ins. & Trust Co.,* 265 U.S. 472, 486, 44 S. Ct. 621,

14
    68 L. Ed. 1110 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15

16

17

**STATE CASES**

18
*Hill v. Newman*, 5 Cal. 445, 446 (1855) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

19

20
*In re Sutherland,* 53 Fed. 551, (D. Ore. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . .  6

21

22

23

**U. S. CONSTITUTION**

24
U.S. Const., art. II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

26

27

28

1

**FEDERAL STATUTES**

2

Act to Ascertain and Settle the Land Claims in the State of California Land (1851)

3

4            §13, 9 Stat. 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 7

5      Act to Provide for the Survey of the Public Lands in California and the

6            granting of Preemption Rights therein and for other purposes

7

8            (1853) 10 Sta. 246-247) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

9      Act to Provide for the better Organization on Indian Affairs in

10            California (1864) §2. 13 Stat. 39 . . . . . . . . . . . . . . . . . . . . . . . . . . .5

11

12     Mission Indian Relief Act (1891) 26 Stat. 712-14 . . . . . . . . . . . . . . . . . . . . . 5

13

14

**OTHERS**

15

16     Fleishmann and Barbieri, <u>Aboriginal Title: The Special Case of California</u>,

17            17 Pac. L. J. 391, 450-51 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18

19

20

21

22

23

24

25

26

27

28

REPLY BY CVWD TO OPP BY US

Defendants, COACHELLA VALLEY WATER DISTRICT and its Defendant Directors ("CVWD") respectfully submit this response to Plaintiff-in-Intervention the United States of America's ("U.S.") Opposition to CVWD's Motion for Summary Judgment. (Doc. 93.)

## I.  INTRODUCTION

The U.S.'s Opposition echoes the themes set out in its Motion for Summary Judgment and in Plaintiff, Agua Caliente Band of Cahuilla Indians's ("Tribe") Motion for Summary Judgment and the Tribe's Opposition to CVWD's Motion for Summary Judgment.  To avoid repetition, CVWD incorporates herein by reference and respectfully directs the Court's attention to the following portions of CVWD's Reply to the Tribe's Opposition which address the following arguments:

(1)  That reserved rights are automatically included in the creation of a reservation (CVWD Reply, pp. 2-4, 7-8);

(2)  That reserved rights apply to groundwater in this case (CVWD Reply, pp. 4-5);

(3)  That the *New Mexico* decision only addresses the issue of quantification of reserved rights, not <u>whether</u> they exist (CVWD Reply, pp. 7-8);

(4)  The purposes of Plaintiff's Reservation requires the use of groundwater (CVWD Reply, pp. 4-5); and

(5)  State rights do not supplant federal reserved rights (CVWD Reply, pp. 5-8).

This Reply is limited to addressing points and issues in the U.S. brief not addressed above and addressing the U.S. argument that the Tribe continues to have aboriginal rights.

## II. THE TRIBE DOES NOT HAVE ABORIGINAL RIGHTS TO GROUNDWATER

The U.S. Complaint in Intervention does not make a claim that the Tribe has aboriginal rights to groundwater and instead claims only reserved rights to groundwater. (Doc. 71, pp. 7-10.) Only the Tribe made a claim for aboriginal rights to groundwater, with a priority date of time immemorial. (Doc. 1, pp. 15, ¶¶ 58 – 59) CVWD has moved for summary judgment/partial summary judgment on that aboriginal rights claim, and on the reserved rights claim by both the Tribe and the U.S. (Doc. 82, pp. 2-3.) The U.S. has briefed the issue of aboriginal rights at length in its Opposition, and has also joined in the Tribe's response to CVWD's Statement of Undisputed Facts. (Doc. 93-1). The facts conceded by the Tribe in its response establish that CVWD is entitled to judgment as a matter of law on the Tribe's claim of aboriginal rights to groundwater on two separate bases. First, the Tribe concedes that there is no proof siting prehistoric hand dug groundwater wells on the current reservation lands. (Response to CVWD SUF 5, Doc. 97-9, p. 4.) This absence of proof defeats any claim for aboriginal rights to groundwater with a priority date of

/ / / /

1    time immemorial because there is no proof of aboriginal occupancy of groundwater

2    rights on current reservation lands.

