RODERICK E. WALSTON (Bar No. 32675)
roderick.walston@bbklaw.com
STEVEN G. MARTIN (Bar No. 263394)
steven.martin@bbklaw.com
BEST BEST & KRIEGER LLP
2001 N. Main Street, Suite 390
Walnut Creek, California 94596
Telephone: (925) 977-3300
Facsimile: (925) 977-1870

ARTHUR L. LITTLEWORTH (Bar No. 22041)
arthur.littleworth@bbklaw.com
PIERO C. DALLARDA (Bar No. 181497)
piero.dallarda@bbklaw.com
BEST BEST & KRIEGER LLP
3390 University Avenue, Fifth Floor
P.O. Box 1028
Riverside, California 92502
Telephone: (951) 686-1450
Facsimile: (951) 686-3083

Attorneys for Defendants Desert Water Agency, and
Patricia G. Oygar, Thomas Kieley, III, James Cioffi,
Craig A. Ewing and Joseph K. Stuart, sued in their
official capacity as members of the Board of Directors

(Additional counsel identified on next page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>Plaintiff,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>Defendants. | Case No. 5:13-cv-00883-JGB (SPx)<br>Judge:   Hon. Jesus G. Bernal<br><br>**DESERT WATER AGENCY AND COACHELLA VALLEY WATER DISTRICT'S REQUEST FOR STAY PENDING INTERLOCUTORY APPEAL RE SCHEDULING ORDER [DOC. 126]**<br><br>Scheduling Conf: Sept. 21, 2015<br>Dept.:    Courtroom 1<br>Action Filed: May 14, 2013<br>Trial Date:   Feb. 3, 2015 |

01358.00008\12456844.5

STEVEN B. ABBOTT (Bar No. 125270)
sabbott@redwineandsherrill.com
GERALD D. SHOAF (Bar No. 41084)
gshoaf@redwineandhserrill.com
JULIANNA K. TILLQUIST (Bar No. 180552)
jtillquist@redwineandsherrill.com
REDWINE AND SHERRILL
1950 Market Street
Riverside, CA 92501-1704
Telephone: (951) 684-2520
Facsimile: (951) 684-9583

Attorneys for Defendants Coachella Valley Water District, and G. Patrick O'Dowd, Ed Pack, John Powell, Jr., Peter Nelson and Castulo R. Estrada, sued in their official capacity as members of the Board of Directors

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

# ARGUMENT

Defendants Desert Water Agency and Coachella Valley Water District ("Defendants")[1] respectfully request that this Court stay these proceedings pending the Ninth Circuit's interlocutory review of the Phase 1 summary judgment decision regarding whether a reserved right to groundwater exists. The Phase 2 and 3 issues in this case are predicated on the assumption that such a right exists. Thus, granting a stay is appropriate because this underlying question has not yet been conclusively determined. This Court should give no weight to the plaintiff Agua Caliente Band of Cahuilla Indians' ("Tribe") and intervenor-plaintiff United States' arguments that Phase 2 water quality issues can be determined separately and apart from the underlying water right, or that the miniscule sub-surface voids solely occupied by groundwater saturation can be reserved akin to a mineral right. This defies logic because these issues are wholly contingent upon and inextricably intertwined with the existence of a groundwater right—the natural resource that occupies the pore space and to which a water quality standard applies. Because Defendants' appeal has substantial merit and could reverse or modify the Phase 1 decision that effectively controls the outcome of this case, unequivocal harm and waste would result by needlessly proceeding with discovery and motion practice on these Phase 2 issues, and this Court should grant a stay until the central issue of whether the Tribe has a reserved right to groundwater is conclusively determined.

## I. BACKGROUND

The Tribe is a federally recognized Indian tribe occupying a reservation that was established by executive orders in 1876 and 1877, and is owned and held in trust by the United States, in and near Palm Springs, California. Order re Motions for Partial Summary Judgment 2 (Doc. 116)("Order"). The Defendants are local public water agencies that provide water supplies in and near Palm Springs,

---

[1] Included are Patricia G. Oygar, Thomas Kieley, III, James Cioffi, Graig A. Ewing, Joseph K. Stuart, G. Patrick O'Dowd, Ed Pack, John Powell, Jr., Peter Nelson and Castulo R. Estrada in their official capacities as CVWD and DWA directors.

purchase water from California's State Water Project, and exchange that water with the Metropolitan Water District of Southern California for Colorado River water that is recharged into the ground for later pumping to supply agricultural, commercial, industrial, and residential customers, including the Tribe.

