STEVEN B. ABBOTT (SBN 125270)
sabbott@redwineandsherrill.com
GERALD D. SHOAF (SBN 41084)
gshoaf@redwineandhserrill.com
JULIANNA K. TILLQUIST (SBN 180552)
jtillquist@redwineandsherrill.com
REDWINE AND SHERRILL
ATTORNEYS AT LAW
1950 MARKET STREET
RIVERSIDE, CA 92501
PHONE (951) 684-2520
FACSIMILE (951) 684-9583

Attorneys for Defendants,
COACHELLA VALLEY WATER
DISTRICT, G. PATRICK O'DOWD, ED PACK,
JOHN POWELL, JR., PETER NELSON,
and CASTULO R. ESTRADA, in their official
capacities as members of the Board of
Directors of the COACHELLA VALLEY
WATER DISTRICT

**LISTING OF ADDITIONAL COUNSEL CONTINUED ON NEXT PAGE**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS, <br><br> Plaintiff, <br><br> vs. <br><br> COACHELLA VALLEY WATER DISTRICT, et al. <br><br> Defendants. <br>_____ <br> UNITED STATES OF AMERICA <br> Plaintiff-in-Intervention <br>_____ | ) ED CV 13-00883 JGB-(SPx) <br> ) <br> ) Action Filed May 14, 2013 <br> ) <br> ) **DEFENDANTS' OPPOSITION TO** <br> ) **MOTIONS FOR SUMMARY** <br> ) **JUDGMENT RE EQUITABLE** <br> ) **DEFENSES** <br> ) <br> ) Date:      December 14, 2015 <br> ) Time:      9:00 a.m. <br> ) Courtroom: 1 <br> ) |

1  RODERICK E. WALSTON (Bar No. 32675)
   Roderick.walston@bbklaw.com
2  MICHAEL T. RIDDELL (Bar No. 72373)
   Michael.riddell@bbklaw.com
3  STEVEN G. MARTIN (Bar No. 263394)
   Steven.martin@bbklaw.com
4  BEST BEST & KRIEGER LLP
   2001 N. Main Street, Suite 390
5  Walnut Creek, California 94596
   Telephone: (925) 977-3300
6  Facsimile: (925) 977-1870

7  Attorneys for Plaintiffs
   DESERT WATER AGENCY and
8  PATRICIA G. OYGAR,
9  THOMAS KIELEY, III,
   JAMES CIOFFI, CRAIG A. EWING
10 AND JOSEPH K. STUART, sued in their
11 official capacity as members of the
   Board Of Directors of DESERT WATER
12 AGENCY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**I.  STATEMENT OF THE CASE**………………………………………………1

**A.    THE COMPLAINTS**………………………………………………..1

**B.   THE EQUITABLE DEFENSES**………………………………2

**II.  ARGUMENT**……………………………………………………...5

**A.    EQUITABLE DEFENSES AND RESERVED WATER RIGHTS**………5

**1.  The Evolution of the Reserved Rights Doctrine.** ………………………5

**2.  The Evolution of Law Permitting Assertions of Equitable Defenses Against Indian Land Claims by Tribes and the United States as Trustee.** ……8

**B.    THE EQUITABLE DEFENSES APPLY TO THE DECLARATORY RELIEF CLAIMS**………………………………………………………...11

**1.    Balancing The Equities** ………………………………………..11

**2.    Unclean Hands**………………………………………………. 12

**3.    Laches**………………………………………………………...13

**IV. CONCLUSION**……………………………………………..…15

<u>Federal Cases</u>

*California Oregon Power Co. v. Beaver Portland Cement Co.,* 295 U.S. 142, 79 L.Ed. 1356, 55 S. Ct. 725 (1935) ................................................................. 6

*California v. United States*, 438 U.S. 645, 57 L.Ed2d 1018, 98 S. Ct. 2985 (1978)……………………………………………………………………….6

*Cappaert v. United States*, 426 U.S. 645, 49 L.Ed.2d 523, 96 S.Ct. 2062 (1978) 6, 7

*Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266, (2nd Cir. 2005), cert. denied, 547 U.S. 1128 (2006). ....................................................10, 11, 12, 13

*City of Sherrill v. Oneida Indian Nation of New York,* 544 U.S. 197, 161 L.Ed.2d 386, 125 S.Ct. 1478 (2005) .......................................................................passim

*Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 81 L.Ed.2d 387, 104 S.Ct. 2218 (1984) ..........................................................8, 10

*Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 112 L.Ed. 2d 435, 111 S. Ct. 453 (1990) .........................................................................................10

*John v. United States*, 720 F.3d 1214, (9th Cir. 2013)…………………………….7

*Nevada v. United States*, 463 U.S. 110, 77 L.Ed. 2d 509, 103 S. Ct. 2906 (1983).....6

*Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 53 L.Ed.2d 402, 97 S.Ct. 2447 (1977) ...........................................................................................................10

*Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 L.Ed.2d 387, 110 S,Ct. 2465 (1990) ...........................................................................................8,9

*United States v. Administrative Enterprises, Inc.*, 46 F.3d 670, (7th Cir. 1995) …..11

*United States v. New Mexico,*438 U.S. 696, 57 L.Ed. 2d 1052, 98 S. Ct. 3012 (1978) ................................................................................................6, 7, 8, 11, 13

*United States v. Summerlin*, 310 U.S. 414, 60 S. Ct. 1019, 84 L.Ed. 1283 (1940)...10

*Winters v. United States,* 207 U.S. 564, 52 L.Ed. 340, 28 S.Ct. 207 (1908)..............6

## State Cases

*Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal.App.4th 620, 41 Cal. Rptr. 2d 329 (1995) ................................................................................. 12

*San Bernardino Valley Audubon Society v. City of Moreno Valley,* 44 Cal. App. 4th 593, 51 Cal. Rptr. 2d 897 (1996), overruled on other grounds in *San Bernardino Valley Audubon Society v. Metropolitan Water Dist,* 71 Cal. App.4th 382, 402-403, 83 Cal. Rptr. 2d 836 (1999) ........................................ 14

## Federal Statutes

Desert Land Act of 1877 .......................................................................................... 6

Mining Acts of 1866 ................................................................................................ 6

## State Statutes

California Water Code section 10720.3(d), Stats 2014, c. 346, §3 .......................... 14

## Other Authorities

Constitution, article 3, § 3.5 .................................................................................. 14

Cal. Const., art. 4, §8(c)(2) .................................................................................... 14

**DEFENDANTS' OPPOSITION TO MOTIONS FOR SUMMARY
JUDGMENT RE EQUITABLE DEFENSES**

1    Defendants COACHELLA VALLEY WATER DISTRICT ("CVWD"),

2    DESERT WATER AGENCY ("DWA") and their defendant directors, respectfully

3    submit this joint combined opposition to Plaintiff AGUA CALIENTE BAND OF

4    CAHUILLA INDIANS' ("Tribe") Motion for Partial Summary Judgment as to the

5    Applicability of Defendants' Phase 2 Equitable Defenses (Doc. 138) and Plaintiff-

6    Intervener UNITED STATES OF AMERICA's ("U.S.") Motion for Partial

7    Summary Judgment.  (Doc. 137.)

8    ## I.  STATEMENT OF THE CASE

9    ## A.    THE COMPLAINTS

10    The Tribe's Complaint for Declaratory Relief alleges two claims – for

11    declaratory relief and for injunctive relief.  (Doc. 1.)  The Tribe prays for

12    declaratory relief that (1) it has a reserved right to groundwater, (2) it has an

13    aboriginal right to groundwater, (3) the reserved right has priority dates no later than

14    1876 or 1877, (4) defendants' alleged overdraft interferes with its groundwater

15    rights, (5) recharge of imported water that is untreated and of a lower quality

16    interferes with its groundwater rights, and (6) quantifies its rights to use

17    groundwater.  The Tribe also seeks an injunction that enjoins defendants from (7)

18    producing groundwater in conflict with declared rights, (8) overdrafting the

19    groundwater basin, (9) recharging water that is inferior to the pre-existing

20    groundwater without treatment, and (10) using the pore space in conflict with the

21    right decreed by the court[1]. (Doc. 1, pp. 18-20.)

22    The Complaint in Intervention by the U.S. alleges two counts – for

23    declaratory and injunctive relief and prays for (1) declaration of a reserved right

24    with a priority date no later than 1876 or 1877, (2) quantification of a reserved right

25    _____

26    [1] The Complaint also alleges the Tribe has not been compensated for use of pore

27    space. (Doc. 1, pp. 4-5, ¶¶ 10, 12.)

