CATHERINE F. MUNSON (D.C. Bar No. 985717, admitted *pro hac vice*)
CMunson@kilpatricktownsend.com
MARK REEVES (GA Bar No. 141847, admitted *pro hac vice*)
MReeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 824-1435; Fax:  (202) 585-0017

STEVEN C. MOORE (CO Bar No. 9863, admitted *pro hac vice*)
Smoore@narf.org
HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671, admitted *pro hac vice*)
HeatherW@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Tel:  (303) 447-8760; Fax:  (303) 443-7776

DAVID J. MASUTANI (CA Bar No. 172305)
DMasutani@alvaradosmith.com
ALVARADOSMITH, APC
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel:  (213) 229-2400; Fax:  (213) 229-2499
Attorneys for Plaintiff
Agua Caliente Band of Cahuilla Indians

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>            Plaintiff,<br><br>  and<br><br>UNITED STATES OF AMERICA,<br><br>            Plaintiff-Intervenor,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.<br><br>            Defendants. | Case No.:   ED CV 13-00883-JGB-SPX<br>Judge:     Jesus G. Bernal<br><br>**Agua Caliente Band of Cahuilla Indians and United States of America's Joint Reply Brief in Support of Motion for Partial Summary Judgment as to Applicability of Defendants' Phase 2 Equitable Defenses**<br><br>Trial Date:   Hearing set for<br>               Dec. 14, 2015<br>Action Filed:  May 14, 2013 |

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

As set forth in the motions for partial summary judgment filed by Agua Caliente and the United States (Docs. 137 & 138), the equitable defenses asserted by the water districts are inapplicable as a matter of law to the declaratory relief claims in this case. The water districts' response relies principally on two distinguishable Supreme Court decisions – *United States v. New Mexico*, 438 U.S. 696 (1978) and *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005) – and a non-binding, equally distinguishable decision from the Second Circuit. They contend that these cases affected wholesale changes to decades of settled law, much of it from within the Ninth Circuit, regarding federally reserved water rights for Indian tribes and the applicability of equitable defenses to claims brought by the United States.

*New Mexico* and *Sherrill* do not bear the weight that the water districts place on them. The water districts' misreading of *New Mexico* has been addressed at length in prior pleadings and in this Court's Phase 1 summary judgment order. *See, e.g.*, Docs. 93-94, 97-98, & 115. It simply does not say or do what the water districts contend it does. Moreover, *New Mexico* has no bearing whatsoever on the sole issue presently before the Court – *i.e.*, the legal applicability of certain equitable defenses to the various claims for declaratory relief presented by Agua Caliente and the United States. As for *Sherrill*, it is a readily distinguishable case that the water districts would stretch well beyond its breaking point. It had nothing to do with water or the declaration and quantification of fully vested and perfected property rights held in trust by the United States for the benefit of an Indian tribe, and it certainly did not overrule extensive Supreme Court and Ninth Circuit precedents involving exactly that subject matter.

## ARGUMENT & ANALYSIS

## I.     This briefing presents a discrete, purely legal question.

Per the agreement of the parties and order of the Court, the only issue currently before the Court is the purely legal question of whether the equitable defenses – in this case, laches, balancing of the equities, and unclean hands – are applicable to the plaintiffs' claims for declaratory relief as a matter of law. *See* Joint Stip. (Doc. 125);

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

Order of July 8, 2015 (Doc. 126). While the water districts acknowledge as much in their brief, they proceed to argue factual matters that go to the merits of their defenses (Doc. 140 at 8, n.2 & 17-20[1]) and to present legal arguments that are relevant, if at all, to the propriety of the requested injunctive relief (*id.* at 12-13, 17-18). Agua Caliente and the United States will engage and refute these arguments if and when they are appropriately before the Court. Presently, they are not.

## II. *New Mexico* does not alter the settled rule that federal Indian reserved water rights are not subject to limitation based on equitable considerations.

