CATHERINE F. MUNSON (D.C. Bar No. 985717, admitted *pro hac vice*)
CMunson@kilpatricktownsend.com
MARK REEVES (GA Bar No. 141847, admitted *pro hac vice*)
MReeves@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON, LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 824-1435; Fax: (202) 585-0017

STEVEN C. MOORE (CO Bar No. 9863, admitted *pro hac vice*)
Smoore@narf.org
HEATHER WHITEMAN RUNS HIM (NM Bar No. 15671, admitted *pro hac vice*)
HeatherW@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
Tel: (303) 447-8760; Fax: (303) 443-7776

DAVID J. MASUTANI (CA Bar No. 172305)
DMasutani@alvaradosmith.com
ALVARADOSMITH, APC
633 W. Fifth Street, Suite 1100
Los Angeles, CA 90071
Tel: (213) 229-2400; Fax: (213) 229-2499

*Attorneys for Plaintiff*
*Agua Caliente Band of Cahuilla Indians*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS and UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.<br><br>Defendants. | Case No. ED CV 13-00883-JGB-SPX<br><br>**Agua Caliente Band of Cahuilla Indians and United States' Supplemental Brief in Support of Motion for Summary Judgment as to the Equitable Defense of Unclean Hands**<br><br>Case Filed: May 14, 2013 |

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

    A.    Court created equitable doctrines like unclean hands cannot diminish a federal reserved water right. ....................................................................... 1

    B.    Cases holding that equitable defenses can apply against the United States do not involve the divestment of sovereign property interests. ................. 4

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. California*,
 373 U.S. 546 (1963)..................................................................................................1, 5

*Arkley v. Aon Risk Servs. Cos.*,
 No. CV 12-1966 DSF (RZx), 2012 WL 2674980 (C.D. Cal. June 13, 2012)............6

*Cappaert v. United States*,
 426 U.S. 128 (1976)..................................................................................................1, 5

*Colville Confederated Tribes v. Walton*,
 647 F.2d 42 (9th Cir. 1981) ..........................................................................................3

*Colville Confederated Tribes v. Walton*,
 752 F.2d 397 (9th Cir. 1985) ........................................................................................3

*Cramer v. United States*,
 261 U.S. 219 (1923)......................................................................................................3

*E.E.O.C. v. Lexus of Serramonte*,
 No. C 05-0962 SBA, 2006 WL 2619367 (N.D. Cal. Sept. 12, 2006) .......................7

*E.E.O.C. v. Recruit USA, Inc.*,
 939 F.2d 746 (9th Cir. 1991) ........................................................................................7

*Heckman v. United States*,
 224 U.S. 413 (1912)...................................................................................................5, 8

*In re Water of Hallett Creek Stream Sys.*,
 44 Cal. 3d 448 (1988) ................................................................................................1, 5

*Kelley v. Thomas Solvent Co.*,
 714 F. Supp. 1439 (W.D. Mich. 1989) .........................................................................7

*Light v. United States*,
 220 U.S. 523 (1911)...................................................................................................2, 6

*Lone Wolf v. Hitchcock*,
 187 U.S. 553 (1903)......................................................................................................3

*Mattz v. Arnett*,
 412 U.S. 481 (1973)......................................................................................................3

*Pan-Am. Petroleum & Transp. Co. v. United States*,
 273 U.S. 456 (1927)......................................................................................................7

*S.E.C. v. Gulf & W. Indus., Inc.*,
 502 F. Supp. 343 (D.D.C. 1980) ...................................................................................7

*United States v. 7,405.03 Acres*,
 97 F.2d 417 (4th Cir. 1938) ..........................................................................................3

*United States v. Ahtanum Irrigation Dist.*,
  236 F.2d 321 (9th Cir. 1956) ...................................................................................3, 5

*United States v. California*,
  332 U.S. 19 (1947) ........................................................................................................2

