1  F. PATRICK BARRY, Senior Trial Attorney
2  patrick.barry@usdoj.gov
   DARON T. CARREIRO, Trial Attorney
3  daron.carreiro@usdoj.gov
4  YOSEF M. NEGOSE, Trial Attorney
   yosef.negose@usdoj.gov
5  Indian Resources Section
6  Environment and Natural Resources Division
   United States Department of Justice
7  P.O. Box 7611
8  Ben Franklin Station
   Washington, DC 20044
9  Phone: (202) 353-8596
   Facsimile: (202) 305-0725
10 Attorneys for Plaintiff-Intervenor
11 UNITED STATES OF AMERICA
12

13              **UNITED STATES DISTRICT COURT**
14      **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

15

16 | AGUA CALIENTE BAND OF | CASE NO. |
17 | CAHUILLA INDIANS, | 5:13-cv-00883-JGB-SP |

18             Plaintiff,

19         and                    **UNITED STATES' MOTION FOR**
                                  **SUMMARY JUDGMENT AND**
20 UNITED STATES OF AMERICA,      **MEMORANDUM OF POINTS AND**
                                  **AUTHORITIES IN RESPONSE TO**
21             Plaintiff-Intervenor, **THE COURT'S PHASE II ORDER**

22

23        v.

24

25 COACHELLA VALLEY WATER    BEFORE:   Judge Jesus G. Bernal
   DISTRICT, et al.,         DATE:     January 22, 2018
26                           DEPT:     Courtroom 1
27             Defendants.    TIME:     9:00 a.m.
28

1

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE
TAKE NOTICE that on January 22, 2018, at 9:00 am, or as soon thereafter as the
matter may be heard, in the Courtroom of the Honorable Jesus G. Bernal, at the
United States District Court for the Central District of California, located at 3470
Twelfth Street, Riverside, California 92501—and pursuant to Rule 56 of the
Federal Rules of Civil Procedure and this Court's September 6, 2017 Scheduling
Order (Doc. 193)—the United States of America ("United States") intends to
move, and hereby does move for summary judgment on two purely legal questions
on which the Court has ordered briefing.

This motion is based on the attached Memorandum of Points and Authorities
in support of the motion, the attached Proposed Order, all other pleadings and
papers on file in this case, and upon such other and further arguments, documents,
and grounds as may be advanced in the future.  This motion is also made following
the conference of counsel pursuant to L.R. 7-3 which took place on October 10,
2017.


Dated: October 20, 2017                         Respectfully submitted,

                                                       /s/  Yosef M. Negose
                                                F. PATRICK BARRY, Trial Attorney
                                                DARON CARREIRO, Trial Attorney
                                                YOSEF M. NEGOSE, Trial Attorney
                                                Indian Resources Section
                                                Environment & Natural
                                                Resources Division
                                                United States Department of Justice
                                                P.O. Box 7611
                                                Ben Franklin Station
                                                Washington, DC 20044
                                                Phone: (202) 353-8596
                                                Facsimile: (202) 305-0725

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..................................................................................... 3

BACKGROUND ........................................................................................ 5

STANDARD .............................................................................................. 6

ARGUMENT ............................................................................................. 6

   I.  QUANTIFICATION STANDARD ...................................... 8

   II. WATER QUALITY ............................................................ 13

CONCLUSION ......................................................................................... 17

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Agua Caliente Band of Cahuilla Indians V. Coachella Valley Water Dist.*,
849 F.3d 1262 (9th Cir. 2017) …………………………….……………..passim

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*,
No. EDCV 13-883-JGB-SPX, 2016 WL 2621301 (C.D. Cal. Feb. 23, 2016)……………………………………………………………..……..…..5, 6, 14

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*,
No. EDCV 13-883-JGB, 2015 WL 13309103 (C.D. Cal. Mar. 24, 2015)
…………………………………………………………………passim

*Alaska Pac. Fisheries v. United States*, 240 F. 274 (9th Cir. 1917)………………9

*Arizona v. California ("Arizona I")*, 373 U.S. 546 (1963)…………………..passim

*Atchison v. Peterson*, 87 U.S. 507 (1874)…………………………………..………16

*Ball v. Nye*, 99 Mass. 582 (1868)…………………………………………..………16

*Cappaert v. United States*, 426 U.S. 128 (1976)………………..……………..……7, 16

*Colville Confederated Tribes v. Walton,* 647 F.2d 42
(9th Cir. 1981)……………………………………………………………..passim

*Deetz v. Carter*, 232 Cal. App. 2d 851 (Cal. Ct. App. 1965)……...…………..…...15

*Disandro v. Makahuena Corp.,* 588 F. Supp. 889 (D. Haw. 1984)……………..…..6

*High Country Citizens' All. v. Norton*, 448 F. Supp. 2d 1235
(D. Colo. 2006)……………………………………………………………….14

