JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
F. PATRICK BARRY, Senior Trial Attorney
patrick.barry@usdoj.gov
DARON T. CARREIRO, Trial Attorney
daron.carreiro@usdoj.gov
YOSEF M. NEGOSE, Trial Attorney
yosef.negose@usdoj.gov
Indian Resources Section (ENRD)
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 353-8596
Facsimile: (202) 305-0725
Attorneys for Plaintiff-Intervenor
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>Plaintiff,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>Defendants. | CASE NO. 5:13-cv-00883-JGB-SPX<br>Judge: Hon. Jesus G. Bernal<br><br>**UNITED STATES' PHASE II RESPONSE BRIEF**<br><br>Filed concurrently with:<br><br>1. U.S. Statement of Disputed Facts<br>2. Declaration and Notice to Show Cause<br><br>DATE:    January 22, 2018<br>DEPT:    Courtroom 1<br>TIME:    9:00 a.m. |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ........................................................................1

ARGUMENT .............................................................................3

   A.  Defendants' Justiciability Arguments Lack Merit ...................................3

      1.  The United States Has Standing to Assert Its Federal Water
         Rights ..................................................................4

      2.  The United States' Claim to Federal Reserved Water Rights is
         Ripe ...................................................................6

   B.  Defendants' Quantification Standard Arguments Lack Merit ..................8

      1.  DWA's Antiquated and Stereotypical Notions of Tribes Lack
         Legal Support and Provide No Basis for Limiting the Federal
         Water Right at Issue in this Case .......................................9

      2.  Defendants Cannot Diminish or Alter a Federal Property Right by
         Purporting to Authorize—and Charge the Tribe for—Use of
         Federal Water .........................................................11

      3.  State Law Has No Bearing on the Quantity of Water that the
         United States Reserved for the Tribe ...................................13

      4.  Hypothetical Railroad Water Rights are Irrelevant to the Matter at
         Hand ..................................................................15

      5.  Allotment and Alienation Do Not Complicate Calculation of the
         Amount of Water that the United States Reserved for the Tribe ..16

      6.  Defendants' Equities Arguments Lack Merit and Ignore the
         Court's Prior Ruling in this Case ......................................18

      7.  Defendants' "Population" Arguments Are Unsupported by Law .18

      8.  Enforcement Issues Are Not Now Before the Court ....................19

   C.  Defendants' Water Quality Arguments Lack Merit ..............................19

      1.  Defendants Provide No Basis for Their Claim of Authority to
         Impair the Quality of Federal Water ...................................21

      2.  DWA's Suggestion that the Sole Remedy for Injury to Federal
         Real Property is a State-Law-Based Claim in State Court Lacks
         Merit ..................................................................23

i

3.  The Court Should Reject Defendants' Choice-of-Law Argument, Which Would Turn a Federal Reserved Right Into One Subordinate to State Law ............................................................23

CONCLUSION ...................................................................................27

# TABLE OF AUTHORITIES

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV 13-883-JGB, 2015 WL 13309103 (C.D. Cal. Mar. 24, 2015) ..13, 14, 17, 27

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262 (9th Cir. 2017) ................................................................. 2, 9, 12, 13

*Arizona v. California*, 373 U.S. 546 (1963) .....................................5, 18, 25

*Arizona v. California*, 376 U.S. 340 (1964) ..................................... 19, 24

*Arizona v. San Carlos Apache Tribe*, 463 U.S. 545 (1983) .................... 3, 6, 15, 26

*Banco Nacional de Cuba* v. *Sabbatino*, 376 U.S. 398 (1964) ...............................24

*Boyle* v. *United Techs. Corp.*, 487 U.S. 500 (1988) ...............................................24

*Camfield v. United States*, 167 U.S. 518 (1897) ................................... 16

*Cappaert v. United States*, 426 U.S. 128 (1976) ......................................... *passim*

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ........................................................................................................... 15

*Colville Confederated Tribes v. Walton*, 460 F. Supp. 1320 (E.D. Wash. 1978) .... 4

*Colville Confederated Tribes v. Walton*, 647 F.2d 42 (9th Cir. 1981) ...... 4, 7, 8, 12

*Colville Confederated Tribes v. Walton*, 752 F.2d 397 (9th Cir. 1985) ............8, 18

*Consumer Financial Prot. Bureau v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) ........5

*DC Comics v. Pacific Pictures Corp.*, No. CV 10-3633 ODW RZX, 2012 WL 4936588 (C.D. Cal. Oct. 17, 2012) ........................................................................20

*DC Comics v. Pacific Pictures Corp.*, 545 F. App'x 678 (9th Cir. 2013) ..............20

*Gordon v. Consumer Financial Prot. Bureau*, 137 S. Ct. 2291 (2017) ..................5

*High Country Citizens' All. v. Norton*, 448 F. Supp. 2d 1235 (D. Colo. 2006) .......7

*John v. United States*, 720 F.3d 1214 (9th Cir. 2013) ............................................19

*Joint Bd. of Control of Flathead, Mission & Jocko Irr. Districts v. United States*, 832 F.2d 1127 (9th Cir. 1987) .............................................................................18

*Kaiser v. CSL Plasma Inc.*, 240 F. Supp. 3d 1129 (W.D. Wash. 2017) ................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................... 16

*Nevada ex rel Shamberger v. United States*, 165 F. Supp. 600 (D. Nev. 1958) ....22

*Oneida Cty., N.Y. v. Oneida Indian Nation of New York State,* 470 U.S. 226 (1985) ..........................................................................................................23, 27

*PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*, 511 U.S. 700 (1994) ..................................................................................................21

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ...........................4

*Skeem v. United States*, 273 F. 93 (9th Cir. 1921) ...............................17

*Sun Yung Lee v. Clarendon*, 453 F. App'x 270 (4th Cir. 2011) ...........................2

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) ....................24

*United States v. Adair,* 723 F.2d 1394 (9th Cir. 1983) ...............................4, 22, 26

*United States v. Anderson*, 736 F.2d 1358 (9th Cir. 1984) ..................................17

*United States v. Braren*, 338 F.3d 971 (9th Cir. 2003) ...........................4

*United States v. California*, 332 U.S. 19 (1947) ...........................5, 7, 23

*United States v. Dist. Court of Eagle*, 401 U.S. 520 (1971) ..................................15

*United States v. Fitzgerald*, 201 F. 295 (8th Cir. 1912) ...........................5

*United States v. Gibson Wine Co.*, No. 1:15-CV-1900-AWI-SKO, 2016 WL 1626988 (E.D. Cal. Apr. 25, 2016) ...........................20

*United States v. Kimbell Foods, Inc.,* 440 U.S. 715 (1979) ...........................27

*United States v. Minnesota*, 270 U.S. 181 (1926) ...........................6

*United States v. New Mexico,* 438 U.S. 696 (1978) ...........................25

*United States v. Powers*, 305 U.S. 527 (1939) ...........................9, 17

*United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690 (1899) ...........26

*United States v. Walker River Irrigation Dist.*, 104 F.2d 334 (9th Cir. 1939) .......18

*Utah Power & Light Co. v. United States*, 243 U.S. 389 (1917) ...........................7

*Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438 (C.D. Cal. 2013) ...........................20

*Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658 (1979) ...........................11

*Washington v. United States*, 444 U.S. 816 (1979) ...........................11

*Wilson v. Omaha Indian Tribe*, 442 U.S. 653 (1979) ...........................25

*Winters v. United States*, 143 F. 740 (9th Cir. 1906) ...........................26

*Winters v. United States*, 207 U.S. 564 (1908) ...........................25

**Federal Statutes**

*Indians*, 25 U.S.C. § 415(a) (2012) ...........................10

25 U.S.C. § 1451 ....................................................................... 11

25 U.S.C. § 1632(a)(5) .............................................................11

25 U.S.C. § 5302 (b) ................................................................11

*Judiciary and Judicial Procedure,* 28 U.S.C. § 1345 (2017) ..............................3, 4

