MARCIA SCULLY, SBN 80648
mscully@mwdh2o.com
ADAM C. KEAR, SBN 207584
akear@mwdh2o.com
JOSEPH A. VANDERHORST, SBN 106441
jvanderhorst@mwdh2o.com
The Metropolitan Water District of Southern California
700 N. Alameda Street, Los Angeles, CA  90012
Telephone:  (213) 217-6327
Facsimile:   (213) 217-6890

Attorneys for Amicus Curiae
THE METROPOLITAN WATER DISTRICT
OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>                              Plaintiff,<br>and<br><br>UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Intervenor,<br>        v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>                    Defendants. | Case No.:  5:13-cv-00883 JGB (SPx)<br>Judge:   Hon. Jesus G. Bernal<br><br>**THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA'S AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS COACHELLA VALLEY WATER DISTRICT'S AND DESERT WATER AGENCY'S DISPOSITIVE MOTIONS ON PHASE 2 ISSUES**<br><br>Phase 2 Hearing Date:<br>Date:     January 22, 2018<br>Time:     9:00 a.m.<br>Dept:     Courtroom 1<br><br>Action Filed: May 14, 2013 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     METROPOLITAN'S INTEREST IN THE PHASE 2 PROCEEDINGS ................. 1

III.    FEDERAL RESERVATIONS DO NOT INCLUDE OWNERSHIP OF
        GROUNDWATER STORAGE CAPACITY IN THE UNDERLYING
        GROUNDWATER BASIN ............................................................................ 2

IV.     FEDERAL RESERVED WATER RIGHTS DO NOT INCLUDE A
        WATER QUALITY COMPONENT ................................................................ 6

# TABLE OF AUTHORITIES

**Cases**

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District,*
   849 F.3d 1262 (9th Cir. 2017) ...................................................................8

*Board of County Commissioners  v. Park County Sportsmen's Ranch, LLP,*
   45 P.3d 693 (Colo. 2002) ..........................................................................6

*Central and West Basin Water Replenish. Dist. v. Southern Cal. Water Co.,*
   109 Cal.App.4th 891(2003) ....................................................................5, 6

*Hopi Tribe v. United States,*
   782 F.3d 662 (Fed. Cir. 2015) ..................................................................8

*Kaiser Aetna v. United States,*
   444 U.S. 164 (1979) ..................................................................................5

**Statutes**

25 U.S. C. §177 .......................................................................................4, 5

# I.    INTRODUCTION

The Metropolitan Water District of Southern California (Metropolitan) is a public agency initially organized in 1928 by a vote of the electorates of thirteen southern California cities.[1]   MWD UWMP, p. 1-6.   Today, Metropolitan has a total of 26 member municipalities and water agencies providing water to about 19 million Californians. MWD UWMP, p. 1-7, Table 1-1.   Approximately half of the water used in Metropolitan's service area consists of local surface and groundwater supplies, with Metropolitan providing supplemental imported water to meet the remaining service area demands.  MWD UWMP, p. 1-6.   Metropolitan's imported water supplies come from the Colorado River through its Colorado River Aqueduct and from the California State Water Project (SWP) through the California Aqueduct.  MWD UWMP, p. 1-18.

# II.    METROPOLITAN'S INTEREST IN THE PHASE 2 PROCEEDINGS

Metropolitan's water rights in, and physical facilities connecting to, the Colorado River and SWP allow it to implement water management programs with the Coachella Valley Water District (CVWD) and Desert Water Agency (DWA).   These programs provide flexibility in water deliveries that are an important aspect of Metropolitan's water management strategy.    The programs include exchanges of Metropolitan's Colorado River water supplies for SWP supplies of CVWD and DWA.   The program allows Metropolitan to make deliveries of Colorado River water for storage in the Coachella Valley groundwater basin and receive SWP water in exchange in future years when needed to meet demands.  MWD UWMP, p. 3-17.  The ability of CVWD and DWA to store the delivered Colorado River water in the Coachella Valley groundwater basin for their own future use is crucial to the continued viability of this program.

The complaint filed by Agua Caliente in this litigation challenges the use of Colorado River water to recharge the Coachella Valley groundwater basin.  Doc. 1, ¶¶47,

---

[1] Metropolitan's water management programs are described in its Urban Water Management Plan (MWD UWMP).  This report is statutorily mandated by California's Urban Water Management Act (Cal. Water Code §§10610 et seq.).   The MWD UWMP is available online at http://www.mwdh2o.com/PDF_About_Your_Water/2.4.2_Regional_Urban_Water_Management_Plan.pdf

54, 74.  Agua Caliente further alleges that it has an ownership interest in "pore space" underlying the Tribe's Reservation giving it a paramount right to store water in the groundwater basin.  Doc. 1, ¶¶55, 66, 75.  These allegations pose a potential risk to the CVWD and DWA groundwater storage of Colorado River water that is essential to the continued operation of Metropolitan's exchange and storage program.

