RODERICK E. WALSTON, Bar No. 32675
roderick.walson@bbklaw.com
ARTHUR L. LITTLEWORTH, Bar No. 22041
arthur.littleworth@bbklaw.com
PIERO C. DALLARDA, Bar No. 181497
piero.dallarda@bbklaw.com
MICHAEL T. RIDDELL, Bar No. 72373
michael.riddell@bbklaw.com
HOLLAND P. STEWART, Bar No. 317028
holland.stewart@bbklaw.com
Best Best & Krieger LLP
3390 University Avenue, 5th Floor
P.O. Box 1028
Riverside, CA 92502
Telephone: (951) 686-1450
Facsimile: (951) 686-3083

Attorneys for Defendant
DESERT WATER AGENCY

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| AGUA CALIENTE BAND OF CAHUILLA INDIANS,<br><br>Plaintiff,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>COACHELLA VALLEY WATER DISTRICT, et al.,<br><br>Defendants. | Case No. 5:13-cv-00883-JGB(SPx)<br><br>Judge: Hon. Jesus G. Bernal<br><br>**DESERT WATER AGENCY'S SUPPLEMENTAL REPLY BRIEF ON STANDING**<br><br>Dept.: Courtroom 1<br>Hearing: Not Set<br><br>Action Filed: May 14, 2013 |

DWA'S SUPP. REPLY
BRIEF ON STANDING
5:13-CV-00883-JGB

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

I. THE TRIBE HAS NOT PROPERLY DESCRIBED THE NATURE OF ITS BURDEN TO ESTABLISH STANDING .........................................1

II. THE TRIBE HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO ASSERT ITS WATER QUALITY CLAIM ......................1

III. THE TRIBE HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO ASSERT ITS PORE SPACE OWNERSHIP CLAIM ........4

IV. THE TRIBE HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO ASSERT ITS QUANTIFICATION CLAIM .....................6

V. THE UNITED STATES' "STATEMENT" CONCERNING ARTICLE III STANDING IS MISPLACED .............................................................8

CONCLUSION ....................................................................................................10

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Agua Caliente Tribe v. CVWD, et al.*
 848 F.3d 1262 (9th Cir. 2017) ................................................................................ 9

*Arizona v. California*
 373 U.S. 546 (1963) ............................................................................................ 6, 7

*Cramer v. United States*
 261 U.S. 219 (1923). Dkt. 286 at 2 ........................................................................ 1

*Crow Creek Sioux Tribe v. United States*
 900 F.3d 1350 (Fed. Cir. 2018) .............................................................................. 5

*In re Debs*
 158 U.S. 564 (1895) ................................................................................................ 1

*FW/PBS, Inc. v. City of Dallas*
 493 U.S. 215 (1990) ................................................................................................ 4

*Jenkins v. McKeithen*
 395 U.S. 411 (1969) ................................................................................................ 4

*Lujan. Avista Corp. v. Sanders County*
 405 Fed.Appx. 225 (9th Cir. 2010) ........................................................................ 5

*Lujan v. Defenders of Wildlife*
 504 U.S. 555 (1992) .................................................................................... 1, 2, 5, 9

*MedImmune, Inc. v. Genentech, Inc.*
 549 U.S. 118 (2007) ................................................................................................ 5

*Sturgeon v. Frost*
 872 F.3d 927 (9th Cir. 2017) .................................................................................. 5

*Summers v. Earth Island Inst.*
 555 U.S. 488 (2009) ........................................................................................ 1, 2, 5

*United States v. Adair*
 723 F.2d 1394 (9th Cir. 1984) ................................................................................ 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*United States v. Ahtanum Irr. Dist.*
   236 F.2d 321 (9th Cir. 1956) ................................................................... 7

*United States v. Braren*
   338 F.3d 971 (9th Cir. 2003) .................................................................... 7

*Valley Forge Christian College v. Americans United*
   454 U.S. 464 (1982) ................................................................................. 2

*Warth v. Seldin*
   422 U.S. 490 (1975) ................................................................................. 3

