CATHERINE F. MUNSON (D.C. Bar No. 985717) (admitted *pro hac vice*)
KEITH M. HARPER (D.C. Bar No. 451956) (*pro hac vice* motion pending)
MARK H. REEVES (D.C. Bar No. 1030782) (admitted *pro hac vice*)
Kilpatrick Townsend & Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 508-5800
Fax: (202) 505-5858

STEVEN C. MOORE (CO Bar No. 9863) (admitted *pro hac vice*)
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Telephone: (303) 447-8760
Fax: (303) 443-7776

JOHN TABINACA PLATA (CA Bar No. 303076)
jplata@aguacaliente.net
AGUA CALIENTE BAND OF CAHUILLA INDIANS
5401 Dinah Shore Drive
Palm Springs, CA 92264
Tel: (760) 699-6837; Fax: (760) 699-6963

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

AGUA CALIENTE BAND OF
CAHUILLA INDIANS,

        Plaintiff,

and

UNITED STATES OF AMERICA,

        Plaintiff-Intervenor

v.

COACHELLA VALLEY WATER
DISTRICT, et al.

        Defendants.

CASE NO.: ED CV 13-00883-JGB-SPX
Judge:     Jesus G. Bernal
Courtroom: 1

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
AGUA CALIENTE'S MOTION FOR
LEAVE TO FILE FIRST AMENDED
AND SUPPLEMENTAL COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

Hearing Date:   January 13, 2020
Time:         9:00 A.M.
Action Filed:   May 14, 2013

# TABLE OF CONTENTS

I.   RELEVANT BACKGROUND ......................................................................... 3
     A.   Procedural Background .................................................................... 3
     B.   Significant Recent Factual Developments ....................................... 4

II.  LEGAL STANDARD .................................................................................... 5

III. ARGUMENT .................................................................................................. 7
     A.   Agua Caliente has acted in good faith and there is no undue delay. ............ 7
     B.   The Defendants will not be prejudiced. ........................................ 10
     C.   Agua Caliente's proposed pleading is not futile. .......................... 13
     D.   Additional factors support granting leave to supplement. ............ 21
     E.   While Rule 16 is inapplicable, Agua Caliente has acted diligently in
          seeking leave to amend in any event. ............................................ 22

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Austin Elec. Servs., LLC,*
  325 F.R.D. 325 (D. Ariz. 2018) ........................................................ 10, 12

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.,*
  849 F.3d 1262 (9th Cir. 2017),
  *cert denied,* 138 S. Ct. 468 (2017) .......................................................... 3

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.,*
  733 F.3d 939 (9th Cir. 2013) .................................................................. 16

*Brownlee v. Moorpark LLC,*
  No. 2:13-cv-9188, 2014 WL 4978441 (C.D. Cal. Oct. 3, 2014) ............... 7

*Clark v. Citizens of Humanity, LLC,*
  2016 WL 4597527 (S.D. Cal. May 3, 2016) ......................................... 6, 10

*Cole v. Educ. Credit Mgmt.,*
  No. 17-00974, 2017 WL 8116538 (C.D. Cal. Oct. 13, 2017) .................... 7

*Colville Confederated Tribes v. Walton,*
  647 F.2d 42 (9th Cir. 1981) ("*Walton I*") ...................................... 14, 17, 19

*Crow Creek Sioux Tribe v. United States,*
  900 F.3d 1350 (Fed. Cir. 2018) .............................................................. 15

*DCD Programs, Ltd. v. Leighton,*
  833 F.2d 183 (9th Cir. 1987) ................................................................ 6, 8

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003) .................................................................. 6

*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................ 6, 13

*Fremont Inv. & Loan v. Beckley Singleton, CHTD,*
  2007 WL 1213677 (D. Nev. Apr. 24, 2007) ............................................ 25

*Global Bldg. Sys. v. Brandes,*
  2008 WL 477876 (D. Ariz. Feb. 19, 2008) ............................................. 25

*GWS Techs., Inc. v. Furth,*
  2009 WL 10675903 (C.D. Cal. Dec. 4, 2009) ......................................... 10

*Hoang v. Bank of America, N.A.,*
  910 F.3d 1096 (9th Cir. 2018) ................................................................ 13

-ii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S  MOTION FOR LEAVE TO
FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Howey v. U.S.*,
   481 F.2d 1187 (9th Cir. 1973) ...................................................................7

*Johnson v. City of Shelby, Miss.*,
   574 U.S. 10 (2014)......................................................................................9

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ...................................................................22

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) .....................................................................6

*Lyon v. U.S. Immigration & Customs Enforcement*,
   308 F.R.D. 203 (N.D. Cal. 2015)...............................................................6

*May v. Northrop Grumman Sys. Corp.*,
   680 Fed. App'x. 556 (9th Cir. 2017) ......................................................14

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017 ....................................................................13

*Monterey Bay Military Housing, LLC v. Pinnacle Monterrey, LLC*,
   2015 WL 1737691 (N.D. Cal. Apr. 13, 2015 ........................................13

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) ............................................................5, 11

*New Mexico v. Mescalero Apache Tribe*,
   462 U.S. 324 (1983)..................................................................................14

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   779 F.3d 1036 (9th Cir. 2015) ..............................................................2, 6

*O'Shea v. Epson Am., Inc.*,
   No. CV 09-8063 PSG, 2010 WL 4025627 (C.D. Cal. Oct. 12, 2010) ..................6, 7

*Owens v. Kaiser Found. Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ...................................................................11

*Planned Parenthood v. Neely*,
   130 F.3d 400 (9th Cir. 1997) .....................................................................7

*Preckwinkle v. CVWD*,
   No. 05-cv-626 (C.D. Cal. Aug. 30, 2011) .................................................2

*Raduga USA Corp. v. U.S. Dep't. of State*,
   440 F. Supp. 2d 1140 (S.D. Cal. 2005).....................................................6

*San Luis & Delta-Mendota Water Auth. v. U.S. Dept. of Interior*,
   236 F.R.D. 491 (E.D. Cal. 2006) .........................................................7, 21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

*Story v. Midland Funding, Inc.*,
  2016 WL 5868077 (D. Or. Oct. 7, 2016)..........................................................22, 24

*Taylor v. Zurich Am. Ins. Co.*,
  No. CV 11-08110-PCT-
  JAT, 2013 WL 1340014 (D. Ariz. Apr. 1, 2013) ...........................................3

*U.S. v. Webb*,
  655 F.2d 977 (9th Cir. 1981) ...................................................................8

*United States v. Adair*,
  723 F.2d 1394 (9th Cir. 1983) ................................................................17

*United States v. Ahtanum*,
  124 F. Supp. 818 (E.D. Wash. 1953).......................................................20

*United States v. Ahtanum*,
  236 F.2d 321 (9th Cir. 1956.....................................................................20

*United States v. Anderson*,
  736 F.2d 1358 (9th Cir. 1984) ...........................................................17, 19

