1    MATT KLINE (Bar No. 211640)
     mkline@omm.com
2    DANIEL R. SUVOR (Bar No. 265674)
     dsuvor@omm.com
3    HEATHER WELLES (Bar No. 302256)
     hwelles@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 8th Floor
5    Los Angeles, CA 90067-6035
     Telephone: (310) 553-6700
6    Facsimile: (310) 246-6779

7    *Attorneys for Defendants Coachella Valley*
     *Water District, and G. Patrick O'Dowd, Ed*
8    *Pack, John Powell, Jr., Peter Nelson and*
     *Castulo R. Estrada, sued in their official*
9    *capacity as members of the Board of*
     *Directors*

10   (Additional counsel identified on next
11   page)

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14                           **EASTERN DIVISION**

15   AGUA CALIENTE BAND OF            Case No. 5:13-cv-00883-JGB (SPx)
16   CAHUILLA INDIANS,                Judge:    Hon. Jesus G. Bernal
                                      Dept.:    Courtroom 1
17            Plaintiff,
                                      **CVWD'S OPPOSITION TO THE**
18        v.                          **TRIBE'S MOTION TO AMEND AND**
                                      **SUPPLEMENT COMPLAINT**
19   COACHELLA VALLEY WATER
     DISTRICT, et al.,                Action Filed:    May 14, 2013
20                                    Hearing Date:    January 13, 2020
              Defendants.
21

22

23

24

25

26

27

28
                                            CVWD OPP TO MOT. AM. & SUPP. COMPL.
                                            CASE NO. 5:13-CV-00883-JGB

1   STEVEN B. ABBOTT (Bar No.
    125270)
2   sabbott@redwineandsherrill.com
    GERALD D. SHOAF (Bar No. 41084)
3   gshoaf@redwineandhserrill.com
    REDWINE AND SHERRILL, LLP
4   3890 11th Street, Ste. 207
    Riverside, CA 92501-3577
5   Telephone:  951-684-2520
    Facsimile:  951-684-5491
6
    WALTER DELLINGER (*pro hac vice*)
7   BRADLEY N. GARCIA (*pro hac vice*)
    O'MELVENY & MYERS LLP
8   1625 Eye Street, NW
    Washington, DC 20006
9   Telephone:  202-383-5300
    Facsimile:  202-383-5414
10
    ANTON METLITSKY (*pro hac vice*)
11  O'MELVENY & MYERS LLP
    7 Times Square
12  New York, New York 10036
    Telephone: (212) 326-2000
13  Facsimile: (212) 326-2061
14  BARTON THOMPSON, JR. (Bar No.
    72927)
15  O'MELVENY & MYERS LLP
    2765 Sand Hill Road
16  Menlo Park, CA 94025-7019
    Telephone: 650-473-2600
17  Facsimile: 650-473-2601
18  *Attorneys for Defendants Coachella*
    *Valley Water District, and G. Patrick*
19  *O'Dowd, Ed Pack, John Powell, Jr.,*
    *Peter Nelson and Castulo R. Estrada,*
20  *sued in their official capacity as*
    *members of the Board of Directors*
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.  Introduction ........................................................................................... 1

II. Procedural Background .......................................................................... 2

III. The Tribe's Entire Motion Should Be Rejected under Rule 16. ............ 6

    A.  Rule 16 Applies to the Tribe's Motion. .......................................... 6

    B.  The Tribe Cannot Show Good Cause for Any Amendment. .............. 7

IV. The Court Should Also Reject the Amendments under Rule 15. ........... 11

    A.  Bad Faith: The Tribe's Motion Seeks to Circumvent Summary Judgment. ...................................................................................... 13

    B.  Prejudice: The Tribe's Amendments Are Prejudicial Because They Would Require the Parties to Re-litigate Issues and Engage in Extensive New Proceedings, Delaying Resolution of the Case. ......................................................................................... 15

    C.  Futility: The Agencies Would Still Be Entitled to Summary Judgment Even if the Tribe's Amendments Were Accepted. ............. 19

    D.  Undue Delay:  The Tribe's Amendments Are Untimely. .................. 24

V.  Conclusion ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
  781 F.2d 1393 (9th Cir. 1986)...................................................................13, 25

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
  465 F.3d 946 (9th Cir. 2006)........................................................................6, 17

*Anderson v. City of Rialto*,
  2017 WL 10562685 (C.D. Cal. May 17, 2017) ................................................7

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. 1995)............................................................................19

*Bowles v. Reade*,
  198 F.2d 752 (9th Cir. 1999)..........................................................................12

*Bryant v. Spectrum Brands, Inc.*,
  2012 WL 2339115 (E.D. Cal. June 19, 2012) ................................................18

*Campion v. Old Rep. Home Prot. Co.*,
  861 F. Supp. 2d 1139 (S.D. Cal. 2012)..........................................................11

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000)........................................................................11

*Crow Creek Sioux Tribe v. United States*,
  900 F.3d 1350 (Fed. Cir. 2018)......................................................................22

*Davis v. FEC*,
  554 U.S. 724 (2008)........................................................................................24

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
  753 F.3d 862 (9th Cir. 2014)..........................................................................21

*Experexchange, Inc. v. Doculex, Inc.*,
  2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ................................................8

*Foman v. Davis*,
  371 U.S. 178 (1962)........................................................................................12

*Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc.*,
  416 F. Supp. 2d 861 (E.D. Cal. 2004)............................................................14

*Fox v. Good Samaritan Hosp. LP*,
  2008 WL 2805407 (N.D. Cal. July 17, 2008)................................................18

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013)............................................................................9

- ii -

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Infa-Lab, Inc. v. KDS Nail Intern.*,
2008 WL 4793305 (E.D. Cal. Oct. 27, 2008) ................................................. 7

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
237 F.R.D. 361 (D. Del. 2006) ....................................................................... 7

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ...................................................................... 6, 7

*Lewis v. Russell*,
2012 WL 4711959 (E.D. Cal. Oct. 3, 2012) ................................................ 10

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) ....................................................................... 13

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ................................................................. 19, 20

*Nat. Res. Def. Council v. Pruitt*,
2017 WL 5900127 (N.D. Cal. Nov. 30, 2017) ............................................ 19

*Nguyen v. United States*,
792 F.2d 1500 (9th Cir. 1986) ..................................................................... 13

*Parapluie, Inc. v. Mills*,
2012 WL 12887556 (C.D. Cal. Apr. 30, 2012) ........................................... 13

*Quan v. S.F. Police Dep't*,
2011 WL 2470477 (N.D. Cal. June 21, 2011) ............................................ 16

*Sako v. Wells Fargo Bank, Nat'l Ass'n*,
2015 WL 5022326 (S.D. Cal. Aug. 24, 2013) ................................... 8, 12, 13

*Schilling v. TransCor Am., LLC*,
2012 WL 4859020 (N.D. Cal. Oct. 11, 2012) ............................................. 18

*Schlacter-Jones v. Gen. Tel. of Cal.*,
936 F.2d 435 (9th Cir. 1991) ....................................................................... 13

*Schwerdt v. Int'l Fidelity Ins. Co.*,
28 F. App'x 715 (9th Cir. 2002) .................................................................... 8

*Sosa v. Airprint Sys., Inc.*,
133 F.3d 1417 (11th Cir. 1998) .................................................................... 10

*S. Grouts & Mortars, Inc. v. 3M Co.*,
575 F.3d 1235 (11th Cir. 2009) .................................................................... 10