3
4        Second, the Tribe concedes that no claim was presented to the Commission

5    established by the 1851 Act. (Response to CVWD SUF 4, Doc. 97-9, p. 2.) This fact

6    defeats any claim for aboriginal rights to groundwater for any rights that may have

7
8    existed were legally extinguished due to the failure to present a claim. (1851 Act, §

9    13, 9 Stat. 633.) None of the arguments made by the Tribe or the U.S. overcome

10   these conclusions.

11
12       The United States, like the Tribe, in dealing with the aboriginal rights claim, takes

13   the same tack as it did with the reserved rights portion of its Opposition, i.e., ignoring

14
15   the key Supreme Court decisions or arguing that those decisions, as well as the key

16   Congressional 1851 Act, do not apply in this case.

17       The U.S., in addition to arguing that *Barker v. Harvey*, 181 U.S. 481, 21 S. Ct.

18   690, 45 L. Ed. 963 (1901) does not apply, tries a different approach by arguing that

19
20   the 1851 Act did not apply to the Tribe's aboriginal rights at all. Or at least to the use

21   of groundwater, as opposed to rights of occupancy of the land. (Doc. 93, pp. 11, 14

22   and 16.) The U.S. cites no authority for either assertion, each of which is nonsensical

23
24   in light of Congress's express purpose in enacting the 1851 Act, to provide land title

25   stability in California. Water rights are part of the real property to which they are

26   appurtenant. See *Hill v. Newman*, 5 Cal. 445, 446 (1855). And it is not reasonable to

27
28

REPLY BY CVWD TO OPP BY US                                                    Page 3

1  assume that in enacting the 1851 Act, Congress intended only to extinguish rights to

2  occupy the land but not to also extinguish rights to uses of the natural resources

3
4  appurtenant to that property, including water.

5      The U.S. cites three cases (*Minnesota v. Mille Lacs Band of Chippewa Indians*,

6  526 U.S. 172, 202, 119 S. Ct. 1187, 143 L. Ed. 2d 270 (1999); *Jones v. Meehan*, 175

7
8  U.S. 1, 20 S. Ct. 1, 44 L. Ed. 49 (1899); *Johnson v. M'Intosh*, 21 U.S. 543, 5 L. Ed.

9  681 (1823)) for the proposition that federal intent to extinguish aboriginal rights

10
11 "must be clearly expressed on the face of a treaty or statute." (Doc. 97, p.12.)  None

12 of these cases support that proposition. *M'Intosh* held that the U.S., by virtue of

13 European discovery and conquest, held exclusive title to Indian lands and was free to

14
15 grant it to others, subject to the Indian right of occupancy. 21 U.S. at 574 and 587-

16 588.  *Minnesota* and *Jones* both considered whether rights granted by treaty (*not*

17 aboriginal rights) had been abrogated. In *Minnesota,* the Court carefully traced the

18
19 history of usufructuary rights (hunting, fishing and gathering) granted by treaty

20 through subsequent acts, including an Executive Order, another treaty, and

21 Minnesota's admission to the Union.  526 U.S. at 196-200.  In holding that the

22
23 Band's rights had not been abrogated, the Court observed that "review of the history

24 and the negotiations of the agreements is central to the interpretation of treaties," and

25 that the Court's conclusion was based on "an analysis of the history, purpose, and

26
27 negotiations of *this Treaty*." <u>Id.</u> at 202 (italics in original).

28

Here, Section 13 of the 1851 Act expressly states that "*all* lands the claims to which shall not have been presented to the said commissioners within two years after the date of this act, shall be deemed, held, and considered as part of the public domain of the United States," (9 Stat. 633, emphasis added) and the Court has given broad construction to this provision to hold that it extends to and applies to Indian aboriginal claims (*Barker v. Harvey* 181 U.S. at 490), and has reaffirmed that holding and held that it is a rule of property to be respected under *stare decisis*, noting that the Government and the Mission Indians have "adjusted their situation to it in many instances." *U.S. v. Title Ins. & Trust Co.,* 265 U.S. 472, 486, 44 S. Ct. 621, 68 L. Ed. 1110 (1924).  The 1864 Act, the Mission Indian Relief Act, and the Executive Orders and patents issued pursuant to those Acts at issue here are the proof of that adjustment.  Far from confirming aboriginal title, they demonstrate the efforts the Government made in response to the absence of aboriginal title to reserve lands to provide a homeland for the Tribe.   The U.S. is simply twisting history out of context with its argument in suggesting otherwise.