On May 14, 2013, the Tribe filed a complaint alleging that it has both federal reserved and aboriginal rights in the groundwater underlying its reservation, that the Defendants are impairing the rights by pumping groundwater owned by the Tribe and using the pore space occupied by the groundwater without compensating the Tribe, and also that the Defendants are impairing the reserved groundwater's quality by importing lower-quality water into the basin. The Tribe requested that these alleged rights be recognized, declared, and quantified. The United States intervened, claiming that the Tribe has a federal reserved right in the groundwater.

The parties stipulated to trifurcate the case. Phase 1 addresses the questions of whether the Tribe has a federal reserved right or an aboriginal right in groundwater. If such rights exist, Phase 2 would address certain characteristics of the right—particularly whether the right includes ownership of pore space in the groundwater basin, where the Defendants recharge and pump their imported water supplies, and whether the Tribe's rights include water of a certain quality, and not simply a quantity of water.[2] Also, if the rights exist, Phase 3 would quantify the rights and address factual contentions.

The parties filed cross-motions for summary judgment in Phase 1, and this Court issued an order granting in part, and denying in part, those motions, holding that there is "no principled distinction between surface water physically located on a reservation and other appurtenant water sources," including groundwater, and that "the Tribe and the United States are entitled to partial summary judgment on the Phase I issue of whether the Tribe's federally reserved water rights encompass

---

[2] Phase 2 would address additional factual issues, such as whether the Tribe has unclean hands, the balancing of equities, laches, and other such issues.

groundwater underlying the reservation." Order 7, 10. The Court also held that the Tribe does not have an aboriginal right to the groundwater and granted summary judgment to the Defendants on that issue. *Id.* at 11-13.

The Order certified the issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and on June 9, 2015, this Court ordered that if interlocutory appeal is granted, the Court would "order supplemental briefing at that time to determine whether to stay the proceedings." Order re Joint Report 2 (Doc. 121). On June 10, 2015, the Ninth Circuit granted interlocutory review. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. 15-55896 (9th Cir. June 10, 2015). Upon stipulation by the parties, the Court ordered this briefing regarding whether to grant the stay. Revised Scheduling and Briefing Order (Doc. 126).

## II.   ARGUMENT

Under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *See also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997). A "*Landis* stay" may be appropriate when, for example, the result of a separate proceeding has some bearing upon the case. *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* In such situations, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Id.* The decision to stay proceedings necessarily involves the exercise of judgment and the balancing of competing interests, *Landis*, 299 U.S. at 254-55, and in deciding whether to grant a *Landis* stay, the Court balances such interests under the following framework:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, [3] and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyear v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

These proceedings should be stayed pending the appeal of the question of whether the Tribe has a reserved right to groundwater, because this Court certified and the Ninth Circuit approved interlocutory review, the appeal presents a substantial case for relief that has not been conclusively determined, and as acknowledged by the Court, this question "effectively controls the outcome of this case." Order 14; *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887 (E.D. Cal. 2010) (granting stay pending interlocutory appeal). The cost of continuing with potentially needless proceedings, as argued by the Tribe and the United States, would harm the Defendants and waste judicial resources because the Ninth Circuit may hold that the Tribe does not have a reserved right to groundwater, or it may otherwise modify the holdings to alter the direction of the current proceedings. On the other hand, the minor inconvenience of awaiting this resolution would not measurably harm the Tribe or United States. Thus, for efficiency of the Court's docket and allowing resolution of the controlling issue that bears upon the remaining proceedings, the fairest course to the parties would be to grant a stay pending the appeal.

### 1. The Defendants Have a Substantial Case for Relief on Appeal

Although this Court ruled that the government impliedly reserved groundwater when it created the Tribe's reservation, the Court also acknowledged that extending the *Winters* doctrine to groundwater has not been conclusively determined by the federal appellate courts. *See* Order 14 ("[S]tate supreme courts

are split on the issue and no federal court of appeals has passed on it. [Citation.] Additionally, the Supreme Court's decision in *Cappaert* specifically avoided deciding the issue."). Thus, the Defendants' appeal may ultimately result in a reversal or modification of the Order's holding.

In *Winters v. United States*, 207 U.S. 564 (1908), the Supreme Court held that when the government reserves lands from the public domain for tribes, the government impliedly reserves sufficient water to satisfy the purposes of the reservation. *See also Cappaert v. United States*, 426 U.S. 128, 138 (1976) ("the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation"). Conflicts between the *Winters* doctrine and Congress' policy of deference to state water laws were discussed in *United States v. New Mexico*, 438 U.S. 696, 702 (1978), where it was held that a federal reserved right exists only if "necessary" to accomplish the "very purposes" of the reservation and prevent these purposes from being "entirely defeated," and that the government must acquire water for "secondary" reservation purposes under state law, in the same manner as public and private appropriators. The Ninth Circuit has stated that *New Mexico* articulated a "narrow rule" and that "federally reserved waters are limited to the *primary* purposes for which the land was reserved, without which the 'purposes of the reservation would be entirely defeated.'" *John v. United States*, 720 F.3d 1214, 1226 (9th Cir. 2013) (original emphasis). These limitations apply to Indian reservations. *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1981); *United States v. Adair*, 723 F.2d 1394, 1408-1409 (9th Cir. 1983).