28

to groundwater, and (3) an injunction enjoining interference with the decreed reserved rights.  (Doc. 71, pp. 10-11.)

**B.     THE EQUITABLE DEFENSES**

In their answers to the complaints, defendants have alleged three equitable defenses that are at issue in these motions – Laches, Unclean Hands, and Balance of Equities.  (CVWD Answer to Tribe, 12th, 13th and 14th Affirmative Defenses, Doc. 39, pp. 19-21; CVWD Answer to US, 12th, 13th and 14th Affirmative Defenses, Doc. 73, pp. 14-17; DWA Answer to Tribe, 12th, 13th and 14th Affirmative Defenses, Doc. 40, pp. 14-16; DWA Answer to US, 7th, 8th and 9th Affirmative Defenses, Doc. 72, pp. 8-9.)

In the Laches defenses, all defendants allege that plaintiff or plaintiff-intervener has not previously attempted to establish a reserved right to groundwater and that in the meantime many users have acquired rights to water under California law.  CVWD also alleges that (1) CVWD and DWA have expended funds to construct facilities to import and recharge water to address overdraft resulting from groundwater production by CVWD and others that constitutes the water supply for the inhabitants of the Coachella Valley, including the Tribe and its members, and (2) that CVWD and DWA have entered into State Water Project contracts and exchange contracts to obtain an imported water supply that is recharged into the groundwater basin and that the area benefited includes the tribal and allotted lands at issue.

The Unclean Hands defenses allege that the plaintiff and plaintiff-intervener have benefited from CVWD's and DWA's importation of Colorado River because the Tribe and the allottees have obtained their water supplies by purchasing such supplies from CVWD and DWA.  CVWD further alleges the US failed to protect the Tribe's surface supplies and cannot now be heard to complain that a reserved right to groundwater is now necessary to carry out the purposes of the reservation.

/ / / /

The Balancing of the Equities defenses allege that (1) CWVD and DWA have rights to groundwater under state law, (2) are required by state law to provide water supplies to those entities and persons in their service areas, (3) they fulfill their statutory duties in importing and recharging Colorado River water, (4) the lands overlying the basin are burdened with a public servitude for storage and transmission of recharge water, (5) CWVD and DWA are required to provide for the maximum beneficial use of groundwater, (6) the Tribe and the US have not attempted to exercise right to groundwater and have not been prevented from doing so by any actions of CVWD or DWA, and (7) the Tribe and the US have rights under California law as overlying landowners to extract groundwater, subject to the reasonable use of other overlying landowners.

The facts alleged in the Equitable defenses are amply supported by the evidence presented by defendants in the Phase I cross-motions for summary judgment, to which the Court's attention is directed[2]. (See Decl. of David K. Luker,

---

[2] Because the United States moves "for summary judgment on the purely legal question of whether as a matter of law, Defendants' equitable defenses are applicable to the United States' federally reserved water rights claim" and the Tribe asserts that the defendants' equitable defenses "are inapplicable to Agua Caliente's claims for declaratory relief as a matter of law", that is, "there are no facts that could entitle the water district to prevail under these legally inapplicable defenses" (Doc. 138-1, p.1), and the parties stipulated that these motions would address "the purely legal question of whether the Defendants' Equitable Defenses are applicable to the Plaintiffs' claims for declaratory relief as a matter of law"(Doc. 125, p. 1, ¶ 1), this opposition brief addresses only the legal applicability of the defenses to the claims for declaratory relief, and shows that under applicable law the facts do matter and the motions premised sole on outdated legal principles must therefore fail, leaving the factual issues concerning these defenses to be further developed at trial in a later phase of the case.