The water districts first argue that the reserved rights doctrine itself has "evolved" such that it now allows the United States and Indian tribes to be deprived of their fully vested property rights in reserved water based on equitable considerations. This argument relies on the same misreading of *New Mexico* that the water districts have urged in prior briefing. They contend that *New Mexico* significantly narrowed the scope of the reserved rights doctrine and called for deference to state law in the determination of federally reserved water rights. The effect of this "evolution," the water districts contend, is to require consideration of competing, subsequently developed state law rights in determining whether the United States reserved water for an Indian tribe when it established the tribe's reservation. This argument is entirely inconsistent with both Supreme Court and Ninth Circuit case law.

*New Mexico* itself refutes the water districts' contention that courts must now defer to state law in declaring reserved water rights. The Supreme Court clearly stated that "the reserved rights doctrine … *is an exception* to Congress' explicit deference to state water law in other areas." *New Mexico*, 438 U.S. at 715 (internal quotation omitted and emphasis added). Although the Court distinguished between the primary and secondary purposes of national forests, as defined by statute, nothing in *New Mexico* altered the Court's fundamental understanding of the *Winters* doctrine: "Where water is necessary to fulfill the very purposes for which a federal reservation

---

[1] Pin cites are to the ECF-generated page numbers atop each document.

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

1  was created, it is reasonable to conclude, even in the face of Congress' express
2  deference to state water law in other areas, that the United States intended to reserve
3  the necessary water." *Id.* at 702. The Court could not have been more clear; the federal
4  reserved rights doctrine does <u>not</u> defer to or depend upon state law.

5  The water districts' contention that *New Mexico* opened the door for balancing
6  equities with regard to reserved rights is similarly inconsistent with the opinion. *New*
7  *Mexico* relied upon and cited with approval the same foundational case law relied
8  upon by Agua Caliente and the United States throughout this litigation. *See New*
9  *Mexico*, 438 U.S. at 699-700, 700 n.4 (discussing *Winters v. United States*, 207 U.S.
10  564 (1908), *Arizona v. California*, 373 U.S. 546 (1963), and *Cappaert v. United*
11  *States*, 426 U.S. 128 (1976)). In these cases, the Supreme Court and the Ninth Circuit
12  repeatedly considered and explicitly rejected the argument that federal reserved water
13  rights should be denied or limited based on equitable considerations. In *Cappaert*, for
14  example, the Supreme Court rejected Nevada's argument that the *Winters* doctrine
15  was an equitable one which called for "balancing of competing interests," finding that
16  no *Winters* doctrine case applied such a balancing test and holding that "balancing the
17  equities is not the test." 426 U.S. at 138-39 & n.4. Similarly, in *Arizona* the Supreme
18  Court rejected Arizona's attempt to inject equitable considerations and held instead
19  that federal Indian reserved water rights were "governed by the statutes and Executive
20  Orders creating the reservations." 373 U.S. at 596-97.[2]

21  Rather than signaling a major departure from settled law, *New Mexico*
22  reaffirmed what the Supreme Court had "previously concluded" – that the
23  establishment of a federal reservation impliedly reserves an amount of water

---

25  [2] Notably, the *Winters* case itself involved allegations of severe hardship to non-
26  Indians if tribal water rights were recognized, including allegations of already-settled
   lands being rendered "valueless" and established communities being "broken up" as a
27  consequence. 207 U.S. at 569-70. The Court nevertheless decided the case solely on
   its interpretation of the 1888 agreement establishing the reservation; competing non-
28  Indian interests were not part of the equation. *Id*. at 575.

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

necessary to fulfill that reservation's purposes. *Id.* at 699-700, 705. Even with regard to the secondary purposes of national forests, for which the Court required the United States to acquire water rights under state law, the case says nothing about balancing equities or competing interests. *New Mexico* certainly did not hold – nor has any court interpreted it to hold – that after an Indian reservation is established and the water necessary to support it is impliedly reserved, its vested water rights can be reduced based on equitable considerations or state law developments.