*United States v. Candelaria*,
  271 U.S. 432 (1926) ......................................................................................................3

*United States v. Georgia-Pacific Co.*,
  421 F.2d 92 (9th Cir. 1970) ...................................................................................4, 5, 6

*United States v. Jicarilla Apache Nation*,
  131 S.Ct. 2313 (2011) ...................................................................................................5

*United States v. Minnesota*,
  270 U.S. 181 (1926) ......................................................................................................5

*United States v. Philip Morris Inc.*,
  300 F. Supp. 2d 61 (D.D.C. 2004) ................................................................................7

*United States v. Preston*,
  352 F.2d 352 (9th Cir. 1965) ........................................................................................1

*United States v. Stringfellow*,
  661 F. Supp. 1053 (C.D. Cal. 1987) .............................................................................8

*United States v. Walker River Irrigation Dist.*,
  104 F.2d 334 (9th Cir. 1939) ....................................................................................4, 5

*Utah Power & Light Co. v. United States*,
  243 U.S. 389 (1917) ..................................................................................................2, 6

*Uto v. Job Site Servs., Inc.*,
  269 F.R.D. 209 (E.D.N.Y. 2010) ..................................................................................6

**Statutes**

25 U.S.C. § 177 ....................................................................................................................2

**Other Authorities**

Dobbs, Law of Remedies §2.4(2) ........................................................................................6

Felix S. Cohen *et al.*, Cohen's Handbook of Federal Indian Law,
  § 15.09[1][b] (2012 ed.) ................................................................................................3

U.S. Const. Article IV, § 3, cl. 2 ......................................................................................1, 2

**Treatises**

2 *Pomeroy* § 400 at 100 .....................................................................................................6

*Pomeroy's Equity Jurisprudence* ........................................................................................6

*United States v. Ahtanum Irrigation Dist.*,
  236 F.2d 321 (9th Cir. 1956) ...................................................................................3, 5

*United States v. California*,
  332 U.S. 19 (1947) ........................................................................................................2

*United States v. Candelaria*,
  271 U.S. 432 (1926) ......................................................................................................3

*United States v. Georgia-Pacific Co.*,
  421 F.2d 92 (9th Cir. 1970) ...................................................................................4, 5, 6

*United States v. Jicarilla Apache Nation*,
  131 S.Ct. 2313 (2011) ...................................................................................................5

*United States v. Minnesota*,
  270 U.S. 181 (1926) ......................................................................................................5

*United States v. Philip Morris Inc.*,
  300 F. Supp. 2d 61 (D.D.C. 2004) ................................................................................7

*United States v. Preston*,
  352 F.2d 352 (9th Cir. 1965) ........................................................................................1

*United States v. Stringfellow*,
  661 F. Supp. 1053 (C.D. Cal. 1987) .............................................................................8

*United States v. Walker River Irrigation Dist.*,
  104 F.2d 334 (9th Cir. 1939) ....................................................................................4, 5

*Utah Power & Light Co. v. United States*,
  243 U.S. 389 (1917) ..................................................................................................2, 6

*Uto v. Job Site Servs., Inc.*,
  269 F.R.D. 209 (E.D.N.Y. 2010) ..................................................................................6

**Statutes**

25 U.S.C. § 177 ....................................................................................................................2

**Other Authorities**

Dobbs, Law of Remedies §2.4(2) ........................................................................................6

Felix S. Cohen *et al.*, Cohen's Handbook of Federal Indian Law,
  § 15.09[1][b] (2012 ed.) ................................................................................................3

U.S. Const. Article IV, § 3, cl. 2 ......................................................................................1, 2

**Treatises**

2 *Pomeroy* § 400 at 100 .....................................................................................................6

*Pomeroy's Equity Jurisprudence* ........................................................................................6