*Hopi Tribe v. United States*, 782 F.3d 662 (Fed. Cir. 2015)…………………..……16

*In re Gen. Adjudication of All Rights to Use Water in Big Horn River Sys.*,
753 P.2d 76 (Wyo. 1988)……………………….……..…………………..13

*In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source
("Gila V")*, 201 Ariz. 307 (2001)……………………………………passim

*Menominee Tribe of Indians v. United States*, 391 U.S. 404 (1968)………….…...7

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999)…….....14

*Montana ex rel. Greely v. Confederated Salish & Kootenai Tribes*,
712 P.2d 754 (Mont. 1985)…………………………………….……..………13

*Solem v. Bartlett*, 465 U.S. 463 (1984)……………………………..……………14

*Territory of Alaska v. Annette Island Packing Co.*, 289 F. 671
(9th Cir. 1923)……………………………………………………………………7

*United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983)…………………..…...9, 10, 11

*United States v. Anderson*, 736 F.2d 1358 (9th Cir. 1984)……………………..…15

*United States v. Alexander,* 106 F.3d 874 (9th Cir. 1997)………..………..…….4, 5

*United States v. Dion*, 476 U.S. 734 (1986)………………………….…..……14

*United States v. Fitzgerald*, 201 F. 295 (8th Cir. 1912)…………….…………..…7
*United States v. Gila Valley Irr. Dist.("GVID I"),* 920 F. Supp. 1444
    (D. Ariz. 1996)………………………………………………..…5, 16, 18
*United States v. Gila Valley Irri. Dist*. ("*GVID II*"), 117 F.3d 425
    (9th Cir. 1997)…………………………………………………………5, 16
*United States* v. *Powers*, 305 U.S. 527 (1939) …………………………………7
*United States v. Walker River Irr. Dist.,* 104 F.2d 334 (9th Cir. 1939)……..……13
*United States v. Washington*, 459 F. Supp. 1020 (W.D. Wash. 1978)…………5, 16
*United States v. Washington*, 375 F. Supp. 2d 1050 (W.D. Wash. 2005)……..……9
*United States v. Washington*, 645 F.2d 749 (9th Cir. 1981)…………………5, 16
*United States ex rel. Lummi Indian Nation v. Washington*,
    No. C01-0047Z, 2007 WL 4190400 (W.D. Wash. Nov. 20, 2007)…………9
*United States ex rel. Lummi Nation v. Dawson*, 328 F. App'x 462
    (9th Cir. 2009)………………………………………………………………9
*Utah Power & Light Co. v. United States*, 243 U.S. 389 (1917)…………..………14
*Wagner v. Spire Vision,* No. C 13-04952-WHA,
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014)……………………………..……..6
*Winters v. United States*, 143 F. 740 (9th Cir. 1906)…………….…………..…14
*Winters* v. *United States*, 207 U.S. 564 (1908)……………………………7, 8
*Wyoming v. United States,* 492 U.S. 406 (1989)……………………13

## STATUTES

25 U.S.C. § 177 …………………………………………………………3

## FEDERAL RULES

Fed. R. Civ. P. 56(a) …………………………………………………6
Fed. R. Evid. 401(b)…………………………………………4, 12
Fed. R. Evid. 402…………………………………………………4, 12

## SECONDARY SOURCES

30 Am. Jur. 2d *Executions & Enforcement of Judgments* § 2 (2017)…………5, 16
Felix S. Cohen et. al., *Cohen's Handbook of Federal Indian Law*
    (Nell Jessup Newton ed., 2012)………………………………12, 15
Wright & Miller, *11 Federal Practice & Procedure: Civil* § 2885 (2017)…......5, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The United States holds federally reserved water rights for the benefit of the Agua Caliente Band of Cahuilla Indians, including rights to groundwater, and seeks to protect those rights from appropriation and impairment through the actions of the Coachella Valley Water District ("CVWD") and the Desert Water Agency ("DWA") ("Defendants"). The United States intervened in this case to "enjoin CVWD and DWA from interfering in any way with the reserved rights, to be decreed by [the] Court, of the [Agua Caliente] Tribe and individual Allottees to groundwater." (Doc. 71) (United States' Complaint-In-Intervention). CVWD and DWA have raised affirmative defenses (Doc. 72 &73) to the United States' Complaint-In-Intervention. This Court has ordered briefing on three purely legal issues that CVWD's affirmative defenses—and other filings, exchanges and discussions among the parties—have raised. (Doc. 193). This brief addresses two of those three issues: (1) the legal standard that controls quantification of Agua Caliente's water right and (2) whether that right includes a quality component.[1] On these issues, the United States requests that the Court hold as follows.