## State Cases

*Antelope Valley Groundwater Cases*, No. 1-05-CV-049053, 2015 WL 13047155
(Cal. Super. Dec. 23, 2015) ......................................................... 8, 15, 16

*Deetz v. Carter*, 232 Cal. App. 2d 851 (Ct. App. 1965) ..........................21

*In re the Gen. Adjudication of All Rights to Use Water in the Gila River System &
Source*, 195 Ariz. 411 (1999) ...................................................... 26

*In re the Gen. Adjudication of All Rights to Use Water in the Gila River System &
Source* , 201 Ariz. 307 (2001) ..................................................... 11

*In re Scott Ranch*, *LLC*, 402 P.3d 1207, 388 Mont. 509, 2017 MT 230 (Mont.
2017) .................................................................................17

*In re Water of Hallett Creek Stream System*, 44 Cal. 3d 448 (1988) ...14, 15, 24, 26

*State ex rel. Greely v. Confederated Salish & Kootenai Tribes of Flathead
Reservation*, 219 Mont. 76, 712 P.2d 754 (1985) ................................. 14

## State Codes

Cal. Water Code § 100-15 (West 2017) .................................................22

Cal. Water Code § 10720.3 (West 2015) .......................................14, 22

Cal. Water Code § 31047 (West 2017)..................................................22

## Law Journals and Reviews

Andrew C. Mergen & Sylvia F. Liu, *A Misplaced Sensitivity: The Draft Opinions
in Wyoming v. United States*, 68 U. Colo. L. Rev. 683 (1997) .................9

## Other Authorities

COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 19.03[9] (Nell Jessup Newton ed.,
2012). ..............................................................................21

## **INTRODUCTION**

The United States holds federally reserved water rights for the benefit of the Agua Caliente Band of Cahuilla Indians ("Agua Caliente" or "Tribe"), including rights to groundwater, and seeks to protect those rights from appropriation and impairment through the actions of the Coachella Valley Water District ("CVWD") and the Desert Water Agency ("DWA"). The United States intervened in this case seeking "a declaration as to the existence and extent of" the federal water rights reserved for Agua Caliente, and seeking to "enjoin CVWD and DWA from interfering" with those rights "in any way." (Doc. 71) (United States' Complaint-In-Intervention).

On June 25, 2014, CVWD and DWA raised affirmative defenses to the United States' Complaint-In-Intervention. (Docs. 72, 73). On June 5, 2017, the Court directed the parties "to meet and confer and jointly propose a scheduling order" through which to address three purely legal issues ("Phase II issues") that Defendants' affirmative defenses and other filings, exchanges and discussions among the parties had raised. (Doc. 180). Those three, purely legal Phase II Issues are: (1) whether the Agua Caliente Band of Cahuilla Indians owns pore space, (2) whether there is a water quality component to Agua Caliente's federal reserved water right, and (3) the appropriate standard to quantify Agua Caliente's federal reserved water right. (Doc. 121).

On August 16, 2017, the parties filed a joint report. (Doc. 192). In that report, CVWD argued for written discovery, depositions, expert witness disclosures, and sequential summary judgment briefing. (Doc. 192 at 12-13). On September 6, 2017, the Court rejected CVWD's requests and directed the parties to file dipositive motions on the purely legal Phase II issues. ("Phase II Order") (Doc. 193). The Court's straightforward directive was consistent with a stipulated agreement that the parties had entered and submitted to the Court on June 9, 2015. (*See* Doc. 121).

On October 20, 2017, Defendants filed two briefs (Defendants' "Phase II Briefs").[1] Those two briefs disregard the parameters of the parties' prior agreement (Doc. 121), the parties' recent joint report to the Court (Doc. 192), and the Court's Phase II Order (Doc. 193) in at least five ways. First, Defendants—throughout their briefs—seek to revisit issues that the parties addressed, and the Courts rejected, in Phase I.[2] Second, Defendants—throughout their briefs—seek to interject issues reserved for Phase III.[3] Third, Defendants—throughout their briefs—misapply, misstate, and conflate the federal and state law that they attempt to invoke.

Fourth, Defendants muddle the record with hundreds of pages of purported facts, two expert witness reports and one declaration from (what appears to be) an in-house expert. *Cf. Sun Yung Lee v. Clarendon*, 453 F. App'x 270, 6-7 (4th Cir. 2011) (Issues involving pure questions of law within the parameters reserved for the district court on a motion for summary judgment are inappropriate subjects for expert testimony.).[4] Fifth, CVWD argues that the Court lacks jurisdiction over the United States' claims to a reserved water right associated with the Agua Caliente Reservation. That argument, which is outside the scope of the Phase II Issues, would have the Court hold that Defendants must be free to misappropriate federal

---

[1] CVWD's Phase II brief is Doc. 200. DWA's Phase II Brief is Doc. 202.

[2] *Compare, e.g.,* Docs. 200 at 20; 202 at 26-27 (advancing state law arguments) *with Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.,* 849 F.3d 1262, 1272 (9th Cir. 2017) (rejecting identical state-law arguments.).

[3] *Compare, e.g., Revised Joint Rule 26(f) Conference Report and Case Management Proposal* (Doc. 48 at 10) ("Phase III of the case will involve quantification of the Tribe's rights to groundwater . . ."); *and Joint Report of the Parties Regarding Phase 2 of Litigation* (Doc. 120 at 3) ("To be clear, all factual issues pertaining to the actual quantification of the right remain reserved for Phase 3; the parties ask the Court only to rule on the legal standard pursuant to which it will proceed with quantification . . .") *with* Doc. 200 at 15-16 (raising enforcement issues that go to, if anything, priority of enforcement *after* Phase III); Doc. 202 at 30 (same).

[4] The United States addresses Defendants' factual submissions separately but pauses to note the impropriety of expert submissions on purely legal questions.

real property rights if those rights—or state-law-based rights that are not before the Court—are not in active use. (*See* Doc. 200 at 12) (contending that there is no "need to know the outer bounds of" the federal property rights at issue in this case, because the Tribe "is not even exercising the state rights it already has.").

In sum, Defendants' Phase II Briefs avoid many of the Phase II issues, while raising extraneous points, none of which is supported by law. The briefs lack merit. The United States requests that the Court deny the relief that Defendants' Phase II Briefs seek.

## **ARGUMENT**

## **A. DEFENDANTS' JUSTICIABILITY ARGUMENTS LACK MERIT.**

CVWD has moved to dismiss Count One of the United States' Complaint-In-Intervention (Doc. 71), which seeks "a declaration as to the existence and extent of [the Agua Caliente Reservation's] reserved right . . .."  (Doc. 71 at 8, ¶ 25); (*see* Doc. 200 at 11-13) (The "Tribe and the United States lack standing to seek quantification."). That motion is at odds with Defendants' past and recent representations to federal courts,[5] as well as the analysis of every federal court that has ever considered federal jurisdiction to hear the United States' federal reserved water rights claims. *See, e.g., Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 559 (1983) ("At the outset of our analysis, a number of propositions are clear. First, the federal courts had jurisdiction here to hear the suits brought both by

---

[5] *See, e.g., CVWD Answer to United States Complaint in Intervention* [in District Court] (Doc. 73 at 2, ¶ 1) ("Defendants admit the Court has jurisdiction over the claims in the Complaint in Intervention pursuant to 28 U.S.C. [§ 1345]"); *Joint Brief of Appellants Coachella Valley Water District., and Desert Water Agency.* [in the Ninth Circuit]*,* (Doc. 24-1, at 1) ("The district court had jurisdiction over plaintiff-intervenor United States' Complaint in Intervention under 28 U.S.C. [§ 1345]."); *Supplemental Brief of Petitioners*, filed on November 6, 2017 in *Coachella Valley Water District v. Agua Caliente Band of Cahuilla Indians*, NO. 17-40, [in the United States Supreme Court] at 2 (addressing water quality) ("CVWD does not argue, and has never argued, that the Tribe lacks standing to press this claim, or that the claim should otherwise be dismissed on justiciability grounds."); *id*. at 3 (addressing depletion) ("the Tribe claims an immediate, ongoing injury from CVWD's continued withdrawal of groundwater from the aquifer, and CVWD has never suggested that the Tribe lacks standing to press it.").