Although Metropolitan has followed the litigation since its inception, Metropolitan did not have an interest in the Phase 1 proceeding to determine whether the Agua Caliente possesses a federal reserved water right in the groundwater underlying the Reservation.   Metropolitan has no interest in the native groundwater supplies in the Coachella Valley to which any reserved water right would attach.   However, Metropolitan does have an interest in two issues that are to be decided in Phase 2.  Those issues as defined by the Court's order on Phase 2 dispositive motions are:   1) Whether the Agua Caliente owns pore space underlying its Reservation; and 2) whether there is a water quality component to Agua Caliente's federal reserved water right.

Metropolitan's amicus brief in support of the position taken by defendants CVWD and DWA addresses these two issues.

### III.   FEDERAL RESERVATIONS DO NOT INCLUDE OWNERSHIP OF GROUNDWATER STORAGE CAPACITY IN THE UNDERLYING GROUNDWATER BASIN

The first issue in the Court's order for Phase 2 dispositive motions is "whether the Agua Caliente … owns pore space underlying its Reservation."  Doc. 193.  The Agua Caliente asserts such ownership exists as a "constituent element" of ownership of the federal reservation.  Doc. 203-1:25.  The position of the United States is set forth in a footnote and, although ambiguous, suggests that any third party use tribal reserved lands is statutorily prohibited without authorization under federal law.  Doc. 204:6, fn. 1.  The CVWD and DWA argue that the rule in the western United States is that groundwater basins are a public commons or resource in which there can be no exclusive ownership even on the part of federal overlying landowners.   Adoption of a special rule for ownership of groundwater storage applicable only to federal reserved lands would

interfere with water management programs across the arid west, including Metropolitan's programs with CVWD and DWA.   Because there is no basis for adopting a separate federal property rule, Metropolitan supports the legal arguments of CVWD and DWA.

Metropolitan relies on agreements with CVWD and DWA to deliver Colorado River water in exchange for those agencies' supplies of SWP water.   These agreements allow Metropolitan to "pre-deliver" Colorado River water in advance of the exchange for State Project water.   "By delivering enough water in advance to cover Metropolitan's exchange obligations, Metropolitan is able to receive [DWA] and CVWD's available SWP supplies in years in which Metropolitan's supplies are insufficient without having to deliver an equivalent amount of Colorado River water.   This program allows Metropolitan to maximize delivery of SWP and Colorado River water in such years." MWD UWMP, p. 3-17.

The exchange program with CVWD and DWA is not the only groundwater storage program that Metropolitan uses.   In addition, it operates groundwater storage programs both without and within its service area.   MWD UWMP, ch. 3.3, 3.5, 3.6.   These programs are an important part of Metropolitan's overall water management approach.

"Metropolitan has a long history of managing the wide fluctuations of SWP supplies from year to year by forming partnerships with Central Valley agricultural districts along the California Aqueduct, as well as with other Southern California SWP Contractors.   These partnerships allow Metropolitan to store its SWP supplies during wetter years for return in future drier years."  MWD UWMP, p. 3-24.

In addition, Metropolitan has implemented cyclic storage and conjunctive use programs within its service area to allow flexibility in the joint use of surface and groundwater supplies.   MWD UWMP, p. 3-65.   Cyclic storage works similarly to the CVWD-DWA program in that Metropolitan pre-delivers water to a groundwater basin "making best use of available capacity in conveyance pipelines, use of storm channels for delivery to spreading basins, and spreading basins."  *Id*.   The water is then withdrawn at a future time when demands cannot otherwise be met.   Conjunctive use allows

Metropolitan to increase groundwater storage in two ways:  1) delivery of imported water directly to water storage facilities for spreading or injection into groundwater basins, and 2) delivery of imported water for immediate consumptive use in exchange for the retail water supplier's agreement to forego pulling water from groundwater storage to meet immediate demands.  *Id*.  "Metropolitan has drawn on dry-year supply from cyclic storage accounts and nine contractual conjunctive use storage programs to address shortages from the SWP and the [Colorado River Aqueduct]."  *Id*.