**Statutes**

Cal. Health & Saf. Code § 116275(f) ............................................................ 3

**Regulations**

22 C.C.R. § 64449 ......................................................................................... 3

40 C.F.R. § 143.1 .......................................................................................... 3

# INTRODUCTION

The Agua Caliente Band of Cahuilla Indians' ("Tribe") brief in response to Desert Water Agency's ("DWA") brief falls far short of demonstrating that the Tribe has standing to maintain its Phase 2 claims. The Tribe's brief simply reiterates the Tribe's previous arguments, calls the testimony of its own expert, on which the Tribe no longer relies, "irrelevant," and mischaracterizes the law of water quality. Although the Tribe attempts at this late date to recast its action as one to quiet title rather than for declaratory and injunctive relief, the Tribe is still required to show "injury in fact" even if its action is treated as a quiet title action. The Tribe has not presented *any* evidence showing it has suffered an "injury in fact," thus failing to sustain its burden of showing that it has standing to maintain its claims.

## I. THE TRIBE HAS NOT PROPERLY DESCRIBED THE NATURE OF ITS BURDEN TO ESTABLISH STANDING

The Tribe has not properly described the nature of its burden to demonstrate standing. Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), the Tribe states that its evidence at the summary judgment stage must be "taken to be true," Dkt. 289 at 14, 19, and thus the Tribe faces a "relatively low bar for demonstrating injury at this stage." *Id*. at 18. *Lujan* held, however, that the plaintiff bears the burden at the summary judgment stage of showing "specific facts" that it has suffered a "concrete and particularized" injury that is "actual or imminent," is fairly traceable to the defendant's conduct, and can be redressed by a favorable decision. *Lujan*, 504 U.S. at 561; *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Thus, the Tribe's burden is much heavier than depicted by the Tribe. As we argue, the Tribe has not met its burden of showing "specific facts" that it has suffered a concrete and particularized injury, as required by *Lujan*.

## II. THE TRIBE HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO ASSERT ITS WATER QUALITY CLAIM

The Tribe argues that it suffers concrete harm because the Water Agencies import Colorado River water with higher total dissolved solids (TDS) levels than

the native groundwater. Dkt. 289 at 15-16. The Tribe has not, however, shown "specific facts" that the TDS levels have caused the Tribe to suffer actual or imminent concrete harm; the Tribe has not shown, for example, that the TDS levels have prevented the Tribe from performing any activity or function, or have caused harm to the Tribe's property or interests, or have caused the Tribe to suffer any financial, pecuniary or economic loss. The Tribe's expert, Mr. Page—whose testimony, although no longer relied on by the Tribe, is before this Court and has not been excluded, Dkt. 298 at 9-10—has acknowledged that he is unaware of any injury suffered by the Tribe as a result of the TDS of the imported water. Dkt. 277-4, at 145:19-146:16, 149:10-18; Dkt. 287 at 8-9. In fact, the Tribe has not even shown that any increased TDS levels are the result of the imported water, rather than the result of the Tribe's activities on the reservation, such as wastewater, runoffs and contamination generated by the Tribe's successful enterprises that include casinos, hotels, a golf course, and agricultural activities. *Id.*[1]

Unable to show concrete harm as required by *Lujan*, the Tribe instead claims, without evidence, that it suffers from more generalized and conjectural harm—that water quality is an "area of concern" to the Tribe, that tribal members' future lives "will be less enjoyable, including aesthetic satisfaction," and that they will suffer "*if* the area in question becomes environmentally degraded." Dkt. 289 at 14 (emphasis added). *Lujan*, however, held that the plaintiff must show concrete harm that is "actual or imminent" and not "conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "Generalized grievances" are insufficient to establish standing. *Valley Forge*

---

[1] According to the Tribe, the TDS of the imported water has averaged 636 mg/l since 1973, and the TDS at two wells tribally-monitored wells recently measured 580 mg/l and 450 mg/l. Dkt. 289 at 15-16. The fact that the TDS at a tribally-monitored well has decreased from above 500 mg/l to 450 mg/l in the most recent measurement supports the Water Agencies' contention that they are reducing TDS levels rather than, as contended by the Tribe, increasing them.