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011)...................................................................14

*United States v. Dang*,
  488 F.3d 1135 (9th Cir. 2007) ................................................................24

*United States v. Shoshone Tribe of Indians of Wind River Reservation in Wyo.*,
  304 U.S. 111 (1938)..................................................................................1

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) ..............................................................18

*Water, Inc. v. Everpure, Inc.*,
  CV 09-3389, 2011 WL 13187252 (C.D. Cal July 6, 2011).......................7

*White Mountain Apache Tribe v. Bracker*,
  448 U.S. 136 (1980)................................................................................15

*Yates v. Auto City 76*,
  299 F.R.D. 611 (N.D. Cal. 2013).............................................................12

**Statutes**

130 Stat. 1628, 1832-34 (2016) ...................................................................19

**Rules**

Fed. R. Civ. P. 15(a) ......................................................................................5

Fed. R. Civ. P. 15(d) ......................................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S MOTION FOR LEAVE TO
FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Regulations**

Cal. Civ. Code § 659......................................................................................................15

Cal. Water Code § 31630.................................................................................................2

Cal. Water Code App. § 100-1 ........................................................................................2

Pub. L. 114-322, § 3715 ...............................................................................................19

The Agua Caliente Band of Cahuilla Indians (Agua Caliente or the Tribe) moves for leave to amend its Complaint to clarify the legal grounds for its claim for declaration and quantification of its pore space ownership rights and to supplement its Complaint to set forth additional, recent factual developments that establish the Tribe's standing under the standard articulated in the Court's April 19, 2019 Order (the Phase 2 Order), to have its federal reserved water right quantified. The proposed amendment to the pore space claim more clearly aligns the allegations of the Complaint with Agua Caliente's position, consistently maintained since the outset of the litigation, dating back to the parties' first joint Rule 26(f) conference report in December 2013, that it owns pore space underlying the Agua Caliente Reservation as a constituent element of the reserved land under the Supreme Court's holding in *United States v. Shoshone Tribe of Indians of Wind River Reservation in Wyo.*, 304 U.S. 111, 116 (1938). The proposed amendment thus ensures that the pore space claim that the Tribe intended to assert and that the parties have already briefed and argued is properly before the Court.

Agua Caliente also seeks leave to supplement the Complaint to identify significant recent developments that establish the Tribe's standing to have its federal reserved water rights quantified. Since the Court issued its Phase 2 Order, the Tribe has taken concrete steps to resume groundwater production on the Reservation, including but not limited to installing wells in both districts' service areas that are slated to begin production no later than January 2020, likely sooner. The groundwater levels at these wells are lower than they would be but for the districts' overuse of the aquifer. As a result, the costs of the Tribe's ongoing water production will increase. Stated differently, the Defendants' groundwater use is now directly and substantially interfering with Agua Caliente's use of its federal reserved water right. Additionally, in an exercise of its sovereign authority over its land and natural resources, the Tribe enacted an ordinance establishing the Agua Caliente Water Authority to regulate and

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

protect the Reservation's groundwater and directed that Authority to store a substantial amount of the water reserved for the Reservation to offset the lingering effects of longstanding overdraft. The Tribe's assertion of its regulatory authority conflicts with the districts' current regulation of and imposition of fees on the Tribe's groundwater,[1] and the substantial new use of the Tribe's federal reserved water right, including for storage, squarely conflicts with the districts' claimed right to unfettered groundwater production and requires judicial protection. Rule 15 encourages supplementation for the purpose of bringing relevant new factual developments to the attention of the Court, recognizing that including such developments in an existing case is more efficient than requiring the filing of a new action. *See, e.g.*, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015).

Agua Caliente has not previously amended or supplemented the Complaint, and there are no grounds to prevent it from doing so now. The amendment conforms the allegations to the parties' briefing, the supplementation is based on recently occurring events, and there is no evidence that Agua Caliente is acting in bad faith. In addition, the proposed amendment and supplementation would not cause undue delay or prejudice to the Defendants, they are not futile, and they are supported by the interests of justice and judicial economy. The Court accordingly should grant Agua Caliente's request for leave to file its First Amended and Supplemental Complaint.[2]

---

[1] The Defendants regulate and unlawfully burden the Tribe's groundwater right by charging all non-*de minimis* pumpers of groundwater on the Reservation a replenishment assessment based on their groundwater production. *See* Proposed First Amended and Supplemental Complaint for Declaratory and Injunctive Relief (FASC), ¶ 60, (attached hereto as Exhibit 1); Cal. Water Code App. §§ 100-1, *et seq.* (DWA); Cal. Water Code §§ 31630, *et seq* (CVWD); *see also* Doc 85-02, Order, *Preckwinkle v. CVWD*, No. 05-cv-626, at **30-34 (C.D. Cal. Aug. 30, 2011) (holding that Agua Caliente's federal water right preempted CVWD's replenishment assessments levied on Reservation land).

[2] While allegations pertaining to Agua Caliente's water quality and aboriginal title claims remain in the First Amended and Supplemental Complaint, Agua Caliente is not attempting to re-litigate those claims and does not seek reconsideration of the

# I.    RELEVANT BACKGROUND

## A.    Procedural Background

In Phase 1 of this case, the Court decreed that the United States "impliedly reserved appurtenant water sources—including underlying groundwater—when it created the Tribe's reservation" in the 1870s. Doc. 115, Page.ID 6549. The Ninth Circuit affirmed, recognizing the "federal primacy of reserved water rights" and holding that "the Tribe has a reserved right to groundwater underlying its reservation as a result of the purpose for which that reservation was established." *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262, 1265, 1272 (9th Cir. 2017), *cert denied*, 138 S. Ct. 468 (2017). The Ninth Circuit also recognized that Agua Caliente Reservation's purpose was "to create a home for the Tribe" and that such a purpose is a "broad one [that] must be liberally construed." *Id.* at 1270.

In Phase 2, the parties sought, pursuant to the Court-approved trifurcation plan, rulings regarding (1) the standard the Court would apply to quantify the Tribe's newly decreed reserved right in Phase 3 and (2) the Tribe's ownership of the pore space underlying the Agua Caliente Reservation (in an amount to be quantified in Phase 3). *See* Doc. 203-1, Page.ID 8042. The Court declined to identify a quantification standard, instead ruling that Agua Caliente had "not provided any evidence of actual or imminent injury such that it has standing for this Court to adjudicate its quantification claim." Doc. 318 (the Phase 2 order), Page.ID 16214. In explaining its holding, the Court noted, *inter alia*, that Agua Caliente had not established a connection between the lowering of the water table under the Reservation as a result of overdraft with any of the Tribe's current or future water use needs. *Id.*, Page.ID 16213. The Court further noted that the record lacked evidence that the Tribe would use water in a way that risked conflict with the Defendants. *Id.*, Page.ID 16214.