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .................................................................................. 21

*Story v. Midland Funding LLC*,
2016 WL 5868077 (D. Or. Oct. 7, 2016) ............................................... 8, 11

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
278 F.R.D. 505 (N.D. Cal. 2011) ............................................................. 15

*Trilink Saw Chain, LLC v. Blount, Inc.*,
583 F. Supp. 2d 1293 (N.D. Ga. 2008) ...................................................... 7

*United States v. Adair*,
478 F. Supp. 336 (D. Or. 1979) .............................................................. 22

*United States v. Adair*,
723 F.3d 1394 (9th Cir. 1983) ............................................................... 22

*United States v. Anderson*,
736 F.2d 1358 (9th Cir. 1984) ............................................................... 22

*United States v. Pend Oreille Pub. Util. Dist. No. 1*,
28 F.3d 1544 (9th Cir. 1994) ................................................................ 18

*Weeks v. Union Pac. Rr. Co.*,
2017 WL 714368 (E.D. Cal. Feb. 22, 2017) ...................................... 17, 25

*W. Shoshone Nat'l Council v. Molini*,
951 F.2d 200 (9th Cir. 1991) ................................................................ 18

*William Inglis & Sons Baking Co v. ITT Cont'l Banking Co.*,
668 F.2d 1014 (9th Cir. 1981) ............................................................... 16

**Statutes**

Cal. Water Code §§ 31630-31639 ............................................................. 14

**Other Authorities**

10A WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2712 (4th ed. 2019) ...... 13

6 WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1487 (2d ed. 1990) ........... 17

**Rules**

Fed. R. Civ. P. 16(e) ............................................................................ 6

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

1    **I.    Introduction**

2         Six months ago, this Court issued its order resolving Phase 2 by holding that

3    the Tribe does not have standing to pursue its remaining claims, with the exception

4    of the "narrow issue of whether the Tribe owns sufficient pore space to store its

5    federally reserved water rights."  Dkt. 318 at 21.  The Court reached its carefully

6    reasoned decision after 18 months of proceedings, thousands of pages of pleadings

7    and evidence, and three hearings.  The Tribe, nonetheless, now seeks to start Phase

8    2 all over again and to re-litigate most of the issues resolved by the Court, through

9    the expedient of amending and supplementing its complaint.[1]  Just as the Court

10   rejected the United States' untimely motion for reconsideration, the Court should

11   reject the Tribe's even more tardy effort to undo Phase 2 through this latest motion.

12        The Tribe seeks three sets of amendments to its complaint.[2]  *First*, the Tribe

13   moves to amend its complaint to argue that it owns pore space underlying its

14   Reservation as a "constituent element" of the land.  Dkt. 330 at 1.  Coming more

15   than six years after the Tribe filed this case, over five years after the deadline set by

16   this Court for amending complaints, and six months after the resolution of Phase 2,

17   the Tribe's motion should be denied under Rule 16 of the Federal Rules of Civil

18   Procedure.

19        *Second*, the Tribe moves to amend and supplement its complaint to allow it

20   to re-litigate the Court's decision that the Tribe does not have standing to seek (1) a

21   quantification of its *Winters* rights, and (2) a quantification of any pore space that it

22   might own, along with an injunction preventing the Agencies from interfering with

23   that pore space.  Once again, this motion is untimely under Rule 16.  It also is

24   improper under Rule 15.  The Tribe manufactured its new allegations in an effort to

25   re-litigate Phase 2.  The motion also would prejudice CVWD by forcing it to go

26   _____

27        [1] The Tribe does not seek to revive its water quality claim.  Dkt. 330 at 2 n.2.

     [2] The Tribe also seeks to amend its complaint to name the Water Agencies' new
28   directors.  Dkt. 330-1 ¶¶ 11, 13.  CVWD does not object to this narrow change.

CVWD OPP TO MOT. AM. & SUPP. COMPL.
                                                            CASE NO. 5:13-CV-00883-JGB

through months, if not years, of new discovery, expert testimony, briefing, and hearings on standing issues that already consumed two years of the parties' and Court's time.  The proposed changes to the complaint are also futile because they cannot change the Court's ruling that the Tribe lacks standing to seek quantification of either water rights or pore space.  Indeed, the Tribe's arguments totally ignore the Court's Phase 2 order, which rejects or is inconsistent with all of the Tribe's arguments.

*Third*, the Tribe moves to add a grab bag of other changes that risk bringing a variety of unrelated issues into this action.  In particular, the Tribe seeks to enjoin CVWD from "producing groundwater on the Reservation without authorization," apparently even if CVWD is pumping pursuant to CVWD's own water rights.  Dkt. 330-1 at 23 ¶ 11.  Questions regarding the Tribe's geographical authority over pumping operations have never been an issue in this case and raise complex legal questions unrelated to the questions currently before this court.  Under Rules 15 and 16, the Court should also reject the Tribe's effort to expand its action in new directions.

The purpose of Phase 2 was to narrow the issues for final resolution in Phase 3.  The Court accomplished this goal in its April 2019 Phase 2 order by ruling that Phase 3 would involve one "narrow issue"—does the Tribe own pore space for "use connected to the Tribe's asserted federally reserved right"?  Dkt. 318, pp. 20-21 & n.16.  The Court should reject the Tribe's effort to overturn the Court's summary judgment order, re-litigate Phase 2, and expand and delay this litigation.

## II.   Procedural Background

The Tribe's motion comes after more than six years of litigation, two years of which were consumed by Phase 2.  This section outlines key procedural actions relevant to the Tribe's current motion.  Several conclusions are important.  First, the Tribe has filed its motion half a decade after the Court's deadline for amending the complaint (and six months after the Court's order resolving Phase 2).  Second, the

Tribe has had multiple chances to demonstrate standing (and indeed already made the basic allegations that it now argues call for re-litigating Phase 2).

- <u>May 1, 2014:</u>  The Court-imposed deadline to amend the complaint.  Dkt. 59.
- <u>May 11, 2015:</u>  The parties submit a joint report on scheduling for Phase 2.  No party requests a modified amendment deadline.  Dkt. 120.
- <u>June 9 & July 8, 2015:</u>  The Court issues orders governing the Phase 2 schedule and does not modify the amendment deadline.  Dkt. 121, 126.
- <u>August 16, 2017:</u>  In a Phase 2 joint status report, the Agencies state that they will raise Article III standing issues as a complete defense.  Dkt. 192 at 7, 15.
- <u>October 20, 2017:</u>  All parties file cross-motions for summary judgment on Phase 2 issues.  The Agencies argue that the Tribe and U.S. lack standing, and proffer supporting evidence.  *See* Dkt. 200 at 11-14; Dkt. 202 at 19-20.  The Tribe submits no evidence to show standing.
- <u>November 20, 2017:</u>  All parties file oppositions.  The Agencies reiterate that the Tribe lacks standing.  Dkt. 207 at 23-25; Dkt. 208 at 9, 20-21.  The Tribe again submits no evidence to support standing, but argues that it has standing to quantify its water rights because (1) the Agencies dispute the existence of the Tribe's water right; (2) the Agencies use the Tribe's water; and (3) the Agencies have overdrafted the aquifer.  Dkt. 209 at 3-6.
- <u>December 11, 2017:</u>  On reply, the Tribe again submits no evidence, but contends it has standing based on "longstanding and ongoing depletion and degradation of resources" reserved for the Tribe; because the Agencies are "infringing on the Tribe's sovereignty"; and based on the Tribe's "sovereign authority" to manage water, including storage.  Dkt. 217 at 5-6.
- <u>April 26, 2018:</u>  At the first Phase 2 summary-judgment hearing, the Tribe asserts it has standing because "[t]here is pumping going on currently on the reservation," Dkt. 241 at 26:7-8; the Tribe "can store the water in the aquifer" rather than pump it, *id.* at 27:4-6; and the Agencies have overdrafted

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

1    the aquifer, *id.* at 28:17-24.  The Tribe also argues it need only "allege"

2    injury, not provide evidence.  *Id.* at 28:2-16. The Court asks the Tribe how

3    the Agencies are "interfering with the purposes of the Tribe," but the Tribe

4    can point to nothing in the record.  *Id.* at 47:3-17.