The United States offers unsubstantiated factual excuses for the Tribe's failure to file a claim to validate its aboriginal rights (Doc. 97, p. 13), but those excuses cannot escape the holding of the Supreme Court that the Act extinguished aboriginal title when no claim was presented.  The U.S. also makes inconsistent arguments in an attempt to demonstrate that the 1851 Act does not apply at all.  The US argues that

the 1891 Mission Indian Relief Act authorized the Attorney General to defend Indians' rights to possession given to them by the Mexican Government, which the US asserts shows that the 1851 Act was not intended to apply to their aboriginal rights (Doc. 97, pp. 13-14), then states "the Tribe's lands were never part of a Mexican Land Grant," in trying to show why the *Barker* case does not apply. (Doc. 97, p. 15.)

The U.S.'s reliance on an 1852 Treaty, which it admits the Senate did not ratify, is misplaced.  A treaty to which the Senate has not given advice and consent "has no legal force." (*In re Sutherland,* 53 Fed. 551, 552 (D. Ore. 1892); U.S. Const., art. II, § 2.)

Lastly, the United States argues that the 1853 Act validated the Tribe's claimed aboriginal rights because the Tribe remained in possession of the land and because the 1853 Act did not allow settlement of public lands "in the occupancy or possession of an Indian Tribe." (Doc. 97, p. 17.)  Section 6 of the Act to provide for the Survey of the Public Lands in California and the granting of Preemption Rights therein and for other purposes, offered for sale various public lands in California, with a very long list of exceptions, including a proviso "That this act shall not be construed to authorize any settlement to be made on any tract of land in the occupation or possession of any Indian tribe, or to grant any preemption right to the same." (10 Stat. 246-247.)  The proviso merely restricts sales of land under section 6; it did not repeal

the provisions of the 1851 Act extinguishing aboriginal title for failure to present a claim. It is also not proof that the groundwater was used by the Tribe in 1853 or at a later date preceding the Executive Orders on current reservation lands. The evidence shows no wells on those lands. (CVWD SUF 5, 28, 28e.) . The 1853 Act is therefore no basis for claiming a "re-established" right of occupancy; the Indian Claims Commission found that the 1851 Act constituted a "taking" of the aboriginal rights held by California Indians that had not filed claims for validation thereof and, pursuant to a Stipulated Settlement, the California Indians were awarded compensation by the Commission for the "taking" of their aboriginal rights. See *Thompson v. United States*, 13 Indian Claims Commission at 385-86; Fleishmann and Barbieri, Aboriginal Title: The Special Case of California, 17 Pac. L. J. 391, 450-51 (1986).

The U.S. has not produced any legal or factual basis for the claim that the Tribe's failure to file a claim for validation of its aboriginal rights either did not result in an extinguishment of those rights pursuant to the 1851 Act or that if extinguished, the

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

1  rights were subsequently "re-established."  CVWD is entitled to summary judgment

2  on that issue, and on the claim of reserved rights to groundwater.

3

4  Dated:  January 9, 2015                      Respectfully submitted,
                                                REDWINE AND SHERRILL
5

6

7
                                   By:____/s/ Steven B. Abbott_____
8                                        STEVEN B. ABBOTT
                                         sabbott@redwineandsherrill.com
9                                        Attorney for Defendants
10                                       COACHELLA VALLEY WATER DISTRICT,
                                         G. PATRICK O'DOWD, ED PACK,
11                                       JOHN POWELL, JR., PETER NELSON,
12                                       and CASTULO R. ESTRADA, in their
                                         official capacities as members of the Board of
13                                       Directors of the COACHELLA VALLEY
14                                       WATER DISTRICT
                                         1950 Market Street
15                                       Riverside, CA 92501
16                                       (951) 682-7838 Telephone
                                         (951) 684-9583 Facsimile
17

18

19

20

21

22

23

24

25

26

27

28