During the Phase 1 motion for summary judgment proceedings, the Defendants argued, among other things, that a reserved right is not "necessary" to accomplish the primary reservation purpose and prevent that purpose from being "entirely defeated" because correlative rights of overlying landowners, such as the Tribe, allow for the use of groundwater under California law to same extent as all

other overlying users in the basin. Thus, "appropriation" standards that form the basis for the *Winters* doctrine are inapplicable, and a reserved right to the groundwater cannot "impliedly" exist.

As this Court noted, "[s]ubstantial ground for difference of opinion exists on the legal question." Order 14. Indeed, this Court further acknowledged that the law is not conclusive, stating that this case "sits uncomfortably outside *Cappaert*'s explicit holding" related to enjoining non-federal groundwater pumping that affected hydrologically connected federal reserved surface water rights. *Id.* Thus, it is likely that the Defendants could be successful on appeal. *Id.*

### 2. Defendants Would Suffer Hardship and Inequity From Being Required to Proceed with Unnecessary Discovery and Motion Practice

The Phase 1 holdings in this case will not be conclusively determined until the Ninth Circuit issues mandate and any petition for certiorari to the Supreme Court is exhausted. Hardship from incurring unnecessary costs will result if the Defendants are required to go forward in these proceedings before the interlocutory appeal issues are determined.

First and foremost, it is inherent in the trifurcation of this case that the initial controlling issue of whether the tribe has a reserved right to groundwater should be decided before proceeding with adjudication of later phases because those phases could be rendered moot if no such reserved water right exists. *See* Revised Joint Rule 26(f) Conference Report and Case Management Proposal ("Rule 26(f) Report") at 9 (Doc. 54) (trifurcating based on "considerations of convenience, economy, judicial efficiency, and the interests of justice. . ."). The Rule 26(f) Report stated that trifurcation would have "positive effects" that include "avoiding unnecessary discovery and motion practice," and that *Plans, Inc. v. Sacramento City Unified Sch. Dist.*, 752 F. Supp. 2d 1136, 1138 (E.D. Cal. 2010) was particularly relevant to this issue because it "recogniz[ed] the appropriateness of bifurcation when there is 'a threshold issue upon which the relevance of all other

issues in the case depends.'" *Id.* In light of this, it would seem illogical to bifurcate Phases 1 and 2 if both could have been simply argued at the same time as purely independent questions of law, and it would seem similarly illogical to proceed with discovery and motion practice related to later phases before the initial phase is conclusively determined. As further discussed below, harm would result from nullifying the trifurcation and conducting unneeded discovery and motion practice.

If the Ninth Circuit decides that the Tribe does not have a federal reserved right to groundwater, it would effectively end this case. The Tribe's and United States' complaints must be dismissed. As this Court stated, "[w]hether *Winters* rights extend to groundwater, in light of California's correlative rights legal framework for groundwater allocation, effectively controls the outcome of this case." Order 14. The Tribe's entire argument is based on having a reserved right to groundwater, including its claimed ownership of pore space and water quality in Phase 2. *See* Tribe's Compl. ¶ 55 (Doc. 1). ("The Tribe has a prior and paramount ownership interest in sufficient pore space in the aquifer underlying the Coachella Valley and the Tribe's Reservation *to store its federally reserved right to groundwater* for all present and future purposes.") (emphasis added); Joint Report of the Parties Regarding Phase 2 of Litigation at 8 (Doc. 120) (acknowledging that the water quality issue involves "whether Agua Caliente's *water rights include* a water quality aspect or component") (emphasis added).

Thus, if the Ninth Circuit determines that the Tribe does not have a reserved right to groundwater, there would be no basis for the Tribe's claimed ownership of the pore space. This is particularly apparent considering that under California law, storage space in an underground aquifer is a "public resource" without private "ownership" of the resource. *Central & West Basin Replenishment Dist. v. Southern California Water Co.*, 109 Cal.App.4th 891, 904-913 (2003). Similarly, there would be no basis for having a water quality component to a reserved right if the Tribe does not have an underlying reserved right to the groundwater.