The evidence cited, submitted in Phase 1, addressed solely the issue of whether a reserved right to groundwater existed.  It therefore did not exhaust all of facts and evidence that defendants can bring to bear on these equitable defenses, (footnote continued)

¶¶ 3-15(Doc. 84-3, pp. 1-5) and Exhibits 2 [Desert Water Agency Urban Water Management Plan] (Doc. 84-3, pp. 9-27) and 3 [CVWD  Urban Water Management Plan] (Doc. 84-3, pp 29-93); DWA's RJN Exhibit 1 [Whitewater Decree ](Doc. 84-5, p.60); Decl. of Steven G. Martin, Exhibit 8 [Suggestion of the United States] Doc. 84-7, pp. 197-213); Decl. of Gerald D. Shoaf, Exhibits 12 [Smiley Commission Report] (Doc.  82-3, pp. 12-83 to12-88), 27 [Supt. Butler's 1903 Report to Commissioner] (Doc. 82-3, p. 27-175), and 39 ["History of Irrigation – Agua Caliente Reservation"] (Doc. 82-3, pp. 39-274 to 39-285).) Plaintiffs do not suggest the defenses should fail for want of proof of the facts alleged.  The parties agreed that no further discovery was necessary for decision of the instant motions and the parties will proceed with briefing on "the purely legal question of whether the Equitable Defenses are applicable to the Plaintiffs' claims for declaratory relief as a matter of law" (Doc. 125, pp. 1-2) and the Court has accordingly suspended discovery and established a briefing schedule for these motions.  (Doc. 126, p. 2.)  It is important to note that the issue of the applicability of the Equitable Defenses to the claims for injunctive relief is not being addressed in these motions and accordingly will not be discussed in this opposition.

It is also important the Court bear in mind the procedural posture of this case. In Phase 1, the court granted partial summary judgment in favor of defendants on the issue of aboriginal rights and in favor of the plaintiffs "that the government impliedly reserved appurtenant water sources – including underlying groundwater --

_____

including, but not limited to, the role of the Secretary of the Interior in approving the delivery of imported Colorado River water for recharge, the massive development of Agua Caliente Reservation  lands to the benefit of the Tribe and its members which development was and remains dependent on imported and ground water supplies developed by defendants, and supports a population on the reservation lands of 20,000, in contrast to the limited tribal enrollment of only 440 members.

when it created the Tribe's reservation." (Doc. 116, pp. 14-15.)  The Court also certified the reserved rights ruling for interlocutory appeal (Doc. 116, pp. 13-14) and the Ninth Circuit granted defendants' petition to appeal. (Case No. 15-55896, Doc. 1.)  Briefing on the appeal is now underway.  Except for the instant motions, all other proceedings in this Court have been stayed pending decision of the appeal. (Doc.136.)  Thus, the issue of whether plaintiffs enjoy a reserved right to groundwater has not been finally determined, and defendants continue to maintain their position that no such right exists.  Also undetermined are the issues of whether the reserved right includes tribal ownership of the "pore space" beneath the reservation and whether the reserved right includes a "water quality component."  In submitting this brief, defendants do not concede the claims by plaintiffs on any of these matters, and do not waive other defenses asserted by the defendants.

## II.  ARGUMENT

### A.    EQUITABLE DEFENSES AND RESERVED WATER RIGHTS

Plaintiffs cite numerous cases that purport to hold that these equitable defenses cannot apply as a matter of law to bar their declaratory relief claims.  The cases cited by Plaintiffs rest their conclusions on notions that the importance of vindicating federal policy should preclude application of equitable defenses against the government or are rooted in the Property Clause and reason that to block property based claims of the United States because of such defenses would subvert Congress's control over federal property.  However, more recent decisions of the United States Supreme Court require reconsideration of those older holdings and now support the assertion of equitable defenses here against the plaintiffs' declaratory relief claims.

#### 1.  The Evolution of the Reserved Rights Doctrine.

With respect to the line of cases applying the Property Clause, it should be noted that Congress did act with respect to water rights with the passage of the

Mining Acts of 1866 and Desert Land Act of 1877, which effected a "severance" of all waters on the public domain lands from the lands themselves, relinquishing the field of water rights to be governed by state law. *California Oregon Power Co. v. Beaver Portland Cement Co.,* 295 U.S. 142, 158, 163-164, 79 L. Ed 1356, 55 S.Ct. 725 (1935); *Nevada v. United States*, 463 U.S. 110, 123-124, 77 L.Ed.2d 509, 103 S.Ct. 2906 (1983).