Consistent with pre-*New Mexico* Supreme Court cases involving federal reserved water rights, Ninth Circuit precedent post-dating *New Mexico* further confirms that reserved water rights are not subject to equitable balancing. In *Colville Confederated Tribes v. Walton*, 752 F.2d 397 (9th Cir. 1985), *cert. denied*, 475 U.S. 1010 (1986), decided nearly seven years after *New Mexico*, the Ninth Circuit held that Indian reserved water rights are "federal water rights … not dependent upon state law or state procedures" and that they "arise without regard to equities that may favor competing water users." *Id.* at 400, 405 (internal quotation omitted). It is impossible to reconcile the *Walton* holding with the water districts' argument that *New Mexico* "indicates that some balancing of interests between federal and non-federal users is relevant" (Resp. Br. at 13) in determining the existence of federal Indian reserved water rights, and the water districts make no effort to effectuate such a reconciliation.

In another decision in the *Colville* litigation, the Ninth Circuit explicitly discussed *New Mexico* while holding that when the United States reserves water for an Indian reservation, it does so "to provide a home for the Indians," a "broad" purpose that "must be liberally construed." *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1981), *cert. denied*, 454 U.S. 92 (1981). It then went on to hold that once water is reserved for an Indian reservation, it immediately becomes "a vested property right" that is not lost by non-use. *Id.* at 48, 51. The Ninth Circuit went so far as to acknowledge that the existence of non-decreed, unquantified Indian reserved rights could prevent landowners from relying on any putative "state-created water

rights." *Id.* at 48. As the Court explained, however, "[r]esolution of the problem is found in quantifying reserved water rights, not in limiting their use." *Id.* This is another post-*New Mexico* holding that is impossible to square with the water districts' claim that federal Indian reserved water rights can be limited by state law doctrines or equitable considerations.

This Court has already rejected the water districts' reliance on "an unduly restrictive reading" of *New Mexico* and their "misapprehension of that case's subsequent application by the Ninth Circuit to cases which involve tribal rights." Phase 1 Summary Judgment Order (SJ Order), Doc. 115, at *9. The Court correctly recognized that the federal reserved water rights "doctrine does not entail a balancing test of competing interests to determine the existence or scope of reserved rights." *Id.* The latest reiteration of the water districts' misguided argument offers no reason for the Court to revisit those conclusions.

**III.  *Sherrill* does not abrogate settled law barring the application of the equitable defenses asserted by the water districts.**

The water districts next argue that another "evolution" in the law – this one principally arising out of the Supreme Court's decision in *Sherrill* – tacitly overruled both the specific decisions holding that Indian reserved water rights are not subject to limitation based on equitable considerations and the more general body of case law holding that equitable defenses are inapplicable to claims brought by the United States to assert its sovereign property rights. Once again, the water districts overstate their case and misplace their reliance.

As an initial matter, the water districts cite no case law holding that equitable doctrines can be used to limit or displace a federal Indian reserved water right. No such case law exists; on the contrary, all case law addressing this question provides that federal Indian reserved water rights are <u>not</u> subject to equitable balancing and <u>cannot</u> be lost due to nonuse. *See, e.g.*, *Walton*, 752 F.2d at 405; *Walton*, 647 F.2d at 51; *United States v. Ahtanum Irrigation Dist.*, 236 F.2d 321, 333-34 (9th Cir. 1956);

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

*see also Cappaert*, 426 U.S. at 138, 139 n.4; *United States v. Cappaert*, 508 F.2d 313, 319-20 (9th Cir. 1974), *aff'd by* 426 U.S. 128.[3] In light of these binding precedents, the water districts' assertion that "developments in case law suggest that prior cases appearing to bar the assertions of equitable defenses against the declaratory relief claims would be revisited" is baseless. Case law of this Circuit is directly on-point and controls this issue. It holds that the equitable defenses are inapplicable to Agua Caliente and the United States' claims for declaratory relief as a matter of law. "Binding authority must be followed unless and until overruled by a body competent to do so." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001).