The issue before the Court in this Supplement Briefing is whether the equitable defense of unclean hands can apply to divest the United States of federal reserved water rights it holds in trust for the Agua Caliente Band of Cahuilla Indians. In particular, the Court "is interested in whether cases in which unclean hands has been applied against the Government are distinguishable from the facts of this case." Doc. 144. The Court directed the parties to discuss cases cited in the December 14, 2015 Order "and their applicability to the facts of this case." *Id.*

Cases indicating that unclean hands can bar claims by the United States are rare. Those few that exist are distinguishable from this case because they do not involve the application of an equitable doctrine to divest the United States of an absolute vested sovereign property interest. Congress alone may disclaim federal property, and Congress alone may diminish the property rights of tribes. This case involves a vested water right that the United States holds in trust for Agua Caliente; therefore, the equitable defense of unclean hands cannot apply as a matter of law.

## ARGUMENT

### A. Court created equitable doctrines like unclean hands cannot diminish a federal reserved water right.

The United States' power to reserve water for a tribe is based upon the property and supremacy clauses of the Constitution. *See Cappaert v. United States*, 426 U.S. 128, 138 (1976); *Arizona v. California*, 373 U.S. 546, 597-98 (1963); *In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 455 n.3 (1988).[1] A federal reserved water right is a presently perfected right "which vests on the date of the reservation." *Cappaert*, 426 at 138; *Arizona*, 373 U.S. at 600; *United States v. Preston*, 352 F.2d 352, 357 (9th Cir. 1965) (reserved water rights arise "as soon as a reservation for Indians has been established"). Thus, Agua Caliente's water right vested long ago, at

---

[1] Article IV, § 3, cl. 2 of the Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."

1

the latest, on the date the United States established the Agua Caliente Reservation pursuant to the 1876 and 1877 Executive Orders. Doc. 116 at 2.

It is settled federal law that Congress alone has the power "to dispose of … Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. For instance, when rejecting the argument that equitable defenses could apply against the United States' claim for a declaration of its rights to offshore land, the Supreme Court held that the United States is not to be deprived of its sovereign title by "court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights …." *United States v. California*, 332 U.S. 19, 40 (1947). Similarly, the Supreme Court has rejected the application of equitable defenses in a suit brought by the United States to enjoin the occupancy and use of federal forest land, explaining that "[a] suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 391 (1917); *see also Light v. United States*, 220 U.S. 523, 537 (1911) ("All public lands of the nation are held in trust for the people of the whole country. And it is not for the courts to say how that trust shall be administered. That is for Congress to determine.") (internal quotation omitted)

The rule that only Congress can disclaim federal property applies with full force to property interests the United States holds in trust for tribes.[2] "Tribal title can be

---

[2] The Indian Nonintercourse Act provides that "[n]o purchase, grant, lease, or other conveyance of lands, or of any title or claim hereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution."  25 U.S.C. § 177.  "Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to

2

extinguished only by an express and unambiguous act of Congress." Felix S. Cohen *et al.*, Cohen's Handbook of Federal Indian Law, § 15.09[1][b] (2012 ed.); *see, e.g., Mattz v. Arnett*, 412 U.S. 481, 504-05 (1973) ("[W]hen Congress has once established a reservation all tracts included within it remain a part of the reservation until separated therefrom by Congress.") (citation omitted); *Cramer v. United States*, 261 U.S. 219, 234 (1923) (holding that the United States could still assert Indian land rights even when federal agents had purportedly leased the Indian lands in question to third parties without legal authority to do so).[3]

The Ninth Circuit has consistently applied this well-established principle of federal Indian law to federal reserved Indian water rights. In *Walton*, for example, the Ninth Circuit held that an individual Indian's water right had not been diminished because "[t]he general rule is that termination or diminution of Indian rights requires express legislation …." *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 50 (9th Cir. 1981) ("*Walton I*").  The Ninth Circuit explained that it had "specifically addressed the potential inequity of open-ended water rights" and held that "reserved rights … arise without regard to equities that may favor competing water users." *Walton*, 752 F.2d 397, 404-05 (9th Cir. 1985)  ("*Walton II*"); *see also United States v. Ahtanum Irrigation Dist.*, 236 F.2d 321, 334 (9th Cir. 1956) (holding that "[n]o defense of laches or estoppel is available for defendants here for the Government as trustee for the Indian Tribe, is not subject to those defenses"); *United States v. Walker*

---

be controlled by the judicial department of the government." *Lone Wolf v. Hitchcock*, 187 U.S. 553, 565 (1903).