On the first issue, quantification, the United States requests that the Court hold, that in Phase III of this case, the Court will hear all admissible, relevant evidence of Agua Caliente's present and future needs as a homeland for an Indian

---

[1] The third legal issue for which the Court ordered briefing is whether the Tribe beneficially owns pore space underlying its Reservation. On this issue, CVWD (but not DWA) contended in its Sixth Affirmative Defense that, "assuming arguendo that the Tribe and the United States have a reserved water right in groundwater under federal law, that right does not extend to 'ownership' of pore space in any aquifer underlying the Coachella Valley." (Doc. 73 at 9). The United States understands the Tribe's pore space claim to be based on ownership of land, not ownership of reserved water. But to the extent that the Defendants intend to advance any pore space-based contentions to undercut the Tribe's reserved water right or to claim access to the land the United States holds in trust for the Tribe, the United States opposes that argument. *See, e.g.*, 25 U.S.C. § 177 ("No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.").

tribe, including: (1) the executive orders and circumstances surrounding Agua Caliente's establishment;[2] (2) historical evidence of Agua Caliente's water use needs; (3) the Agua Caliente Indians' need to maintain themselves under changed circumstances; (4) evidence of the Tribe's culture and cultural water uses; (5) evidence of the Coachella Valley's topography, geography, and water and other natural resources; (6) evidence of the Tribe's economic base; (7) evidence of the Tribe's past and present water uses; (8) evidence of the Tribe's present and projected population; and (9) all other admissible evidence of facts of consequence in determining Agua Caliente's present and future water use needs as a homeland for a tribe of people. *See Arizona v. California ("Arizona I")*, 373 U.S. 546, 600-01 (1963); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 47 (9th Cir. 1981); *In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source ("Gila V")*, 201 Ariz. 307, 316, 35 P.3d 68, 77 (2001).

This Court has already held that the Agua Caliente Reservation, at a minimum, provides the Tribe with a homeland for now and for the future, and that a body of federal law known as the *Winters* doctrine ensures a federal right to water to realize that end. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV 13-883-JGB, 2015 WL 13309103, at *7 (C.D. Cal. Mar. 24, 2015), *aff'd*, 849 F.3d 1262 (9th Cir. 2017).[3] The quantification question is the amount of water necessary "to realize that end." *Id*. The United States submits that the Court should hear all relevant and admissible evidence of facts responsive to that question. *See* Fed. R. Evid. 401(b) (Relevant evidence consists of facts "of consequence in determining the action."); Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United

---

[2] Much of this evidence is already in the record.

[3] This is the law of the case. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.").

States Constitution; a federal statute; these rules; or other rules prescribed by the
Supreme Court. Irrelevant evidence is not admissible."); Wright & Miller, *11 Fed.
Prac. & Proc. Civ.* § 2885 (2017) ("In nonjury cases the district court can commit
reversible error by excluding evidence but it is almost impossible for it to do so by
admitting evidence.").

On the second issue, water quality, the United States requests that the Court
hold that it has the power and duty to effectuate its prior judgment that the Tribe
has a right to use water, and that the Court may therefore enjoin degradation of
water subject to the Tribe's right upon a proper factual showing in Phase III. *See
United States v. Gila Valley Irr. Dist.*, 920 F. Supp. 1444, 1454–55 (D. Ariz.
1996), *aff'd*, 117 F.3d 425 (9th Cir. 1997). The water right at issue in this case is a
federal, paramount, real property right that the water agencies have no authority to
undermine. *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water
Dist.,* No. EDCV 13-883-JGB, 2016 WL 2621301, at *7 (C.D. Cal. Feb. 23, 2016);
*Agua Caliente Band of Cahuilla Indians*, 2015 WL 13309103, at *7.[4] And this
Court has unquestionable authority to fashion appropriate injunctive relief to
enforce its prior judgment in Phase III of this case. *United States v. Washington*,
459 F. Supp. 1020, 1115 (W.D. Wash. 1978), *aff'd,* 645 F.2d 749 (9th Cir. 1981);
*see also* 30 Am. Jur. 2d Executions, Etc. § 2 (2017) (collecting cases).

## **BACKGROUND**

On March 7, 2017, the Ninth Circuit affirmed this Court's March 24, 2015
Summary Judgment Order that the Agua Caliente Reservation is a tribal homeland
and that the Tribe may use water underlying the Reservation in furtherance of the
Reservation's purpose as a home now and into the future. *See generally Agua
Caliente Band of Cahuilla Indians*, 849 F.3d 1262. The Ninth Circuit's decision
provides a thorough explication of the Reservation's background, present state, and
enduring purpose. *Id.* at 1266-70. This brief advances arguments that relate to the

---

[4] This too is the law of the case. *See Alexander*, 106 F.3d at 876.