U.S. Phase II Response
Case No. 5:13-cv-0883-JGB-SP                -3-

the United States and the Indian Tribes."); *Cappaert v. United States,* 426 U.S. 128, 135 (1976) ("[F]ederal courts have jurisdiction under 28 U.S.C. § 1345 to adjudicate the water rights claims of the United States"); *United States v. Adair,* 723 F.2d 1394, 1400 (9th Cir. 1983) ("Plainly, the district court had jurisdiction . . . under 28 U.S.C. § 1345 . . . to adjudicate the water rights claims of the United States."); *Colville Confederated Tribes v. Walton*, 460 F. Supp. 1320, 1323 (E.D. Wash. 1978) (28 U.S.C. § 1345 provides jurisdiction to determine reserved water rights for the Colville Indian Reservation) *rev'd. in part and aff'd. in part* 647 F.2d 42 (9th Cir. 1981).[6]

In any event, the motion lacks merit, because the United States has standing to protect its federal reserved water rights, this claim is ripe, and this case is justiciable.[7]

## 1. THE UNITED STATES HAS STANDING TO ASSERT ITS FEDERAL WATER RIGHTS.

Defendants claim that in order to assert a federal reserved water right, a Tribe—or the United States—must demonstrate that it is actually using water at the

---

[6] The Ninth Circuit's decision in *United States v. Braren*, 338 F.3d 971 (2003) is no exception to the above authorities. There, the United States' federal reserved water rights claim was ripe in two parallel proceedings. *Id.* at 973. The federal court of appeals found a lack of prudential ripeness for a collateral attack on a preliminary standard announced in a separate state forum. *Id.* at 976. The court did not, however, address the justiciability of the United States' underlying claim to a reserved water right, which was never in doubt.

[7] CVWD fails to cite an applicable standard. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 & n. 3 (9th Cir. 2004) (discussing different rules and different standards that apply to motions to dismiss). Additionally, although CVWD introduces justiciability by charging that the "Tribe and the United States lack standing," Doc. 200 at 11, CVWD thereafter claims that *only* the Tribe has failed to demonstrate standing and that, therefore, *only* the Tribe's quantification claim should be dismissed. Doc. 200 at 11-13 and at 34 ("The Court should    . . . dismiss the Tribe's quantification and water quality claims for lack of jurisdiction."). Similarly, the Desert Water Agency ("DWA"), challenges only the Tribe's standing to seek quantification, but does not challenge the United States' standing or this Court's jurisdiction to adjudicate and quantify the United States' reserved water rights claims. Indeed, DWA raises no arguments against the United States at all. *See* Doc. 204 at 6 n. 4 (explaining that DWA has not raised quality or quantity-based affirmative defenses to the United States' Complaint-In-Intervention).

time. (Doc. 200 at 11-12; Doc 202 at 28-29). There is no support in law or logic for such an argument. Federal reserved rights include a future use component, which by definition cannot be exercised in the present. *Arizona v. California,* 373 U.S. 546, 600 (1963) ("water . . . intended to satisfy the future as well as the present needs of the Indian Reservation").

Regardless, the United States has standing to protect federal property (including federal reserved water rights), to enforce federal law in federal courts, and to assert its sovereign interests as trustee for Indian tribes. *See, e.g., United States v. California,* 332 U.S. 19, 25 (1947) ("For here there is a claim by the United States, admitted by California, that California has invaded the title or paramount right asserted by the United States.... This alone would sufficiently establish the kind of concrete, actual conflict of which we have jurisdiction under Article III."); *Consumer Fin. Prot. Bureau v. Gordon,* 819 F.3d 1179, 1187 (9th Cir. 2016) (distinguishing the standing analysis that applies to private parties from the standing analysis that applies to the Executive Branch of the Federal Government), *cert. denied,* 137 S. Ct. 2291 (2017); *United States v. Fitzgerald,* 201 F. 295, 296–97 (8th Cir. 1912) (discussing federal government's standing as trustee for Indian tribes) ("The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies.") (collecting cases).

Indeed, the Court recognized these principles in 2014, when the Court affirmed the United States' protectable interest in this litigation:

> As the trustee to Plaintiff's water rights at issue in this action, the United States has a significant protectable interest at the center of this action. Furthermore, courts have recognized that the United States has a governmental interest in protecting tribal trust property…. Disposition of the action may affect the United States' ownership, trust, and governmental interests in the water rights and Agua Caliente Reservation.

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District, et al.,*
162 F.Supp.3d 1053, 1056 (C.D. Cal. 2014) (citation omitted).  Moreover, with
regard to this "protectable interest," *id.*, the Court has found that "the Tribe has
made a strong showing in support of its assertion that it will suffer irreparable
harm[.]" (Doc. 180 at 6). The Court has found further—in the context of lifting a
stay—that delay will "unfairly advantage the water agencies by permitting their
ongoing disregard of the Tribe's rights[,]" and that the Tribe "has provided ample
evidence of the water agencies' overdrafting of the aquifer and impairment of the
Tribe's crucial water resource." *Id.* The Federal Government therefore has
standing—and the power and the duty—to maintain this action and to protect the
federal reserved water right, which it holds for the benefit of the Tribe, from
further impairment:

> [T]he United States has a real and direct interest in the matter presented for
> examination and adjudication. Its interest arises out of its [trust relationship
> with the] Indians, and out of its right to invoke the aid of a court of equity in
> removing unlawful obstacles to the fulfillment of its obligations, and in both
> aspects the interest is one which is vested in it as a sovereign.

*United States v. State of Minnesota*, 270 U.S. 181, 194 (1926) (discussing federal
standing to sue as trustee for tribes); *see also San Carlos,* 463 U.S. at 571
(discussing the "powerful federal interest" in protecting Indian reserved water
rights from "state encroachment"). The Defendants' motions to dismiss the United
States' claim for lack of standing should be denied.

## 2.  THE UNITED STATES' CLAIM TO FEDERAL RESERVED WATER RIGHTS IS RIPE.

CVWD describes the parties' dispute as an "abstract disagreement[]"
without a "specific factual context." (Doc. 200 at 12-13). CVWD contends that this
case is not a "concrete controversy," and that there is "no harm to withholding
adjudication." (Doc. 200 at 13). A similar argument was made and rejected in

*United States v. California.* There, the United States Supreme Court held that conflicting claims of federal and state officials as to which government had a superior right to take or authorize the taking of a natural resource beneath federal land constituted a "concrete conflict[]" and a justiciable "controversy in the classic legal sense" of which federal Courts "have jurisdiction under Article III." *United States v. California,* 332 U.S. at 24-25. The present case is likewise ripe for resolution.

As for factual context, CVWD freely admits—even now—that it plans to continue its overdraft of the basin until at least 2022, and possibly until "2040." (Doc. 200-1) ("CVWD estimates that it will eliminate the Valley's overdraft by 2022."); (Doc 200 at 4, lines 16-22) (Explaining that state law does not require state agencies to sustainably manage groundwater until 2040). Defendants likewise admit that they "comingle" water that has "higher TDS levels" with the federal water at issue in this case. (Doc. 202 at 20, lines 6-12 & n. 6; Doc. 200 at 1) (explaining Defendants' plans to import 645,000 acre-feet of Colorado River Water this year). Defendants lack authority to do these things because Congress alone can prescribe the conditions upon which others may obtain rights in federal property, including federally reserved water, and Congress has not authorized Defendants to have rights in or power over the federally reserved water at issue in this case. *See Walton,* 647 F.2d at 50 (Congress alone possesses the authority to diminish or alter tribal water rights.); *High Country Citizens' All. v. Norton,* 448 F. Supp. 2d 1235, 1248 (D. Colo. 2006) (discussing federal reserved water right) ("Only Congress, and not an executive branch agency, can authorize the disposition of federal property."); *see also Utah Power & Light Co. v. United States,* 243 U.S. 389, 405 (1917) ("[S]tate laws....  have no bearing upon a controversy such as is here presented, save as they may have been adopted or made applicable by Congress.").