A ruling establishing for the first time a federal property right in the Coachella Valley groundwater basin would put the continued viability of the CVWD-DWA exchange program at risk of being limited or terminated by claims of interference or use without consent of the federal property right in the underlying groundwater basin.  The United States suggests that use of the storage space below a federal reservation cannot occur without congressional consent, which has not been given.  Doc. 204:6, fn. 1; Doc. 218:16.  Claims of unauthorized use of federal lands through recharging of groundwater basins could arise not only from tribal reservations, but from military installations, national forests, federal wildlife refuges, and similar federal reservations.

The legal arguments of Agua Caliente and the United States are internally inconsistent as well as inconsistent with other legal precepts of property law.  Both argue that ownership of the federal land includes ownership of what lies below the surface.  The United States cites to statutory restrictions on use of tribal lands to imply that any third party use of the groundwater storage space under the Agua Caliente Reservation without federal consent is unlawful.  Doc. 204:6, fn. 1 (citing 25 U.S.C. §177).  If there were a federally-based property right to groundwater storage space under federal lands, the United States' position would justify arguing for the right to exclude third parties from the use of that space.  *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979) ("one of the most essential sticks in the bundle of rights that are commonly characterized as property – the right to exclude others.")  But there is no federal authority to support the asserted exclusive right to groundwater storage, only a right to underlying minerals.

In contrast, the Agua Caliente does not claim that its purported property interest is exclusive.  Doc. 209:38.  Recognizing the "hydrologic reality" that water moves without regard to property boundaries, the Agua Caliente disclaim "an unqualified right to exclude water introduced into the aquifer" or "monetary compensation" for the recharge that moves under the Reservation.  Doc. 209:38.  This argument is inconsistent with the claim of "ownership" of the underlying storage space, but comports with the rule in western states cited by CVWD and DWA that groundwater basins are a public resource that are not part of the bundle of property rights included in land ownership.

Adoption of the United States' legal position would disregard the "hydrologic reality" and would also make the Agua Caliente disclaimers meaningless.  If there is a federal ownership interest in the underground storage, the Agua Caliente cannot allow the use of that property interest without federal approval.  25 U.S.C. §177.

Notwithstanding the disclaimer that it is seeking compensation for use of the groundwater basin, the Agua Caliente also argues that it may use its asserted ownership of storage capacity to implement a commercial groundwater banking arrangement.  Doc. 209:38.  Under the Agua Caliente's approach, all the federal reservation lands overlying the Coachella groundwater basin would have exclusive, marketable storage rights while the non-federal overlying lands are governed by the public resource rule spelled out in *Central and West Basin Water Replenish. Dist. v. Southern Cal. Water Co.*, 109 Cal.App.4[th] 891, 904-905 (2003).  Implementing the commercial groundwater banking arrangement will necessarily involve water that spreads outside the federal reserved lands because the basin is not bounded by the boundary of those lands.  Similarly, water banked under non-federal lands will spread under the reservation lands triggering claims for interference and compensation.  This approach establishes inconsistent and potentially conflicting management of the basin.  If the position asserted by the Agua Caliente and United States were adopted as a rule of federal law, the issues created by conflicting property rights would apply not only in the Coachella Valley, but across the western United States.

5

1    Metropolitan supports the legal arguments presented by CVWD and DWA that
2  groundwater basins are a public resource that are not owned by the overlying landowners.
3  This rule is supported by well-reasoned decisions of state courts cited by CVWD and
4  DWA.  *Central and West Basin Water Replenish. Dist., supra; Board of County*
5  *Commissioners  v. Park County Sportsmen's Ranch, LLP,* 45 P.3d 693, 707 (Colo. 2002)
6  ("neither surface water, nor ground water, nor the use rights thereto, nor the water-
7  bearing capacity of natural formations belong to the landowner as a stick in the property
8  rights bundle.")  The public resource rule provides for a uniform, workable approach to
9  the management of storage space in groundwater basins and should be applied to federal
10  reservations.

## IV.   FEDERAL RESERVED WATER RIGHTS DO NOT INCLUDE A WATER QUALITY COMPONENT

13    The second issue in the Court's order for Phase 2 dispositive motions is "whether
14  there is a water quality component to Agua Caliente's federal reserved water right."  Doc.
15  193.  The Agua Caliente and the United States argue that water quantity and quality
16  cannot be separated, and that the protection of the water quality is inherently necessary to
17  ensure it can be put to the uses intended on the reserved lands.  CVWD and DWA
18  counter that there is no water quality component inherent in the implied reservation for
19  federal use, but that the basis for protecting the usability of the water right must be found
20  in other legal doctrines.