*Christian College v. Americans United*, 454 U.S. 464, (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  The Tribe's unsupported allegation that it *may* suffer hypothetical and conjectural harm in an "area of concern" to the Tribe is insufficient to establish standing.  This Court has afforded the Tribe every opportunity to demonstrate an actual or imminent concrete injury, but the Tribe has failed to do so for the simple reason that it has suffered no such injury.

The Tribe contends it suffers concrete harm because the imported Colorado River water has caused TDS levels in groundwater to exceed 500 mg/l, which, the Tribe asserts, exceeds the secondary maximum contaminant level (MCL) for TDS established by California and the United States.  Dkt. 289 at 15.  The federal MCL standards, however, are "not Federally enforceable but are intended as guidelines for the States."  40 C.F.R. § 143.1.  California, implementing the federal standard, has adopted a secondary MCL for TDS consisting of a "range"—500 mg/l ("recommended"), 1,000 mg/l ("upper"), and 1,500 ("short term").  22 C.C.R. § 64449.  Water within this range is "permissible."  Cal. Health & Saf. Code § 116275(f).  Although the goal is 500 mg/l, water is permissible if the TDS does not exceed the "upper" limit of 1,000 mg/l, and even 1,500 mg/l in the short term.

The undisputed evidence is that the water that DWA delivers to its customers, including the Tribe, has an average TDS of 370 mg/l, which is well below the "recommended" secondary MCL of 500 mg/l established under the California standard.  Dkt. 246-2 at 3.  But even assuming that the TDS is in the range depicted by the Tribe—in excess of 500 mg/l at some locations, and even as high as 580 mg/l or 636 mg/l—the TDS is still far below the "upper" limit of 1,000 mg/l established under the State standard.  Thus, even under the Tribe's argument, the water is entirely safe for drinking and other beneficial uses, does not cause public health problems or concerns, and is not unaesthetic in terms of odor or taste.[2]

---

[2] Although the Tribe notes that Metropolitan Water District has established a "goal" of delivering water not exceeding 500 mg/l of TDS, Dkt. 289 15 n. 9, water that

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

The Tribe argues that the California MCL standard for TDS does not apply to the Tribe because state law does not govern federal reserved water rights. Dkt. 298 at 6-7. The Tribe misses the point of why the California standard is relevant here. The issue is not whether the Tribe is required to comply with the California standard (although DWA believes the Tribe is required to comply because the California standard implements the federal standard). Rather, the California standard demonstrates that water not exceeding 1,000 mg/l in TDS—or even 1,500 mg/l in the short term—is *objectively* safe for drinking and other beneficial uses in California, which defeats the Tribe's argument that it suffers concrete harm simply because the TDS levels of the imported recharge water are in the range of 500-600 mg/l. Since the imported water meets the California MCL standard for TDS, there is no basis for the Tribe's unsupported assertion that the imported water causes the Tribe to suffer concrete harm.

The Tribe also contends that Phase 2 addresses only whether the Tribe's reserved right includes a water quality component, and that the "identification" of the water quality standard and the "quantification" of water quality will be addressed in Phase 3. Dkt. 289 at 14. The issue of whether a plaintiff has standing is jurisdictional, however, and can be raised at any phase of the litigation, and by the court if not raised by the parties. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-231 (1990); *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). Thus, the standing issue is germane in the Phase 2 proceeding.

### III. THE TRIBE HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO ASSERT ITS PORE SPACE OWNERSHIP CLAIM

In an apparent attempt to avoid having to show an "injury in fact," the Tribe contends—for the first time—that it has standing because its pore space ownership claim is in the nature of an action to quiet title, in that the Tribe seeks clarification

---

contains TDS above that limit but below the "upper" limit of 1,000 mg/l is within the range of acceptable TDS, and is safe for drinking and other beneficial uses.