---

Court's rulings on them. Rather, out of an abundance of caution, Agua Caliente reasserts those claims only to preserve them for any potential appeal. *See, e.g.*, *Taylor v. Zurich Am. Ins. Co.*, 2013 WL 1340014, at *9 (D. Ariz. Apr. 1, 2013).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

With respect to the pore space claim, the Court ruled that Agua Caliente's argument that the Tribe owns the pore space underlying its Reservation as a constituent element of the reserved land was not properly before the Court because the Complaint referred to the pore space claim in terms of "use connected to the Tribe's asserted federally reserved right—not as subterranean, constituent elements of land ownership." *Id.*, Page.ID 16218-19 & n.16. Based on this determination, the Court deferred what it identified as the sole remaining active claim—whether Agua Caliente beneficially owns sufficient pore space to store its federal reserved water—to Phase 3. *Id.*, Page.ID 16219.

**B.    Significant Recent Factual Developments**

Since the Court decreed the existence of the Tribe's federal reserved right to groundwater, Agua Caliente has taken steps to resume pumping groundwater and is exploring and evaluating additional opportunities to use that water. FASC ¶54-55;58. On August 6, 2019, confronted with the possibility that its federal reserved water right might not be quantified and protected by the Court, Agua Caliente enacted an ordinance to establish the Agua Caliente Water Authority, a tribal governmental authority charged "to protect, manage, and regulate the Tribe's Groundwater, and to promote the public health, safety, welfare, and economic security of the Tribe, Tribal Members, Tribal Entities, and the Reservation Community." Agua Caliente Water Authority Ordinance (AC Water Ord.), Ch. 1 § I.C.[3] FASC ¶56, n.1. The Water Authority is directed and authorized to, "among other things, administer well permits, monitor and manage groundwater levels and groundwater quality, and administer the imposition of groundwater production fees on producers of the Tribe's Groundwater." *Id.*, Ch. 1 § I.B.10. FASC ¶56, n. 1.

---

[3] The Water Ordinance and related resolutions are found on the Tribe's website: http://www.aguacaliente.org/content/Agua%20Caliente%20Water%20Authority/

On September 24, 2019, the Agua Caliente Tribal Council, in an exercise of its sovereign authority over the Tribe's water resources, directed the Water Authority Board to annually store 20,000 acre-feet (AF) of the Reservation's federally reserved groundwater, estimated by the Tribe to be at least 60,000 AF per year, in order to ameliorate the lowered water table and other effects of long standing cumulative overdraft. *See* Resolution 44-19; FASC ¶53, 57, n.1. The Tribal Council seated the Water Authority Board on October 8, 2019. *See* Resolution 45-19. FASC ¶58, n.1. Pursuant to Ch. 2, § II.H of the AC Water Ord., the Water Authority is now preparing a report that will, *inter alia*, recommend water production fees to be applied to the production of the Tribe's groundwater on the Reservation, including by the Defendants. FASC ¶59. This report will be completed by November 4, 2019. *Id.*

Agua Caliente also is taking affirmative, concrete steps, including the installation of new wells in both districts' service areas, to resume groundwater production on the Reservation in the immediate future. *Id.* ¶54, 55, 58. The Tribe is in negotiations regarding additional opportunities to produce groundwater on the Reservation and intends to fully develop and use its water rights. *Id.* ¶55. Because the Defendants' overuse of groundwater in the aquifer has caused lower groundwater levels, the Tribe's cost to produce groundwater from all of its wells will be higher than it would be if the aquifer were at its natural, pre-Reservation level. *Id.* ¶ 53, 54, 55. As described in more detail below, the foregoing facts are set forth as supplemental allegations in Agua Caliente's proposed First Amended and Supplemental Complaint.

## II.   <u>LEGAL STANDARD</u>

"[L]eave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave to amend should only be denied in cases of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies via previously allowed amendments,

undue prejudice to the opposing party, or futility. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But "[n]ot all of the factors merit equal weight." *Id.* Delay has less magnitude and, "by itself, is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG, 2010 WL 4025627, at *2 (C.D. Cal. Oct. 12, 2010). Undue prejudice, on the other hand, "carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining … factors, there is a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original). The party opposing a proposed amendment bears the burden of establishing any alleged prejudice or other grounds for denying leave to amend. *Id.*; *Clark v. Citizens of Humanity, LLC*, 2016 WL 4597527, at *2 (S.D. Cal. May 3, 2016).

Rule 15(d) permits a party, on motion and reasonable notice, to supplement its complaint by "setting out any transaction, occurrence, or event that happened after the date of the [Complaint]." Fed. R. Civ. P. 15(d). "Supplemental pleadings are generally favored" by Rule 15(d). *Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 214 (N.D. Cal. 2015); *see also Raduga USA Corp. v. U.S. Dep't. of State*, 440 F. Supp. 2d 1140, 1150 (S.D. Cal. 2005) (allowing supplemental complaint after entry of final judgment). Supplementation may cure a complaint that "is defective in stating a claim or defense," *id.*, specifically including instances where a court determines that it lacks subject matter jurisdiction over the claims as stated in the initial pleading. *Northstar*, 779 F.3d at 1044 (holding that a district court properly allowed a supplemental pleading to cure a standing problem). Rule 15(d) "circumvents the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief." *Id.*; *see also Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (noting that supplementation promotes

"judicial economy and convenience"). "Judicial efficiency is served when 'the entire controversy between the parties could be settled in one action.'" *Water, Inc. v. Everpure, Inc.*, CV 09-3389, 2011 WL 13187252, at *2 (C.D. Cal July 6, 2011) (quoting *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997)).

In determining whether to grant a motion to supplement, courts apply the same standard applied under Rule 15(a). *Cole v. Educ. Credit Mgmt.*, No. 17-00974, 2017 WL 8116538, at *1 (C.D. Cal. Oct. 13, 2017); *Brownlee v. Moorpark LLC*, No. 2:13-cv-9188, 2014 WL 4978441, at *2 (C.D. Cal. Oct. 3, 2014). Additional factors sometimes considered include: (1) the relatedness of the original and supplemental complaints; (2) whether allowing supplementation would serve the interests of judicial economy; (3) whether final judgment has been rendered; (4) whether the district court retains jurisdiction over the case; (5) whether any prior court orders impose future affirmative duties on the defendant; and (6) whether the proposed supplementation alleges that a defendant violated a prior court order. *See San Luis & Delta-Mendota Water Auth. v. U.S. Dept. of Interior*, 236 F.R.D. 491, 497 (E.D. Cal. 2006).

No grounds for denying leave to amend or supplement exist here.