5    • <u>May 18, 2018:</u>  The Tribe moves to supplement the record with the expert

6    declaration of Oliver Page—the first time the Tribe has submitted any

7    evidence on standing.  Dkt. 243-1 at 6.

8    • <u>June 25, 2018:</u>  The Court holds its second Phase 2 hearing.  Dkt. 263.

9    • <u>August 1, 2018:</u>  The Court grants the Tribe's motion to supplement the

10   record, but allows discovery and orders new briefing to address it.  Dkt. 266.

11   • <u>October 31, 2018:</u>  Following Mr. Page's deposition at which he repeatedly

12   admits the Tribe suffered no injury on any Phase 2 claim, the Tribe tells the

13   Court it wishes to withdraw Mr. Page as an expert.  Dkt. 271, 281.

14   • <u>November 7 & 9, 2018:</u> The Agencies file supplemental briefs, pursuant to

15   the Court's order.  Dkt. 281, 287.

16   • <u>November 14 & 16, 2018:</u>  The Tribe files supplemental briefs, arguing that

17   (1) its quantification claim is "in effect a quiet title action" and that its injury

18   arises from "uncertainty" over its title, including disagreement over the

19   Tribe's "right to store reserved water," and (2) the aquifer is in overdraft,

20   resulting in lowered water levels that increase the cost to produce water,

21   which the Tribe "felt…when it pumped water for its golf course as recently

22   as 2012, and its members' lessees feel … now when they pump reserved

23   groundwater for use on the Reservation."  Dkt. 289 at 3-7.  The Tribe files

24   three new declarations and a lengthy request for judicial notice.  Dkt. 289,

25   289-1, 289-2, 289-3, 289-4, 289-5, 290, 294 to 294-8, 298.

26   • <u>November 19, 2018:</u>  The Court orders the Tribe to resubmit chambers

27   copies, noting that the exhibits "exceed 1,700 pages in length," produced in

28   an "unusable" "stack."  Dkt. 299.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- <u>November 21, 2018:</u>  The Agencies file supplemental replies.  Dkt. 301, 302.

- <u>February 25, 2019:</u>  Third Phase 2 hearing held.  Dkt. 314.

- <u>April 19, 2019:</u>  The Court issues its Phase 2 order, holding that neither the Tribe nor the U.S. has standing to pursue quantification, challenge water quality, or obtain injunctive relief for pore space.  The "sole," "narrow issue" remaining for Phase 3 is the Tribe's declaratory relief claim that it "owns sufficient pore space to store its federally reserved right."  Dkt. 318 at 21.

- <u>July 9, 2019:</u>  The parties hold a telephonic meet and confer following the U.S.'s notification it intends to move for reconsideration.  Thompson Decl. ¶ 3 (filed herewith).  CVWD raises the need to discuss Phase 3 scheduling.  *Id.* The Tribe states that it will be ready to discuss Phase 3 "shortly," but never mentions amending or supplementing its complaint.  *Id.*

- <u>July 16, 2019:</u>  The U.S. files its motion for reconsideration, Dkt. 319, which the Agencies oppose, Dkt. 321, 322.  The U.S. argues the Court disregarded evidence that the Agencies charge tribal lessees replenishment assessments and proffers a new expert report to augment the record.  Dkt. 319 at 2-6.

- <u>August 14, 2019:</u> The Court denies the U.S. motion, holding that it "is a thinly veiled attempt to relitigate the summary judgment motion."  Dkt. 324 at 3.

- <u>September 3, 2019:</u>  CVWD contacts the Tribe, seeking to schedule a time to discuss the "structure and timing of Phase 3."  Thompson Decl. ¶ 4.  In follow-up emails, the Tribe never mentions any intention to amend or supplement its complaint.  *Id.* ¶ 5.

- <u>September 24, 2019:</u>  On the call requested by the Agencies, the Tribe says for the first time it intends to amend and supplement its complaint.  *Id.* ¶ 6.

- <u>October 18, 2019:</u>  The Agencies inform the Tribe they oppose all aspects of the Tribe's motion to amend and supplement as untimely.  On one narrow Phase 3 issue, the Agencies stipulate that, if the Court does not reject the

1   Tribe's entire motion as untimely, the Agencies agree the Tribe should be
2   permitted to conform its complaint to the "constituent element" pore space
3   theory briefed on summary judgment.  Dkt. 327.

4   • October 21, 2019: Tribe files its motion to amend and supplement.  Dkt. 329.

5   **III.    The Tribe's Entire Motion Should Be Rejected under Rule 16.**

6   Under Rule 16, the Tribe must show "good cause" for amendments sought
7   after the amendment deadline, *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d
8   604, 610 (9th Cir. 1992), a "more stringent" standard than the Rule 15 timeliness
9   requirement, *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th
10  Cir. 2006).  The procedural history of this case, as described above, demonstrates
11  that the Tribe cannot meet this standard.  The time for amendments passed long
12  ago, and the Court should deny the Tribe's entire motion under Rule 16.

13  **A.    Rule 16 Applies to the Tribe's Motion.**

14  The Tribe argues that Rule 16 does not apply because there is no Phase 3
15  scheduling order.  Dkt. 330 at 22.  The Tribe is wrong.  Nearly a year after the case
16  started, the Court set May 1, 2014 as the deadline to amend the Tribe's complaint.
17  Dkt. 59 at 2.  As a mandatory element of the scheduling order, that date "control[s]
18  the subsequent course of the action" unless modified.  Fed. R. Civ. P. 16(e).  And
19  over five years have passed since that deadline.

20  The Tribe contends that the Court's deadline applied only to Phase 1.  Dkt.
21  330 at 22-23.  But Rule 16(b)(3)(A) *requires* that a scheduling order set a date to
22  "amend the pleadings."  The Court set that date, and the Tribe never sought a
23  modification.  The Tribe did not request a new deadline for Phase 2, nor did the
24  Court's Phase 2 scheduling order set a different date.  Dkt. 120 at 12-13; Dkt. 121.

25  To the contrary, the Tribe previously treated the May 2014 deadline to
26  amend as applicable to later phases of the case.  In reserving the issue of joinder
27  under Rule 19 until Phase 3, the Tribe stipulated that the amendment date would
28  not "work any prejudice" to the Agencies' ability to argue that the Tribe had failed

- 6 -

to join necessary parties, Dkt. 49 at 4-5—an agreement that would have been unnecessary if the deadline applied only to Phase 1.