If no stay is granted, and the parties proceed with discovery and litigation related to Phase 2, a reversal by the Ninth Circuit could render all or a portion of such discovery and related proceedings a waste. Because of this potential waste, failing to stay the current proceedings would result in a hardship to the Defendants. This Court has held that "[t]he scope of this litigation would, at the very least, shrink dramatically" should the federal reserved rights question be reversed. Order 14. Thus, the Court should stay the proceedings and allow resolution of the appeal before requiring the Defendants defend against claims in the remaining phases.[3]

### 3. No Damage Will Result From Granting The Stay

It is indisputable that no harm would result from issuing a stay pending the appeal, if the Ninth Circuit ultimately holds that the Tribe does not have a federal reserved right to groundwater. As noted above, such a decision would effectively end the case, and the Tribe's and United States' complaints must be dismissed. Even if the Ninth Circuit affirms this Court's decision that the Tribe has a federal reserved right to groundwater, the parties would simply proceed with Phase 2 of the litigation, without harm to the Tribe or United States.

A trial court has authority to stay proceedings in the interest of saving time for itself and the litigants provided that "the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864; *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172, 176 (9th Cir. 1983). Here, the lack of urgency is evident from the reservation's existence since 1876 without prior attempts to adjudicate a reserved right to groundwater. A stay pending the appeal would result in only a relatively

---

[3] Although the Defendants agreed to proceed with limited concurrent briefing for the legal questions relating to the Defendants' equitable defenses (*see* Doc. 126), Defendants believe that such briefing would be for naught if this Court's Phase 1 holding is reversed on appeal. Defendants agreed to the limited briefing to mitigate incurring greater costs associated with discovery on the equitable defenses' factual components during the pendency of this briefing and the Court's consideration of these arguments for granting a stay. Defendants nonetheless believe that all proceedings should be stayed to avoid harm.

minor delay within the scope of the instant proceedings. But, it would conserve resources and could substantially simplify and shorten the litigation, which greatly outweighs any *de minimis* inconvenience caused by granting the stay. The United States and the Tribe have jointly acknowledged that this "is a complex case that will take some time to resolve in the best case scenario." Joint Report re Phase 2 of Litigation at 7 (Doc. 120). Indeed, the ultimate adjudication of any rights in this case would likely take several years, and a relatively short stay to resolve unsettled controlling legal issues would not harm the Tribe or the United States.

Regardless of any stay, the Tribe has not exercised (nor made any claim that it is precluded from exercising) overlying or other groundwater rights pursuant to California law. The Tribe cannot claim to be harmed by the stay of these proceedings premised on withholding a determination of its alleged groundwater rights, when the Tribe has not even attempted to exercise *any* groundwater rights. Additionally, the Tribe is currently supplied with water from its adjudicated surface rights in the Whitewater River Decree and as a customer of the defendant public water agencies in the same manner as other customers. Thus, the Court is justified in granting the stay because the Tribe and United States will not be harmed.

### 4. Granting The Stay Would Simplify The Questions Of Law and Allow For The Orderly Course Of Justice To Proceed

As noted above, denying the requested stay would require the parties to proceed with discovery and litigation related to Phase 2, and a reversal or modification of the Order by the Ninth Circuit could render all or a portion of the discovery and related proceedings a waste for both the parties and this Court. This Court certified the Order for interlocutory appeal, acknowledging that "[t]he scope of this litigation would, at the very least, shrink dramatically" if the federal reserved rights question is reversed, and "thus advanc[e] the ultimate termination of the case." Order 14 (quotations omitted). Because the Ninth Circuit's decision regarding the Tribe's reserved rights to groundwater could dramatically shrink or

change the scope of this litigation, it would be inefficient and wasteful to proceed before the appellate review is completed. Failing to stay the current proceedings would result in a hardship to the parties and a potential waste of judicial resources. Each of the Defendants, the United States, and this Court would be required to expend public funds. Thus, the Court should stay these proceedings and allow for resolution of this linchpin issue before conducting the remaining phases.

If the Ninth Circuit decides that the Tribe does not have a federal reserved right to groundwater, it would end the entire case. If the Ninth Circuit holds that the Tribe has a federal reserved right to groundwater, the case will simply proceed to Phase 2, with a clearer understanding of the water rights and the discovery necessary to adjudicate the Tribe's claims to water quality of, and pore space for, the groundwater at issue. Staying the proceedings will allow the Ninth Circuit to answer this important question, which will allow the orderly course of justice to proceed for the questions presented in this case, avoid potentially needless expenditure of substantial public resources, and maintain the status quo during review.

## CONCLUSION

This Court should enter a stay of all aspects of this case pending the completion of interlocutory review.

Respectfully submitted,
*/s/Roderick E. Walston*
RODERICK E. WALSTON
BEST BEST & KRIEGER LLP
Attorneys for Desert Water Agency

*/s/ Steven B. Abbott*
STEVEN B. ABBOTT
REDWINE AND SHERILL
Attorneys for Coachella Valley Water District