The reserved rights doctrine is a court created exception to those laws, and the reservation of water rights arises by implication.   While the Supreme Court in both *Winters v. United States,* 207 U.S. 564, 52 L.Ed. 340, 28 S.Ct. 207 (1908), and *Cappaert v. United States*, 426 U.S. 645, 49 L.Ed.2d 523, 96 S.Ct. 2062 (1978), indicated that the application of the reserved rights doctrine did not involve a balancing of equities between Indians and non-Indian users, the Supreme Court has subsequently narrowed the reserved rights doctrine in a manner that suggests that competing water rights needs should factor into the equation.  The Court has noted that "…Federal reserved water rights will frequently require a gallon-for-gallon reduction in the amount of water available for water-needy state and private appropriators.  This reality has not escaped the attention of Congress and must be weighed in determining what, if any, water Congress reserved for use [on the subject reservation]." *United States v. New Mexico,* 438 U.S. 696, 705, 57 L.Ed. 2d 1052, 98 S.Ct. 3012 (1978).

In *New Mexico*, the Supreme Court—taking into account Congress' deference to state water law—adopted a narrow construction of the reserved rights doctrine. Citing its companion decision in *California v. United States*,  438 U.S. 645,  653-670, 678-679, 57 L.Ed2d 1018, 98 S.Ct. 2985 (1978), the Court stated that Congress—in determining "whether federal entities must abide by state water law"—"has almost invariably deferred to state law," and that Congress has departed from this policy only where water is "necessary to fulfill the *very purposes* for

which a federal reservation was created." *New Mexico*, 438 U.S. at 702 (emphasis added). The Court stated that it had upheld federal reserved water rights claims only where it "has carefully examined both the asserted water right and the *specific purposes* for which the land was reserved, and concluded that without the water the purposes of the reservation would be *entirely defeated*." *Id.* at 700 (emphases added). "This careful examination is required," the Court stated, "both because the reservation is implied, rather than expressed, and because of the history of congressional intent in the field of federal-state jurisdiction with respect to allocation of water." *Id.* at 701-702. The Court held that the government must acquire water for "secondary" reservation purposes under state law, "in the same manner as any other public or private appropriator." *Id.* at 702.

Thus, *New Mexico*—narrowly construing the reserved rights doctrine because of its conflict with Congress's deference to state water law—held that a federal reserved right impliedly exists only if "necessary" to accomplish the "very purposes," *i.e.,* the *primary* purposes, of the reservation and prevent these purposes from being "entirely defeated." *New Mexico*, 438 U.S. at 700, 702. Even the *New Mexico* dissenting opinion agreed that Congress's deference to state water law must be taken into account in determining the applicability of federal reserved rights. *Id.* at 718 (Powell, J., dissenting) ("[T]he implied-reservation doctrine should be applied with sensitivity to its impact upon those who have obtained water rights under state law and to Congress's general policy of deference to state water law."). As the Ninth Circuit has stated, *New Mexico* adopted a "narrow rule" by holding that "federally reserved waters are limited to the *primary* purposes for which the land was reserved, without which 'the purposes of the reservation would be entirely defeated.'" *John v. United States*, 720 F.3d 1214, 1226 (9th Cir. 2013) (original emphasis).

Although *Cappaert* stated that the reserved rights doctrine does not call for a "balancing of competing interests" between federal and non-federal users, *Cappaert*, 426 U.S. at 138, *New Mexico* stated that the impacts of a federal reserved right on "water-needy state and private appropriators" must be "weighed" in determining "what, *if any*, water Congress reserved for use . . .," *New Mexico*, 438 U.S. at 705 (emphasis added), which indicates that some balancing of interests between federal and non-federal users is relevant.

In its prior order granting partial summary judgment, this Court held that the necessity determination should take place in Phase 3, regarding the quantification of a reserved right.  (Doc. 116, p.10.)  While defendants have pursued interlocutory appeal of that ruling, asserting that the necessity test applies in determining the very existence of the right, it is important to note that this Court's ruling has not foreclosed such inquiry.  The equitable defenses asserted here pursue that balancing of interests, and should therefore be considered on their merits in Phase 3, at the very least, if not taken into account sooner in determining whether a reserved right exists at all, as suggested in *New Mexico*.

## 2.  The Evolution of Law Permitting Assertions of Equitable Defenses Against Indian Land Claims by Tribes and the United States as Trustee.