*Sherrill* certainly does not overrule the Ninth Circuit's repeated rejection of equitable defenses to the United States' assertion of its property rights, specifically including reserved water rights for Indian tribes. There, the Court rejected an effort by the Oneida Indian Nation to reassert sovereignty over parcels of land located within the boundaries of its historic reservation that the Nation had reacquired through open market purchases. *See Sherrill*, 544 U.S. at 213. The Court limited its ruling to questions of sovereignty and did not address title or even disturb its prior precedent regarding the Nation's claim to remedies due to dispossession. *See id.* at 221. It held that the Nation had long ago "relinquished the reins of government" by ceding its lands to the state and now could not "unilaterally revive its ancient sovereignty …

_____

[3] These cases are in accord with others rejecting efforts to assert laches and similar, delay-based defenses against the United States in general or against a tribe's enforcement of its rights in particular. *United States v. California*, 332 U.S. 19, 39-40 (1947) (holding that even if the Government is negligent in asserting its claims, it is not deprived of those claims by court rules); *United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights."); *Nevada v. United States*, 463 U.S. 110, 141 (1983) (ruling that laches or neglect of duty by federal officers is not a defense to federal claims); *United States v. Washington*, 157 F.3d 630, 649 (9th Cir. 1998) (holding laches inapplicable even where tribes waited 135 years to bring claim); *Swim v. Bergland*, 696 F.2d 712, 718 (9th Cir. 1983) (finding laches or estoppel unavailable to defend against Indian treaty rights).

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

over the parcels at issue" simply by repurchasing them from private owners. *Id.* at 202-03. As a result of the tribe's cession, there was a "long history of state sovereign control over the territory" in question, the land had a "longstanding, distinctly non-Indian character," and the Court noted "the impracticability of returning to Indian control land that generations earlier passed into numerous private hands." *Id.* at 202, 214, 219. The Court also emphasized that the Nation was *unilaterally* attempting to reassert sovereignty over its historic lands in a haphazard manner rather than through the orderly process of having the United States take title to the lands in trust for the benefit of the Nation. *See id.* at 220-21.

The concerns that motivated the *Sherrill* Court do not exist here. The lands in question were set aside as the Agua Caliente Reservation in the 1870s, and Agua Caliente has never ceded any of its Reservation lands. It certainly has never ceded its reserved water rights. Unlike the Oneida Indian Nation in *Sherrill*, therefore, Agua Caliente is not attempting to *reacquire* anything in this case. Instead, Agua Caliente asks the Court to declare and quantify vested water rights that were implied as of the date the United States established the Reservation. Because these rights have existed since the 1870s, the water agencies cannot demonstrate any disruption of settled expectations, a factor that was relevant in *Sherrill*.[4] If anything, the settled expectation of western water law is that federally reserved water rights must be accounted for and determined before inferior state law rights can be reasonably relied upon. *See Walton*, 647 F.2d at 48 ("We recognize that open-ended water rights are a growing source of conflict and uncertainty in the West. Until their extent is determined, state-created water rights cannot be relied on by property owners. … Resolution of the problem is found in quantifying reserved water rights …."). Agua Caliente is not acting

---

[4] The *Winters* doctrine has existed as an exception to state control of water in the western states since 1908. Based on *Arizona v. California*, 373 U.S. 546, and its progeny, the process of asserting and quantifying federal reserved water rights in federal court has long been recognized as appropriate and in no way approximates the haphazard, unilateral assertion of sovereignty that the *Sherrill* Court rejected.

unilaterally in this case; unlike the land at issue in *Sherrill*, the water rights at issue here are held in trust by the United States and have been so held at least since the establishment of the Reservation in the 1870s. Nothing in *Sherrill* supports the notion, much less holds, that equitable considerations can limit or diminish federal property interests.[5] The Court's opinion did not even broach that topic, as the United States was not a party to the case. Simply put, *Sherrill* has no relevance to the case at bar.