[3] It necessarily follows that any alleged conduct by Agua Caliente causing it to have unclean hands cannot, as a matter of law, deprive the United States of the federal reserved water right it holds here. *See*, *e.g*., *United States v. Candelaria*, 271 U.S. 432, 443-44 (1926) (holding that land the United States holds in trust for a tribe cannot be alienated in any way without the United States' consent); *United States v. 7,405.03 Acres*, 97 F.2d 417, 422 (4th Cir. 1938) (holding that land held in trust by the United States for a tribe may not be taken from a tribe "by contract, adverse possession, or otherwise, without [the United States'] consent.")

3

*River Irrigation Dist.*, 104 F.2d 334, 339 (9th Cir. 1939) (rejecting the application of estoppel against the United States' assertion of water rights on behalf of a tribe).

The legal underpinnings of the Supreme Court and Ninth Circuit decisions disclaiming the application of laches, estoppel and balance of the equities to deprive the United States of sovereign title must, as a matter of law and logic, also apply to the defense of unclean hands. Court created equitable doctrines simply cannot be used to limit vested federal legal rights over which Congress has sole power. Indeed, Defendants cite no case where a court has applied unclean hands to divest the United States of sovereign property interests it holds in trust for a tribe.

**B.     Cases holding that equitable defenses can apply against the United States do not involve the divestment of sovereign property interests.**

The cases the Court cites in its December 14, 2015 Order are distinguishable because the courts did not apply unclean hands to divest the United States of a vested sovereign property interest, let alone one held in trust for a tribe. Those cases therefore do not implicate, much less call into question, the settled body of federal law holding that equitable defenses cannot abrogate property rights that United States holds in trust for tribes.

The Court cites to *United States v. Georgia-Pacific Co.*, 421 F.2d 92 (9th Cir. 1970), which recognizes that a court may, in narrow circumstances, deny relief to the United States based on equitable estoppel and unclean hands. *See* Doc. 144. In *Georgia-Pacific*, the United States sued for declaratory relief and specific performance of an agreement to reclaim land that Georgia-Pacific's predecessor contractually agreed to donate to a national forest. The Court recognized that Georgia-Pacific's equitable defenses of estoppel and unclean hands could lie against the United States, but only because the government was acting "in its proprietary (rather than sovereign) capacity." *Id.* at 100-01, 103, n.35. The Court held the United States' claims for declaratory relief and specific performance were barred by estoppel and unclean hands, respectively. *Id.* at 104.

4

*Georgia Pacific* is distinguishable from the instant action because the United States was "acting as a private party would." *Id.* at 101. The Court explained that the question was "*not that of preserving public lands* – since the Government never had title to the cutover lands it is now claiming – but only enforcing a private contract to gain new title to new lands." *Id.* (emphasis added).

By contrast, the United States in this case is acting in its sovereign capacity to preserve a vested federal property right pursuant to its fiduciary obligations as a trustee for Agua Caliente. *Cappaert*, 426 U.S. at 138; *Arizona*, 373 U.S. at 600; Doc. 62 at 6 ("The United States asserts interests that transcend the focus of a single tribe or reservation. The United States asserts interests on behalf of all federally recognized tribes and all federal lands that rely on reserved water."). It is well established that when the United States protects tribal interests, it does so in its sovereign capacity:

> [The United States'] interest arises out of its guardianship over the Indians, and out of its right to invoke the aid of a court of equity in removing unlawful obstacles to the fulfillment of its obligations, and in both aspects the interest is one which is vested in it as a sovereign.