U.S. Brief in Response to Phase II Order
Case No. 5:13-cv-0883-JGB-SP          -5-

quantity and quality of water subject to the right that the Ninth Circuit and this Court have already recognized. *See id.* at 1273 ("[T]o guide the district court in its later analysis, we hold that the creation of the Agua Caliente Reservation carried with it an implied right to use water from the Coachella Valley aquifer"). And this brief's purpose is to assist the Court and parties in resolving issues raised in Defendants' affirmative defenses to the United States' Complaint-In-Intervention.

## **STANDARD**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here—by Order of the Court and agreement of the parties—there is no genuine dispute as to any material fact, because this brief and this phase of this case ("Phase II") concern pure questions of law that arose in the bare legal contentions that Defendants as affirmative defenses to the United States' Complaint-In-Intervention.[5] Summary judgment is an appropriate procedural vehicle to resolve the parties' antagonistic positions on the purely legal matters on which the Court has ordered briefing. *See generally Agua Caliente Band of Cahuilla Indians*, 2016 WL 2621301 (granting summary judgment on many of Defendants' affirmative defenses in the same phase of the same case); *see also Wagner v. Spire Vision*, No. C 13-04952-WHA, 2014 WL 889483, at *4 (N.D. Cal. Mar. 3, 2014); *Disandro v. Makahuena Corp.*, 588 F. Supp. 889, 892 (D. Haw. 1984). The United States is entitled to summary judgment for the reasons set forth in this brief.

## **ARGUMENT**

---

[5] *See* Doc. 73 at 8-9 (advancing legal contentions and claiming that the United States has failed to state claims on which relief can be granted, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure); Doc. 193 (ordering the present briefing on three pure questions of law); Doc. 121 ("In accordance with the parties' wishes, Phase II will address three secondary *questions of law*: (1) whether the Tribe beneficially owns pore space underlying its Reservation; (2) whether the Tribe's groundwater rights include a water quality component; and, upon recent agreement by the parties, (3) the legal standard for quantifying the Tribe's reserved water right.") (emphasis added).

For over one hundred years, the Supreme Court has made clear that the establishment of Indian and other federal reservations also impliedly reserves such previously unappropriated, and thus available, waters as are necessary to accomplish the purposes for which the federal reservation was created. *Winters* v. *United States*, 207 U.S. 564, 576 (1908); *see Cappaert v. United States*, 426 U.S. 128, 139 (1976); *Arizona I*, 373 U.S. at 597-602; *United States* v. *Powers*, 305 U.S. 527, 528 (1939). This case is about an Indian reservation. The well-settled "purposes for all Indian reservations [are] to encourage, assist, and protect [Indians] in their efforts to acquire habits of industry, become self-supporting, and advance in the ways of civilized life." *Territory of Alaska v. Annette Island Packing Co.*, 289 F. 671, 674 (9th Cir. 1923). Put another way, Indian reservations "are the means by which the United States exercises its power and carries into effect its policy to protect . . . Indians and their rights of property." *United States v. Fitzgerald*, 201 F. 295, 296-97 (8th Cir. 1912).

In addition to serving these expansive federal purposes, Indian reservations are also territorial homelands for tribes of people. *See Menominee Tribe of Indians v. United States*, 391 U.S. 404, 405-06 (1968) (Indian reservation is a "home" for people). This principle (the "homeland principle") is at the heart of Indian water rights cases, and has long controlled judicial addressment of Indian water use needs. *See, e.g., Walton*, 647 F.2d at 47 ("The general purpose, to provide a home for the Indians, is a broad one and must be liberally construed."). The Arizona Supreme Court articulated the principle best in *Gila V,* when it concluded:

> We agree with the Supreme Court that the essential purpose of Indian reservations is to provide Native American people with a "permanent home and abiding place," *Winters,* 207 U.S. at 565, that is, a "livable" environment. *Arizona I,* 373 U.S. at 599.

*Gila V*, 201 Ariz. at 313, 35 P.3d at 74. And crucially, the Ninth Circuit recognizes the homeland principle and has applied it to this case. *Agua Caliente Band of*

1  *Cahuilla Indians*, 849 F.3d at 1270 (the "primary purpose underlying the

2  establishment of [Agua Caliente] was to create a home for the Tribe, and water was

3  necessarily implicated in that purpose."). This court likewise recognizes the

4  homeland principle. *Agua Caliente Band of Cahuilla Indians*, 2015 WL 13309103,

5  at \*7 (Agua Caliente, at a minimum, provides the Tribe with a homeland for now

6  and for the future, and the *Winters* doctrine ensures a federal right to water to

7  realize that end.). And this Court has likewise applied it to this case.