As for harm from withholding decision, Defendants' use of and disregard for federal reserved water rights will not stop unless and until the Court stops it. *Antelope Valley Groundwater Cases*, 2015 WL 13047155 at *3 (Cal. Super.) (Dec. 23, 2015) (California case quantifying groundwater rights in overdrafted basin) ("[O]verdraft provides the element of adversity which makes the first party's taking an invasion constituting a basis for injunctive relief to the other party"). Defendants' Phase II Briefs make clear that they contend that state law should regulate and control the Agua Caliente Reservation's federal water even now. (Doc. 200 at 31-33). So this case is ripe. This case is justiciable. The Court should disregard Defendants' attempt to avoid addressing the Phase II issues head-on.

## B. DEFENDANTS' QUANTIFICATION STANDARD ARGUMENTS LACK MERIT.

In their opening briefs, all parties invoke *Walton*.[8] All parties invoke the homeland principle which the United States' opening brief discusses.[9] All parties identify categories of evidence that each party contends the Court should hear in Phase III.[10] And most if not all parties flag reasons why the Court should consider

---

[8] That case counsels Courts to consider Indian communities' need to maintain themselves under changed circumstances, *Walton*, 647 F.2d at 47, and explains that reserved rights "arise without regard to equities that may favor competing water users." *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 405 (9th Cir. 1985).

[9] *See* Doc. 204 at 7-8 (discussing homeland standard); Doc. 202 at 24 ("[T]he homeland standard applies in quantifying the Tribe's reserved right to groundwater."); Doc. 200 at 18 (invoking *Gila V*, the case that the United States' opening brief explains best articulates the homeland standard that applies to this case.); Doc. 203-1 at 13 ("The homeland purpose of the Agua Caliente Reservation supports the quantification of additional water rights to the extent necessary to satisfy that purpose.").

[10] *See, e.g.,* Doc 203-1 at 13 (Court should consider "the arability of the land originally selected and reserved for Agua Caliente"); Doc. 204 at 12 (listing nine non-exhaustive potential categories of evidence the Court should consider in Phase III); Doc. 202 at 19 (encouraging Court to consider the Tribe's future development plans); Doc. 202 at 25-32 (Discussing things that DWA thinks the Court's quantification analysis should consider in Phase III).

evidence of Agua Caliente's practicably irrigable acreage in Phase III.[11] The United States' quantification proposal (Doc. 204 at 4-5) is flexible enough to enable the parties to resolve their remaining, conflicting positions on quantification in Phase III. But for purposes of completing Phase II, no party can properly deny the purely legal quantification standard that applies to this case.

Agua Caliente was reserved as a "home" for the Tribe and to "support an agrarian society." *Agua Caliente Band,* 849 F.3d at 1270.[12] Federal law ensures a federal right to the "amount of water necessary" for those purposes of the Reservation. *See Cappaert,* 426 U.S. at 141. The purely legal quantification standard that applies to this case therefore, is *"the amount of water necessary for Agua Caliente to serve as a home and to support an agrarian society."* That should be the end of the matter. Nevertheless, Defendants raise various additional arguments based on "factors" they claim the Court must consider. As discussed below, none of these arguments has merit.

## 1. DWA'S ANTIQUATED AND STEREOTYPICAL NOTIONS OF TRIBES LACK LEGAL SUPPORT AND PROVIDE NO BASIS

---

[11] *See* Doc. 203-1 at 9 ("The scope of Indian irrigation rights is well settled. It is a right to sufficient water to irrigate all the practicably irrigable acreage on the reservation."); Doc. 200 at 19 ("The Court would begin by determining what Reservation acreage is practicably irrigable [.]"); Doc 204 at 9 n. 8 ("The Ninth Circuit has likewise adopted PIA as the presumptive measure of irrigation rights."); *see also* Doc 202 at 22-23 ("The Supreme Court has held that the standard for quantifying water rights for Indian reservations…. at least as applied to Indian reservations created primarily for agricultural purposes [is the] amount that is necessary to irrigate the 'practicably irrigable acreage' ("PIA") of the reservation."). CVWD's position on this issue relies on speculation derived from a non-precedential dissenting opinion about national forests, and a draft document discovered in the files of the late Justice Thurgood Marshall. Doc. 200 at 18-20 (citing Andrew C. Mergen & Sylvia F. Liu, *A Misplaced Sensitivity: The Draft Opinions in Wyoming v. United States*, 68 U. Colo. L. Rev. 683, 684 (1997)). That speculative view is confusing and misguided. For present purposes, at a minimum, a majority of parties agree that the Court should consider evidence of Agua Caliente's practicably irrigable acreage. And that view—on which DWA alone seems to flounder—makes sense, because food cultivation is essential to Agua Caliente's homeland purpose. *See United States v. Powers*, 305 U.S. 527, 533 (1939) ("Without water productive cultivation has always been impossible.").

[12] DWA agrees with this position. *See* Doc. 202 at 22.

U.S. Phase II Response
Case No. 5:13-cv-0883-JGB-SP         -9-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOR LIMITING THE FEDERAL WATER AT ISSUE IN THIS CASE.**

Defendants contend that the Court should minimize the United States' water rights because leasing and commercial development are "not related to the Tribe's modern homeland needs." (Doc. 202 at 30). Defendants, which seek to minimize the reserved water rights of the Tribe, are not the authority on the Tribe's modern homeland needs. The Tribe is. And federal law firmly supports Agua Caliente's economic advancement since the nineteenth century, at which time "white encroachment" had rendered the Cahuilla's conditions "deplorable," "sadly neglected" and "almost entirely destitute of the means of subsistence." (Doc. 203-1 at 2).

Most prominently, the Indian Long Term Leasing Act refers to Agua Caliente by name and allows the Tribe to lease (with federal approval) lands for up to ninety-nine years:

> for public, religious, educational, recreational, residential or business purposes, including the development or utilization of natural resources in connection with operations under such leases, for grazing purposes, and…. farming purposes.

25 U.S.C. § 415(a). The Act's legislative history establishes that its major purpose was to increase Indian income through land leases. *See* H.R. REP. NO. 1093, 84th Cong., 1st Sess. 1 (1955) ("Because of existing limitations upon the duration of leases many Indian lands which could be profitably developed under long-term leases are idle, and the Indians are deprived of much needed income. Other lands that are leased for shorter periods would bring much higher rentals to the owners if the lands could be leased on a long-term basis. Enactment of H.R. 7157 would remove these unfair restrictions."). And the Act is just one of many that seek to

support Native American engagement in modern commerce.[13] Defendants, in contrast, seek to limit the Agua Caliente Reservation's "modern homeland needs" to antiquated notions of tribes and commerce. *Cf. In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 201 Ariz. 307, 315 (2001) ("Just as the nation's economy has evolved, nothing should prevent tribes from diversifying their economies if they so choose and are reasonably able to do so. The permanent homeland concept allows for this flexibility and practicality."). Defendants' attempts to limit tribal water lack merit and legal support.

## 2. DEFENDANTS CANNOT DIMINISH OR ALTER A FEDERAL PROPERTY RIGHT BY PURPORTING TO AUTHORIZE—AND CHARGE THE TRIBE FOR—USE OF FEDERAL WATER.