21    The position of the United States and the Agua Caliente present a serious risk to
22  groundwater management programs across the western United States.  As in the
23  Coachella Valley, many groundwater basins are shared by numerous overlying users,
24  some of which are federal reservations.   As noted by CVWD and DWA, the parties that
25  share the water resource have legal remedies based in common law for actions of third
26  parties that impair the quality to an extent that damages the ability to put the water to use.
27  The Agua Caliente and the United States assert that federal reserved water comes with an
28  inherent property right against any "degradation" or infringement upon its water "in any

6

way."  Doc. 203-1:24; Doc. 211:29.  The United States goes so far as to threaten federal criminal prosecution for any injury to reserved water rights.  Doc. 218:15, fn. 18.

There would clearly be harm to the numerous non-federal groundwater users from adoption of the United States' and Agua Caliente's position.  Storage of imported water in any groundwater basin with overlying federal reservations invites litigation, and potentially criminal prosecution, over asserted degradation even in the absence of actual harm.  The water exchange program between Metropolitan and CVWD-DWA would be at risk if the federal reserved rights in the Coachella groundwater basin include a prohibition against any change in water quality without federal consent.  The same risk would apply to other groundwater basins that are part of Metropolitan's water management as described above.

California also encourages use of recycled water to extend supplies as much as possible.[2]  Metropolitan supports the expanded use of recycled water within its service area.  MWD UWMP, p. 3-46.  One way to put recycled water to use is through recharging groundwater basins and 158,000 acre-feet per year of recycled water is used to recharge and protect groundwater basins within Metropolitan's service area.  MWD UWMP, p. 3-49, Table 3-9.  The introduction of recycled water into a groundwater basin with overlying federal reserved lands would be at risk under the rule proposed by Agua Caliente and the United States.

The legal position presented by CVWD and DWA provides an approach that is both consistent with federal law and avoids the risks posed by the federal position.  The federal case law makes clear that the implied reservation of water attaches only to unappropriated waters appurtenant to the federal lands.  "[T]he *Winters* doctrine only applies in certain situations:  it only reserves water to the extent it is necessary to accomplish the purpose of the reservation, and it only reserves water if it is appurtenant

---

[2]   The California State Water Resources Control Board adopted a Recycled Water Policy that encourages the use of recycled water.  The Board amended its policy in 2013 to call for an increase in its target levels for the use of recycled water by at least one million acre-feet per year by 2020.  The Recycled Water Policy as revised is available at https://www.waterboards.ca.gov/water_issues/programs/water_recycling_policy/docs/rwp_revtoc.pdf

METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA'S AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS COACHELLA VALLEY WATER DISTRICT'S AND DESERT WATER AGENCY'S DISPOSITIVE MOTIONS ON PHASE 2 ISSUES

to the withdrawn land." *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water District*, 849 F.3d 1262, 1268 (9th Cir. 2017).  The federal reserved water right does not attach to imported or other introduced water supplies, but only to the native appurtenant waters.   The reserved right does not include a requirement that the natural condition of the appurtenant waters meet any specific level of quality, even if the natural water quality affects its usefulness for reservation purposes.  In *Hopi Tribe v. United States*, 782 F.3d 662 (Fed. Cir. 2015), the court rejected the argument that the reserved water rights included a water quality standard to make groundwater laced with naturally-occurring arsenic meet drinking water standards.   "[The *Winters* doctrine] does not, however, give the United States responsibility for the quality of water within the reservation, *independent of any third-party diversion or contamination*."   *Id*. at 669 (emphasis added).  Thus, the federal reserved water right does not include an inherent water quality standard.

CVWD and DWA point out that case law reflects the availability of legal remedies to protect a water right from being unreasonably impaired by the actions of third parties.  Doc. 200:43; Doc. 202-1:28.  This rule is consistent with the *Hopi* decision that it is third party actions, not the native water quality, that may trigger legal remedies to protect the use of a water right.  The legal right to protect the reasonable, beneficial uses to which water may be put provides a remedy for the federal reserved rights holder that is applicable to all water rights holders.  It is not derived from the fact that the *Winters* doctrine is the source of the water right.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Metropolitan supports the application of the generally applicable legal remedies for any infringements on the use of the Agua Caliente's reserved water right due to changes in quality resulting from third-party actions.

Dated: January 11, 2018

THE METROPOLITAN WATER DISTRICT OF
SOUTHERN CALIFORNIA
MARCIA SCULLY
ADAM C. KEAR
JOSEPH A. VANDERHORST


By:   */s/ Joseph A. Vanderhorst*
      Joseph A. Vanderhorst

Attorneys for Amicus Curiae
THE METROPOLITAN WATER DISTRICT OF
SOUTHERN CALIFORNIA

METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA'S AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS COACHELLA VALLEY WATER DISTRICT'S AND DESERT WATER AGENCY'S DISPOSITIVE MOTIONS ON PHASE 2 ISSUES