01358.00008\31607658.4   -4-   DWA'S SUPP. REPLY BRIEF ON STANDING
5:13-CV-00883-JGB

of its reserved right so that it can store or bank groundwater. Dkt. 298 at 7-8; Dkt. 289 at 18-19. The Tribe has not previously claimed that its pore space ownership claim is an action to quiet title. Instead, the Tribe's Complaint and briefs expressly seek a "declaration" that its reserved right includes a water quality component, and an "injunction" preventing the Water Agencies from degrading water quality. Dkt. 1 at 18-20 (Complaint); Dkt. 209 at 38 (brief). An action for declaratory or injunctive relief is not justiciable unless the plaintiff shows an "injury in fact" that is actual or imminent. *Lujan*, 504 U.S. at 559 (declaratory relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-127 (2007) (same); *Summers v. Earth Island Inst.*, 555 U.S. 488, 491 (2009) (injunction). As *Lujan* held, a showing of an actual or imminent "injury in fact" is an "irreducible constitutional minimum" in establishing standing. *Lujan*, 504 U.S. at 560.

The "irreducible constitutional minimum" described by *Lujan* also applies in quiet title actions. As the Ninth Circuit has held, a plaintiff in a quiet title action must show that it has suffered an "injury in fact," as required by *Lujan*. *Avista Corp. v. Sanders County*, 405 Fed.Appx. 225, 226 (9th Cir. 2010). Thus, the Tribe is required to show an "injury in fact" regardless of whether its action is a quiet title action or an action for declaratory and injunctive relief.

Moreover, a quiet title action is not an appropriate action to adjudicate a reserved water right, including whether the reserved water can be stored or banked, because a reserved right does not include "title" to water; rather, a reserved water right, like any water right, is a usufructuary right, consisting of a right of use rather than ownership. *Sturgeon v. Frost*, 872 F.3d 927, 935 (9th Cir. 2017). *Winters* rights give an Indian tribe "the right to use sufficient water to fulfill the purposes of the Reservation," and therefore "simply cannot be injured by government action that does not affect the Tribe's ability to use sufficient water to fulfill the purposes of the Reservation." *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1356 (Fed. Cir. 2018).

Regardless of the nature of its action, the Tribe has not presented "specific facts" as required under *Lujan* showing that it will suffer an actual or imminent injury if its pore space ownership claim is not adjudicated. The Tribe has not shown that it has any plans or intention to use the pore space to store or bank its reserved water, other than its bare assertion—unsupported by any evidence—that it "would like" to store or bank groundwater. Dkt. 298 at 8. But even if the Tribe were to make such a showing, the Tribe still has not shown that the Water Agencies are preventing the Tribe from storing or banking water. The undisputed evidence shows that the Water Agencies have never taken any action to prevent or discourage the Tribe from storing or banking water. Dkt. 246-1 at 3, 5. The Tribe has not met its burden of showing specific facts that the Water Agencies have caused the Tribe to suffer concrete harm.

The Tribe contends that it suffers concrete harm because the Water Agencies have caused subsidence of the reservation lands. Dkt. 298 at 8-9; Dkt. 289 at 19. The Tribe's expert, Mr. Page, however, acknowledged that any subsidence is minor and temporary, and has not harmed the Tribe. Dkt. 277-4, at 151:10-152:1, 164:15-16. He stated that the subsidence has not caused damage to the Tribe's lands, or impacted any tribal efforts to pump or bank groundwater, or prevented the Tribe from pursuing development opportunities, or caused the Tribe to spend money remediating the subsidence. *Id*. at 162:12-163:1. The minor, temporary subsidence, if any, has not caused the Tribe to suffer concrete harm.