## III.   ARGUMENT

### A.   Agua Caliente has acted in good faith and there is no undue delay.

The Defendants have indicated that they generally oppose Agua Caliente's motion on timeliness grounds. *See* Doc. 327, Page.ID 16454. While undue delay is a relevant consideration in assessing a motion for leave to amend or supplement, the "mere fact that a party could have moved at an earlier time to amend its complaint does not by itself constitute an adequate basis for denying leave to amend." *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG, 2010 WL 4025627, at *4 (C.D. Cal. Oct. 12, 2010 (citing *Howey v. U.S.*, 481 F.2d 1187 (9th Cir. 1973) (holding that district court abused its discretion in denying leave to amend even though the party seeking to amend waited five years from commencement of action and motion was brought on

the second day of trial)); *U.S. v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) ("[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend."). To justify denial of a motion for leave, delay must be coupled with evidence of wrongful motive or bad faith. *See, e.g.*, *DCD Programs*, 833 F.2d at 187. Nothing remotely suggests any wrongful motive or bad faith by Agua Caliente.

### 1.    *Amended Allegations*

With respect to the Tribe's proposed amendments, Agua Caliente has consistently represented to the Court and the districts, in multiple pleadings filed throughout the course of these proceedings, that it claims ownership of pore space as a constituent element of the land that the United States reserved for the Tribe, and not a mere right to use pore space. Examples of such representations (and the districts awareness thereof) include, but are not limited to, the following:

- In 2013, Agua Caliente stated that "it beneficially owns the pore space underlying its Reservation. It is settled federal law that tribes are beneficial owners of all 'constituent elements of the land itself.' (quoting *Shoshone*)." Doc. 48, Page.ID 225. In said the same in 2014. *See* Doc. 54, Page.ID 257.

- In 2015, Agua Caliente said that its "pore space claim is not premised on or in any way dependent upon groundwater rights." Doc. 120, Page.ID 6603 – 04.

- In a 2017 Joint Status Report, Agua Caliente stated that "it owns the pore space underlying its Reservation … based upon settled federal law that tribes are beneficial owners of all constituent elements of the land itself." Doc. 192, Page.ID 7209 (citations and quotations omitted).

- In that same report, CVWD stated its belief that "the appropriate questions to address are whether the Tribe owns any interest in the groundwater storage space underlying its Reservation and, if so, what rights the Tribe holds[.]" *Id.*, Page.ID 7211. The United States also understood "the Tribe's pore space claim to be based on ownership of land." *Id.*, Page.ID 7209 n.2.

- The parties directly addressed Agua Caliente's pore space ownership claim in their Phase 2 dispositive motions, including discussion of *Shoshone* and related case law. *See* Doc. 203, Page.ID 8057 – 58; Doc. 202, Page.ID 7742; Doc. 200, Page.ID 7294 & 7299-7300.

The Court also indicated on multiple occasions that Phase 2 would address the Tribe's ownership of pore space, as opposed to the existence of a more limited use right. *See, e.g.*, Doc. 193, Page.ID 7233 (ordering the parties to brief "whether Agua Caliente owns pore space underlying its Reservation"); Doc. 121, Page.ID 6624.

Agua Caliente has been forthright with the Court and the Defendants about the legal theory underlying its pore space claim. There is no hint of bad faith or wrongful motive. Agua Caliente simply believed that its Complaint satisfied the Federal Rules' notice pleading requirements and that its numerous statements that its claim rested on the constituent element theory of ownership, coupled with the districts' responses thereto, adequately placed the Tribe's legal theory before the Court. *See e.g.*, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 12 (2014) (indicating that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted" and rejecting "insistence on a punctiliously stated 'theory of the pleadings'" (citation omitted)). Now that the Court has determined otherwise, *see* Doc. 318, Page.ID 16218 n.16, Agua Caliente seeks leave to amend its pleading to clearly and accurately reflect the legal theory that Agua Caliente has long asserted and to place that theory squarely before the Court. There is no indication whatsoever of wrongful motive or bad faith. And as the stipulation shows, *see* Doc. 327, the Defendants do not have substantive objections to the Tribe's request to amend to conform the Complaint to the parties' understanding of the issues.

## 2.   *Supplemental Allegations*

Agua Caliente has likewise acted in good faith in moving to supplement its Complaint after the emergence of new facts—since the Court issued its Phase 2

order—supporting the Tribe's standing to have its federal reserved water right quantified. On August 6, 2019, the Tribal Council duly enacted an ordinance establishing the Agua Caliente Water Authority to manage and regulate the Tribe's groundwater, and on September 24, 2019, the Tribal Council directed the Water Authority to annually store 20,000 AF of the Tribe's groundwater in the underlying aquifer to remediate the lingering ill effects of longstanding overdraft. FASC ¶56, 57. And the Tribe is currently constructing wells on the Reservation in both districts' service areas that are scheduled to being production by January 2020. *Id.* ¶54. The Tribe has also invested in and taken concrete steps to realize additional groundwater production opportunities with the intent of fully using and developing its water right. *Id.* ¶55. Given the recent passage of the relevant ordinances and the ongoing nature of the Tribe's groundwater development and production efforts, there can be no doubt that Agua Caliente promptly and in good faith brought these facts before the Court via this request to supplement its Complaint. There is thus no reason to deny Agua Caliente's request for leave to supplement its complaint on the basis of bad faith or wrongful motive.

## B.   The Defendants will not be prejudiced.

Although prejudice carries the "greatest weight" in determining whether to grant leave to amend or supplement, the nonmoving party must demonstrate "substantial" prejudice in order to overcome Rule 15's liberal policy favoring amendment and supplementation. *See, e.g.*, *Clark v. Citizens of Humanity, LLC*, 2016 WL 4597527, at *3 (S.D. Cal. May 3, 2016). For example, "[l]itigation expenses alone does not equal prejudice. This is especially true of litigation expenses incurred *before* a motion to amend has been filed." *Id.* (citations omitted, emphasis in original); *see also Acosta v. Austin Elec. Servs., LLC,* 325 F.R.D. 325 (D. Ariz. 2018) (holding that litigation expenses did not constitute prejudice under Rule 15); *GWS Techs., Inc. v. Furth*, 2009 WL 10675903, at *2 (C.D. Cal. Dec. 4, 2009) ("Any litigation

expenses incurred before [plaintiff] moved for leave to amend do not constitute prejudice precluding leave to amend." (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Conversely, undue prejudice may arise where a proposed amendment comes late in the course of proceedings and sets out new claims that "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band*, 893 F.2d at 1079 (noting that even this was "not fatal to amendment," but merely a factor to be balanced by the trial court). With these guideposts in mind, it is clear that the water districts will not suffer undue prejudice if the Court grants Agua Caliente's motion.