Finally, the Tribe suggests that Rule 16 does not apply to requests to *supplement* a complaint. Dkt. 330 at 25. Not so: This Court has expressly applied Rule 16 to requests to supplement, *see Anderson v. City of Rialto*, 2017 WL 10562685, at *2 (C.D. Cal. May 17, 2017) (Bernal, J.), as have other district courts.[3]

## B.    The Tribe Cannot Show Good Cause for Any Amendment.

Under Rule 16, the Tribe must show good cause for its delay. It cannot do so. The good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. If the party "seeking modification … was not diligent, the inquiry should end." *Id.* "The burden [lies] upon [the plaintiff] to prosecute [its] case properly." *Id.* at 610.

1. The Tribe cannot show good cause for any of its pore-space amendments because they all could have been included in the complaint from the beginning. The Tribe pled its claim to pore space, like all its claims, as an element of its asserted federally reserved water right. As the Court has observed, the Tribe asserted ownership in "sufficient pore space" in the aquifer as a whole "to store its federally reserved right to groundwater for all present and future purposes." Dkt. 1 ¶¶ 66, 76. The Tribe could have, but did not, make the very different claim that it owned the specific pore space under its Reservation as a "constituent element" of its land rights. While the Tribe made this argument in its Phase 2 briefs, the Tribe never sought to amend its complaint to make the argument.

---

[3] *E.g.*, *Infa-Lab, Inc. v. KDS Nail Intern.*, 2008 WL 4793305, at *2 (E.D. Cal. Oct. 27, 2008); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1329 (N.D. Ga. 2008); *Inline Connection Corp. v. AOL Time Warner, Inc.*, 237 F.R.D. 361, 366 (D. Del. 2006).

The Tribe, moreover, fails to justify waiting *over half a year* after the Court's Phase 2 order to make its motion.  The Tribe admits that the Court's order made clear that the Tribe's complaint did not encompass its "constituent element" theory. Dkt. 330 at 23; Dkt. 318 at 20 n.16.  Yet rather than immediately seeking a narrow amendment to address that deficiency, the Tribe waited over six months to bring this motion.  Moreover, it made the tactical choice to sit back and wait quietly while the United States pressed its unsuccessful motion for reconsideration—further sandbagging.  Courts regularly reject delays of only *one or two months* under the Rule 16 good cause standard.  *E.g.*, *Schwerdt v. Int'l Fidelity Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002) (one month); *Sako*, 2015 WL 5022326, at *2 (two); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (two).  The Court should not accept the longer, strategic delay here.

The Tribe says it waited to bring a combined motion to avoid "substantial inefficiency and misuse of Court and party resources."  Dkt. 330 at 24.  Yet the Tribe has shown little interest in either the Agencies' resources or efficiency.  The Tribe never informed the Agencies of its planned motion to amend, even when CVWD's counsel suggested on two separate occasions that the parties should meet to discuss Phase 3.  Thompson Decl. ¶¶ 3-5 (filed herewith).  The Tribe thus left the Agencies to assume that Phase 3 would involve the one issue set out by the Court in its Phase 2 order and to plan its case accordingly.

Contrast the Tribe's behavior in this case with plaintiff's diligence and transparency in *Story v. Midland Funding LLC*, 2016 WL 5868077 (D. Or. Oct. 7, 2016), which the Tribe cites.  There, the court found a three-month delay to be diligent because plaintiff "promptly notified Defendants" of her proposed new claims and engaged in "protracted negotiations on settlement and stipulation" that necessitated the delay.  *Id*. at *3.  Here, the Tribe did not inform the Agencies of its proposed amendment until the eve of the Tribe's motion, half a year after this Court's Phase 2 order.  Far from supporting the Tribe, *Story* demonstrates that the

Tribe did not have good cause when it not only failed to file its motion quickly after the Court's order, but also failed to advise the Agencies of its plans for months or see if a stipulation might be possible (as it was in part).  There is no question: the Tribe just acted many months too late.

2.  The Tribe also cannot show good cause for its failure years ago—by the May 2014 deadline, Dkt. 59—to seek many of its other requested amendments, including allegations concerning purported sovereign interests[4] and a new prayer to enjoin the Agencies "from producing groundwater on the Reservation."[5]  The Tribe offers no reason for its delay in asserting these claims.  The Tribe has raised sovereignty concerns in prior briefs, *see*, *e.g.*, Dkt. 298 at 4-5; *supra* at 4, and the Agencies have openly operated wells on the Reservation for years.  Courts regularly deny leave to amend in such circumstances, because "[t]he good cause standard typically will not be met where the party … has been aware of the facts and theories supporting the amendment since the inception of the action."  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).

3.  The Tribe also cannot show good cause for its numerous changes seeking to revisit the Court's determination that the Tribe lacks standing to quantify its groundwater right.  The Tribe claims it acted diligently because it sought to add "factual developments that occurred in recent weeks" with "alacrity" and "zero delay."  Dkt. 330 at 25.  Yet many of its new allegations consist of facts regarding recharge and agency groundwater production known to the Tribe months, if not years ago.[6]  All of these allegations are untimely for the same reasons as its pore space allegations.  Similarly, the Tribe makes the vague allegation that it plans (in some undefined manner and at some unidentified time in the future) to "fully

---

[4] These proposed amendments include those set out in Dkt. 329-1 (including page 15, line 4 (¶¶ 72, 73, 74) and page 18, line 14).

[5] *See id.* (page 20, line 1).

[6] *E.g.*, *id.* (page 12, line 7 (¶¶ 40, 41, 42, 45, 48); page 13, line 8; page 13, line 11 (¶¶ 52, 53, 58); page 17, line 15; page 20, line 1).

develop and use its groundwater rights," which it claims to be "at least 60,000 AF per year," Dkt. 329-1 at 8 ¶ 58—a claim it could have made from the very outset of this lawsuit.  While the Tribe offers these amendments in an effort to undo the Court's Phase 2 rulings, such a "motivation … to survive summary judgment" "weighs against granting leave" under the Rule 16 standard.  *Lewis v. Russell*, 2012 WL 4711959, at *5 (E.D. Cal. Oct. 3, 2012).

4.  The Tribe admittedly engineered its other proposed amendments to seek a redo of this Court's summary judgment ruling.  The Tribe seeks to add allegations that it: is installing new wells and expects to resume groundwater production by January 2020; created a Tribal water authority to issue permits on the Reservation; and plans to "store" groundwater by not using it.[7]  While those allegations relate to events that post-date the initial complaint, they are not the type of facts that would ordinarily justify a pleading amendment when discovered during litigation.  Instead, they all relate to *the Tribe's voluntary actions* taken *after* this Court ruled—hardly circumstances in which the Tribe was hamstrung in its ability to prosecute its case in a timely fashion.  *Cf. Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (no good cause for motion to amend after case was dismissed where nothing prevented plaintiff from developing the evidence at issue before the court's ruling; party's own "lack of diligence," not some external obstacle, "left to chance a critical component of subject matter jurisdiction"); *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241-43 (11th Cir. 2009) (similar).

The Tribe, moreover, has still failed to demonstrate diligence in pursuing its new claims.  For instance, the Tribe proffers a bare allegation that it is drilling new wells,[8] but provides no information regarding when the Tribe began planning the wells.  Additionally, given that the Tribe previously claimed that pumping occurred on the Reservation, *e.g.*, *supra* at 4, the Tribe fails to explain why it had to wait

---

[7] *Id.* (page 13, line 11 (¶¶ 54-61)).
[8] *See id.* (page 13, line 11 (¶ 54)).