The Supreme Court has more recently eschewed absolute statements that equitable defenses cannot be asserted against the government.  *See Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 81 L.Ed.2d 387, 104 S.Ct. 2218 (1984) –"Though the arguments the Government advances for the rule are substantial, we are hesitant, when it is unnecessary to decide this case, to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppels might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government" (original emphasis); *Office of*

*Personnel Management v. Richmond,* 496 U.S. 414, 424, 110 L.Ed.2d 387, 110 S,Ct. 2465 (1990) -- "But it remains true that we need not embrace a rule that no estoppels will lie against the Government in any case in order to decide this case."

These developments in case law suggest that prior cases appearing to bar the assertions of equitable defenses against the declaratory relief claims would be revisited.   Indeed, the Supreme Court has subsequently held that laches can be asserted to preclude tribal claims of sovereignty over reacquired parcels:

> In this action, OIN seeks declaratory and injunctive relief recognizing its present and future sovereign immunity from local taxation on parcels of land the Tribe purchased in the open market, properties that had been subject to state and local taxation for generations.  We now reject the unification theory of OIN and the United States and hold that "standards of federal Indian Law and federal equity practice" preclude the Tribe from rekindling embers of sovereignty that long ago grew cold.

*City of Sherrill v. Oneida Indian Nation of New York,* 544 U.S. 197, 213-214,161 L.Ed.2d 386, 125 S.Ct. 1478 (2005)

The Court went on to hold:

> This long lapse of time, during which the Oneidas did not seek to revive their sovereign control through equitable relief in court, and the attendant dramatic changes in the character of the properties, preclude OIN from gaining the disruptive remedy it now seeks. [¶] The principle that the passage of time can preclude relief has deep roots in our law, and the Court has recognized this prescription in various guises.  It is well established that laches, a doctrine focused on one side's inaction and the other's legitimate reliance, may bar long-dormant claims for relief.

544 U.S at 216-217.

The Second Circuit has extended *City of Sherrill* to allow laches to be asserted against Indian land claims, regardless of their classification as legal or equitable:

> The Supreme Court's recent decision in *City of Sherrill v. Oneida Indian Nation,* 544 U.S. 197, 125 S.Ct. 1478, 161 L.Ed2d 386 (2005), has dramatically altered the legal landscape against which we consider plaintiffs' claims. . . .[¶] We understand *Sherrill* to hold that equitable defenses such as laches, acquiescence, and impossibility, can, in appropriate circumstances, be applied to Indian land claims, even when such a claim is legally within the statute of limitations.

*Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266, 273 (2nd Cir. 2005), cert. denied, 547 U.S. 1128 (2006).

The court continued:

> The nature of the claim as a 'possessory claim' as characterized by the District Court underscores our decision to treat this claim like the tribal sovereignty claims in *Sherrill*.  Under the *Sherrill* formulation, this type of possessory land claim – seeking possession of a large swath of central New York State and the ejectment of tens of thousands of landowners – is indisputably disruptive.  Indeed this disruptiveness is inherent in the claim itself -- which asks the court to overturn years of settled land ownership – rather than an element of any particular remedy which would flow from the possessory land claim.  Accordingly, we conclude that possessory land claims of this type are subject to the equitable considerations discussed in *Sherrill*.

> This conclusion is reinforced by the fact that the *Sherrill* opinion does not limit application of the equitable defenses to claims seeking equitable relief.

*Cayuga Indian Nation*, 413 F.3d at 275.

The *Cayuga Indian Nation* court also held the United States, as trustee, could be subject to a laches defense as well.  *Cayuga Indian Nation*, 413 F.3d at 278-279.

> We recognize that the United States has traditionally not been subject to the defense of laches.  *See United States v. Summerlin*, 310 U.S. 414, 416, 60 S. Ct. 1019, 84 L.Ed. 1283 (1940). However, this does not seem to be a per se rule . . . .Judge Posner has aptly noted that "the availability of laches in at least some government suits is supported by Supreme Court decisions, notably *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373, 53 L.Ed.2d 402, 97 S.Ct. 2447 (1977); *Heckler v.*

*Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60-61, 81 L.Ed. 2d 42, 104 S.Ct. 2218 (1984); and *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96, 112 L.Ed. 2d 435, 111 S. Ct. 453 (1990), that refuse to shut the door completely to invocation of laches or estoppel (similar doctrines) in government suits." *United States v. Administrative Enterprises, Inc.*, 46 F.3d 670, 672-73 (7th Cir. 1995).