Nor does the Second Circuit's radical extension[6] of *Sherrill* in *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266 (2d Cir. 2005), affect the resolution of the pending motions. In many respects, *Cayuga* and *Sherrill* are similarly distinguishable from this case. Both involved a tribe's attempt to reestablish control over historic territory that it had ceded to the state centuries earlier, allegedly in violation of federal law. *See id.* at 268-70. Neither case involved lands held in trust by the United States for the benefit of an Indian tribe, and neither involved reserved water rights. The fact that the United States has secured an interest in these lands and water rights to ensure that they benefit Agua Caliente in furtherance of federal policy means that there is a direct federal sovereign interest at stake in this litigation, and *Cayuga* was clear that laches does not come into play under such circumstances. *See id.* at 279. For all of these reasons, in addition to the fact that it is a non-binding decision from another Circuit, *Cayuga* is of no more value to the water districts' argument than *Sherrill*.

Of course, one difference between *Sherrill* and *Cayuga* is the presence of the United States as a plaintiff-in-intervention in the latter case. It was the United States'

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

---

[5] Indeed, underlying the line of controlling *Winters* doctrine cases is a recognition of the boundaries of the judicial power. Once water rights have been reserved to fulfill the purposes of an Indian reservation, it is only through Congress' prerogative, expressed in explicit congressional acts, that such rights can be diminished. *See, e.g.*, *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 202-03 (1999); *United States v. Dion*, 476 U.S. 734, 738-40 (1986); *United States v. Adair*, 723 F.2d 1394, 1412-14 (9th Cir. 1983).

[6] The water districts concede that *Cayuga* "extended" *Sherrill* beyond the scope of the Supreme Court's ruling. Resp. Br. at 9.

KILPATRICK TOWNSEND & STOCKTON
607 14ᵗʰ STREET, STE 900
WASHINGTON, DC 20005-2018

involvement that led to the Second Circuit's most significant expansion of *Sherrill*. While it "recognize[d] that the United States has traditionally not been subject to the defense of laches," the Second Circuit concluded that *Sherrill* opened the door for "the federal law of laches" to apply to the United States in "particular circumstances."[7] *Cayuga*, 413 F.3d at 278-79. The water districts invoke this holding in asking the Court to disregard long settled rules barring the assertion of equitable defenses against the United States in general and its assertion of Indian reserved water rights in particular.

    *Cayuga* in no way justifies the water districts' request. It is both readily distinguishable from the case at bar and irreconcilable with the law of this Circuit and the Supreme Court. First, unlike in this case, the United States did not claim a property interest in *Cayuga* or *Sherrill*. It asserted violations of the Trade and Intercourse Act in those cases because the United States generally does not hold the underlying title to lands in New York, one of the original 13 states. *See Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 670 (1974) ([T]he United States never held fee title to the Indian lands in the original States …."). Second, the Ninth Circuit has explicitly held that when the United States brings suit in its capacity as trustee for an Indian tribe, "[n]o defense of laches or estoppel is available to   the defendants … for the Government as trustee for the Indian Tribe, is not subject to those defenses." *Ahtanum Irrigation*, 236 F.2d at 334; *see also Colville Confederated Tribes v. Walton*, 460 F. Supp. 1320, 1326 (E.D. Wash. 1979) (providing that reserved water rights are not lost or foreclosed by laches, estoppel, or adverse possession), *aff'd in part, rev'd in part on other grounds*, 647 F.2d 42 (9th Cir. 1981). *Cayuga* does not and cannot overrule this precedent.

---

[7] Even *Cayuga* acknowledges that the United States is not subject to any state law delay-based equitable defenses. *See* 413 F.3d at 279. The water districts' reliance on state law equitable doctrines continues to be wholly unavailing. *See, e.g.*, Resp. Br. at 17 ("California law is settled that unclean hands may apply to both legal and equitable claims.").