*United States v. Minnesota*, 270 U.S. 181, 301 (1926); *see also United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2326 (2011) ("[T]he Government exercises its carefully delimited trust responsibilities in a sovereign capacity to implement national policy respecting Indian tribes."); *Heckman v. United States*, 224 U.S. 413, 437 (1912). The California Supreme Court similarly recognizes this distinction, holding in *Hallett Creek* that in water disputes between the United States and the states, the Supreme Court "has consistently premised its holdings on the sovereign rights, rather than the proprietary interests, of the United States." *In re Water of Hallett Creek Stream Sys.*, 44 Cal. 3d 448, 459 (1988). The distinction is significant and reconciles *Georgia Pacific*'s application of equitable estoppel against the United States with the same Court's refusal to apply that doctrine to federal reserved water rights in *Ahtanum* and *Walker River*. *See Ahtanum*, 236 F.2d at 334; *Walker River*,

104 F.2d at 339; *see also Utah Power & Light*, 243 U.S. at 391 (rejecting the application of equitable estoppel).

It is also important to note that the Ninth Circuit in *Georgia Pacific* applied the unclean hands defense only to the United States' claim for specific performance of the agreement. *Georgia Pacific* cites the treatise *Pomeroy's Equity Jurisprudence* for the proposition that unclean hands cannot bar legal relief, explaining that if a court finds unclean hands, "it will refuse [plaintiff] the remedy of a specific performance, and will leave him his legal remedy by action for damages." *Id.* at 104 (quoting 2 *Pomeroy* § 400 at 100). Therefore, *Georgia Pacific* does not stand for the proposition that unclean hands can be applied against claims for declaratory relief. In fact, it holds quite the opposite. For this reason, *Arkley v. Aon Risk Servs*. Cos., No. CV 12-1966 DSF (RZx), 2012 WL 2674980, at *4 (C.D. Cal. June 13, 2012), also cited in the Court's December 14, 2015 Order — notably a case that does not involve the United States — is incorrect when it cites *Georgia-Pacific* for this proposition.[4] *See also* Dobbs, Law of Remedies §2.4(2) ("If judges had the power to deny damages and other legal remedies because a plaintiff came into court with unclean hands, citizens would not have rights, only privileges …."); *Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 213 (E.D.N.Y. 2010).

The cases identified by the Court involving the Equal Employment Opportunity Commission (EEOC) and the Securities Exchange Commission (SEC) are similarly distinguishable from the case at hand. They do not implicate the significant body of federal case law holding that the rights held in trust by the United States can only be diminished through express congressional action. *See supra*.

The general principle gleaned from enforcement actions brought by the United States, including those identified in the Court's Order, is that when the United States

---

[4] In their Opposition Brief, Defendants claim that California law applies the doctrine of unclean hands to legal claims. As this Court has recognized, however, *Winters* rights derive from federal law and state law principles must yield when in conflict. Doc. 116, at 9.

6

acts in furtherance of a governmental interest, unclean hands cannot apply as a matter of law. In *E.E.O.C. v. Recruit USA*, *Inc.*, 939 F.2d 746 (9th Cir. 1991), for example, the Ninth Circuit affirmed the district court's failure to apply unclean hands to the EEOC's claim for injunctive relief. The Ninth Circuit did not determine whether the EEOC acted improperly. Rather, "assuming it did," the Ninth Circuit held that "the substantial public interest permeating the case warrants a departure from the 'clean hands doctrine.'" *Id.* at 753. Similarly, in *E.E.O.C. v. Lexus of Serramonte*, No. C 05-0962 SBA, 2006 WL 2619367 (N.D. Cal. Sept. 12, 2006) the District Court rejected the application of unclean hands against the EEOC, noting that in *Recruit USA*, "the Ninth Circuit declined to apply the unclean hands doctrine to the EEOC" and that "when the Government acts in the public interest the unclean hands defense is unavailable as a matter of law." *Id.* at *2 (citation omitted).