8       Two secondary legal questions are now at issue: (1) the legal standard that

9  governs calculation of the amount of water necessary to meet Agua Caliente's

10  present and future needs as a homeland for the Tribe; and (2) whether the Court

11  may protect Agua Caliente's waters from degradation.[6] This memorandum

12  addresses each point in turn.

13  ## I.     QUANTIFICATION STANDARD

14       The parties have agreed to brief the appropriate quantification standard. (*See*

15  Doc. 193); (*see also* Doc. 121). The standard is this: "Agua Caliente, at a

16  minimum, provides the Tribe with a homeland for now and for the future, and the

17  *Winters* doctrine ensures a federal right to water to realize that end." *Agua Caliente*

18  *Band of Cahuilla Indians*, 2015 WL 13309103, at \*7. What remains to be decided

19  is the methodology that the Court should adopt in attempting to account for the

20  fluid and expansive needs of an entire tribe of people—food cultivation, drinking,

21  bathing, washing, cooking, sewer and other municipal purposes, commerce,

22  religious practices, industry, other forms of development—ends for which all

23  communities of people use water.

24

25  [6] DWA's Answer to the United States' Complaint-In-Intervention raised neither of these points.
26  (See Doc. 72). CVWD's Fourth Affirmative Defense cites legal authorities that may provide
guidance on how some courts may try to calculate the amount of water necessary to serve the
27  purposes of federal lands but proposes no legal standard, analytical approach or methodology to
govern quantification of the tribal water right at issue in this case. (See Doc. 73 at 8). CVWD's
28  Fifth Affirmative Defense contends that federal reserved water rights do not provide for water of
a certain quality. (See Doc. 73 at 8-9).

To be sure, the task is "difficult." *Walton*, 647 F.2d at 47. But over the years, Courts have identified principles that should guide the Court's analysis in this case. The Supreme Court's decision in *Arizona I* provides an analytical starting point. That decision teaches that judicial quantification of Indian water rights must be "fair," must be "feasible," and must account for "present" and "future" Indian water use needs. 373 U.S. at 600-01. There, the Supreme Court accepted the special master's calculation of the "practicably irrigable acreage" or "PIA" of the reservations in question—*see* Report of Special Master Simon H. Rifkind, *Arizona v. California*, O.T. 1960, Orig. pp. 257-66 (Dec. 5, 1960) *adopted in relevant part*, *Arizona I*[7]—and concluded that the measure was a fair and feasible way to calculate the present and future irrigation needs of the tribes whose reservations were at issue in that case.[8] That said, PIA is not the "universal measure of Indian Reserved water rights." Report of Special Master Elbert P. Tuttle, *Arizona v. California*, O.T. 1981, Orig. pp. 101-02 (Feb. 22, 1982).[9] And PIA does not capture the nuance necessary to ensure that all Indian reservations in America serve the homeland needs of their resident tribes.[10] The take-away from *Arizona v.*

---

[7] The Rifkind Report is available online at: http://lawcollections.colorado.edu/allfile/201635.pdf.

[8] The Ninth Circuit has likewise adopted PIA as the presumptive measure of irrigation rights. *See United States v. Adair*, 723 F.2d 1394, 1415-16 (9th Cir. 1983).

[9] The Tuttle Report is available online at: http://lawcollections.colorado.edu/allfile/201518.pdf.

[10] *See Alaska Pac. Fisheries v. United States*, 240 F. 274, 281 (9th Cir. 1917) (Not all Indians are agriculturalists and not all Indian reservations are suitable for agriculture); *United States v. Washington*, 375 F. Supp. 2d 1050, 1066-67 (W.D. Wash. 2005) (water is reserved to make reservations livable, "including those portions of [reservations] not suitable for agriculture") *vacated pursuant to settlement sub nom. United States ex rel. Lummi Indian Nation v. Washington*, No. C01-0047Z, 2007 WL 4190400 (W.D. Wash. Nov. 20, 2007), *aff'd sub nom. United States ex rel. Lummi Nation v. Dawson*, 328 F. App'x 462 (9th Cir. 2009); *Gila V*, 201 Ariz. at 317 (stating, "As observed by Special Master Tuttle in his *Arizona II* report, 'the Court [in Arizona I] did not necessarily adopt this standard as the universal measure of Indian reserved water rights ...'") (citation omitted).