Defendants seek to undermine the federal reserved water right by claiming that the Tribe will still have a "moderate living[,]" if Defendants continue to charge the Tribe to deliver federal water to the Tribe. (Doc. 202 at 28-29). Defendants invoke this concept of a "moderate living"—which Defendants base on two words, taken out of context, from a fishing case[14]—in an effort to diminish federal water reserved for the Tribe. (*See* Doc. 202 at 28-29) ("[T]he Tribe purchases water from DWA….. The fact that the Tribe makes no effort to pump groundwater further limits the quantity of groundwater encompassed in the Tribe's

---

[13] *See, e.g.*, 25 U.S.C. § 1632(a)(5) ("[I]t is in the interest of the United States, and it is the policy of the United States, that all Indian communities and Indian homes, new and existing, be provided with safe and adequate water supply systems and sanitary sewage waste disposal systems as soon as possible."); 25 U.S.C. § 5302 (b) ("[T]he United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities" ); 25 U.S.C. § 1451 (Congressional declaration of policy "to help develop and utilize Indian resources, both physical and human, to a point where the Indians will fully exercise responsibility for the utilization and management of their own resources and where they will enjoy a standard of living from their own productive efforts comparable to that enjoyed by non-Indians in neighboring communities").

[14] *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658 (1979), modified sub nom. *Washington v. United States*, 444 U.S. 816 (1979).

U.S. Phase II Response
Case No. 5:13-cv-0883-JGB-SP          -11-

reserved right."). Defendants' past practice of delivering water to the Tribe, however, has no bearing on the scope of the property interest at issue here—the amount of water that the United States reserved for the Tribe. Defendants' reasoning on this point is unsound.

First, Defendants cannot—by baldly claiming power to authorize use of federal water—unilaterally diminish the United States' water rights in this case. *See Walton*, 647 F.2d at 50 (Congress alone possesses the authority to diminish or alter tribal water rights.). Second, even if Defendants genuinely sought to assist the Tribe, that would not alter the United States' reserved water right. *Id.* at 48. (rejecting notion that reserved right to water for spawning fish should be reduced because the federal government provided juvenile fish to the Tribe). Finally, even if the reserved right remained unused, that would not alter or diminish the right. In fact, one of the hallmarks of reserved rights is that they are not lost or altered by non-use. *Agua Caliente Band,* 849 F.3d at 1272 (Non-use of a federal reserved right does not alter its volume or scope.). Defendants concede this. (Doc 200 at 16) ("[O]wners of *Winters* rights…. are entitled to make use of their groundwater rights, even if they have not used them in the past."). And as a practical matter, Defendants' reasoning on this point, if true, would render the United States' rights' quantification impossible, because the rights would grow and shrink in proportion to whatever Defendants saw fit to provide to the Tribe (for a fee).[15]

Defendants' arguments on this point lack merit.

---

[15] The point of the short paragraph that Defendants devote to this topic is a mystery. Perhaps Defendants' theory, though they do not actually articulate it, is that since Agua Caliente purportedly doesn't *pump* water, it does not *need* water. But whether Agua Caliente pumps groundwater itself or pays the Defendants to pump and deliver groundwater, Agua Caliente *uses* groundwater, and Defendants do not contend otherwise. That Agua Caliente uses water clearly demonstrates need, and the amount of water necessary to meet that need is a matter to be determined in Phase III.

### 3. STATE LAW HAS NO BEARING ON THE QUANTITY OF WATER THAT THE UNITED STATES RESERVED FOR THE TRIBE.

Defendants once again reiterate the litany of state-law-based arguments that they lost on before this Court and the Ninth Circuit. In this round of briefs, they contend that "the Tribe is not entitled to any additional water if its existing state-law water rights satisfy its needs," (Doc. 200 at 20), and that the Tribe's state-law-based, overlyer and Whitewater River rights should factor into quantification of the United States' federal water rights. (Doc. 202 at 26-27). The Ninth Circuit rejected those same arguments earlier this year:

> Despite the federal primacy of reserved water rights, the water agencies argue that because (1) the Tribe has a correlative right to groundwater under California law and (2) the Tribe has not drilled for groundwater on its reservation, and (3) because the Tribe is entitled to surface water from the Whitewater River Decree, the Tribe does not need a federal reserved right to prevent the purpose of the reservation from being entirely defeated. Put differently, the water agencies argue that, because the Tribe is already receiving water pursuant to California's correlative rights doctrine and the Whitewater River Decree, a federal reserved right is unnecessary….The water agencies' arguments fail[.]

*Agua Caliente Band,* 849 F.3d at 1272. This Court also has rejected those arguments multiple times. *See, e.g.*, *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 2016 WL 2621301, at *5 (C.D. Cal. Feb. 23, 2016) (rejecting Defendants' state-law-based equities argument) ("[F]ederal water rights … are not dependent upon state law or state procedures ... [and] arise without regard to equities that may favor competing water users."); *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV 13-883-JGB, 2015 WL 13309103 (C.D. Cal. Mar. 24, 2015) (granting Plaintiffs' partial summary

judgment motions) ("Defendants' arguments regarding federal-state relations run counter to both federal and state law."). Even California law cautions Defendants to refrain from violating federal reserved water rights:

> In an adjudication of rights to the use of groundwater…. federally reserved water rights to groundwater shall be respected in full. In case of conflict between federal and state law in that adjudication or management, federal law shall prevail.

Cal. Water Code § 10720.3. Yet Defendants' most recent state-law-based arguments continue to ignore elementary distinctions that the California Supreme Court addressed almost 30 years ago in *In re Water of Hallett Creek Stream Sys*. 44 Cal. 3d 448 (1988).[16] The *Hallett Creek* Court distinguished two types of water rights: (1) "reserved water rights under federal law" for primary reservation purposes; and (2) "rights under California law" for secondary reservation uses. *Id*. at 457. "[T]wo separate grounds" for the "two kinds of rights" exist. *Id*. Federal reserved water rights are constitutional rights with which states cannot interfere. *Id*. at 455 n. 3. Those rights are "sovereign" rights tied to "governmental powers" over the "management", "regulation" and "control" of federal "property." *Id.* at 459. State-law-based rights for secondary uses are different and are not at issue in this case. *See id*. at 455, 460 & n. 3. There are two right types. Those right types are different. They are analytically distinct. And only one is at issue in this case.[17]

---

[16] Counsel for DWA (Roderick E. Walston) represented the State of California in the *Hallett Creek* case.

[17] The scope or existence of state law based rights for secondary uses on Indian reservations is not clear and is not at issue in this case. *See Agua Caliente Band*, 2015 WL 13309103, at *4. ("The Ninth Circuit applies New Mexico's primary use-secondary use distinction to guide the implied reserved water rights analysis involving Indian tribes and reservations, although not necessarily to control it."); *State ex rel. Greely v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 219 Mont. 76, 97 (1985) ("Unlike Indian reserved rights, which include water for future needs and changes in use, federal reserved rights are quantified on the basis of the original, primary purposes of the reservation. Water for secondary purposes is not factored into the quantification.").

This case concerns a federal property right to sufficient water for the Agua Caliente Reservation to serve as a home and to support an agrarian society. The nature and scope of that federal right are "federal questions" to which state laws are substantively irrelevant. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); *United States v. Dist. Court In & For Eagle Cty., Colo.*, 401 U.S. 520, 526 (1971). The Supreme Court has repeatedly stressed that review of federal reserved water rights in federal court deserves scrutiny to protect the federal interest from state encroachment:

> [Any judicial] decision alleged to abridge Indian water rights protected by *federal law* can expect to receive, if brought for review before this Court, a particularized and exacting scrutiny commensurate with the powerful *federal interest* in safeguarding those rights from *state encroachment*.

*San Carlos*, 463 U.S. at 571. (emphases added). California's own courts have long understood this. *See Hallett Creek*, 44 Cal. 3d at 460-61 (State-law-based water rights can fulfill reservation lands' secondary uses, but federal reserved water rights derive from federal law under which "federal reserved lands are entitled to sufficient water to accomplish the purposes for which the lands were reserved"); *Antelope Valley Groundwater Cases*, 2015 WL 13047155 at *2-*3 (applying federal law and straightforwardly protecting a federal reserved water right to groundwater in full); *id*. at 13 (preserving "the United States' right to produce 7,600 [acre-feet per year] at any time for uses consistent with the federal reserved water right, and shield[ing] the United States' water right from… ramp down and pro-rata reduction due to overdraft."). Defendants' state-law-based arguments (*see* Doc. 200 at 20-21; Doc. 202 at 26-28, 30-32) lack merit.