**IV.   THE TRIBE HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO ASSERT ITS QUANTIFICATION CLAIM**

The Tribe contends that it is not required to show "specific facts" that it intends to use water for current needs, because a *Winters* right is based on the Indians' future needs and not their current needs. Dkt. 289 at 7.[3] The Tribe has not

---

[3] In fact, a *Winters* right is based on the "present" and "future" needs of the Indians. *Arizona v. California*, 373 U.S. 546, 600 (1963).

shown, however, that it has *any* plans or intention to pump groundwater, whether to meet future *or* current needs, and thus has failed to demonstrate concrete harm if its right is not quantified.  In the cases cited by the Tribe—*Arizona*, 373 U.S. at 600, *United States v. Adair*, 723 F.2d 1394, 1416 (9th Cir. 1984), and *United States v. Ahtanum Irr. Dist.*, 236 F.2d 321, 326 (9th Cir. 1956)—the Indian tribes needed the water for their present and future needs, and there was no suggestion otherwise. The cases are not relevant here because the Tribe acquires its water from the Water Agencies and has no apparent plans, intentions or need to pump groundwater.[4]

The Tribe contends that it has standing because the Water Agencies have caused overdraft of the aquifer by pumping groundwater.  Dkt. 289 at 10-13.  The Tribe's expert, Mr. Page, has acknowledged, however, that any overdraft, even assuming it exists, has not caused the Tribe to suffer concrete harm.  He stated that the alleged overdraft has not prevented the Tribe from watering golf courses, supplying water to hotels on the reservation, pursuing development projects, pumping groundwater for its needs, banking groundwater, growing crops, watering lawns and gardens, or obtaining water from the Water Agencies.  Dkt. 277-4, at 110:110:5-113:15.

Moreover, the Tribe fails to mention that the Water Agencies pump groundwater for water uses on the Tribe's reservation—for hotels, golf courses, residents, and the Tribe's casino, among other uses—and that the Tribe has control

---

[4] The Tribe asserts that the Water Agencies have not cited a single case in which a court has held that a reserved right exists but that quantification of the right is not justiciable. Dkt. 289 at 6.  In *United States v. Braren*, 338 F.3d 971 (9th Cir. 2003), however, the Ninth Circuit held that the establishment of a reserved right and its quantification are separate proceedings, and that—although a federal court had earlier held that an Indian tribe had a reserved right in fishing and hunting—the quantification of the reserved right was not prudentially ripe for review, because the state courts were responsible for quantifying the right and the tribe would suffer no harm if its right were not quantified in the federal proceeding.

over such on-reservation water uses but the Water Agencies have no control over such uses. Thus, even if the basin were in overdraft and the Water Agencies were contributing to it by pumping groundwater, any such overdraft would occur, in part, because of on-reservation water uses that the Tribe controls but the Water Agencies do not. The Tribe's contention that the Water Agencies are responsible for any overdraft ignores the extent to which on-reservation water uses within the Tribe's control have contributed to any overdraft of which it complains.

The Tribe contends that it has standing to maintain its quantification claim because its claim is in the nature of a quiet title action, which the Tribe apparently assumes relieves it from the burden of showing "injury in fact." Dkt. 298 at 4. As explained earlier, the Tribe's action seeks declaratory and injunctive relief and does not seek to quiet title; the Tribe must show "injury in fact" even if its action is one to quiet title; and a quiet title action is not an appropriate action to adjudicate a reserved right. *See* page 5, *supra*.

## V. THE UNITED STATES' "STATEMENT" CONCERNING ARTICLE III STANDING IS MISPLACED

The United States argues in its "Statement" that it is not subject to the same Article III standing requirement that applies to others, because Article II of the Constitution provides that the Executive has the duty to enforce federal law, and Article III provides that the Judiciary has the power to hear cases in which the United States is a party. Dkt. 286 at 2.[5]

---

[5] In fact, no issue arises concerning the United States' standing to assert the water quality and pore space ownership claims the Tribe has asserted, because the United States' Complaint did not assert any water quality claims or pore space ownership claims, and did not even mention water quality or pore space. The United States' Complaint, in its first claim for relief, sought recognition of the United States' reserved right in sufficient quantities to satisfy the right, and in its second claim for relief, sought an injunction to protect its reserved right. Dkt. 71 at 7-9. In its Prayer for Relief, the United States requested that the Court recognize its reserved right to sufficient groundwater to fulfill the reservation purposes, and quantify its reserved right. *Id*. at 9-10. This Court has already upheld the United States'