### 1. *Amended Allegations*

As discussed above, the proposed amendments simply align the legal theory set forth in the Complaint with what the parties have addressed in their pleadings, reports, and briefing to the Court for years. No prejudice can result from allowing Agua Caliente to allege a legal theory that the parties have long understood and already briefed. The Defendants do not allege prejudice, instead agreeing to stipulate to Agua Caliente's proposed pore space amendments subject to reserving their general timeliness objection. *See* Doc. 327. Indeed, it may be possible for the Court to rule on the amended legal question of whether Agua Caliente owns the pore space underlying its Reservation as a constituent element of the land without any further discovery or briefing.[4] Agua Caliente plainly is not introducing entirely new claims or theories that

---

[4] The additional declaratory relief that Agua Caliente seeks—quantification of the volume of pore space that it beneficially owns—would require additional discovery and briefing, but that was always contemplated for Phase 3 in the event that the Court ruled in favor of Agua Caliente on the Phase 2 legal question regarding pore space. *See, e.g.*, Doc. 54, Page.ID 263 (Phase III of the case will involve … quantifying any tribal rights to pore space that the Court has declared ….."). The Tribe has standing to seek quantification under the ownership theory stated in its proposed amendment, which asserts a fixed property right rather than a use right. *See* Doc. 324, Page.ID 16437 (explaining the Court's ruling that uncertainty as to the scope of a use right

would place the litigation on a new course. Allowing the proposed amendments would not affect the Court's Phase 2 Order with respect to Agua Caliente's other claims, and there is no scheduling order in place for further proceedings that would require modification. In short, allowing the proposed amendment will not prejudice the water districts at all, and certainly not unduly. This factor weighs in favor of granting the Tribe's motion.

### 2.   *Supplemental Allegations*

The water districts also face no undue prejudice from Agua Caliente's supplemental allegations. The supplemental allegations do not alter the scope or nature of Agua Caliente's claims; they simply add recent, significant factual developments that are relevant to the standing analysis set forth in the Court's Phase 2 order. The supplemental allegations will not delay trial, as no trial date has been set. *See, e.g.*, *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013) (noting that, in the context of supplemental allegations, courts typically evaluate prejudice in terms of how close they come to a trial date and whether discovery cut-offs have passed). And while the supplemental allegations likely will require some discovery if the Court grant's the Tribe's motion, that fact carries little weight when (1) only limited discovery has occurred to date, (2) the supplemental facts are of such recent occurrence that they could not have been addressed in the course of the limited discovery that the parties have conducted to date, and (3) the parties always anticipated substantial discovery in Phase 3. *See, e.g.*, *Acosta,* 325 F.R.D. at 331 (noting that even though discovery was complete, plaintiffs had just recently learned of additional facts, and allowing limited discovery into supplemental allegations was preferable to requiring the plaintiff to implement a new action); *Monterey Bay Military Housing, LLC v. Pinnacle Monterrey, LLC*, 2015 WL 1737691, at *3 (N.D.

---

does not give rise to standing, but uncertainty as to one's interest in property with a fixed geographic location does).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S  MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Cal. Apr. 13, 2015) (holding that "the burden of additional limited discovery" after the filing of motions for summary judgment did not amount to undue prejudice justifying denial of leave to supplement the complaint).

To be clear regarding the limited discovery thus far in this case, Agua Caliente has yet to have the opportunity to serve a single written discovery request regarding any Phase 2 or Phase 3 issue. And while the water districts produced a limited number of documents relied upon by their expert in the context of the supplemental Phase 2 document exchange ordered by the Court, approximately 95% of those documents consisted of publicly available reports. True discovery in this case remains in its infancy.[5] Most importantly, there is no chance that allowing supplementation will grant an unfair advantage to Agua Caliente or deprive the water districts of the opportunity to make their case. *See id.* Indeed, if the Court grants Agua Caliente's motion, it potentially could proceed to rule on the Phase 2 question of the appropriate quantification standard with no further briefing from the parties. For all of these reasons, there is no undue prejudice.

## C.   Agua Caliente's proposed pleading is not futile.

A court may deny leave to amend or supplement a complaint where the amendment or supplementation would be futile. *Foman*, 371 U.S. at 182. An amendment or supplementation may be futile when the claim it pertains to is time-barred, *Hoang v. Bank of America, N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018), or when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted). As the Ninth Circuit has held, "[u]nder futility analysis, dismissal without leave to amend is improper unless it is clear … that the complaint could not be saved by any amendment." *United States v.*

---

[5] Agua Caliente has not even been able to learn how much water is being pumped from its Reservation in CVWD's service area because CVWD stopped making that information publicly available after the Tribe filed this lawsuit. FASC ¶45.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S  MOTION FOR LEAVE TO
FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *see also May v. Northrop Grumman Sys. Corp.*, 680 F. App'x. 556, 559 (9th Cir. 2017) (reversing district court's denial for leave to amend because the proposed amended complaint alleged "sufficient, non-conclusory allegations to plausibly state a claim for relief"). Agua Caliente's proposed amendment and supplementation is not futile because the amendment would place a viable claim properly before the Court and the supplemental allegations would cure the Court's concerns regarding Agua Caliente's standing.

### 1. *Amended Allegations*

As described *supra*, Agua Caliente seeks leave to amend for the limited purpose of clarifying the legal basis for its claimed ownership of the disputed pore space. Agua Caliente's proposed amended allegations state a viable claim for relief for the reasons set forth in the Tribe's prior briefing in support of its *Shoshone*-based claim of pore space ownership. *See, e.g.*, Doc. 298, Page.ID 15727 n.6; Doc. 217, Page.ID 8954 – 55; Doc. 209, Page.ID 8432 – 35; Doc. 203-1, Page.ID 8057 – 58. *Shoshone* makes it plain that Agua Caliente owns all constituent elements of the land reserved for it, which necessarily includes the pore space underlying the Agua Caliente Reservation. *See Shoshone*, 304 U.S. at 116 (applying the rule of liberal construction in favor of tribes to find that natural resources were reserved for the Shoshone Tribe); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, n. 9 (9th Cir. 1981) ("*Walton I*") (citing the rule of liberal construction in favor of tribes and holding it applies to Executive Orders); Cohen's Handbook of Federal Indian Law, § 17.01 (Nell Jessup Newton, et al., eds., 2012 ed.) ("Indian tribes are the beneficial owners of the natural resources located on and under their lands.").[6] Federal law governs the definition of "land" for

---

[6] Because pore space is a constituent element of Reservation land, the Tribe has a sovereign interest in it by operation of law. *See, e.g.*, *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 332 (1983) ("Indian tribes are unique aggregations possessing attributes of sovereignty over both their members *and their territory*."

-14-

purposes of determining what the United States Reserved for Agua Caliente, and *Shoshone* is dispositive.[7] The amendment is not futile.

## 2.   *Supplemental Allegations*

Agua Caliente's proposed supplemental pleading is not futile because it will cure the jurisdictional defects identified by the Court in its dismissal of the Tribe's request for a declaration of the scope and quantum of its water rights. In its Phase 2 Order, the Court held that, in order to show standing to have its federal reserved water right quantified, Agua Caliente "must provide evidence of injury to its ability to use sufficient water to fulfill the purposes of the Reservation." Doc. 318, Page.ID. 16211.[8] The Court found that Agua Caliente had established no connection between the lowering of the water table under the Reservation as a result of overdraft and any of the Tribe's current or future water use needs. *Id.*, Page.ID 16213. The Court further noted a lack of evidence that the Tribe would use water in a way that risked conflict with the Defendants. *Id.*, Page.ID 16214. The supplemental allegations establish the requisite injury in at least three ways.