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

1  until now to allege pumping.  The same is true for its new ordinance—the Tribe

2  provides no evidence regarding when it first considered that course, or why it

3  waited until years after the Court declared it possessed a reserved right to

4  groundwater to enact the ordinance, even though it noted its plan to "store"

5  groundwater years ago.  *E.g.*, *id.*; Dkt. 217 at 5-6; Dkt. 241 at 27:4-6; Dkt. 289 at 4.

6  That such allegations post-date the original complaint does not in and of itself show

7  good cause; the Tribe must also "show diligence in seeking amendment …." *Story*,

8  2016 WL 5868077, at *2; *see also Campion v. Old Rep. Home Prot. Co.*, 861 F.

9  Supp. 2d 1139, 1152 (S.D. Cal. 2012) (no diligence where plaintiff had "ample time

10  and numerous opportunities" to take action).

11      5.  As discussed in the next section, the Agencies also would suffer prejudice

12  from reopening Phase 2 after two years of litigation.  Re-litigating Phase 2 would

13  require significant new work—including discovery, expert testimony, briefing, and

14  arguments—*all just to retry* the standing issues that this Court already resolved in

15  its Phase 2 order.  The Tribe's added claims also would require far more extensive

16  proceedings than would be required to resolve the very narrow issue the Court

17  currently framed for Phase 3.  The Court need not find prejudice to deny the Tribe's

18  untimely motion under Rule 16, but such a finding "supplies an additional reason"

19  to do so.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000).

20      In summary, the Court can and should reject this latest effort to undo the

21  Court's Phase 2 rulings, which the parties spent millions of dollars and over two

22  years litigating.  The Court should deny the Tribe's motion under Rule 16.

23  **IV.   The Court Should Also Reject the Amendments under Rule 15.**

24      Even if the Tribe has satisfied Rule 16, it must also satisfy Rule 15.  In

25  evaluating a motion to amend under Rule 15, courts examine several factors,

26  including "undue delay, bad faith or dilatory motive on the part of the movant,

27  repeated failure to cure deficiencies by amendments previously allowed, undue

28  prejudice to the opposing party by virtue of the amendment, [and] futility of the

amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Although undue delay alone is not a sufficient ground to deny a motion, "when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied." *Sako v. Wells Fargo Bank, Nat'l Ass'n*, 2015 WL 5022326, at *3 (S.D. Cal. Aug. 24, 2013) (citing *Bowles v. Reade*, 198 F.2d 752, 758 (9th Cir. 1999)).

If the Court concludes that the amendments focused on the Tribe's claim that it owns pore space as a "constituent element" of its land do not violate Rule 16, CVWD has agreed not to object to those specific amendments under Rule 15.  Dkt. 327.  CVWD believes that the Tribe failed to pursue those amendments with the diligence and good faith required by Rule 16, but in an effort to simplify the issues before the Court, is not contending that they raise issues of bad faith, prejudice, or futility.

Both Rules 15 and 16, however, call for the denial of the remainder of the Tribe's motion.  The rest of the motion is not only impermissibly late, but violates all of the Rule 15 factors.  The amendments and supplemental allegations are designed to re-litigate the Court's decision that the Tribe lacks standing to pursue quantification of either water rights or pore space.  They also (1) improperly seek to circumvent the Court's summary judgment decision, (2) would require the parties to spend extensive time and money re-litigating issues that the parties just spent a year and a half resolving, and (3) would not change the final conclusion that the Tribe lacks standing.  The Tribe's effort to add a brand new claim regarding the Tribe's jurisdiction over wells on the Reservation would raise complex new legal issues and factual questions and delay the case on the verge of final resolution.  For all of these reasons, the Court should reject the remainder of the Tribe's motion under Rule 15.

### A.   Bad Faith: The Tribe's Motion Seeks to Circumvent Summary Judgment.

According to the Ninth Circuit, filing a motion to amend after a court has entered summary judgment, or even after briefing is complete, weighs against the moving party under the bad faith factor.  A motion to amend "is not a vehicle to circumvent summary judgment," which represents a significant investment by the parties and the Court, and filing a motion after "a pending summary judgment motion ha[s] been fully briefed[]," much less decided, "*weighs heavily against allowing leave*."  *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (italics added).  Accordingly, denial of leave to amend is proper where such a motion is "brought to avoid the possibility of an adverse summary judgment ruling."  *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).  "Much of the value of summary judgment … would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory."  *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir. 1986); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (amendment sought when moving party was "facing a summary judgment motion" supported bad-faith finding).  For all of these reasons, courts are rightly "reluctant to allow leave to amend to a party against whom summary judgment has been entered."  *Nguyen*, 792 F.2d at 1503; *see* 10A WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2712 (4th ed. 2019) (same).

Heeding this precedent, numerous district courts in this Circuit have denied leave to amend when the court has granted or the parties have briefed summary judgment.  *E.g.*, *Sako*, 2015 WL 5022326, at *4 (denying leave to amend due to a "pending motion for summary judgment"); *Parapluie, Inc. v. Mills*, 2012 WL 12887556, at *15 (C.D. Cal. Apr. 30, 2012) ("[T]he Ninth Circuit and others have repeatedly held that leave to amend may not be used to avoid the entry of summary

judgment."); *accord Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc.*, 416 F. Supp. 2d 861, 871 (E.D. Cal. 2004).

The Court therefore should deny all of the Tribe's supplemental allegations designed to re-litigate the standing questions resolved by this Court's Phase 2 summary judgment order. It is important to emphasize that the Tribe has crafted all of these allegations explicitly to seek a second bite at the standing apple. This is not a case where external actions have suddenly changed the facts on which the Court based its summary judgment order. Although the Tribe's motion reads as if its proffered supplement is based on facts that fortuitously materialized through extrinsic circumstances, *e.g.*, Dkt. 330 at 9-10 (citing "the emergence of new facts … since the Court issued its Phase 2 order"), all of the Tribe's "new facts" involve either actions that the Tribe alleges that it itself is taking or that rehash old ground covered by the Tribe or the U.S. in earlier briefs. None of the allegations involve new actions by the Agencies. The Tribe thus alleges that:

- The Tribe is "resuming groundwater production on the Reservation" and will face lower groundwater levels (a claim that the Tribe has previously made and the Court has already held does not by itself establish standing), *compare* Dkt. 329-1 at 6 ¶¶ 53-55, *with* Dkt. 318 at 15-16;

- The Agencies impose a replenishment assessment on non-*de minimis* groundwater pumpers on the Reservation (an assessment that the Tribe has known about for years, but never challenged, and that the United States already raised in its failed motion for reconsideration), *see* Dkt. 329-1 at 9 ¶¶ 60-61; Dkt. 324 at 3-4;[9]

- The Tribe passed a new ordinance to issue permits for groundwater pumping on the Reservation and plans to "store" groundwater in the aquifer by not

---

[9] The replenishment assessment, which state law authorizes, pays for the cost of replenishing the aquifer with new water in order to avoid overdraft. *See* Cal. Water Code §§ 31630-31639.

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

using it (a plan that the Tribe already raised in its Phase 2 arguments), *compare* Dkt. 329-1 at 7-9 ¶¶ 56-57, *with* Dkt. 217 at 5-6; Dkt. 241 at 27:4-6; Dkt. 289 at 3-7; and

- The Tribe plans to impose a fee on the Agencies if they produce the Tribe's groundwater on the Reservation, *see* Dkt. 329-1 at 8-9 ¶ 59.