*Cayuga Indian Nation*, 413 F.3d at 278.

In light of *New Mexico* and *City of Sherrill*, it cannot be said that equitable defenses are inapplicable as a matter of law to the declaratory relief claims asserted here by the Tribe and its trustee, the United States, for a claim of reserved rights in groundwater basin in an arid desert environment in which the overlying Indian lands are interspersed in a checker-boarded fashion with private lands that enjoy water rights under state law is just as disruptive as the kind of possessory land claim barred by laches in *Cayuga Indian Nation*.   In the current legal era, the equities and the facts now matter.

## B.   THE EQUITABLE DEFENSES APPLY TO THE DECLARATORY RELIEF CLAIMS

### 1.   Balancing The Equities

As noted above, since the decision in *New Mexico,* the reserved rights doctrine now incorporates a balancing of competing needs in determining whether a reserved right should attach to groundwater by imposing a test of necessity for the existence of, and as this Court has held here, quantification of such a right.  And in the post-*Sherrill* era, equitable defenses can be asserted against "disruptive claims" by the Tribe and the United States.

The facts alleged in this defense go directly to those issues and should therefore be evaluated on their merits at trial.   The balancing of equities defenses assert the intervening acquisition by defendants of water rights, including rights of storage and transmission, under California law, and the defendants' efforts and duty

1    to provide a water supply based on those rights, the availability of overlying water

2    rights to the tribal and allotted lands under California law, and the Tribe's failure to

3    exercise its claimed rights to pump groundwater.

4        **2.    Unclean Hands**

5        Instead of diverting surface waters to which the Tribe has a decreed right, or

6    producing groundwater from the basin, the Tribe and allottees instead have chosen

7    to purchase water from CVWD and DWA, which in part comes from Colorado

8    River water imported by CVWD and DWA and recharged into the groundwater

9    basin.  They thus are benefiting from the acts they complain about in both the

10   declaratory relief and injunctive relief claims.  (Complaint, ¶¶ 35 ["artificial

11   recharge via imported Colorado River water"]; 45 ["using imported water from

12   Colorado River to 'recharge'"]; 47 ['the quality of imported Colorado River water is

13   inferior to that of local groundwater"]; 52 ["increasing groundwater TDS and

14   salinity levels"] and 55 ["ownership interest in sufficient pore space"]; 56

15   [incorporating prior allegations by reference into declaratory relief claim]; 65

16   [allegations regarding declaratory relief re recharge of imported water]; 66

17   [allegations regarding declaratory relief re "pore space"]; 67 [ incorporating prior

18   allegations be reference into injunctive relief claim]. Doc. 1, pp. 11-17.)

19       Relying on out-of–state cases, the Tribe asserts unclean hands can only be

20   asserted against equitable claims and cannot be asserted against their declaratory

21   relief claims, which they characterize as legal, rather than equitable.  (Doc. 1381-1,

22   p.8.)  However, California law is settled that unclean hands may apply to both legal

23   and equitable claims.  (*Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal.App.4[th]

24   620, 638, 41 Cal. Rptr. 2d 329 (1995).)  More importantly, the Second Circuit has

25   held that the holding of *Sherrill* is not confined to equitable claims and that

26   equitable defenses can be asserted under federal law against legal claims brought by

27   tribes: "we see no reason why the equitable principles identified by the Supreme

28

Court in *Sherrill* should not apply to this case, whether or not it could be technically classified as an action at law." *Cayuga Indian Nation*, 413 F.3d at 276.   Thus, even if one likens the declaratory relief claim to a legal claim, the defense is not foreclosed.   The facts alleged establish a direct connection between the conduct of the Tribe in purchasing water from CVWD and DWA and the acts complained of CVWD and DWA importing and recharging Colorado River water into the groundwater basin to satisfy their requests for water service, for if the districts did not import the water, they would have further aggravated an overdraft condition about which the Tribe and the United States also complain.

Although both the Tribe and the United States assert that their property rights cannot be defeated by such a defense, as explained above, the reserved rights doctrine which is the basis of the property right claimed does permit the kind of balancing approach that is similar to the task the court engages in ruling on a defense of unclean hands.   And under *Cayuga Indian Nation*, equitable defenses can be asserted against property claims.   It is therefore appropriate to leave the facts to determined and balanced in later phases of the case.