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

Even if *Cayuga* were not foreclosed by Ninth Circuit precedent, it is simply incorrect in holding that the United States is susceptible to delay-based or other equitable defenses. Its conclusion is no way compelled by *Sherrill* or any other case law. Judge Hall discussed this issue at length in his *Cayuga* dissent, noting the multiple tenuous and unsupported leaps required to reach the majority's conclusion. *See id.* at 286-88 (Hall, J., dissenting in part and concurring in part in the judgment). Where, as here, the United States sues to enforce a federally held property right that was perfected 140 years ago and to ensure the continued, proper interpretation of a legal doctrine that affects federal rights throughout the country, it is not subject to laches or other equitable defenses. *See United States v. Minnesota*, 270 U.S. 181, 196 (1926); *Nevada v. United States*, 463 U.S. 110, 141-42 (1983).

## CONCLUSION

As explained in the initial briefs filed by Agua Caliente and the United States, the equitable defenses of laches, unclean hands, and balancing of the equities are inapplicable to the pending claims for declaratory relief as a matter of law. Nothing in *New Mexico*, *Sherrill*, or any other case cited by the water districts changes this fact. As repeatedly recognized by the Ninth Circuit and the Supreme Court, Agua Caliente's reserved water rights are vested federal property rights that are not subject to loss or diminution based on state law or equitable considerations. Agua Caliente and the United States are entitled to partial summary judgment on the narrow question of the applicability of the water districts' equitable defenses to their claims for declaratory relief.[8]

---

[8] In a footnote at the close of their brief, the water districts again suggest that the Court delay ruling on the pending motions until the Ninth Circuit decides their interlocutory appeal. This suggestion is inconsistent with spirit of the parties' stipulation (Doc. 125) and the Court's order (Doc. 126), and it essentially attempts to revive an improper argument from prior briefing that the water districts withdrew at the insistence of Agua Caliente and the United States (Doc. 134).

DATED: November 2, 2015.

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____ s/ Catherine F. Munson
     CATHERINE F. MUNSON
     (D.C. Bar No. 985717, admitted *pro hac vice*)
     MARK H. REEVES
     (GA Bar No. 141847, admitted *pro hac vice*)
     *Attorneys for Plaintiff*
     *Agua Caliente Band of Cahuilla Indians*

NATIVE AMERICAN RIGHTS FUND
     STEVEN C. MOORE
     (CO Bar No. 9863, admitted *pro hac vice*)
     HEATHER WHITEMAN RUNS HIM
     (NM Bar No. 15671, admitted *pro hac vice*)
     *Attorneys for Plaintiff*
     *Agua Caliente Band of Cahuilla Indians*

DATED: November 2, 2015.

UNITED STATES DEPARTMENT OF JUSTICE

By: _/s/ F. Patrick Berry_____
     F. PATRICK BERRY
     DARON T. CARREIRO
     YOSEF M. NEGOSE
     *Attorneys for Intervenor-Plaintiff*
     *United States of America*

KILPATRICK TOWNSEND & STOCKTON
607 14ᵀᴴ STREET, STE 900
WASHINGTON, DC 20005-2018

11

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>Certification in Compliance with Local Rule 5-4.3.4</u>

I hereby certify that, pursuant to Local Rule 5-4.3.4, I have obtained the authorization from the above signatories representing Intervenor-Plaintiff to file the above-referenced document, and that the above signatories concur in the filing's content.

DATED: November 2, 2015.

KILPATRICK TOWNSEND & STOCKTON LLP

By:  /s/ Catherine F. Munson
CATHERINE MUNSON
(D.C. Bar No. 985717, admitted *pro hac vice*)
MARK H. REEVES
(GA Bar No. 141847, admitted *pro hac vice*)
*Attorneys for Plaintiff*
*Agua Caliente Band of Cahuilla Indians*