These cases are consistent with the maxim that when the government is asserting public rights, equitable doctrines such as unclean hands will not be applied to thwart public policy or the purpose of federal laws. *See Pan-Am. Petroleum & Transp. Co. v. United States*, 273 U.S. 456, 506 (1927) ("The general principles of equity are applicable in a suit by the United States to secure the cancellation of a conveyance or the rescission of a contract. But they will not be applied to frustrate the purpose of its laws or to thwart public policy") (citations omitted); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 75 (D.D.C. 2004) (holding that "when, as here, the Government acts in the public interest the unclean hands defense is unavailable as a matter of law"); *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1451 (W.D. Mich. 1989) ("[I]t is well established that the sovereign is immune from equitable doctrines when it asserts public rights."); *S.E.C. v. Gulf & W. Indus., Inc.*, 502 F. Supp. 343, 348 (D.D.C. 1980) (barring defense of unclean hands because "it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest"). As such, they support the notion that the unclean hands defense cannot apply to deprive the United States of a trust asset it

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

holds on behalf of a tribe. It is well-recognized that the United States' fulfillment of its trust obligations to Indian tribes is in the public interest. *See Heckman*, 224 U.S. at 437 (describing "the right and duty of the nation to enforce by all appropriate means the restrictions designed for the security of the Indians" as "distinctly an interest of the United States"); *see also supra*. Accordingly, a refusal to apply the unclean hands doctrine in this case is fully consistent with the enforcement cases. *See also United States v. Stringfellow*, 661 F. Supp. 1053, 1062 (C.D. Cal. 1987) ("Another reason why the Court strikes the equitable defenses to liability raised by the defendants is that they cannot be asserted against the government when it acts in its sovereign capacity").

DATED: December 28, 2015.

KILPATRICK TOWNSEND & STOCKTON LLP

By:    s/ Catherine F. Munson
   CATHERINE F. MUNSON
   (D.C. Bar No. 985717, admitted *pro hac vice*)
   MARK H. REEVES
   (GA Bar No. 141847, admitted *pro hac vice*)
   *Attorneys for Plaintiff*
   *Agua Caliente Band of Cahuilla Indians*

NATIVE AMERICAN RIGHTS FUND
   STEVEN C. MOORE
   (CO Bar No. 9863, admitted *pro hac vice*)
   HEATHER WHITEMAN RUNS HIM
   (NM Bar No. 15671, admitted *pro hac vice*)
   *Attorneys for Plaintiff*
   *Agua Caliente Band of Cahuilla Indians*

DATED: December 28, 2015.

UNITED STATES DEPARTMENT OF JUSTICE

By: /s/ F. Patrick Berry
    F. PATRICK BERRY
    DARON T. CARREIRO
    YOSEF M. NEGOSE
    *Attorneys for Intervenor-Plaintiff*
    *United States of America*

KILPATRICK TOWNSEND & STOCKTON
607 14TH STREET, STE 900
WASHINGTON, DC 20005-2018

**Certification in Compliance with Local Rule 5-4.3.4**

I hereby certify that, pursuant to Local Rule 5-4.3.4, I have obtained the authorization from the above signatories representing Intervenor-Plaintiff to file the above-referenced document, and that the above signatories concur in the filing's content.

DATED: December 28, 2015.   KILPATRICK TOWNSEND & STOCKTON LLP

By:  /s/ Catherine F. Munson
CATHERINE MUNSON
(D.C. Bar No. 985717, admitted *pro hac vice*)
MARK H. REEVES
(GA Bar No. 141847, admitted *pro hac vice*)
*Attorneys for Plaintiff*
*Agua Caliente Band of Cahuilla Indians*