1   *California* is simply that the task at hand must fairly and feasibly account for Agua

2   Caliente's present and future water use needs. *Arizona I*, 373 U.S. at 600-01.

3       Subsequent Ninth Circuit cases add to *Arizona I*'s analysis by directing

4   courts to consider (a) the document and circumstances surrounding a given

5   Reservation's creation, (b) the history of the Indians for whom the Reservation was

6   created, and (c) those Indians' need to maintain themselves under changed

7   circumstances. *See, e.g., Walton*, 647 F.2d at 47. In *Walton*, for example, the Ninth

8   Circuit (a) identified the three considerations outlined above, (b) noted the

9   historical, religious and economic importance of fishing to the tribe at issue in that

10  case, (c) observed that that tribe's principal historic Columbia River fishing

11  grounds had been destroyed by dams, and (d) acknowledged reservation of water

12  to support government-assisted fish spawning, establishment of replacement

13  fishing grounds at a nearby lake, and irrigation (measured by PIA). *Walton,* 647

14  F.2d at 47-48. Likewise, in *United States v. Adair,* the Ninth Circuit (a) considered

15  the historical importance of hunting and fishing to the Tribe at issue in that case,

16  (b) considered the document and circumstances surrounding the Klamath

17  Reservation's establishment, (c) acknowledged a federal act terminating that

18  reservation, but (d) nonetheless recognized reservation of water for irrigation needs

19  (measured by PIA), domestic needs, and hunting and fishing needs necessary to

20  provide the Indians that lived on that terminated reservation with a moderate

21  livelihood. *See generally United States v. Adair*, 723 F.2d 1394 (9th Cir. 1983).

22      The Arizona Supreme Court's *Gila V* decision builds on *Walton*'s analysis in

23  at least four ways. First—like the Ninth Circuit's recent decision in this case —the

24  *Gila V* decision concludes that establishment of a permanent homeland is the

25  primary purpose of Indian reservations. *Gila V*, 201 Ariz. at 316 (establishment of

26  a permanent homeland is the primary purpose of Indian reservations) *accord Agua*

27  *Caliente Band of Cahuilla Indians*, 849 F.3d at 1270 (the "primary purpose

28

underlying the establishment of [Agua Caliente] was to create a home for the Tribe, and water was necessarily implicated in that purpose.").

Second, like *Adair* and *Walton*, the *Gila V* decision encourages flexible interpretation of Indian reservation purposes more generally. *Gila V*, 201 Ariz. at 312-17 (providing a thorough, scholarly examination of judicial treatment of Indian reservations' purposes); *see also Adair*, 723 F.2d at 1408 n.13 (encouraging broad interpretation of Indian purposes in furtherance of Indian self-sufficiency); *Walton*, 647 F.2d at 47 n.9 (encouraging broad, flexible, liberal interpretation of Indian purposes because Indian reservations are created for Indians, not just for the government).

Third, to assist courts in calculating the amount of water necessary to effectuate Indian reservations' purposes as homelands for tribes of people, the *Gila V* decision identifies a non-exhaustive list of categories of evidence and subjects that may be relevant to the inquiry. *See Gila V*, 201 Ariz. at 318-20 (identifying culture; geography; economics; past water use; and population trends as categories of evidence that may be relevant to ascertaining water use needs on Indian reservations). Conceptually, most of the specific evidentiary categories that *Gila V* identifies fit within the more general considerations that the Ninth Circuit flagged in *Walton*.

Finally, *Gila V* recognized the crucial importance of adhering to the homeland principle in the twenty-first century:

> Just as the nation's economy has evolved, nothing should prevent tribes from diversifying their economies if they so choose and are reasonably able to do so. The permanent homeland concept allows for this flexibility and practicality. We therefore hold that the purpose of a federal Indian reservation is to serve as a "permanent home and abiding place" to the Native American people living there.

*Gila V,* 201 Ariz. at 315.

In light of the foregoing, the United States requests that the Court hold, that in Phase III, the Court will hear all admissible, relevant evidence of Agua Caliente's present and future needs as a homeland for a tribe of people, including: (1) the executive orders and circumstances surrounding Agua Caliente's establishment,[11] (2) historical evidence of Agua Caliente's water use needs, (3) the Agua Caliente Indians' need to maintain themselves under changed circumstances, (4) evidence of the Tribe's culture and cultural water uses, (5) evidence of the Coachella Valley's topography, geography, and water and other natural resources, (6) evidence of the Tribe's economic base, (7) evidence of the Tribe's past and present water uses, (8) evidence of the Tribe's present and projected population, and (9) all other admissible evidence of facts of consequence in determining Agua Caliente's present and future water use needs as a homeland for a tribe of people. *See Arizona I,* 373 U.S. at 600-01; *Walton,* 647 F.2d at 47; *Gila V,* 201 Ariz. at 316; Fed. R. Evid. 401(b) (Relevant evidence consists of facts "of consequence in determining the action."); Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible.").