## 4. HYPOTHETICAL RAILROAD WATER RIGHTS ARE IRRELEVANT TO THE MATTER AT HAND.

Defendants contend that "the state-recognized correlative rights of all overlying owners who trace their ownership to the Southern Pacific Railroad"

should be subtracted from the amount of water necessary for the Agua Caliente Reservation to serve as a home and to support and agrarian society. (Doc. 200 at 16). Defendants are mistaken. The federal right to the amount of water necessary for the Agua Caliente Reservation to serve as a home and to support an agrarian society does not depend on the purportedly pre-existing, non-appropriative, state-law-based overlyer rights of defunct railroad companies. *See Camfield v. United States*, 167 U.S. 518, 527 (1897) (railroad grantees were bound to avoid embarrassing or obstructing federal disposition of adjacent lands). Assuming such rights once existed, it is likely that Defendants' aquifer mismanagement has destroyed them.[18] Regardless, the Court can resolve the current parties' conflict without accounting for the hypothetical, non-appropriative, state-law-based rights of former rail companies against whom no party seeks relief. Moreover, even under standards that they themselves cite, Defendants lack standing to assert injury to the purported state-law-based rights of now-defunct railroad companies. (*See* Doc. 200 at 11 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 562 (1992)). The Court should reject Defendants' railroad arguments. (*See* Doc. 200 at 15-16; Doc. 202 at 30).

### 5. ALLOTMENT AND ALIENATION DO NOT COMPLICATE CALCULATION OF THE AMOUNT OF WATER THAT THE UNITED STATES RESERVED FOR THE TRIBE.

The Court should likewise reject Defendants' contention that allotment and alienation should factor into calculation of the amount of water that the United States reserved for the Tribe. (Doc. 202 at 29-30). The United States holds title to the water at issue in this case, and the United States' rights encompass federally-

---

[18] Defendants' aquifer mismanagement may have undermined many Coachella Valley residents' rights under California law. *See Antelope Valley Groundwater Cases*, 2015 WL 13047155 at *3 (California agencies can defeat private rights through prescription by maintaining an open state of overdraft for five or more years); (*but see also* Doc. 200 at 20) (disclaiming CVWD's prescriptive rights under state law by asserting that Coachella Valley Water rights are subject only to safe yield and competing overlyer claims).

created derivative interests in use of the United States' water. (*See* Doc. 71 at 1, ¶1).[19] Defendants tried to dispute the existence of derivative interests in 2014. (*See, e.g.,* Doc. 84-1 at 28) (Alleging that "allottees and lessees on the Tribe's reservation do not have reserved water rights."). The Court rejected Defendants' arguments on this point in 2015. *Agua Caliente Band*, 2015 WL 13309103, at *7 n. 7. (rejecting Defendants' derivative rights arguments). In doing so, the Court explained that: (1) "Indian allottees have a right to use a portion of reserved water;" (2) "the full quantity of water available to the Indian allottee.... may be conveyed to [a] non-Indian purchaser;" and (3) the foregoing "logic surely translates to lessees." *Id.* (citation omitted).

The Court's 2015 analysis of Defendants' renewed arguments finds firm support in many authorities. *See, e.g.*, *United States v. Anderson*, 736 F.2d 1358, 1362 (9th Cir. 1984) ("Winters rights do not cease to exist merely because the land passes out of Indian ownership."); *Skeem v. United States*, 273 F. 93, 96 (9th Cir. 1921)("[W]ater was intended to be permanently reserved for the tracts which the Indians chose not to relinquish, and [] neither the actual leasing of their lands under the authority to lease nor the surrender of possession to the lessees operated to relinquish any water rights in the lands which they so chose to retain."); *In re Scott Ranch, LLC*, 402 P.3d 1207, 1211, 388 Mont. 509, 513, 2017 MT 230, P 16 (Mont., 2017) ("Non-Indian successors to Indian allotment lands thus acquire "*Walton*" rights-a "right to share in reserved waters."). Defendants' paragraph-long attempt to re-litigate this issue (*see* Doc. 202 at 29-30) finds no support in any authority and must fail because it lacks merit.

---

[19] The existence of derivative interests in federal water is well-settled. Congress has recognized in statutes such as Section 7 of the General Allotment Act that the Secretary of the Interior can ensure an equitable sharing of reservation water among Indian residents, 25 U.S.C.A. § 381, and the Supreme Court has held that the allotment of tribal land included "the right to use some portion of tribal waters essential for cultivation[.]" *Powers*, 305 U.S. at 532.

## 6. DEFENDANTS' EQUITIES ARGUMENTS LACK MERIT AND IGNORE THE COURT'S PRIOR RULING IN THIS CASE.

Defendants contend that Agua Caliente's "checkerboard" configuration should prompt the Court to consider equities that may favor competing water users, (Doc. 202 at 29), and that the Court should be "sensitive" to non-Indians in quantifying Agua Caliente's federal reserved water rights. (Doc. 200 at 16-20). The Court has already held that the equitable doctrine of balancing equities does not apply to this case. *Agua Caliente Band,* 2016 WL 2621301, at *5. This Court's earlier ruling was consistent with rulings in multiple federal reserved water rights cases. *See, e.g., Joint Bd. of Control of Flathead, Mission & Jocko Irr. Districts v. United States,* 832 F.2d 1127, 1132 (9th Cir. 1987); *Walton,* 752 F.2d at 405 (reserved rights "arise without regard to equities that may favor competing water users."); *United States v. Walker River Irr. Dist.*, 104 F.2d 334, 339 (9th Cir. 1939) ("The settlers who took up lands in the valleys of the stream were not justified in closing their eyes to the obvious necessities of the Indians already occupying the reservation below."). The Court must therefore reject Defendants' attempt to re-litigate this issue.

## 7. DEFENDANTS' "POPULATION" ARGUMENTS ARE UNSUPPORTED BY LAW.

Defendants tout population as "the most significant factor in quantifying the Tribe's reserved right." (Doc. 202 at 25). But Defendants cite no legal authority or basis for that proposition. The United States Supreme Court squarely rejected the notion of using population as a limit on reserved water rights. *Arizona v. California,* 373 U.S. at 601 ("How many Indians there will be and what their future needs will be can only be guessed.").[20] The Defendants' focus on the Tribe's *past*

---

[20] Indeed, the Supreme Court awarded the Chemehuevi Indian Reservation 11,340 acre-feet of water in its 1964 Decree (based on PIA), notwithstanding the Special Master's findings that "no Indians presently [inhabit] the Reservation" and that the total population "approximated 300 Indians." SPECIAL MASTER REPORT at 86 footnotes omitted, available online at:

and *present* population (Doc. 202 at 25) ignores the requirement that federal reserved water rights accommodate future growth. *See Arizona v. California*, 460 U.S.at 617 (1983) (reiterating the importance of quantifying reserved water rights in ways that account for future reservation needs). Defendants' unsupported population arguments should be rejected.