Neither constitutional provision cited by the United States supports its argument. The fact that the Executive has the duty under Article II to enforce federal law does not mean that the Judiciary has the power under Article III to hear actions brought by the United States that, under *Lujan* and its progeny, are not justiciable under Article III. Similarly, the fact that the Judiciary has the power under Article III to hear actions in which the United States is a party does not mean that the Judiciary has the power under the same constitutional provision to hear actions brought by the United States that, again under *Lujan* and its progeny, are not justiciable under Article III. On the contrary, Article III lists various actions that are within the jurisdiction of federal courts—such as cases that arise under the Constitution and laws of the United States, controversies between citizens of different states, and actions in which the United States is a party—and the Supreme Court has held that Article III nonetheless "limits the jurisdiction of federal courts to 'Cases' and 'Controversies'" and precludes federal court jurisdiction over actions that raise only abstract and hypothetical issues. *Lujan*, 504 U.S. at 560-562. Thus, Article III bars *any* action, including an action by the United States, that does not meet the Article III's justiciability requirements. The United States' argument confuses the distinction between the courts' *jurisdiction* to hear the United States' claims under Article III and the United States' *standing* to assert its claims under Article III.

Under the United States' argument, any plaintiff in an action in which the United States is a *party*—even if the United States is a defendant, as it often is— would have standing to maintain the action regardless of whether the plaintiff meets the Article III standing requirement. In *Lujan* itself, the United States was a party

---

claims, by holding that the United States has a reserved right to sufficient quantities of groundwater to satisfy the right, Dkt. 115, and this Court's decision was affirmed by the Ninth Circuit. *Agua Caliente Tribe v. CVWD, et al.*, 848 F.3d 1262 (9th Cir. 2017). Thus, there are no remaining United States claims that have not been resolved.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2001 N. MAIN STREET, SUITE 390
WALNUT CREEK, CA 94596

01358.00008\31607658.4     -9-     DWA'S SUPP. REPLY BRIEF ON STANDING
5:13-CV-00883-JGB

defendant, and the Supreme Court did not suggest that the plaintiff was not subject to the Article III standing requirement because the United States was a party; rather, the Court held that the plaintiff did not meet the Article III standing requirement and dismissed the plaintiff's action. Plainly the United States' argument that it is not subject to the Article III standing requirement is misguided.[6]

## CONCLUSION

The Court should dismiss the Agua Caliente Tribe's Phase 2 claims on the ground that the Tribe does not have standing to maintain the claims.

Dated: November 21, 2018

Respectfully submitted,
BEST BEST & KRIEGER LLP

By: /s/ Roderick E. Walston
   Roderick E. Walston
   Arthur L. Littleworth
   Piero C. Dallarda
   Michael T. Riddell
   Holland P. Stewart
   Attorneys for Desert Water Agency

---

[6] The United States contends that its argument is supported by the Supreme Court's decisions in *In re Debs*, 158 U.S. 564, 584 (1895), and *Cramer v. United States*, 261 U.S. 219, 233 (1923). Dkt. 286 at 2. In *Debs* and *Cramer*, the Supreme Court held that the United States had standing to bring actions to protect its interests—in *Debs*, the United States' interest in delivering mail, and in *Cramer*, the United States' interest in protecting the rights of Indians—even though the United States did not have any "pecuniary" interests at stake. *Debs,* 158 U.S. at 583-587; *Cramer*, 261 U.S. at 226-234. Neither decision addressed whether the United States has standing to assert claims raising only abstract and hypothetical issues, or suggested that the United States has such standing, and thus neither is relevant here.

# CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, I electronically filed and served the following document(s): **DESERT WATER AGENCY'S SUPPLEMENTAL REPLY BRIEF ON STANDING** via the CME/ECF system for the U.S. District Court, Eastern District of California.

Executed on November 21, 2018 at Walnut Creek, California.

*/s/ Irene Islas*
Irene Islas