First, the supplemental allegations provide that Agua Caliente has taken active, concrete steps to initiate groundwater production at multiple locations on the

---

(emphasis added) (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980))).

[7] Even if federal law were unclear on this point and the Court sought guidance from state law, California defines "land" as "the material wealth of the earth, whatever may be the ingredients of which it is composed, whether soil, rock or other substance, and *includes free or occupied space* … downwards …." Cal. Civ. Code § 659 (emphasis added). Pore space thus fits within the state law definition of land in any case.

[8] Agua Caliente respectfully maintains that the Court's reliance on *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350 (Fed. Cir. 2018), to assess Agua Caliente's standing to seek quantification of its federal reserved water right was erroneous, and reserves all rights to seek appellate review of that ruling. Agua Caliente does not seek reconsideration of that ruling via this motion, however; rather, it seeks leave to make supplemental allegations that establish its standing under the test applied in the Court's Phase 2 Order.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Reservation within both Defendants' service areas, with production slated to begin by January 2020, possibly sooner. FASC ¶54, 55. Because of the effects of longstanding overdraft caused principally by the Defendants, notably including a groundwater table that is now substantially lower than it was at the time of the Reservation's establishment and lower than it would be without the districts' overuse of groundwater, Agua Caliente's water production will require greater pump lifts, directly increasing the cost of Agua Caliente's groundwater production. *Id.* ¶53-55. By definition, this increased cost injures and interferes with Agua Caliente's ability to use its federal reserved water right. *See, e.g.*, *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939, 950-51 (9th Cir. 2013) (holding that increased costs are an economic injury sufficient to confer standing and citing several cases in support of that proposition). Unless the groundwater table returns to its natural level, Agua Caliente will continue to face interference with its use of its federal reserved water right as long as it pumps its reserved water on its Reservation. ¶53.

Second, the supplemental allegations establish that Agua Caliente has directed its Water Authority to store 20,000 AF of federal reserved groundwater each year, which it will accomplish through its permitting process, to reduce the lingering adverse effects of longstanding overdraft and concomitant economic injury that the Tribe and its members and lessees are suffering. *See* Doc. 246-1, Page.ID 9543 – 46; FASC ¶53, 56, 57, 60. The Defendants concede that their plans will not reduce or offset cumulative overdraft, *see* 2019 DWA Replenishment Report at II-29, nor will they address associated ill effects, including lower groundwater levels and higher pumping costs. FASC ¶51.

Moreover, the water districts have denied the Tribe's right to use its federally reserved groundwater in this manner, contending that groundwater is not being "used" unless it is pumped from the ground and that water that is not "used" under their

definition of that term is available for production by the Defendants or third parties. *See, e.g.*, Doc. 219, Page.ID 9075 n.14. This position both disregards federal law and places the districts in intractable conflict with Agua Caliente. It disregards federal law by attempting to displace a legally recognized—indeed, a legally mandated—use of reserved water under tribal law with state law water use concepts. Federal law is clear, however, that a tribe may use its reserved right for *any* lawful purpose, *see Walton I*, 647 F.2d at 48, including non-consumptive uses to improve the supply of water, and that a tribe choosing to use its reserved water for non-consumptive purposes "does not thereby relinquish any of its water rights to state permittees or subject the exercise of its rights to state regulation." *United States v. Anderson*, 736 F.2d 1358, 1365 (9th Cir. 1984); *see also United States v. Adair*, 723 F.2d 1394, 1411 n.9 (9th Cir. 1983) (recognizing a tribe's right to prevent other appropriators from depleting water notwithstanding that state law required actual appropriation of water because the right is controlled by federal law, not state law).

The districts' position inevitably leads to conflict with the Tribe because their continued on-Reservation pumping of water that Agua Caliente seeks to use for storage and aquifer replenishment frustrates and interferes with the Tribe's ability to use its federal reserved water right as its law requires. Avoiding such injury requires both the quantification of Agua Caliente's right (to confirm the Tribe's right to the amount of water it uses and seeks to store) and an injunction preventing the districts from interfering with the Tribe's use of that right by pumping groundwater out from under the Tribe's Reservation. FASC, Prayer, ¶11.

Third, the supplemental allegations underscore the threat of imminent injury that the districts' conduct imposes on Agua Caliente's sovereign interests. Agua Caliente has, as an exercise of its sovereign authority, both established the Agua Caliente Water Authority to regulate and protect the Reservation's federal reserved groundwater and directed the use of a portion of that water for aquifer replenishment.

Under tribal law, the Agua Caliente Water Authority is the sole entity authorized to regulate the Tribe's reserved water, which includes, *inter alia*, the ability to "control and manage the proper uses" of the resource, to "administer well permits, … and administer the imposition of groundwater production fees on producers of the Tribe's groundwater." *See* AC Water Ord. Ch. 1, §§ I.B.10; *see also id.*, § I.C. By pumping water that the Tribe has determined should be used to restore the aquifer and offset the effects of overdraft, operating wells on the Reservation without permits, and imposing fees on the production of the Tribe's reserved water[9]—all of which they currently do—the Defendants will flout the Tribe's sovereign regulatory authority over its federal reserved right and its ability to direct the use of its resource. FASC ¶ 45, 48, 56, 57, 60, 61. This is a separate and independent injury supporting Agua Caliente's standing to quantify its federal reserved water right and to seek injunctive relief to protect its use of and exercise of jurisdiction over that right. *See, e.g.*, *Anderson*, 736 F.2d at 1364-66 (recognizing a tribe's sovereign authority to regulate its federal reserved water and to use that water for "*any* lawful purpose," including non-consumptive uses, without relinquishing its rights to non-tribal uses or state regulation); *accord Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) (Gorsuch, J.) (holding that threatened assertion of state jurisdiction on tribal lands constituted an invasion of tribal sovereignty that not only established standing, but also supported the extraordinary remedy of preliminary injunctive relief).

---

[9] On September 30, 2019, DWA sent the Tribe a statement claiming that it owes DWA over $200,000 in fees for replenishment assessments that DWA levied on the Tribe when it pumped groundwater from 2009 to 2012. FASC ¶61. Agua Caliente anticipates that DWA will continue to levy this replenishment fee on the Tribe when it resumes pumping groundwater within DWA's service area in the very near future. Id. DWA also levies this fee on lessees on the Reservation who are pumping the Tribe's groundwater. *Id.* ¶60.