This transparent effort to undo the Court's ruling based on old allegations or actions the Tribe could have taken at any point earlier in the litigation—*i.e.*, before putting the Court and parties through extensive rounds of costly briefing on its now-rejected theories—"smacks of gaming the Court and opposing party" and should not be rewarded. *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011).

**B.     Prejudice: The Tribe's Amendments Are Prejudicial Because They Would Require the Parties to Re-litigate Issues and Engage in Extensive New Proceedings, Delaying Resolution of the Case.**

1.  As noted earlier, the purpose of Phase 2 was to narrow the issues for Phase 3 and thus streamline this case.  The Court's April 2019 order accomplished this goal.  After considering the Phase 2 summary judgment motions, the Court concluded that the "sole remaining claim" to be litigated in Phase 3, and thus this case as a whole, would be the "narrow issue of whether the Tribe owns sufficient pore space to store its federally reserved right."  Dkt. 318 at 21.  All of the Tribe's requested amendments and additions, except for those amendments narrowly focused on the Tribe's argument that it owns pore space as a "constituent element" of its land, would overturn this effort, require the parties to engage in extensive new discovery and other legal proceedings (much of its focused on re-litigating what the Court has already decided), potentially require the joinder of additional parties whose rights could be impacted, and dramatically delay resolution of a case that is ready now to proceed to Phase 3.  For all of these reasons, the Tribe's proposed amendments and additions would be extremely prejudicial.

2.  The most important factor in evaluating motions for leave under Rule 15 is prejudice.  *See William Inglis & Sons Baking Co v. ITT Cont'l Banking Co.*, 668 F.2d 1014, 1053 (9th Cir. 1981).  The portion of the Tribe's motion focused on re-litigating the standing issues that the Court already resolved in its Phase 2 order would cause obvious substantial prejudice.  The Agencies spent two years and incurred extensive legal fees demonstrating to the Court in Phase 2 that the Tribe did not have standing to pursue any of its remaining claims except for one narrow issue involving pore space.  The Tribe, however, would require the parties to redo this effort.  If the Tribe's motion were granted, the Agencies would be forced once again to disprove the Tribe's factual allegations (requiring extensive discovery), provide its own expert testimony (and depose any tribal experts), brief relevant legal issues, and then seek summary judgment.  Perhaps not surprisingly, courts have frequently have found motions to amend brought in such circumstances to be prejudicial.  *See, e.g.*, *Quan v. S.F. Police Dep't*, 2011 WL 2470477, at *5 (N.D. Cal. June 21, 2011) (finding post summary-judgment motion to amend prejudicial, and collecting cases).

Consider just one example of the inevitable prejudice of granting the Tribe's motion.  In an effort to manufacture standing, the Tribe says it intends to "fully develop and use its groundwater rights," which it estimates to be 60,000 acre-feet per year ("AFY") (or approximately *double* the amount of water naturally available at the Reservation's creation).  Dkt. 329-1 at 8 ¶ 58.  If the Tribe were able to insert this conclusory allegation at this late date, the Agencies would be entitled, at a minimum, to document discovery, depositions of tribal officials, and expert discovery—all for a claim of at best doubtful validity.[10]  Such extensive work on an

---

[10] The Tribe asserts no basis whatsoever to support this claim, and includes no allegations suggesting it needs or has ever used anywhere close to that much water. *Cf.* Dkt. 324 at 4 (The Court:  The Tribe "failed to provide evidence that the aquifer has insufficient water to satisfy both the purpose of the reservation and the Agencies' use.").  Indeed, the Tribe has never disputed the voluminous record

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

issue the Court has already resolved in the Agencies' favor would plainly cause

prejudice—particularly when nothing stopped the Tribe from asserting this theory

from the beginning of its case, some six years ago.  And courts in the Ninth Circuit

regularly find prejudice on the facts above.  Prejudice plainly results where

"proceedings [are] further prolonged" through an amendment, and "Defendants

would be entitled to conduct discovery related to the additional facts and causes of

action that Plaintiff seeks to allege."  *Weeks v. Union Pac. Rr. Co.*, 2017 WL

714368, at *7 (E.D. Cal. Feb. 22, 2017).

       3.  The Tribe's new claim involving authority over pumping on the

Reservation[11] would also prejudice the Agencies by introducing complex new

issues, dramatically delaying the case's resolution.  For example, the Tribe's new

claim would raise complicated new factual and legal issues regarding the Tribe's

authority over fee-simple lands on the Reservation.  *See Montana v. United States*,

450 U.S. 544 (1981).  This claim, in short, would "substantially change[] the theory

on which the case has been proceeding and [are] proposed late enough that [the

Agencies] would be required to engage in significant new preparation."  6 WRIGHT

ET AL., FEDERAL PRACTICE & PROCEDURE § 1487 (2d ed. 1990).  Cases like

*AmerisourceBergen* establish that amendments that "drastically chang[e] [a party's]

litigation theory" far into litigation, particularly new theories that would "require

proof of different facts," are deeply prejudicial because they "unfairly impos[e]

high, additional litigation costs."  465 F.3d at 953.

      These rules apply equally in cases involving tribal claims.  In *United States v.*

*Pend Oreille Public Utility District No. 1*, 28 F.3d 1544, 1552-53 (9th Cir. 1994),

---

evidence (including admissions from its own expert) showing that it has been
incredibly economically successful using far less water.  *E.g.*, Dkt. 200-4, Ex. A at
12-14 (Howitt); Dkt. 277-3, Ex. 1 at 109:5-112:21, 147:24-149:16 (Page).  And the
expert report proffered by the United States *admitted* that the Tribe could claim no
water in excess of the safe yield, estimating its claim at 33,608 AFY (a number that
is still too high, but roughly half what the Tribe now claims).  Dkt. 319-2 at 10, 14.
[11] *See supra* at 9 nn. 4-5.

for example, the Ninth Circuit upheld denial of leave to amend on timeliness and prejudice grounds where a tribe sought to add a new claim requiring additional discovery into water and fishing rights and the joinder of new parties, delaying an upcoming phase of trial.  Similarly, in *Western Shoshone National Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991), the court found prejudice where a tribe asserted new claims involving aboriginal and treaty-based hunting and fishing rights, finding that the State of Nevada was prejudiced by "the time and expense of continued litigation on a new theory, with the possibility of additional discovery."[12]

4. The Tribe contends that the Agencies will suffer no prejudice because "the parties always anticipated substantial discovery in Phase 3."  Dkt. 330 at 12.  Just the opposite is true:  the parties hoped that Phase 2 might narrow the claims needed to be resolved in Phase 3 and thereby limit needed discovery.  *See* Dkt. 54 at 10-11; Dkt. 120 at 3.  The parties expressly stated that expensive discovery and ancillary motion practice "*could be rendered moot* depending on how the Court rule[d]" in Phase 2, thereby "[a]voiding unnecessary factual development of claims … that the Court rules untenable as a matter of law …."  Dkt. 54 at 11.  And that is exactly what happened here:  The Court held that the Tribe did not have standing to pursue its remaining claims except for a narrowed pore-space claim.  *See* Dkt. 318 at 21.