### 3.   <u>Laches</u>

Defendants acknowledge that the prior case law would preclude the application of laches to bar the declaratory relief claims arising from the assertion of federal reserved rights, but assert, as discussed above, that those cases need to be reexamined in light of *New Mexico* and *City of Sherrill,* and the policies underlying those decisions.   *Cayuga Indian Nation* expressly holds that laches can be asserted as a matter of federal law to bar property actions regarding Indian lands whether asserted by a tribe or its trustee, the United States.   The grounds for a laches defense are present here.

Defendants agree that laches requires showing both delay and prejudice.   The delay element of laches is uncontestable.   The complaints allege the lands were

1 reserved in 1876 or 1877; the Tribe's complaint was not filed until 2013, more than

2 a century later, and the United States's complaint in intervention was not filed until

3 2014.

4      The prejudice element may be satisfied by either showing of a factual nature

5 or some prejudice in the presentation of the defense.  (*San Bernardino Valley*

6 *Audubon Society v. City of Moreno Valley,* 44 Cal. App. 4th 593, 605, 51 Cal. Rptr.

7 2d 897 (1996) overruled on other grounds in *San Bernardino Valley Audubon*

8 *Society v. Metropolitan Water Dist.,* 71 Cal. App.4th 382, 402-403, 83 Cal. Rptr. 2d

9 836 (1999)  – implementation of programs at substantial expense satisfies prejudice

10 element.)  The prejudice element is satisfied here by both the program developed to

11 import Colorado River water, with approximately 3 million acre-feet having been

12 recharged in the groundwater basin, and by the acquisition of water rights under

13 state law by numerous persons who rely on the supply in an arid desert environment.

14      The Tribe and the United States argue that California Water Code section

15 10720.3(d) disables California public agencies from asserting prejudice from delays

16 in bringing suit.  It does no such thing.  The subdivision, enacted after the

17 commencement of this action (Stats. 2014, c. 346, § 3) and not effective until

18 January 1, 2015 (Cal. Const., art. 4, §8(c)(2)), expresses no intent to surrender the

19 defenses pleaded by the defendants here.  The statement that federal reserved rights

20 "shall be respected in full" must also be read in conjunction with the subdivision's

21 final sentence which expressly states that it "is declaratory of existing law." The

22 provision therefore does not change existing law, and thus cannot be read as

23 impliedly abolishing any defenses to a reserved right claim that the water agencies

24 asserted here.   California Constitution, article 3, § 3.5, strips California

25 administrative agencies of the power to refuse to enforce a state statute on the

26 grounds that it is unconstitutional unless an appellate court has made a

27 determination that a statute is unconstitutional.  Water Code § 10720.3(d) therefore

28

serves to command groundwater sustainability agencies and the State Water Resources Control Board that where there is a conflict between a state statute and a federally reserved right, they must respect the right when required by the Supremacy Clause, rather than to proceed to disregard that right because of the California Constitutional provision would otherwise require them to do so.   It has no greater effect than that.

## IV. CONCLUSION

The motions for partial summary judgment against defendants' equitable defenses as to the declaratory relief claims should be denied.[3]

Dated:  October 19, 2015                    REDWINE AND SHERRILL

                                By:    /s/ Steven B. Abbott
                                       STEVEN B. ABBOTT
                                       sabbott@redwineandsherrill.com
                                       Attorney for Defendants
                                       COACHELLA VALLEY WATER
                                       and its Defendant Directors
                                       1950 Market Street
                                       Riverside, CA 92501
                                       (951) 684-2520 Telephone
                                       (951) 684-9583 Facsimile


Dated:  October 19, 2015                    BEST BEST & KRIEGER LLP

                                By:    /s/ Roderick E. Walston
                                       RODERICK E. WALSTON
                                       roderick.walston@bbklaw.com
                                       Attorneys for Plaintiffs
                                       DESERT WATER AGENCY and
                                       its Defendant Directors
                                       2001 N. Main Street, Suite 390
                                       Walnut Creek, California 94596
                                       (925) 977-3300 Telephone
                                       (925) 977-1870 Facsimile

---

[3] Defendants would not object if the Court chooses to defer decision of the matter until after the interlocutory appeal is determined.