The United States appreciates the scope of this request. That scope is commensurate with the water needs of Indian reservations—and of the people who live on those reservations—all across the country. *See* Felix S. Cohen et. al., *Cohen's Handbook of Federal Indian Law* § 19.03[5][c], at 1223-24 (2012) ("Water for a homeland should be reserved to the extent that it is required to develop, preserve, produce, or sustain food and other economic resources of the reservation, whether those were new uses for the tribes or represented the

---

[11] Much of this evidence is already in the record.

continuation of aboriginal ways of life."); *see also United States v. Walker River Irr. Dist.*, 104 F.2d 334, 340 (9th Cir. 1939) (water necessary for "domestic and stock watering purposes and for power purposes" on an Indian reservation); *In re General Adjudication of All Rights to Use Water in Big Horn River Sys.*, 753 P.2d 76, 99 (Wyo. 1988) (water necessary for "municipal, domestic and commercial uses" on an Indian reservation), *aff'd by an equally divided Court, Wyoming v. United States*, 492 U.S. 406 (1989); *Montana ex rel. Greely v. Confederated Salish & Kootenai Tribes,* 712 P.2d 754, 764-65 (Mont. 1985) (water necessary for future uses and "acts of civilization" on an Indian reservation).

Given the complexity of the task at hand, it would be almost impossible for the Court to commit reversible error by hearing as much evidence as it sees fit. *See* Wright & Miller*, 11 Fed. Prac. & Proc. Civ.* § 2885 (2017) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence."). To conclude on this point, the Tribe's present and future water use needs should be put to proof on the Court's terms—consistent with the positions advanced in this brief. That is a "fair" and "feasible" way to account for the Tribe's "present" and "future" water use "needs." *Arizona I*, 373 U.S. at 600-01. And it is the only way that this Court can ensure that those needs will be met in this case. *See Agua Caliente Band of Cahuilla Indians*, 2015 WL 13309103, at *7.

## II.    <u>WATER QUALITY</u>

Again, the United States intervened in this case to "enjoin CVWD and DWA from interfering in any way with the reserved rights, to be decreed by [the] Court, of the Tribe and individual Allottees to groundwater." (Doc. 71). In response, CVWD contends—in its Fifth Affirmative Defense to the United States' Complaint-In-Intervention—that this Court cannot protect reserved waters from

contamination, because the *Winters* doctrine does not permit courts to do that.[12] That defense lacks merit. The United States requests an order rejecting that contention for at least three reasons.

First, Agua Caliente's waters are federal property,[13] and one of the *Winters* doctrine's most fundamental tenets is that no one—without express authority from Congress—can injure federal property. *See Winters v. United States*, 143 F. 740, 748 (9th Cir. 1906) ("when the lands of the government have been legally appropriated or reserved for any purpose, they become severed from the public lands, and…. no subsequent law or sale should be construed to embrace or operate upon them."); *High Country Citizens' All. v. Norton*, 448 F. Supp. 2d 1235, 1248 (D. Colo. 2006) ("a federal reserved water right constitutes property, not just from the time the right is quantified, but from the time the reservation is created. The right arises on the date of the reservation and continues to exist even if it has not been asserted"). Congress alone can prescribe the conditions on which others may obtain rights in federal property. *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405 (1917). And Congress has not done that here.[14] Defendants—who derive their authority from state law, and did not exist when the federal property right at issue in this case arose—have no interest in Agua Caliente's waters, and no authority whatsoever to injure the right at issue in this case.

Second, reserved waters must serve federal and tribal purposes, and conduct that can hinder those purposes' fulfilment—like depleting the water available for

---

[12] Specifically, the purported defense states, in pertinent part: "Assuming arguendo that the Tribe has a reserved water right in groundwater under federal law, the Tribe does not have a reserved right to water of a certain quality." *See* Doc. 73 at 8-9.

[13] *Agua Caliente Band of Cahuilla Indians,* 2016 WL 2621301, at *6.

[14] Only Congress through explicit congressional acts can diminish Indian rights, such as reserved water rights. *See, e.g., Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 202-03 (1999) ("*Mille Lacs Band*"); *United States v. Dion,* 476 U.S. 734, 738-40 (1986); *see also Solem v. Bartlett*, 465 U.S. 463, 470 (1984) (Diminishment cannot be lightly inferred.).

use on an Indian reservation, or degrading the water available for use on an Indian reservation—must be precluded. As the leading treatise on Federal Indian Law explains:

> [I]t is difficult to draw a meaningful distinction between quantity and quality of water for purposes of the *Winters* doctrine. Fulfilling the purposes of Indian reservations depends on the tribes receiving water of adequate quality as well as sufficient quantity.

Felix S. Cohen et. al., *Cohen's Handbook of Federal Indian Law* § 1903[9], at 1236 (Nell Jessup Newton ed., 2012).