## 8. ENFORCEMENT ISSUES ARE NOT NOW BEFORE THE COURT.

The nature and scope of Agua Caliente's federal water right does not depend on a given water source's physical susceptibility to the reserved right's eventual enforcement. *See John v. United States*, 720 F.3d 1214, 1231 (9th Cir. 2013) (explaining that reserved rights have no physical location unless and until enforced). Consequently, Defendants' suggestion that the parties should address enforcement issues—like safe yield and surface water availability—now (*see* Doc. 200 at 14-16; 202 at 27-28) is premature. (*See* Doc. 200 at 14, lines 12-16) (Phase III may provide more context for points that CVWD will raise). Enforcement is not yet before the Court.[21]

## C. DEFENDANTS' WATER QUALITY ARGUMENTS LACK MERIT.

Defendants' Phase II Briefs' water quality arguments should be rejected. At the outset, the United States notes that CVWD's fifth purported "affirmative defense" to the United States' Complaint-In-Intervention contains the only statement in the pleadings that directly questions the United States' power to combat Defendants' unauthorized assertion of control over water quality on an Indian reservation. (Doc. 73 at 8-9). That so-called "affirmative defense" (1)

---

http://lawcollections.colorado.edu/allfile/201635.pdf; *see also Arizona v. California*, 376 U.S. 340, 344 (1964).

[21] Enforcement will necessarily address Defendants' profound exceedance of even what Defendants contend may be the basin's present safe yield. *See* Doc. 200 at 4-5 (admitting that Defendants' deliveries exceed safe yield more than 17 times over). But again, enforcement is not yet before the Court.

declares an arbitrary limit on the "reserved rights doctrine," (2) provides no

support for the proposed limit—other than the mere contention that "the United

States' "Complaint fails to state a claim," and (3) leaves Plaintiffs guessing as to

why Defendants assert authority to impair a federal property right. (Doc. 73 at 8-

9).

The "defense" lacks merit. *See Kaiser v. CSL Plasma Inc.*, 240 F. Supp. 3d

1129, 1134 (W.D. Wash. 2017) ("Courts in the Ninth Circuit have routinely held

that "failure to state a claim" is not a proper affirmative defense."); *United States v.*

*Gibson Wine Co.*, No. 1:15-CV-1900-AWI-SKO, 2016 WL 1626988, at *5 (E.D.

Cal. Apr. 25, 2016) ("This Court will not accept fact-barren affirmative defenses or

bare references to doctrines or statutes because such pleadings do not afford fair

notice of the nature of the defense pleaded."); *Vogel v. Huntington Oaks Delaware*

*Partners, LLC*, 291 F.R.D. 438, 441 (C.D. Cal. 2013) ("[T]he Answer provides a

barebones recitation of legal doctrines, leaving [the plaintiff] to guess how they

apply to his claims…. This sort of junk-pleading is unacceptable.").

Further, having moved for summary judgment on the issue, CVWD now

bears the burden of establishing every element of its barebones "water quality

defense" to federal reserved water rights. *See DC Comics v. Pac. Pictures Corp.*,

No. CV 10-3633 ODW RZX, 2012 WL 4936588, at *9 (C.D. Cal. Oct. 17, 2012)

("It is not Plaintiff's duty to disprove Defendants' affirmative defenses, but rather,

it is Defendants who bear the burden of proving the applicability of their

affirmative defenses.") *aff'd,* 545 F. App'x 678 (9th Cir. 2013).

CVWD's Phase II Brief does not do that. DWA's Phase II Brief avoids the

issue.[22] The United States addresses deficiencies in Defendants' water quality

arguments below.

---

[22] DWA does not challenge the United States on this issue, nor can it. *See* Doc. 204 at 6 n. 4
(explaining that DWA has not raised quality or quantity-based affirmative defenses to the United
States' Complaint-In-Intervention).

## 1.  DEFENDANTS PROVIDE NO BASIS FOR THEIR CLAIM OF AUTHORITY TO IMPAIR THE QUALITY OF FEDERAL WATER.

CVWD alleges, in passing, that although the United States may have reserved a quantity of water for the Tribe, "the United States does not join in the Tribe's water-quality claim." (Doc. 200 at 28) (devoting a single sentence to this unsupported statement). DWA likewise contends that "a federal reserved right consists of the right to use water of a certain *quantity* but does not include the right to use water of a certain *quality*." (Doc. 204 at 17). These contentions fail as a matter of law and logic for at least three reasons.

First, quality and quantity are interrelated aspects of water use (and by extension a water right), the distinction between which is artificial in this case. *See* Felix S. Cohen's Handbook of Federal Indian Law § 19.03[9] at (Nell Jessup Newton ed., 2012) ("[I]t is difficult to draw a meaningful distinction between quantity and quality of water for purposes of the *Winters* doctrine. Fulfilling the purposes of Indian reservations depends on the tribes receiving water of adequate quality as well as sufficient quantity."); *see also PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*, 511 U.S. 700, 719 (1994) ("In many cases, water quantity is closely related to water quality; a sufficient lowering of the water quantity in a body of water could destroy all of its designated uses[.]"); *Deetz v. Carter*, 232 Cal. App. 2d 851, 856 (Ct. App. 1965) ("Quality as well as quantity is a factor in water use. If quality maintenance…. calls for a flow in excess of actual consumption, then the priority conferred…. should not be quantitatively limited to actual consumption."). In fact, it is easy to imagine situations in which a large quantity of dirty water might be more harmful than a small quantity of clean water. The quantity and quality of water, therefore, are inextricably intertwined. And Defendants' attempts to deny the quality component fails.

Second, reservation of water is a question of implied federal intent, and intent is inferred to the extent that water is necessary to accomplish the purposes of a given reservation. *Cappaert,* 426 U.S. at 139. The necessity of water to accomplish a reservation's purpose may have as much to do with water quality as it does with water quantity. Since the doctrine is based on necessity, it follows that the United States has reserved power to protect necessary water quality and quantity alike. *See id.* at 143 (rejecting arbitrary groundwater exception to reserved water rights doctrine); *Adair*, 723 F.2d at 1409 ("[T]he scope of the implied right is circumscribed by the necessity that calls for its creation.").

Third, Defendants' suggestion that the United States has no interest in the quality of the United States' water completely ignores this case's record and context. Defendants assert authority to distribute, store, spread, sink, treat, purify, recapture and salvage "any water" including sewage and storm waters for their own use. *See* Cal. Water Code § § 100-15; 31047. The authority Defendants assert derives from the State of California, and cannot exceed that state's authority. The state, however, expressly recognizes that its authority is limited by paramount, federal reserved rights to groundwater. *See* Cal. Water Code § 10720.3. And even if the State did not recognize the limits of its power (and Defendants' derivative power), the Supremacy Clause of the Constitution establishes that Defendants acting pursuant to state law lack authority to impair or interfere with federal use of federal groundwater on federal lands. *See Nevada ex rel. Shamberger v. United States*, 165 F. Supp. 600, 611 (D. Nev. 1958) (the federal government does not require state permission to use federal groundwater on federal lands for federal purposes) ("It is of the very essence of [federal] supremacy to remove all obstacles to [federal] action within [the federal] sphere, and so to modify every power vested in subordinate governments, as to exempt [federal] operations from their own influence."). The federal water at issue here, therefore, is not just "any water" subject to Defendants' state-water-law-based control. *See* Cal. Water Code § §

100-15; 31047. And the United States can "enjoin Defendants from "overdrafting …. *or otherwise infringing upon"* its water in any way. (Doc. 71. at 2-3). The United States has maintained this position since intervening, and the parties have understood this position since before the United States intervened. (*See, e.g.,* Doc. 54 at 12) (describing the water quality component of the Tribe's water right as a "key legal issue in this case" and acknowledging the United States' likely intervention as title-holder to the water at issue in this case.).

## 2. DWA'S SUGGESTION THAT THE SOLE REMEDY FOR INJURY TO FEDERAL REAL PROPERTY IS A STATE-LAW-BASED CLAIM IN STATE COURT LACKS MERIT.