The Ninth Circuit's opinion in *Anderson* is particularly instructive here. It held that the state had the authority to regulate non-Indian use of excess on-reservation waters—*i.e.*, only those beyond the amount reserved for the Spokane Tribe—in the Chamokane Basin and that it could do so without threatening the tribe's sovereign interest because the Court was quantifying the tribe's right and protecting it from state regulation and infringement. *Anderson*, 736 F.2d at 1365. Here, Agua Caliente lacks (but seeks) that critical protection. Absent a quantification of its right, Agua Caliente has no way to define the scope of waters over which its jurisdiction extends or to prevent the districts from interfering with its jurisdiction. Agua Caliente's affirmative jurisdictional acts therefore present the Court with independent grounds for quantifying the Reservation's reserved water right.[10]

Further, it is not disputed that allottees are entitled to a ratable share of the Tribe's water right. *See, e.g.*, *Walton I*, 647 F.2d at 50-51.[11] For the Tribe to fully exercise both its proprietary interests in its water (whether it be by pumping groundwater for its own use or marketing it to third-parties) and its sovereign interests in the allottees' share of that water—in other words, to effectively and faithfully govern its water—the Tribe's right must be quantified and the allottees' share determined. This is especially so now that both allottees (FASC ¶60) and the Tribe are exercising their groundwater rights and the Tribe is taking steps to fully implement the

---

[10] Many tribes with quantified water rights protect their rights through duly enacted tribal water ordinances. *See, e.g.*, Colville Tribal Code, https://static1.squarespace.com/static/572d09c54c2f85ddda868946/t/5824a3cc414fb5cd815d8991/1478796252614/4-10.pdf; Salt River Pima-Maricopa Indian Community Code, Pt. II, Ch. 18, https://www.srpmic-nsn.gov/wp-content/uploads/2018/09/CodeOfOrdinances-Chapter18.pdf; Lummi Nation Code of Laws, Title 17, https://narf.org/nill/codes/lummi/17Water.pdf; Tohono O'odham Code, Title 25, Ch. 3, https://www.tolc-nsn.org/docs/Title25Ch3.pdf.

[11] After the amount of a tribe's rights are determined, allottee shares generally are determined through a subsequently enacted tribal water code. *See, e.g.*, Pub. L. 114-322, § 3715, 130 Stat. 1628, 1832-34 (2016) (providing for the quantification of allottee rights in the Blackfeet Reservation).

Agua Caliente Water Ordinance, including the imposition of fees for use of the Tribe's water. FASC ¶ 56. The uncertainty resulting from unquantified rights impairs both the Tribe's proprietary and sovereign interests in its groundwater.

Lastly, the new facts closely align this case with *United States v. Ahtanum*, 236 F.2d 321 (9th Cir. 1956), which the Court cited in its Phase 2 Order as an example of hostile and competing uses "where there would not be enough water available to satisfy the needs of both the tribe and its opposing parties." Doc. 318, Page.ID 16211. In *Ahtanum*, as here, "considerable water [was] appropriated therefrom by the whites, and some was appropriated for Indian lands." *See United States v. Ahtanum*, 124 F. Supp. 818, 823, 828-29, 840 (E.D. Wash. 1953) (the Indians were never using more than one quarter of the flow of the Creek). The United States sought through quantification substantially the entire flow of the Creek to meet the Indians' future needs. *Ahtanum*, 236 F.2d at 325. The district court demurred, pointing to the fact that the Indians had never been in "possession of the water right and had been ousted recently by the defendants." *Ahtanum*, 124 F. Supp. at 827. The Ninth Court reversed, holding such a finding unnecessary. *Ahtanum*, 236 F.2d at 339-40. Here, the Tribe is using a portion of its water right (*i.e.*, 20,000 AFY plus the amount it soon will pump) with an intent to use its full right, estimated at 60,000 AFY. FASC ¶ 57, 58. The Defendants claim that water allocation "in the Coachella Valley is a zero-sum game," meaning that new water use would leave inadequate water to meet the needs of all claimants and that any award of additional water to the Tribe "will force a gallon-for-gallon reduction in the water available to other users…." Doc. 200, Page.ID 7274; *see also id.*, Page.ID 7289; Doc. 202, Page.ID. 7752 ("[T]he Tribe's reserved right does not include the right to extract more … [than] the 'safe yield' of the basin. Otherwise, the Tribe would have the right to extract such a large amount of groundwater as to

cause depletion, or even destruction, of the groundwater resource.").[12] The facts thus establish hostile and competing use.

Because the proposed supplemental allegations set forth facts sufficient to establish both economic injury and injury to Agua Caliente's sovereign interests, they are not futile, and the Court should grant Agua Caliente's motion.

### D.   Additional factors support granting leave to supplement.

In addition to the factors addressed above, some courts have identified additional considerations relevant to assessing a motion for leave to supplement a complaint. These factors include: (1) the relatedness of the original and supplemental complaints; (2) whether allowing supplementation would serve the interests of judicial economy; (3) whether final judgment has been rendered; (4) whether the district court retains jurisdiction over the case; (5) whether any prior court orders impose future affirmative duties on the defendant; and (6) whether the proposed supplementation alleges that a defendant violated a prior court order. *See San Luis*, 236 F.R.D. at 497. The balance of these factors further supports granting Agua Caliente's motion for leave to supplement the Complaint.

First, the original and proposed supplemental complaints are extremely closely related. Agua Caliente does not seek leave to add new claims or legal theories via supplementation; rather, its proposed supplementation is narrowly limited to recent factual developments that support its standing to litigate the Complaint's existing claim for quantification of the Tribe's federal reserved water right. Second, allowing

---

[12] In briefing in this case, the Defendants have estimated the sustainable yield of the West Whitewater/Indio sub-basin at 26,300 AFY. *See* Doc. 200, Page.ID 7277 (defining the sustainable yield of the Indio Subbsin as the natural inflow into the subbasin minus the outflow). Elsewhere, CVWD has estimated the natural recharge of the West Whitewater Area of Benefit at approximately 40,000 AFY (FASC ¶40) and DWA has estimated the naturally available water supply for the West Whitewater Management Area (FASC ¶41) as approximately 30,500 AFY. All of these numbers fall well short of the Tribe's estimated water right of 60,000 AFY, which the Tribe intends to fully use and develop. FASC ¶58.

this limited supplementation would serve the interests of judicial economy as well. While both sides may need some discovery into the supplemental factual allegations, limited additional discovery in a case where the Court has developed knowledge of the facts and issues is surely more efficient than requiring Agua Caliente to file a new lawsuit seeking quantification of its water right based in part of the recent factual developments stated in the proposed First Amended and Supplemental Complaint. Third and fourth, no final judgment has been rendered and this Court retains jurisdiction over the case. As to the fifth and sixth factors, the Court has yet to issue any orders imposing future affirmative duties on the water districts and Agua Caliente does not allege that the districts have violated any existing court order. Accordingly, four of the six factors sometimes considered in assessing Rule 15(d) motions favor allowing supplementation in this case.