The cases on which the Tribe relies for arguing that there would be little prejudice here involved amended pleadings that would have added little if any discovery in relation to the discovery that *would have occurred anyway*.  By contrast, the Tribe's motion would cause an extremely broad and lengthy discovery period that would dwarf the discovery needed to resolve the one, limited pore-space

---

[12] *Accord, e.g.*, *Bryant v. Spectrum Brands, Inc.*, 2012 WL 2339115, at *6 (E.D. Cal. June 19, 2012) (amendment "would require [defendant] to expend significant additional resources to conduct discovery and complete additional motion practice"); *Schilling v. TransCor Am., LLC*, 2012 WL 4859020, at *2 (N.D. Cal. Oct. 11, 2012) (need for revised expert reports prejudicial); *Fox v. Good Samaritan Hosp. LP*, 2008 WL 2805407 (N.D. Cal. July 17, 2008) (prejudicial to permit amendment after summary judgment "after seven years of litigation").

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

issue the Court allowed to survive for Phase 3.  And to the degree the Tribe objects

to the "limited discovery thus far in this case" (an argument also made in the United

States' failed motion for reconsideration), that is a circumstance of its own making.

Dkt. 330 at 13; *see* Dkt. 319 at 21-23.  As described in CVWD's opposition to the

United States' motion, the Tribe and United States consistently and vehemently

opposed discovery in Phase 2.  *See* Dkt. 321 at 8-9.  And the Court already

provided the Tribe an opportunity to supplement the record and take discovery.

Dkt. 266.  The Tribe cannot use this motion to undo its prior strategic decisions.

### C.   Futility: The Agencies Would Still Be Entitled to Summary Judgment Even if the Tribe's Amendments Were Accepted.

The Court should also reject the Tribe's attempt to re-litigate the Court's

Phase 2 standing decisions because the Tribe's proposed amendments are futile.

Futility "can, by itself, justify the denial of a motion for leave to amend." *Nat. Res.*

*Def. Council v. Pruitt*, 2017 WL 5900127, at *6 (N.D. Cal. Nov. 30, 2017) (quoting

*Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).  An amendment is futile "if it

could be defeated by a motion to dismiss or … summary judgment." *Miller v.*

*Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

1.   The Tribe's attempt to avoid the Court's ruling that the Tribe lacks

standing to seek a quantification of its reserved water right is futile.  Indeed, this

Court has already rejected the theories underlying nearly all of the Tribe's proposed

amendments on this point.  As the Court found in its summary judgment order, "to

satisfy the injury-in-fact requirement for standing to quantify its Winters right, the

Tribe must provide evidence that Defendants' actions actually or imminently harm

the Tribe's *ability to **use** sufficient water to fulfill the purpose of the reservation*."

Dkt. 318 at 14 (emphases added); *see id*. ("the Court looks for evidence that the

Tribe is unable, or may imminently become unable, to use sufficient water to fulfill

the purposes of the reservation").  None of the Tribe's new allegations, even if

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

provable, would demonstrate that the Tribe either now or in the imminent future would be unable to use sufficient water to fulfill the purposes of the Reservation.

The Tribe claims that its new allegations, if proven, would establish standing in four ways. *First*, it alleges that it will initiate groundwater production at wells within the Agencies' service areas by January 2020, and that the cost of doing so will be more expensive than if the water table were at its "natural level." But the Tribe already offered this precise theory based on its past groundwater pumping and failed to present any evidence connecting any supposedly higher costs to any activity by the Agencies. The Court accordingly rejected it. *See* Dkt. 318 at 15.

In Phase 2, the Tribe noted that it had pumped groundwater from 2009 to 2012 and that its members' lessees still pumped groundwater. *Id*. The Tribe further argued that declining groundwater levels had led to increasing pumping costs. *Id*. The Court found that these allegations lacked "any citation to the record." *Id*. The Court, moreover, concluded that "injury to the water table" is not the same as "injury to the Tribe's <u>Winters</u> right." *Id*. An "overdraft condition— whether currently or cumulatively over many years—is not enough to satisfy the Tribe's burden to provide evidence of injury related to its quantification claim." *Id*. Instead, the Tribe must be able to demonstrate that the Tribe is "unable to access sufficient water." *Id*. The Tribe's new allegations do not provide the missing link but merely recast the Tribe's claim in terms of potential future pumping rather than past or current pumping (a difference that is inconsequential under the Court's ruling, reasoning, and analysis—as well as the cases it cited in support).

The Tribe's new allegations also continue to rely on the rejected theory that the Tribe can show an injury simply by providing evidence that the costs of pumping water are now higher than when the water table was at its "natural level" before any development occurred in the Coachella Valley. *See* Dkt. 329-1 at 7 (¶¶ 53-55). The Tribe is transparently attempting to rely upon a "past injury" (*i.e.*, historical overdraft) instead of "the prospect of future injury" required to support

standing to seek prospective relief, including quantification. *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014). The Tribe already attempted and failed to provide evidence of current, recent, or impending overdraft through its purported expert. *See* Dkt. 302 at 6. Worse still, *its own consultants acknowledged that there has been no overdraft in the Basin for the past 10 years*. *See* Dkt. 277-3, Ex. 1 at 88:13-20. And Mr. Page separately admitted that there was no overdraft condition affecting tribal lands—to the contrary, the Tribe's own data showed an upward trend at nearly every well on the reservation. *See id.* at 99:2-103:20, 107:5-12, 108:7-109:4. The Tribe's continued reliance on vague allegations about long-past overdraft is particularly problematic given CVWD's already-submitted evidence that since 2010 CVWD has recharged more water than it has pumped. Dkt. 302 at 7; Dkt. 281 at 9. Accordingly, the Tribe also cannot satisfy the standing requirement that it show any injury is "fairly traceable" to CVWD's conduct. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

*Second*, the Tribe alleges that it has directed its Water Authority to "store" 20,000 acre feet of water per year, by not pumping it, and that the Agencies' pumping will threaten this "use" of its water. Dkt. 329 at 16-17. Again, this is a claim it advanced in Phase 2. *See* Dkt. 217 at 5-6; Dkt. 241 at 27:4-6; Dkt. 289 at 4. The Tribe's new allegations therefore add nothing new to the standing question already resolved by the Court. While the Tribe did not lead with this argument in Phase 2, presumably that is because the Tribe realizes that it is wrong. When the Tribe says that it plans to "store" groundwater, it means that it does not plan to pump the groundwater. The Tribe, in short, is claiming the right to groundwater that is not using. But as the Court emphasized in its Phase 2 order, a "tribe's property right [is] usufructuary in nature in that the tribe [does] not own particular molecules of water but the advantage of its use." Dkt. 318 at 13 (citing case law). Thus, a "tribe *cannot be injured*" by "action that does not affect [its] ability to *use sufficient water* to fulfill the purposes of the [r]eservation." *Id.* (italics added); *see*

*also Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350 (Fed. Cir. 2018) (no standing to sue for allegedly diverting and appropriating a tribe's federal reserved water right because right is "usufructuary" and tribe was not using the water).

The Tribe's repackaged theory remains as meritless as before.  The two cases it cites to contend that it can claim water that it does not use are the same ones the Tribe has cited throughout this litigation, and they are readily distinguishable.  Both involved tribes who actively used their *Winters* rights to preserve surface water for fishing and hunting.  The tribes used the water to keep fish and wildlife stocked and to exercise their treaty rights to fish and hunt.  *See United States v. Anderson*, 736 F.2d 1358, 1365 (9th Cir. 1984); *United States v. Adair*, 723 F.3d 1394, 1411 (9th Cir. 1983); *United States v. Adair,* 478 F. Supp. 336, 340 (D. Or. 1979).