Third, even if the Court were to refrain from directly ruling that the Tribe's reserved right has a water quality component, an injunction prohibiting degradation of water subject to the Tribe's right—as the Court has already defined that right—is well within the Court's authority. At a minimum, the Court has adjudged and will decree the existence of a legal right arising under federal law and pursuant to which the Tribe may use water. *Agua Caliente Band of Cahuilla Indians,* 849 F.3d at 1273 ("we hold that the creation of the Agua Caliente Reservation carried with it an implied right to use water from the Coachella Valley aquifer."); *Agua Caliente Band of Cahuilla Indians*, 2015 WL 13309103, at *8 ("the Tribe's federally reserved water rights encompass groundwater underlying the reservation); *see also United States v. Anderson*, 736 F.2d 1358, 1365 (9th Cir. 1984) ("The tribe is, of course, entitled to utilize its water for any lawful purpose."); *Walton*, 647 F.2d at ("When the Tribe has a vested property right in reserved water, it may use it in any lawful manner.").

Since degradation—like depletion and other modes of interference—can frustrate or even eliminate the Tribe's ability to use water,[15] that conduct can

---

[15] *See Deetz v. Carter*, 232 Cal. App. 2d 851, 856 (Cal. Ct. App. 1965) (If quality maintenance requires water in excess of actual consumption, then water right should not be quantitatively limited to actual consumption, but should include excess necessary to maintain quality and effectuate use.) ("Quality as well as quantity is a factor in water use.").

contravene the Court's judgment and may therefore be enjoined upon a proper showing of proof. *See Washington*, 459 F. Supp. at 1115 ("This court has the authority and the duty to protect and effectuate its prior judgments. This court has broad discretion to fashion remedies which will protect and effectuate its earlier rulings, the more so when the public interest and the rights of a large group of people are involved."), *aff'd*, 645 F.2d 749 (9th Cir. 1981), *see also* 30 Am. Jur. 2d Executions, Etc. § 2 (2017) (collecting cases).

Indeed, in *United States v. Gila Valley Irr. Dist. ("GVID")*, the United States District Court for the District of Arizona and Ninth Circuit Court of Appeals granted relief like that sought here. *Compare Gila Valley Irr. Dist. ("GVID I")*, 920 F. Supp. at 1454–55 ("the Court concludes that injunctive relief is required to restore to the Apache Tribe water of sufficient quality to sustain commercial production of the sorts of crops they grew prior to the entry of the Decree.") *aff'd sub nom. United States v. Gila Valley Irr. Dist.("GVID II")*, 117 F.3d 425 (9th Cir. 1997) *with* (Doc. 71) (requesting that the Court enjoin interference with the rights to be decreed in this case). To be sure, the Court's analysis in *GVID* invoked the language of prior appropriation. *See Gila Valley Irr. Dist.*, 920 F. Supp. at 1448 (citing *Atchison v. Peterson*, 87 U.S. 507, 514-15 (1874)). But judicial protection of water rights from degradation is not limited to the prior appropriation context. *See, e.g., Ball v. Nye*, 99 Mass. 582, 584 (1868). Protection of reserved waters does not depend on state-law-based doctrines like prior appropriation. *See Cappaert v. United States*, 426 U.S. 128, 145 (1976). And again, the Court can and should protect Agua Caliente's waters from degradation here, because failure to do so would undermine the Tribe's ability to exercise the right that this Court and the Ninth Circuit have already held the Tribe holds. *See Agua Caliente Band of Cahuilla Indians*, 2015 WL 13309103, at *9; *see also Hopi Tribe v. United States*, 782 F.3d 662, 669 (Fed. Cir. 2015) (the *Winters* Doctrine may give "the United

1   States the power to enjoin others from practices that reduce the quality of water
2   feeding the reservation.").
3       The United States requests that the Court grant summary judgment on the
4   inapplicability of CVWD's Fifth Affirmative Defense to the United States'
5   Complaint-In-Intervention. The United States likewise requests that this Court
6   issue an Order acknowledging this Court's power to enjoin interference with the
7   use and enjoyment of Agua Caliente's waters.

8                        **<u>CONCLUSION</u>**

9       For the reasons set forth above, the United States requests that the Court
10  enter an order consistent with the positions advanced in this brief.

11

12  October 20, 2017                    Respectfully submitted,

13                                          /s/  Yosef M. Negose
14                                      F. PATRICK BARRY, Trial Attorney
15                                      DARON CARREIRO, Trial Attorney
                                        YOSEF M. NEGOSE, Trial Attorney
16                                      Indian Resources Section
17                                      Environment & Natural
                                        Resources Division
18                                      United States Department of Justice
19                                      P.O. Box 7611
20                                      Ben Franklin Station
                                        Washington, DC 20044
21                                      Phone: (202) 353-8596
22                                      Facsimile: (202) 305-0725

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2017, a true and correct copy of the foregoing was served on all counsel of record via the Court's Electronic Case Filing System.

/s/  Yosef Mulugeta Negose