Four years into this litigation, DWA contends that "the Tribe has remedies under California law to prevent Defendant California water agencies from importing lesser quality water that would cause harm to the Tribe's water rights," (Doc. 201 at 21), and suggests that continuing to litigate this case is not "necessary" to "protect primary reservation purposes" "under *New Mexico*." (Doc. 201 at 21). The notion that the sole forum to protect a federal right is a state court lacks legal support. And the claim is absurd in the context of a lawsuit in which the United States is a party, seeking to protect a federal property right held in trust for the benefit of Native Americans. *See Oneida Cty., N.Y. v. Oneida Indian Nation of New York State,* 470 U.S. 226, 234 (1985) (Oneidas can maintain action for violation of possessory rights based on federal common law) ("With the adoption of the Constitution, Indian relations became the exclusive province of federal law."); *United States v. California,* 332 U.S. at 24-25 (United States can seek declaratory and injunctive relief in an original action opposing invasion of sovereign territorial rights.).

## 3. THE COURT SHOULD REJECT DEFENDANTS' CHOICE-OF-LAW ARGUMENT, WHICH WOULD TURN A FEDERAL

**RESERVED RIGHT INTO ONE SUBORDINATE TO STATE
LAW.**

Defendants concede that "courts have held that Indian tribes have rights to
water of a certain quality[,]" (Doc. 202 at 19, lines 7-10), and that "the Tribe's
*Winters* right is [a] federal [right]." (Doc. 200 at 31). Although that should be the
end of the matter, Defendants continue to resist—this time, on choice-of-law
grounds.

Defendants insist that although the United States' reserved water right is
substantively federal, California nuisance law provides the sole standard under
which—and the remedy through which—the Court and United States may protect
that federal right. (Doc. 200 at 31-33). At the outset, neither water quality
standards nor remedies are yet before the Court, so Defendants' arguments on
these points are premature. (*See* Doc. 121 at 1 n. 1) (Identification of the water
quality standard will be determined in Phase III).

Defendants' premature arguments are also contrary to black-letter law and—
if accepted—would turn the *Winters* doctrine on its head. The arguments are
contrary to law because it is well settled that federal rules of decision must govern
questions involving "uniquely federal interests," *Banco Nacional de Cuba* v.
*Sabbatino*, 376 U.S. 398, 426 (1964), "the authority and duties of the United States
as sovereign," *Texas Indus., Inc.* v. *Radcliff Materials, Inc.*, 451 U.S. 630, 641
(1981), and other matters "committed by the Constitution and [federal law] to
federal control[.]" *Boyle* v. *United Techs. Corp.*, 487 U.S. 500, 504 (1988). Federal
reserved water rights questions fall squarely into these categories. *See Hallett
Creek,* 44 Cal. 3d at 459-460 (discussing federal water rights and citing three
clauses of the United States Constitution) ("a close reading of United States
Supreme Court decisions involving water rights disputes between the states and the
federal government reveals that the court has consistently premised its holdings on
the sovereign rights, rather than the proprietary interests, of the United States.").

The United States is in this case to protect its uniquely federal, constitutional, sovereign water rights. *Agua Caliente Band,* 2016 WL 2621301 at *7 (describing the Government's interest in this case as sovereign, not proprietary). So federal rules of decision must govern this case, its standards and its remedies.

Defendants' request that the Court enforce the United States' federal interest in federal water by applying—in Phase III—a California nuisance law standard or remedy is also repugnant to the *Winters* doctrine. For over a century, that doctrine has defined federal reserved water rights in a manner at odds with state law rules. *United States v. New Mexico,* 438 U.S. 696, 715 (1978) (the federal reserved water rights doctrine is an exception to Congress's explicit deference to state law in other areas); *Cappaert,* 426 U.S. at 145 ("determination of reserved water rights is not governed by state law but derives from the federal purpose of the reservation"); *Arizona v. California*, 373 U.S. at 597 (distinguishing states and state rights in interstate water disputes from Indian reservations' federal reserved water rights) ("An Indian Reservation is not a State.... the Indian claims here are governed by the statutes and Executive Orders creating the reservations."); *Winters v. United States*, 207 U.S. 564, 577 (1908) ("The power of the government to reserve the waters and *exempt them from appropriation under the state laws* is not denied, and could not be.") (emphasis added).

Defendants' choice-of-law argument (*see* Doc. 200 at 24) rests on a non-*Winters*-doctrine case in which a neutral state law was borrowed as a federal rule of decision concerning river movement because (1) federal law did not furnish the appropriate rules to govern the case, and (2) a compact had satisfied the United States' interest in the matter—except to the extent that the compact itself came to bear on the question that was posed to the Court. *See Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 672 (1979); *see also id*. at 676 ("the Compact of 1943 settled the location of the interstate boundary, within and without the river; and the question of land ownership within or adjacent to the river is best settled by

reference to local law."). There is no such compact in this case, and federal law, through the *Winters* doctrine, furnishes the rule of decision.

With regard to the *Winters* doctrine, the Supreme Court has noted the "powerful federal interest" in "safeguarding [federal reserved water] rights" from "state encroachment." *San Carlos*, 463 U.S. at 571. Under the *Winters* doctrine, "questions arising from the collision of private rights and reserved rights…. including the volume and scope of particular reserved water rights, are federal questions" to which state law is substantively irrelevant. *Id*. at 571. Under the *Winters* doctrine, "a state cannot, by its legislation, destroy the [water rights] of the United States….so far, at least, as may be necessary for the beneficial uses of the government property." *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 703 (1899). Under the *Winters* doctrine, "[t]he lands of the government have been legally appropriated [and] reserved for [a] purpose," so "*no subsequent law or sale should be construed to embrace or operate upon them,*" *Winters v. United States*, 143 F. 740, 748 (9th Cir. 1906) (emphasis added), and it is "unnecessary…. to review [state statutes and state decisions]." *See id.* at 749.

Most importantly, the *Winters* doctrine provides that "states may not deprive the federal government of water *sufficient* to accomplish the primary purposes of a federal reservation." *Hallett Creek,* 44 Cal. 3d at 459 (emphasis added). Neither law nor logic requires sufficiency to be limited to quantitative concerns alone. And Defendants cannot seriously contend that federal power or implied intent is limited to quantitative concerns alone. *See Cappaert*, 426 U.S. at 143 (implied reservation circumscribed by water's necessity); *Adair*, 723 F.2d at 1409 (same).

The Court should reject Defendants' unsupported, premature, choice-of-law argument for making federal commitments to the Agua Caliente Band of Cahuilla Indians depend on state law rules and remedies. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 195 Ariz. 411, 419 (1999) (rejecting argument that state law should apply to federal reserved groundwater

claims) (citing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29 (1979));[23] *see also Oneida*, 470 U.S. at 241 (refusing to borrow state law rule of decision because doing that would be contrary to federal policy).

## **CONCLUSION**

In Phase I, the Court admonished Defendants for raising arguments that were "largely irrelevant" to the "two discrete questions" that "the parties" had "agreed to address." *Agua Caliente Band*, 2015 WL 13309103 at *6. Defendants' Phase II Briefs likewise raise arguments that are largely irrelevant to the three discrete issues that the parties agreed to address now, and that the Court ordered the parties to address now. (*See* Docs. 193, 192, 121). Those arguments talk past the Phase II issues and misapply, misstate, and conflate federal and state law. They lack merit. The United States respectfully requests that the Court (1) grant the United States' Motion for Summary Judgment (Doc. 204); (2) deny Defendants' Motion for Summary Judgment on their quality-based "affirmative defense" to the United States' federal reserved water right claims; (3) deny Defendants all other relief that they seek—including dismissal on "justiciability" grounds; and (4) permit Plaintiffs to prove the amount of water necessary for Agua Caliente to serve as a home and to support an agrarian society in Phase III.

---

[23] Defendants cite this case favorably. *See* Doc. 202 at 27, line 15.

November 20, 2017

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

 /s/  Yosef M. Negose
F. PATRICK BARRY, Trial Attorney
DARON CARREIRO, Trial Attorney
YOSEF M. NEGOSE, Trial Attorney
Indian Resources Section
Environment & Natural
Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 353-8596
Facsimile: (202) 305-0725

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2017, a true and correct copy of the

foregoing was served on all counsel of record via the Court's Electronic Case

Filing System.


<u>      /s/  Yosef Mulugeta Negose</u>