### E.   While Rule 16 is inapplicable, Agua Caliente has acted diligently in seeking leave to amend in any event.

Where a request to amend will require modification of a scheduling order, Rule 16 requires a showing of good cause for modification, focusing on the moving party's diligence. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Story v. Midland Funding, Inc.*, 2016 WL 5868077, at *1 (D. Or. Oct. 7, 2016). This standard is inapplicable here, however, because there is no Phase 3 scheduling order that will have to be modified to accommodate the Tribe's amendment.

During Phase 1, the Court issued a scheduling order that, as subsequently modified, set May 1, 2014, as the Phase 1 deadline for filing a motion to amend pleadings. *See* Doc. 59, Page.ID 319; Doc. 54, Page.ID 274 (stating the parties' agreement that the deadline for amended pleadings was "April 1, 2014, Phase 1"). This deadline only applied to amendments sought in Phase 1, as was necessary in light of the parties' agreement to trifurcate the case and to defer addressing additional issues, discovery, and motions, including those addressing potentially necessary

additional parties, until Phase 3. *See* Doc. 54, Page.ID 265 – 267. In short, the parties agreed from the outset that amended pleadings might be necessary in future phases of the case, particularly in Phase 3, and for that reason, the Phase 1 scheduling order did not impose a final, applicable-to-all-phases deadline for seeking leave to amend or taking any other action, including conducting discovery and filing motions. Agua Caliente's motion for leave to amend will not require modification of any currently applicable scheduling order because no Phase 3 scheduling order has issued. The only Phase 3 deadlines in effect pertain to briefing this motion, which the parties stipulated and the Court adopted. Therefore, Rule 16's good cause standard is inapplicable.

Even if the Phase 1 scheduling order's deadline for amended pleadings remained in effect, however, good cause for modifying the order exists here. As discussed *supra*, Agua Caliente has consistently maintained, in multiple submissions throughout this case, that it beneficially owns the pore space underlying its Reservation because that space is a constituent element of the land reserved for the Tribe. And the Court on multiple occasions has indicated that Phase 2 of the case would address the Tribe's ownership of pore space, as opposed to the existence of a more limited use right. *See, e.g.*, Doc. 193, Page.ID 7233; Doc. 121, Page.ID 6625. Based on its repeated representations to the Court and the Court's description of the issue to be briefed in Phase 2, Agua Caliente had a reasonable and good faith belief that its constituent element legal theory was properly before the Court until it received the Court's Phase 2 order indicating otherwise. *See* Doc. 318, Page.ID 16218 n.16.

Once Agua Caliente received the Court's order, it took time to assess the order and consider its course of action, ultimately determining that it needed both to amend the pore space allegations in its Complaint to specifically allege the legal theory underlying the claim and to take steps—described in the supplemental allegations—to address the standing issues that the Court identified. The Tribe recognized that the latter would take some time, but believed that immediately moving for leave to amend

while fully intending to seek leave to supplement only a few months later would result in substantial inefficiency and misuse of Court and party resources. Accordingly, rather than proceed with serial motions for leave to amend and to supplement its Complaint, Agua Caliente moved forward expeditiously with efforts to protect its water rights and take actions to buttress its standing to seek quantification of its water right so that it could present the Court with a single proposed amended and supplemental complaint that the Court and the parties could address in a more efficient manner. Delays such as this, which are caused by a party's effort to proceed efficiently and conserve judicial resources, do not indicate a lack of diligence or undermine a finding of good cause under Rule 16(b). *See, e.g.*, *Story*, 2016 WL 5868077, at *3 ("Delay based on attempts to avoid 'unnecessary time and expense,' such as … avoiding unnecessary motions practice, is consistent with diligence." (citation omitted)); *see also United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007) (holding that district court did not abuse its discretion in allowing amendment more than ten months after the deadline set in the scheduling order, even though facts supporting amendment were available at time of filing complaint, where amendment promoted the interests of justice, and judicial economy).

It also bears noting that the United States filed a motion for reconsideration that briefly placed at issue the status of the Court's Phase 2 order, potentially obviating the need for any supplementation by Agua Caliente. *See* Docs 319 & 321-24. During the July 9, 2019, L.R. 7-3 meeting to discuss the United States' motion, defense counsel suggested delaying discussion regarding Phase 3 until August in light of anticipated summer vacations, and the Tribe agreed. While the parties began trying to schedule a call to confer on Phase 3 on September 3, 2019, further travel by defense counsel left them unable to set an initial call until September 24, 2019. They have since engaged in further communications in hopes of potentially reaching agreement on the Tribe's proposed amendment to avoid further litigation of that point. Much of the post-August

delay was thus unavoidable, and the discussions over recent weeks were a good faith attempt by the parties to avoid inefficiency and unnecessary briefing and waste of resources. In short, while the time since the Court's Phase 2 order may seem substantial at first blush, it is not at all reflective of a lack of diligence by Agua Caliente. The totality of the circumstances establish good cause for allowing the Tribe to amend its pore space claim to squarely place before the Court the issue that the parties believed they were litigating for the last six years.

With respect to Agua Caliente's request for leave to supplement its Complaint, the Ninth Circuit has not held that Rule 16 applies to such requests, and neither the text of the rule nor the Court's scheduling order refer to such motions. *See, e.g.*, Doc. 59; *Global Bldg. Sys. v. Brandes*, 2008 WL 477876, at *2 (D. Ariz. Feb. 19, 2008) (noting that the Ninth Circuit had not addressed the question and lower courts were divided); *Fremont Inv. & Loan v. Beckley Singleton, CHTD*, 2007 WL 1213677, at *6 (D. Nev. Apr. 24, 2007) (noting the lack of Ninth Circuit authority and the absence of any reference to supplemental complaints in Rule 16 or the applicable scheduling order). But even if good cause were required, there can be no question that Agua Caliente has shown the requisite diligence with respect to its request for supplementation, which relies on factual developments that occurred in recent weeks or, in the case of the Tribe's development of its water production capabilities and implementation of its Water Ordinance, are ongoing. Agua Caliente acted with alacrity in bringing these facts to the attention of the districts, spent more than two weeks working, in good faith, through the meet and confer procedure prescribed by the Court's Local Rules, agreed to a briefing schedule proposed by the districts' counsel to accommodate their schedule, and is now bringing the supplemental facts before the Court with zero delay. Were good cause required, it clearly exists with respect to the supplemental allegations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 21, 2019

By    /s/ *Catherine F. Munson*
Catherine F. Munson
Keith M. Harper
Mark H. Reeves
KILPATRICK TOWNSEND & STOCKTON LLP

Steven C. Moore
NATIVE AMERICAN RIGHTS FUND

John Tabinaca Plata
AGUA CALIENTE BAND OF CAHUILLA INDIANS

*Attorneys for Plaintiff*
Agua Caliente Band Of Cahuilla Indians

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AGUA CALIENTE'S  MOTION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**