Here, there is no allegation, nor could there be, that the presence of groundwater under the reservation as an end in itself furthers any purpose of the Agua Caliente Reservation.  Instead, the Tribe simply seeks *not to exercise* its right to pump and use groundwater.  To establish standing, however, what the Tribe must show is that some action by CVWD will "actually or imminently harm the Tribe's ability to use sufficient water to fulfill the purposes of the reservation."  Dkt. 318 at 14.  As already explained, the Tribe did not do so in Phase 2 and cannot do so now.

*Third*, the Tribe asserts that its supplemental allegations show that the Agencies' conduct imposes imminent harm on the Tribe's "sovereign interests."  Dkt. 330 at 17-19.  Once again, these allegations add nothing to the record that was before the Court when it resolved the summary judgment motions in Phase 2.  The Tribe specifically raised sovereignty claims numerous times in Phase 2, only to have those claims rejected.  *E.g.*, Dkt. 217 at 5-6; Dkt. 209 at 6.  The Tribe's argument, moreover, simply repeats the prior one, as it is entirely premised on the concept that the Tribe owns the groundwater itself (rather than holding merely a use, or usufructary, right).  For example, the Tribe argues that its own ordinance gives it authority to "protect the Reservation's federal reserved groundwater and

1    direct[] the use of a portion of that water for aquifer replenishment." Dkt. 330 at

2    17. But because the Tribe does not "own" any water, it necessarily lacks authority

3    to dictate how that water will be used except to the extent it uses the water "to

4    fulfill the purposes of the reservation." Dkt. 318 at 13.

5         *Finally*, the Tribe argues that its new allegations would show that its planned

6    use of groundwater places it in "hostile" competition with the Agencies. Dkt. 330

7    at 20-21. Precisely the opposite is true. The Agencies have consistently stated

8    throughout this litigation that the Tribe is free to pump groundwater under its state

9    correlative rights, and that the Agencies will not interfere. *E.g.*, Dkt. 200 at 11-13.

10   The fact that the Tribe has now announced an intent to begin installing and using

11   new wells simply proves *the Agencies'* point that there is no present conflict over

12   whether or how much the Tribe may pump. The Tribe's claimed conflict is based

13   on its bare assertion that it is entitled to and will at some point pump or otherwise

14   develop 60,000 AFY. That assertion is entirely baseless—as noted above, *supra* at

15   n.10—and includes nothing suggesting any imminent conflict whatsoever. In any

16   event, the assertion that the Tribe will pump such a large amount of water is plainly

17   speculative, and therefore insufficient to show an imminent injury. *Cf.* Dkt. 318 at

18   16 (Tribe's MOU with Mission Springs did not create standing because it did "not

19   evidence that the Tribe *will* pump water" (italics added)). As the Court explained in

20   its Phase 2 order, relying on the Supreme Court's decision in *Arizona v. California*,

21   373 U.S. 546 (1963), *should a true quantity-related dispute arise in the future, it*

22   "*can be settled at that time.*" Dkt. 318 at 14 (italics added).

23        2. The Tribe's amendments designed to re-litigate its standing to seek

24   <u>quantification of its pore space or an injunction prohibiting the Agencies from</u>

25   <u>pursuing their recharge activities</u> are also futile in light of the Court's Phase 2

26   order.[13] The Court has already ruled that the Tribe lacks standing to pursue such

27

28        [13] *See* Dkt. 329-1 at 2 (page 4, line 6), 10 (page 16, line 27; page 17, line 1), 11 (page 19, line 17; page 19, line 21).

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

relief, which exceeds the narrow issue of pore space *ownership* at issue in Phase 3. Dkt. 318 at 20-21. Both the Tribe and the Court have specifically distinguished between declaring an ownership interest in pore space and adjudicating the scope of that interest through quantification and injunctive relief. *See id.*; Dkt. 209 at 8-9.

The Tribe contends that this Court should permit it to seek "quantification of the volume of pore space" under its constituent-element theory because that theory asserts a "fixed property right." Dkt. 330 at 11 n.4. But that does not explain why a volumetric calculation is necessary or appropriate. For example, while a tribe might own coal as a constituent element of its land, that does not mean that it automatically has the right to force a court—and countless parties—to quantify its precise volume of coal without an Article III case or controversy requiring such inquiry and relief. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (Tribe must prove justiciability for "each form of relief that is sought"); Dkt. 324 at 5 (Court noting that "quantification and injunction" are "additional" forms of relief beyond a declaration of a right). Here, the Tribe does not even attempt to explain how the Agencies have caused a concrete, imminent injury that the Court could or should redress by embarking on the complex calculation the Tribe requests; indeed, the Tribe devotes only a conclusory footnote to the issue. Dkt. 330 at 11 n.4. Moreover, its long-standing consultant and expert already admitted that the Agencies had caused no damage to the Tribe's pore space or tribal land, no harm to the Tribe's development opportunities, and no harm to any water storage projects. Dkt. 277-3, Ex. 1 at 162:12-163:2; Dkt. 281 at 4-5. Accordingly, the Tribe's amendments seeking quantification of pore space and an injunction are futile.

### D.   Undue Delay: The Tribe's Amendments Are Untimely.

The Tribe's proffered amendments are also untimely under Rule 15 for the same reasons discussed earlier in connection to Rule 16. *Supra* Part III. Just as under Rule 16, "late amendments to assert new theories are not reviewed favorably [under Rule 15] when the facts and theory have been known to the party seeking

amendment since the inception of the action." *Acri*, 781 F.2d at 1398.  In combination with the severe and readily apparent prejudice to the Agencies, and the futility of the Tribe's amendments (many of which simply seek to re-litigate claims the Court has already rejected), the Tribe's delay in seeking amendment is "sufficient to deny amendment."  *Weeks*, 2017 WL 714368, at *6.

**V.     Conclusion**

For the foregoing reasons, the Court should deny the Tribe's motion under Rule 16 or, alternatively, under Rule 15.  This Court has patiently decided motion after motion from the Tribe and U.S. attempting to revive the Tribe's claims.  It should reject this last one and allow the parties to proceed finally to try the narrow issue it reserved for Phase 3—and to end this case.

| | |
|---|---|
| Dated: November 25, 2019 | /s/ Barton Thompson, Jr._____ |
| | MATT KLINE |
| | WALTER DELLINGER |
| | BARTON THOMPSON, JR |
| | ANTON METLITSKY |
| | DANIEL SUVOR |
| | BRADLEY N. GARCIA |
| | HEATHER WELLES |
| | O'MELVENY & MYERS LLP |
| | |
| Dated: November 25, 2019 | /s/ Steven B. Abbott_____ |
| | STEVEN B. ABBOTT |
| | GERALD D. SHOAF |
| | REDWINE AND SHERRILL, LLP |
| | |
| | *Attorneys for Defendants Coachella Valley* |
| | *Water District, and G. Patrick O'Dowd, Ed* |
| | *Pack, John Powell, Jr., Peter Nelson and* |
| | *Castulo R. Estrada, sued in their official* |
| | *capacity as members of the Board of Directors* |

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB

1

## **Certification in Compliance with Local Rule 5-4.3.4**

2       I hereby certify that, pursuant to Local Rule 5-4.3.4, I have obtained the

3  authorization from the above signatories to file the above-referenced document, and

4  that the above signatories concur in the filing's content.

5

6

7    Dated:  November 25, 2019      */s/ Barton Thompson, Jr.*

BARTON THOMPSON, JR.

8                      O'MELVENY & MYERS LLP

9                      *Attorney for CVWD*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CVWD OPP TO MOT. AM. & SUPP. COMPL.
CASE NO. 5:13-CV-00883-JGB